IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DONNA CAVE, JUDITH LANSKY,                          PLAINTIFFS
PAT PIAZZA, and SUSAN RUSSELL

v.                          No. 4:18CV00342 KGB/BD

MARK MARTIN, Arkansas Secretary of State,
in his official capacity                            DEFENDANT

<u>RESPONSE IN OPPOSITION TO MOTION TO INTERVENE</u>

Arkansas Secretary of State Mark Martin, in his official capacity, through counsel,

states for his response as follows:

"The Satanic Temple" is a notoriously-transparent front for "trolling" pranksters

who have already demonstrated flagrant contempt for this Court by filing a motion to

intervene using unacknowledged fake and ambiguous names, by filing a proposed complaint

that includes a purposefully-vulgar sexual double entendre, and by drawing attention to that

vulgarity on social media. The proposed complaint further reflects a "sham" and a

"frivolity," and it fails to meet the proposed intervenors' burden to clearly allege facts

demonstrating any element of standing. Finally, even if the proposed intervenors could

demonstrate standing, they still do not meet Rule 24's requirements for intervention of right

or by permission. The proposed intervenors' conduct is beneath the dignity of this Court,

and this Court should—at the very least—deny their motion to intervene.

**I.**     **This Court should deny the motion to intervene because the proposed intervenors'
use of fake and ambiguous names fails to identify proper plaintiffs.**

The proposed complaint in intervention fails to identify proper plaintiffs. The

complaint identifies the first proposed intervenor simply as "The Satanic Temple." Doc. 17-

1 at 7 ¶ 5. This proposed intervenor is not identified, for example, as an association or as

any kind of registered entity existing under the laws of any particular state. And although the complaint cites various pages from the website http://www.thesatanictemple.com, even this website provides no information from which the identity of this proposed intervenor might be ascertained. It contains no physical address, no mailing address, or other identifying information.

In addition to various groups scattered across the country, at least two registered entities use the name "The Satanic Temple." A 501(c)(3) tax-exempt organization named "The Satanic Temple" was incorporated on November 14, 2017, under the laws of the Commonwealth of Massachusetts with a principal office in Salem, Massachusetts. Exh. G. But it seems unlikely that this is the entity that proposes to intervene in this lawsuit, given that the contributions page on the website http://www.thesatanictemple.com contains a statement denigrating religious organizations' use of tax-exempt status: "Please note that The Satanic Temple believes that religious organizations should not be tax exempt and for that reason contributions are not tax deductible."[1] A different entity, "The United Federation of Churches LLC d/b/a The Satanic Temple"—which is *not* tax exempt—was a plaintiff in a lawsuit filed against Franklin County, Indiana. *See Freedom From Religion Foundation, et al. v. Franklin County, Ind.*, Case No. 1:15CV484 (S.D. Ind.). The plaintiff in that case identified itself as "an international religious organization that is incorporated in Massachusetts and has its primary place of business in Somerville, Massachusetts." *Id.,* Compl., Doc. 1 at 2 ¶ 7.

---

[1] "Contribute to the Satanic Temple," The Satanic Temple website, available online at https://thesatanictemple.com/products/donate-to-the-satanic-temple (accessed July 20, 2018).

The proposed complaint in intervention alleges, merely, "The Satanic Temple is an organized religion." Doc. 17-1 at 7 ¶ 5. But even if it were granted that the Satanic Temple is a legitimate, organized religion—which, as explained below, it is not—a lawsuit cannot be brought in the name of "an organized religion," without more. One could not, for example, file a lawsuit in the name of the organized religions "Roman Catholicism" or "Buddhism." So—even if it were "an organized religion"—the Satanic Temple is not a proper plaintiff. "The Satanic Temple" has not identified itself sufficiently to be permitted to bring a claim in intervention. So the motion to intervene should be denied.

The proposed complaint in intervention identifies a second putative intervenor as "Lucien Greaves"—who it states "is a co-founder of The Satanic Temple and serves as its primary spokesman." Doc. 17-1 at 7 ¶ 8. But "Lucien Greaves" is an unacknowledged pseudonym (Exh. A; Exh.B[2]), and the motion to intervene should be denied for this reason alone.

The Federal Rules of Civil Procedure require plaintiffs to disclose their names in the instrument they file to commence a lawsuit. *See* Fed. R. Civ. P. 10(a) ("[T]he title of the complaint must name all the parties."); Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."); *see* Wright, Miller, et al., Federal Practice and Procedure (3d ed.) § 1321 ("[B]ecause of the presumption of openness with

---

[2] *See* "A Mischievous Thorn in the Side of Conservative Christianity," New York Times, July 10, 2015, available online at https://www.nytimes.com/2015/07/11/us/a-mischievous-thorn-in-the-side-of-conservative-christianity.html (accessed July 13, 2018) (attached as **Exhibit A**) (referring to "Lucien Greaves and Malcolm Jarry—pseudonyms for the two co-founders of the Satanic Temple"); "Satanic Temple Cries Foul Over Twitter Treatment," Salem News, May 30, 2018, available online at http://www.salemnews.com/news/local_news/satanic-temple-cries-foul-over-twitter-treatment/article_b67a2d87-b587-5fd8-9e11-5788c47a2668.html (accessed July 13, 2018) (attached as **Exhibit B**) (referring to "Douglas Misicko, better known as Lucien Greaves").

regard to American judicial proceedings, federal courts generally have been rather rigorous in not allowing the plaintiff to commence an action anonymously or to proceed under a pseudonym."). "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992); *see Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) ("Pseudonymous litigation undermines the public's right of access to judicial proceedings."). Even apart from the requirements of the federal rules, "[b]asic fairness dictates that those among the defendants' accusers who wish to participate in [a lawsuit] as individual party plaintiffs must do so under their real names." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 712-13 (5th Cir.1979). This requirement applies to intervenors as well as plaintiffs. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984).

A party wishing to bring an action pseudonymously has an affirmative duty to first petition the district court for permission to do so. *Capers v. Nat'l R.R. Passenger Corp.*, 673 F. App'x 591, 593-94 (8th Cir. 2016); *Zocaras v. Castro*, 465 F.3d 479, 485 (11th Cir. 2006) (dismissing an action with prejudice where the plaintiff filed his complaint using a pseudonym); *Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250, 1256 (N.D. Ala. 2003) (dismissing an action where the plaintiffs failed to seek leave to proceed anonymously). Deliberately filing a case under a false name shows flagrant contempt for the judicial process. *Dotson v. Bravo*, 321 F.3d 663, 667-68 (7th Cir. 2003).

Besides being a pseudonym, "Lucien Greaves" is a fictional persona. "Lucien Greaves" was reportedly the name of a character appearing in a mockumentary entitled, "The Satanic Temple," under production by a company called Spectacle Films. Exh. F at

4

8.[3] "Lucien Greaves" was also reportedly listed as the name of the casting director for the mockumentary in a casting call posted to the Actors Access website on January 7, 2013. Exh. H[4]; Exh. F at 8 (quoting from the casting call). As a fictional persona, "Lucien Greaves" cannot be a real party in interest; he is not even a subject of rights that could have been violated. Mickey Mouse and Donald Duck would have as legitimate a claim as "Lucien Greaves" to bring a complaint in intervention.

The complaint in intervention fails to identify proper plaintiffs. Therefore, this Court should deny the motion to intervene.

## II. The Satanic Temple is a notoriously-transparent front for a self-described "satirical group" that aims to "draw attention to a progressive agenda."

One man who makes use of the name "Lucien Greaves" is satirist Douglas Misicko, a.k.a. "Douglas Mesner," a.k.a. "Neil Bricke." Exh. C[5]; Exh. D; Exh. E.[6] Public records

---

[3] "Trolling Hell: Is the Satanic Temple a Prank, the Start of a New Religious Movement—or Both?" The Village Voice, available online at https://www.villagevoice.com/2014/07/22/trolling-hell-is-the-satanic-temple-a-prank-the-start-of-a-new-religious-movement-or-both/ (accessed July 13, 2018) (attached as **Exhibit F**).

[4] *See* "You Hear the One about the Pro-Scott Satanic Cult?" Miami Herald Naked Politics Blog, available online at http://miamiherald.typepad.com/nakedpolitics/2013/01/you-hear-the-one-about-the-pro-scott-satanic-cult.html (attached as **Exhibit H**).

[5] "Lucien Greaves of the Satanic Temple," Detroit Metro Times, May 27, 2014, available online at https://www.metrotimes.com/detroit/lucien-greaves-of-the-satanic-temple/Content?oid=2201492 (accessed July 13, 2018) (stating that Douglas Mesner "is known as Lucien Greaves, spokesperson for the Satanic Temple") (attached as **Exhibit C**).

[6] "The Satanic Temple," archived webpage snapshot from January 13, 2013, available online at https://web.archive.org/web/20130113023103/http://www.thesatanictemple.com (accessed July 13, 2018) (stating that "Neil Bricke" founded the Satanic Temple) (attached as **Exhibit D**); *see* "The Satanic Temple Fact Sheet," Church of Satan, available online at https://www.churchofsatan.com/the-satanic-temple-fact-sheet.php (accessed July 13, 2018) (stating that Misicko's use of the name "Neil Bricke" was part of a smear campaign, as the real Neil Brick is the founder of S.M.A.R.T.) (attached as **Exhibit E**); "S.M.A.R.T. Ritual Abuse Pages," available online at http://ritualabuse.us (accessed

available from the Massachusetts Secretary of the Commonwealth's Office list Misicko as President, Treasurer, Clerk, and Director of the 501(c)(3) tax-exempt organization named "The Satanic Temple." Exh. G (articles of organization).

Misicko has acknowledged (under his pseudonym Douglas Mesner) that the Satanic Temple is a satirical group. Exh. I.[7] In an interview, Misicko agreed that the Satanic Temple—which was created only in 2012 (Exh. A at 4)—is "a darker version of the Yes Men"—the moniker of two prankster/activists devoted to pulling elaborate, large-scale hoaxes and producing video projects of their antics:[8]

> Just as the Yes Men use very catching theatrical ploys to draw attention to a progressive agenda, we play upon people's irrational fears in a way that hopefully causes them to reevaluate what they think they know, redefine arbitrary labels, and judge people for their concrete actions. I believe that where reason fails to persuade, satire and mockery prevail.

Exh. I at 4.

Misicko reportedly was and is employed by Cevin Soling, the filmmaker who runs Spectacle Films—the company behind "The Satanic Temple" mockumentary. Exh. F. at 24. Spectacle Films organized a shoot on January 25, 2013, in downtown Tallahassee, Florida, inviting actors to show up at the state capitol dressed as Satanists to rally in favor of Governor Rick Scott. Exh. F at 6-7; Exh. H. The event was a hoax to satirically "celebrate" Governor Scott's signing of a bill allowing student-led prayer at school assemblies. Exh. F at

---

July 13, 2018) (explaining that S.M.A.R.T., i.e., "Stop Mind control And Ritual abuse Today," is a Massachusetts organization founded in 1995 by (the real) Neil Brick).

[7] "Unmasking Lucien Greaves, Leader of the Satanic Temple," Vice.com, available online at https://www.vice.com/en_us/article/4w7adn/unmasking-lucien-greaves-aka-doug-mesner-leader-of-the-satanic-temple (accessed July 18, 2018) (attached as **Exhibit I**).

[8] *See* The Yes Men website, available online at http://www.theyesmen.org (accessed July 18, 2018).

7. Notably, the affidavit submitted to this Court under the name "Lucien Greaves" is notarized by Spectacle Films's Cevin Soling. *See* Doc. 17-1 at 2 (notary stamp of Cevin Soling). For his part, Cevin Soling also uses the alias "Malcolm Jarry"—which is the pseudonym of the "co-founder," with Misicko, of the Satanic Temple.[9] Exh. F at 8; *see id.* at 24 (stating that "Malcolm Jarry" is really Cevin Soling); Exh. A at 1 (referring to "Lucien Greaves and Malcolm Jarry—pseudonyms for the two co-founders of the Satanic Temple").

Among other attempts to attract media attention, the Satanic Temple is known for conducting what it called a "pink mass" on top of the grave of Catherine Johnson in Meridian, Mississippi. Exh. F at 9-10. Catherine Johnson was the mother of Westboro Baptist Church founder Fred Phelps. Exh. F at 9-10. "The ceremony consisted of same-sex couples making out with their elbows propped atop Johnson's headstone." Exh. F at 10. As part of the event, Misicko also reportedly "unzipped his pants, bared his scrotum, and draped it atop Johnson's headstone." Exh. F at 10. A Satanic Temple press release following the event reportedly stated that "The Satanic Temple now believes that Fred Phelps must believe that his mother is now gay, in the afterlife, due to our Pink Mass." Exh. F at 10.

The social media network Twitter has refused to grant "verified" status—indicated by a blue seal with a checkmark next to an account's name—to the accounts for "Lucien Greaves" and the account for "The Satanic Temple." *See* Exh. B. Peter Gilmore, the leader of The Church of Satan—an organization that differs very much from the Satanic Temple and, which, incidentally, *is* Twitter-verified—maintains that the Satanic Temple "amounts

---

[9] Soling also reportedly was the president of the Harvard Extension Cultural Studies Club—the group that sponsored the Satanic Temple's reenactment of a black mass near Harvard University. Exh. F at 11-12, 24.

to no more than a bunch of trolls giving Satanism a bad name in a bald quest for attention." Exh. F at 16. "The Church[] [of Satan's] members . . . don't alert the media while going about their business. They have no interest in having the world gawk at them and treat them like freaks." Exh. F. at 16. As the Church of Satan's website notes, "It should be clear by examining [the Satanic Temple's] [web]site and public statements that The Satanic Temple has no consistent nor 'deeply held beliefs' and is not practicing the globally-recognized religion of Satanism established by [Anton] LaVey in 1966, rather, it uses the term Satanism and popularly associated imagery as a means to get attention from the media." Exh. E at 5.

A published interview with "Draco Ignis and Hofman A Turing," two "men who represent the NYC chapter" of the Satanic Temple, explained that the Satanic Temple attracts people for "the same reason that you have the religions now that are popping up like The Jedi Church, or the Church of the Flying Spaghetti Monster, and Dudeism." Exh. K at 2, 7. The men explicitly discussed the instant Arkansas litigation (then anticipated) and the Baphomet monument, affirming that the effort to place that monument on the Arkansas state capitol grounds "is an example of [trolling]." Exh. K at 3.[10] The men further explained that to join a local chapter of the Satanic Temple, "You don't even have to be a Satanist, you can just be a strong ally who believes in the political and secular actions without being super stoked about all the aesthetic aspects." Exh. K at 7.

Even the putative intervenors' complaint in intervention demonstrates the satirical, often-deliberately-vulgar nature of their efforts. On July 13, 2018—the day after the proposed intervenors' motion to intervene was filed—a photograph was posted to the

---

[10] "The Satanic Temple of NYC is Fighting for Your Liberty and Your Uterus," Broke-Ass Stuart, available online at https://brokeassstuart.com/blog/2016/11/22/103831/ (accessed July 20, 2018) (attached as **Exhibit K**).

Twitter account for "Lucien Greaves." Exh. J.[11] The caption clearly identified the photograph as being "[f]rom the lawsuit, now formally filed, against the state of Arkansas for their installation of a Commandments monument in exclusion of The Satanic Temple's Baphomet monument." Exh. J. The photograph is a picture of paragraph 8 of the putative intervenors' complaint in intervention—in which is highlighted the following sentence containing a purposefully-vulgar sexual double entendre: "Lucien Greaves visited Arkansas during the second installation of the Ten Commandments Monument and was personally offended by its erection."[12] *See* Exh. J. The post elicited several responses from various Twitter users, including "Lucien Greaves," commenting on the "erection." *See* Exh. J.

Finally, it is entirely plausible that the proposed intervenors intend to use their involvement in the action before this Court as part of their mockumentary. *See* Exh. E at 5 (speculating that "Spectacle Films is still in production of the feature length mockumentary for which they began casting in 2013."). This is especially likely given that "Lucien Greaves"—the name of a character appearing in the mockumentary (Exh. F at 8)—is named as a proposed intervenor and an affidavit was submitted to this Court under that same, fictional name. Doc. 17-1 at 1-2, 5.

The proposed intervenors are notoriously-transparent pranksters, and this Court should deny their motion to intervene.

---

[11] *See* https://twitter.com/LucienGreaves/status/1017831344234168323 (accessed July 18, 2018) (attached as **Exhibit J**).

[12] Rule 11(b) of the Federal Rules of Civil Procedure stipulates that, by filing a paper with the Court, a party is certifying that such paper is not being presented for an improper purpose. Rule 11(c) provides for sanctions concerning violations of Rule 11(b).

III.   **This Court should deny the motion to intervene because the proposed intervenors' pleading reflects a "sham" and a "frivolity," and, in any case, they have not met their burden of clearly alleging facts demonstrating each element of standing.**

Article III of the Constitution empowers federal courts to resolve only "cases" and "controversies." Accordingly, a plaintiff must have standing, which requires showing (1) an injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The party invoking federal jurisdiction bears the burden of proving these elements—which, at the pleading stage, means clearly alleging facts demonstrating each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

In the context of a motion to intervene, this Court "accept[s] as true the movants' allegations of injury, causation, and redressability, unless the pleading reflects a 'sham' or 'frivolity.'" *Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis*, ___ F.3d ___, ___, 2018 WL 3301434, at *3 (8th Cir. July 5, 2018) (quoting *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960)). As set forth above, the proposed intervenors' pleading manifestly represents a "sham" and a "frivolity." Thus, it would not be proper for this Court to accept their allegations. But even if the Court were to accept their allegations as true, the proposed intervenors still cannot establish any of the elements of standing, and this Court should deny their motion to intervene.

A.   *The proposed intervenors cannot show "direct and unwelcome contact" with the Ten Commandments monument sufficient to establish an injury-in-fact.*

An injury in fact must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (quotation and citations omitted). In *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015 (8th Cir. 2012), the Eighth Circuit held that residents living in and near the City of Fargo showed an injury in fact where they alleged that they had direct and unwelcome personal contact with the City of

Fargo's Ten Commandments monument and that this contact caused them to feel isolated and unwelcome in the City. *Id.* at 1023-24; *see id.* at 1024 ("That the injuries are caused by [their] own City is all the more alienating.").

The Eighth Circuit has not had the occasion to define the threshold of what qualifies as "direct and unwelcome" contact sufficient for standing. But other circuits have indicated that a plaintiff must demonstrate "some level of frequent or regular contact with the display during the course of the plaintiff's regular routine, such that the plaintiff was 'forced' to encounter the display." *Catholic League for Religious & Civil Rights v. City & Cty. of San Francisco*, 624 F.3d 1043, 1073 (9th Cir. 2010); *see Nikolao v. Lyon*, 875 F.3d 310, 317 (6th Cir. 2017) (finding "direct and unwelcome contact where a plaintiff 'actively attempted to avoid it.'"); *Green v. Haskell Cty. Bd. Of Comm'rs*, 568 F.3d 784, 793–94 (10th Cir. 2009) (plaintiff met the injury-in-fact requirement where he testified that he visited the courthouse square on a weekly basis while conducting personal business); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1251 (9th Cir. 2007) (plaintiff had standing where he alleged that he was a member of the community where a seal with a religious symbol was used and that he was forced into frequent regular contact with it); *see Adland v. Russ,* 307 F.3d 471, 478 (6th Cir. 2002) (plaintiffs had standing where they alleged that they "frequently travel to the State Capitol to engage in political advocacy for a variety of organizations and that they will endure direct and unwelcome contact with the Ten Commandments Monument.").

The requirement that a plaintiff have contact that is both "direct" and "unwelcome"—that is, personal contact that occurs during the course of the plaintiff's regular routine and that is unwanted, uninvited, or unsolicited—serves to distinguish a person with a direct stake in the outcome of a litigation from a person with a mere interest

in the problem. *See United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 690 n.14, (1973); *see also Vasquez*, 487 F.3d at 1251 (9th Cir. 2007) ("In certain cases, a plaintiff's contact with an allegedly offensive religious or anti-religious symbol will remain too tenuous, indirect, or abstract to give rise to Article III standing. This is necessarily so, lest this court be converted into a vehicle for the vindication of the value interests of concerned bystanders[.]" (quotation and citation omitted)).

Here, the proposed intervenors have not alleged facts sufficient to constitute an injury in fact in the form of "direct and unwelcome contact" with the monument. The proposed intervenors do not allege that they have any frequent or regular contact with the Ten Commandments monument during their regular routines. *See* Doc. 17-1 at 7 ¶¶ 5-8. The complaint alleges that Erika Robbins resides in Little Rock, that she personally visited the monument, that she was offended by it, and that she now avoids the capitol grounds. Doc. 17-1 at 7 ¶ 7; *id.* at 2-3. Robbins generically states in her affidavit that her contact was "offensive and unwelcome" (Doc. 17-1 at 3 ¶ 6), but she does not state that her contact was due to her routine business or that it was in any way forced, unwanted, uninvited, or unsolicited. *See* Doc. 17-1 at 3-4. She does not state that she actively sought to avoid contact with the monument. *See id.* Further, it is nowhere alleged that Robbins previously visited the capitol grounds or that she regularly transacts business at the capitol. *See* Doc. 17-1.

The entirety of the complaint's representations concerning "Lucien Greaves's" purported injury consists of the purposefully-vulgar allegation that "Lucien Greaves visited Arkansas during the second installation of the Ten Commandments Monument and was personally offended by its erection." Doc. 17-1 at 7 ¶ 8. One man who has used the name "Lucien Greaves" is a Massachusetts resident, and there is no allegation that his visit to

Arkansas was motivated by anything other than the monument itself. *See id.*; *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 (1982) ("Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court."). Further, notably absent from the complaint is any allegation that "Greaves" has had personal contact with the monument—although the "Lucien Greaves" affidavit does generically state that he personally visited the monument and that his contact was "offensive and unwelcome." Doc. 17-1 at 1 ¶ 5; *see id.* at 7 ¶ 8. But, again, "Greaves" does not state that the contact was due to his routine or that it was in any way forced, unwanted, uninvited, or unsolicited. *See* Doc.. 17-1 at 1-2. He does not state that he actively sought to avoid contact with the monument. *See id.* Finally, nowhere do the proposed intervenors allege that "Greaves" frequently visits the capitol, that he had any business at the capitol during his visit to see the monument, or even that he now avoids the capitol grounds due to the monument. *See* Doc. 17-1 at 7 ¶ 8.

The proposed intervenors cannot show contact that is both "direct" and "unwelcome" sufficient to allege an injury in fact. Therefore, they lack standing, and this Court should deny their motion to intervene.

### B. *The individual proposed intervenors cannot show either that Secretary Martin caused their purported injury or that a judgment against him would redress it.*

To establish standing, the proposed intervenors must show that there is "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The injury must be fairly traceable to the defendant's action and not the result of the independent action of some third party not before the Court. *Id.* It must also be likely, as opposed to speculative, that the injury will be redressed by a judgment against the defendant. *Id.* at 561.

The case captions of the motion to intervene and affidavits contain the only mention in those documents of the Defendant, Arkansas Secretary of State Mark Martin.[13] *See* Doc. 17-1 at 1, 3, 5. As for the proposed complaint in intervention, it mentions Secretary Martin only one other time. That sole allegation is in paragraph 9 of the complaint's "Parties" section, which states, "Defendant Mark Martin is the Secretary of State of the State of Arkansas being sued in his official capacity. His duties include approving of monuments on Capitol Grounds. This involves designs, placement, and timing of monument placement." Doc. 17-1 at 7-8 ¶ 9. The complaint contains no allegation that Defendant Martin approved or placed the Ten Commandments monument or failed to approve or place the Baphomet monument. *See* Doc. 17-1. In fact, Defendant Martin is without authority to place any monument without legislative approval. Ark. Code Ann. § 22-3-503(c)(1).

The proposed intervenors' real grievance would appear to be with the Arkansas General Assembly, which they allege in 2017 modified the process by which monuments are approved for placement. *See* Doc. 17-1 at 10 ¶¶ 25-30; *see id.* at 10 ¶¶ 29, 30 (alleging, "The purpose of 2017 Act 274 is sinister. It was specifically designed to usurp from The Satanic Temple a fair opportunity for the erection of the Baphomet Monument," and "Because 2017 Act 274 was enacted, a public comments hearing was never scheduled for the Baphomet Monument."). But Secretary Martin exercises no control over the actions of the Arkansas General Assembly, so he cannot have been the cause of any injury purportedly committed by it against the proposed intervenors.

---

[13] The motion to intervene asserts that unspecified "Defendants" (plural) "placed the Ten Commandments Monument on public grounds but refuse to place a Baphomet Monument on public grounds." Doc. 17 at 7. Because Secretary Martin is the only Defendant named in the proposed complaint in intervention, it is not clear who these "Defendants" are.

Therefore, even if the allegations of the complaint were accepted as true, the proposed intervenors have not shown a causal connection between Secretary Martin's conduct and their purported injury. And even if those allegations were accepted as true, it would remain merely speculative whether their purported injury could be redressed by a judgment against him. The proposed intervenors cannot demonstrate either causation or redressability. Therefore, they lack standing, and this Court should deny their motion to intervene.

C.  *The individual proposed intervenors cannot demonstrate standing with respect to the request for injunctive relief in the form of placing the Baphomet monument.*

"[A]n intervenor must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648 (2017). Standing is "not dispensed in gross," and a plaintiff "must demonstrate standing separately for each form of relief sought." *Id.* at 1650 (quotations and citations omitted).

Here, even assuming that Robbins and "Greaves" could hypothetically establish standing to bring a claim for injunctive relief in the form of removal of the Ten Commandments monument—relief that the current Plaintiffs seek—they still could not establish standing to bring a claim of injunctive relief in the form of placement of the Baphomet monument on the capitol grounds. Neither Robbins nor "Greaves" has adequately alleged that the absence of the Baphomet monument from the Arkansas state capitol grounds constitutes an injury, that Arkansas Secretary of State Mark Martin was the cause of any purported injury, or that a judgment against Secretary of State Martin would redress any purported injury.

15

The proposed intervenors cannot establish standing with respect to their request for an injunction to place the Baphomet monument. Therefore, this Court should deny the motion to intervene.

### D.    The Satanic Temple cannot establish third-party associational standing.

The Satanic Temple does not claim standing in its own right to sue, but claims only third-party, associational standing to sue on behalf of its members. *See* Doc. 17 at 8-9. The Supreme Court has recognized that an association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

As an initial matter, and in part for reasons explained above, the proposed intervenors have not established that the Satanic Temple is an "association" that can file suit on behalf of third parties. *See Hunt*, 432 U.S. at 344. It would be especially odd if it turned out that the proposed intervenors were seeking to maintain that a for-profit business organization such as The United Federation of Churches d/b/a The Satanic Temple could claim associational standing. *See, e.g.*, *Sec. Indus. & Fin. Markets Ass'n v. United States Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 409 (D. D.C. 2014) ("Indeed, endorsing plaintiffs' view that a single, for-profit corporation can act as an 'association' representing the legal interests of each of member of its corporate family would completely contradict the shareholder (and third-party) standing rules as well as the fundamental principles of corporate law."). But because it is unclear what sort of entity "The Satanic Temple" is, the proposed intervenors have not shown that it has associational standing.

Because the Satanic Temple is not an "association," it does not have standing to sue on Robbins's and "Greaves's" behalves.

Further, although Robbins and "Greaves" claim that they are now "practicing member[s] of The Satanic Temple" (Doc. 17-1 at 1 ¶ 4, 3 ¶ 4), it is not clear whether this means that Robbins, for example, is a member of some Arkansas chapter of the Satanic Temple or whether she is a member of whatever entity "Greaves" purports to represent. Further, Robbins and "Greaves" have not alleged that they were members of the Satanic Temple when they visited the monument. Therefore, the Satanic Temple could not establish standing based on Robbins's and "Greaves's" purported injuries.

As set forth above, neither Robbins nor "Greaves" has standing to sue in their own right. Therefore, the Satanic Temple could not establish associational standing to sue on their behalves in any case. Further, the proposed complaint requests nominal and compensatory damages that would necessarily be tailored to each member's individual injury. Doc. 17-1 at 13 ¶¶ 4, 5. So, contrary to the proposed intervenors' argument, the action likely would require the participation in the lawsuit of the individual members, and the Satanic Temple could not maintain a suit on their behalves. *See Nebraska Beef Producers Comm. v. Nebraska Brand Comm.*, 287 F. Supp. 3d 740, 750 (D. Neb. 2018).

For each of these reasons, the Satanic Temple cannot establish associational standing, and this Court should deny the motion to intervene.

**IV.   This Court should deny the motion to intervene because the proposed intervenors cannot meet the requirements of Rule 24.**

The proposed intervenors have moved to intervene of right under Rule 24(a) or by permission under Rule 24(b). But they cannot meet the requirements of either portion of Rule 24, and this Court should deny their motion to intervene.

### A.     The proposed intervenors do not have a right to intervene under Rule 24(a).

On timely motion, one may of right intervene in an action who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a).

Here, the disposition of this action will not impair or impede the proposed intervenors' ability to protect their purported interest. The proposed intervenors "principally" claim an interest in placing the Baphomet monument on the capitol grounds. Doc. 17 at 3; Doc. 17-1 at 13 ¶ 3. But this purported interest is plainly *not* an interest in the instant litigation because the Baphomet monument is not similarly-situated to the Ten Commandments monument. Unlike the Ten Commandments monument, the Satanic Temple never received legislative approval for the placement of the Baphomet monument— approval that is required before the Capitol Arts and Grounds Commission could even consider such a request. "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec.*, 922 F.2d 92, 97 (2d Cir. 1990). Therefore, disposition of this action will not impair or impede the Satanic Temple's ability to protect this purported interest.

The proposed intervenors also have not met their burden of showing that the current Plaintiffs do not adequately represent their interest. The proposed intervenors "claim an interest in the Establishment Clause violation alleged by Plaintiffs in the placement of a Ten Commandments monument on public grounds." Doc. 17 at 10. But—accepting for the sake

of argument that the proposed intervenors actually have such an interest—in this regard there is an identity of interest between the proposed intervenors and the Plaintiffs.[14] "Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Washington Elec. Co-op, Inc.*, 922 F.2d at 98.

The proposed intervenors' sole asserted ground for claiming that their interest is not adequately represented by the current Plaintiffs is that they seek different relief—the placement of their Baphomet monument. Doc. 17 at 10. But, again, an interest in obtaining relief in the form of the placement of the Baphomet monument is plainly *not* an interest in *this* litigation. So the proposed intervenors have no interest in this litigation that is not already adequately represented.

The proposed intervenors have failed to show that they are entitled to intervene in this action of right. Therefore, this Court should deny the motion to intervene.

### B.     The proposed intervenors should not be permitted to intervene under Rule 24(b).

One seeking permissive intervention under Rule 24(b) must show (1) an independent ground for jurisdiction; (2) timeliness of the motion; and (3) that the applicant's claim or defense and the main action have a question of law or fact in common. *Flynt v. Lombardi*, 782 F.3d 963, 966-67 (8th Cir. 2015). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the

---

[14] The proposed intervenors cannot even claim to represent a unique religious viewpoint that is not adequately represented already. The Satanic Temple's leaders Misicko and Soling are atheists. Exh. A at 5; Exh. K at 1-2. Misicko has stated that the Satanic Temple embraces "an atheistic philosophical framework that views 'Satan' as a metaphorical construct by which we contextualize our works." Exh. I at 4. Among the current Plaintiffs, Judith Lansky and Anne Orsi are atheists. Doc. 1 at 4 ¶ 9; *Orsi v. Martin*, Case No. 4:18CV00343, Compl. (Doc. 1) at 10 ¶ 22.

adjudication of the parties' rights." *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

Given the proposed intervenors' use of fake and ambiguous names and their lack of standing, they cannot establish an independent ground of jurisdiction. Further, given their lack of legislative approval for the Baphomet monument, they would seek to introduce into this litigation a factually- and legally-distinct claim under the Equal Protection Clause that shares no common questions of law or fact with the current Plaintiffs' claims. The proposed intervenors seek to inject into this lawsuit an issue that is not merely ancillary but actually unrelated to the "main action" before this Court. *Flynt*, 782 F.3d at 967. To allow the proposed intervenors to add their claims to this action would unduly burden this litigation and would likely disrupt the orderly administration of justice. Therefore, this Court should deny the motion to intervene.

## CONCLUSION

"The Satanic Temple" and its claim to be a "religion" are pretexts for Douglas Misicko and Cevin Soling's satirical business and political activities. Their unacknowledged use of fake and ambiguous names and their use of a purposefully-vulgar sexual double entendre in a filing to this Court (posted to social media) demonstrate flagrant contempt for this Court and the judicial process. The proposed complaint is a "sham" and a "frivolity," fails to demonstrate any element of standing, and does not meet Rule 24's requirements for intervention of right or by permission. The proposed intervenors' conduct is beneath the dignity of this Court, and this Court should—at the very least—deny their motion to intervene.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General of Arkansas

By:    */s/ Nicholas J. Bronni*
Nicholas J. Bronni (2016097)
  Solicitor General of Arkansas

Michael A. Cantrell (2012287)
Dylan L. Jacobs (2016167)
  Assistant Solicitors General

ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center Street, Suite 200
Little Rock, AR 72201
Ph:     (501) 682-6302
Fax:    (501) 682-8162
Email: Nicholas.Bronni@ArkansasAG.gov

*Attorneys for Secretary of State Mark Martin*

## CERTIFICATE OF SERVICE

I, Michael A. Cantrell, hereby certify that on July 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Michael A. Cantrell*
Michael A. Cantrell