IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DONNA CAVE, *et al.*                                                    PLAINTIFFS

                                          CASE NUMBER:

        V.

                                          4:18-CV-00342

MARK MARTIN, Arkansas Secretary of State, in his official capacity       DEFENDANT

THE SATANIC TEMPLE, LLC, DOUGLAS MISICKO (aka "LUCIEN        PROPOSED INTERVENORS
GREAVES"), and ERIKA ROBBINS

---

### MOVANT'S REPLY TO STATE'S RESPONSE ON MOTION TO INTERVENE

---

COMES NOW Movants by and through counsel of record with a reply to the State's response (Doc. 24) on their motion to intervene (Doc. 17).

### INTRODUCTION AND SUMMARY

Movants are a religious group which was denied placement of the Baphomet Monument. The Baphomet monument is identical in all constitutionally permissible respects to the Ten Commandments monument. But the Baphomet Monument was prohibited on religiously motivated grounds. This involved 2017 Act 274, which was specifically targeted to preempt a fair and public hearing. These actions violate both the Equal Protection Clause and the Establishment Clause.

Like the principal plaintiffs, Movants seek a court order declaring the Ten Commandments Monument Display Act and the corresponding monument are unconstitutional in motivation and effect.

But movants seek additional and alternative relief from the principal plaintiffs. Movants desire a

court order that the State immediately and permanently affix the Baphomet Monument. Movants also desire a declaration that 2017 Act 274 is unconstitutional in motivation and effect.

Because movants' claims are closely related to this litigation, both in law and fact, it is only reasonable to order their intervention. The alternative is that movants must raise a separate lawsuit, which will largely duplicate this one. At minimum, that would squander judicial resources. At worst, it will result in divergent jury findings of the common issues of fact. This can be avoided by ordering intervention.

<u>**ARGUMENT**</u>

Determining this motion should be done in two steps. First, it must be determined that movants' motion is timely and that they have standing. Next, it should be considered if they are entitled to intervention, or if they should be permitted to intervene.

### Issue 1: Movants' motion is timely

Nobody contests the issue of timeliness. The motion was raised before the parties entered a Rule 26(f) report and they stand ready to adhere to the previously set deadlines. This is a non-issue and merits no further discussion.

### Issue 2: Movants have standing

Standing is a complex constitutional question with an easy answer. If the State's conduct injured the Plaintiff and the Court can fix it, there is standing. The individuals have standing because: (1) they personally visited the Ten Commandments Monument and were offended by it; and (2) the Court can order the State either place the Baphomet Monument, or remove the Ten Commandments Monument.

The Satanic Temple also has direct standing because it wasted money trying to get the Baphomet Monument placed. The State refused to place the Baphomet Monument on religious grounds. This

directly affects The Satanic Temple by taking its money and infringing on its constitutional rights.

Further, The Satanic Temple has associational standing because its members have sustained the injury, this case involves its organizational purpose, and presenting the claim does not require the participation of its individual members.

The Eighth Circuit has extensively discussed standing in the context of a Ten Commandments Monument case.  See ACLU Neb. Found. v. City of Plattsmouth, 358 F.3d 1020 (8th Cir. 2004) ("**Plattsmouth I**") (overturned on other grounds after rehearing by ACLU Neb. Found. v. City of Plattsmouth, 419 F.3d 772 (8th Cir. 2005) (en banc) ("**Plattsmouth II**"), standing discussion affirmed. Id., 419 F.3d at 775 n.4).

Standing is a three-part test:

1.  Is there an "injury in fact" – an invasion of a legally protected interest, which is both:

    (a)  Concrete and particularized; and

    (b)  Actual or imminent, not conjectural or hypothetical;

2.  Did the conduct complained of cause the injury; and

3.  Will a favorable decision fix the situation?

See Plattsmouth I, 358 F.3d 1020, 1027.

Issue 2(a): Erika Robbins has standing

**Step 1: She personally visited the monument and was offended**

The first step is establishing the injury.  The injury question here is straightforward: if a plaintiff has "direct and unwelcome contact" with the monument, then injury-in-fact is established. Freethinkers I, above.  The requirement to personally visit the monument removes standing from "out-of-towners who have read about [the] display and disagree with it."  Freethinkers I, 679 F.3d at 1024 (internal quotations removed) (distinguishing Valley Forge Christian Coll. v. Ams. United for

Separation of Church & State, 454 U.S. 464, 485, 102 S. Ct. 752, ___ (1982)).

In Freethinkers I, one line in the complaint was sufficient to establish injury in fact:

> [Freethinkers] members have come to unwanted contact with the monument and, as a result, have suffered feelings of exclusion, discomfort, and anger.

Freethinkers I, 679 F.3d at 1023 (internal quotations removed).

That language is strikingly similar to ¶ 6 of the complaint in intervention:

> Ms. Robbins personally visited the Ten Commandments monument, was offended by it, and now avoids the capitol grounds as a result.  Ms. Robbins feels that the State treats her as a second-class citizen because of her religious beliefs.

(Doc. 17, at Exhibit 1, ¶ 6).

Erika Robbins' standing is clear.  She personally visited the monument and was offended by it. That is all it takes to establish injury.  Id. ("[W]hile those injuries are largely emotional, we must presume they are sincerely felt.  To the extent that emotional harms differ from other, more readily quantifiable harms, that difference lacks expression in Article III's case-or-controversy requirement.")

*There is no requirement of frequent or regular contact*

In response, the State attempts to inject doubt by adding a new requirement.  According to the State, a plaintiff must also have "frequent or regular contact with the Ten Commandments monument during their regular routines."  (Doc. 24, p. 12).  This novel approach has no basis in settled law.  The Eighth Circuit made it clear in Freethinkers I that the only requirement is personally visiting the monument and being offended.

*There is no requirement of changing routines*

The State also takes issue that Ms. Robbins has not "actively sought to avoid contact with the monument."  (Id.)  This argument is flawed in two ways: (1) she is actively avoiding contact with the

monument; and (2) settled law provides that standing does not disappear with no alteration of behavior.

First, the claim is factually meritless because Ms. Robbins is actively avoiding contact with the monument. She pleaded this in the complaint in intervention:

> Ms. Robbins personally visited the Ten Commandments monument, was offended by it, **and now avoids the capitol grounds as a result**

(Doc. 17, at Exhibit 1, ¶ 6) (emphasis added). As if this were somehow unclear, she also provides in her affidavit:

> **As a direct result of my contact with the Ten Commandments monument, I now avoid the public grounds on which it lies**. This excludes me from Arkansas capitol grounds and thereby prevents me from participating in important policymaking decision at the State legislature. **But for the Ten Commandments monument, I would visit these public grounds**.

(Doc. 17, at Exhibit 1, Erika Robbins affidavit, ¶ 7) (emphasis added). The State's claim simply wrong.

Beyond being factually meritless, the legal argument is frivolous. The Eighth Circuit has rejected the requirement of altering behavior. Freethinkers I, 679 F.3d at 1023-24. This point was previously covered in the motion to intervene. (Doc. 17 at p. 5).

*Conclusion*

Ms. Robbins has established an injury in fact because she personally visited the monument and was offended. It really is that easy.

**Step 2: The State's conduct caused the injury**

The next step is establishing that the Defendant caused the injury. In a religious monument case, causation is simple. As provided in Freethinkers I:

> [T]he alleged injury is the direct and unwelcome contact with an

> Establishment Clause violation. If the Ten Commandments monument violates the Establishment Clause, then its continued display is the cause of that injury.

Freethinkers I, 679 F.3d at 1024.

Here, the State caused Ms. Robbins to be offended by placing a permanent monument which violates the Establishment Clause.

### *There is no requirement to show that Mark Martin personally caused the injury*

The State quibbles that "The complaint contains no allegation that Defendant Martin approved or placed the Ten Commandments monument or failed to approve or place the Baphomet monument." (Doc. 24 at p. 14).

This betrays a fundamental misunderstanding of what it means to sue an individual in his official capacity. See FRCP 17(d). The individual "Mark Martin" is not the defendant. It is the office of the Secretary of State. The office of the Secretary of State has authority over placement of monuments. Thus, contesting the placement of the Ten Commandments Monument and the refusal to place the Baphomet Monument, required suing the office of the Secretary of State.

This also disposes of the State's gripe that "The proposed intervenors' real grievance would appear to be with the Arkansas General Assembly." (Doc. 24 at p. 14). That is not true. The grievance is the continued display of the Ten Commandments Monument and the rejection of the Baphomet Monument.

The State may be arguing that the Defendant's act of placing the offending monument was constitutional because the General Assembly passed a legislative act. This would be a curious argument, and one that could only be made by willfully ignoring landmark constitutional jurisprudence.

It is well-settled law that the legislature has no power to pass religious laws. *E.g.* Sch. Dist. of

Abington Twp. v. Schempp, 374 U.S. 203, 222, 83 S. Ct. 1560, 1571 (1963) ("[I]t has consistently held that the [Establishment] clause withdrew all legislative power respecting religious belief or the expression thereof.")

Finally, the placement of Monuments is within the duties of the Secretary of State. Should the Court order relief, it will be the office of the Secretary of State that either places or removes the Monument. That is why the office of the Secretary of State is the correct defendant.

<p style="text-align:center"><i>Conclusion</i></p>

Ms. Robbins personally looked at the Ten Commandments Monument and was offended. This was the injury that establishes her standing. The office of the Arkansas Secretary of State placed the offensive monument. Thus, the office of the Arkansas Secretary of State caused Ms. Robbins' injury.

### Step 3: a declaratory judgment and injunction will fix her problem

The last step is determining if the Court can fix the injury. This question is easiest of all. The Eight Circuit observed in Freethinkers I that an injunction "or some other form of prospective relief" presumptively establishes for redressibility. Freethinkers I, 679 F.3d at 1022.

Ms. Robbins seeks a declaratory judgment that the Ten Commandments Monument Display Act violates either or both of the Establishment and Equal Protection clauses. (Doc. 17 at Exhibit 1, p. 9). Ms. Robbins also seeks injunctive relief to either require the State to immediately and permanently place the Baphomet Monument or immediately and permanently remove the Ten Commandments Monument. (Id.)

If granted, this will resolve her problem. As provided in her affidavit:

> I am personally affected by the Ten Commandments monument because it is exclusionary to my religious beliefs. **If my religious beliefs were accommodated, specifically by a court order to either erect the Baphomet monument or remove the Ten Commandments monument, my issue would be resolved**. The

placement of the Baphomet monument on public grounds would encourage me to visit these public grounds **by symbolically acknowledging me and my faith and accepting me as a full citizen of the State**.

(Doc. 17 at Exhibit 1, Erika Robbins Affidavit, ¶ 8)

The State provides neither fact nor law on why the above does not establish redressibility. (Doc. 24 at pp. 15-16). This is a non-issue and merits no further discussion.

Issue 2(b): Doug Misicko has standing

For the same reasons that Ms. Robbins has standing, so does Doug Misicko. As with Ms. Robbins, Mr. Misicko watched the raising of the monument and was offended by it. (Doc. 17 at Exhibit 1, ¶ 8).

It is true that "the Establishment Clause does not provide a special license to roam the country in search of wrongdoing and to reveal their discoveries in federal court." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 487, 102 S. Ct. 752, 766 (1982).

But Mr. Misicko is not "roaming the country in search of wrongdoing." He came specifically to Little Rock, Arkansas, to petition for the placement of the Baphomet Monument. This involved at least two trips for the purpose. (Doc. 17, Exhibit 1 at ¶¶ 20, 22).

In one sentence, the State manages to both (1) acknowledge that Mr. Misicko claims he personally visited the monument; and (2) argue that the complaint has no allegation that has had no personal contact with the monument. (Doc. 24 at p. 13). The State makes no effort to resolve this contradiction.

To allay the State's confusion: Mr. Misicko was physically present for the installation of the permanent Ten Commandments Monument. (Doc. 17 at ¶ 8). There is press footage of Mr. Misicko literally in the background as the Monument is lifted by crane from the ground to its foundation.

Arkansas Online *Ten Commandments monument installed on Arkansas Capitol grounds*, Youtube (Apr. 26, 2018) (available at https://www.youtube.com/watch?v=dO6e2fH0e08) (last visited August 2, 2018).

If the State was claiming Mr. Misicko was lying about personally visiting the monument, that claim is belied by basic pleading principals which the State acknowledged in its own brief.  As the State pointed out, "allegations of injury, causation, and redressibility" are taken as true.  (Doc. 24 at p. 10) (citing Liddell v. Special Admin. Bd. of the Transitional Sch. Dist. of St. Louis, 894 F.3d 959 (8th Cir. 2018)).

**Conclusion**

Mr. Misicko has standing because he personally visited the Ten Commandments Monument and was offended.  This was the injury that establishes his standing.  The office of the Arkansas Secretary of State placed the offensive monument.  Thus, the office of the Arkansas Secretary of State caused his injury.  The Court can redress the injury by providing the prospective relief prayed for.

Issue 2(c): The Satanic Temple has standing

The Satanic Temple is not an individual, it is an association.   An association has standing to advocate for its members if:

> (1) its members would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Plattsmouth I, 358 F.3d 1020, 1031 (8th Cir. 2004).

The State cites Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 344 (1977).  This case is rich in discussion for associational standing.  There, the Washington Apple Advertising Commission was found to be an "association," even though it is a singular entity.  Id.

The Supreme Court supports the conclusion with several factors:

1. For all practice purposes, it performed the function of a traditional trade association;

2. Its purpose was the protection and promotion of the state apple industry;

3. In pursuit of that end, it has engaged in advertising, market research, market analysis, public education campaigns, and scientific research; and

4. Its members were the primary beneficiary of its activities, including the prosecution the instant litigation;

Id., 432 U.S. 344-45.

Similarly, The Satanic Temple is an association. The Satanic Temple consists of members who subscribe to its tenets, rituals, and metaphysical ideologies. (Doc. 17, Exhibit 1 at ¶¶ 5-6). Finally, in furtherance of its organizational purpose, it is prosecuting this very litigation. Compare Hunt, above.

The Satanic Temple also has direct standing. As provided in Hunt, an association can have standing on its own behalf in addition to advocating for its members. Hunt, 432 U.S. at 345 ("We note that the interests of the Commission itself may be adversely affected by the outcome of this litigation.")

The Satanic Temple has direct standing because it incurred expenses in seeking the Baphomet Monument, but was denied on unconstitutional religious grounds. It pursued the promotion and publication of its ideals by attempting to place the Baphomet Monument in Arkansas. (Id., ¶¶ 13-20, 31-34). In the course of petitioning for the placement of the Baphomet Monument, it incurred monetary costs. (Id., ¶ 20, 22).

The Satanic Temple also has standing because it was constitutionally wronged on discriminatory grounds. The State enacted religiously motivated legislation which was specifically designed to discriminate against The Satanic Temple. (Id., ¶¶ 23, 29). This is an Equal Protection violation.

The purpose of standing is to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." <u>Hunt</u>, 432 U.S. 345.  There is no shortage of adversity between movants and the State.

*A single entity can be an association*

A single entity can be an association.  <u>Hunt</u>, above.  The State appears to argue that a single entity cannot have associational standing.  (Doc. 24 at p. 16).  <u>Hunt</u> defeats this argument.

## Conclusion

There are several grounds to find that The Satanic Temple has standing.  First, The Satanic Temple has associational standing.  Its members, Robbins and Greaves, have each personally interacted with the monument and were offended as a result.  The State caused their offense by placing the monument. The Court can fix the issue by issuing the prospective relief requested.

Second, The Satanic Temple has direct standing on the Establishment Clause violation.  It incurred monetary costs in petitioning to permanently affix the Baphomet Monument on public grounds.  The State refused on religiously motivated grounds.  It is injured by the loss of money and the infringement of its constitutional rights.

Third, The Satanic Temple has direct standing on the Equal Protection claim.  The State passed a discriminatory law that was specifically designed to preclude a public hearing on whether the Baphomet Monument should be placed.  It is injured by the direct discrimination.

<u>Issue 2 Conclusion</u>

Ms. Robbins, Mr. Greaves, and The Satanic Temple each have demonstrated an independent basis to find standing.  Taken together, they "coalesce . . . to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."  <u>Hunt</u>, above.  There is no shortage of adversity in this case.

Movants should be permitted to intervene because they have standing.

## Issue 3: Movants are entitled to intervene under FRCP 24(a)

Movants are entitled to intervention under FRCP 24(a) if they: (1) file a timely motion to intervene, (2) claim an interest relating to the property or transaction that is the subject of the action, (3) is situated so that is disposing of the of the action may, as a practical matter, impair or impede their ability to protect that interest, and (4) are not adequately represented by the existing parties.

### Issue 3(a): Nobody contests timeliness

The State presents no argument that the motion was not timely.  This is a non-issue.

### Issue 3(b): Movants claims an interest relating to the property or transaction that is the subject of the action

Movants claims an interest relating to the property or transaction that is the subject of the action. A movant has an "interest" if the movant would "gain or lose by the direct legal operation of the judgment."  Kozak, 278 F.2d 110.  The subject property or transaction in this litigation is the unlawful motivation and effect of the Ten Commandments Monument.

Movants' interests in the unlawful motivation and effect of the Ten Commandments Monument is the placement of the Baphomet Monument or the removal of the Ten Commandments Monument.

Judgment from this case will determine whether the Ten Commandments Monument was religiously motivated.  If the Ten Commandments Monument has an unconstitutional motivation or effect, then movants will benefit by the Ten Commandments Monument being removed.  (e.g. Doc. 20, p. 3).

If the principal plaintiffs prevail in removing the Ten Commandments Monument, movants will lose the constitutional leverage to insist on the placement of their own Baphomet Monument.  The Baphomet Monument is admittedly religious in nature.  If the Baphomet Monument stands alone, it

would be just as constitutionally offensive as the Ten Commandments Monument.

Further, movants lack the political power to overcome the "wishes of a passionate majority whose religious views are being established." Plattsmouth I, 358 F.3d at 1030-31. The current Ten Commandments Monument controversy is the best chance movants will have to place their monument. Either removal of the Ten Commandments Monument, or its coronation as a permanent fixture of the capitol landscape will usurp movants from their chance to place their religious monument.

*The Court can order placement of a monument*

The State suggests the alternative relief requested undermines intervention. (Doc. 24 at p. 18). Specifically, the State's argument is that intervention is not available to movants because a "contingency" will be required to place their monument: specifically, enactment of an act similar to the Ten Commandments Monument Display Act. (Id.)

This fundamentally misunderstands the power of the Court. The Court has the power to order removal of a monument. See Freethinkers I, above. If the Court can order removal of a monument, logically it can order the placement of one as well. At minimum, the Court could find that 2017 Act 274 unconstitutionally deprived movants of their rightful public hearing, and order the State hold the public hearing that was wrongly denied the movants.

**Conclusion**

Movants must be permitted to intervene in this case to present their arguments for why placing the Baphomet Monument is the preferable alternative to removing the Ten Commandments Monument. Their claim to relief is inextricably intertwined with this controversy.

<u>Issue 3(c): Movants are situated so that is disposing of the of the action may, as a practical matter, impair or impede their ability to protect that interest</u>

Movants are situated so that is disposing of the of the action may, as a practical matter, impair or impede their ability to protect that interest.  Disposal of the instant case will necessary entail ordering the removal of the Ten Commandments Monument; or finding that the Ten Commandments Monument is constitutional in motivation and effect.

<u>Kozak</u> provides that "in a very real sense, the [intervenors] would be bound, since obviously such a judgment would determine the legal effectiveness of the . . . propriety of defendants' acts, and the result would certainly establish an adverse precedent for the intervenors."  <u>Kozak</u>, 278 F.2d 110.

The same can be said here.  If the State wins the instant case, that will create an adverse precedent for movants' case.  That will impair or impede their ability to seek court orders declaring the Ten Commandments Monument Display Act and 2017 Act 274 unconstitutional.

<u>Issue 3(d): Movants are not adequately represented by the existing parties</u>

This hardly requires discussion.  The State and the Cave Plaintiffs each make clear that they object to placement of the Baphomet Monument.  (Generally, Doc. 23 and Doc. 24).  The existing parties each are adverse to movants' principal requested relief.  They will not represent movants' interests.

> *That movants alternatively seek removal of the Ten Commandments Monument does not does not mean the principal plaintiffs adequately represent them*

That movants alternatively seek removal of the Ten Commandments Monument does not does not mean the principal plaintiffs adequately represent them.  The State claims that this alternative relief means that movants are adequately represented by the Cave Plaintiffs.  (Doc. 24 at p. 19).  This is not so.

<u>Kozak</u> makes clear that this "inadequacy" element has a low bar.  In <u>Kozak</u>, that the plaintiffs did not purport to represent the intervenors' interest, plus a difference in a "sentimental factor," between

the principal plaintiffs and the intervenors was sufficient.  Kozak, 278 F.2d 109.

Movants are seeking the placement of their monument.  The Cave Plaintiffs will not advocate for the placement of the Baphomet monument.  Nobody else will advocate for the Baphomet monument– other than movants.  Thus, movants are inadequately represented.

   Issue 3 Conclusion

Movants are entitled to intervention because their claim to relief is inextricably bound to the Ten Commandments Monument Display Act controversy at issue in the instant litigation.  Disposing of this case will necessarily mean an order that the Ten Commandments Monument Display must go, or that it can stay.

Either will impair movants' ability to seek a court order to place the Baphomet Monument.  If the Ten Commandments Monument is removed, movants will lose the religious plurality argument.  If the Ten Commandments Monument is enshrined, movants will lose the unconstitutional religious motivation argument.

Movants must be granted intervention to argue why the Ten Commandments Monument was unconstitutionally religiously motivated, but the correct relief lies in religious pluralism and not religious abstention.

**Issue 4: Movants should be permitted to intervene under FRCP 24(b)**

If the Court finds movants are not entitled to intervention, it should find movants should be permitted to intervene.  FRCP 24(b) provides for permissive intervention.  Normally, parties seeking permissive intervention pursuant to Rule 24(b) must show: (1) an independent ground for jurisdiction, (2) timeliness of the motion, and (3) that the applicant's claim or defense and the main action have a question of law or fact in common.  United States v. Union Elec. Co., 64 F. 3d 1152, 1170 n. 9 (8th Cir. 1995).

Issue 4(a): Movants have independent grounds for jurisdiction

Movants' independent grounds for jurisdiction are their separate § 1983 claims.  These claims give federal question jurisdiction under 28 USC § 1331 and civil rights jurisdiction under § 1343.  The claims arise from the unconstitutionally religious motivation of 2017 Act 274 to specifically target and preclude the Baphomet Monument.

This is an Establishment Clause claim because the legislature has no power to pass laws are religiously motivated.  Sch. Dist. of Abington Twp. v. Schempp, 374 U.S. 203, 222, 83 S. Ct. 1560, 1571 (1963).

This is also an Equal Protection Clause claim because the legislature also has no power to pass laws to specifically target suspect classes.  Plyler v. Doe, 457 U.S. 202, 216-18, 102 S. Ct. 2382, 2394-95 (1982).  A suspect class is typically those that have been historically "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."  Id. at fn. 14.  Legislation imposing special disabilities upon groups disfavored by virtue of circumstances beyond their control suggests the kind of "class or caste" treatment that the Fourteenth Amendment was designed to abolish.  Id.

Movants' claims are independent from the principal plaintiffs'.  They can establish their own, independent jurisdiction for the Court to consider their claims.  The State makes no issue of their claims being independent from the Cave Plaintiffs' claims.  This is a non-issue.

Issue 4(b): Nobody disputes timeliness

The second element is showing timeliness.  Nobody disputes whether the motion to intervene was timely.  This is a non-issue.

Issue 4(c): Movants' claims have questions of law and fact in common with the instant case

Movants' claims have questions of law and fact in common with the instant case.  Movants' claims

can only be understood in context of the Ten Commandments Monument Display Act controversy.

The controversy serves as the backdrop for why movants first sought to place the monument in Little Rock.  To answer whether 2017 Act 274 was religiously motivated to target movants, it is helpful to understand the facts and circumstances surrounding the Ten Commandments Monument.

Likewise, the Baphomet Monument will be implicated in the principal case.  As evidence that the Ten Commandments Monument is religiously motivated, non-Christian religious monuments which were proposed but declined will surely be considered.

There are also legal issues in common.  The same Establishment Clause legal issues raised by the Cave Plaintiffs are raised by movants.  The legal question of whether the Ten Commandments Monument violates the Establishment Clause is raised by both.  There are very clear questions of law and fact in common between movants' claims and the instant case.

The State argues that the circumstances surrounding placement of the Baphomet Monument and 2017 Act 274 is "unrelated" to the Ten Commandments Monument.  (Doc. 24 at p 22).  This is a preposterous claim.  The whole saga took place simultaneously.  It was the Ten Commandments Monument Display Act that brought The Satanic Temple's organizational efforts to Arkansas.

Issue 4 Conclusion

Movants' claims have a lot of overlap with the principal plaintiffs' claims.  Each set of claims involve questions of law and fact surrounding the placement, motivation, and effect of the Ten Commandments Monument.  Intervention should be permitted because a second lawsuit specifically for movants' claims would squander judicial resources.

The parties would have to undergo two sets of discovery on the placement, motivation, and effect of the Ten Commandments Monument.  Two juries would have to be empaneled to consider the fact issues.  If the two juries rule divergent ways, it would introduce only further confusion.  The only

reasonable alternative is permitting movants an opportunity to be heard.

**Issue 5: Dismantling meritless claims and contentions**

The State makes several meritless claims and contentions throughout its response. To the extent a claim or contention has passable bearing on the analysis, they have been addressed above. This section disposes of the rest.

Issue 5(a): The response is riddled with ad hominem attacks

The State apparently spared no expense in combing the internet for defamatory content against movants. (Doc. 24 at pp. 1-5; Docs. 24-1 – 24-11). One of the States' absurd and baseless assertions are that this litigation is somehow the subject for use in a 2013 "mockumentary." (Doc. 24 at p. 5). This bold conjecture is unsupported by evidence or law and is apparently an attempt to smear the movants' reputations. The worst offense is that it has no bearing on the analysis for whether movants should be entered as a party.

Issue 5(b): Courts do not determine whether something is a "real" religion

The State devotes considerable effort in an endeavor to convincing the Court that The Satanic Temple is not a "legitimate" religion. (Doc. 24, at p. 3, see also pp. 5-9). The State's premise is tainted by the sin of hubris. This position is fundamentally flawed because, "Repeatedly and in many different contexts, we have warned that **courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religion claim**." E.g. Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2778 (2014) (ellipsis removed, full quote at Emp't Div. v. Smith, 494 U.S. 872, 887, 110 S. Ct. 1595, 1604 (1990)).

This point is deeply embedded in Establishment Clause jurisprudence. It is simply no business of Courts to say that what is a religious practice or activity for one group is not religion under the protection of the First Amendment. Fowler v. Rhode Island, 345 U.S. 67, 70, 73 S. Ct. 526, 527 (1953)

(citing Reynolds v. United States, 98 U.S. 145 (1878) and Davis v. Beason, 133 U.S. 333, 10 S. Ct. 299 (1890)).

The purpose behind this "hands-off" doctrine is directly related to the Establishment Clause's essential purpose: to assure that government maintains, "a benevolent neutrality which will permit religious exercise to exist **without sponsorship and without interference**."  See Pielech v. Massasoit Greyhound, 423 Mass. 534, 541, 668 N.E.2d 1298, 1303 (1996) (quoting Walz v. Tax Comm'n of the City of N.Y., 397 U.S. 664, 669, 90 S. Ct. 1409, 25 L. Ed. 2d 697 (1970)) (emphasis added).

The State cites to a "factsheet" published by the Church of Satan, a rival group which claims sole title to the noun "Satanist."  (Doc. 24-5); see also Matirko, Jack "*Lucien Greaves Responds to 'Church of Satan Fact Sheet,'*" Patheos (Oct. 11, 2017) (available at http://www.patheos.com/blogs/infernal/2017/10/lucien-greaves-responds-church-satan-fact-sheet/) (Last visited July 31, 2018).

This approach is categorically barred.  The First Amendment prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization.  Jones v. Wolf, 443 U.S. 595, 602 (1979); Serbian E. Orthodox Diocese for the U.S. & Can. v. Milivojevich, 426 U.S. 696, 709 (1976); Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 449 (1969); Watson v. Jones, 80 U.S. (13 Wall.) 679, 727 (1871).

The State's legal contentions, at Section II, simply lacks any nonfrivolous argument.  See FRCP 11(b).  This point becomes unavoidable when considering that the State fails to cite to a single legal source in the entirety of its Section II.  (Doc. 24, pp. 5-9); compare LCvR 7.2(a) ("All motions . . . shall be accompanied by a brief consisting of a concise statement of . . . applicable law").  Applicable law unequivocally and categorically precludes the State's position.  Fully a quarter of the State's response was designed to waste the Court's time.

<u>Issue 5(c): The complaint in intervention is not purposefully vulgar</u>

The State claims proposed intervenors use "often-deliberately-vulgar" language in the complaint. (Doc. 24, pp. 9-10).  Despite using the word "often," the State can enunciate only one allegedly vulgar instance.  In full, the "offending" paragraph provides:

> Lucien Greaves is a co-founder of The Satanic Temple and serves as its primary spokesman.  Oppenheimer, Mark "A Mischievous Thorn in the Side of Conservative Christianity" New York Times, July 10, 2015, available at https://www.nytimes.com/2015/07/11/us/a-mischievous-thorn-in-the-side-of-conservative-christianity.html  (last visited May 3, 2018).  Lucien Greaves visited Arkansas during the second installation of the Ten Commandments Monument and was personally offended by its erection.

(Doc. 17 at ¶ 8).

In support of the claim, the State cites a single Twitter post which points out the unintentional double-entendre.  The author of the Twitter post had no hand in drafting the legal documents.  Nor did the poster select the language complained of.  This claim is solely meant to distract the Court from the substantive legal arguments raised in the motion to intervene; and the corresponding lack of substance from the State's objections.

<u>Issue 5(d): The complaint in intervention is not collusive to avoid state court</u>

The State propounds, without explanation, that the complaint in intervention is "manifestly . . . a 'sham' and a 'frivolity.'"  (Doc. 24 at p. 10) (citing <u>Liddell v. Special Admin. Bd. of the Transitional Sch. Dist. of St. Louis</u>, 894 F.3d 959 (8th Cir. 2018)).  It speaks volumes that the State is silent on what these words actually mean in the context of a motion to intervene.

As the quotations make clear, "sham" and "frivolity" are legal terms of art.  When reviewing the cited case in <u>Liddell</u>, it becomes clear that they refer to the Court's discretion to refuse improper use of the intervention process.  <u>See</u> <u>Kozak v. Wells</u>, 278 F.2d 104, 113-14 (8th Cir. 1960).  As discussed

in <u>Kozak</u>, "sham" or "frivolity" refer to those litigants who distort the rules.

<u>Kozak</u> also provides that an allegation, without more, is not enough to show sham, collusion, or a device which nullified the application of the rule. <u>Kozak</u>, 278 F.2d at 114. The State provides an allegation and nothing more. Under <u>Kozak</u>, this is insufficient.

<u>Issue 5(e): Robbins and Greaves were members of The Satanic Temple at all times relevant</u>

Robbins and Greaves were members of The Satanic Temple at all times relevant. The State argues that it is not sufficiently clear that the two were members at the time of their injury. (Doc. 24 at p. 17). The claim is factually meritless and lacks legal citation.

**WHEREFORE** Movants pray this Court order that they be included as intervenor-plaintiffs in this case and for all other relief to which they may be entitled.

<div style="margin-left:2em">

Respectfully submitted on August 2, 2018,
On behalf of Movants / proposed intervenor plaintiffs

</div>

By    /s/ Matthew A. Kezhaya    and    /s/ Stuart P. de Haan

| | |
|---|---|
| Matthew A. Kezhaya, ABA # 2014161 | Stuart P. de Haan, AZ Bar No. 026664 |
| | Attorney for Intervenor-Plaintiffs |
| Attorney for Intervenor-Plaintiffs | *Application pro hac vice pending* |
| **PINNACLE LAW GROUP** | de Haan Law Firm, PLLC |
| 3718 S. Pinnacle Hills Pkwy | 100 N Stone Avenue, Suite 512 |
| Rogers, Arkansas 72758 | Tucson, Arizona  85701 |
| phone   (479) 431-6112 | (520) 358-4089 |
| fax      (479) 282-2892 | (520) 628-4275 |
| email   matt@pinnacle.law | stu.dehaan@gmail.com |

### CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, submitted the foregoing to the Court's ECF system, which automatically serves all counsel of record.

/s/ Matthew A. Kezhaya