**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **DONNA CAVE,** *et al.* | **PLAINTIFFS** |
| | **CASE NUMBER:** |
| v. | |
| | **4:18-CV-00342** |
| **MARK MARTIN,** Arkansas Secretary of State, in his official capacity | **DEFENDANT** |
| **THE SATANIC TEMPLE**, **LLC**, **DOUGLAS MISICKO** (aka "**LUCIEN GREAVES**"), and **ERIKA ROBBINS** | **PROPOSED INTERVENORS** |

**MOVANT'S REPLY TO STATE OBJECTION TO PROPOSED AMENDMENTS**

**COMES NOW** Proposed Intervenors, by and through counsel of record, on reply to the State's objection (Doc. 29) to proposed amendments to the motion to intervene (Doc. 25) and the complaint in intervention (Doc. 25-1).

**INTRODUCTION AND SUMMARY**

The original complaint in intervention provided that the proposed intervenors included "The Satanic Temple" and "Lucien Greaves." (Doc. 17-1). In response, the State objected that this insufficiently identified the complaining parties. (Doc. 24 at pp. 1-5). In lieu of bickering over whether it was really "ambiguous" which "The Satanic Temple" and which "Lucien Greaves" were involved, proposed intervenors submitted an amended complaint in intervention which amends the caption to reflect "The Satanic Temple, LLC" and "Doug Misicko (aka Lucien Greaves)."

The State now objects to the change in style. (Doc 29). In reviewing the State's objection in full, it appears that the State simply seeks to reopen the briefing on motion to intervene. The Court should reject the State's invitation. The motion to intervene was fully briefed and is ripe for decision.

The real issues are straightforward: (1) is the complaint in intervention (Doc. 17-1) a "pleading" within the meaning of FRCP 15(a)(1)(A); and (2) if not, is there any harm in changing the caption to clarify the legal names of the complaining parties?

<u>**ARGUMENT**</u>

**1: The complaint in intervention was amended as a matter of course because it is a pleading**

    1.1: Proposed intervenors' amendment to their complaint in intervention is permitted as a matter of course because it was filed within 21 days after service

Rule 15 provides for one amendment to pleadings as a matter of course within 21 days after service. FRCP 15(a)(1)(A). It is beyond dispute that the complaint in intervention had not been amended previously and was amended within 21 days after service.

Proposed intervenors filed their complaint in intervention on July 12, 2018. (Doc. 17). Adding 21 days to July 12 yields a prima facie deadline of August 2, 2018. Proposed intervenors filed their amended complaint in intervention on August 2, 2018. No prior amendments were filed.

    1.2: A complaint in intervention is a "pleading"

The State wrongly argues that the complaint in intervention is not a "pleading" which may be amended as a matter of course. (Doc. 29 at p. 3). Rule 24(c) provides otherwise: "The motion [to intervene] must . . . be accompanied by a **pleading** that sets out the claim or defense for which intervention is sought." FRCP 7 provides that a "complaint" is a "pleading."

The motion to intervene was accompanied by a complaint in intervention. (Doc. 17 and Doc. 17-1). The complaint in intervention sets out the claims for which intervention is sought. Even though it is a complaint in intervention, it is still a "complaint" within the meaning of FRCP 7.

The State attempts to draw a line of distinction between "pleadings" and "proposed pleadings." (Doc. 29 at p. 3) ("[T]he proposed intervenors are presumptuously conducting themselves as if they have already obtained this Court's leave to file their *proposed* complaint as an actual complaint") (emphasis in original).

The Rules do not provide for "proposed pleadings." Nor does Rule 24(c) require a motion to intervene be accompanied by a "proposed pleading." This novel line of argument simply has no basis in law.

### 1.3: The motion to intervene should also be amended because it only includes changes tracking the amendments to the complaint in intervention

The State argues that the motion cannot be amended. (Doc. 29 at p. 2). This argument conflates the purpose of the amendment. The complaint in intervention is necessarily carried by the motion to intervene. FRCP 24(c). Thus, any amendments to the complaint in intervention must be accompanied by amendments to the motion to intervene.

### Issue 1 conclusion

The complaint in intervention should be amended as a matter of course because it is a pleading which was filed within 21 days of its service. Further, the complaint in intervention is necessarily carried by the motion to intervene. If the complaint in intervention is amended as a matter of course, then the motion to intervene should also be amended as a matter of course.

### 2: Alternatively, the Court should give leave to amend because the amendments were stylistic, only

If the Court does not grant amendment as a matter of course, then the Court should grant leave because the amendments were stylistic, only.  FRCP 15(a)(2) provides for amendments other than those as a matter of course if granted by the Court's leave, which should be freely given when justice so requires.

The issue of whether a complaining party should be granted leave to amend was considered in Marco's Franchising, LLC v. Marco's Italian Express, Inc., 239 F.R.D. 686 (M.D. Fla. 2007).  Diligent research reveals no cases in or by the Eighth Circuit on this issue.  In Marco's, the Court used the following standard:

> Absent undue delay, bad faith, or repeated failure to cure deficiencies on the part of a movant; or undue prejudice to the opposing party, the leave [to clarify the name of a complaining party] should be freely given.

Marco's, 239 F.R.D. 686, 688.  The Marco's Court also points out that "the purpose of the rule is to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors.  To allow Defendant's motion would to just that." Id.

Proposed intervenors are identical in every material respect to the Marco's plaintiff.  As here, the Marco's plaintiff filed a complaint mislabeling the legal name of the plaintiff.  On noticing the error, the Marco's plaintiff amended its complaint.  As here, the Marco's Defendant objected.

The Marco's standard is reasonable here.  There is no undue delay, bad faith, or repeated failure to cure a deficiency on the part of the proposed intervenors.

#### 2.1: The amendment from "The Satanic Temple" to "The Satanic Temple, LLC"

There is no prejudice in correcting the caption.  The State raised the issue by complained of the ambiguity and attaching The Satanic Temple's articles of organization. (Doc 24-7).  The State cannot

now complain of The Satanic Temple amending the complaint in intervention to clarify that, indeed The Satanic Temple is the LLC identified by the State.

Nor is there a repeated failure to cure a deficiency. On discovery of the issue, the proposed intervenors promptly submitted an amended complaint in intervention.

### 2.2: The amendment from "Lucien Greaves" to "Douglas Misicko (aka 'Lucien Greaves')"

For the same reasons, the amendment to provide Lucien Greaves's legal name should be granted. The State raised this issue and pointed out the individual's legal name. The State cannot now complain that proposed intervenors amended the caption.

### Issue 2 Conclusion

If proposed intervenors are not permitted the amendment to the complaint as a matter of course, then the amendment should be granted because the amendments were to the caption, only. Specifically, the caption was changed from "The Satanic Temple" to "The Satanic Temple, LLC" and from "Lucien Greaves" to "Douglas Misicko (aka 'Lucien Greaves')." These were inconsequential pleading errors. To permit the caption change would do no injustice because the change corrects errors raised by the State.

## 3: Dismantling meritless claims and contentions

Once again, the State raised several meritless claims and contentions throughout its response. To the extent a claim or contention had a passable bearing on the relevant analysis, they have been addressed above. This section disposes of the rest.

### 3.1: A stylistic amendment is not an invitation to re-brief the merits of the motion

The State attempts to use the stylistic amendment as an open invitation to re-brief the issues of the motion to intervene. (Doc. 29 at pp. 3-14). There is a motion, a response, and a reply. E.g. LCvR

7.2(b). An amendment to the style of a complaint in intervention does not implicate the merits of the motion to intervene.

Despite having fully briefed the motion to intervene, the State drafts an additional ten pages on the merits of the motion to intervene. Beginning with Section II, nothing in the State's response contains anything relevant to the issues involved with the amendment to the caption.

Curiously, the State relies on FTC v. Neiswonger, 580 F.3d 769 (8th Cir. 2009) to support the proposition that issues not raised in the "opening brief" are waived. (Doc. 29 at p. 13) (complaining that proposed intervenors insufficiently raised an argument that The Satanic Temple has standing in its own right because it 'wasted money trying to get the Baphomet Monument placed;' but see complaint in intervention at p. 9 (seeking compensatory damages for The Satanic Temple)).

The State's proposition cuts against itself. All arguments not raised in the State's response to motion to intervene are waived. No response is needed.

### 3.2: The State's ad hominem attacks merit no response

The State has engaged on a course of ad hominem attacks throughout the litigation. (e.g. Doc. 29 at p. 1 (mischaracterizing the amended complaint in intervention at 'blithe and presumptuous;'); p. 4 (handwringing over the use of a semicolon to designate separate proposed intervenors as "poor drafting.")

It should have gone without saying, but ad hominem attacks are neither persuasive nor professional. See Certain Underwriters at Lloyd's v. S. Pride Trucking, No. 8:16-CV-116, 2018 U.S. Dist. LEXIS 108176, at *30 n.15 (D. Neb. June 28, 2018). These attacks merit no further response.

### 3.3: Whether The Satanic Temple is a "real" religion is beyond the scope of this litigation

The State stubbornly argues that proposed intervenors lack standing because they do not hold "real" religious beliefs. (Doc. 29 at pp. 9-12). If the Court deigns to consider this approach–which it

should not, courts are not in the business of adjudicating religious doctrine–the Court will find that this falls hopelessly short of the standard.

Standing in an Establishment Clause case does not require proof that the complaining party has a "real" religion. See Sch. Dist. of Abington Twp. v. Schempp, 374 U.S. 203, 224 n.9, 83 S. Ct. 1560, 1572 (1963):

> [T]he requirements for standing to challenge state action under the Establishment Clause, unlike those relating to the Free Exercise Clause, **do not include proof that particular religious freedoms are infringed**.

(emphasis added).

Nor would it make any sense to require a plaintiff to subscribe to a "real" religion before the plaintiff can show standing. If standing requires a plaintiff to subscribe to a "real" religion, then the State could freely prefer religion over nonbelief. The State cannot do this. E.g. Everson v Board of Education, 330 US 1, 67 S Ct 504 (1947).

All that is required to show injury in fact is a direct and unwelcome contact with the offensive monument. Erika Robbins visited the monument in person and was offended by the State's attempt to establish religion. She has shown injury in fact. She is an adherent of The Satanic Temple. That alone provides The Satanic Temple associational standing to raise the claims of the other members.

Lucien Greaves also visited the monument in person and was offended by the State's attempt to establish religion. He has shown injury in fact.

### 3.3.1: The State's cited cases are impertinent and distinguishable to its point

The various cases cited by the State are also impertinent and distinguishable because they are largely Free Exercise Clause cases. The proposed intervenors' allegations are that the State violated the Establishment Clause (by placing a religious monument) and the Equal Protection Clause (by

excluding all other religious monuments–particularly to include proposed intervenors' monument). The issues do not involve accommodation of proposed intervenors' beliefs.

The State cites <u>Cavanaugh v. Bartelt</u>, 178 F. Supp. 3d 819 (D. Neb. 2016). (Doc. 29 at p. 10). The issue before the <u>Cavanaugh</u> Court was a prisoner's grievance on being prohibited accommodations to don a pirate costume as religious garb. <u>Cavanaugh</u>, 178 F. Supp. 3d at 831. Proposed intervenors are not prisoners seeking redress under RLUIPA (the Religious Land Use and Institutionalized Persons Act, 42 USC § 2000cc et seq.).

The State cites <u>Daniel Chapter One v. F.T.C.</u>, 405 F. App'x 505, 506 (D.C. Cir. 2010) (Doc. 29 at p. 10). It is unclear what connection the State is attempting to draw between <u>Daniel Chapter One</u> and this case. <u>Daniel Chapter One</u> appears to be a deceptive commercial speech decision, particularly regarding the requirement of human clinical trials in commercial claims on dietary supplements advertisements. No statement of facts is included in the brief opinion, but the context suggests that the appellants were making advertising claims which had no objective basis.

The only discussion about religion provides:

> Deceptive commercial speech is entitled to no protection under the First Amendment and, even if it were, that would not preclude the Commission's order, which is carefully tailored to protect DCO's clientele from deception. The Establishment Clause claim is based upon a faulty premise because "scientism" is not a religion.

<u>Daniel Chapter One v. FTC</u>, 405 F. App'x 505, 506 (D.C. Cir. 2010) (internal citations omitted) (citing <u>Peloza</u>, below).

To contrast, the proposed intervenors' claims do not relate to advertising vitamins.

The State cites <u>Peloza v. Capistrano Unified Sch. Dist.</u>, 37 F.3d 517, 521 (9th Cir. 1994). (Doc. 29 at pp. 10-11). <u>Peloza</u> affirms dismissal of a complaint which claimed that the teaching of the scientific theory of evolution was an Establishment Clause violation. <u>See id.</u>, 517 F.3d at 520

("Peloza's complaint alleges that the school district has violated the Establishment Clause "by pressuring and requiring him to teach evolutionism, a religious belief system, as a valid scientific theory.") The theory of evolution is not religion, so teaching science does not advance the cause of a religion. See id.

In relying on Peloza, the State attempts to reverse the analysis. The issue in Peloza, as here (and as in any other Establishment Clause case), is whether the complained-of conduct advances religion. The State is errantly comparing the theory of evolution with Satanism. This is not the correct comparison. The correct comparison is comparing teaching the theory of evolution to the Ten Commandments Monument.

The State also cites United States v. Quaintance, 471 F. Supp. 2d 1153 (D.N.M. 2006) (Doc. 29 at p. 11). There, the Quaintance Court rejected argument that the Religious Freedom Restoration Act (42 USC §§ 2000bb et seq.) protects the possession with intent to distribute approximately 172 pounds of marijuana. Possession with intent to distribute marijuana violates 21 USC § 841.

Quaintance could have been more easily determined by a long line of United States Supreme Court cases on religious beliefs as a defense to crimes. E.g. Reynolds v United States, 98 U.S. 145, 25 L.E.d 244 (1878) (the ban on polygamy is constitutionally sound even though Mormons believed it to be their religious duty to engage in such a practice).

Quaintance is also inapposite because it raises claims of a government burden on exercise of religion. This is not at issue before the Court. The ultimate issues before the Court is (1) whether the Ten Commandments Monument Display Act is government advancement of a religion; and (2) whether 2017 Act 274 is unequal class-based government treatment.

<u>Issue 3 conclusion</u>

The State attempts to use a caption change as an excuse to re-brief the motion to intervene. This is procedurally improper. The State mounts juvenile attacks on opposing parties and counsel. This has no place in federal court. The State continues to press the issue that proposed intervenors lack standing because they are not a "real" religion. This is simply meritless.

**WHEREFORE** proposed intervenors pray this Court accept the amended complaint in intervention as amended: either as a matter of course under FRCP 15(a)(1)(A); or with leave, freely given, under FRCP 15(a)(1)(B).

Respectfully submitted on August 21, 2018,
On behalf of Movants / proposed intervenor plaintiffs

| By | /s/ Matthew A. Kezhaya | and | /s/ Stuart P. de Haan |
|---|---|---|---|
| | Matthew A. Kezhaya, ABA # 2014161 | | Stuart P. de Haan, AZ Bar No. 026664 |
| | | | Attorney for Intervenor-Plaintiffs |
| | Attorney for Intervenor-Plaintiffs | | *Application pro hac vice pending* |
| | Pinnacle Law Group | | de Haan Law Firm, PLLC |
| | 3718 S. Pinnacle Hills Pkwy | | 100 N Stone Avenue, Suite 512 |
| | Rogers, Arkansas 72758 | | Tucson, Arizona 85701 |
| phone | (479) 431-6112 | | (520) 358-4089 |
| fax | (479) 282-2892 | | (520) 628-4275 |
| email | matt@pinnacle.law | | stu.dehaan@gmail.com |

### CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, submitted for filing the foregoing document by uploading it to the Court's ECF system. The ECF system sends automated notice to all counsel of record.

Matthew A. Kezhaya, ABA# 2014161