# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**DONNA CAVE**, *et al.*,                                                                    **PLAINTIFFS**

**EUGENE LEVY**, *et al.*,                                          **CONSOLIDATED PLAINTIFFS**

### Case No. 4:18-cv-00342-KGB

**MARK MARTIN, Arkansas Secretary**
**of State, in his official capacity**                                               **DEFENDANT**

### ORDER

Before the Court is a motion to intervene and an amended motion to intervene filed by the

proposed intervenors:  Satanic Temple, LLC ("Satanic Temple"); Douglas Misicko a/k/a "Lucien

Greaves;"[1] and Erika Robbins (Dkt. Nos. 17, 25).  For the following reasons, the Court grants the

proposed intervenors' amended motion to intervene (Dkt. No. 25).  The Court denies as moot the

motion to intervene (Dkt. No. 17).  The Court directs the proposed intervenors to file their proposed

amended complaint in intervention within seven days from the entry of this Order.

## I.      Background

Donna Cave, Judith Lansky, Pat Piazza, and Susan Russell (the "Cave plaintiffs") filed this

action on May 23, 2018, alleging that Mark Martin, in his official capacity as Arkansas Secretary

of State, violated the Establishment Clause of the First Amendment of the United States

Constitution by complying with the Ten Commandments Monument Display Act, Arkansas Code

---

[1]  Per Federal Rule of Civil Procedure 9(a)(1)(c), "[e]xcept when required to show that the
court has jurisdiction, a pleading need not allege . . . the legal existence of an organized association
of persons that is made a party . . . ."  Here, the Court finds that the Satanic Temple is sufficiently
identified in the proposed amended complaint in intervention (Dkt. No. 25-1).  As to Mr. Misicko,
the Court is also satisfied that he is sufficiently identified in the proposed amended complaint in
intervention (*Id.*).  *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties
. . . .").

Annotated § 22-3-221, and erecting a permanent monument depicting the Ten Commandments on the grounds of the Arkansas State Capitol (Dkt. No. 1, ¶¶ 2, 74-93).  On June 25, 2018, the Court consolidated this action with a similar suit filed by Anne Orsi, American Humanist Association, Freedom From Religion Foundation, Inc., Arkansas Society of Freethinkers, Joan Dietz, Gale Stewart, Eugene Levy, Victor H. Nixon, Teresa Grider, and Walter Riddick (the "Orsi plaintiffs") (Dkt. No. 14).[2]  On July 12, 2018, the proposed intervenors filed a motion to intervene pursuant to Federal Rule of Civil Procedure 24, attaching a proposed complaint in intervention that alleges Mr. Martin violated the Equal Protection Clause of the Fourteenth Amendment and the Establishment Clause of the First Amendment and that seeks either the erection of a Baphomet[3] Monument on or the removal of the Ten Commandments Monument from the Capitol grounds (Dkt. No. 17-1, ¶¶ 35-43).  The Cave plaintiffs and Mr. Martin filed responses in opposition to the motion to intervene (Dkt. Nos. 23, 24), and the proposed intervenors replied (Dkt. Nos. 26, 27).  The proposed intervenors then filed an amended motion to intervene with an amended complaint in intervention attached (Dkt. Nos. 25, 25-1), to which Mr. Martin responded (Dkt. No. 29).

## II.     Operative Motion To Intervene

The Court first addresses the procedural posture of the proposed intervenors' motions to intervene (Dkt. Nos. 17, 25).  On July 12, 2018, the proposed intervenors filed a motion to intervene with a complaint in intervention attached (Dkt. No. 17, 17-1).  On July 27, 2018, Mr. Martin and the Cave plaintiffs filed separate responses in opposition (Dkt. Nos. 23, 24).  On August

---

[2]  The Court refers collectively to the Cave plaintiffs and the Orsi plaintiffs as the "Consolidated Plaintiffs."

[3]  According to the proposed intervenors' proposed amended complaint in intervention, "Baphomet is a goat-headed, angel-winged, androgynous creature" who "represents a reconciliation of opposites and a memorial for those who suffered from witch hunts, religious persecution, and unjust accusations . . . ." (Dkt. No. 25-1, ¶¶ 14, 16).

2, 2018, the proposed intervenors filed an amended motion to intervene and attached to their motion a document described as an "amended complaint in intervention." (Dkt. Nos. 25, 25-1). Mr. Martin maintains that the motion to intervene now pending is not an amendable pleading but concedes that the Court has discretion to permit the proposed intervenors to amend their motion to intervene (Dkt. No. 24, at 2).

As the proposed intervenors are not yet parties to this litigation, the Federal Rules of Civil Procedure do not entitle them to amend a pleading as of right. *See* Fed. R. Civ. P. 15(a) ("A *party* may amend its pleadings once . . . .") (emphasis added). Furthermore, the proposed intervenors' motions to intervene do not qualify under the Federal Rules of Civil Procedure as pleadings. Fed. R. Civ. P. 7(a)(1)-(7) (defining pleadings). For these reasons, the Court considers the proposed intervenors' amended motion to intervene as a motion *seeking leave to amend* their motion to intervene. For good cause shown, the Court exercises its discretion and grants the proposed intervenors leave to amend their motion to intervene. *U.S. v. Ritchie Special Credit Invest., Ltd.*, 620 F.3d 824, 831 (8th Cir. 2012) (holding that courts must "construe Rule 24 liberally and resolve any doubts in favor of the proposed intervenors") (quoting *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995) (omitting citations)).

The Court considers the proposed intervenors' amended motion to intervene and its attachments as the operative filings (Dkt. Nos. 25, 25-1), and the Court denies as moot the motion to intervene (Dkt. No. 17). Allegations in the motion to intervene and amended motion to intervene overlap to a great extent. Therefore, where applicable, the Court will consider arguments raised regarding the motion to intervene as applying to the amended motion to intervene. Further, Mr. Martin filed a response to the amended motion to intervene, which the Court also will consider.

### III.     Timeliness Of Motion To Intervene

As an initial matter, the Court finds timely under Rule 24 the proposed intervenors' original motion to intervene and subsequent amended motion to intervene.  *See Ritchie Special Credit Invest., Ltd.*, 620 F.3d at 832 (holding that the timeliness of a Rule 24 motion "is determined by considering all the circumstances of the case") (quoting *Mille Lacs Band of Cippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993)).  To determine if a motion to intervene is timely, the Eighth Circuit Court of Appeals has held that a district court must consider:  "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties."  *ACLU of Minn. v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1093 (8th Cir. 2011) (citation omitted).  Here, the amended motion to intervene was filed in advance of the deadlines set forth in the Court's initial scheduling order (*see* Dkt. No. 10).  Accordingly, the Court finds that the amended motion to intervene is timely.  Therefore, for good cause shown, the Court will consider the amended motion to intervene and its attachments.

### IV.     The Proposed Intervenors Have Standing Under Article III

"In the Eighth Circuit, a prospective intervenor 'must establish Article III standing in addition to the requirements of Rule 24.'"  *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974-75 (8th Cir. 2004) (quoting *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009)).  To establish Article III standing, a plaintiff must satisfy three requirements:  "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct

complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotes and citations omitted).

Further, even if a plaintiff meets the Article III standing requirements, a plaintiff may still be denied standing:

> if he runs afoul of certain judicially-constructed prudential limits on standing . . . . These prudential concerns include limiting standing to cases where the plaintiff asserts his own rights and interests, not those of third parties, . . . and where the complaint falls within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." . . . The final prudential limitation on standing teaches that a plaintiff has no standing to assert "abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches."

*ACLU Nebraska Found. v. City of Plattsmouth, Nebraska*, 358 F.3d 1020, 1027 (8th Cir. 2004), *reh'g granted and opinion vacated* (Apr. 6, 2004), *on reh'g en banc sub nom. ACLU Nebraska Found. v. City of Plattsmouth, Neb.*, 419 F.3d 772 (8th Cir. 2005) (internal citations omitted). "The standing inquiry is not, however, an assessment of the merits of a plaintiff's claim." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012) (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989)), *reh'g and reh'g en banc denied*, 764 F.3d 948 (8th Cir. 2014).

### A.   Summary Of The Parties' Standing Arguments

The proposed intervenors argue that Ms. Robbins has Article III standing because she has experienced "direct, offensive[,] and alienating contact" with the Ten Commandments Monument and that, as a result of that contact, she now feels like "a second-class citizen in [her] home state and town" and now avoids the Capitol grounds (Dkt. Nos. 17-1, ¶¶ 6-7; 25-1, ¶ 7). Further, they argue that Ms. Robbins has been injured because Mr. Martin will not place the Baphomet

Monument on the Capitol grounds and that her injury will be remedied by either the placement of the Baphomet Monument on the Capitol grounds or the removal of the Ten Commandments Monument (Dkt. No. 25, at 7).  The proposed intervenors argue that Mr. Misicko has standing for the same reasons as Ms. Robbins, though they acknowledge that he is not a resident of Little Rock or Arkansas (*Id.*, at 8).  Finally, they argue that the Satanic Temple has both direct and associational standing to bring these claims (Dkt. Nos. 25, at 8-9; 27, at 10).

Mr. Martin argues that none of the proposed intervenors have standing.  Specifically, he argues that Ms. Robbins and Mr. Misicko have failed to allege "direct and unwelcome contact" with the Ten Commandments Monument and that they therefore lack standing to challenge the installation of the same (Dkt. Nos. 24, at 10-13; 29, at 7-9).  Further, Mr. Martin argues that the proposed intervenors have failed to allege causation or redressability because they did not allege that he "approved or placed the Ten Commandments monument or failed to approve or place the Baphomet monument." (Dkt. Nos. 24, at 13-16; 29, at 9).  Finally, Mr. Martin argues that this Court should find that the Satanic Temple does not have associational standing because, according to Mr. Martin, the Satanic Temple is not a religion, the proposed intervenors' beliefs are not sincerely held, and the beliefs of the Satanic Temple may not qualify as "a philosophy or way of life." (Dkt. Nos. 24, at 16-17; 29, at 9-12).  Mr. Martin also argues that the proposed intervenors did not properly raise the claim that the Satanic Temple has direct standing (Dkt. No. 29, at 13).

### B.     Legal Standard Applied To Evaluate Standing

Typically, this Court construes "a motion to intervene in favor of the prospective intervenor, accepting all material allegations as true." *Liddell v. Special Admin. Bd. of Transitional School Dist. of City of St. Louis*, 894 F.3d 959, 965 (8th Cir. 2018) (citing *A.C.L.U. of Minn. v. Tarke ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011)).  The Court accepts "as true the

movants' allegations of injury, causation, and redressability, unless the pleading reflects a 'sham' or 'frivolity.'" *Liddell*, 894 F.3d at 965 (citing *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960)).

Here, however, defendants challenge standing. The standard this Court applies to a standing challenge depends upon whether the standing challenge is "facial" or "factual." Standing is a matter of subject-matter jurisdiction, and standing is a prerequisite for intervention. *See Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999). "In a facial attack, the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015) (alteration in original) (internal quotation omitted). "Conversely, in a factual attack, the existence of subject matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Branson Label*, 793 F.3d at 914-15 (internal quotation omitted). As a result, in a factual attack, the nonmoving party does "not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Id*. at 915.

In the context of a Federal Rule of Civil Procedure 12(b)(1) motion, the Eighth Circuit explained that a challenge to standing should be treated differently "than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered . . . ." *Osborne v. U.S.*, 918 F.2d 724, 729 (8th Cir. 1990). Further, where the issue in dispute is the trial court's jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Accordingly, if a "defendant thinks the court lacks jurisdiction, the proper course is to request an evidentiary hearing on the issue" and present affidavits or other documents, or even witnesses. *Id*. (citing *Crawford v. United*

*States*, 796 F.2d 924, 928 (7th Cir. 1986)).   "The only exception is in instances when the jurisdictional issue is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id*. (citing *Crawford*, 796 F.2d at 928).   The Court determines that the challenge to standing here is factual, given the type of materials all parties put before the Court in the limited record developed to date in this case.   Therefore, the Court will consider matters outside the pleadings when resolving the standing question.   The Court notes that Mr. Martin has not requested a hearing on the motion, and the proposed intervenors requested that the Court grant the motion without a hearing or entertain a hearing on the motion (Dkt. No. 17, at 1).   Because Mr. Martin did not request a hearing, and because the Court grants the motion for the reasons stated in this Order, the Court opts not to conduct a hearing.

### C.      Standing For Equal Protection Claim:  Satanic Temple

For the following reasons, the Court finds that the Satanic Temple has demonstrated Article III standing to bring claims under the Equal Protection Clause of the Fourteenth Amendment.

### 1.      Injury-In-Fact

The Satanic Temple has sufficiently demonstrated an "opportunity injury" that qualifies as an injury-in-fact.   In the context of an equal protection claim,

> [w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing.

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).[4]  "The inability to compete on equal footing is an injury in fact" for Article III standing

---

[4]  In making these determinations, the Court acknowledges *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009).  The Supreme Court in *Summum* addressed a claim under only the Free Speech Clause of the First Amendment regarding whether a private group could insist that a

purposes. *McDaniel v. Precythe*, 897 F.3d 946, 950 (8th Cir. 2018) (citing *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003)). "Where an organization incurs expenditures to counter the effects of a defendant's unlawful conduct, an organization sustains an injury in fact." *Animal Legal Defense Fund v. Reynolds*, 297 F. Supp. 3d 901, 913 (S.D. Iowa 2018) (citing *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1096-97 (D.C. Cir. 2015)). Furthermore, "[a] religious organization likewise satisfies the injury-in-fact requirement when it alleges that the government has excluded the organization from an opportunity for government benefits based on its religious character." *McDaniel*, 897 F.3d at 950 (citing *Trinity Lutheran Church of Columbia Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017)).

In *McDaniel*, the Eighth Circuit found that the plaintiff, a journalist who covered execution protocols, alleged an injury-in-fact. 897 F.3d at 950. In that case, the plaintiff alleged that the Director of the Missouri Department of Corrections had policies related to the selection of execution witnesses that gave the director "unbridled discretion to deny an adult citizen the benefit of serving as an execution witness based on the individual's viewpoint, expressive or press activity, or membership in a church or other organization." *Id*. at 949. The plaintiff further alleged that he submitted an application to witness an execution but never received a response. *Id*. The Eighth Circuit held that, "as a death penalty reporter," the plaintiff had "a cognizable interest in serving as a witness" and that the plaintiff had alleged an injury-in-fact because the Missouri Department of Corrections' alleged procedures "provided an opportunity to exclude [plaintiff] based on his viewpoint . . . ." *Id*. at 951. As the Eighth Circuit noted, whether the plaintiff's claim had merit— that is, whether the Equal Protection Clause really prevents the State from retaining unbridled

---

municipality permit it to place a permanent monument in a city park; an equal protection claim based on an opportunity injury was not at issue or evaluated in *Summum*.

discretion to select execution witnesses or from considering an applicant's viewpoint—is distinct from whether the plaintiff has suffered an injury-in-fact for standing.  *Id*. (citing *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016)).

With this precedent in mind, the Court next examines Arkansas law regarding the State Capitol building and grounds and its limited understanding of the alleged facts in this matter to determine whether the Satanic Temple has demonstrated an "opportunity injury."  Arkansas law designates the Arkansas Secretary of State as the "legal custodian of the State Capitol building, the grounds, and all the furniture and fixtures thereon and therein belonging to the state."  Ark. Code Ann. § 22-3-202(a).  Arkansas law also grants the Capitol Arts and Grounds Commission ("Commission") the power "[t]o review and recommend to the Secretary of State on the location of monuments . . . on the State Capitol grounds . . . ." Ark. Code Ann. § 22-3-503(a)(2).  The Secretary of State or his designee is the chair of the Commission.  Ark. Code Ann. § 22-3-502(a)(2)(B).

In 2015, prior to the enactment of the Ten Commandments Monument Display Act, Arkansas Code Annotated § 22-3-503(c) governed the process for placing a monument on the State Capitol grounds.  Per the law in effect in 2015, "[a]ny monument on the State Capitol grounds approved by the [Commission] must be authorized by an act of the General Assembly." Ark. Code Ann. § 22-3-503(c) (effective up to February 21, 2017).  The Court understands that this law was in effect when the Ten Commandments Monument Display Act was passed on July 22, 2015, but the Ten Commandments Monument Display Act specifically exempts the Ten Commandments Monument from "§ 22-3-501 *et seq.*"  Ark. Code Ann. § 22-3-221(b)(4)(B).

In September 2015, in response to the proposed Ten Commandments Monument, the Satanic Temple proposed its own Baphomet Monument, and in August 2016, the Satanic Temple

10

submitted a full formal application to the Commission for the placement of the Baphomet Monument on the State Capitol grounds (Dkt. No. 25-1, ¶¶ 13, 18).  On January 25, 2017, a subcommittee of the Commission voted in favor of allowing the Baphomet Monument to proceed to a public comments hearing (*Id.*, ¶ 24).  Then, on February 22, 2017, the General Assembly passed Act 274 of 2017, which amended the process for placing a monument on the State Capitol grounds.  Under the new process mandated by Act 274 of 2017, "[a] monument shall not be constructed on or removed from the State Capitol grounds unless authorized by an act of the General Assembly," and "[t]he commission shall not consider the construction of a monument on the State Capitol grounds . . . without legislative authorization . . . ." Ark. Code Ann. § 22-3-503(c) (effective February 22, 2017).

The Court finds that the Satanic Temple has sufficiently demonstrated an equal protection injury-in-fact based upon a denial of an equal opportunity to place the Baphomet Monument on the State Capitol grounds (Dkt. No. 25-1, ¶ 29).  The Satanic Temple alleges that it is injured as a result of the "special exemptions to the zoning and Arts and Grounds Commission requirements for the Ten Commandments Monument" that were not extended to the Baphomet Monument (Dkt. No. 25-1, ¶ 35).  It also argues that by "placing the Ten Commandments Monument but refusing to place the Baphomet Monument, the State has engaged in unlawful disparate treatment on the basis of religion." (*Id.*, ¶ 38).

The Satanic Temple alleges that it submitted "a full formal application to the Arts and Grounds Commission . . . for placing the monument on Capitol Grounds." (*Id.*, ¶ 18).  The Satanic Temple avers that it sent Mr. Misicko to two subcommittee meetings, wherein the Satanic Temple incurred travel expenses (*Id.*, ¶¶ 20, 22).  The Satanic Temple further alleges that Act 274 of 2017 "reverse[d] the order of operations for monuments on capitol grounds" by requiring the General

11

Assembly to approve the placement of a monument on the State Capitol grounds *before* the Commission may vote on a monument (*Id.*, ¶¶ 26, 28).  The alleged motivation behind Act 274 was "to usurp from [t]he Satanic Temple a fair opportunity for the erection of the Baphomet Monument." (*Id.*, ¶ 29).

As an organization whose "function is to actively provide outreach, to lead by example, and to participate in public affairs wheresoever the issues might benefit from rational, Satanic insights," the Court concludes that the Satanic Temple has demonstrated a cognizable interest in the placement of a Baphomet Monument on the State Capitol grounds (Dkt. No. 25-1, ¶ 6). Second, the Court concludes that the Satanic Temple has suffered an injury-in-fact to that interest due to:  (1) the enactment of the Ten Commandments Monument Display Act, which exempted the Ten Commandments Monuments from the Commission approval process, and (2) the enactment of Act 274 of 2017, which forced the Satanic Temple to first seek legislative approval for its Baphomet Monument, a change from the prior process for approval in which the Satanic Temple had been engaged.  Essentially, as the Court understands the allegations of the proposed amended complaint in intervention, the proposed intervenors allege that both of these statutory enactments denied the Satanic Temple an equal opportunity to compete with the Ten Commandments Monument regarding placement upon the State Capitol grounds.  Accordingly, the Court finds that the Satanic Temple has sufficiently demonstrated an equal protection injury-in-fact based upon a denial of an equal opportunity to place the Baphomet Monument on the State Capitol grounds.

## 2.    Causation And Redressability

The Court also concludes that the Satanic Temple has sufficiently demonstrated that its equal protection injury-in-fact is "fairly traceable" to Mr. Martin and that the relief sought by the

Satanic Temple would redress its alleged injury-in-fact.  Defendant challenges the causation and redressability elements of standing by asserting that the prospective intervenors have not sued the correct defendant and cannot obtain the relief they seek from Mr. Martin.  By engaging in this analysis, the Court does not pass judgment on the merits of the prospective intervenors' claims; the Court examines the issues of causation and redressability solely to evaluate standing at this stage of the proceeding.

According to the proposed amended complaint in intervention:

27.    Before 2017 HB 1273 [Act 274 of 2017], the Arts and Grounds Commission holds a public comment period and decides whether to approve.  If the Arts and Grounds Commission approves, an act of the General Assembly then must enact the construction of the monument.

28.    After enactment of 2017 Act 274, the proponent of any monument must secure an act of the General Assembly prior to consideration by the Arts and Grounds Commission.[5]

(Dkt. No. 25-1, ¶¶ 27, 28).  Further, according to the proposed amended complaint in intervention, the prospective intervenors were prevented from placing the Baphomet Monument after enactment of Act 274 of 2017 because no legislator was willing to assist them in obtaining legislative approval (Dkt. No. 25-1, ¶¶ 32-34).

The amended complaint in intervention names Mr. Martin as Secretary of State in his official capacity as the only defendant and seeks a declaration that "the State has violated the Equal Protection Clause by giving preferential treatment to the Ten Commandments Monument and denying similar treatment for the Baphomet Monument" and a declaration that "the State violated the Establishment Clause by erecting a monument to the Ten Commandments." (Dkt. No. 25-1, at 9).  The proposed intervenors also seek an injunction requiring Mr. Martin to "immediately place

---

[5]    According to the proposed amended complaint in intervention, 2017 HB 1273 was enacted on February 22, 2017, as 2017 Act 274 (Dkt. No. 25-1, ¶ 25).

the Baphomet Monument" or "immediately remove the Ten Commandments Monument" and barring Mr. Martin "from enforcing the Ten Commandments Monument Display Act in the future," as well as awarding the proposed intervenors "all other relief to which they may be entitled . . . ." (*Id*.).

The Eighth Circuit has previously discussed the causation and redressability elements of standing in the context of an equal protection action against a state official.  In *Duit Construction Co. v. Bennett*, 796 F.3d 938, 940 (8th Cir. 2015), Duit Construction Company ("Duit") entered into a contract with the Arkansas State Highway and Transportation Department ("ASHTD") but was forced to provide additional unanticipated services, for which it sought compensation from the ASHTD and then the Arkansas State Claims Commission, both of which denied Duit's claim. 796 F.3d at 939.  Duit then appealed to the General Assembly, as provided by Arkansas law, and the General Assembly affirmed the Claims Commission's adverse decision.  *Id*.  Duit then alleged multiple claims against the ASHTD and the Arkansas State Highway Commission, including an equal protection claim that the Claims Commission gave favorable treatment to in-state contractors.  *Id*.  As relief, Duit sought an injunction that would bar named defendants from accepting federal aid until they complied with the Federal Aid Highway Act of 1956, 23 U.S.C. §§ 101 *et seq.*  *Id*.  The district court dismissed every claim except for Duit's equal protection claim.  *Id*. at 940.

The Eighth Circuit reversed, holding that the district court should have dismissed the equal protection claim because Duit failed to demonstrate the causation and redressability elements of Article III standing.  *Id*.  Specifically, the Eighth Circuit found that Duit could not satisfy the causation element of standing because "Duit failed to sue the Claims Commission or its members, and failed to allege that [the named] defendants—Arkansas highway officials—influenced, or had

14

the authority and ability to influence, the Claims Commission's adjudication of contractor claims against the State." *Id*. at 941.  As to redressability, the Eighth Circuit held that "because defendants have no control over the Claims Commission's practices, they 'have no powers to redress the injuries alleged,' that is, no power to correct the Claims Commission's purported practice of favoring in-state contractor claimants." *Id*. (quoting *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc)).  Indeed, the redressability element was not satisfied because it was "totally speculative" whether the relief sought by Duit—an injunction affecting the ASHTD's federal funding—would have any effect on the practices of the Claims Commission.  *Id*.

The Court concludes that the Satanic Temple has sufficiently demonstrated that its equal protection injury is fairly traceable to Mr. Martin.  As discussed, Mr. Martin is the legal custodian of the State Capitol grounds.  Ark. Code Ann. § 22-3-202(a).  Mr. Martin (or his designee) is empowered by statute to chair the Commission, *see* Arkansas Code Annotated § 22-3-502(a)(2)(A), which has the power "[t]o review and recommend to the Secretary of State on the location of monuments . . . on the State Capitol grounds . . . ." Ark. Code Ann. § 22-3-503(a)(2). While it is true that the allegations and evidence before the Court do not indicate that Mr. Martin played any part in the passage of the Ten Commandments Monument Display Act or Act 274 of 2017, the allegations do indicate that Mr. Martin, as the legal custodian of the State Capitol grounds and chairperson of the Commission, has the authority to carry out those allegedly unconstitutional statutes.  *See Durham v. Martin*, 905 F.3d 432 (6th Cir. 2018) (examining standing when public officials are named defendants); *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014) (same); *Strickland v. Alexander*, 772 F.3d 876, 886 (11th Cir. 2014) (same).  The Court's inquiry at this time is not whether the proposed intervenors succeed in stating a claim against Mr. Martin under Federal Rule of Civil Procedure 12(b)(6) or whether their claims survive on the merits.  Instead,

the Court's inquiry is limited to standing.  For these reasons, the Court concludes that the Satanic Temple has sufficiently demonstrated that its equal protection injury is fairly traceable to Mr. Martin.

The Court also concludes that, to the extent the Satanic Temple seeks placement of the Baphomet Monument and "all other relief to which [it] may be entitled," the Court finds that the relief sought by the Satanic Temple would redress its alleged injury.  The Court interprets the amended complaint in intervention as seeking an injunction of both the Ten Commandments Monument Display Act and Act 274 of 2017.  If both of these Acts are enjoined, then Mr. Martin, as legal custodian of the State Capitol grounds and chairperson of the Commission, arguably is the person to provide the proposed intervenors with a fair opportunity to compete for placement of the Baphomet Monument and has authority to consider placing the Baphomet Monument on the State Capitol grounds.  Thus, the relief sought by the Satanic Temple would redress its alleged injury-in-fact.

To the extent Mr. Martin raises Eleventh Amendment immunity as a basis to challenge causation and redressability, the Court rejects his argument.  "The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  However, "[t]o ensure the enforcement of federal law . . . the Eleventh Amendment permits suits for *prospective* injunctive relief against state officials acting in violation of federal law."  *Id.* (emphasis added) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  "A state official is amenable to suit to enjoin the enforcement of an unconstitutional state statute only if the officer has 'some connection with the enforcement of the act.'"  *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (citing *Ex parte Young,* 209 U.S. at 157); *see*

16

*Duit*, 796 F.3d at 940 (quoting *Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005)).  "Absent that connection, the officer 'is merely . . . . a representative of the state,' and Eleventh Amendment immunity applies."  *Duit*, 796 F.3d at 940 (quoting *Ex parte Young*, 209 U.S. at 157) (other citations omitted).  Based on its analysis, the Court is satisfied that the proposed intervenors' claims are not barred by the Eleventh Amendment.

### D.    Standing For Equal Protection Claim:  Ms. Robbins And Mr. Misicko

At this stage of the litigation and for the following reasons, the Court finds that Ms. Robbins and Mr. Misicko have demonstrated Article III standing to bring claims under the Equal Protection Clause of the Fourteenth Amendment.

### 1.    Injury-In-Fact

As to their equal protection claims, Ms. Robbins and Mr. Misicko have sufficiently demonstrated an "opportunity injury" that qualifies as an injury-in-fact.  As discussed above, "[t]he inability to compete on equal footing is an injury in fact" for Article III standing purposes.  *McDaniel*, 897 F.3d at 950.  Furthermore, in an equal protection case, for standing purposes, the plaintiff need not allege that he or she would have obtained the benefit but for the government's discrimination but instead must only show that the discrimination itself denied the plaintiff an equal opportunity to compete.  *Id.* (citing *Ne. Fla. Chapter of the Associated Gen. Contractors of Am.*, 508 U.S. at 666).

Ms. Robbins and Mr. Misicko both state that they are practicing members of the Satanic Temple (Dkt. No. 17-1, at 1, 3).  Like the Satanic Temple, Ms. Robbins and Mr. Misicko allege that they are injured as a result of the "special exemptions to the zoning and Arts and Grounds Commission requirements for the Ten Commandments Monument" that were not extended to the Baphomet Monument (Dkt. No. 25-1, ¶ 35).  They also allege that the motivation behind Act 274

of 2017 was "to usurp [t]he Satanic Temple a fair opportunity for the erection of the Baphomet Monument." (*Id*., ¶ 29). Both of them also allege that they are "personally affected by the Ten Commandments [M]onument" because they perceive it to be "exclusionary" to their religious beliefs (Dkt. No. 17-1, at 1, 3). Further, they both allege that the placement of the Baphomet Monument upon the State Capitol ground would encourage them "to visit these public grounds." (*Id*., at 2, 4).

Like the plaintiff in *McDaniel*, the Court concludes that Ms. Robbins and Mr. Misicko have shown a cognizable interest in this litigation: namely, as practicing members of the Satanic Temple, Ms. Robbins and Mr. Misicko have demonstrated an interest in seeing the Baphomet Monument given an equal opportunity to be placed upon the State Capitol grounds. By alleging that Mr. Martin has denied them an equal opportunity to compete for a monument on the State Capitol grounds, Ms. Robbins and Mr. Misicko have, at this stage of the litigation, sufficiently demonstrated a judicially cognizable injury-in-fact for Article III purposes.

## 2. Causation And Redressability

As discussed in greater detail earlier in this Order, Article III standing requires a plaintiff to sue the party who has caused the injury-in-fact, and the Eighth Circuit has held that this principle applies to suits against state officials in their official capacities. *Duit*, 796 F.3d at 941 (citing *Okpalobi*, 244 F.3d at 426 (holding that a "plaintiff may not sue a state official who is without any power to enforce the complained-of statute . . . .")). The Court concludes that Ms. Robbins and Mr. Misicko have sufficiently demonstrated that their equal protection injuries are "fairly traceable" to Mr. Martin and that the relief sought by them would redress their alleged injury-in-fact. *See Duit*, 796 F.3d at 941 (stating tests for causation and redressability in actions against state officials). In short, Ms. Robbins and Mr. Misicko allege that Mr. Martin, as legal custodian

of the State Capitol grounds and as chairperson of the Commission, is authorized to enforce the Ten Commandments Monument Display Act and Act 274 of 2017, both of which are allegedly unconstitutional.   Therefore, because Mr. Martin is allegedly responsible for enforcing these purportedly unconstitutional laws, Ms. Robbins and Mr. Misicko have sufficiently demonstrated that their injury-in-fact is fairly traceable to Mr. Martin.

Moreover, the Court finds that Ms. Robbins and Mr. Misicko seek relief that would redress their alleged injury-in-fact.  As to their equal protection claims, the Court interprets Ms. Robbins' and Mr. Misicko's amended complaint in intervention as seeking an injunction of both the Ten Commandments Monument Display Act and Act 274 of 2017 (*see* Dkt. No. 25-1, at 9).   As discussed in other portions of this Order, if both of these Acts are enjoined, then Mr. Martin, as legal custodian of the State Capitol grounds and chairperson of the Commission, arguably is the person to provide the proposed intervenors with a fair opportunity to compete for placement of the Baphomet Monument and has authority to consider placing the Baphomet Monument on the State Capitol grounds.  Thus, the relief sought by Ms. Robbins and Mr. Misicko would redress their alleged injury-in-fact.  Further, the Eleventh Amendment does not bar their claims.

### E.    Standing For Establishment Clause Claims:  Ms. Robbins And Mr. Misicko

For the following reasons, the Court finds that, at this stage of the proceeding, the proposed intervenors have established Article III standing for Ms. Robbins and Mr. Misicko on their Establishment Clause claims.

### 1.    Injury-In-Fact

Ms. Robbins and Mr. Misicko have both established a constitutionally sufficient injury-in-fact.  "The injury-in-fact requirement 'serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.'"

*A.C.L.U. Nebraska Found.*, 358 F.3d at 1028 (quoting *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 689 n.14 (1973)).  The Eighth Circuit has held a "direct and unwelcome personal contact" with a Ten Commandments monument is, by itself, a sufficient injury for standing purposes to maintain a claim pursuant to the Establishment Clause. *Red River Freethinkers*, 679 F.3d at 1023.  Specifically, in *Red River Freethinkers*, the Eighth Circuit found that members of the Freethinkers association who lived in Fargo, North Dakota, had individual standing to challenge a permanent Ten Commandments monument.  *Id*. at 1023-24. Contrary to Mr. Martin's assertion that the Eighth Circuit did not provide guidance on what constitutes "direct and unwelcome personal contact," the Eighth Circuit held that individuals who "encountered the [Ten Commandments] monument were caused 'to feel isolated and unwelcome in the city'" and therefore had suffered an injury-in-fact sufficient for standing purposes.  *Id*. at 1023.  The Eighth Circuit specifically determined that the Freethinkers, who did not allege that any of their members altered their behavior to avoid the Ten Commandments monument, had standing due to the "direct and unwelcome personal contact."  *Id.*

Ms. Robbins' sworn statements in her affidavit accompanying her motion to intervene align with the allegations made by members of the Freethinkers association in *Red River Freethinkers*: Ms. Robbins has encountered the Ten Commandments monument and now feels like a "second-class citizen" in her home city (Dkt. No. 17-1 at 3).  Further, Ms. Robbins avers that the Ten Commandments Monument caused her to alter her behavior by avoiding the public grounds on which the monument is situated (*Id.*).

While Mr. Misicko is not a native of Little Rock, he also describes in his sworn affidavit submitted in support of his motion to intervene "direct and unwelcome personal contact" with the Ten Commandments Monument *via* personal observation of its installation and subsequent

viewings (Dkt. No. 17-1, at 1).  Neither party has directed the Court to precedent indicating that standing is restricted to in-state residents who otherwise have suffered direct and unwelcome contact with allegedly offensive monuments.

Accordingly, based upon the allegations and record before the Court, both Ms. Robbins and Mr. Misicko have sufficiently established an injury-in-fact for their Establishment Clause claims.

### 2.    Causation And Redressability

The Court finds that Ms. Robbins and Mr. Misicko have, at the present point in this litigation, established the causation and redressability elements of standing for their Establishment Clause claims.  As discussed above, Mr. Martin remains the legal custodian of the State Capitol grounds and is the chair of the Commission.  Thus, the Court finds that, at this stage of the litigation, Ms. Robbins and Mr. Misicko have satisfied the causation element of standing against Mr. Martin by asserting that Mr. Martin is responsible for enforcing allegedly unconstitutional laws that caused the injuries-in-fact identified above.  *See Red River Freethinkers*, 679 F.3d at 1025 (finding that allegations that the defendant displayed a Ten Commandments monument, enacted an ordinance prohibiting the removal of that monument, and had a policy of not accepting other monuments was sufficient to establish that the claimed injury was "fairly traceable" to defendant's acts).

Moreover, to the extent Ms. Robbins and Mr. Misicko seek placement of the Baphomet Monument or removal of the Ten Commandments Monument, the Court finds that the relief sought by the Ms. Robbins and Mr. Misicko would redress their alleged injury under the Establishment Clause.  To reach this conclusion, the Court interprets the amended complaint in intervention as seeking an injunction of both the Ten Commandments Monument Display Act and Act 274 of

2017.  If both of these Acts are enjoined, then Mr. Martin, as legal custodian of the State Capitol grounds, arguably has authority under Arkansas Code Annotated § 22-3-503(a)(2) to consider placing the Baphomet Monument or to remove the Ten Commandments Monument.  Thus, for standing purposes, Ms. Robbins and Mr. Misicko have named the correct defendant for their Establishment Clause claim.  The Court also determines their claim is not barred by the Eleventh Amendment.

### F.   Standing For Establishment Clause Claims:  Satanic Temple

The Court finds that the Satanic Temple has demonstrated facts sufficient to establish associational standing on its Establishment Clause claim.  An association has standing to bring suit on behalf of its members when:

> (1) its members would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*City of Plattsmouth, Neb.*, 358 F.3d at 1031 (affirming earlier standing decision).  In *City of Plattsmouth*, the Eighth Circuit found that the American Civil Liberties Union ("A.C.L.U.") had associational standing to challenge a Ten Commandments monument because "the interests at stake are germane to the A.C.L.U.'s purpose of defending citizen's constitutional rights," "[n]either the claim asserted nor the relief requested require the participation of A.C.L.U. members," and the A.C.L.U.'s members would have had standing to bring the same claims as the A.C.L.U. itself. 358 F.3d at 1031.  Ms. Robbins and Mr. Misicko aver that they are both practicing members of the Satanic Temple (Dkt. Nos. 17-1, at 1, 3).  Further, as discussed above, the Court concludes that Ms. Robbins and Mr. Misicko have standing to bring their claims against Mr. Martin and that the interests at stake in this litigation are germane to the Satanic Temple's interests.  Further, the Court finds that the relief sought in relation to the Satanic Temple's Establishment

Clause claim does not require the participation of the Satanic Temple's individual members. Accordingly, based upon the allegations and record evidence before the Court, the Court finds that the Satanic Temple has associational standing to bring its Establishment Clause claim.[6]

### G.     Nature Of Beliefs

Mr. Martin includes material in his filing requesting that this Court find that the Satanic Temple does not have standing because the Satanic Temple is a "satirical parody" rather than a religion and because its adherents' beliefs are not sincerely held (Dkt. No. 29, at 9-11). The law regarding standing permits the Court to inquire whether the pleading reflects a "sham" or "frivolity." *Liddell*, 894 F.3d at 965. The Court will inquire whether the proposed intervenors have engaged in a sham or frivolity, but the Court is not convinced that this inquiry reaches to whether the proposed intervenors' beliefs constitute a religion or whether their beliefs are "sincerely held" as that phrase is used in precedent.

### 1.     Sham Or Frivolity

Mr. Martin seems to request that this Court make findings at this stage of the proceedings that go beyond determining whether the proposed intervenors' claims are a sham or frivolity. To conduct an appropriate inquiry, the Court first examines the meaning of sham and frivolity.

Courts examining antitrust claims may be called upon to assess whether an effort to litigate is a "sham" in the context of antitrust litigation. *See, e.g.*, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993); *Mitsubishi Heavy Indus., Ltd. v. General Co.*, 720 F. Supp. 2d 1061 (W.D. Ark. 2010); *First Am. Title Co. of South Dakota v. South Dakota Land Title Ass'n*, 541 F. Supp. 1147 (D. S.D. 1982). In antitrust litigation, a court must first determine

---

[6]  The Court also finds that the Satanic Temple has direct standing due to the costs it incurred when seeking the installation of the Baphomet Monument.

that a lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically

expect success on the merits." *West Prof'l Educ. Group, Inc. v. Harcourt Brace Legal and Prof'l*

*Publications, Inc.*, No. 3:95-176, 1995 WL 422651, *8 (D. Minn. June 2, 1995) (quoting *Prof'l*

*Real Estate Investors*, 508 U.S. at 60).  Only if the challenged litigation is objectively meritless

may the court then examine a litigant's subjective motivation to determine whether the lawsuit is

an attempt to interfere directly with the business relationships of the competition.  *Id.*  Another

court has explained that a "classic example" of a sham:

> is the filing of frivolous objections to the license application of a competitor, with
> no expectation of achieving denial of the license but simply in order to impose
> expense and delay.  A "sham" situation involves a defendant whose activities are
> not genuinely aimed at procuring favorable government action at all.

*Entergy Arkansas, Inc. v. Nebraska*, 226 F. Supp. 2d 1047, 1144 (D. Neb. 2002) (quoting *City of*

*Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 380 (1991) (internal citations and quotation

marks omitted)).  This Court acknowledges that, under certain circumstances, this doctrine has

been applied outside the antitrust context.  *See Entergy Arkansas*, 226 F. Supp. 2d at 1144 (citing

cases).

To understand frivolity, at least one other court has looked to the frivolousness standard of

28 U.S.C. § 1915(d), which governs the entitlement to *in forma pauperis* standing.  Under that

standard, an action is frivolous only if it has no arguable basis in fact or law.  *West Prof'l Educ.*

*Group*, 1995 WL 422651, at *10 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Ross v.*

*Social Security Administration*, 949 F.2d 1021, 1022 (8th Cir. 1991); *Williams v. White*, 897 F.2d

942, 944 n.1 (8th Cir. 1990) (finding a § 1915 dismissal appropriate where lawsuit is "baseless"

and "plaintiff cannot make any rational argument in law or fact entitling him to relief")).

Based on the record before the Court at this stage, the Court concludes the proposed

intervenors' claims are not a sham or frivolous.  The proposed intervenors' claims are not

objectively baseless in the sense that a reasonable litigant could not realistically expect success on the merits nor do their claims lack an arguable basis in fact or law. There is no record evidence even linking Ms. Robbins to what Mr. Martin characterizes as the "satirical parody." Instead, the record before the Court includes sworn affidavits from Ms. Robbins and Mr. Misicko that they are adherents to and practicing members of the Satanic Temple (Dkt. No. 17-1, at 1-4). The record includes information regarding the beliefs of adherents of the Satanic Temple (Dkt. Nos. 17-1, at 7; 24-5, at 1-8), a description of a schism in Satanism after the death of the man attributed with its founding, Anton LaVey (Dkt. No. 24-6, at 14-18), allegations of the expenditure of funds by the Satanic Temple to create the Baphomet Monument (Dkt. No. 17-1, at 7), and attempts by the Satanic Temple to adhere to a legal process to have the Baphomet Monument placed on the State Capitol grounds (Dkt. No. 17-1, at 9-11). There is no evidence before the Court that the proposed intervenors' actions are not genuinely aimed at procuring favorable government action.

Mr. Martin seeks to have the Court determine at this preliminary stage whether the proposed intervenors' beliefs constitute a religion and whether their beliefs are "sincerely held" as that phrase is used in precedent. Although courts are called upon to make these determinations under certain circumstances, these determinations are not easy. This is not a case that involves a "Pastafarian" or the "Flying Spaghetti Monster." *See*, *e.g.*, *Cavanaugh v. Bartelt*, 178 F. Supp. 3d 819, 823 (D. Neb. 2016) (finding that the religion of "FSMism," which stands for the "Flying Spaghetti Monster," is not a religion within the meaning of constitutional jurisprudence). This case, like many others before it, involves Satanism. *See*, *e.g.*, *Semla v. Snyder*, No. 03-cv-00015-JPG, 2006 WL 1465558, at 11 (S.D. Ill. 2006) (noting that the Illinois Department of Corrections recognized Satanism as a religion); *Carpenter v. Wilkinson*, 946 F. Supp. 522, 525-28 (N.D. Ohio 1996) (examining but not deciding whether Satanism is a religion for purposes of the First

25

Amendment); *Howard v. United States*, 864 F. Supp. 1019, 1024 (D. Colo. 1994) (issuing an injunction allowing a prisoner to practice Satanic rituals where the parties agreed Satanism was a religion; the Bureau of Prisons treated Satanism as a religion).  Other courts have found humanism and atheism to be "religious" for certain purposes.  *See, e.g.*, *Kaufman v. McCaughtry*, 419 F.3d 678, 681-82 (7th Cir. 2005); *Jackson v. Crawford*, No. 12-4018, 2015 WL 506233, at *7 (W.D. Mo. Feb. 6, 2015); *Am. Humanist Ass'n v. United States*, 63 F. Supp. 3d 1274, 1283 (D. Or. 2014).

Further, the Court concludes that neither of Mr. Martin's requested inquiries is necessary at this stage, given the nature of the proposed intervenors' claims.  The proposed intervenors bring a claim under the Equal Protection Clause.  An essential element of an equal protection claim is proof "that the state has failed to treat similarly situated persons alike."  *Abdullah v. Gunter*, 949 F.2d 1032, 1037 (8th Cir.1991); *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 471 (8th Cir. 1991).  The Equal Protection Clause protects fundamental rights and protects against suspect classifications.  Among other things, the Equal Protection Clause prohibits religious discrimination by the state.  *Native American Council of Tribes v. Solem*, 691 F.2d 382, 384 (8th Cir. 1982).  To the extent the proposed intervenors' equal protection claims are based on religious classifications, the compelling interest test likely applies.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  However, the Equal Protection Clause "also protects citizens from arbitrary or irrational state actions."  *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 721 (8th Cir. 1996).  When neither a fundamental right nor a suspect classification is at issue, courts review the equal protection claim under the highly deferential rational basis standard.  *Id.*  The proposed intervenors' equal protection claim cites religion as well as the Fourteenth Amendment to the United States Constitution (Dkt. No. 25-1, at 7-8).  The Court is not at the point in this litigation of determining what level of review applies to the proposed intervenors' equal protection

claim.  Regardless of whether Satanism is a religion or the proposed intervenors' beliefs are sincerely held, based on the limited record before the Court at this stage of the litigation, the proposed intervenors satisfy the elements of standing to bring a claim under the Equal Protection Clause of the Fourteenth Amendment.

The proposed intervenors also bring a claim under the Establishment Clause.  The First Amendment's religion clauses protect religion and, most importantly, religious freedom, "mandat[ing] governmental neutrality between religion and religion, and between religion and nonreligion." *McCreary Cty. v. A.C.L.U. of Ky.*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).  "They embody an idea that was once considered radical: Free people are entitled to free and diverse thoughts, which government ought neither to constrain nor to direct." *Id.* at 881-82 (O'Connor, J., concurring).  The Establishment Clause provides: "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I. Originally the Establishment Clause barred only Congress from establishing religion, but it has since been applied to the states through the Fourteenth Amendment.  *Everson v. Bd. of Educ.,* 330 U.S. 1, 15 (1947); *Tarsney v. O'Keefe*, 225 F.3d 929, 935 (8th Cir. 2000).  As the Supreme Court has explained, the touchstone of an Establishment Clause analysis is the principle that the "First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." *Epperson,* 393 U.S. at 104; *Everson,* 330 U.S. at 15-16.  Favoring one faith over another, or adherence to religion generally, clashes with the "understanding, reached . . . after decades of religious war, that liberty and social stability demand a religious tolerance that respects the religious views of all citizens . . . ." *Zelman v. Simmons–Harris*, 536 U.S. 639, 718 (2002) (Breyer, J., dissenting).  By showing a purpose to favor religion, the government "sends the . . . message to . . . nonadherents 'that they are outsiders, not full members of the political

community, and an accompanying message to adherents that they are insiders, favored members . . . .'" *Santa Fe Indep. School Dist. v. Doe*, 530 U.S. 290, 309-10 (2000) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring)).

Controlling law does not require this Court when assessing standing to bring an Establishment Clause claim to examine the religious beliefs and sincerity of the religious beliefs of the claimant, given that the United States Supreme Court has recognized that the protection of the Establishment Clause applies to religion and nonreligion, as well as between religion and religion. *Compare McCreary Cty.*, 545 U.S. at 883 (O'Connor, J., concurring) ("[The government] may not prefer one religion over another or promote religion over nonbelief."), *with McCreary Cty.*, 545 U.S. at 885-93 (Scalia, J., dissenting) ("[T]he Establishment Clause permits . . . disregard of polytheists and believers in unconcerned deities, just as it permits the disregard of devout atheists."). Mr. Martin cites no contrary controlling authority.

For these reasons, the Court declines to conduct the inquiry requested by Mr. Martin at this stage of the proceedings. To the extent the Court is required to conduct such an inquiry to determine standing, on the record before it, the Court finds that the proposed intervenors have satisfied their burden at this stage of the litigation to establish standing to bring claims under the Equal Protection Clause of the Fourteenth Amendment and the Establishment Clause of the First Amendment.

## V.    Intervention As A Matter Of Right

The Court also finds that the proposed intervenors are entitled to intervene in this action by right. Federal Rule of Civil Procedure 24(a)(2) provides that, on a timely motion, the court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  "Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."  *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999).

As discussed previously, the Court first finds that the amended motion to intervene is timely.  Second, the Court also finds that the proposed intervenors have an interest in the subject matter of this litigation.  As discussed above, the proposed intervenors seek placement of the Baphomet Monument on the State Capitol grounds or removal of the Ten Commandments Monument, both of which are related to the Consolidated Plaintiffs' actions to remove the Ten Commandments Monument.  The Court finds that the proposed intervenors have alleged an interest in the subject matter of this litigation.

Third, the Court finds that a final ruling in this action may impair the interests of the proposed intervenors and that the Consolidated Plaintiffs do not adequately represent those interests.  The Consolidated Plaintiffs bring this action under the Establishment Clause seeking, among other relief, the removal of the Ten Commandments Monument.[7]  The proposed intervenors allege claims under the Equal Protection Clause of the Fourteenth Amendment and the Establishment Clause of the First Amendment, seeking, among other relief, either the installation of the Baphomet Monument or the removal of the Ten Commandments Monument.  While there are various cases governing Equal Protection Clause and Establishment Clause claims in somewhat similar contexts, none of those cases resolve whether intervention as of right is appropriate in the present context.  Here, however, the Consolidated Plaintiffs and the proposed

---

[7]  The Orsi plaintiffs also bring state law claims under the Arkansas Constitution.

intervenors primarily seek different and conflicting forms of relief.  The Court finds that resolution of the Consolidated Plaintiffs' claim might, as a practical matter, impede the ability of the proposed intervenors to protect their interests.  Further, as to the fourth factor, the Court concludes that, given the different and conflicting forms of relief, the Consolidated Plaintiffs do not adequately represent the interests of the proposed intervenors.  The Court therefore finds that the proposed intervenors are entitled to intervene as a matter of right under Rule 24(a)(2).[8]

### VI.   Conclusion

The Court grants the proposed intervenor's amended motion to intervene (Dkt. No. 25).  The Court denies the original motion to intervene as moot (Dkt. No. 17).  The Court directs the proposed intervenors to file their proposed amended complaint in intervention within seven days from the entry of this Order.

So ordered this 17th day of December, 2018.

_Kristine G. Baker_
_____
Kristine G. Baker
United States District Judge

---

[8]   Based upon the same allegations, the Court finds that the proposed intervenors are entitled to permissive intervention under Rule 24(b)(1).