**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **DONNA CAVE, JUDITH LANSKY,** | **PLAINTIFFS** |
| **PAT PIAZZA, and SUSAN RUSSELL** | |

| | |
|---|---|
| **ANNE ORSI, AMERICAN HUMANIST** | **CONSOLIDATED PLAINTIFFS** |
| **ASSOCIATION, FREEDOM FROM** | |
| **RELIGION FOUNDATION, INC.,** | |
| **ARKANSAS SOCIETY OF FREETHINKERS,** | |
| **JOAN DIETZ, GALE STEWART, RABBI** | |
| **EUGENE LEVY, REV. VICTOR H. NIXON,** | |
| **TERESA GRIDER, and WALTER RIDDICK** | |

| | |
|---|---|
| **THE SATANIC TEMPLE, DOUG MISICKO** | **INTERVENORS** |
| **aka "LUCIEN GREAVES," and ERIKA** | |
| **ROBBINS** | |

| | |
|---|---|
| **v.** | **No. 4:18CV00342 KGB/BD** |

| | |
|---|---|
| **JOHN THURSTON, Arkansas Secretary of State,** | |
| **in his official capacity** | **DEFENDANT** |

**BRIEF IN SUPPORT OF MOTION FOR A TEMPORARY STAY PENDING**
***THE AMERICAN LEGION V. AMERICAN HUMANIST ASSOCIATION***

In just a few weeks, on February 27, 2019, the United States Supreme Court will hear argument in *The American Legion v. American Humanist Association*, Case No. 17-1717, 139 S. Ct. 451 (2018). *American Legion* involves the constitutionality of the Bladensburg Cross memorial, a passive display in the shape of a Latin cross located on Maryland state government property. The case presents the question "[w]hether the constitutionality of a passive display incorporating religious symbolism should be assessed under the tests articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), *Van Orden v. Perry*, 545 U.S. 677 (2005), *Town of Greece v. Galloway*, 572 U.S. 565 (2014), or some other test." Case No. 17-1717, Pet. Br. at i.  An opinion is anticipated no later than June.

Like *American Legion*, the central, dispositive issue in the instant consolidated action is the constitutionality of a passive display that incorporates religious symbolism. Because the disposition of the question presented in *American Legion* will control the disposition of the principal claims the Plaintiffs raise here, this Court should temporarily stay all proceedings in this consolidated action pending the Supreme Court's opinion.

The Supreme Court has declared that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In *Landis*, the Court also considered the potential for the disposition of a pending decision to control or at least narrow the issues and assist in the determination of the legal questions, the public interest, and the potential prejudice to any party opposing a stay, given its duration. *Id.* at 253-55; *see Michael v. Ghee*, 325 F. Supp. 2d. 829, 831-33 (N.D. Ohio 2004) (applying *Landis*). A temporary stay is appropriate here, first, because *American Legion* will likely dispose of (or, at a minimum, significantly narrow) the issues in this action. Second, a temporary stay will promote judicial economy and prevent the unnecessary waste of judicial and taxpayer resources. Third, a temporary stay will serve the public interest. And, finally, a temporary stay will not prejudice any party.

I.    ***American Legion* will dispose of—or significantly narrow—the issues before this Court.**

Here, *American Legion* will likely dispose of (or, at a minimum, significantly narrow) the issues pending before this Court by clarifying the legal standard that lower courts apply to evaluate the constitutionality of passive displays. Given the decades-long consensus that Establishment Clause jurisprudence is in disarray, that decision will likely significantly simplify this case. *See, e.g.*, *Cty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh*

*Chapter*, 492 U.S. 573, 656 (1989) (Kennedy, J., concurring in the judgment in part and dissenting in part) ("Substantial revision of our Establishment Clause doctrine may be in order[.]"); *Lynch v. Donnelly*, 465 U.S. 668, 701 n.4 (1984) (Brennan, J., dissenting) (describing the Court's shifting opinions as "puzzling, to say the least"); *see also, e.g.*, *Rowan Cty., N.C. v. Lund*, 138 S. Ct. 2564, 2564 (2018) (Thomas, J., dissenting from the denial of certiorari) ("Sometimes our precedents focus on whether a 'reasonable observer' would think that a government practice endorses religion; other times our precedents focus on whether a government practice is supported by this country's history and tradition."); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring in the judgment) (comparing the Lemon test to "some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried"); *Kondrat'yev v. City of Pensacola, Fla.*, 903 F.3d 1169, 1179 (11th Cir. 2018) (Newsom, J., concurring) ("The Court's Establishment Clause jurisprudence is, to use a technical legal term of art, a hot mess."); *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 552 (10th Cir. 1997) (stating that the endorsement test is "an unworkable standard that offers no useful guidance to courts, legislators or other government actors who must assess whether government conduct goes against the grain of religious liberty the Establishment Clause is intended to protect"); *Gonzales v. N. Twp. of Lake Cty., Ind.*, 4 F.3d 1412, 1417 (7th Cir. 1993) (describing the Lemon test as "much maligned").

The Court's most recent word on passive displays was its June 27, 2005, simultaneous decisions upholding of the constitutionality of a Ten Commandments monument in *Van Orden v. Perry*, 545 U.S. 677 (2005), and striking down as unconstitutional a Ten Commandments display in *McCreary County, Kentucky v. American Civil Liberties Union*

*of Kentucky*, 545 U.S. 844 (2005). These dueling opinions only served to intensify the confusion that recently led the federal district judge considering the very case that would be consolidated with *American Legion* before the Supreme Court to remark that "Establishment Clause jurisprudence is a law professor's dream, and a trial judge's nightmare." *Am. Humanist Ass'n v. Maryland-Nat'l Capital Park*, 147 F. Supp. 3d 373, 381 (D. Md. 2015).

Indeed, in a lament over the Court's passing on an opportunity to clarify the standard for passive displays, Justice Thomas observed in 2011 that "[o]ur jurisprudence provides no principled basis by which a lower court could discern whether *Lemon*/endorsement, or some other test, should apply in Establishment Clause cases." *See, e.g.*, *Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 565 U.S. 994, 997 (2011) (Thomas, J., dissenting from denial of certiorari). That is because, depending on how one parses the Court's precedents, there are potentially as many as six different tests: (1) the direct coercion test, (2) the indirect coercion test, (3) the *Town of Greece* historical-practices-and-understandings test, (4) Justice Breyer's *Van Orden* concurrence contextual test, (5) the objective observer test, and (6) the *Lemon* test. *See Kondrat'yev*, 903 F.3d at 1179 (Newsom, J., concurring) (discussing the various Establishment Clause tests and expressing uncertainty as to which test should be applied to a passive display); *see also Michael*, 325 F. Supp. 2d at 832-33 (holding that the interest of judicial economy weighs heavily in favor of a stay where the Supreme Court's answer to a question of law before it could negate the need for a court to "plod[] through" the motions filed in a large case).

Adding to the current state of legal suspense is the fact that since *Van Orden* and *McCreary County* were decided the composition of the Court has changed. Gone are Chief Justice Rehnquist and Justices O'Connor, Stevens, Souter, Scalia, and Kennedy. Replacing

them are Chief Justice Roberts and Justices Alito, Sotomayor, Kagan, Gorsuch, and Kavanaugh. Such a drastic change in the Court's personnel suggests that the Court is likely to simplify this unclear area, which in recent decades has been highly sensitive to changes in the Court's composition.

Moreover, the Court's willingness to consider *American Legion* given the Court's reticence in recent years to grant certiorari in cases of this kind also suggests that the Court is likely to clarify this area of law. *See, e.g.*, *Mount Soledad Mem'l Ass'n v. Trunk*, 567 U.S. 944 (2012) (denying certiorari in a case challenging a cross-shaped veterans memorial similar to that at issue in *American Legion*) (statement of Alito, J., "This Court's Establishment Clause jurisprudence is undoubtedly in need of clarity . . . ."); *Mount Soledad Mem'l Ass'n v. Trunk*, 134 S. Ct. 2658 (2014) (denying second petition for certiorari).

A stay is warranted when "a federal appellate decision . . . is likely to have a substantial or controlling effect on the claims and issues." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009). Because the Court's decision in *American Legion* will likely simplify and clarify the constitutional claims bearing on the Ten Commandments monument at issue in this consolidated action, a temporary stay is warranted.

## II.   A temporary stay is in the interest of judicial economy and will preserve limited judicial and taxpayer resources.

*American Legion* is likely to significantly narrow the universe of discoverable facts that are relevant to the Establishment Clause analysis, and accordingly, a temporary stay pending the resolution of that case is in the interest of judicial economy. It has become clear that proper development of the facts in this consolidated action will involve an extraordinary amount of discovery. Based on the disclosures in the Rule 26(f) report, filed

before the Satanic Temple Plaintiffs intervened, as many as 42 depositions may be necessary to complete discovery in this case. It is currently anticipated that discovery will involve at least 20 depositions of the parties, including the depositions of the 17 Plaintiffs and various staff members of the Secretary of State's office. In addition, counsel for some of the Plaintiffs has indicated that Plaintiffs intend to seek depositions of nonparties, and the Defendant currently anticipates that he will need to depose an unknown number of nonparties as well. Each deposition will require days to prepare, conduct, and evaluate under the relevant legal standards. If discovery proceeds without a temporary stay, it may become necessary to redepose individuals in light of the Supreme Court's opinion. *American Legion* may also moot potential disputes concerning the scope of nonparty discovery. Further, the Satanic Temple Plaintiffs have not yet submitted their initial disclosures, which can only reveal needs for further discovery.

*American Legion* is likely to significantly narrow the universe of discoverable facts that are relevant to the Establishment Clause analysis. Therefore, a temporary stay of proceedings pending the Court's decision will prevent the unnecessary use of taxpayer resources and economize counsels' and the litigants' time and effort by preventing discovery into matters that turn out to be irrelevant or unnecessary.  It will likewise reduce the risk of needing to conduct supplemental discovery to address additional issues covered by the Court's decision in *American Legion.* Moreover, a temporary stay will avoid wasteful expenditure of effort or resources in identifying and retaining experts without knowing what particular fields of expertise will be considered most relevant to the Establishment Clause analysis—or, indeed, whether experts are needed at all.

Further, the Court's decision in *American Legion* will define the legal standard that binds both this Court and the Eighth Circuit's review of any decision rendered by this Court. Indeed, in the event that the parties file dispositive motions prior to the Court's decision in *American Legion*, supplemental briefing and potentially additional discovery may be necessary in light of that decision. And should this Court issue any ruling before that decision, there is a substantial risk that reconsideration, rebriefing, and additional discovery will be necessary. A temporary stay will avoid the necessity of any such duplicative process while simultaneously negating the need for counsel and this Court to analyze the Ten Commandments monument under multiple Establishment Clause tests.

Because it will preserve judicial and taxpayer resources, a temporary stay is warranted.

### III.   A temporary stay will serve the public interest.

The public interest is served by the economical—and correct—resolution of legal disputes. Any injunction affecting the display of the Ten Commandments monument under a standard that is ultimately superseded will harm the public interest. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) (a state's inability to enforce its duly enacted plans inflicts irreparable harm). Therefore, a temporary stay will serve the public interest and preserve judicial resources by ensuring that the monument is not evaluated under an obsolete legal standard that will potentially require additional proceedings.

Further, a temporary stay will serve the public interest by preventing both the Plaintiffs' and the Defendant's inefficient use of time and resources. The Defendant in this action is the Secretary of State, a public servant who is represented by the Office of Attorney General—whose counselors are also public servants. The taxpayers of the State of Arkansas

have an interest in their public servants' making efficient use of their time and taxpayer-provided resources. The taxpayers likewise have an interest in Plaintiffs counsels' making efficient use of their time and resources, given that the 17 Plaintiffs who have hauled the Defendant into this Court have asserted claims for attorneys' fees—which, should the Plaintiffs prevail, would be paid out of the coffers of the State.

Because it will serve the public interest in the economical and correct resolution of this matter, a temporary stay is warranted.

## IV.    A temporary stay will not prejudice any party.

The requested stay is temporary—five months at most. Although a stay will temporarily postpone these proceedings, *not* granting a stay has at least as much potential to prolong this litigation, given the potential need for reconsideration, rebriefing, and further discovery. In fact, far from imposing hardship on the parties, a temporary stay will bring much needed clarity and focus to the issues and facilitate discovery, briefing, and consideration of the Plaintiffs' Establishment Clause claims. A temporary stay will not prejudice any party. Therefore, a temporary stay of this consolidated action is warranted.

## CONCLUSION

The U.S. Supreme Court's opinion in *American Legion* will dispose of—or significantly narrow—the issues presented in this consolidated action. That opinion will enable this Court, counsel, and the litigants to use their time and resources economically. A temporary stay of this consolidated action will serve the public interest. And it will not prejudice any party. Therefore, this Court should temporarily stay all proceedings in this consolidated action pending the Supreme Court's opinion in *American Legion*.

Therefore, Defendant Secretary of State John Thurston respectfully requests that this Court temporarily stay all proceedings in this consolidated action pending the Supreme Court's opinion in *American Legion*.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By:     /s/ Nicholas J. Bronni
        Nicholas J. Bronni (2016097)
          Solicitor General of Arkansas

        Michael A. Cantrell (2012287)
        Dylan L. Jacobs (2016167)
          Assistant Solicitors General

        OFFICE OF THE ARKANSAS ATTORNEY GENERAL
        323 Center Street, Suite 200
        Little Rock, AR 72201
        Ph:    (501) 682-2007
        Fax:   (501) 682-2591
        Email: Nicholas.Bronni@ArkansasAG.gov

        Gary L. Sullivan, Ark. Bar No. 92051
        Managing Attorney
        Arkansas Secretary of State's Office
        Suite 256- State Capitol
        500 Woodlane Avenue
        Little Rock, AR 72201
        PH: (501) 682-3401; Fax: (501) 682-1213
        Email: gary.sullivan@sos.arkansas.gov

        Hiram Sasser
        Michael Berry
        Lea Patterson
        FIRST LIBERTY INSTITUTE
        2001 West Plano Parkway, Suite 1600
        Plano, TX 75075
        Tel:  (972) 941-6162
        Fax:  (972) 423-6162
        *hsasser@firstliberty.org*
        *mberry@firstliberty.org*
        *lepatterson@firstliberty.org*

        *Attorneys for Secretary of State John Thurston*

## CERTIFICATE OF SERVICE

I, Michael A. Cantrell, hereby certify that on January 23, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

        /s/ Michael A. Cantrell
        Michael A. Cantrell