IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DONNA CAVE, *et al*.                                                                PLAINTIFFS

ANNE ORSI, *et al*.,                                             CONSOLIDATED PLAINTIFFS

THE SATANIC TEMPLE, *et al*.,                                                  INTERVENORS


V.                              Case No. 4:18-cv-00342-KGB

JOHN THURSTON, Arkansas Secretary of State
in his Official Capacity                                                             DEFENDANT

**BRIEF IN OPPOSITION
TO MOTION FOR TEMPORARY STAY PENDING
THE UNITED STATES SUPREME COURT'S DECISION IN
*THE AMERICAN LEGION V. AMERICAN HUMANIST ASSOCIATION***

**INTRODUCTION**

This case was filed to challenge the recent erection of a Ten Commandments monument on the Arkansas State Capitol grounds.  The monument was placed on the State Capitol grounds after public hearings and public comment.  Plaintiffs

1

expect to prove that the monument was placed to express the state's preference for a particular version of the Christian religion.  The evidence will show that the monument was authorized by Act 1231 of 2015.  The Act specifies a certain version of the Ten Commandments to be placed on the State Capitol grounds.  The Act also provides a purported secular justification for the monument that Plaintiffs submit the evidence will show is a transparent sham.  Hearings were held and comments were made about the proposed monument, and there was substantial coverage in the media.  These hearings show that both the opponents and many of the proponents believed that the monument was religious in nature.  Indeed, hundreds of supporters provided a comment that essentially acknowledges the religious inspiration behind the monument.  Exhibit A is an example of the form letter sent by proponents.

    The monument was approved after a hearing at which the primary proponent of the monument, Sen. Jason Rapert, instructed the Arts and Grounds Commission that it had no choice but to approve the monument.  Exhibit B.  The monument was provided by a private group, the Arkansas History and Heritage Foundation.  The religious motivation of that organization will also be made clear after discovery.  Plaintiffs expect to prove that the AHHF views both the text and the symbolism on the monument as religious in nature.  Exhibit C.

The monument was originally placed on the State Capitol Grounds on or about June 27, 2017. That monument was destroyed within twenty-four hours. On April 26, 2018, a second monument was placed. A ceremony at which the monument was unveiled was actively protested by some, including some Plaintiffs and Intervenors in this case. Less than a month later, on May 23, 2018, this action was filed.

In *Am. Humanist Ass'n v. Maryland-Nat'l Capital Park & Planning Comm'n*, 874 F.3d 195 (4th Cir. 2017), *cert. granted sub nom. The Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 451 (2018), and *cert. granted*, 139 S. Ct. 451 (2018) (*American Legion*) plaintiffs challenged the state government maintaining and displaying a 40-foot Latin cross. The United States District Court for the District of Maryland granted summary judgment for the defendant. The plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit reversed. On June 25, 2018 and June 29, 2018, the Maryland defendants and American Legion intervenors filed petitions for writ of certiorari to the Supreme Court. The Supreme Court granted the petitions on Nov. 2, 2018.

On Jan. 23, 2019, Secretary of State John Thurston moved for a stay of all proceedings in this case.

# ARGUMENT

The Secretary of State has not met his burden of demonstrating a need for a stay that outweighs the harm to others. First, a stay is not warranted as the *American Legion* case and this one are significantly different. Second, the *Orsi* Plaintiffs will be harmed by allowing violations of their constitutional rights to continue as the case remains stalled. In addition, the *Orsi* Plaintiffs will be unable to conduct necessary discovery if a stay is granted.

## I. Defendant bears a heavy burden to establish a need for a stay

The proponent of a stay bears the burden of establishing its need. *Clinton v. Jones,* 520 U.S. 681, 708 (1997), *citing Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936). The Supreme Court has cautioned against stays that will cause harm to the nonmoving party:

> [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis,* 299 U.S. at 255. In *Clinton,* the Court recognized that even though discovery had proceeded, "delaying trial would increase the danger of prejudice

resulting from the loss of evidence, including the inability of witnesses to recall specific facts…" 520 U.S. at 707–08.

These and other harms to the nonmoving party must be outweighed by the interests asserted by the party seeking a stay. *See Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.,* 713 F.2d 1477, 1484 (10th Cir. 1983).

**II. Review of the *American Legion* case by the Supreme Court does not establish a need for a stay in this case because the cases are substantially different.**

Establishment Clause cases are inherently "fact-sensitive." *Lee v. Weisman*, 505 U.S. 577, 597 (1992). Each display is "judged in its unique circumstances." *Lynch v. Donnelly*, 465 U.S. 668, 694 (1984) (O'Connor, J., concurring); *accord McCreary Cty. v. ACLU,*, 545 U.S. 844, 867-68 (2005); *Van Orden v. Perry,* 545 U.S. 677, 700 (2005) (Breyer, J., concurring). Because of the "highly fact-specific nature of the inquiry," the Court's "jurisprudence in this area has refrained from making sweeping pronouncements and this case is ill suited for announcing categorical rules." *Salazar v. Buono*, 559 U.S. 700, 722 (2010). Accordingly, any ruling of the Supreme Court on the Bladensburg cross is likely to be moored to the facts at hand.

There are indeed, significant differences between the *Maryland-Nat'l Capital Park & Planning Comm'n* and *American Legion* cases and this one. Both

5

petitioners in those cases presented questions that focus on the unique nature of the 93-year-old memorial cross. *See* Exhibit D ("Whether the Establishment Clause requires the removal or destruction of a 93-year-old memorial to American servicemen who died in World War I solely because the memorial bears the shape of a cross."); Exhibit E ("Whether a 93-year-old memorial to the fallen of World War I is unconstitutional merely because it is shaped like a cross.").

With a distinct focus on both the long-standing nature of the display and the fact that the display also serves as a war memorial, a determination in the Maryland and *American Legion* cases are unlikely to control this case.

**III.   Every proposed "test" to the Supreme Court retains the requirement that the state must act with a primarily secular purpose.**

The government defendant in the *American Legion* case does not argue that the Supreme Court should abandon the *Lemon* test. Nor does it assert that *Van Orden* displaces *Lemon*. Thus, both the primary Petitioner (the government) and the Respondents agree that *Lemon* should remain the test. The intervenor American Legion, however, asked the Court to reconsider *Lemon* posed by the following question presented:

> 2. Whether the constitutionality of a passive display incorporating religious symbolism should be assessed under the tests articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), *Van Orden v. Perry*, 545 U.S.

6

677 (2005), *Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014), or some other test.

Exhibit E.

As discussed below, none of the three cases cited, or any other test likely to be announced by the Court, authorizes a governmental action with the purpose of promoting a particular version of a particular religion. Under *Lemon, Van Orden*, and *Town of Greece,* government action violates the Establishment Clause if it betrays a sectarian purpose, such as a purpose to proselytize.[1]

The Court has long recognized that "'[i]t is not a trivial matter'" to require "a secular purpose" because that "'requirement is precisely tailored to the Establishment Clause's purpose.'" *Edwards v. Aguillard*, 482 U.S. 578, 586-87 (1987) (citation omitted); *see McCreary*, 545 U.S. at 874 ("purpose needs to be taken seriously under the Establishment Clause"). Manifesting "a purpose to favor one faith over another, or adherence to religion generally, clashes with the 'understanding, reached . . . after decades of religious war, that liberty and social stability demand a religious tolerance that respects the religious views of all citizens.' " *Id.* at 860 (citation omitted).

---

[1] The case of *Town of Greece v. Galloway*, 572 U.S. 565 (2014) did not announce any "test" at all. Rather, it simply determined whether Greece's practice fit "within the tradition" of *Marsh v. Chambers*, 463 U.S. 783 (1983); *see also id.* at 603 (Alito, J., concurring) ("All that the Court does today is to allow a town to follow a practice that we have previously held is permissible for Congress and state legislatures.").

The secular purpose requirement exists independent of *Lemon*. It is part of the Court's "settled" jurisprudence and long predates *Lemon*. *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 8-9 (citing, *inter alia*, *Wallace v. Jaffree*, 472 U.S. 38 (1985); *Epperson v. Arkansas*, 393 U.S. 97 (1968); *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963); *Torcaso v. Watkins*, 367 U.S. 488 (1961); *Everson v. Board of Education*, 330 U.S. 1 (1947)). Years before *Lemon*, the Court announced in *Schempp*: "[W]hat are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution." 374 U.S. at 222. *Lemon* simply "encapsulate[s] the essential precepts of the Establishment Clause," including the purpose requirement. *Allegheny*, 492 U.S. at 590-91. *See also Wallace*, 472 U.S. at 55-56.

Before and since *Lemon*, the absence of a primary secular purpose for challenged government displays and practices has been dispositive in many of the Court's cases. *See, e.g., McCreary*, 545 U.S. at 859-60; *Wallace*, 472 U.S. 38; *Edwards*, 482 U.S. at 586-93; *Stone v. Graham*, 449 U.S. 39, 41-43 (1980) (per curiam); *Torcaso*, 367 U.S. at 489-90; *Epperson*, 393 U.S. at 107-08.

Under *Lemon*, a government's display must (1) "have a secular purpose;" (2) not have the "effect" of advancing or endorsing religion; and (3) "not foster an excessive entanglement with religion." *Gonzales v. North Tp. Of Lake County,*

*Ind.*, 4 F.3d 1412, 1418 (7th Cir. 1993). The display "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987).

When the government places "'an instrument of religion'" on its property, its purpose can "presumptively be understood as meant to advance religion." *McCreary*, 545 U.S. at 867 (citation omitted). The government can overcome this presumption by proving a secular purpose, which must be the "pre-eminent" and "primary" force and "not merely secondary to a religious objective." *Id.* at 864 (citations omitted).

In *McCreary*—which involved a display that originated with a solitary Ten Commandments plaque—the government failed to rebut that presumption. *Id.* at 869. Thus, the Ten Commandments violated the Establishment Clause under the purpose prong.   Significantly, the Court reaffirmed the longstanding and "intuitive importance of official purpose to the realization of Establishment Clause values," and refused to "abandon *Lemon*'s purpose test," finding the argument as "seismic" as it is "unconvincing." 545 U.S. at 861.

That same day, in *Van Orden*, *supra*, although the plurality jettisoned the latter two prongs of *Lemon*, it adhered to *Lemon's* secular purpose inquiry, finding "no evidence of such" a "primarily religious purpose in this case." 545 U.S. at 691 n.11. The plurality merely said the full "test" was "not useful" for "the sort" of

9

display Texas erected, which was a six-foot-tall Ten Commandments monument that was integrated into a unified-museum-like setting depicting "the state's political and legal history." *Id.* at 681, 686, 688-90.

Justice Breyer's controlling concurrence expressly stated that *Lemon* would continue to be "useful," even in dual-significance cases. *Id.* at 700. Like the plurality, Justice Breyer adhered to, and applied, *Lemon*'s purpose inquiry, concluding that the display served a "primarily nonreligious purpose." *Id*. at 703. Justice Breyer ultimately applied the entire *Lemon* test, concluding that the display neither advanced religion nor created "an 'excessive government entanglement.'" *Id*. at 703-04.

Lastly, in *Town of Greece*, *supra*, the Court held that a legislative prayer practice is unconstitutional if it "betray[s] an impermissible government purpose." *Greece*, 134 S. Ct. at 1824 . It lacks a permissible purpose if, inter alia, it is used as an "opportunity to proselytize." *Id*. at 1825-26.

In sum, it is highly unlikely the Court will adopt a test that abandons the secular purpose requirement. And that requirement is a central issue in this case.

**IV. The *Orsi* Plaintiffs will be harmed by a stay**

When deciding whether to grant preliminary injunctions in First Amendment cases, courts have frequently recognized the harm to plaintiffs. Similarly, when considering whether to stay proceedings when a permanent injunction is sought,

the court should consider the ongoing nature of the injuries. Plaintiffs' allegations of ongoing direct, unwelcome contact with their local government's religious exercise is sufficient, without more, to satisfy the irreparable harm prong for the purposes of an injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006). This is so because the First Amendment rights Plaintiffs seek to vindicate rank among the most fundamental in our society. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (quoting same). Thus, in Establishment Clause cases, the injury caused by government endorsement of religion "occurs merely by virtue of the government's purportedly unconstitutional policy or practice establishing a religion, without any concomitant protected conduct on the movants' part." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 302. Plaintiffs' First Amendment injuries by coming into contact with the Ten Commandments monument as this case proceeds constitute an ongoing harm.

Plaintiffs are seeking an injunction and not retroactive relief. A stay is more difficult to justify in a case involving allegations of continuing harm and a request for "injunctive or declaratory relief" than in a suit seeking "only damages." *See Lockyer v. Mirant Corp*, 398 F.3d 1098, 1112-13 (9th Cir.) (vacating stay where "the Attorney General seeks injunctive relief against ongoing and future harm").

**V. The *Orsi* Plaintiffs may be deprived of the opportunity to conduct meaningful discovery if this case is delayed as the Defendant asks**

This lawsuit was filed within a month of the installation of the Ten Commandments monument on the State Capitol grounds. Since that time, a new Secretary of State has been sworn in and some of the employees of the former Secretary of State have moved on. Depositions of individuals associated with the American History and Heritage Foundation (AHHF) will have to be scheduled. Those individuals are not represented by any of the attorneys in this case (at least insofar as their capacities as principals of AHHF are concerned). If the cooperation of those witnesses cannot be acquired by agreement, it will be necessary to subpoena them for depositions. Trial is currently set in June. Defendants have shown no good cause that the trial should be moved. The *Orsi* plaintiffs have sought in good faith to arrange for the scheduling of these necessary depositions, but as of the date of this filing not a single deposition has been scheduled.

## CONCLUSION

The basis for the Secretary of State's motion is that this case is so similar to *American Legion* that any ruling by the United States Supreme Court will necessarily change the rules of law that govern this case. That basis is fundamentally flawed. There is a difference of 93 years between the facts in

American Legion and the circumstances that will govern the result in this case. The allegations of this case are that the Ten Commandments monument was recently placed. The public perception was that the monument was religious in nature. The motivation of the proponents and particularly the group that supplied the monument was religious in nature. The Supreme Court may or may not see fit at some time to revisit the *Lemon* test, but there is no reason to believe that the Supreme Court will decide that a state may promote a particular version of a religion over all others where there is no secular justification for doing so.

WHEREFORE, Defendants' Motion to Stay should be denied.

Respectfully Submitted

MONICA L. MILLER
Attorney for Plaintiffs
American Humanist Association
1821 Jefferson Place N.W.
Washington, D.C. 20036
Telephone: (202) 238-9088
Facsimile: (202) 238-9003
Email: mmiller@americanhumanist.org
CA Bar: 288343 / DC Bar: 101625

DAVID A. NIOSE
Attorney for Plaintiffs
American Humanist Association
1821 Jefferson Place N.W.
Washington, D.C. 20036
Telephone: (202) 238-9088
Facsimile: (202) 238-9003
Email: dniose@americanhumanist.org
MA Bar: 556484/ DC Bar 1024530

PATRICK C. ELLIOTT
Senior Counsel
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
(608) 230-8443
WI Bar No. 1074300

Baker Schulze Murphy and Patterson
2311 Biscayne Drive
Suite 300
Little Rock, AR 72227
Telephone: (501) 537-1000
Facsimile: (501) 537-1001
www.bsmp.law

/s/ J.G. "Gerry" Schulze
J.G. "Gerry" Schulze
Attorney at Law
Ark. Bar No. 83156
gschulze@bsmp.law

## CERTIFICATE OF SERVICE

I, J.G. "Gerry" Schulze, hereby certify that I have filed the above and foregoing document through the Court's Electronic Filing System, which will serve a copy on all counsel.

/s/ J.G. "Gerry" Schulze
J.G. "Gerry" Schulze