**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DONNA CAVE, JUDITH LANSKY, PAT PIAZZA, and SUSAN RUSSELL** — **PLAINTIFFS**

**ANNE ORSI, AMERICAN HUMANIST ASSOCIATION, FREEDOM FROM RELIGION FOUNDATION, INC., ARKANSAS SOCIETY OF FREETHINKERS, JOAN DIETZ, GALE STEWART, RABBI EUGENE LEVY, REV. VICTOR H. NIXON, TERESA GRIDER, and WALTER RIDDICK** — **CONSOLIDATED PLAINTIFFS**

**THE SATANIC TEMPLE, DOUG MISICKO aka "LUCIEN GREAVES," and ERIKA ROBBINS** — **INTERVENORS**

**v.** **No. 4:18CV00342 KGB/BD**

**JOHN THURSTON, Arkansas Secretary of State, in his official capacity** — **DEFENDANT**

**BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENAS**

The Federal Rules of Civil Procedure provide that a subpoena that is annoying, oppressive, or unduly burdensome should be quashed. Fed. R. Civ. P. 26(c)(1) & 45(d)(3)(A)(iv). Here, the *Cave* Plaintiffs have served two subpoenas, both of which are calculated to annoy, oppress, and unduly burden two officials serving at the Capitol during the most intensive portion of the legislative session. In addition, the *Cave* Plaintiffs' subpoenas are premature due to both the lack of sufficient opportunity for prior appropriate investigation into the Satanic Temple Intervenors' claims and the presently unascertainable legal standard governing passive displays. The Court should quash the subpoenas.

## I. The *Cave* Plaintiffs' subpoenas are calculated to annoy, oppress, and unduly burden the subpoenaed officials during the most intensive part of the legislative session.

As the parties serving a subpoena, the *Cave* Plaintiffs have an affirmative duty to "take reasonable steps to avoid imposing undue burden . . . on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The court . . . *must* enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.* (emphasis added). Further, a court *must* quash or modify a subpoena that subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv); *see* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .").

Kelly Boyd is the Chief Deputy for Commissioner of State Lands Tommy Land. Kerry Jucas Moody is Director of Communication and Education for Secretary of State John Thurston. Besides serving their elected constitutional officers, Mr. Boyd and Ms. Moody are also each heavily involved in the work of the Arkansas General Assembly's current legislative session.

Mr. Boyd is responsible for advising the Legislature and testifying before various committees on bills bearing on numerous matters coming within the Commissioner of State Lands' orbit. These include the agency's budget and appropriations; land records; property taxes; public auctions; redemption; penalties; patents; mineral leases and permits; and oil and gas leases and royalties. This also includes other matters concerning the 10-agency Natural Resources Committee, of which the Commissioner is the chair.

As Director of Communication and Education for the Secretary of State, Ms. Moody is likewise responsible for, along with many other matters, documenting the legislative

session; providing support to the legislators in historical matters; managing and coordinating visitors' observations of the legislative session and related activities and events; and dealing with press inquiries concerning the session. Mr. Boyd and Ms. Moody have little-to-no control over the various demands that the legislative session makes of their time and attention.

The session requires long hours and a focused staff. During the legislative session—especially the latter portion—from mid-March to mid-April—the Legislature's activity is intense and fast-paced. To craft and pass appropriate legislation, both legislators and the state officials at the Capitol who serve them devote their attention to ensuring that the information they need is properly available, communicated, and assessed. Because the Arkansas General Assembly meets for several weeks only once every two years, time is of the essence.

The *Cave* Plaintiffs have subpoenaed Mr. Boyd and Ms. Moody, commanding them to appear for depositions on March 13 and 14, 2019 (Exh. A; Exh. B), during the busiest time of the legislative session. Compelling Mr. Boyd and Ms. Moody to prepare and sit for a deposition *right now*—when the official demands placed on their time are at an apex and there is no need for urgency—singularly subjects them to undue burden, oppression, and annoyance. The Defendant has communicated this to the *Cave* Plaintiffs. But they have unreasonably refused to withdraw their subpoenas.

In light of that unreasonable refusal and the lack of any circumstances creating an urgent need for these depositions to proceed at this moment, the *Cave* Plaintiffs have violated their affirmative duty to "take reasonable steps to avoid imposing undue burden . . . on a person subject to the subpoena." Fed. R. Civ. P. 43(d)(1). The conclusion is

inescapable that the subpoenas are calculated to annoy, oppress, and unduly burden these officials during the legislative session. Therefore, the Court should quash the subpoenas and impose an appropriate sanction under the Rules.

## II. Without either an opportunity for ordinary investigation or an ascertainable legal standard, the *Cave* Plaintiffs' subpoenas are doubly premature.

The *Cave* Plaintiffs' subpoenas are premature for two reasons: (1) because the Satanic Temple Intervenors have recently brought new plaintiffs and new claims into this lawsuit that need investigation before depositions begin; and (2) because, although the governing legal standard is presently unascertainable, the Supreme Court has signaled that it is set to clarify it very soon.

### *A. It is unduly burdensome to be compelled to defend depositions without sufficient opportunity to investigate the Satanic Temple Intervenors and their claims.*

The Satanic Temple Intervenors have recently brought three new plaintiffs and entirely new Equal Protection claims into this litigation. The Defendant has not had sufficient opportunity to investigate these Intervenors and their claims. Being compelled to defend depositions now, without the benefit of such ordinary investigation, would unduly burden the Defendant by prejudicing his ability to mount a proper defense. Therefore, the *Cave* Plaintiffs' subpoenas are premature and improper given the recent intervention by the Satanic Temple Intervenors. The Court should quash them.

### *B. It is unduly burdensome to be compelled to defend depositions when the legal standard is unascertainable and the Supreme Court signaled that it is set to clarify it soon.*

On February 27, the U.S. Supreme Court held oral argument in *The American Legion v. American Humanist Association*. That argument left little doubt that the Court intends to

clarify the legal standard governing passive displays. The greater part of the argument concentrated on what the appropriate legal standard will be in passive display cases.

Given that the lower court found the Bladensburg Cross unconstitutional using the *Lemon* test, there was much discussion of whether the Court should expressly repudiate that standard. Tr. of Oral Arg.[1] at 19, 64, 67-71, 82, 89-92, *The Am. Legion v. Am. Humanist Ass'n*, Case No. 17-1717 (U.S. Feb. 27, 2019) (hereinafter, "Tr."); *see Lemon v. Kurtzman*, 403 U.S. 602 (1971). Justice Gorsuch noted that "a majority of this Court, though never at the same time, has advocated for *Lemon*'s dismissal." Tr. 67. He asked, "Is it time for this Court to thank *Lemon* for its services and send it on its way?" Tr. 67.

Further discussing the confusion among circuit courts concerning how *Lemon* applies, Justice Gorsuch characterized the test as a "dog's breakfast." Tr. 19. He observed that the courts of appeal continue to cite and apply *Lemon*, even though "[i]t's been a long time since this Court has applied [that test]," and "it has resulted in a welter of confusion . . . by anyone's admission." Tr. 67. Justice Gorsuch then asked, "what about all those poor court of appeals judges who are left still with confusion? . . . So what – I mean, is it really fair on the lower court judges struggling to apply this Court's dictates if we don't provide an answer on *Lemon*?" Tr. 67-68. Chief Justice Roberts and Justice Kavanaugh agreed, with the latter stating: "And to Justice Gorsuch's point, the lower courts need some clarity about that." Tr. 69; *see id.* at 63-64.

The justices seemed favorable to acting Solicitor General Jeffrey Wall's argument that the Court should extend the test from *Town of Greece* and the dissent in *Allegheny County*, under which one "trace[s] a practice back to the founding or you look to see whether it's

[1] The transcript of the oral argument is available online at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2018/17-1717_7l48.pdf.

akin to the kind of acknowledgements that the founders and the early generation thought were permissible, and you ask whether it presents any greater dangers than that." Tr. 34; *see* Tr. 32-36, 44; *see also Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014); *Cty. of Allegheny v. ACLU*, 492 U.S. 573, 655 (1989) (Kennedy, J., concurring in the judgment in part and dissenting in part). Chief Justice Roberts, in particular, expressed interest in articulating an easily-applicable test along these lines, favorably referring to former Judge Michael McConnell's amicus brief, which describes six conditions that constituted an "establishment of religion" at the founding. Tr. 29; *see* Tr. 81-82.

The merits of various other tests were also discussed. These include *Buono*'s "objective meaning" test, Tr. 10-12; *see Salazar v. Buono*, 559 U.S. 700 (2010), versions of the coercion test, Tr. 17-32, an objective factors test, Tr. 80-81, and the endorsement and objective observer tests, which counsel for the American Humanist Association argued should not be applied, Tr. 31, 36, 66, 79, 80, 82. Finally, the applicability of the tests to Ten Commandments displays was expressly discussed at various points. Tr. 43, 48, 55-56, 59-62, 70-71. General Wall explained that the same reasoning applies to war memorials, Ten Commandments, holiday displays, and other forms of symbolic expression. Tr. 43.

As the Defendant explained in the briefing on his motion for a temporary stay, the universe of relevant and discoverable facts will be significantly impacted by the test that the Supreme Court applies in *American Legion*. Discovery simply cannot be divorced from the legal framework that controls the disposition of a claim or defense. *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to matters "relevant to any party's claim or defense"). The applicable legal standard determines the scope of matters relevant to the claims and defenses at issue, which impacts the countless choices made throughout discovery, like how

thoroughly to inquire into a particular matter, how much to insist on a particular point, or whether to elicit contextualizing facts.

The governing legal standard thus determines not only the universe of relevant facts but also the relative value of each relevant fact for a claim or defense. Given that the governing legal framework in this case will be unascertainable until the Supreme Court's decision in *American Legion*, the Defendant's ability to mount a proper defense would be prejudiced by being compelled to defend the depositions of Mr. Boyd and Ms. Moody in ignorance of what particular legal standard will apply.

Especially when combined with the fact that the Defendant has not had sufficient opportunity to investigate the Satanic Temple Intervenors and their claims, the present lack of an unascertainable legal standard is doubly burdensome. The Court should quash the subpoenas.

## CONCLUSION

The *Cave* Plaintiffs' subpoenas are calculated to annoy, oppress, and unduly burden Mr. Boyd and Ms. Moody during the most intensive portion of the legislative session. Although they have an affirmative duty to avoid unduly burdening persons subject to a subpoena, the *Cave* Plaintiffs have unreasonably refused to withdraw them. In addition, it is unduly burdensome to the Defendant to be compelled to defend a premature deposition without either a sufficient opportunity to investigate the Satanic Temple Intervenors' claims or an ascertainable legal standard. The Court should quash the subpoenas.

Therefore, the Defendant respectfully requests that the Court quash the *Cave* Plaintiffs' subpoenas and impose an appropriate sanction under the Rules.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

_/s/ Michael A. Cantrell_
Nicholas J. Bronni (2016097)
Solicitor General of Arkansas
Michael A. Cantrell (2012287)
Dylan L. Jacobs (2016167)
Assistant Solicitors General
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Ph: (501) 682-2007
Fax: (501) 682-2591
Email: Nicholas.Bronni@ArkansasAG.gov

Gary L. Sullivan, Ark. Bar No. 92051
Managing Attorney
Arkansas Secretary of State's Office
Suite 256- State Capitol
500 Woodlane Avenue
Little Rock, AR 72201
PH: (501) 682-3401; Fax: (501) 682-1213
Email: gary.sullivan@sos.arkansas.gov

Hiram Sasser
Michael Berry
Lea Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel: (972) 941-6162
Fax: (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Attorneys for Secretary of State John Thurston*

**CERTIFICATE OF SERVICE**

I, Michael A. Cantrell, hereby certify that on March 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Michael A. Cantrell*
Michael A. Cantrell