IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DONNA CAVE, et al                                       **PLAINTIFF**

V.                          Case No. 4:18-cv-00342-KGB

MARK MARTIN, Arkansas Secretary of State
in his Official Capacity                              **DEFENDANT**

## *ORSI* PLAINTIFFS' BRIEF IN SUPPORT OF
## RESPONSE TO MOTION TO QUASH

These depositions were noticed by the *Cave* Plaintiffs, but the *Orsi*

Plaintiffs' local counsel planned to attend, and hoped to use these depositions to

secure proof of matters relevant to the determination of this action.

The subpoenas issued in this case were not calculated to annoy, oppress, or

unduly burden anyone. They were, to the contrary, issued because of the complete

inability of the Plaintiffs to secure any agreement from the Defendant as to the

depositions of the persons with the most knowledge of matters relevant to this

case. In support of his motion to quash, the Defendant restates arguments made in

support of his Motion to Stay. The Court has not yet ruled on that motion, but

made clear in the Rule 16 conference that was held on this matter that no stay is currently in place. As of this moment, the closest thing to a scheduling order in effect in this case is the order of this court of June 14, 2018 which proposed a Final Scheduling Order that would require discovery to be completed no later than March 27, 2019.  Plaintiffs cannot rely on the good faith of the Defendant not to refuse to participate in any discovery after that date.

Considering the good faith efforts that have been made to secure the depositions of employees of the Defendant with the most knowledge of the circumstances of this case, the suggestion that the subpoenas are calculated to annoy, oppress, and unduly burden these witnesses can hardly be made in good faith.

I.      **The subpoenas were not calculated to annoy, oppress, or unduly burden the subpoenaed officials but to gather evidence.**

Plaintiffs have a good faith reason to believe that the two individuals subpoenaed are among the most knowledgeable about the actions of the Defendant in regard to the placement of the Ten Commandments monument. Plaintiffs are somewhat in a bind to prove any facts regarding the placement of the monuments because of the refusal of the Defendant to admit even the clearest and most obvious foundational facts. Defendant denies, for example, that the Arkansas Democrat Gazette is the most widely circulated newspaper in the state of Arkansas. (Exhibit 2. Response to Request for Admissions Number One).  This fact is not

terribly important. The Court should take judicial notice of this nearly indisputable fact. However, this is an example of the type of difficulty that the parties have had securing even the most obvious concessions from the Defendant in this case.

More significant for the purposes of this deposition, the *Orsi* plaintiffs selected relevant pages from documents that Plaintiffs reasonably believe will be shown to have been produced by the Defendant in response to a Freedom of Information request.  The two individuals who have been subpoenaed can either verify the authenticity of these documents or can identify the individual who can. It is this type of game playing by the Defendant that has made it necessary for the Plaintiff to issue the subpoenas issued in this case.

Defendant contends that as these two employees of the state work for constitutional officers, they are entirely unavailable throughout the entire legislative session. No evidence is given as to whether either of these employees were actually scheduled to be doing anything else during the hours set aside for their depositions. The Court is asked to simply accept on faith that any employee of a constitutional officer will be too busy to testify while the legislature is in session. This is far short of the proof that should be required of an individual seeking to avoid a properly issued subpoena, particularly under the facts of this case where the defendant has refused steadfastly to cooperate in the discovery necessary for this case in any manner.

**II.      Depositions of individuals with knowledge constitute "ordinary investigation."  There is a relevant legal standard at this time.**

Defendant contends that the intervention by the Satanic Temple brings in new claims that need investigation before depositions begin.  Depositions of persons with knowledge *are* investigation.

Defendant anticipates that the United Supreme Court will wipe clean all guidance as to the meaning of the Establishment Clause of the First Amendment.  That is unlikely, and it is also unlikely that the *American Legion v. American Humanist Association* case will have much impact on this one.

> **A.      The Satanic Temple has raised new legal issues, but the factual circumstances of the installation of this monument remain the same.**

The Satanic Temple's complaint in intervention introduces few new facts and has no impact on how the deposition of the Defendant's employees should proceed.  Further, that the Satanic Temple's involvement should come as no surprise to anyone.  The Satanic Temple has been involved in this controversy since almost the beginning.  Defendant had little trouble compiling an *ad hominem* attack on the intervenors in response to the motion to intervene.  There is not any fact discovery that cannot be handled using the ordinary mechanisms of discovery provided by the Federal Rules of Civil Procedure.

**B.     The transcript of the oral argument *in The American Legion v. American Humanist Association* leaves little doubt that whatever the outcome of that case, it will provide little guidance as to the outcome of this one.**

The oral argument in *The American Legion v. American Humanist*

*Association* began as follows:

> MR. KATYAL: Thank you, Mr. Chief Justice, and may it please the
> Court:
> There are four important facts about the memorial at issue, the Peace
> Cross, that explain why it should not be dismembered or destroyed.
>          First, families and the Legion built it 93 years ago to
> commemorate 49 brave souls who gave their lives in World War I,
> and it has stood for -- since that time without challenge.
>          Second, it's no ordinary cross. At its center, in its heart, is the
> American Legion symbol. It's gigantic. And at the base in four capital
> -- huge capital letters are words: Valor, Endurance, Courage,
> Devotion.
>          Third, not a single word of religious content appears anywhere;
> rather, the base has a nine-foot plaque listing the 49 names with an
> inscription to them.
>          And, fourth, the monument is situated in Veterans Memorial
> Park alongside other war memorials.

Not one of these four facts applies to this case.  This case involves a

monument that was recently constructed. There is not even the hint that it was done

as a war memorial. The pretext, that a Ten Commandments monument is somehow

a monument to the law, is so flimsy that the evidence will show even the

proponents of this monument (excepting, of course, the elected officials) were, for

the most part, not even aware of the pretext. The entire monument contains

religious text, all directly adapted from the Christian and Jewish scriptures. While

there is other symbolism on the monument most of it is religious in nature

including stars of David, the Chi-Rho symbol of Christ, the all-seeing eye, and the two tablets at the top of the monument which the evidence will show originated with Cecil B. DeMille's *Ten Commandments* movie.  Finally, there is no other similar monument, to "law" or otherwise, on the State Capitol grounds.

Throughout the argument, the fact that the Bladensburg monument had been in place for almost a century plays a central role. The fact that historically soldiers' graves frequently were marked with the cross also plays a central role.

The Defendant will likely contend, as it did in its Reply Brief in support of its motion to stay, that the *Orsi* Plaintiffs are simply arguing the merits of the case rather than the merits of the motion. However, by asking the court to delay any action in this case on the speculation that the Supreme Court will render the Establishment Clause a dead letter, the Defendant necessarily forces us into discussing the merits of this case.  Whatever change the Court makes, there is no hint in the oral argument that the Supreme Court is going to rule that with no credible secular purpose in mind, a state may proselytize for its most widely-practiced religion with a monument in its favor.

## CONCLUSION

Defendant's Motion to Strike is without merit.  It is argument unsupported by facts.  It is a rehash of its Motion to Stay.

This response was crafted in haste, given that the depositions have been set for next week.  The *Orsi* Plaintiffs seek a ruling in time to guarantee that the witnesses will honor the subpoena and appear, as there is little time left to reschedule the depositions before March 27, 2019.

WHEREFORE, Defendants' Motion to Quash should be denied.

Respectfully Submitted

MONICA L. MILLER
Attorney for Plaintiffs
American Humanist Association
1777 T Street N.W.
Washington, D.C. 20009
Telephone: (202) 238-9088
Facsimile: (202) 238-9003
Email: mmiller@americanhumanist.org
CA Bar: 288343 / DC Bar: 101625

DAVID A. NIOSE
Attorney for Plaintiffs
Law Offices of David Niose
348 Lunenburg Street, Suite 202
Fitchburg, MA 01420
Telephone: (978) 343-0800
Email: dniose@nioselaw.com
MA Bar: 556484/ DC Bar 1024530

PATRICK C. ELLIOTT
Senior Counsel
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
(608) 230-8443
WI Bar No. 1074300

(Petition for *Pro Hac Vice* pending)


Baker Schulze Murphy and Patterson
2311 Biscayne Drive
Suite 300
Little Rock, AR 72227
Telephone: (501) 537-1000
Facsimile: (501) 537-1001
www.bsmp.law


J.G. "Gerry" Schulze
Attorney at Law
Ark. Bar No. 83156
gschulze@bsmp.law