IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **DONNA CAVE, JUDITH LANSKY,** <br> **PAT PIAZZA and SUSAN RUSSELL** | **PLAINTIFFS** |
| **ANNE ORSI, AMERICAN HUMANIST** <br> **ASSOCIATION. FREEDOM FROM** <br> **RELIGION FOUNDATION, INC.,** <br> **ARKANSAS SOCIETY OF FREETHINKERS,** <br> **JOAN DIETZ. GALE STEWART, RABBI** <br> **EUGENE LEVY, REV. VICTOR H. NIXON,** <br> **TERESA GRIDER and WALTER RIDDICK** | **CONSOLIDATED PLAINTIFFS** |
| **THE SATANIC TEMPLE, DOUG MISICKO** <br> aka **"LUCIEN GREAVES," and ERIKA** <br> **ROBBINS** | **INTERVENORS** |
| vs.              Case Number: 4:18-cv-00342-KGB | |
| **JOHN THURSTON, Arkansas Secretary** <br> **of State, in his Official Capacity** | **DEFENDANT** |

**CAVE PLAINTIFFS' RESPONSE TO**
**DEFENDANT'S MOTION TO QUASH SUBPOENAS**

> THE COURT:  I will state in the 'for whatever it's worth' column, there's no stay in effect right now.  I anticipate that everyone is cooperating and proceeding forward in good faith with discovery to the extent that's appropriate under the federal rules.

Tr. from Telephone Conference (Jan. 25, 2019), attached as Ex. 1.

Despite this Court's clear admonition to all counsel to cooperate in good faith in the conduct of discovery, Defendant steadfastly refuses to allow the only two depositions noticed in this case.  Defendant's motion is without merit and should be denied.

A party seeking to quash a subpoena bears "a particularly heavy" burden.  *DatCard Sus. v. PacsGear, Inc.*, No 11-mc-0025, 2011 U.S. Dist. LEXIS 67648 (D. Minn. Apr. 25, 2011); *St. Jude Packaging & Specialties, Inc. v. World Color, Inc.*, No. 4:06CV01717-WRW, 2007 U.S.

Dist. LEXIS 53977 (E.D. Ark. 2007) ("The burden of proving that a subpoena is oppressive is on the party moving to quash and is a heavy one") (internal quotation marks & citations omitted). *See* 9A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2463.1 (3d ed. 2008). This high threshold for a party seeking to prevent discovery is appropriate given that parties have the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This broad scope of discovery is based on the recognition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials.").

Here, Defendant does not assert any evidentiary privilege that would bar either witness from testifying at a deposition. Defendant also has not argued that the testimony of either subpoenaed witness is irrelevant to the claims or defenses of the parties. Nor could he, as he repeatedly identified these witnesses in both his Rule 26(a) initial disclosures and his most recent responses to the *Cave* Plaintiffs' written discovery requests.[1]

---

[1] Defendant disclosed Kelly Boyd in his Initial Disclosures (served Aug. 8, 2018). Under Rule 26(a)(1)(A)(i), the individuals identified in this disclosure are "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Defendant also identified Kelly Boyd repeatedly in Defendant's Amended Responses to *Cave* Plaintiffs' First Set of Interrogatories (served Nov. 16, 2018). And in Defendant's Amended Responses to *Cave* Plaintiffs' First Set of Requests for Production (served Nov. 16, 2018); Kelly Boyd's name appears in roughly 140 of the 412 pages of documents Defendant identified.

Similarly, Defendant disclosed Kerry Jucas in his Initial Disclosures (served Aug. 8, 2018). He also identified Kerry Jucas in several of Defendant's Amended Responses to *Cave* Plaintiffs' First Set of Interrogatories (served Nov. 16, 2018).

Given the nonprivileged, and unquestionably relevant nature of the proposed depositions, Defendant's remaining arguments to avoid engaging in discovery do not withstand scrutiny.

**The depositions are not unduly burdensome.** Defendant claims that both witnesses have too many responsibilities and demands on their time to sit for a deposition. But the party moving to quash a subpoena must prove that the subpoena is unreasonable or oppressive, and unsupported proclamations by defense counsel do not provide the necessary evidentiary support for this claim. To the contrary, the movant "cannot rely on the mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." *Federal Practice and Procedure* § 2463.1 (3d ed. 2008). *See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999) (for order quashing subpoena, "claim of harm must be based on more than stereotypical and conclusory statements."). Defendant failed to present a witness affidavit or any other proof showing how depositions taken within the time constraints imposed by Rule 30 would unduly or improperly interfere with the witnesses' official obligations on the days set for the depositions. Courts overwhelmingly have found that the absence of this evidence is fatal to a claim that a subpoena is "unduly burdensome."[2]

---

[2] *See, e.g., Green v. Cosby*, 152 F. Supp. 3d 31, 37 (D. Mass. 2015) ("as a procedural matter," moving party's failure to submit affidavit "may suffice to deny [movant's] 'undue burden' argument"); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab. Clinic*, 315 F.R.D. 220, 224 (E.D. Mich. 2016) (rejecting claim that subpoena would cause undue burden because person subject to subpoena failed to show that compliance would cause "clearly defined and serious injury"); *Aristocrat Leisure, Ltd. v. Deutsche Bank Trust Co. America*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (denying motion to quash given absence of affidavit or other evidence describing burden imposed by trial subpoena); *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (objecting party "must make a specific, detailed showing of how a request is burdensome."). *See also Ispat Inland, Inc. v. Kemper Environmental, Ltd.*, Civil No. 06-60 (PAM/JSM), 2007 WL 737786 (D. Minn. Mar. 7, 2007) (denying motion to quash subpoena where moving party made only "sweeping, broad statements" of undue burden).

Even if Defendant had presented some modicum of factual support for his "unduly burdensome" argument, "the fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *General Star Indem. Co v. Platinum Indem. Co.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002). The *Cave* Plaintiffs recognize that government officials often have significant time constraints and that testifying at a deposition can take away from those duties. This limitation, however, does not shield a government official who the State Defendant identified as having personal knowledge of matters in which the action and affirmative defenses are based. *See, e.g. Fish v. Kobach*, 320 F.R.D. 566, 578 (D. Kan. 2017) (courts permit depositions of high-ranking government officials shown to have firsthand knowledge directly relevant to claims being litigated); *Sherrod v. Breitbard*, 304 F.R.D. 73, 75-76 (D.D.C. 2014) (denying motion to quash deposition subpoena of Secretary of Agriculture who had "personal knowledge that is directly relevant to the claims and defenses here.").

Finally, Plaintiffs' counsel made every effort to avoid any unnecessary imposition on the witnesses' time. Plaintiffs' counsel first raised the prospect of setting depositions on January 7, 2019. At that time, Plaintiffs not only proposed seven different deposition dates in January and February, but invited Defendant to "provide us with alternative dates" if none of the suggested dates were convenient. Defendant responded by stating he "is not in a position at this point to schedule depositions." *See* E-mail exchange between Andrew Schultz and Michael Cantrelll (Jan. 7, 2019, 4:40 PM & Jan. 19, 2019, 10:46 AM), attached as Exhibit 2. Ten days later, Plaintiff again proposed deposition dates, this time in early February, and again invited Defendant to "provide us with alternative dates" if those dates were not convenient. Again Defendant again refused to make the witnesses available and again refused to provide any alternative deposition dates. *See* E-mail exchange between Andrew Schultz and Michael

Cantrelll (Jan. 28, 2019, 12:52 PM & Jan. 29, 2019, 3:20 PM), attached as Exhibit 3. Defendant cannot be heard to complain that a deposition is burdensome when he rejected efforts to schedule that discovery at a mutually convenient time.

**The depositions are not premature.** In its Proposed Final Scheduling Order [Doc. 10] entered in June 2018, this Court ordered that "Discovery shall be completed no later than March 27, 2019." This deadline is rapidly approaching. That Defendant has moved to stay all proceedings does not authorize him to refuse to engage in discovery unquestionably appropriate under the federal discovery rules. Particularly in light of this Court's pointed statement to all counsel in January that "there's no stay in effect right now," the deposition subpoenas are timely and necessary.

Defendant's effort to dodge his discovery obligations by asserting that he "has not had sufficient opportunity to investigate [the Satanic Temple] Intervenors and their claims" (Br. in Support of Mot. to Quash Subpoenas at 4), strains credulity. The Satanic Temple filed its motion to intervene move than seven months ago, and the Court granted that motion 12 weeks ago. Defendant knew enough about their claims to file an answer with affirmative defenses in mid-January. Given the phalanx of attorneys representing Defendant in this action,[3] the excuse that Defendant could not be bothered to learn about an integral portion of the case against him is a problem of his own making.

As for potential impact of the Supreme Court's ruling in *The American Legion v. American Humanist Association*, Case No. 17-1717 (U.S. Jun. 25, 2018), the parties already have fully briefed that issue in the context of Defendant's motion to stay proceedings. Defendant

---

[3] The Arkansas Secretary of State is represented by the Arkansas Attorney General Office and counsel associated with the Arkansas Secretary of State. In addition, multiple lawyers with First Liberty Institute have entered their appearance on behalf of Defendant.

5

cannot bootstrap those same arguments in support of his motion to quash witness subpoenas that are appropriate, timely and squarely within the scope of permissible discovery.

The Court should deny Defendant's motion.

Respectfully submitted,

LAVEY AND BURNETT

By: *John L. Burnett* .
    John L. Burnett (Arkansas Bar No. 77021)
904 West 2nd Street
Little Rock, AR 72201
Telephone:   (501) 376-2269
Facsimile:   (501) 372-1134
E-mail:   jburnett@laveyandburnett.com
*On behalf of the Arkansas Civil Liberties Union Foundation*

GREEN & GILLISPIE

By: *Joshua D. Gillispie* .
    Joshua D. Gillispie (Arkansas Bar No. 2010131)
1 Riverfront Place, Suite 605
North Little Rock, AR 72114
Telephone:   (501) 244-0700
Facsimile:   (501) 244-2020
E-mail:   josh@greenandgillispie.com
*On behalf of the Arkansas Civil Liberties Union Foundation*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: *Andrew G. Schultz* .
    Andrew G. Schultz (*admitted pro hac vice*)
    Melanie B. Stambaugh (*admitted pro hac vice*)
P.O. Box 1888
Albuquerque, NM 87103-1888
Telephone:   (505) 765-5900
Facsimile:   (505) 768-7395
E-mail:   aschultz@rodey.com
           mstambaugh@rodey.com
*On behalf of the Arkansas Civil Liberties Union Foundation*

*Attorneys for Plaintiffs Donna Cave, Judith Lansky, Pat Piazza and Susan Russell*