**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **DONNA CAVE, JUDITH LANSKY, PAT PIAZZA, and SUSAN RUSSELL** | **PLAINTIFFS** |
| **ANNE ORSI, AMERICAN HUMANIST ASSOCIATION, FREEDOM FROM RELIGION FOUNDATION, INC., ARKANSAS SOCIETY OF FREETHINKERS, JOAN DIETZ, GALE STEWART, RABBI EUGENE LEVY, REV. VICTOR H. NIXON, TERESA GRIDER, and WALTER RIDDICK** | **CONSOLIDATED PLAINTIFFS** |
| **THE SATANIC TEMPLE, DOUG MISICKO aka "LUCIEN GREAVES," and ERIKA ROBBINS** | **INTERVENORS** |
| **v.** | **No. 4:18CV00342 KGB/BD** |
| **JOHN THURSTON, Arkansas Secretary of State, in his official capacity** | **DEFENDANT** |

### REPLY IN SUPPORT OF MOTION FOR A TEMPORARY STAY PENDING *THE AMERICAN LEGION V. AMERICAN HUMANIST ASSOCIATION*

The Plaintiffs fail to undercut the Defendant's strong showing of the need for a temporary stay pending *American Legion*. The Plaintiffs also show no justification whatsoever for clinging to the original, pre-intervention trial date—especially in light of the Satanic Temple Intervenors' intervention and the prejudice to the Defendant that would result from the extraordinarily compressed discovery period that would require. This Court should grant the Defendant's motion for a temporary stay.

**I.      The *Orsi* Plaintiffs fail to undercut the Defendant's strong showing in favor of a temporary stay and fail to justify clinging to the pre-intervention trial date.**

The *Orsi* Plaintiffs (as the *Cave* Plaintiffs concede) wrongly ignore *American Legion*'s impact on this litigation. They likewise ignore the fact that there is currently *no scheduling*

*order* in this case, and they do not explain why this Court should retain the original, pre-intervention trial date.

> **A.      Contrary to the Orsi *Plaintiffs' claims,* American Legion *will directly impact this litigation.***

Lacking any real basis for opposing a temporary stay, the *Orsi* Plaintiffs' opposition attempts to litigate the merits of their substantive claims. The first three pages of their brief amount to little more than an opening statement on the merits of their claims, and the extraneous exhibits they attach—including unsubstantiated items totally devoid of any context that appear to be a transcribed statement by Arkansas State Senator Jason Rapert, part of a Facebook post, and a random public comment submitted to the Capitol Arts and Grounds Commission) are understandable only as an attempt to direct the Court's attention away from the merits of a temporary stay.

At best, the *Orsi* Plaintiffs argue that the long-standing presence of the Bladensburg Cross and its status as a war memorial will render the Supreme Court's decision inapplicable to this litigation. But it is difficult to see how the Court could decide *American Legion* without shedding light on numerous questions bearing on the Establishment Clause analysis here, including: Is it the particular monument's history that matters? Or is it the location and surroundings of the monument that matters? Is it the presence (or absence) of other monuments? Or maybe the governmental purpose for accepting the monument? Is it the consistency of the monument with the historical practice of the Founders? Is it the actual effect of the monument in advancing or inhibiting religion? Is it the monument's excessive entanglement of government with religion (or lack thereof)? Is it the subjective psychological offense experienced by the actual plaintiff? Or is it the hypothetical impact of the monument on an objective observer? If the latter, then is the objective observer omniscient, reasonably

well-informed, or only aware of certain facts? Further, must a monument exercise a coercive effect to violate the Establishment Clause? If so, must this coercion operate by threat of penalty or force of law? Or might coercion operate through some other, more subtle means?

It would not take a sweeping Establishment Clause pronouncement to shed light on these questions, and it strains credulity to suggest that the Supreme Court will manage to decide *American Legion* without providing guidance to lower courts on how to evaluate the constitutionality of passive displays incorporating religious symbolism generally. Because *American Legion* will shed light on these questions, that opinion cannot but impact this litigation.

The *Orsi* Plaintiffs devote several pages to arguing that the *Lemon* test is the controlling Establishment Clause standard—ignoring the searing criticisms of *Lemon* and the consensus of Supreme Court justices and lower courts that Establishment Clause jurisprudence is in disarray. *See* Doc. 47 (Def. Br.) at 2-4. In fact, far from showing that Establishment Clause jurisprudence is clear, the *Orsi* Plaintiffs' brief underscores the opposite by showing one more way that the case law might be contorted to argue for a particular standard. As explained above and in the Defendant's principal brief, *American Legion* will necessarily focus and clarify the applicable Establishment Clause standard for passive displays. *Id.*

> **B.   There is no scheduling order, and the Orsi *Plaintiffs show no justification whatsoever for clinging to the original, pre-intervention trial date.***

The *Orsi* Plaintiffs state that the Defendants "have shown no good cause that the trial should be moved," Doc. 52 at 12, without even attempting to engage the Defendant's arguments. This bald assertion ignores the many arguments in the Defendant's brief, Doc. 47 at 2-8, as well as those stated during the Rule 16 conference.

As the Defendant pointed out during the Rule 16 conference, discovery had not yet commenced between the Defendant and the Satanic Temple Intervenors. The Satanic Temple Intervenors did not serve the Defendant with their initial disclosures until just after the end of the phone conference with the Court. This untimely[1] service of initial disclosures deprived the Defendant of the benefit of having those disclosures to evaluate in preparation for the conference. The Defendant is currently evaluating the Satanic Temple Intervenors' untimely disclosures, but the Defendant has not had the opportunity to complete and serve initial written discovery requests—to say nothing of receiving responses to those requests and conducting any necessary follow-up.[2]

The Defendant gave notice in the joint Rule 26 report that a continuance of the trial date might become necessary. Doc. 32 at 6. The Defendant expressly noted the then-pending motion to intervene (which has now been granted), the extraordinarily large number of Plaintiffs (which has increased), the unusually large amount of anticipated discovery (which has increased), the time necessary for preparation and briefing of dispositive motions involving various Establishment Clause analyses (which has increased), and the Court's need for sufficient time to draft an opinion (which has increased). *Id.* The joint Rule 26 report likewise noted that the proposed discovery and dispositive-motion

---

[1] Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure requires that a party joined after the initial Rule 26(f) conference must make their initial disclosures within 30 days.

[2] The Satanic Temple Intervenors' untimely service of initial disclosures is part of a pattern of failing to comply with applicable deadlines that undermines any argument that the Satanic Temple Intervenors may attempt to make in favor of expediting this matter. Indeed, after failing to file a timely opposition to the Defendant's motion for a temporary stay, the Satanic Temple Intervenors sent an email to the Court attempting to make arguments outside of the official record in this case and without offering any explanation why they had failed to comply with the federal rules. *See* Exhibit A (Email to the Court from the Satanic Temple Intervenors' counsel).

4

deadlines may need to be changed if other parties or claims were added to the litigation. *Id.* at 7.

The original, pre-intervention trial date was set without any knowledge—by anyone, including the Court, counsel, and the parties—that yet new parties and new claims would be added. But since the Court established that date, three more parties and an entirely new Equal Protection claim have been joined to this already-consolidated litigation. The joining of the Satanic Temple Intervenors has added an entirely new set of issues and further complicated numerous defensive-strategic considerations for the Defendant.  Indeed, further underscoring just how complex the Satanic Temple Intervenors' intervention has rendered this case:  the Satanic Temple Intervenors demand relief that is entirely inconsistent with the other Plaintiffs in this matter.  *See* Doc. 40 (The Satanic Temple Intervenors' Amended Complaint in Intervention) ("Proposed Intervenors also seek different relief from the Plaintiffs. Whereas Plaintiffs seek the removal of the Ten Commandments Monument, the Proposed Intervenors chiefly seek the placement of their own monument.").

As the Defendant explained both in his brief and during the Rule 16 conference, a grant of the Plaintiffs' request to cling to the original, pre-intervention trial date would plainly prejudice the Defendant by requiring an extraordinarily compressed discovery period—compelling him to dash, unprepared, into three or four dozen depositions—all without the opportunity to obtain ordinary written discovery concerning the new Satanic Temple Intervenors, their witnesses, their evidence, and their particular allegations. As the Defendant also explained, rushing ahead with the original, pre-intervention trial date would further prejudice the Defendant by depriving him of adequate time to evaluate the need for an expert to give testimony concerning the particular constellation of claims now asserted in

this consolidated action by the *Cave* and *Orsi* Plaintiffs and the Satanic Temple Intervenors—to say nothing of the involved task of identifying and retaining any needed expert and obtaining a report from him or her.

There is no scheduling order in this case, which means that there is no expert-disclosure, discovery, or dispositive-motion deadline. Regardless of whether this Court grants the Defendant's motion for a temporary stay, the *Orsi* Plaintiffs simply cannot credibly maintain that the Defendant has "shown no good cause that the trial should be moved." Doc. 52 at 12.

As late as December 26, 2018, counsel for the *Orsi* Plaintiffs candidly conceded in email correspondence with defense counsel that although they would like the Ten Commandments monument removed yesterday, they have no desire to expedite this matter because the case needs to be properly developed even if that ends up taking some time. Exhibit B (Email from *Orsi* Plaintiffs' counsel). Nothing has changed since then to alleviate the need for sufficient time to develop the facts of this case. And the Defendant's ability to mount a defense by properly and efficiently developing the facts through discovery is contingent upon how the Supreme Court deals with the legal question squarely presented in *American Legion*.

Even now the *Orsi* Plaintiffs do not deny that a temporary stay would be in the interest of judicial economy and prevent the waste of judicial and taxpayer resources. Because the *Orsi* Plaintiffs fail to undercut the Defendant's strong showing of the need for a temporary stay, this Court should grant the Defendant's motion.

**II.     The *Cave* Plaintiffs acknowledge that a limited, temporary administrative stay is warranted.**

The *Cave* Plaintiffs acknowledge *American Legion*'s impact on this litigation, and they recognize the need for a temporary stay, even though they misrepresent both the Defendant's actions and the length of the temporary stay—which will end in about four-and-a-half months from now.

*A.     The* Cave *Plaintiffs concede* American Legion*'s impact on this litigation.*

The *Cave* Plaintiffs grudgingly admit that *American Legion* is relevant to this consolidated action. Doc. 50 (*Cave* Pl. Br.) at 1. They cannot deny the obvious: The Supreme Court granted certiorari to decide "[w]hether the constitutionality of a passive display incorporating religious symbolism should be assessed under the tests articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), *Van Orden v. Perry*, 545 U.S. 677 (2005), *Town of Greece v. Galloway*, 572 U.S. 565 (2014), or some other test." *The American Legion v. American Humanist Association*, Case No. 17-1717, Pet. Br. at i. The *Cave* Plaintiffs also admit that a stay of some sort is needed "to the extent that the Court seeks to avoid any proceedings under an outdated legal standard." Doc. 50 at 10; *id.* at 1.

Having admitted as much, the *Cave* Plaintiffs resort to claiming that the "Defendant's willingness and ability to respond to pleadings and engage in discovery" somehow negates the need for a temporary stay. In particular, the *Cave* Plaintiffs wrongly suggest that the Defendant has been forging ahead with new and burdensome discovery requests in reckless disregard of the fact that *American Legion* will dispose of (or at least significantly narrow) the central issues in this litigation.

That argument, of course, ignores the fact that *they* hauled the Defendant into this litigation and that their decision triggered the Defendant's need to conduct discovery. Given

7

that, the *Cave* Plaintiffs' attempt to fault the Defendant for defending himself is the height of hypocrisy. To be sure, the Defendant diligently prepared and served initial written discovery requests on the 14 *Cave* and *Orsi* Plaintiffs. Yet that was *before* the U.S. Supreme Court granted cert in *American Legion*. The Defendant has since conferred with the *Cave* and *Orsi* Plaintiffs concerning their responses, but the Defendant has not sought additional discovery since the Supreme Court granted certiorari in *American Legion*.

To the extent that the *Cave* Plaintiffs suggest that the Defendant should have known of the need for a temporary stay several months before the Supreme Court granted certiorari in *American Legion*, that claim is simply incredible. The Defendant obviously did not know that the Court would grant review in *American Legion* until it did so.

Further, until recently no motion for a temporary stay was appropriate because there were no deadlines to stay during the pendency of the Satanic Temple Intervenors' motion to intervene. The then-approaching January 25, 2019, Rule 16 conference was the first occasion on which a motion to stay became appropriate.

### B.     The Cave *Plaintiffs acknowledge the need for a temporary stay.*

Although there are currently no scheduled deadlines in this consolidated action, the Defendant agrees with the *Cave* Plaintiffs' contention that any dispositive-motion deadline must await the Supreme Court's decision in *American Legion*. Doc. 50 at 10. Further, because—contrary to the *Cave* Plaintiffs' claim—psychic intuition is not necessary to see that the Supreme Court's answer to the question squarely presented in *American Legion* will dispose of (or significantly narrow) the central issues presented in this consolidated action, further discovery in this litigation will undoubtedly be impacted by that decision. Therefore, a temporary stay is appropriate.

**C.    *The temporary stay will end about four-and-a-half months from now.***

Finally, the *Cave* Plaintiffs misrepresent the Defendant's motion as one that would stay this matter "for at least the next six months." Doc. 50 at 1. This is obviously false. The Defendant is seeking a temporary stay pending the Supreme Court's decision in *American Legion*. Because the current term ends in June—and opinions are traditionally issued no later than the end of the term—the *maximum* length of the requested temporary stay is now *less than* five months. Although the Court could technically issue its opinion in *American Legion* at any time after oral argument on February 27, the requested temporary stay will end no more than about four-and-a-half months from now.

## CONCLUSION

Counsel for the Plaintiffs admitted on the record during the Rule 16 conference that if this matter proceeds without a stay it will be necessary for the Defendant to redepose the 17 Plaintiffs and Intervenors and for all of the parties to rebrief the issues in light of the Supreme Court's *American Legion* decision. The Court should grant the Defendant's motion for a temporary stay, which will avoid this unnecessary burden—and will ensure judicial economy, prevent the unnecessary waste of judicial and taxpayer resources, and serve the public interest. The Plaintiffs have shown no justification whatsoever for clinging to the original, pre-intervention trial date—especially in light of the joining of the Satanic Temple Intervenors and the prejudice to the Defendant that would result from the extraordinarily compressed discovery period that would require.

Therefore, Defendant Secretary of State John Thurston respectfully requests that this

Court grant his motion for a temporary stay.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By:     /s/ Nicholas J. Bronni
        Nicholas J. Bronni (2016097)
          Solicitor General of Arkansas
        Michael A. Cantrell (2012287)
        Dylan L. Jacobs (2016167)
          Assistant Solicitors General
        OFFICE OF THE ARKANSAS ATTORNEY GENERAL
        323 Center Street, Suite 200
        Little Rock, AR 72201
        Ph:    (501) 682-2007
        Fax:   (501) 682-2591
        Email: Nicholas.Bronni@ArkansasAG.gov

        Gary L. Sullivan, Ark. Bar No. 92051
        Managing Attorney
        Arkansas Secretary of State's Office
        Suite 256- State Capitol
        500 Woodlane Avenue
        Little Rock, AR 72201
        PH: (501) 682-3401; Fax: (501) 682-1213
        Email: gary.sullivan@sos.arkansas.gov

        Hiram Sasser
        Michael Berry
        Lea Patterson
        FIRST LIBERTY INSTITUTE
        2001 West Plano Parkway, Suite 1600
        Plano, TX 75075
        Tel:  (972) 941-6162
        Fax:  (972) 423-6162
        hsasser@firstliberty.org
        mberry@firstliberty.org
        lepatterson@firstliberty.org

        Attorneys for Secretary of State John Thurston

## CERTIFICATE OF SERVICE

I, Michael A. Cantrell, hereby certify that on May 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ *Michael A. Cantrell*
Michael A. Cantrell