**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **DONNA CAVE,** *et al.* | **PLAINTIFFS** |
| **ANNE ORSI,** *et al.*, and | **CONSOLIDATED PLAINTIFFS** |
| **THE SATANIC TEMPLE,** *et al.* | **INTERVENOR PLAINTIFFS** |
| v. CASE NUMBER: 4:18-CV-00342 | |
| **JOHN THURSTON,** as Arkansas Secretary of State, in his official capacity | **DEFENDANT** |

**TST'S RESPONSE IN OBJECTION TO RAPERT'S MOTION TO QUASH OR FOR PROTECTIVE ORDER**

## INTRODUCTION AND SUMMARY

Senator Rapert is a key witness in this case. He made various public statements about this case and the Ten Commandments Monument. He filed both acts which are the subject of TST's case. He serves as a director of the American History and Heritage Foundation ("**AHHF**,") which donated the monument. And he served as the face of the fundraising efforts to obtain the money for that monument. As a key witness, his deposition testimony is subject to the closest scrutiny.

Sen. Rapert is a public figure. He is an elected official, he has announced an intention to run for lieutenant governor of Arkansas, and his various public statements are made for the purpose of influencing public opinion. He also is a founding member of the National Association of Christian Lawmakers, whose stated purpose is to establish "a more godly nation." As a public figure who generally and repeatedly injects himself into the issue of separation of church, and specifically injects himself to this case, Sen. Rapert has no expectation of privacy with respect to his deposition footage.

## ARGUMENT

The issue before the Court is whether videotaping Sen. Rapert's deposition presents an "undue" burden.  See FRCP 26(c). The answer is "no" because he is a key witness, a public figure, and has repeatedly commented on this case.  As previously explained by the Eighth Circuit, governmental officials do not get special treatment because of their public office.  See Jones v. Clinton, 72 F.3d 1354, 1358 (8th Cir.) ("[T]he President, **like all other government officials**, is subject to the same laws that apply to all other members of our society") (cited with approval by our Supreme Court at Clinton v. Jones, 520 U.S. 681, 688, 117 S. Ct. 1636, 1641 (1997)).

## 1: It is common, if not best practice, to record depositions of key witness by video means.

The first flaw with Sen. Rapert's response is in its premise.  While strictly true that Sen. Rapert's **position** is that a videotaped deposition is "unusual, unnecessary, and raises concerns about potential harassment of Sen. Rapert," (motion at pp. 1-2), the truth is that it is none of these.  The American Bar Association published an article extoling the virtues of videotaped depositions over 15 years ago.  See Litigation "Videotaping Depositions" Vol. 19, No. 4 (Summer 1993), pp. 60-62, 69 (available at https://www.jstor.org/stable/29759651?seq=1#page_scan_tab_contents).

The simple truth is that a transcript does not fully depict a witness's deposition.  All of their facial tics, body language, and shifting eyes remain uncaptured by the black-on-white words on paper.  But a video recording will capture all of that.  A video can be replayed as much as needed: both in preparation for trial, and at the trial, itself.  For those lawyers who cannot make it to Sen. Rapert's deposition, the video gives an opportunity to experience the deposition far more than a transcript ever will.

There is nothing "uncommon" or "unnecessary" about it, a videotaped deposition prepares the lawyers for trial far better than not. The Court should deny Sen. Rapert's motion to quash and for protective order.

## 2: Public officials who repeatedly inject themselves into an issue and a case have no privacy interest in their deposition.

The next issue relates to Sen. Rapert's baseless concern about a "potential" for harassment. Sen. Rapert's motion cites to no examples of harassment or embarrassment he has experienced in the past. Only that he is "absolutely convinced" it will happen in the future. See motion at p. 3.

The motion really turns on Sen. Rapert's unfounded expectation of privacy. See id (complaining that video taped discovery materials can be invasive of "personal privacy.") It is black-letter law that public figures have "voluntarily surrendered the privacy secured by law for those who elect not to place themselves in the public spotlight." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 455, 97 S. Ct. 2777, 2796 (1977) (citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)).

There are no grounds to dispute that Sen. Rapert is a public figure. He is an elected Senator of Arkansas. E.g. motion at p. 1. He has announced an intention to run for lieutenant governor. Wickline, Michael R., arkansasonline.com "State Sen. Jason Rapert says he plans to run for lieutenant governor in 2022" (https://www.arkansasonline.com/news/2019/aug/02/state-sen-jason-rapert-says-he-plans-run-lieutenan) ("I am ready to contribute at another level. I think there is more that I can do. I would love to support the next governor.")

He repeatedly comments on this very case. See his posts from shortly after the Court granted TST's motion to intervene and shortly after service of the subpoena. **Exhibit 1** (post-intervention); **Exhibit 2** (post-service). See also, generally, **Exhibit 3** (twitter posts including the phrase "Ten Commandments") and **Exhibit 4** (twitter posts referencing TST or Doug Misicko).

Any question about whether the posts are a "voluntary injection" into a public controversy are swiftly foreclosed by Sen. Rapert's invitation to his followers for "a few suggestions of important information you might wish for me to share on the matter of the Ten Commandments and all these Leftist extremists suing our state for wanting to honor the historical and moral foundation of law." **Exhibit 2**; compare, e.g., Cockram v. Genesco, Inc., 680 F.3d 1046, 1053 (8th Cir. 2012) ("public figures typically thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved, thus inviting attention and comment") (internal quotes omitted).

Further, it is curious that Sen. Rapert is "absolutely convinced" that the deposition will "cause him extreme embarrassment and harassment." Motion at p. 3. Assuming he tells the truth in his deposition, and is firmly convicted in his story, it is unclear what could possibly be so embarrassing about the contents of his deposition. Sen. Rapert's concern about the possibility of "extreme embarrassment and harassment," due to the deposition, is misplaced because he subjects himself to that very commentary on a regular basis. E.g. **Exhibits 1**, **2**, **3**, and **4**.

As for the "demonstrable history" asserted, Sen. Rapert offers no examples other than a documentary about TST, which was neither directed, nor filmed, nor produced by TST. See Hail Satan? (directed by Penny Lane, produced by Gabriel Sedgwick); see also https://www.imdb.com/title/tt9358044/fullcredits/?ref_=tt_ov_st_sm (IMDB page).

Sen. Rapert's motion amounts to a request for the Court to grant him unilateral control of the public narrative on the Ten Commandments issue and TST. His feigned fear of "harassment" is categorically insufficient to justify an order of protection when considering his liberal use of social media to "thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved, thus inviting attention and comment."

### 3: None of Sen. Rapert's cited cases involved a deponent who regularly injected themselves into the subject matter.

In support of his motion, Sen. Rapert cites ten cases, none of which are appellate opinions. In absence of an explanation for why these cases are persuasive, Sen. Rapert invites his opposition to do all the arguing for him. TST declines the invitation.

As the proponent of the argument that the ten cited cases support his motion, Sen. Rapert bears the burden of proving his point. He fails. The Court will find easy distinguishment between those cases and this. Here, Sen. Rapert has made a combined 30+ pages of tweets on this issue, and specifically reached out to the public for ideas on what he should say in his deposition. He does not now get to withhold from the public what he said in his deposition.

### 4: Assuming the Court denies the motion, the Court should assess attorney's fees against Sen. Rapert for having to write this response.

The Court has authority to order Sen. Rapert to pay TST's reasonable expenses, including attorney's fees, for having to respond to this motion. FRCP 26(c)(3); FRCP 37(a)(5). The motion was filed less than 24 hours in advance of the deposition, even though the notice was received nearly one month ago. Time spent on this motion is time not spent preparing for the deposition. The Court should disincentivize future tactics by ordering Sen. Rapert pay a reasonable attorney's fee to TST.

**WHEREFORE** TST-intervenors pray this Court enter an order denying Sen. Rapert's motion and order Sen. Rapert pay TST a reasonable attorney's fee for having to draft this response.

[remainder intentionally left blank, signature and certificate following]


Respectfully submitted on September 11, 2019,
On behalf of Intervenors

| By | /s/ Matthew A. Kezhaya | and | /s/ Stuart P. de Haan |
|---|---|---|---|
|  | Matthew A. Kezhaya, ABA # 2014161 |  | Stuart P. de Haan, AZ Bar No. 026664 |
|  | Attorney for TST Plaintiffs |  | Attorney for TST Plaintiffs |
|  | KEZHAYA LAW PLC |  | de Haan Law Firm, PLLC |
|  | 1202 NE McClain Rd |  | 100 N Stone Avenue, Suite 512 |
|  | Bentonville, AR 72712 |  | Tucson, Arizona  85701 |
| phone | (479) 431-6112 |  | (520) 358-4089 |
| fax | (479) 282-2892 |  | (520) 628-4275 |
| email | matt@kezhaya.law |  | stu.dehaan@gmail.com |

**CERTIFICATE AND NOTICE OF SERVICE**

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, submitted for filing the foregoing document by uploading it to the Court's ECF system.  The ECF system sends automated notice to all counsel of record.

_____
Matthew A. Kezhaya, ABA# 2014161