IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DONNA CAVE, et al                                                      PLAINTIFF

V.                           Case No. 4:18-cv-00342-KGB

MARK MARTIN, Arkansas Secretary of State
in his Official Capacity                                     DEFENDANT

**BRIEF IN SUPPORT OF THE ORSI PLAINTIFFS'
RESPONSE TO MOTION TO QUASH**

**INTRODUCTION AND FACTUAL BACKGROUND**

    The Court was faced with a last-minute motion to quash a deposition notice directed to Senator Jason Rapert and for a protective Order. When a hearing before the deposition, scheduled for the next day, could not be scheduled, the Court entered an order permitting the deposition to go forward with videotape, requiring that no copies of the recording be made, explicitly providing that the order was temporary, and stating that the Court would grant all parties the opportunity to

fully brief the motion.  The *Orsi* Plaintiffs take this opportunity to flesh out their argument.

The *Orsi* Plaintiffs' counsel originally wished to make a video recording of the deposition of Senator Jason Rapert so that out-of-state counsel who did not attend the deposition could see the deposition to prepare for further proceedings.

The witness, Senator Jason Rapert, sought to avoid videotaping the deposition altogether or in the alternative to impose limitations on the use of the video of the deposition.  During that time, Senator Rapert, through his counsel, never articulated a legitimate legal basis for asking for an agreement to restrict use of the video of the deposition.  Senator Rapert voiced generic concerns that his image might be abused.

The parties were unable to reach an agreement.  That was in part because Senator Rapert failed to articulate a legitimate legal basis for restricting the use of the deposition.  Originally, Senator Rapert's counsel mentioned a video by the FFRF in which excerpts from a video published by Senator Rapert of himself were shown to illustrate the position of Senator Rapert.  See "True Patriotism is Fighting Christian Nationalism."  https://youtu.be/4xtcG8AO6y4  There was nothing remotely unfair about the use of Senator Rapert's video to address his positions. The "True Patriotism" video was not mentioned in Senator Rapert's motion, most

likely because it was indisputably fair use of a post he had made himself on the Internet. Plaintiff's counsel also recalls a reference to the *Hail Satan* movie. Senator Rapert complains that he was treated unfairly because an interview he gave was used by the producers of *Hail Satan*, but he fails to show a single instance in which he was victimized by anyone cutting and splicing videos to misrepresent his position.

The Orsi Plaintiffs respectfully submit that Senator Rapert has failed to articulate good cause to date.

The Defendant Secretary of State's counsel entered into this dispute as well, but they also fail to present any evidence that constitutes good cause for the granting of the motion. They point out that of all the witnesses, only Senator Rapert has been requested to give a videotape deposition (Doc. 77). As to the Plaintiffs' own depositions, Plaintiffs have no need to videotape them. The other two depositions were depositions from an employee and a former employee of the Secretary of State. Neither witness was expected to be combative or difficult in any way, and indeed neither was. The Orsi Plaintiffs (correctly as it turns out) expected Senator Rapert to be an evasive and argumentative witness.

The Defendant Secretary of State also argues that there is no indication that Senator Rapert would be unavailable for trial. The Court is well aware that

Senator Rapert chose not to attend the hearing on the Motion for a Temporary Restraining Order/Preliminary Injunction in *American Atheists, Inc. et. al v. Rapert*, Case No. 4:19-cv-00017-KGB (E.D. Ark.).

The Defendant Secretary of State also argues there is "no doubt that allowing unfettered dissemination of any video of Rapert's deposition will subject him to 'annoyance, embarrassment, oppression,' and harassment." But there is no evidence to support this assertion, and the existence of hours of video of Senator Rapert on YouTube with no evidence any of it has ever been abused would tend to support the exact opposite conclusion.

The Defendant Secretary of State argued that "Rapert is not seeking to 'control' 'the public narrative' regarding this case." But Senator Rapert has commented on this case many times, for example, he has complained about the Satanic Temple being allowed to intervene (Exhibit 3). He also complained about being "commanded" to appear for a deposition (Doc. 76-2) and has made a recent post (Exhibit 1) about his so-called "inquisition." He is clearly attempting to manipulate the public narrative regarding this case.

The Secretary of State references name-calling and a poorly photoshopped image of Senator Rapert eating a baby. They allege that *Hail Satan* is the Satanic Temple's movie, when the very link it relies on shows that Madman Films made

the movie. Madman films has made several movies, most of which have nothing to do with Satan.

It is true that Anne Orsi has described Senator Rapert as an "idiot." She can do that without using a videotape of his deposition.

It is true that much of the public commentary, both by and about Senator Rapert, is distasteful to some. All of this is the kind of discourse that exists in politics these days, and there is no reason to think a video of Senator Rapert's would be any different than the materials already out there.

Senator Rapert is a public figure. A quick search of his name on YouTube discloses numerous videos in which he is speaking, being interviewed, speaking at a town hall, playing a fiddle with considerable skill, or otherwise intentionally placing himself before the public. He has appeared on television talk shows countless times (including once with the undersigned).

Senator Rapert is active on social media. He does not mind using other people's images on his media pages. Just as one example, he has used at least two pictures of the undersigned on his Twitter feed.[1] See Doc. 76-3, p. 4 and Doc. 76-4, p. 4.

---

[1] This should not be misinterpreted. The undersigned does not object to this sort of use of pictures of him in public places or in public fora.

There is a tremendous amount of publicly accessible video of Senator Rapert. He complains that cutting and splicing of the videotape is a near certainty (Brief of movant at 4), but he fails to show a single instance in which the hours of video currently available have been cut and spliced to his disadvantage.

Senator Rapert's reliability in stating that he is "absolutely convinced that, absent the protective order he now seeks, the videotaped recording of his deposition will be sued by Plaintiffs to cause him extreme embarrassment and harassment." (Doc. 74, p. 3) is questionable. He took some bizarre positions at the deposition that would cause a reasonable fact-finder to take matters of which Senator Rapert is "absolutely convinced" with a grain of salt:

- He objected to the Cave Plaintiffs' counsel putting a picture of Senator Rapert and his wife and children in the record for fear of their safety. The picture was one from Senator Rapert's own ministry placed on the Internet by Senator Rapert. Videos in which Senator Rapert uses pictures of his wife and daughters for his political campaigns can be found on Youtube.
- Senator Rapert's lawyer stopped the deposition complaining that someone was tweeting. An agreement to stop the tweeting allowed the deposition to continue. But Senator Rapert took the position that the tweeting was in violation of the Court's Order. Clearly, tweeting was not addressed in the Order at all, explicitly or implicitly. Nor did it in any way interfere with the proceedings until Senator Rapert's counsel used it as a reason to stop the deposition.
- At one point during the deposition Senator Rapert interrupted the proceedings to complain that one of the lawyers was staring at him.

It was originally the Orsi Plaintiffs' intent to use the videotape in traditional ways. We primarily wanted to share the videotape with out-of-state counsel. We also wanted to show the videotape to our clients in preparation for further proceedings. However, we did not want to agree to any unnecessary limitations, because there was no way we could anticipate all the potential circumstances. We felt that there was no reason to hamstring ourselves by agreeing to a restriction that was completely unwarranted. Nevertheless, we did offer to accept a limitation to the "traditional uses" that we were able to think of. Doc. 78, Order, page 26 (page 23 of the exhibits). However, after the deposition, Senator Rapert made an Internet post that read as follows:

> As I faced off against the ACLU, American Humanists, Freedom From Religion Foundation, American Atheists [sic] and the Satanic Temple at an anti-Christian inquisition against me conducted under the guise of a Federal Court deposition in downtown Little Rock this week - an interesting fact was revealed. It pleases me to know that they have been pouring [sic] over hours of my sermons and reading hundreds of my posts and writings seeking something with which to impugn my integrity. Whether they want to or not they are being exposed to the Gospel of Jesus Christ and the Word of God and IT WILL HAVE AN IMPACT ON THEIR LIVES. Why do they war against me and other Christians and seek to drive any references about God from our public life?
>
> Here is another great program they should view:
>
> https://youtu.be/QGO2mHJFR9c


Exhibit 1.

The program referred to in the post was yet another videoed interview of Senator Rapert.

This post accuses Plaintiffs' counsel of conducting an "inquisition." Senator Rapert's accusation is false. The undersigned submits that he did not conduct an "inquisition." He took a deposition. The deposition was contentious, as Senator Rapert was frequently argumentative and evasive. But it was a fair deposition. It was conducted pursuant to the Federal Rules of Civil Procedure, not the *Instrucciones* of Torquemada.[2] Plaintiff's counsel suggests that now that this false accusation has been made public, release of the video to anyone who might believe the accusation is reasonable just to counter the public accusations of Senator Rapert.[3]

It would have been impossible to predict this beforehand. This is exactly the reason that Courts should not routinely grant protective orders in the absence of good cause or otherwise restrict the use of materials gathered in discovery without good cause.

---

[2] *See* https://inquisition.library.nd.edu/genre/RBSC-INQ:Inquisitorial_manuals/essays/RBSC-INQ:ESSAY_InquisitorialManuals#ftn22  Accessed September 22, 2019.

[3] The undersigned hates making himself a part of this case. This case should be decided on the facts and the law, not on personalities. I do not relish the parts of the deposition in which I will come off as straight man to Senator Rapert's performance. But the accusation is totally unjust and should be answered. A response to his Facebook post would be unseemly (and would probably just get me blocked from his page).

This lawsuit is of public interest and involves no personal or intimate details about the life of any witness. Nor does it involve any commercial or business secrets of any party or witness.

Subsequent to the deposition, Orsi Plaintiffs' Counsel inquired of Senator Rapert's attorney and the Attorney General whether they would agree to a simple order allowing traditional uses of the deposition. Exhibit 2. No response has been received.

## LAW AND ARGUMENT

There is very little law on this subject for obvious reasons. In the long history of the law, video recordings are rather new. The concerns sometimes raised in earlier cases should fade as time goes by. Videos on the Internet are increasingly common. Furthermore, access to the world is no longer limited to the media or parties with resources to publicize video information. Anyone can publish on YouTube for free.

### I. TRADITIONAL USES

Plaintiffs would like to use the video deposition for traditional litigation uses. It is difficult to predict exactly what that will entail, but at a minimum two uses have surfaced. First. Plaintiffs would like for their out-of-state counsel to be able to view the deposition. Second, Plaintiff would like to be able to show the

deposition to clients, at his own office if necessary. It is possible that other traditional uses might surface (showing the video to a consultant, for example).[4]

The *Orsi* Plaintiffs offered to agree to such limitation in an email of September 11, 2019, at 2:02pm. Doc. 78, Order, page 26 (page 23 of the exhibits). That was, of course, before Senator Rapert's post about being subjected to an "inquisition."

The Attorney General's office supported Senator Rapert's motion. They suggested that an order restricting dissemination of any videotape to counsel of record would not prohibit counsel from showing the videotape to their clients. But Senator Rapert sought to prohibit counsel from sharing the video with clients, and did not respond when the *Orsi* Plaintiffs made their last proposal to limit the deposition. That proposal was made simply to move the deposition along, not because the *Orsi* Plaintiffs concede that Senator Rapert is entitled to any relief at all.

The undersigned has asked Senator Rapert's counsel and the Attorney General whether they could agree to an Order allowing traditional uses. Exhibit 2. No response has been forthcoming.

---

[4] At the moment, there is no such consultant. But there could be in the future.

Senator Rapert has not articulated any reason that Plaintiff's counsel should not be permitted to use the video of the deposition for traditional uses.

## II. NON-TRADITIONAL USES.

### A. Senator Rapert has shown no good cause for the issuance of a protective order.

Senator Rapert has not shown any legitimate ground for a protective Order in this case. In *Felling v. Knight*, 2001 U.S. Dist. LEXIS 22827, The primary case relied on by Senator Rapert, the district court denied a motion to protect the transcripts but granted a motion to permanently protect the videotapes of a deposition. The standard used was "In order to seal any part of the record of a case, the party moving for the protective order must establish that good cause exists" "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." and "Allegations of general injury are insufficient to constitute good cause; the movant must show that disclosure will cause a clearly defined and serious injury." It should also be noted that the Trial Court went out of its way to discourage the use of the case as precedential authority. *See Id.* n. 1. That attempt was unsuccessful, as according to Westlaw the case has been cited almost 20 times.

Senator Rapert has utterly failed to articulate any good cause to restrict the use of his deposition. He argues that he is "absolutely convinced that, absent the protective order he now seeks, the videotaped recording of his deposition will be used by Plaintiffs to cause him extreme embarrassment and harassment." (Doc. 74, p. 3). He contends that abuse is a "near certainty." Id. p. 4. This is vague, general, conclusory, and unsupported by facts. Senator Rapert's numerous videoed public appearances could be used in exactly the same way. There is no evidence that they have been. Senator Rapert complains that he submitted to a recorded interview that was used by the producers of *Hail Satan*. Then they used it in the movie. He does not even allege that the producers of *Hail Satan* cut and spliced his interviews for the purpose of causing him embarrassment or harassment. Senator Rapert offers nothing but ill-founded speculation that the video of this deposition will be abused in ways his other numerous publicly available video speeches and interviews have not.

The suggestion that the video will be cut and spliced to misrepresent what actually occurred at the deposition is no longer an issue. In the early years of the Internet, courts were often concerned about misleading editing of video. That concern should no longer be a factor. Misleading editing has long since ceased to be an issue, now that anyone can post on YouTube. If someone were to

manipulate the video, an accurate copy of the video would conclusively prove the manipulation. Senator Rapert could clearly show that any misleading editing of his deposition was just that. Further, Max Brantley of the *Arkansas Times* has offered to place the entire deposition, uncut, on the Arkansas Times's website. Exhibit 4. This concern, great at a time in which electronic access to the world was limited, should no longer be a factor.

At his deposition, Senator Rapert complained that he had been subjected to threats against him and his family, some of which had been turned over to law enforcement. For his alleged concern about the safety of himself and his family, Senator Rapert has no reluctance to subject others to the alleged dangers of exposure on the Internet. He has repeatedly posted about the fact that Lucien Greaves is a pseudonym. Doc. 76-4, p. 1 (claiming to "unmask" Greaves), p. 3, p. 5. Even Senator Rapert must recognize that a Satanist leader is at more risk of violence and retaliation than a Christian minister. See Exhibit 5.

In *Morrow v. City of Tenaha*, No. 208CV288, 2010 WL 3927969, (E.D. Tex. Oct. 5, 2010), the court noted:

> [N]umerous courts have held that mere embarrassment, without a demonstration that the embarrassment will be particularly serious or substantial, is not enough to demonstrate good cause for a protective order. *Flaherty v. Seroussi*, 209 F.R.D. 295, 299–300 (N.D.N.Y.2001) ("To rise to the level of good cause, any such embarrassment must be substantial"); *Welsh v. City and County of*

> *San Francisco*, 887 F.Supp. 1293, 1297 (N.D.Cal.1995) ( "Mere embarrassment by the release of information is insufficient to constitute serious harm"); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D.Ill.1993) ("A claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order"); *Hawley v. Hall*, 131 F.R.D. 578, 585 (D.Nev.1990), superseded on other grounds by statute, Fed.R.Civ.P. 5(d) (amended 2000) ("The defendants have not demonstrated a substantial likelihood of serious embarrassment that would constitute Rule 26(c) good cause") (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986), cert. denied, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987)).

*Id.* at 3.

This inquiry should stop here. Where the movant has failed to make a prima facie case to justify a protective order, the motion should be denied in its entirety without more.

### B. Even if Senator Rapert had shown good cause for a protective order, other considerations would justify denying the request.

However, in the alternative, if the Court is prepared to consider that Senator Rapert has shown any risk of harm at all, any minimal risk of harm shown by Senator Rapert is far outweighed by legitimate interest in this lawsuit. The subject matter of this lawsuit is a matter of public interest and does not involve any private or confidential information about Senator Rapert. It involves a matter of public concern. The public is entitled to know the motivations of a senator who worked

in his official and unofficial capacities to bring a religious monument to the state capitol grounds.

The Court cited *Jones v. Clinton,* Case No. LR-C-94-290 (Dkt No. 166) and *United States v. McDougal,* 940 F.Supp. 224 (E.D.Ark.) *aff'd* 103 F.3d 651 (8th Cir. 1996).  The reference to *Jones v. Clinton* is a specific reference to the interim order entered in that case, which was the model for the Order entered in this case. Clearly the facts and outcome of that case, which involved intimate personal and sexual details of the life of the then-sitting President of the United States, is not helpful in a case like this one.  The Trial Court's solution in *Jones v. Clinton* to keep the case moving forward, on the other hand, was appropriate for consideration in this case.

*United States v. McDougal, supra* was an attempt by the media to secure a copy of a videotape of a deposition given by the President.  The issues there were whether the media was entitled to a copy of a video deposition as a matter of right. In neither of those cases was the serious, personal nature of the evidence seriously questioned.

"Courts are especially unwilling to issue a protective order merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern." *Morrow v. City of Tenaha*

*Deputy City Marshal Barry Wash.*, 2010 U.S. Dist. LEXIS 106541, 10, 77 Fed. R. Serv. 3d (Callaghan) 966, 2010 WL 3927969 "[i]n cases where issues of strong public interest favoring the free dissemination of discovery materials are at play, the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open inspection." *Id.* at 10-11.

     Senator Rapert string cites a number of Magistrate and United States District Court rulings with nothing more than a discussion of the conclusions of the courts, leaving it to his opponents and the Court to determine their relevance to his Motion. Most are easily distinguishable. *Felling v. Knight,* has shown no legitimate basis for special treatment in this case. That case has already been discussed *infra*. *Whitaker v. Springettsbury Twp.*, 2010 U.S.Dist. LEXIS 38155 involved a video not of a deposition, but of a fatal shooting of a citizen by a police officer. A graphic video of a shooting is obviously a different matter. *Springs v. Ally Financial, Inc.*, 2014 U.S.Dist LEXIS 182064, involved a YouTube video that was allegedly defamatory that included portions of the depositions of some witnesses. The Court balanced the interests of the parties and prohibited dissemination of the recordings without prior permission of the court. The Court further directed the Plaintiff to remove the video from YouTube. *Caine v. City of*

*Chicago*, 2012 U.S. Dist LEXIS 89431 also involved balancing interests, including the interests of parties who had invoked the Fifth Amendment. *Barket v. Clark*, 2013 Westlaw 647507, 2013 U.S. Dist. LEXIS 24365 involved sensitive information about a business, its staff of advisors, and its clientele. There had been previous statements by the parties that suggested they would post the video on the Internet. *Izzo v. Wal-Mart*, 2016 Westlaw 593532, 2016 U.S.Dist LEXIS 17701 does not appear to involve release of videotapes at all. The question involved expert witness communications with an attorney. There may be some language in the decision relevant to the issues herein, but the undersigned has failed to locate it.

    Here, by contrast, there are no business secrets, no intimate details of the witness's life, and no private, as opposed to public concern in the deposition. This deposition is entirely about a matter of public interest. There is no risk that innocent third-parties will be embarrassed or humiliated by the deposition. Senator Rapert has nothing to be ashamed of (except perhaps his unorthodox behavior in the deposition as mentioned above). History has proven that there is no particular risk that the video will be unfairly cut or spliced to place Senator Rapert in an unfavorable light, and there is a clear remedy of full disclosure in the event some third party chooses to attempt to mislead by selective use of the video of the deposition.

## CONCLUSION

Here, Senator Rapert did not get past the first hurdle. He has failed to show any good cause for his motion. It should be denied in its entirety.

However, if the Court finds even minimal good cause for Senator Rapert's motion, the equities favor denial of the motion anyway. If nothing else, Senator Rapert's mischaracterization of his deposition justifies releasing the deposition to the public so they can decide whether he was subjected to an "anti-Christian inquisition."

If Senator Rapert and his counsel have no further objection, the Court should immediately grant the *Orsi* Plaintiffs' motion to allow traditional uses of the video of the deposition.

Further, after a full briefing on this issue by all parties, the Court should deny Senator Rapert any relief.

WHEREFORE, Senator Rapert's motion to quash should be denied.

    Respectfully Submitted

    MONICA L. MILLER
    Attorney for Plaintiffs
    American Humanist Association
    1777 T Street N.W.
    Washington, D.C. 20009
    Telephone: (202) 238-9088
    Facsimile: (202) 238-9003
    Email: mmiller@americanhumanist.org

CA Bar: 288343 / DC Bar: 101625

PATRICK C. ELLIOTT
Senior Counsel
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
(608) 230-8443
WI Bar No. 1074300

Baker Schulze Murphy & Patterson
2311 Biscayne Drive
Suite 300
Little Rock, AR 72227
Telephone: (501) 537-1000
Facsimile: (501) 537-1001
www.bsmp.law

/s/ J.G. "Gerry" Schulze
J.G. "Gerry" Schulze
Attorney at Law
Ark. Bar No. 83156
gschulze@bsmp.law