**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **DONNA CAVE,** *et al.* | **PLAINTIFFS** |
| **ANNE ORSI,** *et al.*, and | **CONSOLIDATED PLAINTIFFS** |
| **THE SATANIC TEMPLE**, *et al.* | **INTERVENOR PLAINTIFFS** |
| **V.** CASE NUMBER: 4:18-CV-00342 | |
| **JOHN THURSTON**, as Arkansas Secretary of State, in his official capacity | **DEFENDANT** |

**TST'S RESPONSE IN OBJECTION TO MOTION TO COMPEL DISCOVERY /
AND MOTION FOR PROTECTIVE ORDER**

**COME NOW** Intervenors, by and through counsel of record, with a response in objection to Defendant's motion for order compelling discovery and with a motion for protective order pursuant to FRCP 26(c).

## INTRODUCTION AND SUMMARY

As a preliminary matter, the State's 12-page and 10-page letters complaining that Intervenors' discovery responses are "uniformly deficient" (Doc. 93-3 at p.1) and "woefully deficient" (Doc. 93-5 at p.1) are hardly good faith attempts to confer on discovery issues. The State demanded everything under the sun yet, when it came time to move for an order to compel, has abandoned most of their discovery requests. The State has tacitly admitted to kitchen sink discovery demands.

The absence of good faith in discovery is particularly egregious given that the State propounded discovery requests demanding: Social Security Numbers on individuals who use pseudonyms to protect their life and wellbeing (Doc. 93-1 at ROG 2), "every social media account you have used"

(id.), and mischaracterizing 30 discrete subparts as, simply, "Interrogatory Number 2" (also id.).

The bulk of the State's discovery requests are well beyond the scope of discovery. See Doc. 93-1. To the extent they were within the scope of discovery, and with a margin for safety, Intervenors provided the material.

Overlooking the State's overbroad requests and puffery-laden "good faith" letter, counsel for the Intervenors spent 2.1 hours with counsel for the State on August 5 in a good faith telephone conference to avoid the Court ever having to hear or consider this matter. The culmination of that phone call was a list of agreed productions. Doc. 93-6. We provided that discovery. Having had its inch, the State now demands a mile and seeks an order compelling discovery on the false premise that we have waived all our objections.

The discovery the State seeks has absolutely no bearing on the two questions of this lawsuit: (1) is the Ten Commandments Monument Display Act an unconstitutional establishment of religion; and (2) was Act 274 of 2017 unconstitutionally motivated by a religious animus? Instead, all requests are part and parcel of a transparent effort to drive up costs of litigation for a minority religious group's effort to seek redress for constitutional injuries.

The Court should deny the State's motion to compel because (1) the State's 12-page and 10-page letters fail to constitute a good faith effort to resolve this issue without need of court intervention; (2) Intervenors have given the State exactly what the parties have agreed to; and (3) the remaining discovery requests are well outside the scope of discovery.

Further, since the Court is having to address this matter, Intervenors request a protective order that none of the objected-to discovery be had (both that sought by this motion to compel and everything else); or, if any of the objected-to discovery be had at all, it be placed under protective order for (1) counsel of record's eyes only, (2) to be used solely for the purpose of this litigation, and

(3) to be immediately and permanently destroyed upon entry of the final order. Last, as with all discovery disputes, the Court should address the matter of expenses related to the cross motions.

## ARGUMENT

**Legal standard**

The scope of discovery has limits. Parties may obtain discovery that is (1) relevant to any party's claim or defense; and (2) proportional to the needs of the case. FRCP 26(b)(1). Proportional to the needs of the case involves consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

There is also 25-interrogatory limit "including all discrete subparts." FRCP 33(a)(1). A protective order is a matter within the sound discretion of the Court "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FRCP 26(c). The Court has broad discretion to tailor the terms of a protective order. See id.

Denied motions to compel production of discovery may grant a protective order and must "after giving an opportunity to be heard, require the movant, the attorney filing the motion or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." FRCP 37(a)(5)(B). If the motion is denied in part, the Court may grant a protective order and apportion the reasonable expenses for the motion. FRCP 37(a)(5)(C).

**1: The State's letters are not made in good faith.**

The parties conferred for 2.1 hours by teleconference on August 5. The culmination of that phone call was a limited agreement to produce a series of documents:

Emails to and from the GA members

    IRS letter; if there is a MA analogue

    Where does the money go for TST purchases and contributions

    Bill of sale / IP agreements for Baphomet

    What is the name of the artist?

    ROG 8 to TST - what is the symbolism

    RFP 8 to TST representative photos and video

       - rally for rick scott

       - pink mass

       - 10C installation v2

       - rally for religious liberty

       - photos of events at Salem HQ

Doug's case where he served as an expert on Satanism in February 2019. Doc. 93-6 at p. 5.

We provided all the above. **Exhibit 1** (emails to and from the GA members); see also Doc. 93-4 and **Exhibit 2** (everything else). Some of the produced discovery is even the subject of the State's motion to compel. See issues 6 and 9, below.

The State correctly notes that counsel stated, "I am holding TST to my agreement to produce the various documents previously identified." Doc. 94 at p. 2. The foregoing evidences the documents counsel agreed to produce and did produce. There is simply nothing more to enforce in the agreement. Instead, the State is attempting to expand the agreed set of documentary productions into something the lawyers did not agree on. This is bad faith.

**2: TST's governance documents have no passable bearing on this litigation because TST is suing in an associational capacity, only.**

For the first subject of the motion to compel, the following discovery requests are at issue:

>**INTERROGATORY NO. 1:** Please state the Satanic Temple's full legal name; all names and aliases used by the Satanic Temple or by which the Satanic Temple has been known at any time; the Satanic Temple's legal entity type and all dates of any current or former incorporation or legal creation, specifying all states under whose laws the Satanic Temple has existed at any time; the full legal name and title of each current and former employee, officer, director, manager, board member, advisory member, or person or entity holding any other position of responsibility or leadership, whether compensated or not.
>
>**REQUEST FOR PRODUCTION NO. 1:** Please produce copies of all current and former articles of incorporation or analogous documents filed with any state evincing the Satanic Temple's creation as a corporate entity; and copies of all current and former bylaws, operating agreements, or analogous documents.

The Satanic Temple is suing solely in an associational capacity. There is no passable argument that the governance documents have anything to do with the religious nature of the Ten Commandments Monument, the equal protection claim, or Defendant's stated affirmative defenses. The State cites without discussion a series of district court cases, none of which are even in the Eighth Circuit, for the proposition that boils down to "in some cases, governance documents are discoverable." This says nothing of whether TST's governance documents are discoverable in this case. Even still, we provided the articles of incorporation for The Satanic Temple, Inc. **Exhibit 2** ("TST Articles.") And its employer identification number. Id. ("CP575Notice_1510694027448.pdf")

The State's motion also changes tune on what the discovery request seeks. From just the motion, the Court might think that the State only seeks "identities of any officers directors, managers, or board members." Doc. 94 at p. 4. But a plain reading of the interrogatory demands: "the full legal name and title of each current and former employee, officer, director, manager, board member, advisory member, or person or entity holding any other position of responsibility or leadership, whether compensated or not."

As we explained in our objection:

> The current membership of TST exceeds 50,000 individuals, many of whom participate in a leadership role for various charitable and religious activities.
>
> Compounding the difficulty of adhering to the request, individual participants of TST very often have pseudonyms to protect their safety. The volume of information sought is overwhelming and has no passable bearing on the questions of this case.
>
> Not only is the information sought onerous to procure in the first place, Rule 26 requires ongoing supplementation. Every time a volunteer steps down from–or steps up to–a leadership position would require a new supplement.

If granted, Intervenors would be required to supplement discovery, among other common instances, every time a member organizes a "Menustratin' with Satan" women's hygiene donation drive, every time a member pushes for an "adopt-a-highway" drive, every time a member officiates over a black mass, every time a member takes on a leadership role with a new chapter, and every time a member steps down from a leadership role. The effort and expense in keeping logs on all this activity is far beyond the needs of this case.

Stated differently, the State claims the Federal Rules of Civil Procedure permits an inquiry into every single volunteer who leads a religious or charitable activity in the name of TST, of any kind. And, under the duty to supplement, a supplement is required every time a new volunteer steps up or an old one steps down from any TST activity. This is far beyond the permissible scope of discovery and amounts to, as we timely objected, "not proportional to the needs of the case." The Court should deny the State's motion to compel as to this category and grant a motion for protective order.

**3: The registrants of various websites without any passable relationship to this case are beyond the scope of discovery.**

The next discovery request at issue is:

>**INTERROGATORY NO. 2**: Please identify all persons or entities in whose name(s) each of the following domains has been registered at any time, and identify all persons or entities that have produced, published, or maintained any content accessible from that domain at any time: http://www.thesatanictemple.com, https://afterschoolsatan.com/, https://religiousreproductiverights.com/, https://protectchildrenproject.com/, https://greyfaction.org/, http://dougmesner.com/, http://www.process.org, http://www.westboro-baptists.com, and https://salemartgallery.com/.

There has been no showing that any of the participants creating any of the content in any of the websites have anything at all to do with the questions involved with this litigation. As with the preceding category, the State cites district court cases from outside the Eight Circuit with no discussion on how they have any relevance to this case.

When asked what possible relevance these websites have anything to do with the religious motivations of the Acts at issue, opposing counsel demurred. This is a transparent effort to cause an undue burden on the Intervenors, has absolutely no relevance to any party's claim or defense, and is not proportional to the needs of the case. The Court should deny the State's motion to compel and grant a protective order.

**4: TST's financial records are far outside the scope of discovery**

The next category of requests at issue are:

>**REQUEST FOR PRODUCTION NO. 2**: Please produce a copy of the Satanic Temple's year-end budgets for the years 2015, 2016, 2017, and 2018, and a copy of the Satanic Temple's current operating budget. Include in each budget, among other things, the Satanic Temple's sources of income, liabilities, categorized expenditures, and recipients of the Satanic Temple's tax-exempt contributions.

>**REQUEST FOR PRODUCTION NO. 3**: Please produce a copy of the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018.

As the State identifies in its motion, TST (more specifically, "The Satanic Temple, Inc.") is recognized as a tax exempt entity. We produced the document conferring that status over three months ago. See Exhibit 2 ("IRS approval.pdf" and "IRS – TST page 2.pdf").

Beyond the IRS letter conferring tax exempt status, the information sought has no passable relevance to this litigation and, again, is not proportional to the needs of the case. It is particularly not relevant to this litigation for the State to demand "a copy of the Satanic Temple's current operating budget. Include in each budget, among other things, the Satanic Temple's sources of income, liabilities, categorized expenditures, and recipients of the Satanic Temple's tax-exempt contributions."

Once again, the State cites without discussion a number of district court cases which lie outside the Eighth Circuit. The only one with any precedential value is a Supreme Court case from 1961. St. Regis Paper Co. v. United States, 368 U.S. 208, 219 (1961). The State mischaracterizes its holding as "tax returns are subject to discovery," Doc. 94 at p. 7, yet St. Regis has nothing to do with a State demanding tax returns or operating budgets of a litigant seeking the constitutionality of a religious monument or an act precluding a competing one. Instead, St. Regis relates to the Federal Trade Commission's power to investigate potential antitrust violations. See id. at 213:

> The controversy culminating in this litigation had its inception in September 1956. At that time the Commission requested petitioner to furnish voluntarily information concerning certain of its corporate acquisitions to enable the Commission to determine whether there had been any violations of the antitrust laws.

The State is not the FTC and TST is not subject to an antitrust investigation. St. Regis has nothing to say about whether these tax returns and operating budget are discoverable in this case. The Court should deny this part of the State's motion to compel and grant a protective order.

**5: Counsel did not agree to produce the identities of contributors or the records related to contributions.**

The next set of requests at issue are:

> **INTERROGATORY NO. 4**: Please identify all persons or entities that have received proceeds from purchases made through the Satanic Temple's website as well as from contributions made through each of the following webpages: https://thesatanictemple.com/collections/contribute-to-the-satanic-temple-campaigns/products/donate-to-the-satanic-temple, https://thesatanictemple.com/products/after-school-satan-campaign, https://thesatanictemple.com/collections/contribute-to-the-satanic-temple-campaigns/products/support-grey-faction, https://thesatanictemple.com/collections/contribute-to-the-satanic-temple-campaigns/products/protect-children-project, https://religiousreproductiverights.com/lawsuit-status/donate-to-religious-reproductive-rights, http://www.indiegogo.com/projects/put-a-satanic-monument-at-ok-capitol/, https://www.indiegogo.com/projects/the-satanic-temple-adopt-a-highway-campaign, https://www.generosity.com/memorial-fundraising/the-satanic-temple-veterans-monument.
>
> **INTERROGATORY NO. 5**: Please identify all persons or entities that received the proceeds when contributions were made through the "Bring Baphomet to Arkansas!" website, accessible at https://www.flipcause.com/secure/cause_pdetails/Mzg4NTY=.
>
> **REQUEST FOR PRODUCTION NO. 5**: Please produce a copy of all records showing all proceeds from contributions made through the "Bring Baphomet to Arkansas!" website received by the persons or entities identified in response to the previous interrogatory.
>
> **INTERROGATOY NO. 6**: Please identify what dollar amount of the proceeds received through the "Bring Baphomet to Arkansas!" website was used to pay for or offset the costs of taking the Baphomet statue to the Arkansas state capitol for the rally on or about August 16, 2018.
>
> **REQUEST FOR PRODUCTION NO. 6**: Please produce a copy of all records showing the use of the proceeds received through the "Bring Baphomet to Arkansas!" website to pay for or offset the costs of taking the Baphomet statue to the Arkansas state capitol for the rally on or about August 16, 2018.

Contrary to the State's motion, counsel did not agree to produce any of that. Compare Doc. 93-

6 at p. 98 with the foregoing requests. Instead, counsel held steadfast to the timely-stated objection: "the information sought is not relevant to any party's claim or defense and is not proportional to the needs of the case." Doc. 93-6 at pp. 75-77.

When pressed for an explanation for what possible relevance the requests have to the questions at issue in this case, the State demurred. The State does not even make argument for how the demanded documents and information has any relevance to its motion.

Were TST subject to IRS scrutiny on the sources and uses of its charitable proceeds, the documents and information sought might be of relevance. But the State is not the IRS and this case is not a tax controversy.

The State's motion perverts counsel's good faith efforts to avoid a discovery controversy. As with the foregoing requests, this is another bad faith effort to harass and annoy, it lies outside the scope of discovery, and the Court should deny the State's motion and grant Intervenors a protective order.

**6: TST provided the buy/sell of the Baphomet Monument**

The next set of discovery requests at issue are:

> **INTERROGATORY NO. 7**: Please identify all persons or entities that were involved in, or paid costs associated with, the design, construction, or modification of the Baphomet statue as well as all persons or entities that have a legal or equitable interest in the statue.
>
> **REQUEST FOR PRODUCTION NO. 7**: Please produce a copy of all records showing the legal or equitable interests in the Baphomet statute of the persons or entities identified in the previous interrogatory.

Intervenors provided the buy/sell of the Baphomet Monument back over three months ago. **Exhibit 2** ("Baphomet Agmt.") The agreement identifies all persons who were involved in the construction of the Baphomet Monument and is the only bill of sale transferring the Baphomet Monument from the artist who created it to TST.

The Court should deny the State's motion to compel as moot and order attorney's fees to be paid by the State and all attorneys involved in drafting the motion, jointly and severally, by a date certain.

**7: TST's "legal and financial" relationships with miscellaneous people and organizations has no passable relevance to this case.**

The next interrogatory at issue is:

> **INTERROGATORY NO. 9:** Please identify all legal and financial relationships the Satanic Temple has had at any time with Doug Misicko, Cevin Soling, United Federation of Churches, LLC; Reason Alliance, Ltd; The Alliance for Self-Directed Education, Inc; Alliance for Integrity and Justice Ltd.; and Spectacle Films.

As with the foregoing requests, Intervenors timely objected that this request has no relevance to the claims or defenses at issue and is not proportional to the needs of the case. The State's motion makes no attempt at arguing it is relevant, resting solely on a conclusory statement that "Defendant believes that the Satanic Temple has close legal and financial relationships with, and has engaged in joint efforts with" the named entities. Doc. 94 at p. 10.

But, so what? This has nothing to do with whether the Ten Commandments Monument Display Act is an unconstitutional establishment of religion or whether depriving TST of a fair public comments period for a competing religious monument is a violation of the Equal Protection Clause. The State makes no effort to explain how this request relates to the issues involved in this litigation and instead cites without discussion a district court case from outside the Eighth Circuit.

Once again, this is a transparent effort to drive up the costs of litigation, harass, cause unnecessary delay, and is generally part and parcel of a course of bad faith discovery tactics. The Court should deny the State's motion to compel and grant Intervenors a protective order.

**8: TST's litigation history is well documented in the public record. The State has clearly been busy conducting internet investigation throughout this litigation, to claim an inability to perform a simple public records search is simply untruthful.**

The next discovery request at issue is:

> **INTERROGATORY NO. 10**: Please identify every lawsuit or legal proceeding of whatever kind to which the Satanic Temple has been a party since 2013, whether civil or criminal, specifying the court, the court's location and jurisdiction, the case number, the filing date, every claim made or charge brought by or against the Satanic Temple (whether or not dismissed, etc.), and the outcome of the proceeding.

Intervenors timely objected that the request has no relevance to the constitutional questions at issue and presents an undue burden on TST because "cases in which TST is or was a party can be located through a simple public records search." Doc 93-4 at p. 12.

As a preview to the next issue, the response also notes: "A public search would not turn up a case where Lucien Greaves served as an expert witness on the question of Satanism. A PDF of the Brockton District Court's order was produced on September 5." Id.

Recall, a limit on the scope of discovery is "the parties' relative access to relevant information." The State makes no effort to explain how it was able to track down every internet article (including several of dubious quality from the blog archives of a rival Satanic sect, attached to the State's objections to our intervention), pseudonym, website, and every other conceivable morsel of information on TST and its co-founders, yet is suddenly incapable of performing a routine public records search. It is not as if TST keeps a low profile.

As before, the State's sole authority on the subject is a cited (but not discussed) district court case from outside the Eight Circuit. Perhaps it was true that, in 1978, a party's involvement in other litigation was fair ground to compel discovery. That case took place before the prevalence of PACER and other internet-accessible court records. In contrast, the State has made it clear throughout this

litigation that it is quite capable of investigating TST and its co-founders and, as a result, it can perform its own investigation into other lawsuits TST has been party to.

As before, this is a transparent effort to drive up the costs of litigation, harass, cause unnecessary delay, and is generally part and parcel of a course of bad faith discovery tactics. The Court should deny the State's motion to compel and grant Intervenors a protective order.

### 9: TST provided everything in its possession about the only legal proceeding where Lucien Greaves served as a witness.

The last discovery request at issue is:

> **INTERROGATORY NO. 3**: Please identify every lawsuit or legal proceeding of whatever kind to which you have been a party or in which you have served as a witness, whether civil or criminal, specifying the court, the court's location and jurisdiction, the case number, the filing date, every claim made or charge brought by or against you (whether or not dismissed, nolle prossed, etc.), and the outcome of the proceeding. Please exclude any misdemeanor charge, or any civil action by or against you unrelated to the First or Fourteenth Amendments, that was brought more than 10 years prior to the filing of the Intervenors' Amended Complaint.

As we explained above, Intervenors produced the only case responsive to the request. It can be found in **Exhibit 2** as "12-17-2018 BSH ORDER REDACTED" and is addressed in the discovery responses as "Lucien Greaves served as an expert witness on the question of Satanism. A PDF of the Brockton District Court's order was produced on September 5." Doc 93-4 at p. 12.

The order contains the case number and venue. There has been no showing by the State that reasonable efforts were not able to procure the facts sought. In fact, a plain reading of the State's motion might leave the Court with an impression that Intervenors refused to provide anything at all.

As with all preceding parts of the motion to compel discovery, this is a transparent effort to drive up the costs of litigation, harass, cause unnecessary delay, and is generally part and parcel of a course of bad faith discovery tactics. The tactic is particularly egregious because we already provided the

information sought three months before the State filed its motion. The Court should deny the State's motion to compel as moot and order attorney's fees to be paid by the State and all attorneys involved in drafting the motion, jointly and severally, by a date certain.

**Conclusion**

Fundamentally, this case involves two questions. First, did the State infringe upon the constitutional prohibition of establishing a state religion by permanently affixing to the state capitol a monument which declares: "I AM the LORD thy God. Thou shalt have no other gods before me."

Second, is there a religious animus at play when a legislator publicly declares "It will be a very cold day in hell before we are ever forced to put up [the Baphomet Monument]" shortly before introducing legislation which only impacted the Baphomet Monument.

The State's affirmative defenses make no claim that TST is engaging in tax fraud, theft of intellectual property, or whatever exactly the State imagines the registrants of various websites have anything to do with anything.

Some of the documents and information sought to be compelled were provided over three months ago. The remainder have no possible bearing on the questions at play in this litigation. The State's motion is a transparently bad faith effort to drive up the costs of litigation, to harass, and to unduly delay the proceedings.

**PRAYER FOR RELIEF**

**WHEREFORE** Intervenors pray this Court enter an order denying the State's motion to compel and grant Intervenors a protective order. Specifically, the Court should forbid the discovery sought, both as to the subjects of the State's motion to compel and as to all other objections raised by Intervenors. Or, for any production ordered, limiting the discovery sought to the State's counsel of record's eyes only, to be used only for the purposes of this litigation, and to be immediately and

permanently destroyed upon entry of the final order.

    Respectfully submitted on December 18, 2019,
    On behalf of TST Plaintiffs

| By | /s/ Matthew A. Kezhaya | and | /s/ Stuart P. de Haan |
|---|---|---|---|
| | Matthew A. Kezhaya, ABA # 2014161 | | Stuart P. de Haan, AZ Bar No. 026664 |
| | Attorney for TST Plaintiffs | | Attorney for TST Plaintiffs |
| | KEZHAYA LAW PLC | | de Haan Law Firm, PLLC |
| | 1202 NE McClain Rd | | 101 E. Pennington, Suite 201 |
| | Bentonville, AR 72712 | | Tucson, Arizona 85701 |
| phone | (479) 431-6112 | | (520) 358-4089 |
| fax | (479) 282-2892 | | (520) 628-4275 |
| email | matt@kezhaya.law | | stu.dehaan@gmail.com |

## CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, submitted for filing the foregoing document by uploading it to the Court's ECF system. The ECF system sends automated notice to all counsel of record.

Matthew A. Kezhaya, ABA# 2014161