**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **DONNA CAVE,** *et al.* | **PLAINTIFFS** |
| **ANNE ORSI,** *et al.*, and | **CONSOLIDATED PLAINTIFFS** |
| **THE SATANIC TEMPLE,** *et al.* | **INTERVENOR PLAINTIFFS** |
| **v.** CASE NUMBER: 4:18-CV-00342 | |
| **JOHN THURSTON,** as Arkansas Secretary of State, in his official capacity | **DEFENDANT** |

**INTERVENORS' RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY /
CROSS MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

**COME NOW** Intervenors, by and through counsel of record, with a response in objection to Defendant's motion to compel discovery (Doc. 104) and a cross motion for protective order pursuant to FRCP 26.

The Court should deny Defendant's motion for three reasons. First, the objections were timely raised because proper application of Rule 6 places the deadline on the date the answers were provided. The deadline is not "30 days from the instant they were sent," as the State contends, but "30 days from the next business day, plus three days." See generally FRCP 6(a), (d).

Second, the withheld photographs (which exclusively depict private non-party individuals and do not include the Baphomet Monument) have no bearing on the legal questions presented in this case: i.e., was either complained-of act religiously motivated; if so, does Defendant have 11th Amendment immunity or qualified immunity?

Last, the State has not engaged in good faith efforts to resolve this matter without court

involvement because the last communication was from Intervenors requesting the State's contention for why these photographs fall within the scope of discovery.

The Court should deny the State's motion to compel and grant Intervenors an attorney's fee for having to address to this motion.

## ARGUMENT

### 1: Discovery is due 30 days after being *served*, not 30 days from being *sent*.

The State opens argument with a claim that the response was untimely. Doc. 105 at p. 4. The problem with the State's argument is that it ignores the text of the rules. The clock does not start ticking the instant Defendant sends the request; instead, it begins the next business day. The correct deadline is January 13, the date of the responses.

### Legal framework

A request for production must be responded to "within 30 days **after** being served." FRCP 34(b)(2) (emphasis added). There is a rule for calculating deadlines. See FRCP 6. Under Rule 6(a)(1)(A), the date of the event triggering the period is excluded. Under Rule 6(d), another three days are added at the end of the period. See also FRCP 5(b)(2)(F) (service by any other means the person has consented to in writing).

### Analysis

The State propounded the discovery requests at 4:52 pm on Friday, December 6 by email. **Exhibit 1**. The next business day is Monday, December 9. Under Rule 6(a)(1)(A), this is when the clock starts. Thirty days from December 9 is Wednesday, January 8. Then, we add three days under Rule 6(d). Three days from Wednesday, January 8 was Saturday, January 11. When the end-date falls on a Saturday, the deadline is extended to the next business day. FRCP 6(A)(1)(C). The next business day after Saturday, January 11, was Monday, January 13. Thus, the discovery responses provided on January 13 were timely.

Through counsel, Intervenors explained the foregoing to the State in email correspondence. See **Exhibit 1** (emails dated January 7 at 2:19 pm and 2:22 pm). The State did not respond with an alternative calculation and does not address the deadline calculation in their own motion. There is no alternative calculation. The rules can't be read to have two different deadlines for discovery responses: 30 days for discovery requests sent Monday through Thursday, or 28 days for discovery requests sent on Friday. This would only encourage discovery gamesmanship.

## 2: The objection is proper: private individuals, neither parties nor witnesses, posing for a portrait has no bearing on any legal issue of this litigation.

The meat of the State's motion is that the Intervenors must produce documentation "relevant to establishing the significance and meaning of that statue, which is at the center of this litigation." Doc. 105 at p. 4. Intervenors produced every photograph taken at the event in question which depicts the Baphomet Monument: covered, uncovered, and everything in between. This production fulfilled the requirement of producing all documentation **relevant** to the significance and meaning of the statue.

The pictures that were not produced show only various people posing for portraits, not than the unveiling of the Baphomet monument. There is no line the State can draw between "people posing for portraits" that connects to the actual, legal issues of this case.

The State offers a line: "the setting and activities of the Satanic Temple's official dedication [are] highly relevant." Doc. 105 at p. 4. But the setting and activities are available in the material shared. See Lisa Ling's "The Satanists Next Door" (https://www.youtube.com/watch?v=nT9U0h3a5H4), particularly at 39:00 et seq. (depicting the event); and "Lovely Star's" "Why do two half-naked men kiss after unveiling Satanic statue?" (https://www.youtube.com/watch?v=LXuxlB3wZhc).

The State downplays Intervenors' concern that the materials could be used for harassment, oppression, or other improper purposes as "utterly baseless." Doc 105 at p. 5. Yet, the State repeatedly refuses to agree to a protective order to safeguard the materials from exactly that purpose.

Furthermore, the State is hardly diminishing the concern by demanding to obtain identifying information of every "person or entity holding any other position of responsibility or leadership, whether compensated or not." Doc. 93-1 at pp. 16-17.

## Conclusion

In short, the State has the information it claims to seek. The information withheld, people posing for photos, can be used for harassment, oppression, or other improper purposes. The photos sought do not have any passable bearing on whether the Ten Commandments Monument Display Act was an unconstitutional state endorsement of a specific religion or whether Act 274 of 2017 was unconstitutionally designed to target a suspect class. Nor does "people posing for photos" have anything to do with qualified immunity or Eleventh Amendment immunity, the State's claimed affirmative defenses.

## 3: The State failed to confer in good faith to resolve the matter without court intervention.

Last, the State has failed to confer in good faith to resolve this dispute without seeking Court intervention. Absent from the State's motion or brief is any mention about the parties' January 15 telephone conference, wherein counsel offered the State to view (without downloading) the withheld photographs, attempted to send the photographs by means which would permit the State to view them (without downloading), and requested an explanation for how the withheld photographs relate to the pleaded claims or defenses of the case. Nor does the State disclose Intervenors' January 15 email, again requesting an explanation for how the withheld photographs fall within the scope of discovery:

> The relevant issue is what the legislature intended when passing the two Acts. These photographs do not shed light on that topic. Please provide me the State's contention for why these photographs fall within the scope of discovery.

**Exhibit 2**.

The State refused counsel's invitation to view the photographs without downloading and refused to give any explanation for how "people posing for photographs" has any bearing on any pleaded claim or defense. Instead, two weeks later, the State moved for an order compelling discovery. This is not a good faith effort to confer. It is an oppressive discovery tactic designed to inflate the costs of litigation and could be used to further fuel efforts to harass and oppress individual Satanists.

## 4: The Court should enter a protective order

As explained above, this battle is not really about determining the circumstances surrounding the unveiling of the Baphomet monument–that information was made available to the State–but burdening counsel with responding to yet another frivolous discovery motion. Oppressive discovery tactics are a good cause for a protective order. See FRCP 26(c). The Court should enter one to protect Intervenors from having to provide identifying information about private, non-party and non-witness individuals.

### PRAYER FOR RELIEF

**WHEREFORE** Intervenors pray for an order (1) forbidding the disclosure or discovery of the withheld photographs; and (2) order the State and each attorney who participated in drafting the motion or brief, jointly and severally, to compensate Intervenors' counsel for having to respond. FRCP 26(c)(1)(A); FRCP 37(a)(5)(B).

Respectfully submitted on February 7, 2020,
On behalf of Intervenors

| | | |
|---|---|---|
| By | /s/ Matthew A. Kezhaya | and /s/ Stuart P. de Haan |
| | Matthew A. Kezhaya, ABA # 2014161 | Stuart P. de Haan, AZ Bar No. 026664 |
| | Attorney for Intervenors | Attorney for Intervenors |
| | KEZHAYA LAW PLC | de Haan Law Firm, PLLC |
| | 1202 NE McClain Rd | 100 N Stone Avenue, Suite 512 |
| | Bentonville, AR 72712 | Tucson, Arizona 85701 |
| phone | (479) 431-6112 | (520) 358-4089 |
| fax | (479) 282-2892 | (520) 628-4275 |
| email | matt@kezhaya.law | stu.dehaan@gmail.com |

## CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, submitted for filing the foregoing document by uploading it to the Court's ECF system. The ECF system sends automated notice to all counsel of record. /s/ Matthew A. Kezhaya