**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**DONNA CAVE**, *et al.*,                                                    **PLAINTIFFS**

**EUGENE LEVY**, *et al.*,                                    **CONSOLIDATED PLAINTIFFS**

**THE SATANIC TEMPLE**, *et al.*,                                    **INTERVENORS**

**v.**                                    **Case No. 4:18-cv-00342-KGB**

**JOHN THURSTON, Arkansas Secretary**
**of State, in his official capacity**                                    **DEFENDANT**

<u>**ORDER**</u>

Pending before the Court are the following discovery related motions.  The Court conducted a hearing on these motions on February 26, 2020.  In addition to the oral rulings announced by the Court during that hearing, the Court rules as follows:

(1) the Court takes under advisement the motion to quash and for protective order filed by non-party witness State Senator Jason Rapert, to the extent the Court has not already ruled on the motion, and directs further briefing by the parties consistent with the terms of this Order (Dkt. No. 74);

(2)  the Court grants the motion to compel production of documents directed to State Senator Jason Rapert consistent with the terms of this Order (Dkt. No. 79);

(3)  the Court grants the motion for leave to file memorandum in reply to response to motion to quash and for protective order filed by State Senator Jason Rapert and directs State Senator Rapert to file his reply within 14 days from the entry of this Order (Dkt. No. 82);

(4)  the Court grants in part and denies in part the first motion to compel responses from intervenors and enforce agreement between counsel filed by defendant John Thurston, in his official capacity as Arkansas Secretary of State (Dk. No. 93);

(5) the Court denies as moot the second motion to compel discovery from Satanic Temple intervenors filed by Secretary Thurston in the light of Secretary Thurston's notice of withdrawal of second motion to compel discovery from Satanic Temple Intervenors; to the extent the Satanic Temple Intervenors move for attorneys' fees with respect to having to respond to this motion, the Court denies such a motion (Dkt. Nos. 104, 106, 112); and

(6)  the Court grants Secretary Thurston's motion for hearing having conducted the hearing on February 26, 2020 (Dkt. Nos. 110, 113, 114, 115).

The Court makes these rulings for the following reasons.

## I.      Motion To Quash And For Protective Order

Arkansas State Senator Jason Rapert filed a motion to quash and for protective order in advance of his subpoenaed deposition (Dkt. No. 74).  Plaintiffs Anne Orsi, Eugene Levy, Gale Stewart, Teresa Grider, the Arkansas Society of Freethinkers, American Humanist Association, and the Freedom from Religion Foundation (collectively the "*Orsi* Plaintiffs") responded to the motion (Dkt. No. 75).  The Satanic Temple, Lucien Greaves,[1] and Erika Robbins (collectively the "Satanic Temple Intervenors") filed a response (Dkt. No. 76).  Secretary Thurston also responded (Dkt. No. 77).

State Senator Rapert filed a motion for leave to file memorandum in reply to response to motion to quash and for protective order (Dkt. No. 82).  The Court grants the motion and directs State Senator Rapert to file within 14 days from the entry of this Order his proposed reply.  For purposes of ruling on the pending motions, the Court has considered State Senator Rapert's reply.

---

[1]  The Court notes that "Lucien Greaves" and "Doug Misicko" refer to the same individual, and the Court uses these two names interchangeably.

2

Previously, the Court ruled on the motion to quash, denying the request to quash the subpoena for State Senator Rapert's videotaped deposition (Dkt. No. 78).  In that Order, the Court directed that the deposition proceed as subpoenaed by plaintiffs Donna Cave, Judith Lansky, Pat Piazza, and Susan Russell (collectively the "*Cave* Plaintiffs") and *Orsi* Plaintiffs, that the deposition be videotaped in accordance with the *Orsi* Plaintiffs' subpoena, and that immediately upon the conclusion of the deposition, the original video recording be labeled, dated, and initialed by the individual responsible for operating the recording equipment and handed to counsel for the *Orsi* Plaintiffs (*Id.*, at 2).  The Court directed that counsel for the *Orsi* Plaintiffs was responsible for maintaining the confidentiality of the video recording of State Senator Rapert's deposition pursuant to the Order and that no copies be made of the video recording of State Senator Rapert's deposition except as provided by Order of the Court (*Id.*, at 2-3).  To that extent, and consistent with the terms of the Order, the Court granted a temporary protective order and took under advisement the remaining arguments in State Senator Rapert's motion (Dkt. No. 74).  The Court ordered that disposition of the video recording of State Senator Rapert's deposition was subject to further orders of this Court.

During the hearing on February 26, 2020, counsel for the *Orsi* Plaintiffs raised the possibility of reaching agreement among counsel, or seeking an expedited ruling from the Court if necessary to facilitate timely trial preparation, regarding the ability to distribute the videotape of State Senator Rapert's deposition to counsel of record and counsel admitted *pro hac vice* in this litigation and for all counsel to be permitted to show their clients the videotape of State Senator Rapert's deposition, with counsel maintaining possession and control of the videotape.  Counsel discussed such an agreement during the hearing.  The Court directed counsel to confer further and to propose an Order to the Court consistent with this proposed limited agreement or to notify the

Court of an impasse regarding the terms of this proposed limited agreement and to seek a ruling from the Court on the issue, if necessary.  Given the schedules of counsel, the Court did not impose a time limit for this action.

The question of whether State Senator Rapert's deposition may be distributed further, beyond counsel of record and counsel admitted *pro hac vice*, or shared further, beyond the clients in this case, remains subject to additional briefing and rulings by the Court.

To the extent any party wishes to brief further the issues presented by the remaining arguments in State Senator Rapert's motion, including but not limited to whether other copies should be made of the video recording of State Senator Rapert's deposition, aside from any to be made for counsel of record and counsel admitted *pro hac vice* in this litigation, and the restrictions if any the Court should place on use of the video, aside from counsels' ability to show the videotape to their clients for purposes of this litigation, the Court directs opening briefs to be filed by March 30, 2020, response briefs to be filed by April 13, 2020, and any replies to be filed by April 20, 2020.  No party is required to brief further these issues; any party may stand on briefing filed to date.

## II.   Motion To Compel Production Of Documents Directed To State Senator Rapert

The *Orsi* Plaintiffs filed a motion to compel production of documents directed to State Senator Rapert (Dkt. No. 79).  State Senator Rapert filed a response in opposition to the motion to compel (Dkt. No. 84).  The *Orsi* Plaintiffs filed an addendum to the motion to compel (Dkt. No. 91).

The *Orsi* Plaintiffs issued a subpoena duces tecum to State Senator Rapert, which was accepted by his attorney on August 20, 2019 (Dkt. No. 79-1).  State Senator Rapert appeared at the deposition with responses and objections to the subpoena duces tecum (Dkt. No. 79-2).  The

*Orsi* Plaintiffs maintain that State Senator Rapert failed to produce documents from the American History and Heritage Foundation ("AHHF") on the basis that he did not possess documents responsive to the request.  The *Orsi* Plaintiffs maintain that State Senator Rapert is the president of the AHHF and, in that capacity, is entitled to possess or demand possession of the documents of the AHHF.  State Senator Rapert maintains that he was only subpoenaed by the *Orsi* Plaintiffs in his individual capacity, not in his capacity as president of AHHF.  He acknowledges that he has the right to request records from the accountant for AHHF, but he claimed to have no obligation to do so under the circumstances.  The *Orsi* Plaintiffs request that the Court order State Senator Rapert to produce:   (1) any documents of the AHHF regarding the erection of a Ten Commandments monument on the state capitol grounds and (2) all financial records of the AHHF reflecting funds raised for the erection of the Ten Commandments monument on the state capitol grounds or the expenditure of any funds for the erection of the Ten Commandments monument on the state capitol grounds (Dkt. No. 79, at 2-3).

In response, State Senator Rapert contends that the *Orsi* Plaintiffs' subpoena duces tecum was issued to him in his individual capacity.  He concedes that it requested him to appear and produce documents, "most of which were under the custody and control of the [AHHF] . . . ." (Dkt. No. 84, at 1).  He contends that he produced those documents "which were under his custody and control and which also were publicly available.  However, [Arkansas State Senator] Rapert filed objections to the production of certain other documents which were not in his custody and control and which were not publically [sic] available." (*Id.*).  (Dkt. No. 79-2).

State Senator Rapert characterizes the *Orsi* Plaintiffs' motion to compel as seeking:   (1) documents responsive to Request for Production No. 2 requesting "any documents of the [AHHF] regarding the erection of the Ten Commandments monument on the state capitol grounds" and (2)

documents responsive to Request for Production No. 3 requesting "all financial records of the [AHHF] reflecting funds raised for the erection of a Ten Commandments monument on the state capitol grounds or the expenditure of any funds for the erection of the Ten Commandments monument on state capitol grounds."  (Dkt. No. 84, at 1-2 (citing Dkt. No. 80, at 3)).

In response to Request for Production No. 2, State Senator Rapert contends that he "objected and referred Plaintiffs to the documents responsive to their request which are publicly available by request of the Capitol Commission.  In response to Plaintiffs' motion, [State Senator] Rapert has requested the documents from the Capitol Arts and Grounds Commission (that Plaintiffs themselves could and ought to have requested) and will be [sic] produce them upon request." (Dkt. No. 84, at 2).  State Senator Rapert maintains that "[t]he Capitol Commission filings should contain [AHHF] documents regarding the erection of the Ten Commandments monument." (*Id.*).

In response to Request for Production No. 3, State Senator Rapert contends that he "objected and referred Plaintiffs to the information which is responsive to the fundraising part of their request by accessing the [AHHF]'s GoFundMe webpage.  In response to Plaintiff's [sic] motion, [State Senator] Rapert has accessed the [AHHF]'s GoFundMe webpage (which Plaintiffs themselves could and ought to have accessed), printed the pages containing the fundraising information Plaintiffs seek, and produces them now in connection with filing this opposition." (Dkt. Nos. 84, at 2; 84-1).  State Senator Rapert maintains that "[t]he GoFundMe webpage contains information regarding Foundation fundraising efforts." (Dkt. No. 84, at 2).

State Senator Rapert acknowledges that "Plaintiffs will likely seek, through [State Senator] Rapert, production of any internal Foundation documents regarding these topics, if such exist." (*Id.*).  As the Court understands it from the briefing, he opposes these efforts on two grounds.  First,

he contends that, despite admittedly being the President of AHHF, "he does not 'possess' in a strict sense of that word, but also does not have a right to possess and disclose absent approval" of AHHF the documents the *Orsi* Plaintiffs seek (*Id.*, at 3).  He also contends that there is a "qualified association privilege over the documents" (*Id.*, at 3-4).  During the hearing, counsel for State Senator Rapert, who asserted that he represented State Senator Rapert in his individual capacity only, belatedly asserted a relevance objection.  Further, during the hearing, the Satanic Temple Intervenors adopted the arguments of the *Orsi* Plaintiffs with respect to this motion to compel.

### A.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  The Rule is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (construing the same language that appeared in a prior version of Rule 26); *see also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence").  "[D]iscovery may not be had on matters irrelevant to the subject matter involved in the pending action . . . , and even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999) (internal quotation and citation omitted); *see also Pointer v. DART*, 417 F.3d 819, 821 (8th

Cir. 2005) ("A subpoena must also seek relevant information" (citing *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 360-62 (8th Cir. 2003))).

Federal Rule of Civil Procedure 45 applies to documents requested from non-parties.  The advisory committee notes to Rule 45 recognize that one of the purposes of Rule 45 is "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties."  Fed. R. Civ. P. 45, advisory committee notes. Additionally, the advisory notes indicate that under Rule 45, "[t]he non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."  *Id.*; *see also* 9A Wright & Miller, *Federal Practice & Procedure,* § 2452 (3d ed. 2008) (stating that Rule 45 "subject[s] a nonparty witness to the same scope of discovery as that person would be as a party to whom a request for documents and other materials is addressed pursuant to Rule 34").

The Court notes that Federal Rule of Civil Procedure 37 provides for various motions to compel discovery, depending on the failure of the other party.  However, Rule 37 does not provide a mechanism for enforcement of a subpoena.  The purpose of Rule 37 is to provide the mechanism by which Rules 26 to 36 can be made effective.  It is of only limited application when applied to non-parties.  It can only be used to order a non-party to answer written and oral questions under Rules 30 and 31.  It has no application to a non-party's refusal to produce documents.  *See Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975); *see also Baranski v. United States*, 283 F.R.D. 520, 526 (E.D. Mo. 2012) (holding that "Rule 37 does not apply" in case concerning failure to respond to a subpoena (citing *Fisher*, 526 F.2d at 1342)); *Application of Sumar*, 123 F.R.D. 467, 473 (S.D.N.Y. 1988) ("The only authority in the Federal Rules of Civil Procedure for

the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Rule 45(f).").

Rule 45 provides that this Court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Generally, the proper means of seeking relief under Rule 45(g) is by making a motion for an Order to Show Cause. *See Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 720-21 (8th Cir. 2002) (Loken, J., dissenting) ("When Hairston failed to obey the subpoena, Alert moved for an order to show cause why he should not be held in contempt of court" (citing Fed. R. Civ. P. 45(e)); *see also Goldman v. Mehlhoff*, No. 17-cv-4151-DWF-KMM, 2018 WL 1726267, at *2 (D. Minn. Apr. 10, 2018) ("[Plaintiffs] could bring a motion to compel compliance under the contempt provision in Rule 45(g). Without these steps first taking place, however, the Court lacks the authority to require a non-party to produce or permit inspection of documents relevant to this lawsuit."); *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-cv-668 (MJD/LIB), 2014 WL 12756820, at *5 (D. Minn. Jan. 17, 2014) ("[T]he proper means of seeking relief under Rule 45(g) is by making a motion for an Order to Show Cause." (citing *Hairston*, 307 F.3d at 720-21)). Additionally, pursuant to Rule 45(g), a court may order the subpoenaed party to comply with the subpoena. *See In re Subpoenas Addressed To Fish & Naeve*, 519 F.2d 116, 117 (8th Cir. 1975) (after district court's contempt finding, remanding to district court with order that appellants "comply with the subpoenas by submitting the documents for *in camera* inspection by" the district court); *see also U.S. Securities & Exchange Comm'n v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010) (where subpoenaed party "did not serve a written objection or move to quash or modify the subpoenas" the party that served the subpoenas could either seek an order compelling compliance or initiate contempt proceedings).

At this point, the Court will rule on the objections to the subpoena to the extent those objections are fully briefed.  With these rulings, the Court directs the *Orsi* Plaintiffs and State Senator Rapert to confer with respect to the subpoena.  To the extent necessary, the *Orsi* Plaintiffs may move for a show cause order as to why State Senator Rapert should not be held in contempt of court based on conduct related to the subpoena.  The Court also does not foreclose the possibility of State Senator Rapert or the appropriate third-party from seeking an appropriate protective order.

### B.       Objection To Capacity

The subpoena duces tecum at issue was issued to "Senator Stanley Jason Rapert" and listed in part as item number one on Exhibit 1 "[t]he corporate documents maintained by the American History and Heritage Foundation (AHHF) in regard to its founding and purpose . . . ." (Dkt. No. 74, at 10-13).  State Senator Rapert identifies Requests for Production Nos. 2 and 3 as being at issue in the current motion to compel.  Request for Production No. 2 states:  "Any documents of the AHHF regarding the erection of a Ten Commandments monument on the state capitol grounds." (*Id.* at 13).  Request for Production No. 3 states:  "All financial records of the AHHF reflecting funds raised for the erection of a Ten Commandments monument on the state capitol grounds or the expenditure of any funds for the erection of the Ten Commandments monument on the state capitol grounds." (*Id.*).

Generally, "[s]erving a subpoena requires delivering a copy to the named person."  Fed. R. Civ. P. 45(b)(1).  The Court first observes that, although there is a minority rule that personal service of a subpoena pursuant to Rule 45 is not required, the Eighth Circuit Court of Appeals appears to follow the majority rule, which requires personal service for a nonparty subpoena.  "When a non-party is served, the method of service needs to be one that will ensure the subpoena is placed in the actual possession or control of the person to be served."  *Firefighter's Inst. For*

*Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (citation omitted).  The Eighth Circuit might accept some method of service, other than personal delivery, if the method is one that ensures the subpoena is placed in the actual possession or control of the person served.  *See id.*

Therefore, other courts have determined that a corporation may be served by serving "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  "Service on an agent of a corporation is sufficient, however, even though the agent on whom service is made does not have control of the books and records required to be produced, since it is not the agent who is to respond to the subpoena but the corporation, and the agent in that situation is merely the vehicle for reaching the corporation."  9A Wright & Miller, *Federal Practice & Procedure*, § 2454 (3d ed. 2008); *see also Ultradent Prods., Inc. v. Hayman*, No. M8-85 RPP, 2002 WL 31119425, at *2 (S.D.N.Y. Sep. 24, 2002) (determining that service of a subpoena upon a corporation can be secured by delivering a copy of the subpoena to an officer or a managing or general agent of the corporation, and that agent could be an individual, a partnership, or another corporation); *Liberty Mut. Fire Ins. Co. v. Ravannack*, No. CIV.A. 00-1209, 2002 WL 1770936, at *3 (E.D. La. Aug. 1, 2002) ("Where a witness named in a subpoena is a corporation, the subpoena may be served upon an officer, managing agent, or general agent of the corporation. However, it is proper to address a subpoena to a corporation's records custodian or the corporation itself requiring that it produce documents on behalf of the corporation." (internal citations omitted)); *In re Electric & Musical Indus., Ltd., Middlesex England*, 155 F. Supp. 892 (S.D.N.Y. 1957) ("In the absence of any rule to the contrary, service upon a corporation may be made by delivering a copy of the subpoena to an officer or a managing or general agent of the corporation named." (citing Fed. R. Civ. P. 4(d))).

Further, witnesses may be compelled to produce documents and other materials that they control, even though they do not have possession of them. *See* 9A Wright & Miller, *Federal Practice & Procedure*, § 2456 (3d ed. 2008). Cases construing the words "possession, custody or control" in Federal Rule of Civil Procedure 34 are helpful in applying these principles in the context of Rule 45. *Id.* When examining the reach of a grand jury subpoena, the Eighth Circuit explained that "[t]he law recognizes no distinction between constructive possession, with control, and physical possession, as a basis for a subpoena to compel production, so that such process directed to and served upon an owner, who is in constructive possession and control, is as legally capable of commanding the production of his books and papers as is one against a third party, who is in physical possession of them for him." *Schwimmer v. United States*, 232 F.2d 855, 860 (8th Cir. 1956). As president and as an officer of AHHF, State Senator Rapert when served properly with a subpoena for AHHF documents acts as the AHHF with respect to the production of the requested documents.

Given the language of the subpoena duces tecum here and the parties' admissions with respect to the position State Senator Rapert holds within the AHHF, the Court overrules his objection with respect to capacity.

Further, given statements made on his behalf in the briefing, the Court reminds counsel that proper discovery in civil litigation in federal court is not coterminous with accessibility of public documents otherwise. *See Baldridge v. Shapiro*, 455 U.S. 345, 360 n.14 (1982) ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery." (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143, n.10 (1975); *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974))); *Stonehill v. I.R.S.*, 558 F.3d 534, 538 (D.C. Cir. 2009) ("The FOIA disclosure regime, however, is distinct from civil discovery.

Different considerations determine the outcome of efforts to obtain disclosure . . . ." (citing *NLRB*, 421 U.S. at 144));  *Republic of Columbia v. Diageo N. Am., Inc.*, No. CV-04-4372 (NGG)(VVP), 2007 WL 3274882, at *1 (E.D.N.Y. Nov. 5, 2007) ("[T]his court does not consider the obtaining of information by means of FOIA requests to be discovery."); *In re F & H Barge Corp.*, 46 F. Supp. 2d 453, 454 (E.D. Va. 1998) ("Congress did not intend FOIA to supplement civil discovery."); *Jackson v. First Federal Savings of Arkansas, F.A.*, 709 F. Supp. 887 (E.D. Ark. 1989) (examining the relationship between Freedom of Information Act requests and civil discovery).  It is not proper for State Senator Rapert, in his individual capacity or as an officer of AHHF, to limit his production as a matter of course to only publicly available documents.

Also, the Court observes that "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party."  *Coffeyville Res. Refining & Mktg., LLC v. Liberty Surplus Ins. Corp.*, No. 4:08mc00017 JLH, 2008 WL 4853620, at *2 (E.D.Ark. Nov. 6, 2008).  In fact, "in many cases, it is important to obtain what should be the same documents from two different sources because tell-tale differences may appear between them."  *Id.*; *see also E.E.O.C. v. Randall Ford, Inc.*, 298 F.R.D. 573, 575 (W.D. Ark. 2014).

### C.    Assertion Of Qualified Associational Privilege

"The First Amendment protects political association as well as political expression." *Buckley v. Valeo*, 424 U.S. 1, 15 (1976); *see also NAACP v. Alabama*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly.").  Because

disclosure of political affiliations and activities can have a chilling effect on First Amendment rights, the federal circuit courts that have addressed the issue have recognized a limited First Amendment associational privilege from discovery that unduly or unnecessarily infringes upon First Amendment rights; this includes the Eighth Circuit.  *See, e.g., Perry v. Schwarzenegger*, 591 F.3d 1147, 1159-61 (9th Cir. 2010); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466-67 (10th Cir. 1987); *Savola v. Webster*, 644 F.2d 743, 746-47 (8th Cir. 1981); *see also Calzone v. Summers*, 942 F.3d 415, 522-23, 424-26 (8th Cir. 2019).

However, when legislative purpose is an issue, the United States Supreme Court has stated with respect to challenges based upon violations of the First Amendment's Free Exercise of Religion Clause or Equal Protection:

> In determining if the object of a law is a neutral one under the Free Exercise Clause, we can also find guidance in our equal protection cases.  As Justice Harlan noted in the related context of the Establishment Clause, "[n]eutrality in its application requires an equal protection mode of analysis." *Walz v. Tax Comm'n of New York City*, 397 U.S., at 696, 90 S.Ct., at 1425 (concurring opinion).  Here, as in equal protection cases, we may determine the city council's object from both direct and circumstantial evidence.  *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 563-64, 50 L.Ed.2d 450 (1977).  Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body.  *Id.*, at 267-268, 97 S.Ct., at 564-65.  These objective factors bear on the question of discriminatory object.  *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, n. 24, 99 S.Ct. 2282, 2296, n. 24, 60 L.Ed.2d 870 (1979).

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993).  Applying these guidelines, the Court is unwilling to determine that documents reflecting State Senator Rapert and AHHF's role in the drafting and lobbying for the Act are not relevant and, at this point, concludes these documents are at least discoverable.  Further, in some instances, this same rationale may extend to communication with the members of AHHF, particularly if the identity of

the members is not disclosed or can be redacted or the members in question have already publicly weighed in on the issue.

To invoke the qualified privilege, State Senator Rapert or AHHF or both, as it is unclear to the Court at this point on whose behalf this qualified privilege has been asserted, must make a sufficient threshold showing for invoking a First Amendment claim of privilege.  *See, e.g., Perry*, 591 F.3d at 1163 (threshold showing can be met by filing affidavits attesting to the chilling effects of disclosure of the information at issue); *Flynn v. Square One Distribution, Inc.*, No. 6:16-mc-25-Orl-37TBS, 2016 WL 2997673, at *3 (M.D. Fla. May 25, 2016) (The "burden [of the proponent of the privilege] is light, given the crucial place speech and associational rights occupy under our constitution.") (internal quotations and citing authority omitted); *Alliance of Auto. Mfrs., Inc. v. Jones*, No. 4:08-cv-555-MCR/CAS, 2013 WL 4838764, at *4 (N.D. Fla. Sept. 11, 2013) (same as *Perry*).  If a sufficient threshold showing is made, the burden shifts to the party seeking the information or documents to show a compelling need for the information to overcome the privilege, which requires demonstrating more than simply that the information is relevant.  *See, e.g., Savola*, 644 F.2d at 747; *United States v. Citizens State Bank*, 612 F.2d 1091, 1094 (8th Cir. 1980).

Aside from generally asserting this privilege, neither State Senator Rapert nor AHHF has provided the Court with sufficient guidance to permit it to make a studied ruling on the assertion and application of this privilege.  To the extent State Senator Rapert or AHHF or both intend to rely on the assertion of this privilege to withhold information or documents responsive to the subpoena, the Court orders State Senator Rapert or AHHF or both to produce a privilege log in conformity with Rule 45(e)(2)(A)(ii).  That Rule requires the responding person withholding subpoenaed information on a claim of privilege to describe the nature of the withheld documents,

communications, or tangible things in a manner that, without revealing the information itself privileged or protected, will enable the parties to assess the claim.  Upon receiving the privilege log, and hearing from all parties, the Court reserves the right to order production to the Court for an *ex parte*, *in camera* inspection of the documents intended to be withheld based on a claim of associational privilege.  If State Senator Rapert or AHHF or both intend to rely on the assertion of this privilege to withhold information or documents responsive to the subpoena, the Court directs counsel for the *Orsi* Plaintiffs and State Senator Rapert or AHHF or both to confer regarding a reasonable deadline for the production of an appropriate privilege log or logs to permit discovery to proceed.  If counsel are unable to reach agreement, they may petition the Court for further relief.

### D.    Relevance Objection

Having reviewed the entire record before the Court with respect to discovery, having reviewed the legal authorities cited, and having carefully considered the claims and defenses asserted in this case, the Court. overrules State Senator Rapert's belated relevance objection to the subpoena duces tecum raised by State Senator Rapert's counsel at the February 26, 2020, hearing.

### III.    First Motion to Compel Responses From Intervenors

Secretary Thurston filed a motion to compel responses from the Satanic Temple Intervenors and to enforce agreement between counsel (Dkt. No. 93).  The Satanic Temple Intervenors filed a response in opposition to the motion to compel and filed a supplemental response (Dkt. Nos. 98, 99).  Secretary Thurston filed a reply (Dkt. No. 100).

Secretary Thurston seeks to have the Satanic Temple Intervenors' objections waived, including all generic objections stated in their initial and supplemental responses (Dkt. No. 93, at 1-2).  Secretary Thurston also seeks to require that all answers to interrogatories be signed by the party making the answers pursuant to Federal Rule of Civil Procedure 33(b) (Dkt. No. 93, at 2).

Secretary Thurston also seeks to require that the Satanic Temple and Doug Misicko provide proper responses to certain discovery requests (*Id.*).  In addition, Secretary Thurston seeks to require the Court to enforce an agreement among counsel concerning the production of information and documents relating to proceeds from purchases and contributions made through various websites created by the Satanic Temple (*Id.*).

### A.    Objections

Secretary Thurston seeks to have the Satanic Temple Intervenors' objections waived, including what he characterizes as "all generic objections stated in their initial and supplemental responses" (*Id.*, at 1-2).  Having reviewed the entire record before the Court with respect to discovery, the Court denies the request to deem waived the Satanic Temple Intervenors' objections.

### B.    Signed Interrogatory Responses

Secretary Thurston also seeks to require that all answers to interrogatories be signed by the party making the answers pursuant to Federal Rule of Civil Procedure 33(b) (*Id.*).  Rule 33(b)(5), with respect to interrogatory answers and objections, states:  "The person who makes the answers must sign them, and the attorney who objects must sign any objections."  Fed. R. Civ. P. 33(b)(5). The Satanic Temple Intervenors offer no argument to the Court that this requirement does not apply in this case.  The Court grants Secretary Thurston's request and directs that, pursuant to the Rule, all interrogatory responses served in this case be signed in compliance with the Rule.  This requirement will be applied to all parties in this case, consistent with Rule 33(b).  The Court directs that all interrogatory responses served in this case be signed within 14 days from the entry of this Order, absent good cause shown.

### C.     Supplement Certain Discovery Responses

Secretary Thurston moves the Court to require the Satanic Temple and Doug Misicko to provide what he characterizes as "proper responses" to certain discovery requests (Dkt. No. 93, at 2).

As a general matter, Secretary Thurston's discovery requests include numerous subparts that the Court does not construe as one interrogatory.  Based on the record before the Court, Secretary Thurston propounded an initial set of interrogatories and requests for production of documents to the intervenors, Doug Misicko, and Erika Robbins separately (Dkt. No. 93-1, at 1-15).  Secretary Thurston then propounded a second set of interrogatories and requests for production of documents on the Satanic Temple (*Id.*, at 16-22).  By the Court's count, somewhere around Interrogatory No. 2 of the second set which asks two separate questions with respect to each of nine separate entities, Secretary Thurston exceeded the permissible number of 25 interrogatories, including all discrete subparts.  Fed. R. Civ. P. 33(a)(1).  The Court understands that the parties did not stipulate to exceed this number of interrogatories, and the Court did not grant leave to serve over that number.  As a result, the Satanic Temple Intervenors' objection that Secretary Thurston propounded interrogatories in excess of the number permissible by Federal Rule of Civil Procedure 26 is well taken.

The Court also understands that, after these discovery requests were propounded, counsel for Secretary Thurston sent a letter on July 26, 2019, to counsel for the Satanic Temple Intervenors regarding the objections and responses (Dkt. No. 93-3).  On or about August 29, 2019, the Satanic Temple Intervenors supplemented their objections and responses to the first set of discovery (Dkt. No. 93-4, at 1-6).  Counsel also engaged in a telephone conference and follow-up electronic mail messages in August 2019 regarding discovery (Dkt. No. 93-6).  On or about September 26, 2019,

the Satanic Temple Intervenors supplemented their objections and responses to the second set of

discovery (Dkt. No. 93-4, at 7-19).   Counsel for Secretary Thurston wrote a second letter on

October 22, 2019 (Dkt. No. 93-5).   On or about November 7, 2019, the parties reached an impasse

regarding discovery (Dkt. No. 93-7).   As to each specific request identified by Secretary Thurston,

the Court examines and rules on each request in turn.

### 1.      Interrogatory No. 1 And Request For Production No. 1

Interrogatory No. 1 states as follows:

> Please state the Satanic Temple's full legal name; all names and aliases used by the
> Satanic Temple or by which the Satanic Temple has been known at any time; the
> Satanic Temple's legal entity type and all dates of any current or former
> incorporation or legal creation, specifying all states under whose laws the Satanic
> Temple has existed at any time; the full legal name and title of each current and
> former employee, officer, director, manager, board member, advisory member, or
> person or entity holding any other position of responsibility or leadership, whether
> compensated or not.

Request for Production No. 1 states as follows:

> Please produce copies of all current and former articles of incorporation or
> analogous documents filed with any state evincing the Satanic Temple's creation
> as a corporate entity; and copies of all current and former bylaws, operating
> agreements, or analogous documents.

The Satanic Temple, subject to the responses it gave and documents it produced, objected

to these requests as not relevant to any party's claim or defense and not proportional to the needs

of the case.   The Satanic Temple maintains that the information sought is "overwhelming and has

no passable bearing on the questions of this case." (Dkt. No. 93-4, at 8).   The Satanic Temple

provided, "on information and belief," what it characterizes as the full legal name of the

organization in response to the interrogatory and produced the articles of incorporation for The

Satanic Temple, Inc., and its employer identification number in response to the request for

production.   With respect to Interrogatory No. 1, the Satanic Temple asserts that it is "a complex

and international organization with local chapters dispersed throughout the world and whose leadership structure is in constant flux." (*Id.*).  Further, the Satanic Temple represents that its membership currently exceeds 50,000 individuals, many members participate in leadership roles for various charitable and religious activities, and many members often use pseudonyms to protect their safety (*Id.*).

With respect to his motion, Secretary Thurston seeks to require the Satanic Temple to explain a discrepancy that he claims exists (Dkt. No. 94, at 4-5).  However, neither the Interrogatory nor the Request for Production by their terms require that.  The Court will not order through written discovery what the written discovery requests do not seek.

Secretary Thurston does not limit or narrow his requests in his letters, other than to clarify that he seeks this information for the Satanic Temple intervening in this case.  However, it is unclear whether this purported clarification impacts the request in any way.  This interrogatory includes discrete subparts that should be counted separately.  Interrogatory No. 1 and Request for Production No. 1 also are unlimited in time and, therefore, overly broad, unduly burdensome, and not proportional to the needs of this case.

Having reviewed the entire record before the Court with respect to discovery, the Court will require the Satanic Temple to produce current bylaws, operating agreements, or analogous documents.  To the extent the Satanic Temple seeks a reasonable protective order for this information responsive to Request for Production No. 1, the Court directs the Satanic Temple to confer with all parties and propose such an order to the Court for consideration.  The Court denies Secretary Thurston's remaining motion to compel the Satanic Temple to respond further to Interrogatory No. 1 or Request for Production No. 1 as written.

### 2.    Interrogatory No. 2

Through Interrogatory No. 2, Secretary Thurston seeks the Satanic Temple to identify all persons or entities in whose name or names nine listed domains have been registered at any time and to identify all persons or entities that have produced, published, or maintained any content accessible from those nine listed domains at any time.

The Satanic Temple objected to this request as seeking information not relevant to any party's claim or defense and not proportional to the needs of the case.  As for why this information might be discoverable, Secretary Thurston claims that the Satanic Temple "has associated itself with content accessible from various websites—websites that have been registered in ways that mask from public view the person or entity registering." (Dkt. No. 94, at 5).  He requests the information in Interrogatory No. 2, claiming it is "likely to lead to the identification of witnesses and the discovery of facts relevant to this action." (*Id.*).

This interrogatory includes discrete subparts that should be counted separately.  Further, Interrogatory No. 2 is unlimited in time and unlimited in scope with respect to content on these sites and, therefore, overly broad, unduly burdensome, and not proportional to the needs of this case.  Secretary Thurston does not limit or narrow this request in his letters.  Having reviewed the entire record before the Court with respect to discovery, the Court denies Secretary Thurston's motion to compel the Satanic Temple to respond further to Interrogatory No. 2 as written.

### 3.    Request For Production Nos. 2 And 3

Request for Production No. 2 seeks year-end budgets for the Satanic Temple for the years 2015, 2016, 2017, and 2018, and the current budget, including but not limited to specific categories of items listed in the request:   sources of income, liabilities, categorized expenditures, and

recipients of the Satanic Temple's tax-exempt contributions.  Request for Production No. 3 seeks the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018.

As to each request, the Satanic Temple objected that the information sought is not relevant to any party's claim or defense and is not proportional to the needs of the case.  The Satanic Temple asserts that it is a tax-exempt entity and that it produced the document conferring that status over three months prior to responding to the motion to compel (Dkt. No. 98, at 8).

Secretary Thurston asserts that the Satanic Temple has put its tax status and financial information at issue by claiming to be a tax-exempt church while also, according to Secretary Thurston, claiming for years that it pays taxes on principle (Dkt. No. 94, at 6).  Secretary Thurston also cites Internal Revenue Service ("IRS") regulations regarding what is required for a "church" with respect to purpose claiming it must "be organized and operated exclusively for religious, educational, scientific or other charitable purposes" and its net earnings claiming its "net earnings may not inure to the benefit of any private individual or shareholder." (*Id.*).  As a result, Secretary Thurston claims that Requests for Production Nos. 2 and 3 "reasonably seek the Satanic Temple's state and federal tax returns and financial statements for recent years." (*Id.*, at 7).

The Court notes that "[g]enerally, [Internal Revenue Code ("IRC")] § 501(c)(3) organizations must file an annual informational tax return on Form 990 or 990–PF." *American Atheists, Inc. v. Shulman*, 21 F. Supp. 3d 856, 860 (E.D. Ky. 2014) (citing 26 U.S.C. § 6033(a)(1); 26 C.F.R. § 1.6033–2(a)(2)(i)).  "Pursuant to 26 U.S.C. § 6033(b), an informational tax return shall be filed annually and include the § 501(c)(3) organization's (1) gross income for the year; (2) expenses attributable to such income and incurred within the year; (3) disbursements within the year for the purposes for which it is exempt; (4) a balance sheet showing its assets, liabilities, and net worth as of the beginning of such year; (5) the total of the contributions and

gifts received by it during the year, and the names and addresses of all substantial contributors; (6) the names and addresses of its foundation managers and highly compensated employees; (7) the compensation and other payments made during the year to each individual described in paragraph six; and other various requirements specific to different types of § 501(c)(3) organizations." *Id.* at 860 n.1.  However, "exemptions for the informational return are granted to churches, the religious activities of a religious order, and any organization that is not a private foundation and has annual gross receipts less than $5000." *Id.* at 860 (citing 26 U.S.C. § 6033(a)(3)(A)).  The Satanic Temple received a determination letter from the IRS dated February 6, 2019, indicating that the Satanic Temple was exempt from federal income tax under IRC § 501(c)(3).  I.R.S. Priv. Ltr. Rul. 947 (Feb. 6, 2019), https://apps.irs.gov/pub/epostcard/dl/FinalLetter_82-3404757_THESATANICTEMPLE_05142018_01.tif.  This letter also provides that the Satanic Temple was not required to file a Form 990, 990-EZ, or 990-N, indicating the Satanic Temple's status as a church or religious order.  *See id.*  However, based on the record before the Court, the Court understands that the Satanic Temple has not indicated that it had such status or did not file appropriate tax returns prior to this 2019 determination.

Given this information with respect to IRS requirements, although certain of the information that may be included on a year-end operating budget and on the current operating budget of the Satanic Temple may be discoverable under Secretary Thurston's theory, Request for Production No. 2 as written is not proportional to the needs of discovery in this case.  The Court denies Secretary Thurston's motion to compel the Satanic Temple to respond further to Request for Production No. 2 as written.

The Court orders the Satanic Temple to respond to Request for Production No. 3.  To the extent the Satanic Temple seeks a reasonable protective order for information responsive to

Request for Production No. 3, the Court directs the Satanic Temple to confer with all parties and propose such an order to the Court for consideration.  Further, depending on the information disclosed in response to Request for Production No. 3, Secretary Thurston may request that the Court reconsider its ruling with respect to Request for Production No. 2.

4.      **Interrogatories Nos. 4, 5, And 6 And Request For Production Nos. 5 and 6**

Interrogatory No. 4 seeks to identify all persons or entities that received proceeds from purchases made through the Satanic Temple's website as well as from contributions made through each of eight separate webpages listed.

Interrogatory No. 5 seeks the identity of all persons or entities that received the proceeds when contributions were made through the "Bring Baphomet to Arkansas!" website as identified in the interrogatory.  Request for Production No. 5 seeks all records showing all proceeds from contributions made through the "Bring Baphomet to Arkansas!" website received by the persons or entities identified in response to Interrogatory No. 5.

Interrogatory No. 6 seeks the dollar amount of the proceeds received through the "Bring Baphomet to Arkansas!" website used to pay for or offset the costs of taking the Baphomet statute to the Arkansas state capitol for the rally on or about August 16, 2018.  Request for Production No. 6 seeks all records showing the use of the proceeds received through the "Bring Baphomet to Arkansas!" website to pay for or offset the costs of taking the Baphomet statute to the Arkansas state capitol for the rally on or about August 16, 2018.

To each of these requests, the Satanic Temple objected that the information or documents sought were not relevant to any party's claim or defense and were not proportional to the needs of the case.  The Satanic Temple maintains that the State of Arkansas is not the IRS and that the

Satanic Temple is not subject to a tax controversy or IRS scrutiny on the sources and uses of its charitable proceeds (Dkt. No. 98, at 10).

Secretary Thurston claims that these requests were the subject of a side agreement among counsel. Secretary Thurston claims counsel for the Satanic Temple agreed to produce information and documents regarding the identity of persons or entities that receive proceeds from purchases and contributions made through the various websites identified in the discovery requests (Dkt. No. 94, at 8-9). Counsel for the Satanic Temple disputes this, asserting that counsel did not agree to produce any of that (Dkt. No. 98, at 9-10). From the Court's review of the record, it appears that Secretary Thurston is relying on an email chain for its asserted agreement in writing, the pertinent pages of which appear to be an email from counsel for the Satanic Temple to counsel for Secretary Thurston dated August 5, 2019 (Dkt. No. 93-6, at 5-6). Under "agreed productions" among other categories is written "[w]here does the money go for TST purchases and contributions," but under "circle back" is listed "RFP 5 to TST" and "RFP 6 to TST," among other items (*Id.*, at 5). This purported agreement is ambiguous at best with respect to these discovery requests. The Court will not attempt to enforce an ambiguous written agreement among counsel regarding discovery, especially when counsel dispute the intent and meaning of their ambiguous written agreement.

These interrogatories include discrete subparts that should be counted separately. Interrogatories Nos. 4, 5, and 6 and Request for Production Nos. 5 and 6 are unlimited in time as written and, therefore, overly broad, unduly burdensome, and not proportional to the needs of this case. Secretary Thurston does not limit or narrow this request in his letters.

Although certain of the information Secretary Thurston seeks through these specific discovery requests for a limited amount of time may be discoverable, these requests overall are not proportional to the needs of this case. The Court denies Secretary Thurston's motion to compel

the Satanic Temple to respond further to Interrogatories Nos. 4, 5, and 6 and Request for Production Nos. 5 and 6 as written.  Again, depending on the information disclosed in response to Request for Production No. 3, Secretary Thurston may request that the Court reconsider its ruling with respect to these discovery requests.

### 5.    Interrogatory No. 7 And Request For Production No. 7

Interrogatory No. 7 seeks to identify all persons or entities that were involved in, or pay costs associated with, the design, construction, or modification of the Baphomet statute as well as all persons or entities that have a legal or equitable interest in the statute.  Request for Production No. 7 seeks a copy of all records showing the legal or equitable interests in the Baphomet statute of the persons or entities identified in the previous interrogatory.

In response, the Satanic Temple provided without objection information about the design and construction, and modification if any, of the Baphomet statute, but the Satanic Temple objected to the remainder of the requests as not relevant to any party's claim or defense and not proportional to the needs of the case.  The Satanic Temple maintains that it produced the buy/sell of the Baphomet Statute over three months before responding to this motion to compel (Dkt. No. 98, at 10).  Further, counsel for the Satanic Temple states "[t]he agreement identifies all persons who were involved in the construction of the Baphomet Monument and is the only bill of sale transferring the Baphomet Monument from the artist who created it to TST." (*Id.*).

In support of his motion, without explanation, Secretary Thurston asserts that the Satanic Temple now objects to providing information about modifications (Dkt. No. 94, at 10).  In its September 26, 2019, supplemental response, the Satanic Temple asserts that it does not object to providing information regarding any modifications that have been performed (Dkt. No. 93-4, at 14).  It is unclear what communications, if any, have occurred among counsel giving rise to

Secretary Thurston's current assertion regarding information and documents related to modifications.

Having reviewed the entire record before the Court with respect to discovery, the Court orders the Satanic Temple to respond to Interrogatory No. 7 and Request for Production No. 7 to the extent they seek information regarding modification of the Baphomet statute, as the Satanic Temple indicated it would in its September 26, 2019, supplemental response.  The Court denies Secretary Thurston's remaining motion to compel the Satanic Temple to respond further to Interrogatory No. 7 or Request for Production No. 7 as written.

### 6.      Interrogatory No. 9

Interrogatory No. 9 seeks the identity of all legal and financial relationships the Satanic Temple has had at any time with Doug Misicko; Cevin Soling; United Federation of Churches, LLC; Reason Alliance, Ltd.; The Alliance for Self-Directed Education, Inc.; Alliance for Integrity and Justice Ltd.; and Spectacle Films.  The Satanic Temple objected that the information is not relevant to any party's claim or defense in the case and not proportional to the needs of discovery.

In support of his motion, Secretary Thurston asserts that he "believes that the Satanic Temple has close legal and financial relationships with, and has engaged in joint efforts with," the individuals and entities listed in Interrogatory No. 9 but that the Satanic Temple has refused to provide information concerning these relationships (Dkt. No. 94, at 10).  Further, in his first letter regarding discovery, Secretary Thurston claimed the information is discoverable, in part, "because the Satanic Temple claims to be a legitimate religious organization and the Defendant is aware of information that it is rather a self-promotional scheme for certain individuals." (Dkt. No. 93-3, at 7).  In his second letter regarding discovery, Secretary Thurston claimed the information is discoverable because "the Satanic Temple's subjecting the Defendant to the power of the courts

by haling it into federal court gives the Defendant every right to know information concerning the organization that is prosecuting this lawsuit and the persons holding positions therein." (Dkt. No. 93-5, at 5).

This interrogatory includes discrete subparts that should be counted separately. Further, Interrogatory No. 9 is unlimited in time and appears unlimited in scope to the claims and defenses presented in this case; therefore, the interrogatory is overly broad, unduly burdensome, and not proportional to the needs of this case. Secretary Thurston does not limit or narrow this request in his letters. Having reviewed the entire record before the Court with respect to discovery, the Court denies Secretary Thurston's motion to compel the Satanic Temple to respond further to Interrogatory No. 9 as written.

**7.    Interrogatory No. 10 To Satanic Temple and Interrogatory No. 3 To Doug Misicko**

Interrogatory No. 10 propounded to the Satanic Temple and Interrogatory No. 3 propounded to Doug Misicko seek the identity of every lawsuit or legal proceeding of whatever kind to which the Satanic Temple or Mr. Misicko, respectively, has been a party since 2013, whether civil or criminal, specifying the court, the court's location and jurisdiction, the case number, the filing date, every claim made or charge brought by or against the Satanic Temple (whether or not dismissed, etc.), and the outcome of the proceeding. The Satanic Temple and Mr. Misicko objected that the information is not relevant to any party's claim or defense in the case and not proportional to the needs of discovery. Specifically, the Satanic Temple stated that a public search would provide this information to defendants. Further, the response indicated that a public search would not turn up a case where Lucien Greaves served as an expert witness on the subject of Satanism and, therefore, the case and testimony were disclosed (Dkt. No. 98, at 12). Secretary

Thurston, in support of his motion, offers no specific information making other litigation discoverable or relevant to the claims and defenses in this case.

This interrogatory includes discrete subparts that should be counted separately.  Having reviewed the entire record before the Court with respect to discovery, the Court directs the Satanic Temple and Mr. Misicko to provide only the case name, number, and jurisdiction for each case, civil or criminal, in which either the Satanic Temple or Mr. Misicko has been a party since 2013. To the extent the Satanic Temple or Mr. Misicko seek a reasonable protective order for information responsive to these interrogatories, the Court directs the Satanic Temple and Mr. Misicko to confer with all parties and propose such an order to the Court for consideration.

### D.  Enforce Agreement

Secretary Thurston also seeks to require the Court to enforce an agreement among counsel concerning the production of information and documents relating to proceeds from purchases and contributions made through various websites created by the Satanic Temple (Dkt. No. 93, at 2). For the reasons previously stated, the Court declines to do so.

### IV.  Second Motion To Compel From Intervenors

Secretary Thurston filed a second motion to compel discovery from the Satanic Temple Intervenors (Dkt. No. 104).  The Satanic Temple Intervenors responded in opposition (Dkt. No. 106).  Secretary Thurston filed a reply (Dkt. No. 109).  The Court denies as moot the second motion to compel discovery from Satanic Temple intervenors filed by Secretary Thurston in the light of Secretary Thurston's notice of withdrawal of second motion to compel discovery from Satanic Temple Intervenors (Dkt. Nos. 104, 112).  To the extent the Satanic Temple Intervenors move for attorneys' fees with respect to having to respond to this motion, the Court denies such a motion (Dkt. No. 106).

## V.      Conclusion

For these reasons, the Court takes under advisement the motion to quash and for protective order filed by non-party witness State Senator Rapert, to the extent the Court has not already ruled on the motion and directs further briefing by the parties consistent with the terms of this Order (Dkt. No. 74).   The Court grants the motion to compel production of documents directed to State Senator Rapert consistent with the terms of this Order (Dkt. No. 79).   The Court grants the motion for leave to file memorandum in reply to response to motion to quash and for protective order filed by State Senator Rapert and directs him to file his reply within 14 days from the entry of this Order (Dkt. No. 82).   The Court grants in part and denies in part the first motion to compel responses from Satanic Temple Intervenors and enforce agreement between counsel filed by Secretary Thurston (Dk. No. 93).   The Court denies as moot the second motion to compel discovery from Satanic Temple Intervenors filed by Secretary Thurston and denies the Satanic Temple Intervenors' motion for attorneys' fees with respect to having to respond to this motion (Dkt. No. 104).  The Court grants Secretary Thurston's motion for hearing (Dkt. No. 110).

So ordered this the 1st day of March, 2020.

_Kristine G. Baker_
_____
Kristine G. Baker
United States District Judge