UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**DONNA CAVE, ET AL**                                                                                          **PLAINTIFFS**

**V.**                      **CASE NO.: 4:18-CV-00342-KGB/BD**

**JOHN THURSTON, ARKANSAS SECRETARY OF STATE,
IN HIS OFFICIAL CAPACITY**                                                                   **DEFENDANT**

### MEMORANDUM IN REPLY
### TO RESPONSE TO MOTION TO QUASH AND FOR PROTECTIVE ORDER

In response to Jason Rapert's Motion to Quash and for Protective Order, the Court issued an order that the deposition noticed for September 12, 2019 be conducted under the terms of the subpoena at issue, which called for videotaped recording of the proceedings. *See* Rec. Doc. No. 78. However, the Court also granted a temporary protective order prohibiting the creation and distribution of copies of the videotaped recording pending further order of the Court. *See* id. The Court promised to grant all parties the opportunity to fully brief the issue before ruling on Jason Rapert's request for protective order. *See* id.

On September 23, 2019, Plaintiffs filed their Response to Jason Rapert's motion. *See* Rec. Doc. No. 81. Jason Rapert replies as follows.

1. ***Jason Rapert does not object to traditional use of the videotaped recording.***

Plaintiffs' counsel argues that Jason Rapert seeks to prevent them from using the videotaped recording for "traditional litigation uses". Plaintiffs' counsel defines "traditional litigation uses" as allowing their out-of-state co-counsel to view the deposition, showing the deposition to their clients ("at his own office, if necessary"), and showing the deposition to a litigation consultant. *See* Rec. Doc. No. 81, p. 9-10.

This is not the full extent of the use of the videotaped recording of Jason Rapert's deposition that has been represented to counsel for Jason Rapert. Contrary to the assertions in Plaintiffs' response, Jason Rapert does not now and never has objected to merely showing the deposition to counsel's clients (*i.e.,* Plaintiffs themselves). Jason Rapert's legitimate and well-founded concern, based on prior experience with Plaintiffs, is and always has been for what Plaintiffs (*i.e.,* the clients) will do with the videotaped recording once they obtain and possess a copy of it.

If, however, Plaintiffs' counsel concedes (as apparently they do) that merely *showing* the deposition to co-counsel, their clients (*i.e.,* Plaintiffs herein), and a litigation consultant will be the full extent of their "traditional use" of the videotaped recording – *i.e.,* copies of the deposition, in any form, will not be created and provided to anyone – then Jason Rapert does not object to "traditional use" of the videotaped recording. Under those circumstances alone, Jason Rapert respectfully suggests that the Court craft an order appropriately limiting the scope of the use of the videotaped recording as suggested by Plaintiffs' definition of "traditional uses".

### *2. Jason Rapert has shown good cause to issue a protective order.*

The fact that Jason Rapert agrees with Plaintiffs that "traditional uses", as discussed above, should be the extent of the use of the videotaped recording of his deposition, and that the Court should enter a protective order reflecting that understanding, should put an end to the matter. However, Plaintiffs now seek to use the deposition for "non-traditional uses", in effect acknowledging their intent to do the very thing against which Jason Rapert seeks the Court's protective order.

A protective order against "non-traditional uses" (notably, a term left undefined by Plaintiffs) of the videotaped recording of Jason Rapert's deposition should issue because Jason

Rapert, contrary to Plaintiffs' assertions, has shown good cause.  Aside from using an unauthorized video recording of an interview with Jason Rapert as part of a movie in which he stars, The Satanic Temple's Lucien Greaves has a demonstrated history of personally manipulating images of Jason Rapert and encouraging his thousands of followers on social media to do the same.  For example, Mr. Greaves's Facebook cover photo shows a manipulated image of Jason Rapert standing next to Mr. Greaves wearing pink sunglasses and flashing a Satanic hand sign, with the text "TOGETHER We can bring Baphomet to Arkansas" superimposed on the image.[1]  Another manipulation, published by Mr. Greaves on Twitter in apparent promotion of a book in which he is trying to drum up interest, features a picture of Jason Rapert's head photoshopped onto a naked man's body in the bathtub shaving his legs.  The text of the tweet reads "Shave Your Legs Before Peeing: The @jasonrapert Story The Collected Wit, Wisdom, and Commandments of a Jason Minister. Coming soon!"[2]  A third example, a tweet from one of Mr. Greaves's followers which Mr. Greaves re-tweeted, shows an image of Jason Rapert and a colleague holding a flag that has been manipulated to feature The Satanic Temple's logo, the head of Baphomet at the center of a pentagram.[3]

As these manipulations clearly show, whether Mr. Greaves and his followers will manipulate the videotaped recording of Jason Rapert's deposition is not a mere possibility, it is a near certainty.  These particular factual demonstrations, rather than being "vague, general, and conclusory", show a pattern of Plaintiffs manipulating Jason Rapert's image and likeness in order to serve their purposes.  There is no reason whatsoever to think that they will refrain from doing

---

[1] *See* Exhibit 1.

[2] *See* Exhibit 2.

[3] *See* Exhibit 3.

the same with the deposition recording if given even half a chance. The Court should foreclose that possibility and issue a protective order based on the good cause shown by Jason Rapert.

### 3. *Other considerations do not justify denying Jason Rapert's request.*

Plaintiffs argue alternatively that even if the Court thinks good cause has been shown, other considerations justify denying Jason Rapert's request for protective order. These "other considerations" center on Plaintiffs' mischaracterization of the matter as one of "public concern", and their argument that the public should be able to "decide whether [Jason Rapert] was subjected to an 'anti-Christian inquisition'".

    a. <u>Plaintiffs have cynically mischaracterized Jason Rapert's unnecessary involvement in their lawsuit as a matter of "public concern" in order to overcome the good cause for the protective order that has been shown.</u>

Plaintiffs argue that this is a matter of public concern because "[t]he public is entitled to know the motivations of a Jason who worked in his official and unofficial capacities to bring a religious monument to the state capitol grounds." While this is a highly partisan description of the Plaintiffs side of the case, Jason Rapert is not a party to this lawsuit. Challenging the constitutional validity of the enabling legislation is one matter, but using that litigation to manipulate photographs and video images is quite another. Plaintiffs' "public concern" argument is a ploy being used to justify gaining access to material which they and their followers can use to further manipulate photographs and video images, as they have done in the past. Moreover, all Plaintiffs need in order to meet their "needs" is the transcript of the deposition. As such, their argument does not overcome the good cause for the protective order that Jason Rapert has shown.

    b. <u>Plaintiffs express outrage at Jason Rapert's accurate description of his interrogation as an "inquisition" in order to manufacture another reason to overcome the good cause shown.</u>

4

Plaintiffs claim to have offered to accept limitation of the use of the videotaped recording of Jason Rapert's deposition to those "traditional uses" discussed in Section 1, *supra,* but, according to Plaintiffs, Jason Rapert's subsequent tweet regarding the "anti-Christian inquisition" to which he was subjected during the deposition now justifies releasing the recording to the public. In support of their argument, Plaintiffs' counsel claims he "did not conduct an 'inquisition'", he "took a deposition" that was "fair" and "conducted pursuant to the Federal Rules of Civil Procedure, not the *Instrucciones* of Torquemada." *See* Rec. Doc. No. 81, p. 8. Counsel argues that the recording should be released to the public "so they (sic) can decide whether [Jason Rapert] was subjected to an 'anti-Christian inquisition.'"

With all due respect to references to the Grand Inquisitor Torquemada, and setting aside any further discussion of the rack and the rope, Plaintiffs have drawn a false equivalence, not justified by Jason Rapert's comment, between "an inquisition" (which counsel in fact conducted) and "the Spanish Inquisition" (which Plaintiffs imply Jason Rapert meant by his tweet). Among the dictionary definitions of "inquisition" is "an investigation conducted with little regard for individual rights", "a severe questioning", "a judicial or official inquiry or examination usually before a jury", and "the act of inquiring : EXAMINATION".[4] Only when the word is capitalized is it used in reference to "a former Roman Catholic tribunal for the discovery and punishment of heresy".

Jason Rapert did not capitalize the word "inquisition" in his comment, and clearly did not use the word in the sense that Plaintiffs' counsel implies. Simply because one uses the word "inquisition" does not mean one seeks to invoke the memory of the Spanish Inquisition. In other words, not all inquisitions are Spanish Inquisitions. Literally, as the undersigned counsel writes

---

[4] *See* https://www.merriam-webster.com/dictionary/inquisition?src=search-dict-box.

and discusses the difference of a deposition being described as an "inquisition" as compared to the "Instrucciones of Torquemada" and referencing and reading social media posts attached to the pleadings, it feels as if the discussion proves the exact point about the release of the video of the deposition.  Undersigned counsel respectfully requests that the Court assist witnesses and parties in rising above the fray and help focus the attention back to the legal issues at hand, and not the "sound bite" public media spin atmosphere that this is becoming.   Jason Rapert's undersigned counsel requests that the Court limit the video deposition to the traditional uses that were almost agreed upon by the witness and the parties.  Since the deposition was taken for traditional litigation purposes, undersigned counsel requests that it does not become more of the same as the social media exhibits referenced in these pleadings.

                   Respectfully submitted,

Paul Byrd, Bar No. 85020
**Paul Byrd Law Firm, PLLC**
415 N. McKinley Suite 210
Little Rock, AR 72205
Phone: (501) 420-3050
Fax: (501) 420-3128
paul@paulbyrdlawfirm.com

By:   /s/ Paul Byrd_____
      Paul Byrd, Ark. Bar No. 85020
      Attorney for Jason Rapert in his individual
      capacity.

## **CERTIFICATE OF SERVICE**

I hereby certify that I, Paul Byrd, submitted for filing the foregoing document by uploading it to the Court's ECF system.  The ECF system send automated notice to all counsel of record.

By:   /s/ Paul Byrd_____
      Paul Byrd, Ark. Bar No. 85020