

Matthew A. Kezhaya <matt@kezhaya.law>

## Responses to TST's 1st RFPs

**Matthew A. Kezhaya** <matt@kezhaya.law>                                            Wed, Apr 8, 2020 at 3:58 PM
To: Michael Cantrell <michael.cantrell@arkansasag.gov>
Cc: "aschultz@rodey.com" <aschultz@rodey.com>, "jburnett@laveyandburnett.com" <jburnett@laveyandburnett.com>, "josh@greenandgillispie.com" <josh@greenandgillispie.com>, "mstambaugh@rodey.com" <mstambaugh@rodey.com>, "gerrysch@b-s-m-law.com" <gerrysch@b-s-m-law.com>, "mmiller@americanhumanist.org" <mmiller@americanhumanist.org>, "patrick@ffrf.org" <patrick@ffrf.org>, Nicholas Bronni <nicholas.bronni@arkansasag.gov>, Vincent Wagner <vincent.wagner@arkansasag.gov>, Dylan Jacobs <dylan.jacobs@arkansasag.gov>, "William C. Bird III" <william.bird@arkansasag.gov>, "gary.sullivan@sos.arkansas.gov" <gary.sullivan@sos.arkansas.gov>, "hsasser@firstliberty.org" <hsasser@firstliberty.org>, "mberry@firstliberty.org" <mberry@firstliberty.org>, "lepatterson@firstliberty.org" <lepatterson@firstliberty.org>, "sonia@kezhaya.law" <sonia@kezhaya.law>, "stu.dehaan@gmail.com" <stu.dehaan@gmail.com>, Josie Graves <josie@kezhaya.law>
Bcc: kezhaya-law-plc-TPdAqBFSUX@mycasemail.com, The Satanic Temple <satanictempleorg@gmail.com>, doug mesner <doug.mesner@gmail.com>, Erika Robbins <erikanicolerobbins@gmail.com>

Mike,

Please consider this letter a good faith effort to confer as required by Rule 37.  This letter pertains to both the first discovery requests and second discovery requests.  Additionally, please remember to add my associate, Josie Graves, to correspondence on this case as she is counsel of record.

- **Agreement to limit discovery requests** - To some extent, your objections are well taken.  We agree to limit our discovery requests as follows:
    - Exclude Governor or staff correspondence - We agree to limit the requests to correspondence sent from General Assembly members or staff.  Correspondence sent by Governor or staff need not be provided.
    - Limit "meeting minutes" to "non-legislative meetings" - We agree to limit 1st RFPs nos. 14 and 15 (meeting minutes pertaining to the Ten Commandments Monument Display Act and the Usurping Act, respectively) to "meetings held between General Assembly members, or their staff, and non-General Assembly members."  It is anticipated that these meeting minutes will shed light on the origins and purposes of the two complained-of Acts.
    - Exclude notes created by employees of the State pertaining to either act - We withdraw 1st RFP nos. 16 and 17 (notes created by State employees pertaining to either Act).
    - Exclude CC&E disclosures - We withdraw 1st RFP no. 18 (specified CC&E forms).
- **General issues:**
    - Blanket claims of objections - in nearly every response you object "Defendant objects, and reserves all objections, on the basis of attorney-client privilege and attorney work product doctrine."  General objections are not sufficient to preserve your objection.  I disregard each of these.
    - The Defendant is the State, not only the Secretary of State - You repeatedly object that "Defendant" does not have access to various documents. Once again I must reiterate that "Defendant" is not "John Thurston, personally" but "The State of Arkansas."  Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity")  (internal cite omitted; emphasis in original).  Doubtlessly, the State has in its  possession, custody or control:
        - **emails** because the State maintains the servers and because Gary Sullivan indicated by email dated March 12 that he is "handling the gathering of the documents."
        - **state tax records** because the State has an office specifically created for the purpose of managing state taxes (the DFA)
        - **documents in the possession of the State of Arkansas or any of its employees that relates to activities of the AHHF or NACL** because, by definition, the requests are only specifying documents in the State's possession.
    - Assertions of privilege without a description to aid other parties in assessing the claim - Rule 26(b)(5) requires you to "describe the nature of the documents, communications, or tangible

- things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  I even took special care to notify you of the above requirement.  See "instructions" at paragraph 4.  Your responses make no effort to provide the above and, as a result, I am unable to assess the "claims," plural, of privilege.  I have already given you a two week extension and 12 days have passed since your claims of privilege.  You have not requested any additional time to provide the privilege logs.  Please provide the privilege log by **April 10 at 12:00 pm**.
    - Unilateral claim for more time - Repeatedly, your objections unilaterally claim additional time to respond.  This was not agreed upon.  I already gave you two weeks.  Frankly, had you given a good faith effort to provide any documents, I would likely have given you more time.  This unilateral claim for more time is particularly pernicious, given we have less than three weeks before the discovery cutoff.  Your unilateral claim for more time is thus unfounded.  Further, in every objection, you lay blame on COVID-19 for your failure to return complete responses.  I propounded these requests on February 14 and they were due on March 14 -- long before COVID-19 had any effect on the State of Arkansas.
    - Refusal to identify witnesses - You object to a request that asks for the contact information for all individuals who have discoverable information on any legal issue in this cause.  2nd ROG # 1.  The objection is to overbreadth.  I must remind you that Rule 26(a)(1) requires the disclosure of this information at the outset of the litigation.  In the past few months alone, you have put forward internet articles written by authors who have not been disclosed; the State historian who had not been previously disclosed; an expert witness who had not been previously disclosed; and suggested at the discovery hearing having witnesses "who probably would not want to be publicly identified" who suggest TST is a profit-making operation and not a real religion.  I will not abide a trial by ambush.  Please identify everyone who you anticipate providing evidence in this cause to support your defenses by **April 10 at 12:00 pm**.
    - Refusal to provide correspondence with witnesses - You object to providing correspondence had between the Defendant or Defendant's counsel with these secret witnesses.  2nd RFP no. 2.  The objection is attorney-client privilege.  You do not provide a privilege log so that I can evaluate that claim for myself.  In absence of evidence ot the contrary, I assume these secret witnesses who claim TST is a profit-making operation are not your clients.  If that is the case, there is no attorney-client privilege.  Similarly, if these secret witnesses are providing information to you for the purpose of supporting your defenses, then it is not "work product" because you did not generate the documents.  Please provide the requested correspondence by **April 10 at 12:00 pm**.
    - Refusal to provide documents - You object to providing all copies of documents which the State will use to allege that TST is a profit-generating front for its founders.  2nd RFP no. 3.  The objections were that "the request seeks information that is equally publicly available and accessible to all parties" and "the interrogatory [sic] seeks items that have previously been disclosed in discovery."  Neither are true.  To the best of my knowledge, you have not published an exhibit list.  Please direct me to the published material if I am mistaken.  Regarding the latter, I have not received any documents that tend to suggest TST is a profit-generating front.  What I have received are baseless speculation levied by internet trolls.  Please confirm that these internet comments are the beginning and end of the State's proffer of evidence that TST is a profit-generating front for its founders.
- **Legislative privilege** -
    - Blanket claim - The legislative privilege does not absolutely bar the production of the requested correspondence, as your responses suggest.  For recent treatment of state legislative emails in the context of an equal protection case, see Bethune-Hill v. Va. State Bd. of Elections, 114 F. Supp. 3d 323 (E.D. Va. 2015).  In gist, Bethune-Hill explains that the privilege takes a backseat to the "core issue" of legislative intent.  As I have repeatedly explained, the Establishment Clause case turns on the legislative intent behind the Ten Commandments Monument Display Act.  If the intent was to proselytize or give preferential treatment to the religious message of the Ten Commandments, then it violates Establishment Clause.  Similarly, the Equal Protection Clause case turns on the legislative intent behind the Usurping Act.  If the intent was to deprive TST of a fair opportunity to present a competing religious message, then it violates Equal Protection.  The requested correspondence is narrowly tailored to return evidence of legislative intent about the above two issues.
    - Relevance - It cannot seriously be disputed that "statements made by the decision making body," Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 540, 113 S. Ct. 2217,

2231 (1993), are squarely relevant to this litigation. This correspondence constitutes such "statements."

- Waiver - The legislative privilege is waived to the extent it has been provided to any third parties. Bethune-Hill, 114 F.Supp at 338-39. Please provide all requested correspondence from General Assembly members to anyone outside of the General Assembly by **April 10 at 12:00 pm**.

- **AHHF records** -
  - Relevance - The AHHF records are critical to the core issues of this litigation. First, I expect they will provide additional information about key witnesses. Second, I expect that documents pertaining to charity designation will betray a religious purpose which will be useful to show that the religious message behind the Ten Commandments Monument was given preferential treatment over the Baphomet Monument. Third, I expect that charity reports and tax records will be useful to show the predominantly religious purpose behind gifts to fund the Ten Commandments Monument which, again, tends to show that it is a religious rather than a civic monument.
  - Public records - The AHHF records are not all public. First, I do not have access to the charity reports, charity application, or similar materials. Second, to the extent these records are available publicly, I have to pay money to obtain certified copies. That requirement does not apply through discovery.
  - Tax records - AHHF tax records are believed to identify all donors and all donated sums that resulted in the Ten Commandments Monument. This information was recently the central inquiry of another Ten Commandments case. Felix v. City of Bloomfield, 847 F.3d 1214 (10th Cir. 2017).
  - Activities - The AHHF is believed to be a religious, rather than civic organization. If the AHHF's purposes are religious in nature, this tends to suggest the Ten Commandments Monument is also religious. Other activities will shed light into whether the AHHF is religious and whether the State knew the AHHF was religious when accepting the monument. That connection, if established, would tend to suggest the State's purpose for the Ten Commandments Monument is to proselytize, which violates the Establishment Clause.

- **NACL records** -
  - Relevance - The NACL has additional relevance to this litigation. The NACL is a project of State Sen. Rapert, who introduced the Ten Commandments Monument Display Act and whose associate (and co-director of the AHHF) introduced the Usurping Act. My understanding is that the NACL's stated mission is to enact religious legislation for the purpose of providing Christianity preferential treatment to all other religions. The Ten Commandments Monument Display Act and the Usurping Act, both, give Christianity preferential treatment and the latter singles out TST for special negative treatment. State Sen. Rapert is a key player in this litigation which implicates his other projects.
  - Public records - The NACL records are not all public. First, I do not have access to the charity reports, charity application, or similar materials. Second, to the extent these records are available publicly, I have to pay money to obtain certified copies. That requirement does not apply through discovery.
  - Tax records - The NACL tax records are believed to provide information on religious donations and donors which, if correlative to the Ten Commandments Monument donors/donations, tends to suggest the Ten Commandments Monument is religious.
  - Activities - The NACL is clearly a religious organization. If the NACL coordinates its efforts with the AHHF, then the AHHF's purposes are also religious in nature. This would tend to suggest the Ten Commandments Monument is also religious. The NACL's activities, if shared with the AHHF, will shed light into whether the AHHF is religious and whether the State knew the AHHF was religious when accepting the monument. That connection, if established, would tend to suggest the State's purpose for the Ten Commandments Monument is to proselytize, which violates the Establishment Clause.

In sum, please provide the requested discovery by **April 10 at 12:00 pm**. To the extent any material is not produced on the claim of privilege, for each withheld material, "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim" as required by FRCP 26(b)(5).

Matthew A. Kezhaya

Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
p: (479) 431-6112
f: (479) 282-2892
e: matt@kezhaya.law

This message may contain confidential or privileged information and was intended for a particular recipient. If it appears that I sent this to you in error, please inform me and delete this message.

[Quoted text hidden]