**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **DONNA CAVE**, *et al.* | | **PLAINTIFFS** |
| **ANNE ORSI**, *et al.*, and | **CASE NUMBER:** | **CONSOLIDATED PLAINTIFFS** |
| **THE SATANIC TEMPLE**, *et al.* | 4:18-CV-00342 | **INTERVENOR PLAINTIFFS** |
| *v.* | | |
| **JOHN THURSTON**, as Arkansas Secretary of State, in his official capacity | | **DEFENDANT** |

**REPLY ON INTERVENORS' MOTION TO COMPEL DISCOVERY**

## INTRODUCTION AND SUMMARY

Intervenors have brought § 1983 claims under the Establishment Clause and the Equal Protection Clause because there sits on State Capitol Grounds a religious monument, to the exclusion of all other religions, which declares "I AM the LORD thy God. Thou shalt have no other gods before me."

Defendant's response misses the mark on the substantive issues before the Court. Defendant simultaneously claims not to have possession of the documents and admits having possession of the documents. Defendant contends that "the State" is not a defendant, but purports to raise a privilege objection for General Assembly members. Defendant correctly states that documents have been produced, but omits that they weren't produced until after the motion to compel.

The Court should compel Defendant to produce the materials in his possession, prohibit the use of witnesses or exhibits not disclosed before the motion was filed, and order Defendant to remit payment to Intervenors' counsel for having to raise this matter to the Court's attention.

## ARGUMENT

**1: The question is if the Defendant has the documents. Defendant clearly has possession of the materials because the response indicates the number of pages of responsive material.**

Defendant first responds that it should not be ordered to provide the materials because "Secretary Thurston is not the custodian" of the materials requested. This claim is fundamentally at odds with Mr. Sullivan's statement that he is "handling the gathering of the documents in the Secretary of State's Office." Doc. 120-3. Rule 34 requires production of materials in the party's possession—not just the records they keep in the course of their business. By gathering the documents in question, the Secretary of State unquestionably has "possession" of them. See also Doc. 123 at p. 7 ("given the sheer volume of items **in Secretary Thurston's possession** that might fall within the Satanic Temple's . . . requests") (emphasis added). The response admits Defendant has the documents in his possession.

The argument isn't even internally consistent. Despite arguing that "Secretary Thurston" does not have possession of the documents, Doc. 123 at p. 2, Defendant objects to producing the materials because there is so much of it: "an estimated 15,000 pages." Id. at p. 7; see also Doc. 120-3 (the parties agreed to an extension so Defense counsel would had time to "examine each of the thousands of documents in question.") Defendant either has the documents or not. If Defendant has them—as the response admits to—then Rule 34 requires their production.

**2: The material is highly relevant because it goes directly to the dispositive issues. This case turns on the legislative intent of the General Assembly and the materials requested are expected to include communications about legislative intent.**

Defendant next argues that the materials should not be ordered produced because they "have no tendency to make any material fact more or less probable." Doc. 123 at p. 3. The inquiry starts with deciding what the material facts are.

At bottom, this case turns on the legislative intent of the General Assembly. There are two dispositive questions in this case: (1) Was the Ten Commandments Monument Display Act intended to proselytize a religious message or otherwise communicate governmental favor toward one religious group; and (2) Was the Usurping Act intended to make it more difficult for Intervenors to place a competitor monument?

This Court has previously addressed the relevant evidence in this case. See Doc. 116 at p. 14 ("Relevant evidence includes, among other things, . . . contemporaneous statements made by members of the decisionmaking body.") The decisionmaking body at issue is the General Assembly. The request at issue are emails, which are indisputably "statements," by members of the General Assembly or their staff during the relevant time of the litigation on issues about the litigation. Simply put, the requested material goes to the heart of the case.

As for Defendant's complaint that the request includes staff for the General Assembly members, Doc. 123 at p. 5, the statements are expected to have been made on behalf of the General Assembly members. For example, if there is an email sent by a campaign spokesperson for Sen. Rapert that the Ten Commandments Monument is intended to proselytize, the email is responsive. But had the request been limited to General Assembly members, only, the email is not responsive.

It is telling that Defendant has no argument for why the materials are *not* relevant. There is no competing claim of what the relevant issues are, or how these requests are wholly unrelated to the litigation. The response is a bare complaint that Intervenors suggested search terms to aid in searching the archives of a 135 member body, plus all their staff.

### 3: The Speech and Debate Clause does not protect the emails because they go to the heart of the case.

Defendant next argues that the discovery should not be ordered because the requests raise "knotty legislative-privilege issues." Doc. 123 at p. 6. This assertion of privilege is confounding for two reasons.

First, the argument is fundamentally at odds with Defendant's prior argument that TST "simply fails to grasp" that this suit is not against the State, but is only against the Secretary of State in his official capacity. If the Secretary of State is the only Defendant, then he has no standing to raise a privilege objection for the members of the General Assembly. Bethune-Hill v. Va. State Bd. of Elections, 114 F. Supp. 3d 323, 344 (E.D. Va. 2015) ("the privilege is a **personal** one and may be waived or asserted by each individual legislator") (emphasis added).

Second, the argument is circular: "the privilege applies because I asserted it." The Bethune-Hill Court rejected this argument, too. Id. ("To be clear, one does not prove entitlement to legislative (or, indeed, any) privilege simply by asserting it. It must be proved.") see also FRCP 26(b)(5) (requiring the production of a privilege log when withholding documents on the assertion of privilege); Doc. 116 at pp. 15-16 (requiring State Sen. Rapert to produce a privilege log to prove that the asserted privilege applies).

As addressed in the motion, the Bethune-Hill Court aptly addresses the applicability of the legislative privilege in an equal protection suit against a state. See id., 114 F. Supp. at 331-340. In lieu of block-quoting nine pages of discussion, it is sufficient to summarize that the Bethune-Hill Court found on indistinguishable facts that emails in an equal protection suit against a state which are expected to show evidence of legislative discriminatory intent are discoverable notwithstanding a Speech and Debate Clause objection.

**4: The attorney-client privilege does not apply to communications with witnesses.**

Defendant next contends, oddly, that discovery requests seeking disclosure of communications between defense counsel and witnesses are attorney-client privileged. As with the legislative privilege issue, there is no privilege log to support Defendant's claims. The request does not seek communications between John Thurston—who Defendant strenuously contends to be the only defendant in this case—and counsel of record. Instead, the request seeks correspondence between *witnesses* and counsel of record.

It is anticipated that these communications will reveal evidence which Defendant intends to rely upon to support the defense that TST is not a "real" religion. It is further anticipated that these communications will reveal the secret witnesses referenced—but not identified—by Defense counsel in the February 26 hearing.

Defendant also argues the Court should not order production of the responsive materials because there "might" be something objectionable in there. Doc. 123 at p. 7. Rule 26(g) provides "By signing [objections], an attorney or party certifies to the best of the person's knowledge, information, and belief formed **after** a reasonable inquiry . . . [the objection] is consistent with these rules and warranted by existing law" (emphasis added).

It is not sufficient to refuse to provide materials and then review later. Defendant has had the responsive materials in its possession for more than one month, has the assistance of 11 counsel of record, and yet still refuses to look at the materials. Ignorance is not bliss. The Court should prohibit Defendant from attempting to introduce evidence not disclosed prior to the motion to compel.

**5: Defendant provided the responsive materials only after the motion to compel.**

Defendant next contends that all the responsive materials for the AHHF have been provided. Defendant neglects to mention that those materials were not produced until after the motion to

compel. See **EXHIBITS 1**-**3**. Attorney's fees are appropriate if the objecting party produces the materials after the motion is brought. FRCP 37(a)(5)(A) ("If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.")

**6: The NACL is connected to this lawsuit because it was created by State Sen. Rapert, who fundraised and lobbied for the Ten Commandments monument, and has a stated purpose of advancing legislation with a proselytizing purpose.**

Defendant next contends that the NACL has no bearing on this litigation. We disagree. The NACL is founded by State Sen. Rapert, who fundraised and lobbied for the Ten Commandments monument. The NACL has a stated purpose of advancing legislation with a proselytizing purpose. The religious purposes of the NACL makes it more likely that the Ten Commandments Monument also has religious purposes because the two are connected by their primary spokesperson.

**7: The request as modified seeks all non-legislative governmental meetings involving legislators about the Ten Commandments Monument Display Act, not just Arts & Grounds hearings.**

Defendant next skirts the issue of the request which seeks non-legislative governmental meetings involving legislators about the Ten Commandments Monument Display Act. The response was that the subject matter of the meeting is unrestricted and unrefined. Our conciliation was to refine and restrict to meetings which would reveal legislative statements about the purposes of the Ten Commandments Monument Display Act.

In response to the motion, Defendant points to Arts & Grounds Subcommittee documents. The response did not declare that these are the only documents at issue and the nature of the objection suggests there are other documents at issue. The Court should order Defendant to turn over all

documents in his possession. As with the AHHF documents, they were not provided until after the motion to compel. **EXHIBIT 2**.

**8: Internet articles raising accusations fueled solely by speculation are not evidence.**

Defendant last takes issue with complying with the duty to provide identifying information of each individual likely to have discoverable information. Compare FRCP 26(a)(1)(A) (this is one of the first things parties must disclose in litigation).

At bottom, the issue was that Defendant has been referencing internet articles throughout this litigation with a clear purpose of leveling ad hominem attacks against Intervenors. It has been clear since the intervention briefing that Defendant has been coordinating with one or more persons who have grievances against TST unrelated to the legal questions of this case. The purpose of the requests was to determine who those people were and what actual evidence related to this case they may have which has any tendency to prove that TST is a profit-generating front for its co-founders.

It was not until April 18, 2020 that Defendant identified the person. See **Exhibit 3**. Again, this was after the motion to compel. And, even then, the "identification" begins and ends with the person's name. Even had the Intervenors been provided the address and phone number so they could depose the surprise witness, a deposition would have had to be scheduled and completed within two weeks to comply with the Court's discovery deadline.

At this point, the requested materials even if ordered would serve no practical benefit to Intervenors. The discovery deadline has eclipsed and the Court should instead prohibit Defendant from calling any witnesses or presenting any exhibits not reasonably identified in a timely manner.

**WHEREFORE** the Court should order payment of attorney's fees for Intervenors' counsel from Defendant and all counsel of record who aided in the drafting of the discovery objections; order

Defendant produce the 15,000 pages of materials in his possession, and prohibit Defendant from calling witnesses or presenting documentary evidence not disclosed before the motion to compel.

|  | Respectfully submitted on May 1, 2020, On behalf of Intervenors | | |
|---|---|---|---|
| By | /s/ Matthew A. Kezhaya | and | /s/ Stuart P. de Haan |
|  | Matthew A. Kezhaya, ABA # 2014161 |  | Stuart P. de Haan, AZ Bar No. 026664 |
|  | Attorney for Intervenors |  | Attorney for Intervenors |
|  | KEZHAYA LAW PLC |  | de Haan Law Firm, PLLC |
|  | 1202 NE McClain Rd |  | 100 N Stone Avenue, Suite 512 |
|  | Bentonville, AR 72712 |  | Tucson, Arizona  85701 |
| phone | (479) 431-6112 |  | (520) 358-4089 |
| fax | (479) 282-2892 |  | (520) 628-4275 |
| email | matt@kezhaya.law |  | stu.dehaan@gmail.com |

### CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, submitted for filing the foregoing document by uploading it to the Court's ECF system.  The ECF system sends automated notice to all counsel of record. /s/ Matthew A. Kezhaya