**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | | |
|---|---|---|
| **DONNA CAVE,** *et al.* | | **PLAINTIFFS** |
| **ANNE ORSI,** *et al.*, and | **CASE NUMBER:** | **CONSOLIDATED PLAINTIFFS** |
| **THE SATANIC TEMPLE,** *et al.* | 4:18-CV-00342 | **INTERVENOR PLAINTIFFS** |
| *v.* | | |
| **JOHN THURSTON,** as Arkansas Secretary of State, in his official capacity | | **DEFENDANT** |

**TST'S RESPONSE TO DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE AND TO COMPEL PRODUCTION OF DOCUMENTS**

**INTRODUCTION AND SUMMARY**

**COME NOW** Intervenors, by and through counsel of record, with a response to Defendant's motion for order to show cause and to compel production of documents. The motion can be distilled to five requests: (1) order TST to show cause for failure to obey a post-hoc reinterpretation of the Court's discovery order; (2) compel TST to produce tax information for entities not referenced in the request, and reconsider the order sustaining TST's objection to providing financial records; (3) compel TST to produce governance documents for every entity Defendant unilaterally deems to be an "affiliate;" (4) compel TST to produce four years of internal correspondence pertaining to matters not at issue before the Court; and (5) compel TST to produce a copy of remarks Mr. Misicko made at the unveiling of the Baphomet statute—the substance of which has already been provided and documents which TST does not have.

The Court should (1) decline to order TST show cause for failing to obey an order not entered; (2) decline to compel TST to produce documents not requested; (3) decline to reconsider its ruling

sustaining TST's objection to providing financial records because the State's "evidence" of improper dealing amounts to internet rumor milling; (4) decline to compel TST to produce four years of correspondence among four individuals—half of whom aren't even parties—on matters which are not relevant to this litigation; and (5) decline to compel TST to produce documents it does not have. Further, the Court should order Defendant and all attorneys who participated in drafting the motion compensate Intervenors' counsel for having to write this response.

## CONCISE STATEMENT OF FACTS

Defendant opens the statement of facts by revising a key detail. At Mr. Greaves's personal-capacity deposition, Defendant raised the issue of wanting tax records for "affiliate" entities in a teleconference with the Court. As Intervenors argued then, and the Court agreed, the request asks for tax records for "The Satanic Temple," not "The Satanic Temple and all of its affiliates." The outcome of the conference was that Defendant needed to send new requests for the entities Defendant wanted records from. Defendant revises the facts to change the Court's ruling into agreeing that the request should be reinterpreted post hoc.

Next, Defendant complains about the tardiness of notarized acknowledgments while, simultaneously, making much of the "significant widespread disruption caused by unprecedented efforts to combat the virus." See doc. 125 (Defendant's motion to continue). Defendant misstates that Intervenors have not supplied a signed acknowledgment for TST. See Doc. 124 at fn. 4. As we have previously explained to Defendant's counsel, Mr. Misicko's acknowledgment is for both TST and himself, personally. **EXHIBIT 1** (discovery correspondence).

Next, Defendant takes issue with the truthful response that "The Satanic Temple is not a discrete entity with tax returns." Defendant should have written a better request. Amalgamations of entities with a common header are not taxable entities with tax returns to provide.

At bottom, Defendant submitted poorly written requests for production of documents. After being called out on the deficiencies—by counsel and Court alike—Defendant insists that the requests and the order should be reinterpreted post hoc. And, not only that, but Defendant argues Intervenors should be held in contempt based on a retrospective reinterpretation of the requests and the order.

## **ARGUMENT**

### **1: Intervenors should not be held in contempt for failing to adhere to conduct not ordered.**

Defendant's motion asks the Court to hold Intervenors in contempt for failing to adhere to conduct not ordered. The Court's power of contempt was extensively discussed in Jones v. Clinton, 36 F. Supp. 2d 1118, 1125-26 (E.D. Ark. 1999). The first step of the analysis is a two element test: (1) "the court must have fashioned an Order that is clear and reasonably specific," and (2) "the party must have violated the Order." Id.

Defendant's motion is fatally flawed for two reasons. First, the Court did not order production of documents for TST "and its affiliates." Second, the Court ordered production of current bylaws, operating agreements, "or" analogous documents. Not "and" analogous documents. The Court should not issue a show-cause order because the Court did not order production of bylaws, "and analogous documents for all entities Defendant unilaterally determines to be affiliates of TST."

Taking the "affiliates" issue first, the order at issue states:

> Having reviewed the entire record before the Court with respect to discovery, the Court will require **the Satanic Temple** to produce current bylaws, operating agreements, or analogous documents.

Doc. 116 at p. 20 (emphasis added); and

> The Court orders **the Satanic Temple** to respond to Request for Production No. 3.

Id. at p. 23 (emphasis added).

Defendant's motion to compel and discovery correspondence purport to change the language of the order. Defendant claims the order reads, "the Satanic Temple **and its affiliates**." Doc. 124-4 at p.2 (first bullet point) (emphasis added). But the order doesn't say that. Defendant's request that the Court rewrite the order post hoc and hold Intervenors in contempt is simply unfounded.

Similarly, Defendant rewrites the Court's order to change an ", or" to an "and." There is a legal distinction between "and" and ", or." "And" is inclusive whereas ", or" is exclusive. Returning to the discovery order at p. 20, but focusing on different language:

> Having reviewed the entire record before the Court with respect to discovery, the Court will require the Satanic Temple to produce current bylaws, operating agreements**, or** analogous documents.

Doc. 116 at p. 20 (emphasis added). The Court ordered production of, importantly, bylaws. TST provided the bylaws. TST is not in contempt because TST complied with the order.

In sum, the Court did not order "the Satanic Temple *and its affiliates* to produce operating agreements, bylaws, *and* analogous documents." Defendant's motion relies on changing the language of the order. The Court should not hold Intervenors in contempt for failing to adhere to conduct not ordered.

## **2: Defendant has failed to demonstrate a basis to reconsider the sustained objection to providing TST's financial records.**

The next problem with Defendant's motion is that it fails to demonstrate a basis to reconsider the sustained objection to providing TST's financial records. Defendant's sole argument for the point relies on rewriting the Court's order and holding TST in contempt, post hoc. The Court should not reconsider the finding that the request for financial records "is not proportional to the needs of discovery in this case." Doc. 116 at p. 23.

At bottom, Defendant's claimed interest in these records is to fuel a defense that TST is not a "real" religion. This argument is fundamentally flawed for several reasons. First, it has no tangible basis in any real evidence. Defendant's sole evidence to support the claim is a bunch of hearsay internet articles. See Doc. 124-2 at pp. 1-2. Second, as this Court has already found, even if TST were nothing more than a bunch of atheists, they still qualify for standing. Doc. 38 at pp. 26-27. Last, as we develop further in Section 3.2, below, the real purpose behind the request is to harass Intervenors.

## 3: TST should not be compelled to produce correspondence which has no bearing on the legislative intent behind the two complained-of Acts.

Defendant next segues from a motion to show cause to a motion to compel. The relevant requests and objections follow:

> REQUEST FOR PRODUCTION NO. 8. Please produce a copy of all correspondence between either Doug Misicko (a.k.a. Doug Mesner, a.k.a. Lucien Greaves) or Cevin Soling (a.k.a. Malcolm Jarry), on one hand, and Erika Robbins, on the other, relating to the Satanic Temple or its activities, the Ten Commandments monument, the Baphomet statue, or this litigation.
>
> REQUEST FOR PRODUCTION NO. 9. Please produce all correspondence between either Doug Misicko (a.k.a. Doug Mesner, a.k.a. Lucien Greaves) or Cevin Soling (a.k.a. Malcolm Jarry), on one hand, and Mason Hargett, on the other, relating to the Satanic Temple or its activities, the Ten Commandments monument, the Baphomet statue, or this litigation.
>
> ### General objections
>
> TST generally objects to all these requests for production on the basis of the qualified associational privilege. These requests are tailor-made to adversely affect TST's mission of advocacy and chills our ability to speak freely and to associate. The transparent purpose these requests is to harass and threaten TST's membership for deigning to demand that the State adhere to its constitutional obligations. Buckley v. Valeo, 424 U.S. 1, 74, 96 S. Ct. 612, 661 (1976).
>
> Further, this argument that "TST isn't a real religion" is not a valid discovery issue. First, the defense is foreclosed by Satanic Temple v.

> City of Scottsdale, No. CV18-00621-PHX-DGC, 2020 U.S. Dist. LEXIS 20196 (D. Ariz. Feb. 5, 2020). Second, the Court already found that Intervenors have standing, even under the hypothetical that TST is simply "atheism with extra steps." See Doc. 38. Last, if the State wants to raise this argument, it needs to explain its failure to seasonably supplement discovery with the witnesses and information purportedly founding the argument.
>
> ANSWER: To the extent this request purports to seek communications among the Intervenors pertaining to this litigation, Intervenors object to providing the requested documents. . . . [T]hese documents have no passable bearing on any legal question in the case. The request is a transparent effort to drive up costs of litigation, harass, and oppress a religious minority for "deigning" to demand equal treatment under the law. There can be no argument that these records are remotely related to the General Assembly's intent behind either the Ten Commandments Monument Display Act or the Usurping Act.

See doc. 124-6 at pp. 1, 5-6.

### 3.1: The documents are not even tangentially relevant to the litigation.

First, we address relevance. Defendant asks the Court to order the discovery so that it can mount a second factual attack on standing. Doc. 124; see also Doc. 38 (denying the first factual attack). In response to our relevance objection, Defendant argues the relevance goes to standing.

Defendant's argument is that TST lacks standing if TST did not have a presence in Arkansas before 2016. Doc. 124 at p. 11. Defendant is wrong. Standing for the Establishment Clause question turns on whether the individuals personally interacted with the monument and were offended by it. See Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1023-24 (8th Cir. 2012); see also Doc. 38 at pp. 19-22 (finding Establishment Clause standing for the individual intervenors).

None of the three elements of associational standing involve "having an established presence in the State before the cause accrues." See ACLU Neb. Found. v. City of Plattsmouth, 358 F.3d 1020, 1031 (8th Cir. 2004). The Court found TST has associational standing on the Establishment Clause question. See Doc. 38 at pp. 22-23.

As for the Equal Protection Clause question, the Court already found an equal opportunity injury. Doc. 38 at p. 17 ("The inability to compete on equal footing is an injury in fact") (citing McDaniel v. Precythe, 897 F.3d 946, 950 (8th Cir. 2018)).

In sum, the documents do not have any relevance to the litigation because even assuming the documents prove TST did not have a presence in Arkansas before 2016, it has no bearing on the litigation. Standing has already been determined; and, even if it hadn't been, associational standing does not turn on whether an organization had a preexisting presence in the State before the Ten Commandments Monument went up.

Defendant adds another possible relevance argument: "it is likely to shed light on the Satanic Temple's lackadaisical efforts to obtain passage of legislation for the Baphomet monument in the General Assembly, which Arkansas law required for placement at all times relevant to this litigation." Doc. 124 at p. 11.

The problem is that the constitution was written to avoid majoritarian rule. As best said in W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 670, 63 S. Ct. 1178, 1199 (1943) (emphasis added):

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to . . . freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

The question is not—and never has been—how hard TST tried to get an Act to install the Baphomet monument. The question begins and ends with the intent of the General Assembly. If the General Assembly's purpose was to give a Christian monument preferential treatment over a Satanic monument, the inquiry ends in a judgment against Defendant.

### 3.2: The qualified associational privilege protects the correspondence.

Next, we address the qualified associational privilege. If the Court finds that the documents are within the scope of discovery, the next question is if they are protected by the associational privilege. The qualified associational privilege requires TST to show "a reasonable probability that the compelled disclosure . . . will subject them to threats, harassment, or reprisals from either Government officials or private parties." Buckley v. Valeo, 424 U.S. 1, 74, 96 S. Ct. 612, 661 (1976).

The Buckley Court provides examples of proof: "specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats or specific manifestations of public hostility may be sufficient." Id.

This, we have in spades. Beginning with harassment directed against TST from Defendant, the Court can take judicial notice of the kinds of requests Defendant has leveled against only the Intervenors. Choice examples include:

- Demands for production of patently attorney-client privileged statements. See Doc. 124-6 at pp. 8-9 (RFP nos. 12 and 13) ("Please produce a copy of all records of whatever kind of the remarks given by Stu de Haan [and Matthew A. Kezhaya] at the Satanic Temple Devil's Renaissance event on or about December 28, 2019;")

- Demands for identification of "the full legal name and title of each current and former employee [etc.] and any other person or entity holding any other position of responsibility or leadership, whether compensated or not." Doc. 124-3 at p.1 (ROG 1);

- Demands for identification of "all persons or entities who have received proceeds from purchases made through the Satanic Temple's website as well as from contributions made through each of the following webpages: [8 webpages omitted for brevity];"

- Demands for production of photographs from the Baphomet Unveiling event which exclusively depict private non-party individuals and do not include the Baphomet Monument. Doc. 104. (Defendant's second motion to compel)

Defendant has also embarked on a campaign to discredit TST as a legitimate religion, fueled exclusively by internet articles. See, e.g., Doc. 24-1 through Doc. 24-10 (miscellaneous internet articles); see also Doc. 124-2 at p. 2 (Defendant's sole evidence in support of the argument that TST is a profit front for its co-founders consists of internet articles).

And that's just the Defendant. Further harassment can be found from the White Supremacist publication "Shieldwall Network." See **EXHIBIT 2** ("Satanist Protest Leader, Unmasked!") The article purports to publish Mr. Greaves's personal address "Strictly for information and educational purposes." **Id.** at p. 2. And purports to link to identifying information for Mr. Greaves's family. **Id.**

A recent Little Rock Police Department memorandum notes "death threats [that] Greaves has received in the past." **EXHIBIT 3**. One such death threat, received by Mr. Greaves, explains:

> [Y]ou pieces of filth are devil worshipping beast [sic] that will indeed be killed, murdered. . . . Ya'll [sic] need to be killed . . . [Y]ou need to be lynched and killed. And God has given me power and authority to do it. Lucien Greaves need [sic] to die.

**EXHIBIT 4**.

We provided these exhibits to all counsel of record on January 2, 2020, and yet one of the first questions of Mr. Greaves was: "Was that [Misicko] the surname of your father or your mother?" **EXHIBIT 5** (10:22-23).

In short, Mr. Greaves—and all members of TST—have a very well-grounded concern for their safety. See also **Exhibit 5** at 11:24-12:1 (Mr. Greaves uses a pseudonym to keep himself safe from

people who would wish to do him harm). Permitting Defendant to peer into the parties' internal correspondence to further fuel harassment against Intervenors is simply not in the interests of justice.

### Conclusion

In sum, the Court should decline to compel the discovery requested for two reasons. First, it is irrelevant to this litigation because even the discovery proved Defendant's point, standing does not turn on whether TST had an established presence before 2016; nor does the level of TST's efforts to procure a legislative act have any bearing on whether the General Assembly intended to cause a special hurdle for TST, specifically. Second, the membership of TST has a well-founded concern about harassment, not least demonstrated by Defendant's actions in this very litigation, and peering into internal discussions will have a chilling effect on prospective members' willingness to associate with the organization.

**4: TST should not be compelled to provide a copy of Mr. Greaves's remarks at the unveiling of the Baphomet monument because (1) it has no passable beraing on any legal question of this case; (2) the substance has already been provided; and (3) we have no responsive documents.**

Last, Defendant seeks an order to compel a copy of all records of whatever kind of the remarks given by Mr. Greaves at the Unveiling event for the Baphomet monument. The relevant request is:

> REQUEST FOR PRODUCTION NO. 10. Please produce a copy of all records of whatever kind of the remarks given by Doug Misicko (a.k.a. Doug Mesner, a.k.a. Lucien Greaves) at the Satanic Temple Baphomet Unveiling event in Detroit, Michigan, on or about July 25, 2015.

Cutting to the heart of the matter, TST does not have anything further to provide. There is no video of the speech, Mr. Greaves does not have a transcription of it, and there are no notes to produce. We have provided substantially identical content to what was in the speech and Mr. Greaves testified to the substance of the speech. The Court should deny the motion.

## CONCLUSION

The Court should deny Defendant's motion for order to show cause because the motion relies on a post hoc reinterpretation of the discovery request and the order. The order requires the Satanic Temple to produce bylaws, operating agreements, or analogous documents. Defendant's motion asks the Court to reinterpret the order to change the "or" to an "and," and to change "the Satanic Temple" to "the Satanic Temple and anyone Defendant unilaterally determines to be an affiliate."

The Court should not reconsider the decision not to compel production of financial records because it also relies on a post hoc reinterpretation of the discovery request and the order. Even then, Defendant's inquiry into whether TST is a profit generating front is solely fueled by internet rumors. The request still asks for irrelevant material still has a purpose to harass.

The Court should not compel production of four years of text messages among four individuals—half of whom aren't even parties—because it does not address any fact at issue before the Court. Defendant's argument that TST lacks standing unless it had an Arkansas presence before 2016 is wrong. Standing turns on whether TST has an equal opportunity injury and whether the relevant individuals personally visited the Ten Commandments monument and were offended by it.

The Court should not compel the production of materials which have already been produced in substance and which do not exist. The Court should order Defendant and all attorney's who participated in the drafting of the motion to compensate Intervenors' counsel for having to address this matter.

**[remainder intentionally left blank, signature and certificate following]**

Respectfully submitted on May 13, 2020,
On behalf of Intervenors

By /s/ Matthew A. Kezhaya          and   /s/ Stuart P. de Haan

| | | |
|---|---|---|
| | Matthew A. Kezhaya, ABA # 2014161 | Stuart P. de Haan, AZ Bar No. 026664 |
| | Attorney for Intervenors | Attorney for Intervenors |
| | Kezhaya Law PLC | de Haan Law Firm, PLLC |
| | 1202 NE McClain Rd | 100 N Stone Avenue, Suite 512 |
| | Bentonville, AR 72712 | Tucson, Arizona 85701 |
| phone | (479) 431-6112 | (520) 358-4089 |
| fax | (479) 282-2892 | (520) 628-4275 |
| email | matt@kezhaya.law | stu.dehaan@gmail.com |

### Certificate and Notice of Service

**Notice is given** that I, Matthew A. Kezhaya, submitted for filing the foregoing document by uploading it to the Court's ECF system. The ECF system sends automated notice to all counsel of record. /s/ Matthew A. Kezhaya

### Exhibit list

1. Discovery correspondence

2. Threat against Mr. Greaves and his parents

3. Memorandum from City of Little Rock Police Department noting threats against Mr. Greaves

4. Death threat received by Mr. Greaves

5. Mr. Greaves's testimony that he uses a pseudonym to protect his safety