# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | |
|---|---|
| **DONNA CAVE, JUDITH LANSKY, PAT PIAZZA,** and **SUSAN RUSSELL,** | **PLAINTIFFS,** |
| **ANNE ORSI, AMERICAN HUMANIST ASSOCIATION, FREEDOM FROM RELIGION FOUNDATION, INC., ARKANSAS SOCIETY OF FREETHINKERS, JOAN DIETZ, GALE STEWART, RABBI EUGENE LEVY, REV. VICTOR H. NIXON, TERESA GRIDER,** and **WALTER RIDDICK,** | **CONSOLIDATED PLAINTIFFS,** |
| **THE SATANIC TEMPLE, DOUG MISICKO** aka **"LUCIEN GREAVES,"** and **ERIKA ROBBINS,** | **INTERVENORS,** |
| v.    No. 4:18CV00342 KGB/BD | |
| **JOHN THURSTON,** Arkansas Secretary of State, in his official capacity, | **DEFENDANT.** |

### DEFENDANT'S RESPONSE IN OPPOSITION TO SATANIC TEMPLE'S DISCOVERY MOTIONS (DE 189, 190, 192, 199)

Despite recognizing that the discovery period has been closed for almost twenty months and that there is no further need for discovery, the Satanic Temple has begun serving various invalid self-described "tardy subpoenas" and filing several motions seeking to retroactively reopen discovery and compel third-parties' compliance with its untimely efforts. The Satanic Temple's sudden interest in pursuing this discovery is based on demonstrably false claims and purported "misimpressions" held contrary to the readily available facts, and it comes only after the Satanic Temple has squandered numerous opportunities to take the discovery it now wants.

The Cave Plaintiffs have filed a response in opposition to the Satanic Temple's motions in which they "urge this Court to deny any efforts to reopen discovery and further delay resolution of this lawsuit, which has been pending on this Court's docket for over 40 months (May

2018)." DE 200 at 3.  For the reasons set forth below, Defendant joins the Cave Plaintiffs in requesting that the Court deny the Satanic Temple's motions.

## BACKGROUND

On September 20, 2021, the American History and Heritage Foundation (AHHF) produced a number of documents to all parties, resolving a discovery dispute existing since long before the close of discovery concerning the Orsi Plaintiffs' subpoena duces tecum.  (*See* DE 167).  The Orsi Plaintiffs gave notice to the Court that the AHHF had complied with its agreement.  (*Id.*).  More than three weeks after AHHF's production, on October 12, 2021, all parties—*including the Satanic Temple*—filed a Parties' Joint Position Statement recognizing, "*The discovery deadline has expired.  The parties do not anticipate a need for further discovery.*"  (DE 168 at 1 (emphasis added)).  All parties jointly proposed a briefing schedule with a January 21, 2022, dispositive-motion deadline.  (*Id.* at 2).

The Parties' Joint Position Statement noted that the only remaining issues to be resolved by the Court concerned disputes existing prior to the close of discovery—specifically, separate, then-pending motions to compel by Defendant and by the Satanic Temple.  (*Id.* (citing DE 120, 124, 145)).  On October 22, 2021, the Court entered an order ruling on those pending motions.  (DE 172).  That order permitted the parties to request relief concerning any issue that had been raised but was yet unresolved.  (*Id.* at 36; DE 175 at 1).  Defendant filed a motion requesting such relief.  (DE 181).  For its part, the Satanic Temple stated that "[t]he Court did not miss anything in its ruling."  (DE 193 at 2).

But the Satanic Temple, after recognizing that discovery is over and that no further discovery is needed (DE 168 at 1), attempted a sudden and complete reversal by stating that it wanted five new subpoenas.  On October 22, 2021, the Satanic Temple stated that it was issuing four new subpoenas (to the American History and Heritage Foundation, to Sen. Bob Ballinger, to

2

Sen. Kim Hammer, and to Sen. Jason Rapert).  The Satanic Temple's self-described "tardy subpoenas" (DE 192 at 9), sought production of documents responsive to a cookie-cutter set of 14 new requests (each spanning six pages and including 55 different search terms for only the first six requests).  *See* DE 192-1, 192-2, 192-3, 192-4.  The Satanic Temple then filed motions to retroactively amend the scheduling order and to require third parties Sen. Hammer and Sen. Ballinger to show cause why they should not be held in contempt for objecting to the untimely subpoenas.  (DE 192, 199).

Then, in its individual status report filed on November 16, 2021, the Satanic Temple for the first time stated that it wanted to serve yet another "late subpoena" to take the deposition of Mr. Shane Bugbee, a former consultant for the Satanic Temple.  (DE 188 at 7).  Further, far from the January 21 dispositive-motion deadline that all parties—including the Satanic Temple— agreed to in October, (DE 168 at 2), the Satanic Temple alone now proposes a dispositive-motion deadline "no earlier than June 22, 2022."  (DE 188 at 5).  But the Satanic Temple hedges even on that date, claiming that its "proposed deadline is predicated on a lot of assumptions" and recognizing that its untimely subpoenas "will only further delay" matters.  (*Id.* at 5-6).

## ARGUMENT

I.  **The Court should not take up disputes concerning the Satanic Temple's untimely subpoenas.**

This Court's Amended Final Scheduling Order provides that "[d]iscovery should be completed no later than **April 29, 2020**.  The parties may conduct discovery beyond this date if all parties are in agreement to do so."  (DE 107 at 1 (emphasis in original)).  Because the Satanic

3

Temple's subpoenas were issued long after the close of discovery and all parties are *not* in agreement,[1] the untimely discovery is invalid. "It is black letter law that parties may not issue subpoenas pursuant to Federal Rule of Civil Procedure 45 as a means to engage in discovery after the discovery deadline has passed." *Joseph P. Carroll Ltd. v. Baker*, 2012 WL 1232957, at *2 (S.D.N.Y. Apr. 12, 2012) (quotation and citation omitted). Further, the Court's Amended Final Scheduling Order states that "[t]he Court . . . will not resolve any disputes in the course of" any such "extended discovery." (*Id.*). As discussed below, even the Satanic Temple seeks to make use of the fact that the Court has stated it will not resolve disputes concerning late discovery. (*See* DE 190 at 8). So the Court should decline to take up motions concerning the Satanic Temple's subpoenas at this late stage of these proceedings.

Further, the Court's Amended Final Scheduling Order states that "[a] discovery motion must not be filed until counsel has made a good faith effort to resolve the discovery dispute, in compliance with Local Rule 7.2." Local Rule 7.2(g) provides, "All motions to compel discovery and all other discovery-enforcement motions . . . shall contain a statement by the moving party that the parties have conferred in good faith on the specific issue or issues in dispute and that they are not able to resolve their disagreements without the intervention of the Court."

Remarkably, *none* of the Satanic Temple's many motions (DE 192, 189, 190, 199) make the statement that this Court's Order and Local Rule 7.2 require. "A district court's Scheduling Order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril.'" *Words v. Sherwood Med. Co.*, 1996 WL 106168, at *7 (W.D. Mo. Jan. 2, 1996) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). Indeed, the

---

[1] Besides Defendant, the Cave Plaintiffs are not in agreement. They have stated their opposition to the Satanic Temple's efforts to conduct any further discovery. (DE 200).

4

Satanic Temple never contacted Defendant concerning a desire to conduct any of its new, post-deadline discovery.  The Satanic Temple is a serial violator of both the Court's Order and this Local Rule because it has not even attempted to confer in a good-faith effort to resolve the issues without the Court's intervention.

What's more, a different rule—Local Rule 6.2(b)—requires that in "every motion for any extension of time, or for leave to do any act out of time, the motion shall state that the movant has contacted the adverse party (or parties) with regard to the motion, and also state whether the adverse party opposes or does not oppose same."  Here, the Satanic Temple's motions quite explicitly seek to take discovery out of time, so the Satanic Temple's motions are in serial violation of this Local Rule as well.  Motions filed in violation of Local Rule 6.2(b) "may be dismissed summarily for failure to comply with this rule."  Further, "[r]epeated failures to comply will be considered an adequate basis for the imposition of sanctions."  Local Rule 6.2(b).

As set forth below, even if the Court were to take up the Satanic Temple's motions, there are ample reasons to deny them.  But because discovery has ended, because the parties have not agreed to further discovery, because the subpoenas are invalid, because the Court has ordered that it will not resolve disputes related to late discovery, and because the Satanic Temple has repeatedly failed to confer, in violation of this Court's Order and the Local Rules, the Court should "dismiss[] summarily," Local Rule 6.2(b), or otherwise decline to take up the Satanic Temple's motions concerning its new, untimely discovery attempts.

**II.     The Court should deny the motions to retroactively amend the scheduling order to reopen discovery and enforce the untimely subpoenas.  (DE 192, 199).**

After serving its untimely subpoenas on the AHHF, Sen. Ballinger, Sen. Hammer, and Sen. Rapert, the Satanic Temple filed a "Motion to amend the scheduling order to allow the sub-

5

poenas; and for order to show cause." (DE 192). It seeks an order amending the scheduling order after-the-fact to "reopen[] discovery" and enforce its "tardy subpoenas" (DE 192 at 5, 9) against Sen. Hammer (DE 192) and Sen. Ballinger. (DE 199). The Satanic Temple expressly bases its motion on pure "surmise[]" (DE 192 at 2) and (as explained below) a litany of claims that are demonstrably false. The Satanic Temple has failed to show good cause to amend the scheduling order or enforce the untimely subpoenas, and the Court should deny its motions.

### A. The subpoenas are based on fictions.

The Satanic Temple expressly bases its motions on pure conjecture—its "surmise[]" that "certain legislators" used "non-State email accounts to preclude the Baphomet monument." (*Id.*) It claims the legislators "had a hand in prohibiting [its] . . . Baphomet monument." (DE 192 at 2). These claims are complete fictions. To begin with, neither the General Assembly nor its members have denied the Baphomet monument a fair opportunity to be placed on the Capitol grounds.

The Satanic Temple's motion cites Act 274 of 2017, but that Act did nothing to prohibit the Baphomet monument. At all times relevant to this litigation, placing a monument on the Capitol grounds required approval from *both* the Capitol Arts and Grounds Commission *and* the General Assembly. But before Act 274 of 2017 was enacted, Arkansas law did not specify the order in which approval was to be sought from these separate entities. Act 274, which passed

with bipartisan support on a vote of twenty-seven yeas to five nays in the Senate[2] and a unanimous vote of ninety-one yeas to zero nays in the House,[3] merely specified *the order* in which approval is to be sought—it established that the Commission would consider monument applications only after approval by the General Assembly.[4] *See* Ark. Code Ann. 22-3-503(c)(2).

Act 274 did not require the Satanic Temple to go back and begin the process of seeking approval again. It did not cause the Satanic Temple to lose the benefit of any work that it had done. And it did not add any additional steps to the process. Simply put, Act 274 did not deprive anyone of a fair opportunity to place a monument on the Capitol grounds.

Rather, it was *the Satanic Temple* that sabotaged any chance there was for placing the Baphomet monument. The Satanic Temple sent two bizarre emails en masse to all members of the General Assembly, threatening litigation and removal of the Ten Commandments monument if the Baphomet monument were not placed on the grounds. Exs. 1, 2 (mass emails to General Assembly members). The emails—which were signed "Love, Lucien Greaves"—contained no personal contact information and did not seek to arrange a personal meeting with any General Assembly member. *See id.* That was the full extent of the Satanic Temple's "efforts" to obtain a sponsor for its monument in the General Assembly. The Satanic Temple did nothing else during the 2017 session or any subsequent legislative session toward that purported end. Ex. 3 (Satanic

---

[2] *See Senate Vote – Tuesday, February 21, 2017, HB1273*, https://www.arkleg.state.ar.us/Bills/Votes?id=HB1273&rcs=445&chamber=Senate&ddBienniumSession=2017%2F2017R.

[3] *See House Vote – Monday, February 6, 2017, HB1273*, https://www.arkleg.state.ar.us/Bills/Votes?id=HB1273&rcs=252&chamber=House&ddBienniumSession=2017%2F2017R.

[4] *See HB1273 – To Require an Act by the General Assembly to Authorize the Construction or Removal of a Monument on State Capitol Grounds; and to Declare an Emergency*, https://www.arkleg.state.ar.us/Bills/Detail?id=HB1273&ddBienniumSession=2017%2F2017R.

7

Temple 30(b)(6) deposition excerpt). It asserts that Sen. Rapert has said that Arkansas would not be "forced" to put up the Baphomet monument. But, given the Satanic Temple's bizarre, bullying conduct toward the General Assembly, it is not difficult to see why one might say that.

The Satanic Temple's "surmise" that the Senators "prohibited" the Baphomet monument is simple fiction designed to justify an intrusive, extraordinary fishing expedition through the Senators' emails. Nothing the Satanic Temple seeks to subpoena can alter the fact that the Satanic Temple purposely sabotaged its own effort to obtain support in the General Assembly.

> **B.** **The Satanic Temple's attempt to pin its delay on others is based on more fictions.**

Recognizing its delay, the Satanic Temple tries to claim that *Defendant* has caused the Satanic Temple's delay. The Satanic Temple claims that Defendant stalled in producing correspondence for the entire State of Arkansas, asserting that it has "correctly understood" that Defendant "had the ability to procure all State correspondence about this case." (DE 192 at 5). Defendant has in good faith produced emails from persons employed by other departments of the State that are *incidentally* in Defendant's possession. But the Satanic Temple's purported "underst[anding]" is not "correct[]" because otherwise Defendant does not have the ability to obtain correspondence for State employees working for anyone other than Defendant. Further, this inability is not news to the Satanic Temple. Defendant stated long ago—on March 27, 2020, to be exact—that Defendant "does not have possession, custody, or control" of such correspondence. (*E.g.*, DE 120-4 at 2). Therefore, the Satanic Temple cannot pin its delay on Defendant.

The Satanic Temple next tries to pin its delay on the documents produced by the AHHF in response to the Orsi Plaintiffs' subpoena. It claims that it was only as a result of this production, "[o]n October 21, 2021, [that it] . . . learned that certain legislators used non-State email accounts." (DE 192 at 2). The AHHF produced the documents to all parties on September 20,

8

2021. (*See* DE 167 at 1). At that time, "[c]ounsel for the *Orsi* Plaintiffs . . . reviewed the documents," and on September 24, 2021—three days later—the Orsi Plaintiffs gave notice to the Court that they had reviewed the documents and that the AHHF had complied with its agreement. (*Id*.). But if, as the Satanic Temple claims, the AHHF production triggered its need for new discovery, then why did it wait *over a month* after its September 20, 2021 receipt of those documents to announce that it wanted to serve new subpoenas? Further, why did it—*more than three weeks* after receiving the documents—join in the Parties' Joint Position Statement recognizing, "The discovery deadline has expired. The parties do not anticipate a need for further discovery"? (DE 168 at 1).

But there is an even more fundamental reason why the Satanic Temple cannot pin its delay on the AHHF's September 20 production. That is because for *nearly three years* the Satanic Temple has possessed documents showing precisely what they claim they learned only "[o]n October 21, 2021." (DE 192 at 2). The Satanic Temple's motion cites for support its previous response to Sen. Rapert's motion to be relieved from appearing at the October status conference. (DE 171). The Satanic Temple attached to that response six unredacted emails from Sen. Rapert's Gmail account and it claimed that counsel for the Satanic Temple was "under the misimpression" that all of Senator Rapert's correspondence was conducted through his Senate email account. (DE 171 at 2).

But on February 8, 2019—approaching three years ago—Defendant served his Supplemental Responses to Cave Plaintiffs' First Set of Request for Production of Documents on the

Satanic Temple. Ex. 4 at 6 (served on February 8, 2019). That production included a comparable set of emails that were sent from Sen. Rapert's Gmail account.[5] *See, e.g.*, Exs. 5, 6 (two examples, among others). Thus, any "misimpression" on the part of counsel for the Satanic Temple was not due to a lack of information concerning this email account. The Satanic Temple has had such documents for nearly three years now.

In a separate motion, the Satanic Temple again claims that it was only "[o]n October 21, 2021," as a result of the AHHF production, that it learned that Sen. Ballinger corresponded using a law-firm email account. (DE 199 at 2). It claims that "prior to the close of discovery" Sen. Ballinger was not identifiable "by any public document," or "in any discovery responses, or in any set of disclosures." (*Id.*).

As with all previous representations in support of the Satanic Temple's motions, these claims are demonstrably false. At the November 16, 2016 meeting of the Capitol Arts and Grounds Commission, Sen Ballinger appeared on behalf of the AHHF and presented the Ten Commandments monument's application to the Commission. Ex. 7 (Commission meeting transcript). Sen. Ballinger was the main presenter during that meeting, and his testimony spans 35 pages of the transcript. *Id.* at 3-38. On April 18, 2020, Defendant served his Second Supplemental Disclosures on the Satanic Temple, which included this transcript. *See* Ex. 8 at 1. Contrary to the Satanic Temple, this is a "public document," "discovery response[]" or "set of disclosures" served "[p]rior to the close of discovery" from which Sen. Ballinger was identifiable. (DE 199 at 2).

Further, the Satanic Temple has had documents showing Sen. Ballinger's use of his law-firm email address for nearly three years. The same emails (discussed above) that Defendant

---

[5] Sen. Rapert's Gmail address has been partially redacted in this public filing of the exhibits.

10

produced on February 8, 2019, in his Supplemental Responses to Cave Plaintiffs' First Set of Request for Production of Documents, Ex. 4, show this.[6] *See* Exs 5, 6. So the Satanic Temple cannot justifiably maintain that the AHHF production was the great revelation that it purports it to be.

Despite no lack of information or opportunity, the Satanic Temple has not demonstrated diligence in pursuing the discovery that it now suddenly wants to pursue. Rule 16(b)(4) requires the Satanic Temple to show good cause to modify a scheduling order. It has not shown good cause for modifying the scheduling order to "reopen[] discovery" or to enforce its "tardy subpoenas." (DE 192 at 5, 9). This Court should deny its motions.

### III. The Court should deny the motions to exclude Mr. Bugbee's declaration. (DE 189, 190).

In early 2020, based on information gleaned from various Internet searches, Defendant investigated former members of the Satanic Temple (including, among others, Mr. Shane Bugbee) who might provide information about the Satanic Temple. In material posted online, Mr. Bugbee claimed to have personal knowledge concerning Mr. Misicko's beliefs and motivations as a result of consulting work he did to help the Satanic Temple get off the ground. Defendant made initial contacts with Mr. Bugbee, but thereafter found that he can be very difficult to reach—as the Satanic Temple has also discovered. (*See* DE 190 at 5 (claiming to find "no results for 'Shane Bugbee'" in a nationwide public-records search)). Further, Defendant had no way to corroborate Mr. Bugbee's claims from anyone other than Mr. Bugbee himself. Defendant was still learning about the players and ethos of the "Satanic" subculture, and, from simple lack

---

[6] Sen. Ballinger's law-firm address has been partially redacted in this public filing of the exhibits.

11

of familiarity, he doubted both Mr. Bugbee's value as a witness and his willingness to assist Defendant.

That all changed in April 2020, when Mr. Bugbee's value as a witness became clear. On April 11, 2020, Mr. Bugbee for the first time provided Defendant with documents consisting of communications between himself and Mr. Misicko that substantiated both Mr. Bugbee's crucial role as a consultant for the Satanic Temple and Mr. Misicko's motive for personal gain. *See* Ex. 9 at 29-38 (emails attached to Bugbee Decl.). It was then that Mr. Bugbee's genuine interest in serving as a witness became clear and that Defendant first appreciated that Mr. Bugbee can speak credibly about Mr. Misicko and the Satanic Temple.

Pursuant to Rules 26(a)(1)(A)(i) and (e)(1), Defendant identified Mr. Bugbee as a witness on April 18, 2020—the same day that Mr. Bugbee signed his declaration, and only seven days after Defendant received the documents from him. Ex. 9 at 9 (Bugbee Decl. signed on April 18, 2020); Ex. 8 at 2, 3 (served on April 18, 2020). At that time, Defendant disclosed to the Satanic Temple Mr. Bugbee's known contact information. Ex. 8 at 2. Contrary to the Satanic Temple's assertions, Mr. Bugbee has never provided his address to Defendant, and Defendant cannot provide what he does not know. Fed. R. Civ. P. 26(a)(1)(A)(i) ("provide . . . , *if known*, the address and telephone number" (emphasis added)).

The fact that the Satanic Temple "find[s] it incomprehensible" (DE 190 at 3), that Defendant received these documents only on April 11, 2020, is no argument for excluding Mr. Bugbee's declaration. Defendant has produced to the Satanic Temple the documents he received, so it cannot dispute that fact. Further, the Satanic Temple's hyperbolic claims that Defendant had an undisclosed "secret witness" are categorically false. Those claims are demonstrably belied by the fact that the information the Satanic Temple points to as evidence was gleaned, not from Mr.

Bugbee, personally, but from online sources (including some created by Mr. Bugbee) that were freely available and accessed by Defendant before Mr. Misicko's deposition. Those online sources include information concerning:

- Mr. Misicko's Process P Cross tattoo,[7] which he admits is a "variation of the swastika"[8];
- the entire 24-hour "Might is Right Special" podcast, in which Mr. Misicko harshly denigrates religious believers in Judaism[9]—the source of the Ten Commandments at the center of this litigation;
- the Satanic Temple's managers' illicit motive for person gain[10]—put in issue by the Satanic Temple's claim to be a tax-exempt "religion"; and
- the Satanic Temple's "pink mass," purported to be a ritual by gay couples to turn a deceased woman gay in the afterlife, but actually performed by hired actors who were not gay.[11]

---

[7] *See* Daniel K. Buntovnick, *The Frontman: Douglas Misicko, Better Known as Lucien Greaves and Doug Mesner*, Anatomy of a Crypto-Fascist Sect, https://danielkbuntovnik.wordpress.com/2019/04/20/the-frontman-douglas-misicko-better-known-as-lucien-greaves-and-doug-mesner/.

[8] Doug Mesner, *As It Was…*, The Process Is…, http://www.process.org/discept/2007/12/30/as-it-was/. The Process website's background contains an image of the Process P Cross.

[9] *Grey Faction, Satanic Temple and Lucien Greaves Fact Sheet, S.M.A.R.T. Ritual Abuse Pages*, https://ritualabuse.us/ritualabuse/grey-faction-satanic-temple-and-lucien-greaves-fact-sheet/; Shane Bugbee, Amy Stocky, and Doug Mesner, *Might is Right Special*, Internet Archive, https://archive.org/details/MightIsRightSpecial.

[10] *See, e.g.*, Jex Blackmore, *The Struggle for Justice is Ongoing*, Medium, https://medium.com/@JexBlackmore/the-struggle-for-justice-is-ongoing-6df38f8893db; Emma Story, *Why I'm Leaving The Satanic Temple*, Medium, https://medium.com/@emmastory/why-im-leaving-the-satanic-temple-528bbc06432b; Ordo Sororitatis Satanicae, *As Witness and Measure Taken, To Pronounce: The Satanic Temple – My Experience*, Medium, https://medium.com/@SistersSatanic/as-witness-and-measure-taken-to-pronounce-the-satanic-temple-my-experience-a1400928656f; Ordo Sororitatis Satanicate, *Mary Doe Speaks: Her Story — The Satanic Temple, a Case Experience*, Medium, https://medium.com/@SistersSatanic/mary-doe-speaks-her-story-the-satanic-temple-a-case-experience-e13e965127c6; Autumn, *Yet Another Quitting The Satanic Temple Post (YAQTSTP) Updated: New Information about Adam Parfrey*, Medium, https://medium.com/@iNerdGirl/yet-another-quitting-the-satanic-temple-post-yaqtstp-ea4ad9a49c3d; *Grey Faction, Satanic Temple and Lucien Greaves Fact Sheet, S.M.A.R.T. Ritual Abuse Pages*, https://ritualabuse.us/ritualabuse/grey-faction-satanic-temple-and-lucien-greaves-fact-sheet/.

[11] See various podcasts by Shane Bugbee, e.g., *7. Lucien Greaves: The Good, the Bad, and the Dougie – Speak of the Devil Pod 007*, Speak of the Devil Podcast with Shane Bugbee, https://castbox.fm/episode/7.-Lucien-Greaves%3A%C2%A0-the-good%2C-the-bad%2C-and-

Again, this information was freely available online and accessed by Defendant before Mr. Misicko's deposition.

The Satanic Temple's claim that the Court must exclude Mr. Bugbee because "[t]his lawsuit is not a proxy battle in a doctrinal war" reveals a concern that exists only in the Satanic Temple's imagination. (DE 190 at 6). Defendant has no interest in "resolv[ing] who the 'real' Satanists are" (*Id.* at 7), nor is Mr. Bugbee's testimony directed toward that end. Rather, by implausibly portraying Mr. Bugbee as pursuing some sort of inter-religious dispute, the Satanic Temple is trying to manufacture a reason to exclude Mr. Bugbee's testimony because he can speak credibly about the Satanic Temple and Mr. Misicko's beliefs and motivations. The Court should deny the Satanic Temple's motion to exclude Mr. Bugbee's declaration.

**IV.    The Court should deny the Satanic Temple's motions to permit another "late subpoena" for Mr. Bugbee. (DE 189, 190).**

The Satanic Temple's motions correctly recognize that "the discovery window has closed"—and has been since April 29, 2020. (DE 190 at 8 (citing Am. Final Sch. Order, DE 107)). The Satanic Temple had opportunities to pursue discovery concerning Mr. Bugbee in April 2020 or shortly thereafter. But it squandered all those opportunities. Now—almost twenty months after the fact—the Satanic Temple asks the Court to enter a Second Amended Final

---

the-Dougie-SPEAK-OF-THE-DEVIL-POD-007-id2196466-id170917641?country=us. The group's difficulty in locating actors for the "pink mass" is described in Joseph P. Laycock, *Speak of the Devil: How the Satanic Temple is Changing the Way We Talk about Religion*, 35 (2020); *Westboro-Baptist: A Website Owned and Operated by The Satanic Temple*, Internet Archive, https://web.archive.org/web/20130717181130/http://www.westboro-baptist.com; Jason Fisher, *The Satanic Temple Performs Same-Sex Ceremony at Westboro Baptist Church Leaders Family Gravesite*, The Gauntlet, https://www.thegauntlet.com/article/28311/The-Satanic-Temple-Performs-Same-Sex-Ceremony-At-Westboro-Baptist-Church-Leaders-Family-Gravesite?utm_source=feedburner&utm_medium=twitter&utm_campaign=Feed%3A+Thegauntletcom+%28thegauntlet.com%29.

14

Scheduling Order that "reopen[s] discovery" (DE 192 at 5) and permits it to serve "a late subpoena" on Mr. Bugbee "for deposition testimony and [unspecified] documents."  (DE 190 at 9).  For the following reasons, the Court should deny the motions.  (DE 189, 190).

### A. The Satanic Temple has squandered opportunities to take discovery concerning Mr. Bugbee.

The Satanic Temple claims it stated an "objection" to Mr. Bugbee as a witness for Defendant, but that was certainly not "a good-faith effort to confer" (DE 190 at 5 (citing DE 128-1 at 3-4)) on taking his deposition.  To this day, the Satanic Temple has never approached Defendant proposing to depose Mr. Bugbee or take other discovery concerning him.  To the contrary, in April 2020 after identifying Mr. Bugbee, *Defendant approached the Satanic Temple*, first by phone and then by email, with a proposal to extend the discovery, summary-judgment, and trial deadlines for 90 days.  Ex. 10 at 1 (Kezhaya April 27, 2020 email).  The Satanic Temple *refused* to agree to an extension of discovery that would have permitted time for discovery pertaining to Mr. Bugbee (despite agreeing to an extension of the summary-judgment deadline and trial).  *Id.*  So to the extent that the Satanic Temple has conferred concerning the potential for such discovery, it has already refused the opportunity to seek it.

What's more, the Satanic Temple could have filed its motion "to permit a late subpoena" in April 2020—even without agreeing to an extension of discovery.  But it didn't, and the Satanic Temple's motion provides no justification for why it didn't.  No new circumstances have arisen warranting discovery concerning Mr. Bugbee.

The fig leaf the Satanic Temple provides for why it did not seek to take Mr. Bugbee's deposition after the close of discovery is that the Amended Final Scheduling Order states that the Court will not resolve any disputes arising after the discovery deadline, and the Satanic Temple

15

"forsee[s]" unspecified "disputes." (DE 190 at 8; *see* DE 107 at 1). But the fact is that the Satanic Temple made no effort whatsoever to take Mr. Bugbee's deposition. The Court should not be any more willing to resolve potential disputes almost twenty months later. And, in any case, the Satanic Temple's excuse is unbelievable given its squandering of opportunities it had to pursue such discovery.

**B. The Court should consider other reasons for the Satanic Temple's newfound interest in Mr. Bugbee.**

In addition to the Satanic Temple's forfeited opportunities, the considerable untimeliness of its motions, and its demonstrably false claims in support of its motions, its sudden and complete reversal from recognizing that no further discovery is needed (DE 168 at 1) to wanting five new subpoenas suggests the Satanic Temple's pursuit of some end other than ensuring appropriate fact discovery. Thus, the Court should consider whether the Satanic Temple's interest in serving new subpoenas may be calculated to serve other ends.

In particular, the Satanic Temple's newfound interest in deposing Mr. Bugbee may be an effort to intimidate or harass him for being willing to speak publicly about Mr. Misicko and the Satanic Temple. *Newsweek* recently reported on a lawsuit by the Satanic Temple against four former members of its Washington State chapter. Julia Duin, *Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit*, Newsweek, https://www.newsweek.com/orgies-harassment-fraud-satanic-temple-rocked-accusations-lawsuit-1644042 (attached as Exhibit 11). Like Mr. Bugbee, these four individuals publicly criticized the Satanic Temple, stating that it "mismanages funds, harasses dissenters, tolerates anti-Semitism and abusive leadership, and is a cult-like group masquerading as a religion." *Id.* The Satanic Temple sued the former members in federal court asserting defamation and other claims, but the court dismissed the complaint. *United Federation of Churches, LLC v. Johnson*, No. 2:20-CV-00509-RAJ, 522 F. Supp. 3d 842

16

(W.D. Wash. 2021).  The Satanic Temple subsequently amended and refiled its complaint.  *See id.* ECF 16.  The *Newsweek* article reports that the former members have personally been forced to spend $80,000 defending themselves in court, which has torn apart their livelihoods and "eat[en] them alive financially."  Duin, *supra*.  "Just as the [Satanic Temple] wanted, we are at a breaking point," one confessed.  *Id.*

In a different lawsuit, the Satanic Temple has recently been ordered to pay Rule 11 sanctions for harassing, causing unnecessary delay, or needlessly increasing the cost of litigation.  *Satanic Temple v. City of Belle Plaine*, No. 19-CV-1122 (WMW/JFD), 2021 WL 4199369, at *20 (D. Minn. Sept. 15, 2021).  Moreover, in yet another lawsuit, in response to a court order specifically requiring Mr. Kezhaya to state why he issued a subpoena to Boston Mayor-elect (then candidate) for a deposition to be taken on November 2, 2021—Election Day—Mr. Kezhaya explained that he "feel[s] no remorse," and asserted that "it is my sworn duty to do anything short of breaking the law to see to it that my client's goals are recognized."  *The Satanic Temple, Inc. v. Boston*, No. 1:21CV10102-AK, ECF 36, 37 (D. Mass. Oct. 28, 2021).

Regardless of the Satanic Temple's true motives, one thing is absolutely clear.  As above, the Satanic Temple has not demonstrated diligence in pursuing the discovery that it suddenly wants to pursue almost twenty months after the close of discovery.  It has not shown good cause to serve more untimely subpoenas, to modify the scheduling order, or to reopen discovery.  Given that all that remains is wrapping up the discovery that has already been directed by the Court, the Court should deny the Satanic Temple's motions.  (DE 189, 190).

**C.     New discovery concerning Mr. Bugbee at this point is likely to unduly delay this litigation.**

Finally, on information and belief, Mr. Bugbee does not reside or transact business in Arkansas.  As the Satanic Temple recognizes of its other untimely subpoenas (DE 188 at 6 (they

17

"will only further delay" matters), permitting the Satanic Temple to serve a late subpoena on Mr. Bugbee is likely to unduly delay this matter by opening up collateral litigation in a (given the backlog caused by the pandemic) busy, out-of-state federal forum.  *See* Fed. R. Civ. P. 45(d)(1) (as to avoiding undue burden or expense on the party subject to the subpoena, "[t]he court for the district where compliance is required must enforce this duty"); *id.* 45(d)(2)(B)(i) (as to an order compelling production, "the serving party may move the court for the district where compliance is required"); *id.* 45(d)(3) (as to protecting a person subject to a subpoena, "the court for the district where compliance is required"); *see also id.* 45(c) (defining "[p]lace of [c]ompliance").

For this reason, and all of the reasons set forth above, the Court should deny the Satanic Temple's motions.  (DE 189, 190).

**V.      If the Court reopens discovery, Defendant should certainly be permitted to seek further discovery concerning the Satanic Temple.**

If the Court reopens discovery for the Satanic Temple or otherwise permits it to enforce its untimely subpoenas (and it should not), then Defendant respectfully requests that the Court permit it to conduct further discovery concerning the Satanic Temple.  That discovery will include, but not be limited to, redeposing the Satanic Temple's 30(b)(6) representative, deposing the Satanic Temple's co-manager Cevin Soling and other Satanic Temple leaders whom Defendant anticipates will be identified for the first time in forthcoming responses from the Satanic Temple, and serving follow-up requests.

As detailed in during the November status conference, throughout this litigation the Satanic Temple has tried to evade its duty to respond to questions concerning its policies and to produce documents responsive to Defendant's requests by claiming to be (or not be) various entities.  (DE 198; *see* DE 181).  And as the Satanic Temple's 30(b)(6) representative, Mr. Misicko's

18

memory failed him at crucial points during the deposition. (*See* DE 181 at 2). As a result, Defendant still has little information to test the basis for the Satanic Temple's claims concerning its purportedly tax-exempt "religious" nature and identity, including the legal, organizational, and financial relationships among its various corporate entities (The Satanic Temple, Inc., the United Federation of Churches, LLC; Reason Alliance, Ltd.; and Cinephobia, LLC), and its organizational sub-entities (Executive Ministry, National Council, International Council, Grey Faction, and local chapters).

In response to this Court's October 22 Order (DE 172), the Satanic Temple has recently produced discovery responses and a privilege log with facially defective assertions of privilege. It is unknown at this time how the withheld documents will impact Defendant's need for follow-up discovery concerning various issues. In any case, Defendant's motion for relief concerning remaining discovery issues (DE 181) has requested that the Court require the Satanic Temple to provide relevant documents that Defendant first began seeking two-and-a-half years ago. It is anticipated that documents the Satanic Temple finally produces in response to those requests and the Court's Orders will necessitate follow-up discovery, including the deposition of Mr. Soling and another deposition of the Satanic Temple. Finally, the deposition of Mr. Soling is also needed because it has recently come to light that he has made public comments stating a commitment "in [his] heart of hearts" to metaphysical solipsism[12]—a statement that is contrary to claims made by the Satanic Temple, and which further belies any pretense that the Satanic Temple is a serious religious organization.

---

[12] In a video recently posted to YouTube, Mr. Soling speaks for one-and-a-half hours about his intellectual commitment to metaphysical solipsism. *See Cevin Soling Live! Consciousness Live! S4 Ep15*, YouTube, at 9:45, https://www.youtube.com/watch?v=h7UiUWEE33M &t=5539s. At time mark 14:10, Mr. Soling defines "metaphysical solipsism" as the belief that his mind is the only thing that exists.

Therefore, if the Court reopens discovery or otherwise permits the Satanic Temple to enforce its untimely subpoenas—all of which Defendant opposes—Defendant should be permitted to conduct further discovery concerning the Satanic Temple.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court deny the Satanic Temple's motions.  (DE 189, 190, 192, 199).

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

Vincent M. Wagner (2019071)
 Deputy Solicitor General
Michael A. Cantrell (2012287)
 Assistant Solicitor General
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
Michael.Cantrell@ArkansasAG.gov

Hiram S. Sasser, III
Michael D. Berry
Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel:  (972) 941-6162
Fax:  (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Attorneys for Secretary of State John Thurston*