IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| DONNA CAVE, *et al.* | | PLAINTIFFS |
| ANNE ORSI, *et al.*, and | CASE NO. 4:18-CV-342 | CONSOLIDATED PLAINTIFFS |
| THE SATANIC TEMPLE, *et al.* | | INTERVENORS |
| *v.* | | |
| JOHN THURSTON, in his official capacity | | DEFENDANT |

## REPLY ON DISCOVERY MOTIONS

## INTRODUCTION AND SUMMARY

COME NOW Intervenors, by and through counsel of record, with a reply to Secretary Thurston's response (doc. 201) to the motion to exclude Shane Bugbee, (doc. 190); the motion to amend the scheduling order and for order to show cause against State Rep. Hammer, (doc. 192); and the motion for order to show cause against State Sen. Ballinger, (doc. 199).

Because Secretary Thurston does not claim a personal interest

in the documents sought to be compelled by the subpoenas, he has no standing to contest the motions for orders to show cause against State Rep. Hammer and State Sen. Ballinger. The Court should disregard his objections to the motions to show cause.

Secretary Thurston's chief argument against amending the scheduling order is that he had no access to the emails sought to be compelled by the subpoenas. He is wrong. The emails sought to be compelled by the subpoenas were available to him pursuant to the Arkansas Freedom of Information Act.

His chief argument against excluding Bugbee is rooted in the assertion that he first learned that Bugbee was willing to assist on April 11, 2020. That is a lie. On February 22, 2020, Bugbee emailed Cantrell with his willingness to assist the defense with a meeting on the following Monday (February 24) or on Wednesday (February 26). Alternatively, Secretary Thurston claims to have learned all of Bugbee's claims by internet research. That does not obviate his duty to disclose that Bugbee and his internet hearsay would be used to support the defense. Bugbee should be excluded.

ARGUMENT

## 1: Defendant lacks standing to object to the motions for orders to show cause against the legislators.

The Court should disregard Secretary Thurston's responses in objection to the motions for orders to show cause (docs. 192 and 199) because Secretary Thurston lacks standing to object.

Standing is the cornerstone of Federal civil procedure. The requirement of standing precludes a party from asserting the rights or interests of others. A plaintiff needs standing to bring and maintain their lawsuit, *e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021); an intervenor needs standing to intervene on a pending lawsuit, *e.g.*, *Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996); and a party needs standing to move to quash a subpoena to a non-party, see *Smith v. Frac Tech Servs., Ltd.*, No. 4:09CV00679 JLH, 2010 WL 3522395 (E.D. Ark. Sept. 1, 2010).

Ordinarily a party has no standing to seek to quash a subpoena issued to a non-party unless the objecting party claims some personal right or privilege with regard to the documents sought.

*Smith*, 2010 WL 3522395 at *1 (citing 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (3rd ed.: 2008)). If a party lacks standing to quash a subpoena, then it stands to reason that they also lack standing to contest contempt for failure to comply with the subpoena. Either way, a party is contesting whether a non-party should comply with the subpoena. Absent some personal stake in the documents to be produced, the party's objection should be denied for lack of standing.

Secretary Thurston asserts no legal interest in whether the non-parties are held in contempt for failing to comply with the subpoenas and he asserts neither a personal interest nor a privilege in the documents. He lacks standing to contest our efforts to enforce the subpoenas against the non-parties. The Court should overrule his objections.

## 2:  The Court should enforce the subpoenas.

Next, Secretary Thurston objects to the motion to amend the scheduling order to permit enforcing the subpoenas. He presents

two arguments. Each is addressed below.

## 2.1: TST's political capital is irrelevant to "good cause."

Secretary Thurston's first objection asserts that the Baphomet Monument was not installed because TST lacked the political clout to command equal treatment under the law as the General Assembly provided to Christianity. See Doc. 201 at 6-8. Secretary Thurston's argument is a *non sequitur*; it does not address whether there is good cause to amend the scheduling order. FRCP 16(b)(4).

## 2.2: The delay was caused by obstruction.

Secretary Thurston's next objection asserts that he does not have the ability to obtain documents from any State employees unless they work in his office. Doc. 201 at 8-11. Secretary Thurston is wrong. He has always had the power to obtain the records pursuant to the Arkansas Freedom of Information Act. The corollary is not true: we could not obtain these materials through the Arkansas Freedom of Information Act for the purpose of this litigation. *Read v. United States*, No. 2:15CV00101-JM-JJV, 2015 WL 4196832, at

*2 (E.D. Ark. July 10, 2015) ("the primary purpose of FOIA was not to serve as a substitute for discovery.") Secretary Thurston's failure to provide these public records through the normal discovery process forced us to seek the same information by subpoena.

As this Court has already addressed, we can compel the production of the legislators' emails from Secretary Thurston, providing that Secretary Thurston has the "legal right to obtain the documents on demand." Doc. 172 at 6; see also id. at 24-25 (rejecting Secretary Thurston's argument that publicly available documents cannot or should not be compelled through discovery).

Arkansas has a statutory framework which permits Secretary Thurston the requisite "legal right to obtain the documents on demand." ACA §§ 25-19-101 *et seq.* (the Arkansas Freedom of Information Act of 1967); *Bradford v. Dir., Emp. Sec. Dep't*, 83 Ark. App. 332, 345, 128 S.W.3d 20, 27–28 (2003) (even emails on private accounts are subject to compelled disclosure under the Freedom of Information Act, provided the email is about public business).

Under the Arkansas Freedom of Information Act, Secretary

Thurston can demand "public records," which are statutorily de-
fined to include "All records maintained in public offices or by
public employees within the scope of their employment." ACA §
25-19-103(7). These documents are subject to examination upon
demand by any citizen of the State of Arkansas. ACA § 25-19-105.

Secretary Thurston is a citizen of this State, so the only ques-
tion is if the requests for production at issue are "public records."
They are. At issue are Requests for Production Nos. 1-7, which
sought "correspondence" (to include emails) to or from any "Gen-
eral Assembly members or their staff" (State Rep. Hammer and
State Sen. Ballinger are General Assembly members). Doc. 120-1.
All emails held by General Assembly members, and presumably
also their staff, are maintained by the Information Technology Di-
vision of the General Assembly. EXHIBIT 1 ("Information Tech-
nology Division" information page) ("The Legislative Information
Systems office was created to provide a single point of coordina-
tion for computer related services for the Arkansas House of Rep-
resentative [and] Senate … We provide the following services:

Management of internal computer network services, including: email.") Under *Bradford*, even the non-public email accounts held by State Rep. Hammer and State Sen. Ballinger are subject to disclosure under the Arkansas Freedom of Information Act and are therefore properly within the reach of our requests for production.

Secretary Thurston had the resources necessary to issue the Arkansas Freedom of Information Act requests to procure the documents sought by these requests for production. He was armed with his own office's legal department, the legal department of the Arkansas Attorney General's office, and *nine* counsel of record. These documents, if timely produced, would have obviated the need for the subpoenas. Instead, Secretary Thurston has doggedly obstructed the production of this discovery since March of 2020.

That obstruction led us to seek the same documents by subpoena to the key legislators, on the hope that the threat of contempt would muster at least some of the contemporaneous statements by the decisionmakers. Had Secretary Thurston produced these materials, we would not need to amend the scheduling order. His ob-

struction tactics directly caused the need to amend.

### 3:  The Court should exclude Bugbee.

Secretary Thurston next objects to excluding Bugbee but also resists a late subpoena for Bugbee's testimony and all documents relevant to this case. He can't have it both ways. Either Bugbee is excluded from testifying, or we have a full opportunity to prepare for his testimony. Exclusion is our preference.

### 3.1: Secretary Thurston failed to timely disclose him.

Secretary Thurston defends withholding his intent to use Bugbee as a witness until eleven calendar days before the close of discovery because, "he doubted both Mr. Bugbee's value as a witness and his willingness to assist Defendant." Doc. 201 at 11-12.

Secretary Thurston is being dishonest. Through counsel, he had been in contact with Bugbee since at least February 21, 2020. Ex-HIBIT 2 (all emails Secretary Thurston provided between Cantrell and Bugbee) (redactions in original, and are the subject of the motion to compel for failure to provide a proper privilege log–see doc.

203). In each email, Bugbee is more than willing to talk with Secretary Thurston. **Id.** at 1 ("Let's try for Monday and if that doesn't work, we will for sure wens") and 3 ("What time works for you?")

Oddly, Secretary Thurston reveals that he received documents on April 11, 2020. Doc. 201 at 12. Those documents are responsive to the Second Requests for Production Nos. 2 and 3 (doc. 120-2 at 2-3), but were not provided and not listed on his privilege log (doc. 203-1). This Court specifically required production of a privilege log that lists "*any* document … withheld from production." Doc. 172 at 32-33.

Also, Secretary Thurston has the burden to prove the claim that he first got the documents on April 11, 2020. Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289.1 (3d ed.) ("the burden is on the party facing the sanctions…to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless"). Absent the proof that he really did first receive these materials on April 11, 2020, he has not provided the Court with the "substantial justification" necessary to avoid automatic exclusion. FRCP 37(c)(1).

The rest of Secretary Thurston's argument defends his use of Bugbee's conspiratorial claims in Greaves's deposition. He asserts that the information came, not from a discussion with Bugbee, but by perusing the internet. Given that all of these conspiratorial claims are asserted in the very declaration written by Secretary Thurston's attorneys for Bugbee (doc. 188-2), we find the assertion highly unlikely. More likely, the information was provided by Bugbee, either on Monday February 24, 2020 or Wednesday, February 26, 2020. **Exhibit 2** at 1 (Bugbee's email, written on February 22, 2020, "Let's try for Monday [February 24, 2020] and if that doesn't work, we will for sure wens [February 26, 2020]"); see also doc. 203-1 at 5, ¶¶ 46-48 (the privilege log shows that Bugbee's emails were with Cantrell).

But even if this information was sourced from perusing the internet as opposed to talking to Bugbee, Secretary Thurston's counsel of record *still* formed the opinion that Bugbee was an individual "likely to have discoverable information." FRCP 26(a)(1)(A)(i). It was no later than February 19, 2020 that they formed this opinion.

Doc. 203-1 at 5 ¶ 48 (the date Cantrell reached out to Bugbee).

Once Secretary Thurston's attorneys of record had the subjective belief that Bugbee was "likely" to have discoverable information in hand, Secretary Thurston incurred an affirmative obligation to supplement his disclosures with the potential witnesses and documents he may use to support his defense. FRCP 26(a)(1)(A) and (e). No part of the response addresses this point. Because Bugbee was not timely disclosed and because Secretary Thurston offered no substantial justification for failing to timely disclose the potential witness, Bugbee is automatically excluded. FRCP 37(c).

### 3.2: Otherwise, a late subpoena is necessary.

If the Court does not exclude Bugbee, a late subpoena is necessary to allow Intervenors a meaningful right to prepare for Secretary Thurston's surprise witness. *Fed. Deposit Ins. Corp. v. Cherry, Bekaert & Holland*, 131 F.R.D. 202, 204 (M.D. Fla. 1990) ("The aim of the liberal discovery rules is to make trial less a game of blindman's bluff and more a fair contest.") (internal quotes omit-

ted). If Bugbee is going to be a witness, we are entitled to examine him and his documents to prepare for trial.

Secretary Thurston resists our right to prepare for trial because we refused to agree to a discovery extension back in April of 2020. Doc. 201 at 15. We stand by that refusal. By issuing the late notice of Bugbee, Secretary Thurston engaged in a transparent effort to strong-arm a discovery extension. That is not how discovery works. Secretary Thurston made the strategic choice to wait until eleven calendar days before the close of discovery to announce this "newly received information." Doc. 188-1 at 3. The information wasn't "newly received;" Secretary Thurston's attorneys of record had been in contact with Bugbee for at least two months prior. Bugbee was automatically excluded. FRCP 37(c)(1).

We have no interest in allowing Secretary Thurston to run up our costs or further delay the trial. But unless the Court excludes Bugbee, we have to try to prepare for an orderly and fair trial.

*3.3:* Ad hominem *attacks.*

Next Secretary Thurston levies a new series of *ad hominem* attacks against TST. Doc. 201 at 16-17. None of it has anything to do with whether Secretary Thurston was substantially justified in waiting to disclose a known witness until eleven calendar days before the close of discovery. It's just the latest opportunity to dig up some more internet hearsay in an effort to harm TST's reputation. Secretary Thurston would do well to remember who he is trying to defame. Taking the moral low ground against Satanists (a historically reviled group) is not just pointless, it's pathetic.

*3.4: Delays caused by a subpoena lend toward exclusion.*

Next, Secretary Thurston resists a late subpoena for Bugbee because it will incur undue delays in the litigation. Doc. 201 at 17-18. We agree. But it's either exclude Bugbee or permit the subpoena. Depriving Intervenors of the right to a fair trial is not optional.

## 4:  Secretary Thurston is not entitled to more discovery.

As an alternative to denying Intervenors' motions, Secretary

Thurston asks the Court to completely reopen discovery. Doc. 201 at 18-20. He offers no good cause to justify amending the scheduling order. He just wants a consolation prize if the Court compels production of the emails that he should have produced nearly two years ago, and if the Court either excludes his late-disclosed witness or allows Intervenors a fair opportunity to prepare for trial.

But no good cause supports reopening discovery for Secretary Thurston. Nothing stopped Secretary Thurston from deposing Malcolm Jarry. Nothing stopped him from propounding new requests for production about the affiliates per this Court's directive. Instead, he moved for contempt based on his lie that this Court orally modified his discovery requests. Doc. 172 at 33-34.

Based on his track record, it is clear that Secretary Thurston is abusing the discovery process. Discovery is there "to facilitate orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). A ruling in favor of Intervenors does not entitle Secretary Thurston to a participation trophy. Parties do not get rewarded with a discovery extension for

engaging in obstruction tactics. The Court should deny Secretary

Thurston's motion to reopen discovery because he offered no good

cause to justify an amendment to the scheduling order.

WHEREFORE Intervenors pray this Court grant orders to show

cause against State Rep. Hammer and State Sen. Ballinger, and ei-

ther exclude Shane Bugbee as a witness or permit a subpoena for

his deposition and documents.

Respectfully submitted on
December 7, 2021,
on behalf of Intervenors
By:  Matthew A. Kezhaya, ABA # 2014161
KEZHAYA LAW PLC
1202 NE McClain Rd
Bentonville, AR 72712
phone:  (479) 431-6112
email:  matt@kezhaya.law

### CERTIFICATE AND NOTICE OF SERVICE

NOTICE IS GIVEN that I, Matthew A. Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on December 7, 2021 which sends service to registered users, including all other counsel of record in this cause. s/ Matthew A. Kezhaya

<u>Exhibit list</u>

1.  "Information Technology Division" information page

2.  All emails Defendant provided between Cantrell and Bugbee