**\*\*\* REDACTED PUBLIC DOCUMENT[1] \*\*\***

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **DONNA CAVE, JUDITH LANSKY, PAT PIAZZA, and SUSAN RUSSELL,** | **PLAINTIFFS,** |
| **ANNE ORSI, AMERICAN HUMANIST ASSOCIATION, FREEDOM FROM RELIGION FOUNDATION, INC., ARKANSAS SOCIETY OF FREETHINKERS, JOAN DIETZ, GALE STEWART, RABBI EUGENE LEVY, REV. VICTOR H. NIXON, TERESA GRIDER, and WALTER RIDDICK,** | **CONSOLIDATED PLAINTIFFS,** |
| **THE SATANIC TEMPLE, DOUG MISICKO aka "LUCIEN GREAVES," and ERIKA ROBBINS,** | **INTERVENORS,** |
| v.   No. 4:18CV00342 KGB/BD | |
| **JOHN THURSTON, Arkansas Secretary of State, in his official capacity,** | **DEFENDANT.** |

**\*\*\* REDACTED PUBLIC DOCUMENT \*\*\***

**OPPOSITION TO THE SATANIC TEMPLE'S MOTION TO COMPEL (DE 203) AND
SURREPLY IN FURTHER OPPOSITION TO SATANIC TEMPLE DISCOVERY MOTIONS
(DE 189, 190, 192, 199)**

The Satanic Temple continues its ploy to obtain orders from this Court compelling discovery nearly twenty months after the close of discovery based on demonstrable falsehoods. After squandering countless opportunities, the Satanic Temple has belatedly bloated this Court's

---

[1] The Secretary filed an unredacted version of this response under seal because it refers to facts contained in the Satanic Temple's November 22 privilege log, which the Satanic Temple has designated, without the Court's permission or a showing of good cause, as "confidential." Despite the Secretary's request, the Satanic Temple has refused to withdraw that designation. (*See* Ex. 1 at 3, 7, 9, 12).

docket with numerous ill-supported motions claiming an entitlement to more opportunities to unduly delay this litigation.  The Satanic Temple's latest frivolous motion—to compel confidential and privileged items listed in Secretary Thurston's log—comes after counsel for the Satanic Temple abruptly refused to confer and cut off communication, ensuring no resolution of the issues.  As explained below, that motion is baselessly premised on numerous falsehoods.  The Court should deny both it and the Satanic Temple's other motions.

## FACTS

On November 22, 2021, the Satanic Temple produced a set of correspondence that, without the Court's permission or a showing of good cause, it designated as "confidential."  At the November 23 status conference, the Secretary objected to the "confidential" designation of those documents.  The Secretary explained that, by the terms of the Court's March 1, 2020 Order, a protective order has been granted only as to organizational and tax documents (specifically: "current bylaws, operating agreements, or analogous documents" and "the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018.")  (DE 116 at 20-24).  The documents in the Satanic Temple's November 22 production do not meet those criteria.

Meanwhile, on November 22, 2021, the Secretary produced about 16,000 pages of documents responsive to the Satanic Temple's discovery requests.  (*See* Ex. 6).  The Secretary also produced a privilege log of a limited set of documents that are, variously, attorney work product, attorney-client privileged, or State Capitol police records that are confidential under Arkansas law.

Shortly before Thanksgiving,[2] the Secretary received from counsel for the Satanic Temple an email with no body text from him (except for his signature block), (Ex. 2), with a PDF letter attachment demanding that the Secretary produce the confidential State Capitol Police records by November 30. (Ex. 3). Despite the Satanic Temple's false claim that "November 30 came and went without a response" (DE 203 at 3), defense counsel responded to counsel for the Satanic Temple on November 30 and agreed to arrange a teleconference to discuss discovery. (Ex. 1 at 15-16). In counsel for the Satanic Temple's words, the conference was to include "clarifying the protective order (doc. 122) to allow designation of confidential materials for any documents, not just TST's bylaws." (Ex. 1 at 16).

Given the outstanding issue concerning confidentiality designations for documents other than "just TST's bylaws," (Ex. 1 at 16), the parties could not have reached any agreement concerning the (legally) confidential State Capitol Police records without first discussing whether those records would be treated confidentially by the parties. Nevertheless, the very next day after the agreement to confer, the Satanic Temple abruptly filed its motion to compel the confidential State Capitol Police records without prior notice to defense counsel. (DE 203). After reading through the motion, defense counsel contacted counsel for the Satanic Temple, expressing confusion as to why the Satanic Temple had filed its motion when the parties had agreed to confer. (Ex. 1 at 15). After receiving no response to the first message, defense counsel sent a second message, still expressing a desire to confer. (Ex. 1 at 14-15).

Counsel for the Satanic Temple finally responded, claiming that "[t]here are two separate email threads for two separate issues. This email thread relates solely to the protective order."

---

[2] The Satanic Temple's motion states that it sent this letter on October 23. DE 203 at 3. That is false. The correct date is November 23. (*See* Ex. 3 (dated "November 23, 2021")).

(Ex. 1 at 13).  (In fact, there had been no other communications concerning the Satanic Temple's demand for the confidential State Capitol Police records.  By "separate email thread[]," counsel for the Satanic Temple was apparently referring simply to his signature block in the email he had sent shortly before Thanksgiving with the PDF letter attachment.  (Ex. 2).)  Counsel for the Satanic Temple's response further stated—in reprisal for the Secretary's filed response to the Satanic Temple's untimely discovery motions, (Ex. 1 at 13)—that "the invitation [to confer] is now closed," that the issues pertaining to the motion to compel did not "warrant[] discussion," and that he was flatly refusing to confer with defense counsel by phone on any issue.  (Ex. 1 at 13).

## ARGUMENT

In what has now become a consistent theme (*see* DE 201 at 4-5 (describing the Satanic Temple's failure to confer in accordance with this Court's Orders and Local Rules 7.2 and 6.2(b)), the Satanic Temple has once again refused to confer in good faith on discovery.  The Court's October 22 Order concerning this discovery provided that if there were any issues with the document production, the Satanic Temple was to "confer in good faith to resolve any remaining dispute," and "*if it cannot be resolved*, [the Satanic Temple] may *then* move to compel production of specific documents."  DE 172 at 12 (emphases added).  Unfortunately, the Satanic Temple did not proceed as the Court directed.  Therefore, the Satanic Temple's motion presents numerous issues that could have been narrowed or resolved through the discovery conference that the parties had agreed to have.  But by abruptly filing its motion to dismiss—and aborting the conferral process—the Satanic Temple guaranteed that those issues would not be resolved before being presented to the Court, thus wasting the time and resources of both counsel and this Court.  For this reason and the more specific reasons set forth below, the Satanic Temple's motions to compel (DE 203) and to conduct new discovery (DE 189, 190, 192, 199) should be denied.

I. **The Satanic Temple's claims concerning the confidential State Capitol Police records are baseless.**

The Satanic Temple' motion to compel makes numerous baseless assertions concerning purported deficiencies of the Secretary's privilege log and the confidentiality of the State Capitol Police records. The Court should deny the motion.

   A. **The Satanic Temple's claims concerning purported deficiencies of the Secretary's privilege log are baseless.**

First, the Satanic Temple faults the Secretary's log for stating that the general nature of the documents are "emails." This Court directed that the privilege log contain the following information:

> (a) the general nature of the document; (b) the identity and position of its author; (c) the date it was written; (d) the identity and position of its addressee; (e) the identities and positions of all persons who were given or have received copies of it and the dates copies were received by them; (f) the document's present location and the identity and position of its custodian; (g) the specific request for production or requests for production to which Secretary Thurston maintains the document is responsive; and (h) the specific reason or reasons why it has been withheld from production or disclosure.

(DE 172 at 11-12 (line breaks omitted)). The Satanic Temple absurdly claims that the word "email" gives the "type" of the document and not the "general nature" of the document. This is a meaningless and unsupported distinction that is further belied by the fact that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The Satanic Temple's claim is baseless.

The Satanic Temple next claims that the Secretary's log does not provide the identities and positions of all persons who were given or have received copies and the dates copies were received. If counsel for the Satanic Temple had gone ahead with the previously anticipated

5

good-faith conference instead of intemperately cutting off communication and filing the motion to compel, defense counsel could have explained that no persons other than those identified in the log have received copies of the documents, so there has been no waiver of confidentiality. Again, the baselessness of the Satanic Temple's claim here is apparent from the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Court directed that all persons who received copies should be identified—which is precisely what the Secretary has done. Again, the Satanic Temple's claim is baseless.

**B.     State Capitol Police records are confidential under Arkansas law.**

The Satanic Temple faults the Secretary's privilege log for purportedly failing to provide information sufficient to establish that the documents are subject to confidentiality. But Rule 26 of the Federal Rules of Civil Procedure require a party to "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The Secretary's log provides everything necessary to show that the documents are "confidential" under Arkansas law. By law, "[a] record or other information related to the operations, emergency procedure, and security personnel of the State Capitol Police is confidential." Ark. Code Ann. 12-14-109. The Secretary's log specifically documents the sender and the recipient of every email, and it provides a list identifying State Capitol Police personnel by name. (*See* Ex. 4). Every email for which confidentiality is asserted can be assessed on this basis. Thus, the log is sufficient to "enable other parties to assess the claim," Fed. R. Civ. P. 26(b)(5)(A)(ii), that each document is "[a] record or other information related to the operations, emergency procedure, and security personnel of the State Capitol Police." Ark. Code Ann. 12-14-109. They are all subject to confidentiality, and the Satanic Temple's claim is baseless.

6

The Satanic Temple next claims that the Secretary's privilege log fails to show that the Secretary has standing to assert confidentiality on the grounds that the log does not state the document's present location and custodian.  But, for each record, the log states that it is both an "email" and a "Confidential State Capitol Police Record maintained by the Secretary of State." (Ex. 4).  As *emails*, the documents are intangible electronic records maintained on the servers of their custodian, *the Secretary of State*.  It is unclear how the Secretary could lack standing to assert confidentiality on the Secretary's own records that the Secretary maintains.  The Satanic Temple's claims are baseless.  And, again, any remaining issue could have been resolved by the previously anticipated good-faith conference that the Satanic Temple abruptly called off.

The Satanic Temple asserts that the Secretary should have produced the State Capitol Police records because (it claims) they are "confidential" under the terms of the protective order.  But this Court has not "granted a virtual carte blanche to either party to seal whatever portions of the record the party wanted to seal."  *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) (citations omitted) (district court abused its discretion when it failed "to make a determination, as the law requires, of good cause to seal any part of the record of a case").  Rather, the Court put the protective order in place for a very specific reason: to protect the Satanic Temple's organizational and tax documents (specifically, "current bylaws, operating agreements, or analogous documents" and "the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018") from disclosure (DE 116 at 20-24).  The Secretary's State Capitol Police records are certainly *not* organizational or tax documents of the Satanic Temple, and they are not covered by the protective order.  So the Secretary could *not* have recklessly "stamped the documents 'confidential' and turned them over," as the Satanic Temple suggests. DE 203 at 6.

Again, confidentiality was *precisely* the issue that defense counsel and counsel for the Satanic Temple had agreed to discuss before counsel for the Satanic Temple unexpectedly canceled the anticipated discovery conference and filed its motion to compel. (*See* Ex. 1 at 16 (proposing a conference to "clarify[] the protective order (doc. 122) to allow designation of confidential materials for any documents, not just TST's bylaws.")). The Satanic Temple's motion, this response, and the Court's expending time and resources to decide it all could have been avoided if the Satanic Temple had truly conferred in good faith on these issues.

## II. The Satanic Temple failed to confer on still more issues and makes demonstrably false claims concerning them.

The Satanic Temple asks the Court to compel defense counsel to produce emails between defense counsel and Mr. Shane Bugbee and Ms. Alison Kellogg. But the Satanic Temple has not even *attempted* to confer concerning these emails. Its demand letter concerns only the confidential State Capitol Police records and says nothing at all about emails with Mr. Bugbee or Ms. Kellogg. (*See* Ex. 3). The Court should not require the Secretary to produce defense counsel's protected correspondence that the Satanic Temple has not even addressed with the Secretary. Again, the Court's order was to "confer in good faith to resolve any remaining dispute," and "*if it cannot be resolved*, [the Satanic Temple] may *then* move to compel production of specific documents." DE 172 at 12 (emphases added). The Satanic Temple has not even attempted this, and the Court should deny its motion to compel.

Even if, for the sake of argument, the Satanic Temple's complete failure to confer on these issues were set to the side, the Secretary has *already* produced *every responsive email* it has from these witnesses. What's more, the Secretary has even in good faith produced emails from Mr. Bugbee that were *not* responsive to the Satanic Temple's requests but still contained substantive information. In the Satanic Temple's reply concerning its various discovery motions,

the Satanic Temple for the first time made the false assertion that Secretary Thurston has not produced documents that he received from Mr. Bugbee on April 11, 2020. (DE 206 at 10). Those documents were not responsive to the Satanic Temple's discovery requests. But—as the Satanic Temple well knows—the Secretary in good faith *did* produce those documents (unredacted and without any assertion of privilege) in batestamped pages 17770 to 17799 of his November 22 production. (*See* Ex. 5 at 6).[3] It is, therefore, categorically false to claim, as the Satanic Temple now does, that those documents have been "withheld from production" and "not provided" to the Satanic Temple. (DE 206 at 10). It is remarkable that the Satanic Temple has taken to repeatedly accusing the Secretary of "lying to the Court," (Ex. 1 at 2; *see id.* at 13; DE 206 at 2, 15), when the Satanic Temple's briefs are so full of demonstrable falsehoods.

The emails *to* Mr. Bugbee and Ms. Kellogg that the Secretary has listed in his privilege log are unquestionably attorney work product. The Satanic Temple does not challenge those documents' character as work product (because it cannot) but only asserts that the Secretary has waived the privilege because (it claims) the Secretary's privilege log was untimely and ineffective.

The Satanic Temple has no good-faith basis for challenging the timeliness of the Secretary's log. On October 22, the Court ordered the parties to produce privilege logs within 30 days. DE 175 at 1-2. The Secretary timely produced his privilege log on November 22. (*See* Exs. 7, 8). If the Secretary's log was untimely (as the Satanic Temple baselessly claims), then the Satanic Temple's log was even more so, because it did not produce its log until later that

---

[3] This citation is to the Secretary's November 22, 2021 Supplemental Responses to the Satanic Temple's Second Requests for Production, which lists the batestamp numbers of the documents. If the Satanic Temple continues perpetuating the false claim that the Secretary has not produced these documents, the Secretary will file the batestamped documents with the Court, at the Court's direction.

evening. (*See* Ex. 9). In fact, neither log was untimely because both were produced in accordance within the timeframe set by this Court's Order and Rule 6 of the Federal Rules of Civil Procedure. As for the Satanic Temple's other complaints concerning these documents, for each one the Secretary's log clearly sets forth that it is an email, identifies its recipient, and states that it is maintained by the Arkansas Attorney General's Office. (Ex. 4). The Satanic Temple's claims are baseless.

### III. The Satanic Temple is asserting other falsehoods concerning the Secretary's ability to obtain documents.

The Satanic Temple's false claims concerning its motion to compel the privileged correspondence are of a piece with other false claims it has asserted concerning its efforts to conduct new discovery almost twenty months after the close of discovery. The Satanic Temple previously falsely claimed that the Secretary stalled in producing correspondence for the entire State of Arkansas, asserting that it (i.e., the Satanic Temple) has "correctly understood" that the Secretary "ha[s] the ability to procure all State correspondence about this case." (DE 192 at 5). But the Secretary has explained on multiple occasions that he cannot obtain correspondence for State employees working for anyone other than the Secretary of State. Indeed, the Secretary stated long ago—on March 27, 2020—that he "does not have possession, custody, or control" of such correspondence. (DE 120-4 at 2).

The Satanic Temple's narrative has now shifted somewhat. The Satanic Temple now asserts (for the first time) that it should be permitted to seek discovery almost twenty months after the close of the discovery period because (it claims) the Secretary obstructed access to the General Assembly's emails *by refusing to make a FOIA request* for those documents. (*See* DE 206 at 5-9). In addition to the bizarre suggestion that the Secretary should have done the Satanic

10

Temple's discovery for it, this claim is categorically false.  The Secretary cannot obtain the General Assembly's emails through a FOIA request because FOIA specifically exempts "correspondence of . . . members of the General Assembly."  Ark. Code Ann. 25-19-105(b)(7).  This exemption "include[s] not only the officeholder but his staff members as well."  *Bryant v. Mars*, 309 Ark. 480, 485, 830 S.W.2d 869 (1992).

Contrary to the Satanic Temple, Secretary Thurston has no "legal right to obtain the documents on demand."  DE 206 (quoting DE 172 at 6).  He does not have any special access to exempt public records of a separate branch of State government.  The Court should reject the Satanic Temple's numerous and evolving falsehoods—including its fictional narrative that "[h]ad Secretary Thurston produced these materials, [the Satanic Temple] would not need to amend the scheduling order" (DE 206 at 8)—and deny their motions to compel and to conduct new discovery.

**IV.   The Satanic Temple's other baseless requests should be denied.**

The Satanic Temple—quoting counsel for the Satanic Temple's own letter written to explain to another district court why he sought to depose then-candidate (now Boston mayor) Michelle Wu specifically on Election Day (*see* DE 203 at 9)—explains that its motion to compel is not seeking attorney-client privileged emails, but instead asks the Court to prohibit the Secretary from making a substantive legal argument concerning the Satanic Temple's claims to be religious.  It is not clear what the connection is.

But in any case, the Satanic Temple recycles its claim that this legal "question has already been answered," citing an opinion based on a very different factual record that found a single person affiliated with the Satanic Temple had standing to sue because she was denied the right to give an invocation that the court described as "secular rather than religious."  *Satanic Temple v. City of Scottsdale*, No. CV18-00621-PHX-DGC, 2020 WL 587882, at *4, 7 (D. Ariz.

11

Feb. 6, 2020). The Satanic Temple's claim that its status as a "religion" cannot be challenged is false. Even if another district court had concluded that the Satanic Temple was a religion (which is false), "one district court is not bound by the holdings of others, even those within the same district." *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009). In fact, "[i]f there is a federal district court standard, it must come from the Court of Appeals." *Id.* (quoting *Gasperini v. Ctr. for Humanities,* 518 U.S. 415, 430 n. 10 (1996)). And, here, the Eighth Circuit has specifically recognized that beliefs associated with the Satanic Temple "*may be political, not religious*." *Doe v. Parson*, 960 F.3d at 1119 n.2 (emphasis added). So, far from the Satanic Temple's status as a "religion" being established, binding precedent actually casts doubt on that claim.

The Satanic Temple asks the Court to "order Secretary Thurston and all responsible attorneys to jointly pay" its attorney's fees "for having to, for a second time, address this matter to the Court's attention." (DE 203 at 10). Given the facts documented herein, however, *the Secretary* should be awarded fees for having to respond to the Satanic Temple's unnecessary motion to compel. The motion presents numerous issues that could have been narrowed or completely resolved had counsel for the Satanic Temple not aborted the conferral process. By abruptly filing its motion to dismiss, without prior notice and after the parties had agreed to confer, the Satanic Temple guaranteed that these issues would not be narrowed before being presented to the Court.

## CONCLUSION

For the reasons set forth above, the Secretary respectfully requests that the Court deny the Satanic Temple's motion to compel (DE 203) and other motions to conduct new discovery (DE 189, 190, 192, 199).

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

Vincent M. Wagner (2019071)
 Deputy Solicitor General
Michael A. Cantrell (2012287)
Dylan L. Jacobs (2016167)
 Assistant Solicitors General
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Ph:     (501) 682-2007
Michael.Cantrell@ArkansasAG.gov

Hiram Sasser
Michael Berry
Lea Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel:  (972) 941-6162
Fax:  (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Attorneys for Secretary of State John Thurston*