*** Redacted Public Document[1] ***

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

Donna Cave, Judith Lansky,                                    Plaintiffs,
Pat Piazza, and Susan Russell,


Anne Orsi, American Humanist                    Consolidated Plaintiffs,
Association, Freedom From
Religion Foundation, Inc.,
Arkansas Society of Freethinkers,
Joan Dietz, Gale Stewart, Rabbi
Eugene Levy, Rev. Victor H. Nixon,
Teresa Grider, and Walter Riddick,


The Satanic Temple, Doug Misicko                        Intervenors,
aka "Lucien Greaves," and Erika
Robbins,


v.                          No. 4:18CV00342 KGB/BD


John Thurston, Arkansas Secretary of State,
in his official capacity,                                Defendant.

*** Redacted Public Document ***

### Brief in Support of Defendant's Motion to Compel
### Responsive Documents Withheld by the Satanic Temple

This motion presents two issues: first, the Satanic Temple's improper withholding of responsive correspondence based on bogus assertions of the attorney-client and work-product privileges and, second, the Satanic Temple's continuous efforts to evade producing tax documents it

---

[1] The Secretary filed an unredacted version of this brief under seal because it refers to facts contained in the Satanic Temple's November 22, 2021 privilege log, which the Satanic Temple has designated, without the Court's permission or a showing of good cause, as "confidential." Despite the Secretary's request, the Satanic Temple has refused to withdraw that designation. (*See* Ex. 16 at 3, 7, 9, 12). The Secretary continues to dispute that the privilege log is confidential.

now admits having after previously claiming it has "no responsive documents." But-for the Satanic Temple's duplicity, these issues would never have arisen and certainly would not need to be presented to the Court for resolution at this point in the litigation. Secretary Thurston respectfully requests that the Court require the Satanic Temple to produce, by a date certain, the withheld responsive correspondence and the withheld tax or financial documents for all of its corporate entities.

**FACTS**

### A. The Satanic Temple improperly asserts the attorney-client and work-product privileges for correspondence relevant to the Secretary's defenses.

In January 2020, the Secretary determined that correspondence between either of the Satanic Temple's managers (i.e., Doug Misicko or Cevin Soling), on one hand, and either of the Arkansas witnesses Erika Robbins or Mason Hargett, on the other, was relevant to, and needed for, his defenses against the Satanic Temple's claims. Therefore, on January 29, 2020, the Secretary served its Requests for Production Nos. 8 and 9 (Ex. 8 at 3), seeking that correspondence. The Secretary sought to obtain these documents in time for depositions. But on March 1, 2020, the Satanic Temple refused to produce any of the correspondence or a privilege log. (Ex. 9 at 5-6). The Secretary conferred with the Satanic Temple by means of letter on April 18, 2020, which explained the deficiencies of the Satanic Temple's objections. (Ex. 13) The Satanic Temple restated its objections on April 22 in discovery correspondence that it improperly designated "confidential" under the terms of the protective order. (*See* Ex. 14).[2]

---

[2] The Satanic Temple improperly designated its April 22, 2020 discovery correspondence "confidential" without a showing of good cause or the Court's permission. Then, just as arbitrarily, it suddenly withdrew that designation (again, without seeking the Court's approval) and simultaneously filed it publicly on the docket. *See* DE 132 (describing the Satanic Temple's abuse of the Court's protective order).

The Secretary limited his requests to correspondence taking place between January 1, 2015, and the Court's grant of the Satanic Temple's amended motion to intervene on December 17, 2018, and filed a motion to compel.  (DE 124 at 10-12; *see* DE38).  This Court granted the Secretary's motion and overruled the Satanic Temple's objections.  (DE 172 at 35).  The Court directed that "document production as required by this Court's Order (Dkt. No. 172) will begin immediately," and it ordered the Satanic Temple to produce a privilege log of any withheld documents.  (DE 175 at 1-2).

 On November 22, 2021, the Satanic Temple produced a set of correspondence that, again without the Court's permission or a showing of good cause, it designated as "confidential."  It simultaneously produced a privilege log listing ████████████, concerning which it makes a blanket assertion of both attorney-client privilege and the work-product doctrine.  *See* Confidential Privilege Log filed Under Seal on December 15, 2021 (DE 210).  As explained in the argument below, these ████ are directly relevant to Secretary Thurston's defenses and the Satanic Temple's privilege claims are improper.

The Satanic Temple also designated its privilege log itself "confidential" without the Court's permission or a showing of good cause.  It claims that the log contains "identities of TST membership and decisionmakers" and "addresses information that [the Satanic Temple] does not want public."  (Ex. 16 at 7).  But the Satanic Temple has expressly "withdr[awn] the assertion of associational privilege" (Ex. 16 at 2).  Further, "good cause" under Rule 26(c) is not established based on a mere desire to prevent facts from being public that are relevant to the lawsuit that it has itself brought.

Given counsel for the Satanic Temple's refusal to confer by phone (discussed below), the Satanic Temple's designation of its privilege log as "confidential" has impeded the Secretary's

ability to confer concerning the withheld responsive documents.  (*See* Ex. 16 at 14, 17).  The Secretary specifically requested that the Satanic Temple withdraw its "confidential" designation of its privilege log in light of the need to present the dispute concerning the withheld correspondence to the Court, (Ex. 16 at 14, 17), but the Satanic Temple refused.  (Ex. 16 at 8, 12).

### B.    The Satanic Temple has a long history of hiding information relevant to its identity and purported "religious" character.

Seeking to test the basis for the Satanic Temple's claims concerning its identity and purported "religious" character, the Secretary served his first set of discovery on the Satanic Temple on June 29, 2019.  Request for Production No. 2 sought "year-end budgets for the years 2015, 2016, 2017, and 2018, and a copy of the Satanic Temple's current operating budget,"[3] and Request for Production No. 3 sought "a copy of the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018."  (Ex. 1 at 2).  Again, the Secretary sought to obtain these documents in time for depositions.  (*See* Ex. 4 at 3).

The Satanic Temple responded to the Secretary's requests with an unsigned response that stated generic objections of relevance and proportionality.  (Ex. 2 at 3).  That response failed to "state whether any responsive materials are being withheld on the basis of that objection" as specifically required by Rule 34(b)(2)(C).  Defense counsel delineated the deficiencies of the Satanic Temple's response in a July 26, 2019 letter (Ex. 3 at 4-5) as well as during a two-hour-long conference call with counsel for the Satanic Temple on August 5, 2019.  The Satanic Temple produced nothing.

---

[3] The request included, "among other things, the Satanic Temple's sources of income, liabilities, categorized expenditures, and recipients of the Satanic Temple's tax-exempt contributions." (Ex. 1 at 2).

Then, in another unsigned response dated September 26, 2019, the Satanic Temple

simply restated its relevance objection, again without stating whether it was withholding any re-

sponsive documents.  (Ex. 5 at 4).  So, on October 22, 2019, defense counsel sent another letter

to confer about Request for Production Nos. 2 and 3.  (Ex. 6 at 3).  Counsel for the Satanic Tem-

ple responded by email on November 7, 2019, indicating that the Satanic Temple would not pro-

duce any responsive documents.  (Ex. 7 at 1).

The Secretary filed a motion to compel on December 2, 2019.  (DE 93).  On March 1,

2020, the Court entered an Order that stated, in part:

> The Court notes that "[g]enerally, [Internal Revenue Code ("IRC")] §
> 501(c)(3) organizations must file an annual informational tax return on Form 990
> or 990–PF."  *American Atheists, Inc. v. Shulman*, 21 F. Supp. 3d 856, 860 (E.D.
> Ky. 2014) (citing 26 U.S.C. § 6033(a)(1); 26 C.F.R. § 1.6033–2(a)(2)(i)).  "Pursu-
> ant to 26 U.S.C. § 6033(b), an informational tax return shall be filed annually and
> include the § 501(c)(3) organization's (1) gross income for the year; (2) expenses
> attributable to such income and incurred within the year; (3) disbursements within
> the year for the purposes for which it is exempt; (4) a balance sheet showing its
> assets, liabilities, and net worth as of the beginning of such year; (5) the total of the
> contributions and gifts received by it during the year, and the names and addresses
> of all substantial contributors; (6) the names and addresses of its foundation man-
> agers and highly compensated employees; (7) the compensation and other pay-
> ments made during the year to each individual described in paragraph six; and other
> various requirements specific to different types of § 501(c)(3) organizations."  *Id.*
> at 860 n.1.

DE 116 at 22-23.  The Court specifically "order[ed] the Satanic Temple to respond to Request

for Production No. 3" seeking "the Satanic Temple's state and federal tax returns for 2015, 2016,

2017, and 2018."  (DE 116 at 22, 23).  The Court ruled that, "depending on the information dis-

closed in response to Request for Production No. 3, Secretary Thurston may request that the

Court reconsider its ruling with respect to Request for Production No. 2."  (DE 116 at 24).

On March 10, 2021, on timely and proper notice (*see* Ex. 19) and without objection, Sa-

tanic Temple comanager Doug Misicko testified in his 30(b)(6) capacity concerning the Satanic

Temple's four corporate entities: the United Federation of Churches, LLC; Reason Alliance,

Ltd.; the Satanic Temple, Inc.; and Cinephobia, LLC.  (*See, e.g.*, Ex. 10).   The next day, during Mr. Misicko's personal-capacity deposition, the Court held a teleconference to resolve various disputes concerning the deposition.  During that teleconference, defense counsel noted that discovery had revealed that the Satanic Temple identified itself with its various affiliate entities and asked the Court to clarify that their tax documents were subject to discovery.  The Court directed defense counsel to make a specific request for the documents for the tax returns of the affiliates.

In the days immediately following Mr. Misicko's depositions on March 10 and 11, 2020, the COVID-19 pandemic descended upon Arkansas.  On March 17, 2020, defense counsel made a written request to counsel for the Satanic Temple to produce "state and federal tax returns for 2015, 2016, 2017, and 2018 for the Satanic Temple and its affiliates."  (Ex. 11 at 2-3).  Although this Court has subsequently ruled that formal requests for production were required (DE 172 at 33-34), at the time defense counsel believed that his March 17 follow-up written request for the documents was sufficient to comply with the Court's direction during the hearing.

Defense counsel's belief was based on memory alone due to the unavailability of counsel's notes taken during the March 11, 2020 deposition-dispute teleconference with the Court. The Satanic Temple did not respond to defense counsel's March 17 request and effort to confer, and more than three weeks passed.  So on April 10, defense counsel served another letter.  (Ex. 11 at 1-2).  As defense counsel explained in his April 10, 2020 discovery correspondence, "due to Covid-19, the Attorney General's offices have been closed for the past four weeks.  In particular, I have been locked out and unable to access my office and many of my files since a day or two after Doug Misicko's deposition.  This closure has significantly handicapped our work." (Ex. 11 at 1).  Only then—well over 30 days since the Court's March 1 Order—did the Satanic Temple belatedly serve a response to Request for Production no. 3 with the dissembling claim,

"'The Satanic Temple' is not a discrete entity with tax returns.  Intervenors thus have no responsive documents."  (Ex. 12 at 5).

The Secretary again raised the Satanic Temple's refusal to produce tax documents by motion before the close of discovery.  (DE 124 at 7-10).  The Court's October 22, 2021 Order on that motion clarified the Court's directive "that Secretary Thurston propound new requests for production specifically seeking tax returns for the years he seeks to specify from the affiliates he seeks to specify."  (DE 172 at 33).  Accordingly, the Secretary promptly prepared and served supplemental requests.  (Ex. 15).  Those supplemental requests specifically requested tax returns for the four corporate entities that Mr. Misicko testified about, on timely and proper notice and without objection, during the Satanic Temple's 30(b)(6) deposition.  (*See id.*; Ex. 19).

On December 2, 2021, the Satanic Temple served a response to the Secretary's Supplemental Requests for Production.  That response had the erroneous heading "Certificates of service for subpoenas to Rapert and the AHHF."  (Ex. 17).  Again, the Satanic Temple produced nothing.  It made blanket objections only to timeliness, claiming that the requests "were sent after the discovery deadline and not supported by good cause to modify the deadline."  (*Id.*).

### C.      The Secretary's most recent efforts to confer on the issues in dispute.

On November 30, 2021, defense counsel and counsel for the Satanic Temple agreed to arrange a teleconference to discuss discovery.  (Ex. 16 at 21).  But counsel for the Satanic Temple abruptly cut off communications and then, on December 3, flatly refused to confer with defense counsel by phone and became increasingly uncooperative.  (*See* Ex. 16 at 18-20).  Counsel for the Satanic Temple stated that he was acting in reprisal for the Secretary's filed response to the Satanic Temple's untimely discovery motions.  (Ex. 16 at 19).

Unable to confer by phone, then, on December 6, defense counsel sent counsel for the Satanic Temple a lengthy email in an effort to confer, among other things, on the deficiencies of the

Satanic Temple's privilege log and its timeliness objection to the Secretary's supplemental requests for production.  (Ex. 16 at 14-18).  Counsel for the Satanic Temple answered with an abusive response, stating that he has "exclud[ed] the possibility" that defense counsel is "simply incompetent," repeatedly accusing defense counsel of "lying to the Court"—apparently on the theory that if a falsehood is repeated enough times, it becomes true.[4]  (Ex. 16 at 6).  Defense counsel attempted to confer further to resolve the issues until it became unmistakably clear that the parties were at an impasse.  (Ex. 16 at 4-5 (December 13, 2021 email); Ex. 16 at 2-4 (December 15, 2021 email)).  Contrary to the Satanic Temple's claim that it had "no responsive documents" (Ex. 12 at 5), the Satanic Temple finally admitted that it *was* withholding responsive tax documents.  (Ex. 16 at 12).

Pursuant to Local Rule 7.2(g), the undersigned has in good faith attempted to confer with counsel for the Satanic Temple on the disputed issues, and the parties are unable to resolve their disagreements without the Court's intervention.

## ARGUMENT

## I. The Satanic Temple is withholding responsive correspondence relevant to the Secretary's defenses based on bogus assertions of privilege.

As the Secretary anticipated, correspondence withheld by the Satanic Temple's is relevant to and needed for the purpose of resolving issues in this litigation concerning the Intervenors' standing to bring suit; the efforts to apply for and place the Baphomet statue; the "efforts"

---

[4] In his written discovery correspondence, counsel for the Satanic Temple similarly found occasion to suggest that defense counsel's "ears turn[ed] beet-red" when this Court clarified that the Secretary should request tax documents for the Satanic Temple's affiliates during the March 11, 2020 teleconference.  (Ex. 16 at 6).  Given Mr. Misicko's testimony the day before concerning the affiliate entities, defense counsel was seeking clarification that the affiliates' tax documents were subject to discovery.  It is unclear why counsel for the Satanic Temple would believe that the Court's ruling would have somehow upset defense counsel.  Counsel for the Satanic Temple's response concocted other allegations, which—although false and senseless—need not detain the Court at this juncture.

(such as they were) to obtain support for the Baphomet statue in the General Assembly; and related issues.  The Secretary has no other way to obtain this information, and the Court should require that the Satanic Temple produce the responsive documents.

**A.      The Satanic Temple makes baseless blanket assertions of attorney-client privilege.**

**1.      The Satanic Temple has waived attorney-client privilege for correspondence related to ▮▮▮▮▮▮▮▮.**

The Satanic Temple has made a blanket assertion of attorney-client privilege for every document it has withheld.  But the Satanic Temple did not ▮▮▮▮▮▮▮▮▮▮▮ ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ The Satanic Temple chose not to address that issue in its follow-up April 22, 2020 response.  (*See* Ex. 14 at 1-2).

The Satanic Temple omission of attorney-client privilege for ▮▮▮▮▮▮▮▮ correspondence was not inadvertent or unknowing.  Rather, the Satanic Temple likely declined to assert attorney-client privilege for it because it recognized that these communications could not even in principle be protected by the attorney-client privilege.  In any case, the Satanic Temple's blanket objection to producing this correspondence is barred by its waiver of any attorney-client-privilege-based objection.  There is no legitimate basis for withholding these documents.

**2.      The attorney-client privilege does not attach to any of the correspondence and in any event would have been waived.**

Again, the Satanic Temple has made a blanket assertion of attorneyclient privilege for every document it has withheld.  Yet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████

████████████████████████████████████████████

█████   "As the party seeking to assert the privilege," the Satanic Temple "has the burden of showing that the privilege applies, and [it] must show that the statements at issue were 'made for the purpose of facilitating the rendering of legal services to the client." *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020).  Further, because "the privilege, where it exists, is absolute," its application "is strictly construed." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977).

"In order for the privilege to be applicable, the parties to the communication in question must bear the relationship of attorney and client." *Id.*  But the only documents listed in the privilege log that evince even the *possibility* of being communications between an attorney and a client are ██████████████████████████████████████████████████ ████████████████████████████████████████   Therefore, the privilege automatically does not attach to any of the other ██████████ and they should have been produced.

But attorney-client privilege does not attach even to ██████████████████████████ ███ for two independent reasons.  First, there is no adequate basis for believing these communications were made within the scope of any attorney-client relationship ████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████   "[T]he attorney-client privilege is narrowly construed and 'protects only those disclosures—necessary to obtain informed legal advice—which might

10

not have been made absent the privilege.'"  *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir.

2020) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

The Satanic Temple urges that 

(*See* DE 17 (the Satanic Temple's motion to inter-

vene, filed July 12, 2018)).  Therefore, the Satanic Temple cannot rely on

"A communication is not privileged simply because it is made by or to a person who hap-

pens to be a lawyer."  *Diversified Indus., Inc.*, 572 F.2d at 602.  For the privilege to attach to a

communication, "the attorney must have been engaged or consulted by the client for the purpose

of obtaining legal services or advice services or advice that a lawyer may perform or give in his

capacity as a lawyer, not in some other capacity."  *Id.*  Again, "[t]he burden of proof rests on the

person asserting the privilege to show that the consultation was a professional one."  1 *McCor-

mick On Evidence*, sec. 88 (8th ed.).  Where one consults an attorney not as a lawyer but as a

business adviser or mere agent, "the consultation is not professional nor the statement privi-

leged."  *Id.*

Despite the Secretary's specific request (*see* Ex. 16 at 15), the Satanic Temple has re-

fused to state who (among the participants in the withheld correspondence) it claims had an at-

torney-client relationship with whom, the reason for the formation of any such relationship, or at

what times each such relationship existed.  (Ex. 16 at 9).  Because the Satanic Temple cannot

carry its burden to show that the ██████ were sent within the scope of an attorney-client relationship, the privilege does not attach to them.

The second reason why the privilege does not attach to ██████  ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ "The attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such a waiver to all communications on the same subject matter." *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999); *see Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985) ("A client may waive the attorney-client privilege, and may do so either expressly or by implication.").[5]  Further, "the Eighth Circuit rejects the requirement of knowing waiver." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, No. CIV. 03-5033-KES, 2006 WL 8453926, at *4 (D.S.D. Apr. 13, 2006) (citing *Gray v. Bicknell*, 86 F.3d 1472, 1483 (8th Cir. 1996) (analyzing the issue in a context where state law governed)).

---

[5] In his December 16, 2021, discovery correspondence, counsel for the Satanic Temple falsely claimed that it "refrained from arguing that [the Secretary's] . . . privilege log waived the claims of attorney-client privilege and work product privilege," suggesting that the Secretary "would do well to return that professional courtesy."  (Ex. 16 at 2).  This is another demonstrable falsehood.  *Only 15 days earlier*, the Satanic Temple filed a motion to compel, arguing that "[t]he Court should find the [Secretary's] assertions of privilege waived" (DE 203 at 7), and requesting that "this Court enter an order finding that Secretary Thurston waived the claims of privilege relating to the documents" listed in the Secretary's privilege log.  (DE 203 at 10).  As the Secretary noted in his response to that motion to compel (DE 208 at 9), it is remarkable that the Satanic Temple has taken to repeatedly accusing the Secretary of "lying to the Court" (Ex. 16 at 6; *see id.* at 19; DE 206 at 2, 15), when the Satanic Temple's own statements are so frequently not only false but demonstrably so.

The attorney-client privilege does not attach to any of the ███ listed in the Satanic Temple's log, and even if it did, it has been waived.  Therefore, the Court should require the Satanic Temple to produce the withheld responsive documents.

      3.        ████████████████████ **are not "privileged persons."**

Citing the Restatement (Third) of the Law Governing Lawyers, sec. 68, 70 (2000) the Satanic Temple has indicated its position that █████████████ are "privileged persons" to whom the attorney-client privilege extends.  (Ex. 16 at 7).  It appears that the Satanic Temple intended to quote part of Restatement section 70 to the effect that the privilege extends to "agents of either [the lawyer or client] who facilitate communications between them."  *See* (Ex. 16 at 7).

As a matter of commonsense, the ███████████████████████ ████████████████████████████ were *not* agents who facilitated communications between the Satanic Temple and an attorney.  Comment f to the Restatement section places this conclusion beyond doubt, stating that "[a] person is a confidential agent for communication if the person's participation is *reasonably necessary to facilitate the client's communication with a lawyer* or another privileged person."  *Id.*, sec. 70 cmt f (emphasis added).  Neither ██████████████ served as any kind of intermediary between the Satanic Temple and an attorney, and neither's presence was needed to facilitate communications between the Satanic Temple and an attorney.  Again, the Satanic Temple "has the burden of showing that the privilege applies, and [it] must show that the statements at issue were made for the purpose of facilitating the rendering of legal services to the client."  *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020).  That cannot be done.  So ████████████ █████████ are not "privileged persons" even under the Restatement definition of that term.

Because the correspondence is not privileged—and for the additional reasons set forth below in the analysis of the Satanic Temple's baseless assertion of the work-product doctrine—the Court should require the Satanic Temple to produce all of the withheld responsive documents by a date certain.

**B.      The Satanic Temple's blanket work-product claims are equally baseless.**

The work-product doctrine's purpose is to protect *an attorney's* ability to prepare documents in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (doctrine protects against "unwarranted inquiries into the files and the mental impressions of an attorney."). The Satanic Temple, having made a blanket assertion of work-product privilege, bears the burden of establishing proof of each element for each item. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997); *In re Grand Jury Proc. (Malone)*, 655 F.2d 882, 887 (8th Cir. 1981). It cannot carry that heavy burden.

> **1.      The Satanic Temple cannot carry its burden to establish that the withheld correspondence is work product.**
>
> *i.      The work-product doctrine does not shield the mental processes of an opposing party.*

Rule 26(b)(3) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Importantly, the Rule's application to a "party or its representative" is not an expansion of the doctrine to protect *the mental processes of parties* in addition to those of their attorneys.  Rather, the doctrine's concern is with exposure of the *lawyer's* mental processes. *See, e.g.*, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) ("Work product protects 'mental processes of the attorney.'" (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975))); *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) ("Rule 26 accords special protection to work product revealing the attorney's mental processes."); *Hickman*, 329 U.S.

at 511 (materials protected are "aptly" termed "the 'Work product of the lawyer.'" (quotation omitted)); *In re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977) (the doctrine "assure[s] that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny"). Therefore, the doctrine does not shield documents that reveal the mental processes merely of an *opposing party*—even if, hypothetically speaking, those documents were created "in anticipation of litigation."

It follows that  do not qualify for work-product protection unless the Satanic Temple can prove that in sending each ▮▮▮ they were acting as "agents for *the attorney*." *Nobles*, 422 U.S. at 238 (emphasis added). "[T]he privilege extends to the work of *the attorney's* agents, not the client's agents." *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007) (emphasis added). Because the doctrine does not protect documents that reveal merely the mental processes of an opposing party, it does not shield the Satanic Temple's withheld ▮▮▮ and the Court should require that they be produced by a date certain.

ii.   *The documents in fact were not created in anticipation of litigation.*

The Satanic Temple also cannot establish that the documents were created in anticipation of litigation. As set forth above, (*See* DE 17 (the Satanic Temple's motion to intervene, filed July 12, 2018)). Further, the earlier ▮▮▮ cannot qualify as documents prepared "in anticipation of

litigation" because at that point the possibility of litigation was simply too remote.  ████████

██████████████████████████████████████████████████ until its second

installation on April 26, 2018.  (Ex 18; Ex. 20).  Even the first installation of the Ten Command-

ments monument did not occur until June 27, 2017.  "[T]he work product rule does not come

into play merely because there is a remote prospect of future litigation."  *Diversified Indus., Inc.*,

572 F.2d at 604.

      Further, ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

      The Satanic Temple cannot carry its burden of showing that the withheld ████ were

prepared in anticipation of litigation, and the Court should require that they be produced.

        *iii.*    ████████████ *is not covered by the work-product doctrine.*

      There can be no plausible argument that ████████████ is either a "party or a party's rep-

resentative" under Rule 26(b)(3).  "[A]ny verbatim non-party witness statements are neither priv-

ileged nor work product and must be produced."  *Schipp v. Gen. Motors Corp.*, 457 F. Supp. 2d

917, 924 (E.D. Ark. 2006).  Therefore, work-product protections do not attach to any corre-

spondence from ████████████, and the Court should require the Satanic Temple to produce all

████████ prepared by him, including ████████████████████████████████████████████

████████████████████████ *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910,

924 (8th Cir. 1997) (noting the holding of *In re California Public Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir.1989), that a "non-party to litigation may not assert work product doctrine.").

  **2.**  **Even assuming for the sake of argument that the withheld ██████ were work product, the Secretary has substantial need for them and cannot otherwise obtain any substantial equivalent.**

  Rule 26 provides that attorney work-product materials "may be discovered if: (i) they are otherwise discoverable" and "(ii) the party shows that it has substantial need for the materials to prepare its case and cannot without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A). Here, the ██████ at issue are otherwise discoverable under Rule 26(b)(1), and they are needed because—as anticipated ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

  Standing requires "direct and unwelcome personal contact with the monument," *Red River Freethinkers v. Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012). But communications tending to show ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ Finally, one thing is clear: the truth concerning the Satanic Temple is rarely what it portrays it to be. ████████████████████████████

████████████████████████████████ *Hickman*, 329 U.S. at 511 (work product "might be useful for purposes of impeachment or corroboration").

The withheld responsive documents are needed for the defense against the Satanic Temple's claims, and the Secretary has no other way to obtain this information.  "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."  *Id*.  Therefore, the Court should require the Satanic Temple to produce all of the withheld responsive documents by a date certain.

## II.    The Satanic Temple's continuous (and contradictory) evasions warrant an order to produce responsive tax documents relevant to the Secretary's defenses.

### A.    The Satanic Temple is withholding responsive tax documents that it has evaded producing for years.

For two-and-a-half years the Secretary has been diligently trying to obtain information to test the basis for the Satanic Temple's claims concerning its institutional identity and purportedly "religious" character.  The Satanic Temple has contorted its legal position this way and that in a constantly evolving effort to evade its discovery obligations.

For example:  The Satanic Temple now admits that *it is withholding responsive tax documents*.  (Ex. 16 at 12).  Yet, when previously responding to a request for "a copy of the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018" (Ex. 12 at 4), it elusively claimed, "'The Satanic Temple' is not a discrete entity with tax returns.  Intervenors thus have no responsive documents."[6]  (Ex. 12 at 5; *see* Ex. 14 at 3).  The Satanic Temple cannot legitimately claim that the Secretary's request should have specified its corporate entities because when re-

---

[6] *Compare* Ex. 12 at 5, where the Satanic Temple asserts (on a single page) both "'The Satanic Temple' is not a discrete entity with tax returns," and "The Satanic Temple is a tax-exempt organization."  *See* Fed. R. Civ. P. 37(a)(4) ("For purposes of [a motion to compel], an evasive . . . response must be treated as a failure to disclose, answer, or respond.").

sponding to a request for production concerning those entities, it still refused to produce any documents, representing to this Court that "the affiliate entities are not parties to this lawsuit. The party is 'The Satanic Temple.'"[7]  (DE 193 at 2).  There, it even claimed that "[t]he *exact name* of the corporation is: THE SATANIC TEMPLE."  (*Id.* (quoting DE 193-1 at 1) (emphasis in original)).  The outcome:  *No matter how a request is framed, the Satanic Temple has evasively asserted that the request is improper and it does not have to produce any documents in response.* *See* Fed. R. Civ. P. 37(a)(4) ("For purposes of [a motion to compel], an evasive . . . response must be treated as a failure to disclose, answer, or respond.").

The Satanic Temple's duplicity has manifested in other ways.  In April 2019, the Satanic Temple stated that it was a tax-exempt "church".  *See, e.g.*, *Satanic Temple Deemed Church by IRS*, Arkansas Times, https://arktimes.com/arkansas-blog/2019/04/26/satanic-temple-deemed-church-by-irs.  Under Internal Revenue Service regulations, a "church" must "be organized and operated exclusively for religious, educational, scientific or other charitable purposes" and its "net earnings may not inure to the benefit of any private individual or shareholder."  *Tax Guide for Churches and Religious Organizations, Publication 1828 (Rev. 8-2015)*, Department of the Treasury Internal Revenue Service, at 6, https://www.irs.gov/pub/irs-pdf/p1828.pdf.  Yet, despite claiming to be a "church," the Satanic Temple still "engage[s] in for-profit commerce" (Ex. 10 at 23 (dep. p. 186); *see id.* at 24-25 (dep. pp. 187, 228)).  So, again, the Satanic Temple tries to have it both ways, asserting that it is both a church and a for-profit enterprise.  (*See id.*)

---

[7] These Satanic Temple made this claim in response to the Secretary's motion to compel responses to its requests seeking documents pertaining to the Satanic Temple's identity and financial organization.  (*See* DE 181 at 2-4 (motion discussing those requests)).  The Satanic Temple has also made this evasive claim in the specific context of the Secretary's requests for the Satanic Temple's affiliates' tax returns.  (*See* Ex. 14 at 3 ("United Federation of Churches, LLC, Reason Alliance Ltd., and Cinephobia LLC may or may not be affiliates of The Satanic Temple, but those entities are not parties to this litigation.")).

Further, although sometimes claiming that the Satanic Temple "is a complex and international organization with local chapters dispersed throughout the world and whose leadership structure is in constant flux" (Ex. 12 at 2), Mr. Misicko testified in his 30(b)(6) capacity that all of the entities in the Satanic Temple constellation are exclusively controlled by himself and Mr. Cevin Soling with no other legal or financial oversight or accountability.  (*See, e.g.*, Ex. 10 at 8-9, 16, 18 (dep. pp. 158-59, 173, 181)).

By offering wildly divergent claims concerning its institutional identity and financial organization—while asserting its purportedly "religious" character as the basis for its claims under the Establishment and Equal Protection Clauses—the Satanic Temple has placed these matters squarely at issue.  Yet the Satanic Temple has consistently refused to produce documents bearing on them.

The Satanic Temple has suggested that to grant the Secretary's motion to compel, a modification of the scheduling order is necessary.  But that is false.  Given the Court's clarification of its direction that the Secretary serve formal requests for production on the Satanic Temple (DE 172 at 33), there is no need to modify the scheduling order.  But, regardless, even if such modification were necessary (and it isn't), the Court should still grant the Secretary's motion because "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001).  As set forth above, the Secretary has diligently sought to obtain documents bearing on the Satanic Temple's institutional identity and financial organization by serving requests for production, making numerous attempts to confer by letter, phone and email, (Exs. 3, 4, 6, 7, 11, 13) and filing (now) three motions to compel those documents.  (*See* DE 93, 124).

If timeliness is an issue, it is because the Satanic Temple's evasive tactics have materially frustrated the Secretary's efforts to obtain the documents that he first began requesting *two-and-a-half years ago*. The Satanic Temple's timeliness objection is simply unsustainable. Therefore, the Secretary respectfully requests that this Court order the Satanic Temple to provide all documents responsive to Supplemental Requests for Productions Nos. 1-4 (Ex. 15).

**B.**    **The Court should consider holding this motion in abeyance pending the Satanic Temple's production of documents responsive to the requests at issue in the Secretary's other pending motion. (DE 181)**

The Secretary does not seek tax returns or other financial documents simply for their own sake. There may be other documents that are more helpful for providing information about the Satanic Temple's institutional identity and legal and financial organization. But in fact the Satanic Temple has stonewalled the Secretary's efforts to obtain those documents as well, which is why they are now the subject of a separate pending motion. (DE 181). If the Satanic Temple were ordered to produce documents responsive to the requests at issue in that motion, then it might be that the Secretary's request for tax returns and other financial documents could be withdrawn. Therefore, the Court should consider granting that motion (DE 181) and holding this motion in abeyance pending the Satanic Temple's production of documents responsive to those requests. If those documents provide the Secretary with sufficient facts bearing on his defenses, then the Secretary would happily withdraw this motion's request for tax and financial records.

**C.**    **Alternatively, the time is ripe to reconsider Request for Production No. 2.**

Finally, the Court's March 1, 2020 Order provided that, "depending on the information disclosed in response to Request for Production No. 3," i.e., tax records, "Secretary Thurston may request that the Court reconsider its ruling with respect to Request for Production No. 2," i.e., end-of-year budgets and related information. (DE 116 at 24). The Satanic Temple has still disclosed nothing whatsoever in response to the Secretary's Request for Production No. 3 or in

response to the Secretary's Supplemental Requests for Production.  Therefore, the time is ripe for requesting reconsideration of Request for Production No. 2.  Accordingly, the Secretary now respectfully requests that, if the Court denies his request to require the Satanic Temple to produce tax documents, the Court reconsider its denial of his motion to compel production of records responsive to his Request for Production No. 2.  As set forth in the Court's March 11 order, that request specifically seeks "year-end budgets for the Satanic Temple for the years 2015, 2016, 2017, and 2018, and the current budget, including but not limited to specific categories of items listed in the request: sources of income, liabilities, categorized expenditures, and recipients of the Satanic Temple's tax-exempt contributions."  (DE 116 at 21-22).

The Secretary specifically limits Request for Production No. 2 to the years 2015, 2016, 2017, and 2018.  But, given the Secretary's diligence and the Satanic Temple's duplicity concerning its responses to the Secretary's requests discussed above, the Secretary asks the Court to require the Satanic Temple to produce the documents requested in Request for Production No. 2 for each of those years from all of its corporate entities: Reason Alliance, Ltd.; the United Federation of Churches, LLC; The Satanic Temple, Inc. (including its predecessor Massachusetts corporate entity named simply "The Satanic Temple"); and Cinephobia, LLC.

CONCLUSION

For the reasons set forth above, the Secretary respectfully requests that the Court require the Satanic Temple to produce, by a date certain, the withheld tax or financial documents for all of its corporate entities and all of the responsive correspondence in its November 22, 2021 privilege log.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

Vincent M. Wagner (2019071)
  Deputy Solicitor General
Michael A. Cantrell (2012287)
Dylan L. Jacobs (2016167)
  Assistant Solicitors General

OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
Michael.Cantrell@ArkansasAG.gov

Hiram S. Sasser, III
Michael D. Berry
Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel:  (972) 941-6162
Fax:  (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Attorneys for Secretary of State John Thurston*