IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| DONNA CAVE, *et al.* | | PLAINTIFFS |
| ANNE ORSI, *et al.*, and | CASE NO. 4:18-CV-342 | CONSOLIDATED PLAINTIFFS |
| THE SATANIC TEMPLE, *et al.* | | INTERVENORS |
| *v.* | | |
| JOHN THURSTON, in his official capacity | | DEFENDANT |

## INTERVENORS' RESPONSE TO MOTION TO COMPEL

COME NOW Intervenors, by and through counsel of record, with a response to Secretary Thurston's motion to compel (docs. 212, 213, and 214). The bulk of the motion raises issues not addressed in a pre-motion good faith effort to confer and should be denied on that ground alone.

The attorney-client privilege applies because the withheld communications were legal strategy discussions to maximize the likelihood of a favorable decree in this case and were among TST's

agents or supporters and TST's general counsel. The attorney-client privilege was timely asserted upon collection, instead of at the initial responses, because the requests did not facially seek attorney-client communications.

The work product doctrine applies because the emails were created under circumstances that litigation was reasonably foreseeable. Secretary Thurston failed to make the requisite showing to overcome the work product doctrine. He offers a relevance argument, but "something more" is required. Even then, he offers no explanation for why he could not have gotten the same information through the depositions.

Secretary Thurston offers no ground to reconsider the previous denial of a motion to compel tax documents from no entity in particular. The Court directed that he send new requests specifying the entities whose documents were sought. He ignored that directive and instead falsely contended that the Court orally modified the request. The motion should be denied in full.

## 1: There was no good faith effort to confer.

The Court should decline to consider several issues in Secretary Thurston's motion because he failed to engage in a good faith effort to confer. A good faith effort to confer is a condition precedent to all discovery motions. FRCP 37(a)(1); LR 7.2(g). The requirement of a good faith effort to confer is to address the "specific issue or issues in dispute," LR 7.2(g), for the purpose of resolving the issue without Court intervention.

We will go on to address each claim below, but the Court could drastically reduce its workload by holding Secretary Thurston to the requirement that he address *all* issues in a genuine ("good faith") effort to limit the issues requiring to his opposing counsel before invoking the Court's attention.

### 1.1: He offered no supporting authority for his claims.

Secretary Thurston's "good faith effort to confer" consisted of conclusory claims which were unsupported by authority, a deficiency which undersigned counsel specifically pointed out. Doc.

212-16 at 7 ("You proffer rule-statements, but you offer no citation to authority for any of your points. This unfairly passes the burden onto me to research your claims.") Because Secretary Thurston did not support his claims with authority before seeking Court involvement, the Court could (and should) disregard his authority here.

### 1.2: He did not address whether the local participants are "privileged persons."

Part of Secretary Thurston's brief asserts that Erika and Mason are not "privileged persons.[1]" Doc. 214 at 13-14. As the Court may recall, Secretary Thurston previously identified them as "[T]he Satanic Temple's local participants." Doc. 124 at 5. This issue is conspicuously absent from his "good faith effort to confer" correspondence, as was required by LR 7.2(g). The Court should disregard this issue here.

---

[1] Secretary Thurston unnecessarily redacts this portion of his brief. Doc. 213 at 13-14. Erika is a party to the litigation and Mason is already publicly identified as a member of TST (he was the sweetheart of the *Hail Satan?* documentary). There is no confidentiality concern about their identities, it is the people who are *not* publicly identified as Satanists we are trying to protect.

### *1.3: He did not contest whether the documents were in fact created in anticipation of litigation.*

Similarly, Secretary Thurston contests in the motion whether the documents were created in anticipation of litigation. Doc. 213 at 15-17.[2] He did not raise this issue in his "good faith" effort to confer correspondence, so this issue is barred.

### *1.4: The asserted defenses are also missing.*

Part of Secretary Thurston's argument entails a claim that he needs this discovery to support his defenses. Doc. 213 at 17-18. The particulars as to what, exactly, the sought-after information is even relevant to is also missing from the "good faith correspondence." Undersigned counsel called out this deficiency, as well. Doc. 212-16 at 6 ("You do not identify any defenses, the elements of those defenses, how the documents are relevant to any of these elements, or why you have no other way to obtain the same information.")

---

[2] It is unclear why Secretary Thurston redacted the particular defenses he claims these documents are relevant to, or the factual claims that he suspects the documents support. Doc. 213 at 17.

## *1.5: The request to reconsider the tax documents ruling is also missing.*

Part of Secretary Thurston's argument requests (again) for the Court to reconsider the denial of the previous motion to compel tax documents from "The Satanic Temple." Doc. 213 at 18-22. This issue is also conspicuously absent from the "good faith" correspondence. It is therefore barred by Rule 7.2(g).

## 2: The attorney-client privilege applies and is not waived.

Secretary Thurston first asserts that the attorney-client privilege does not apply or is waived. Doc. 213 at 9-14. Neither claim is true. Secretary Thurston first asserts waiver, and then addresses whether the privilege applies. It makes more sense to discuss in the reverse order because, logically, waiver is only relevant if the privilege does not apply. If the Court has any question about whether the emails at issue are subject to the attorney-client privilege, the Court should direct an *in camera* review.

*2.1: The privilege applies.*

Secretary Thurston contests whether the privilege applies. Doc. 213 at 9-14. The crux of the argument appears to be that communications are privileged only if the communication is among lawyers. See Doc. 214 at 10-11.[3] Secretary Thurston is wrong. The attorney-client privilege applies with respect to:

> (1) a communication;
>
> (2) made between "privileged persons;"
>
> (3) in confidence; and
>
> (4) for the purpose of obtaining or providing legal assistance for the client.

Restatement (Third) of the Law Governing Lawyers § 68 (2000).

When the client is an organization, the privilege extends to communications that:

> (1) otherwise qualifies as privileged under §§ 68- 72;

---

[3] Secretary Thurston unnecessarily redacts briefing related to a publicly-identified Satanist (TST's general counsel at the time, and counsel of record, Stu de Haan). Curiously, he includes the hearsay "evidence" that supports the very claims which he redacts.

(2) is between an agent of the organization and a privileged person as defined in § 70;

(3) concerns a legal matter of interest to the organization; and

(4) is disclosed only to:

(a) privileged persons as defined in § 70; and

(b) other agents of the organization who reasonably need to know of the communication in order to act for the organization.

Restatement (Third) of the Law Governing Lawyers § 70 (2000).

A "privileged person" is "the client's lawyer, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation." Restatement (Third) of the Law Governing Lawyers § 70 (2000). In the organizational setting, a "privileged person" is someone who communicates with the lawyer on behalf of the organization, as well as other business associates who communicate, in the presence of the client, with the lawyer. Id. at cmt. f.

To summarize the facts at issue, the emails at issue pertain to

forming the legal strategy which would best position TST as to the legal strategy which would maximize the likelihood that a Federal court–this Court–would order the State to emplace the Baphomet monument. Doc. 212-16 at 1. The emails are between TST's directors, local participants, or other supporters (all "privileged persons,") and Stu de Haan (TST's general counsel at the time, and counsel of record in this very case).

The attorney-client privilege applies because the communications are about TST legal business (the efforts to maximize the likelihood of a favorable injunction in this very case), are confined to TST's agents (TST's directors, local participants, and volunteers) or other confidential business associates (TST's supporters), and are communications with TST's in-house lawyer at the time (Stu de Haan).

Secretary Thurston argues that Stu de Haan cannot be the "attorney" predicate for the attorney-client privilege because he has also served in non-attorney roles for TST. See doc. 212-21. This argument is defeated by the point that communications with in-house

counsel are protected by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). In-house counsel are not always strictly limited to performing litigation roles or strictly providing legal advice, they are generally valued business partners as well. That blurry line does not deprive the organization of the attorney-client privilege.

## *2.2: The privilege was not waived.*

Next Secretary Thurston argues that the privilege is waived. Doc. 213 at 12-14. The crux of the argument is that because the emails were sent or copied to someone other than a TST director, they were sent to a "third party." Again, Secretary Thurston is wrong. The question is not whether a "third party" received the email but whether the third party is a "privileged person." Restatement (Third) of the Law Governing Lawyers § 70, cmt. f (2000). All of the individuals who received a copy of the email were directly an agent of TST (TST's directors, local participants, and volunteers) or other confidential business associates (TST's supporters). They are

"privileged persons" within the meaning of the rule.

Particularly, Secretary Thurston takes issue with Erika and Mason, who he previously (and correctly) characterized as TST's local participants. Doc. 124 at 5. The argument appears to be that because they are not directors of TST, they cannot be intermediaries for communication. Doc. 213 at 13. This is nonsense. They are the boots-on-the-ground agents of TST in the course of seeking the emplacement of the Baphomet monument. When they communicate with TST's lawyer about TST's business, they were communicating "as" TST. They are plainly "privileged persons" within the rule.

### 2.3: The privilege was timely asserted.

Secretary Thurston also attacks whether the privilege was timely asserted as to Mason. Doc. 213 at 9. The privilege was timely asserted because, upon reviewing the correspondence at issue, a subset involved legal discussions about the Baphomet monument with TST's general counsel at the time.

Waiver applies when a lawyer from whom a privileged

communication is sought fails to invoke the privilege when doing so appears reasonably appropriate unless the client has waived the privilege or authorized the lawyer to waive it. Restatement (Third) of the Law Governing Lawyers § 86(1)(b) (2000). The person asserting waiver must assert it and, if the assertion is contested, must demonstrate each element of the waiver. Restatement (Third) of the Law Governing Lawyers § 86(3) (2000).

It was not "reasonably appropriate" in the initial responses to the discovery requests because, facially, the attorney-client privilege did not apply to the request (seeking correspondence between a TST director and Mason, not TST's attorney and Mason). Upon review of the correspondence in question, we produced that part which was not privileged and objected and supplied a privilege log as to the remainder.

### 3: Work product applies.

Secretary Thurston next attacks whether work product applies to the documents. Doc. 213 at 14-18. The core issue is whether they

were created when litigation was reasonably foreseeable. If the Court has any question about whether the emails at issue are subject to the work product doctrine, the Court should direct an *in camera* review.

> The work product doctrine if the material meets three tests:
>
> > (1) "documents and tangible things;"
> >
> > (2) "prepared in anticipation of litigation or for trial;" and
> >
> > (3) "by or for another party or by or for that other party's representative."

Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.); FRCP 26(b)(1); see also *Hickman v. Taylor*, 329 U.S. 495 (1947).

### *3.1: Work product shields the mental processes of a party.*

Secretary Thurston first asserts that work product only shields the mental processes of a party's attorney (not the party or its representatives). Doc. 213 at 14-15. This is defeated by the fact that TST's in-house counsel is on all of the emails withheld. Moreover, Secretary Thurston is wrong: "The 1970 amendment also extended the work product protection to documents and things prepared for

litigation or trial *by or for the adverse party itself or its agent.*" Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.) (emphasis added); see also FRCP 26, Committee Notes, 1970 Amendment:

> Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, *not merely* as to materials prepared by an attorney, *but also* as to materials prepared in anticipation of litigation or preparation for trial *by or for a party or any representative acting on his behalf*. The subdivision then goes on to protect against disclosure the mental impressions, conclusions, opinions, or legal theories concerning the litigation of an attorney *or other representative of a party*.

The argument is both facially invalid and wrong.

Public relations efforts surrounding a claim is protectible work product. *Pemberton v. Republic Servs., Inc.*, 308 F.R.D. 195, 202 (E.D. Mo. 2015) (collecting cases). The information at issue surrounds TST's public relations efforts, as informed by TST's general counsel at the time. The materials are plainly within the rule.

*3.2: The documents were created in anticipation of litigation.*

Next, Secretary Thurston asserts without citation that the

documents were not created in anticipation of litigation. Everyone, importantly TST's general counsel, knew full well that a court order would be required to force Arkansas to emplace a monument depicting an occult figure, proffered by a Satanic organization, next to its beloved Ten Commandments monument. See Restatement (Third) of the Law Governing Lawyers § 87, cmt. i (2000) (the standard is whether litigation is *reasonably* anticipated). The Arkansas fact pattern is even a blatant carbon copy of the Oklahoma controversy, which was litigated and for which the Baphomet monument was created in the first place. There was far more than a "remote prospect" of future litigation and its asinine for Secretary Thurston to argue otherwise.

### 3.3: Mason is "TST" for purposes of the work product rule.

Secretary Thurston also asserts that Mason is not a "party or a party's representative." Doc. 213 at 16-17. Secretary Thurston is wrong. As TST's agent, Mason is treated as TST for purposes of the work product rule. FRCP 26(b)(3) ("by or for another party or its

representative (including the other party's ... agent).")

*3.4: The emails do not support any of the claimed defenses.*

Next, Secretary Thurston argues that he has a "substantial need" for the information sought. Doc. 213 at 17. To obtain discovery notwithstanding that the discovery is protected work product:

> (1) the party must show "substantial need," seemingly something more than relevancy sufficient to satisfy Rule 26(b)(1),
>
> (2) the party would suffer "undue" hardship, and not merely some expense or inconvenience, to obtain
>
> (3) the "substantial equivalent."

Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2025 (3d ed.). A party cannot make the requisite showing if the party seeking discovery can obtain the desired information by taking the deposition of witnesses. Id.; *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) ("discovery of work product will be denied if a party can obtain the information he seeks by deposition"); *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984)

(same). Opinion work product (*i.e.*, the mental impressions of a lawyer, see Restatement (Third) of the Law Governing Lawyers § 87(2) (2000)) is "never discoverable." *Hisaw v. Unisys Corp.*, 134 F.R.D. 151, 152 (W.D. La. 1991)

Secretary Thurston half-heartedly argues for two defenses. First, he argues the documents will tend to negate TST's standing. Doc. 213 at 17. The argument is that these emails have an imaginary tendency to support an argument that TST actually welcomed the Ten Commandments monument. Doc. 213 at 17.

This argument is just a rehash of why the information sought is relevant in the first place, it fails the "something more" requirement. *See Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 671 (S.D. Cal. 2000) ("a party's desire to find *corroborating evidence is insufficient to establish substantial need*") (emphasis in original).

Further, the argument fails the "substantial hardship" requirement because Secretary Thurston deposed–at length–Erika, Mason, and Lucien Greaves (both as TST and in his personal capacity). He took advantage of the opportunity to examine, under oath and with

the benefit of audio/video recording, whether TST and its local participants were *really* offended by the Ten Commandments Monument. They really were offended by it. The argument fails.

Next, Secretary Thurston asserts that the emails will support the defense that TST's Baphomet Monument was rejected because of TST's self-sabotage, not out of legislative prejudice. Doc. 213 at 17. Again, this is just an argument for relevance, it explicitly seeks corroborating evidence, which fails the "something more" test. *Fletcher*, 194 F.R.D. at 671. And, as before, Secretary Thurston offers no explanation why he could not have deposed Erika, Mason about TST's purported self-sabotage. Both proffers fail to meet the required showing, so a motion to compel is improper.

## 4: Nothing has changed about the tax documents.

Next, Secretary Thurston argues for reconsideration of the Court's denial of a previous motion to compel tax documents which, *as written*, were not directed to any particular entity. Doc. 213 at 18-22; doc. 172 at 33-34 (noting that the subject request was

not directed to TST *and its affiliates*, that the Court had directed Secretary Thurston to issue new requests seeking the information from the particular entities, and that the Court did not orally modify the request as Secretary Thurston's motion contended).

Recall, the subject request states: "Please produce a copy of the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018." Doc. 212-12 at 4 (RFP 3).

We responded:

> "The Satanic Temple" is not a discrete entity with tax returns. Intervenors thus have no responsive documents. In the telephonic discovery hearing on March 11, the Court directed Defendant to issue new discovery requests to the entities which the State seeks tax returns.

Doc. 212-12 at 5 (April 10, 2020 supplement).

Secretary Thurston complains that this was evasive. Not so. "The Satanic Temple" is an umbrella term for a religion which is given legal structure by a constellation of affiliate entities. There is no entity named "The Satanic Temple" anymore because the errantly-named "The Satanic Temple" corrected its name to "The

Satanic Temple, Inc." See **Exhibit 1** (articles of amendment, dated May 24, 2019, renaming the organization from "The Satanic Temple" to "The Satanic Temple, Inc.")

The parties have been talking about "The Satanic Temple, Inc." since at least March 11, 2020. Doc. 212-13 at 3. There, Secretary Thurston references the March 11 discovery conference and recognized "The Satanic Temple, Inc." as a distinct entity from "The Satanic Temple." Around that same time, undersigned counsel specified that TST's discovery responses were verified, "as director of The Satanic Temple, Inc." Doc. 212-14 at 3.

Secretary Thurston did not comply with this Court's directive and instead filed a frivolous motion to compel. When that failed, he issued late discovery requests. When we refused to provide the documents (citing the fact that Secretary Thurston should have followed the Court's directive instead of filing the lie-based motion to compel), he complains that *"No matter how a request is framed"* he cannot seem to get the documents he is looking for. Doc. 214 at 19 (emphasis in original). We are not here to educate our opposing

counsel on how to do discovery. There are nine attorneys of record. We expect that one of them knows how to draft a discovery request. Had Secretary Thurston actually engaged in a good faith effort to confer on this issue–as required by LR 7.2(g)–we could have addressed all of this without taking up judicial resources.

Secretary Thurston next takes issue with a set of four factual statements which he cannot seem to grasp. Particularly, that a church can lawfully engage in for-profit commerce (see generally IRS Pub. 598, which explains the unrelated business income tax on exempt organizations); and that a religion can have chapters throughout the world, with middle-managers in constant flux, while simultaneously having consistent leadership at the highest level.

It is unclear how these factual statements have any bearing on the request to compel tax documents for no entity in particular. But Secretary Thurston seems to think it is grounds for the Court to compel discovery on a request which was never timely issued. About a year-and-a-half after discovery closed, Secretary Thurston issued the requests and we objected on timeliness grounds. Doc.

212-17. Curiously, he does not move to extend the discovery deadline to permit the requests. Doc. 213 at 20 (falsely asserting that the Court clarified its directive to permit tardy requests); but see doc. 172 at 33-34 (exclusively addressing the directive in the past tense).

**WHEREFORE** Intervenors pray this Court deny the motion in full. Because this is the *third* motion to compel tax documents, the Court should order Secretary Thurston's attorneys of record to pay the undersigned an attorney's fees for responding to this motion. FRCP 37(a)(5).

Respectfully submitted on
January 3, 2022,
on behalf of Intervenors

By:   Matthew A. Kezhaya, ABA # 2014161

KEZHAYA LAW PLC
1202 NE McClain Rd
Bentonville, AR 72712
phone:   (479) 431-6112
email:   matt@kezhaya.law

## CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on January 3, 2022 which sends service to registered users, including all other counsel of record in this cause. s/ Matthew A. Kezhaya