***R<small>EDACTED</small> P<small>UBLIC</small> D<small>OCUMENT</small>[1]***

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | |
|---|---|
| D<small>ONNA</small> C<small>AVE</small>, J<small>UDITH</small> L<small>ANSKY</small>,<br>P<small>AT</small> P<small>IAZZA</small>, and S<small>USAN</small> R<small>USSELL</small>, | P<small>LAINTIFFS</small>, |
| A<small>NNE</small> O<small>RSI</small>, A<small>MERICAN</small> H<small>UMANIST</small><br>A<small>SSOCIATION</small>, F<small>REEDOM</small> F<small>ROM</small><br>R<small>ELIGION</small> F<small>OUNDATION</small>, I<small>NC</small>.,<br>A<small>RKANSAS</small> S<small>OCIETY OF</small> F<small>REETHINKERS</small>,<br>J<small>OAN</small> D<small>IETZ</small>, G<small>ALE</small> S<small>TEWART</small>, R<small>ABBI</small><br>E<small>UGENE</small> L<small>EVY</small>, R<small>EV</small>. V<small>ICTOR</small> H. N<small>IXON</small>,<br>T<small>ERESA</small> G<small>RIDER</small>, and W<small>ALTER</small> R<small>IDDICK</small>, | C<small>ONSOLIDATED</small> P<small>LAINTIFFS</small>, |
| T<small>HE</small> S<small>ATANIC</small> T<small>EMPLE</small>, D<small>OUG</small> M<small>ISICKO</small><br>aka "L<small>UCIEN</small> G<small>REAVES</small>," and E<small>RIKA</small><br>R<small>OBBINS</small>, | I<small>NTERVENORS</small>, |
| v.                No. 4:18CV00342 KGB/BD | |
| J<small>OHN</small> T<small>HURSTON</small>, Arkansas Secretary of State,<br>in his official capacity, | D<small>EFENDANT</small>. |

***R<small>EDACTED</small> P<small>UBLIC</small> D<small>OCUMENT</small>***

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
### RESPONSIVE DOCUMENTS WITHHELD BY THE SATANIC TEMPLE

The Satanic Temple's response fails to carry its burden to justify refusing to produce the responsive documents. Seeking to tar Secretary Thurston with its own uncooperative conduct, the Satanic Temple first asserts yet another demonstrable falsehood that the Secretary did not confer on the issues in dispute. But most notable is that the Satanic Temple now concedes that

---

[1] The Secretary filed an uredacted version of this reply under seal because it refers to facts contained in the Satanic Temple's November 22, 2021 privilege log, which the Satanic Temple has designated, without the Court's permission or a showing of good cause, as "confidential." Despite the Secretary's request, the Satanic Temple has refused to withdraw that designation. (*See* DE 212-16 at 3, 7, 9, 12). The Secretary continues to dispute that the privilege log is confidential.

the withheld correspondence concerns not legal advice but "public relations efforts"—matters that do not implicate attorney-client or work-product protections. Further, although no privilege attaches to any of the withheld documents, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in particular, are not privileged. The Satanic Temple misguidedly relies almost exclusively on a Restatement to justify its blanket assertion of attorney-client privilege for literally every person involved—but even the Restatement's broad description of the privilege cannot be stretched that far. Finally, production of the withheld documents is also appropriate because attempts to obtain those very documents through both depositions and other means have been consistently frustrated throughout the course of discovery—despite the Secretary's diligent efforts. For all the reasons set forth here and in the Secretary's principal brief, the Court should require the Satanic Temple to produce, by a date certain, all of the withheld responsive documents at issue in the Secretary's motion.

**I.      The Secretary unquestionably conferred on the issues in dispute.**

The Satanic Temple's assertion that the Secretary made "no good-faith effort to confer" (DE 217 at 3) is unquestionably false. On December 3, 2021, defense counsel wrote to counsel for the Satanic Temple seeking to confer on these very issues:

> Following up on my last message from yesterday morning—We do need to confer at least regarding the Intervenors' Nov. 22 production and privilege log as well as the objections the Intervenors served yesterday to Defendant's supplemental RFPs. I can be prepared either Monday or Tuesday of next week, but I need to know what (if anything) in addition to these things you will want to discuss by phone, so please let me know both that and a time that will work for you. Thank you.

(DE 212-16 at 20). Counsel for the Satanic Temple then flatly refused to confer by phone on any issue. (*See id.* at 18-19). Unable to confer by phone, defense counsel repeatedly attempted to confer with counsel for the Satanic Temple by email correspondence. (*See id.* at 14

("Since you've stated you won't confer by phone, this correspondence is my (unavoidably lengthy) attempt to confer on the outstanding issues."); *id.* at 2, 4-5, 14-16).

Contrary to the Satanic Temple's demonstrably false claims, the Secretary attempted to confer, among other things, on the Satanic Temple's bogus claim that the attorney-client privilege extends to everyone involved in the correspondence (*see, e.g.*, *id.* at 15), on the fact that the withheld documents were not created in anticipation of litigation (*id.* at 4), and the Satanic Temple's wrongful withholding of responsive tax documents. (*id.* at 15-16).

The Secretary would have conferred still further if not for counsel for the Satanic Temple's refusal to confer by phone and the Satanic Temple privilege log's improper "confidential" designation. (*See id.* at 14 ("If we were speaking by phone, I would describe the deficiencies of the Satanic Temple's privilege log futher. But I will not do that in writing because it appears that you may have asserted that your privilege log is itself 'confidential' under the terms of the protective order."[2]); *id.* ("By flatly refusing to confer by phone, you are making it significantly more difficult to resolve or narrow areas of disagreement concerning discovery.")).

The Satanic Temple's complaint that the Secretary's correspondence did not detail the obvious connection between the withheld documents and his defenses demonstrates the Satanic Temple's inability to appreciate the burdens caused by proliferating documents that contain information deemed, even provisionally, as "confidential." (Indeed, disseminating "confidential" information to numerous persons in discovery correspondence would unnecessarily multiply the risk of public disclosure.) It is no wonder, then, that the Satanic Temple expresses confusion as

---

[2] The Satanic Temple subsequently confirmed that it had designated its privilege log as "confidential" and, despite the Secretary's request, refused to withdraw that designation. (*See* DE 212-16 at 3, 7, 9, 12).

3

to why the Secretary's principal brief redacts the discussion of how the withheld documents expressly relate to the Secretary's defenses.³ (*See* DE 217 at 5 n.2 (citing DE 213 at 17 (redacting information derived from the Satanic Temple's privilege log))).

Rule 37(a)(1) requires "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *See* Local Rule 7.2(g). The Secretary unquestionably conferred (and attempted to confer) in good faith on the issues in dispute and certified that fact. (*See* DE 212-16 at 2, 4-5, 14-16, 20; DE 213 at 7-8).

## II. Communications concerning the Satanic Temple's self-described "public relations efforts" are neither attorney-client privileged nor work product.

The Satanic Temple now concedes that "[t]he information at issue surrounds TST's public relations efforts." (DE 217 at 14). ███████████████████████████

████████████████████████████████████████

███ *See* Confidential Privilege Log filed Under Seal on December 15, 2021 (DE 210). But the withheld communications concerning these "public relations efforts" are neither professional legal advice (and hence, not attorney-client privileged) nor are they work product, and the Court should require that they be produced.

"A party may not cloak a document with a privilege by simply having business . . . or public relations matters handled by attorneys." *Burton v. R.J. Reynolds Tobacco Co.,* 200

---

³ Continuing its confidential-for-thee-but-not-for-me routine, the Satanic Temple's response publicly divulges information deriving from its "confidential" privilege log. (*See* DE 217 at 4 & n.1). The Satanic Temple now claims for the first time that "[t]here is no confidentiality concern" about this information—further highlighting its improper designation of that entire document as "confidential." (*Id.*) Further, as explained in the Secretary's principal brief, the Satanic Temple has expressly "withdr[awn] the assertion of associational privilege" (DE 213 at 3 (citing DE 212-16 at 2)), so there is no basis for asserting that *any* of the information in the privilege log is "confidential" even under that theory.

F.R.D. 661, 669 (D. Kan. 2001) (holding that documents produced by public relations firm were not privileged because they were not related to seeking or giving legal advice but were instead related to public relations and public image issues). Indeed, "advice regarding lobbying, public relations, dealing with the media . . . is not privileged, even if the advice comes from an attorney." *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-1967-MD-W-ODS, 2011 WL 1136440, at *3 (W.D. Mo. Mar. 25, 2011). "Most courts agree . . . that basic public relations advice, from a consultant hired by the corporate client, is not within the privilege." *In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. CA 2:06-MN-77777-DCN, 2008 WL 2338552, at *7 (D.S.C. May 8, 2008) (collecting cases).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ But even if there were, "[c]ourts have consistently held that this type of general public relations work, *even when related to ongoing litigation*, falls outside the scope of the narrowly construed attorney-client privilege." *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, No. 15CV9323, 2021 WL 4283464, at *7 (N.D. Ill. Sept. 21, 2021) (emphasis added) (collecting cases).

Because the Satanic Temple now concedes that "[t]he information at issue surrounds TST's public relations efforts" (DE 217 at 14), the correspondence was plainly made for that purpose and not to secure professional legal advice. Therefore, it fails the attorney-client privilege's threshold requirement. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 610 (8th Cir. 1977) ("We begin by deciding whether the communications were made for the purpose of securing legal advice for the corporation."); *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y August 25, 2003) ("A media campaign is not a litigation strategy.

5

Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice.").

Further, although the documents at issue were not prepared in anticipation of litigation, "public relations advice, *even if it bears on anticipated litigation*, generally falls outside the ambit of the work product doctrine." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 435 (S.D.N.Y. 2013) (quotation and brackets omitted) (emphasis added). "Additionally, the work product doctrine does not extend to public relations activities *even if they bear on the litigation strategy* because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Id.* (quotation omitted) (emphasis added).

Therefore, the withheld responsive communications are neither attorney-client privileged nor work product, and the Court should require the Satanic Temple to produce them.

**III.** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉**, in particular, is neither attorney-client privileged nor work product.**

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ it is not protected. In *In re Grand Jury Subpoenas dated Mar. 9, 2001*, 179 F. Supp. 2d 270, 291 (S.D.N.Y. 2001), five attorneys who had represented persons seeking presidential pardons unsuccessfully attempted to invoke the attorney-client and work-product privileges concerning documents sought during a subsequent investigation into the circumstances surrounding the grant of the pardons. *Id.* at 273. In seeking the pardons, the attorneys carefully strategized, in ways that "did not fall into the category of legal work," about how to maximize their chances of success, *id.* at 278, including "identifying and contacting individuals . . . who could support the Petition, enlisting individuals who had access to the President, and

6

considering how to deal with the media and public reaction." *Id.* at 290. Sometime after the pardons were granted, a grand jury subpoenaed the attorneys' documents, but they asserted attorney-client and work-produce privileges. *Id.* at 282.

The court rejected the attorneys' privilege claims, observing that when lobbying efforts are undertaken, "matters conveyed to the attorney . . . do not become privileged by virtue of the fact that . . . [the attorney] has a law degree or may under other circumstances give legal advice to the client, including advice on matters that may also be the subject of the lobbying efforts." *Id.* at 285 (quoting Edna Selan Epstein, *The Attorney-Client Privilege & the Work Product Doctrine* 239 (2001)). The court concluded that "[c]ommunications about non-legal issues such as public relations, the solicitation of prominent individuals or persons with access to the White House . . . to support the Petition, and strategies for persuading the President to grant the petition are not privileged (or protected by the work product doctrine)." *Id.* at 291.

Similarly, here, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ "d[o] not fall into the category of legal work," *id.* at 278, and are therefore not protected under either the attorney-client or work product privileges. Therefore, the Court should require the Satanic Temple to product the withheld responsive correspondence.

**IV.    The Satanic Temple uncritically relies on a Restatement—and one that doesn't justify its assertion of attorney-client privilege at that.**

Rather than try to meet its burden by making a case from decisional law, the Satanic Temple relies almost exclusively on the Restatement (Third) of the Law Governing Lawyers. But Restatements are secondary authority at best. And, despite its name, the Restatement (Third) cannot be relied upon to "restate" what the law actually is. That is because—unlike the original

7

Restatement series—"[t]he purpose of *this* Restatement is . . . *to influence or nudge the developing case law in a particular direction*." Ronald D. Rotunda, et al., *The Restatement of the Law Governing Lawyers*, Legal Ethics: The Lawyer's Deskbook on Prof. Responsibility, sec. 1-3 (2021-2022 ed.) (emphases added). The Restatement is not a trustworthy guide to the law in this instance, in particular, because the Satanic Temple spurns the actual law—set forth in the Secretary's principal brief (DE 213 at 9-14)—for the Restatement authors' opinion that the privilege should apply more broadly. *See also Fisher v. United States*, 425 U.S. 391, 403 (1976) ("[S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose," which is "to encourage clients to make full disclosure to their attorneys."); *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020) ("[T]he attorney-client privilege is narrowly construed."); *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 816 (8th Cir. 2002) ("The Supreme Court has directed that courts must narrowly construe privileges.").

But even the Restatement's broad description doesn't justify the Satanic Temple's assertion of attorney-client privilege. The Satanic Temple for the first time offers the unsupported assertion that Stu de Haan was the Satanic Temple's "general counsel at the time" of the withheld correspondence.[4] (DE 217 at 9). It now contends that ███████████████

---

[4] The Satanic Temple cites *Upjohn Co. v. United States*, 449 U.S. 383 (1981), for the proposition that "communications with in-house counsel are protected by the attorney-client privilege." (DE 217 at 10). But that claim fails to grapple with the argument set forth in the Secretary's principal brief (DE 213 at 11) that "[a] communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977); *see Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 13 F.4th 659, 676 (8th Cir. 2021) (applying Missouri law and holding communications with in-house counsel to be not privileged).

█████████████████████████[5] literally *every other person* sending or receiving each item of correspondence is a "privileged person." (*See* DE 217 at 10 (the Satanic Temple's assertion that "[*a*]*ll* of the individuals who received a copy of the email were directly an agent of TST . . . or other confidential business associates" (emphasis added)); *see also id.* at 8-9).

The Satanic Temple heavily relies on comment f of the Restatement's section 70, which explains that a "client's agent for communication" must be a person whose "participation is reasonably necessary to facilitate the client's communication with a lawyer." Restatement (Third) of the Law Governing Lawyers, sec. 70 cmt. f. The comment's three illustrations clarify the limited circumstances in which an "agent for communication" is reasonably necessary to facilitate communication between the lawyer and client—and, therefore, when a person is "privileged" under that section. In Illustration 1 the client is prevented by the police from communicating directly with the lawyer. *Id.* In Illustration 2 the client and lawyer do not speak a common language. *Id.* And in Illustration 3 the "[c]lient regularly employs" a secretary "to record and transcribe" the client's "important business letters," including a letter to a lawyer. *Id.* Even assuming that the Restatement applies (which it doesn't), it does not justify the Satanic Temple's assertion that the attorney-client privilege covers the third parties involved in the withheld correspondence.

"The [attorney-client] relationship itself does not create 'a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client.'" *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir. 1980) (quoting *United States v. Goldfarb*, 328 F.2d 280, 281-82 (6th Cir. 1964)) (alterations

---

[5] The Satanic Temple's response again publicly divulges this information from its "confidential" privilege log, ████████████████████████████████████████████
████████████████████████

omitted); *Burton*, 200 F.R.D. at 670 (a document is not attorney-client privileged by virtue of being forwarded to an attorney). Further, the Satanic Temple's claim that *all* recipients of the communications are "privileged" must be seen in light of the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (holding that communications "were not made 'in confidence' due to the presence of the filmmakers at the time of the communications, and so the protections of the attorney-client privilege never attached to those communications"); *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997) ("[A]s a general matter, the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney.").

The attorney-client privilege does not attach to the withheld responsive correspondence, and the Court should require the Satanic Temple to produce it.

**V.     The Satanic Temple has stonewalled the Secretary's previous diligent efforts to obtain the withheld responsive documents.**

The Satanic Temple contends that the Secretary has "no explanation for why he could not have gotten the same information through the depositions." (DE 217 at 2, 17). But the particular facts of the matter show that here—as on so many other fronts—the Satanic Temple and its witnesses have stonewalled the Secretary's diligent efforts to obtain the withheld responsive documents through both depositions and other means.

As an initial matter, the Secretary served the original requests for production seeking correspondence involving Mr. Hargett and Ms. Robbins sufficiently in advance of their depositions so that defense counsel would have the documents in order to be able to examine those witnesses

on matters pertaining to them. (*See* DE 212-8 at 3). The sole reason why the Secretary lacked access to those documents at that time—and still lacks access—is the Satanic Temple's (and as explained below, its witnesses') refusal to produce the responsive documents.

By agreement, the Secretary served a subpoena for Mason Hargett's deposition to be held on March 2, 2020. (Ex. 22 at 13). The subpoena required Mr. Hargett to bring the following documents to the deposition:

> (1) All correspondence with Arkansas officials concerning the Baphomet statue. (2) All records of whatever kind concerning (a) TST's efforts to place the Baphomet statue in Arkansas, (b) the August 2018 Rally for the First Amendment, and (c) the making of the film Hail Satan!. (3) All records of whatever kind concerning your personal interactions with the Ten Commandments monument.

(Ex. 22 at 13). Mr. Hargett lodged no objection. The morning of Mr. Hargett's deposition, counsel for the Satanic Temple—who had undertaken representation of Mr. Hargett the previous night (Ex. 22 at 8)—produced some correspondence between Mr. Hargett and various legislators and a few pictures of Mr. Hargett on the Capitol grounds.

One of the first orders of business during Mr. Hargett's deposition was to confirm that he had provided all documents responsive to the subpoena. Going one-by-one through the required categories of documents, Mr. Hargett affirmed that he had produced every responsive document in his possession. (Ex. 22 at 9-11). Finally, defense counsel asked, "And so you've produced every document in your possession for all of those categories?" and Mr. Hargett answered unequivocally, "Yes." (Ex. 22 at 11; *see id.* at 9-11).

The Secretary was quite surprised, therefore, when ███████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

11



The Satanic Temple asks "why [the Secretary] could not have gotten the same information" in the withheld documents "through the depositions." (DE 217 at 2, 17). The reality is that the Secretary diligently made every effort to do precisely that. But when a witness—who is represented by counsel—refuses to produce responsive documents while simultaneously testifying under oath that he has "produced every document in [his] possession for all of those categories" (Ex. 22 at 11), the answer to the Satanic Temple's question is obvious. Secretary Thurston simply has no control over other parties' or witnesses' refusal to comply with the discovery rules.

## CONCLUSION

For all the reasons set forth herein and in the Secretary's principal brief, the Court should require the Satanic Temple to produce, by a date certain, all of the withheld responsive documents at issue in the Secretary's motion.

---

[6] There is a similar story to tell regarding Ms. Robbins' deposition testimony. Asked, "Did you do anything to assist with the Satanic Temple's application to place the Baphomet statute on the Arkansas State Capitol grounds?" Ms. Robbins answered unequivocally, "No." Ex. 23 at 5.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

Vincent M. Wagner (2019071)
 Deputy Solicitor General
Michael A. Cantrell (2012287)
Dylan L. Jacobs (2016167)
 Assistant Solicitors General
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Ph:    (501) 682-2007
Michael.Cantrell@ArkansasAG.gov

Hiram S. Sasser, III
Michael D. Berry
Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel: (972) 941-6162
Fax: (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Attorneys for Secretary of State John Thurston*