IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DONNA CAVE, JUDITH LANSKY,                                          PLAINTIFFS,
PAT PIAZZA, and SUSAN RUSSELL,

ANNE ORSI, AMERICAN HUMANIST                         CONSOLIDATED PLAINTIFFS,
ASSOCIATION, FREEDOM FROM
RELIGION FOUNDATION, INC.,
ARKANSAS SOCIETY OF FREETHINKERS,
JOAN DIETZ, GALE STEWART, RABBI
EUGENE LEVY, REV. VICTOR H. NIXON,
TERESA GRIDER, and WALTER RIDDICK,

THE SATANIC TEMPLE, DOUG MISICKO                              INTERVENORS,
aka "LUCIEN GREAVES," and ERIKA
ROBBINS,

v.                              No. 4:18CV00342 KGB/BD

JOHN THURSTON, Arkansas Secretary of State,
in his official capacity,                                          DEFENDANT.

SECRETARY THURSTON'S OPPOSITION TO THE SATANIC TEMPLE'S
MOTION TO COMPEL STATE DOCUMENTS (DE 218)

Disappointed that nothing in Secretary Thurston's 16,000-page production supports its

claims, the Satanic Temple is back with yet another motion to compel.  This one frivolously con-

tends that every branch, department, agency, and employee of the State of Arkansas is a defend-

ant subject to Rule 34 requests.  But the Satanic Temple's other litigation conduct makes unmis-

takably clear that not even it actually believes that the General Assembly and others are parties to

this litigation.  In any case, Secretary Thurston has no control over any documents at issue.  The

Court should reject the expansive "practical ability" test for "control" as a matter of law because

it undermines the Federal Rules.  Further, regardless of what test the Court applies, Secretary

Thurston unequivocally has no legal right or practical ability to obtain any documents at issue.

Finally, if anyone is entitled to fees, it is Secretary Thurston, for having to respond to this frivolous motion.  For all of these reasons, the Court should deny the Satanic Temple's motion to compel.

**I.**     **Not even the Satanic Temple believes that the General Assembly and others are parties to this litigation.**

The General Assembly and the Department of Finance and Administration, as well as all other employees of the State of Arkansas not with the Secretary of State, are non-parties to this litigation.  That is true despite the fact that a state-officer suit against Secretary Thurston is "to be treated as a suit against the entity" he represents.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Satanic Temple continues to misrepresent the Secretary's position on this point.  Secretary Thurston's argument has never been that he lacks possession, custody, or control of documents on the ground that "he is distinct from the State" (DE 218 at 3)—if by "the State" is meant the Secretary of State's Office.  Even though sovereign immunity bars actions directly against a state entity, no one disputes that a state-officer suit against Secretary Thurston "is tantamount to an action directly against the public entity of which the official is an agent"—i.e., the Secretary of State's Office.  *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987) (citing, *inter alia*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

But the Satanic Temple is claiming *much more* than that:  Its motion assumes that by bringing a state-officer suit against Secretary Thurston, the Satanic Temple has somehow made *every branch, department, agency, and employee of the State of Arkansas* a defendant subject to Rule 34.  That's literally what the Satanic Temple says:  It seeks to compel—through Secretary Thurston—documents from the General Assembly, documents from the Department of Finance and Administration, and even documents "in the possession of the State of Arkansas or any of its employees."  (*See* DE 218 at 1-2, 4-5.)  Counsel for the Satanic Temple has asserted that "I do

not think the records we seek are held by a 'third party' because this is an official-capacity suit" (Ex. 2 at 1) and that "[*a*]*ll of the State's records*, particularly to include the ones sought by the requests at issue, are therefore subject to disclosure under Rule 34." (Ex. 2 at 1 (emphasis added)). But the Satanic Temple cannot offer any authority for these eccentric claims because that is not, and has never been, the law.

Even if every branch, department, agency, and employee of the State of Arkansas were a defendant subject to Rule 34, however, it still would not follow that a request for production directed to Secretary Thurston was the proper way to obtain discovery from them. Indeed, the Satanic Temple offers no explanation for why it must, or even can, go through Secretary Thurston to obtain their documents, as opposed to proceeding directly against those entities and employees of the State themselves. On the Satanic Temple's theory, during the discovery period it could have served Rule 34 requests for production on the General Assembly or on the Department of Finance and Administration, or indeed, on any employee of the State of Arkansas.

Of course, not even the Satanic Temple believes the claims it now makes. It recognizes—*in currently pending motions*—that members of the General Assembly like Senators Hammer and Ballinger are "nonpart[ies]." (DE 192 at 6; DE 199 at 3). Indeed, the Satanic Temple recently served untimely "requests for production" on General Assembly members *not* under Rule 34 but under Rule 45 (*see* DE 192-1, 192-2, 192-3, 192-4)—complete with a witness fee (*see* DE 197-2 at 2) and an agreement from counsel to accept non-party service on their behalves. (*See* DE 199-1). The Satanic Temple could have done this during any of the seventeen months of discovery following its intervention in this litigation. But instead it chose to fritter away that time, choosing simply to ride the coattails of the other Plaintiffs, serving no discovery

requests until close to the end of the discovery period.  The approximately 16,000 pages of documents that Secretary Thurston produced to the Satanic Temple in response to those requests—documents over which the Secretary *does* have possession, custody, or control—show exemplary compliance with his discovery obligations.  The Court should deny this utterly unfounded motion to compel the Secretary to produce documents in the possession, custody, or control of others.

**II.     The Court should reject the expansive "practical ability" test as a matter of law.**

Rule 34 permits a party to "serve on any other party a request" to produce "items in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34 (a)(1).  The Satanic Temple's motion claims that "[t]he issue is whether Secretary Thurston has 'control' of the documents, such that he can be compelled to produce them. FRCP 34(a)(1)."  (DE 218 at 3).  "Control is defined as the legal right to obtain documents upon demand."  *See, e.g.*, *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

As an initial matter, even if Secretary Thurston did have the ability to obtain documents from other state entities (which, as explained below, he certainly does not), the Court should reject the "practical ability" test for "control" concerning documents that are held by a non-party and not otherwise in the Secretary's possession, custody, or control.  That is because "[a] party on whom a discovery demand is served need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents."  8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, sec. 2210 n.5 (3d ed. 2021).

Indeed, Rule 45 already provides a method for obtaining documents from non-parties, and "[i]n drafting the rules, the committee deemed it important to involve the court whenever discovery was requested from a non-party.  Adopting the 'ability to obtain' test would usurp

these principles, allowing parties to obtain documents from non-parties who were in no way con-

trolled by either party." *Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 739 (E.D.N.C.

2000). "When information is readily attainable through a subpoena duces tecum, no compelling

reason exists to expand the definition of control. Thus, in order for the material to be discovera-

ble, defendant must have some type of legal right to the material plaintiff seeks to discover." *Id.*;

*see In re Citric Acid Litig.*, 191 F.3d at 1107 (following the Third, Sixth, Seventh, Eleventh, and

Federal Circuits in rejecting the "practical ability" test under Rule 45).

Therefore, as a matter of law the Court should reject the "practical ability" test in favor of

the "legal control" test, and it should deny the Satanic Temple's motion on that basis.

**III.     The Satanic Temple cannot carry its burden to show that Secretary Thurston has a
legal right or practical ability to obtain documents from other state entities.**

Regardless of what test the Court applies, Secretary Thurston has no control over any

documents at issue. The Satanic Temple falsely asserts that Secretary Thurston somehow has

control of documents held by the General Assembly, by the Department of Finance and Admin-

istration, and even by all employees of the State of Arkansas. (DE 218 at 4-5). But the Secretary

has no legal authority or practical ability to obtain such documents. (Ex. 1 (Parker Decl.), ¶ 5 ).

First, "[r]elationships which evidence a legal right of a party to obtain a document from non-

party include a client from an attorney, a[n] insured from an insurer, an employer from current

employees; and a parent company from a subsidiary"—nothing resembling the Secretary's rela-

tionship with independent state agencies and branches of government. *Bleecker*, 130 F. Supp. 2d

at 739. Further, the Secretary does not generate, maintain, or acquire documents the Satanic

Temple seeks and does not have access to them. (Ex. 1, ¶ 5 ). They are simply not within the

control of the Secretary of State.

By requesting documents "that are not within [Secretary Thurston's] control, it is sufficient that [the Secretary] respond by stating that fact.  The [Satanic Temple] must then make an adequate showing to overcome the assertion."  *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594 (E.D. Wis. 2004).  Indeed, even cases cited by the Satanic Temple (DE 218 at 5-6) recognize that "[w]hether a party has a sufficient degree of control over requested documents to constitute a practical ability to obtain the documents is *a question of fact as to which the requesting party has the burden*."  *Benisek v. Lamone*, 320 F.R.D. 32, 34 (D. Md. 2017) (emphasis added).  But the Satanic Temple cannot carry that heavy burden.  Indeed, its claim that Secretary Thurston has control of the documents at issue "is supported by nothing more than hypotheses," *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 268 (N.D.N.Y. 2006)—and false ones at that.  (*See* Ex. 1 at ¶ 5).

The closest case on point is *United States v. Davis*, 140 F.R.D. 261 (D.R.I. 1992), where the defendants sought an order requiring the Department of Justice to produce, under Rule 34, "a log of all documents in the possession, custody, or control of the United States Congress" pertaining to certain subject matter.  *Id.* at 262 (quotation omitted).  The court rejected the defendants' "very broad" understanding of "the United States," *id.* at 263, observing that "[t]his is not a question of a different executive agency; this in fact is an entirely separate branch of the federal government.  The three branches of the United States government function as separate and distinct entities."  *Id.*; *Boardman*, 233 F.R.D. at 262 (rejecting the claim that "the State is one entity supreme over all . . . state agencies, who are subject to the State's control" and that "all state agencies are subject to a Rule 34 demand for discovery.").  Just as in *Davis*, here "[a]n [officer] of the Executive is not required to produce documents in the possession of [the General Assem-

bly].  The fact that both the [Secretary] and [the General Assembly] are parts of [Arkansas] government is not controlling."  8B Wright & Miller, *Federal Practice & Procedure* sec. 2210 n.16 (discussing *Davis*).

The same holds true even for the Satanic Temple's claims concerning executive departments on the state level, including the Department of Finance and Administration.  That is because—unlike the federal government—Arkansas does not have a *unitary* executive.  Rather, Arkansas's Constitution creates an executive branch that includes several officers who are independently elected, including the Governor and the Secretary of State.  Ark. Const. art. 6, secs. 1, 3; (*see* Ex. 1 ¶ 3).  The Department of Finance and Administration is not under the authority of the Secretary of State but of the Governor.  *See* Ark. Code Ann. 25-43-703(b) (establishing that the Secretary of the Department of Finance and Administration "shall be appointed by the Governor, subject to confirmation by the Senate, and shall serve at the pleasure of the Governor.").  Like the three branches of the federal government, then, Arkansas's independently elected executive officers "function as separate and distinct entities."  *Davis*, 140 F.R.D. at 263; (*see* Ex. 1 ¶ 3).  Secretary Thurston does not have legal control or a practical ability to obtain documents from the General Assembly or the Department of Finance and Administration (Ex. 1 ¶ 5), and the Satanic Temple's motion should be denied.

The Satanic Temple relies on an inapposite case that found certain defendants had the "practical ability" to obtain documents from nonparty state agencies where they had "worked together" with the nonparty agencies "to produce the redistricting map" the plaintiffs sought to enjoin and they had already produced nearly 3,000 pages of documents from the very nonparties whose documents were then being sought.  *Benisek*, 320 F.R.D. at 35.  But, unlike that case, here Secretary Thurston has not coordinated with other state entities.  (Ex. 1 ¶ 5).  There is no

"demonstrated history of voluntary cooperation" between Secretary Thurston and the nonparties whose documents the Satanic Temple seeks to compel.  *Benisek*, 320 F.R.D. at 35.  Indeed, even *Benisek* expressly found cases (like this one) with no "history of cooperation by nonparties with a party on production of documents" to be "*easily* distinguishable."  *Id.* (emphasis added).

The Satanic Temple falsely suggests that Secretary Thurston is coordinating with the legislators on whom it has served invalid subpoenas, incorrectly claiming that the Secretary both "intervened" to object to its motions for contempt against the legislators and "asserted the legislative privilege" on their behalf.  (DE 218 at 6-7).  But, first, if opposition to the Satanic Temple's untimely discovery motions amounts to coordination with the legislators, then the Cave Plaintiffs are coordinating with them as well.  *See* DE 200 (Cave Plaintiffs' opposition to the Satanic Temple's discovery motions).  Plainly, opposing the Satanic Temple's motions to reopen discovery to validate its self-described "tardy subpoenas" (DE 192 at 9) is not coordinating with the legislators.  Second, Secretary Thurston has *never* asserted legislative privilege, nor could he. That is generally something only a legislator can do.  (*See* DE 120-4 at 3, etc. (Secretary Thurston's objection based on a potential inability to produce documents that "might be or become covered by *any legislator's assertion* of that privilege."  (emphasis added))).

The Satanic Temple contends that the Attorney General represents both Secretary Thurston and the legislators.  But "the State Attorneys General have no more power to acquire documents from the non-party agencies than any law firm representing a client."  *United States v. Am. Express Co.*, No. 10CV04496NGGRER, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011).  "Without question," the court in *American Express Company* said, "the private firms here would strenuously object if in bringing a law suit on behalf of one client (or even in their own

name) their adversary sought documents belonging to another client as party discovery.  They would properly insist on the use of [a subpoena under] Rule 45." *Id.*

Finally, the Satanic Temple uncritically relies on a general reference to two footnotes citing cases dealing with the issue of control in the corporate context.  (DE 218 at 5 (citing 8B Wright & Miller, *Federal Practice & Procedure*, sec. 210 nn.11, 12)).  But that fails to grapple with the essential difference between government entities and private corporations.  Indeed, "[s]tates are not the equivalent of corporations or companies," nor are "government bodies . . . the same as subsidiaries." *Boardman*, 233 F.R.D. at 267 (quoting *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1342 (11th Cir. 1999)); *see id.* (citing *Trevino v. Celanese Corp.,* 701 F.2d 397, 404 n.10 (5th Cir.1983) (noting that "where state or local governmental entities are involved, any indicia of integration must be considered in a framework that is sensitive to the differences between governmental subdivisions and private entities")).

The Satanic Temple's extreme position "would lead invariably to illogical consequences." *Boardman*, 233 F.R.D. at 266.  It "would subject all [fifteen] executive agencies, the legislature, the judiciary, quasi-state agencies, and possibly public authorities to disclosure scrutiny, notwithstanding their relative remoteness to the issue of the case.  Not only would such a discovery mandate be unduly burdensome and cumbersome but totally untenable and outside the spirit of the Federal Rules." *Id.*

The Satanic Temple cannot carry its burden to show that Secretary Thurston has a legal right or practical ability to obtain the documents.  Therefore, the Court should deny the Satanic Temple's motion.

**IV.    If anyone is entitled to fees, it is Secretary Thurston, for having to respond to this frivolous motion.**

The Satanic Temple squandered seventeen months of discovery during which time it could have proceeded against the nonparties whose documents it now claims an entitlement to. It remains the case, as Secretary Thurston stated on March 27, 2020, that he "does not have possession, custody, or control" of the General Assembly's correspondence (DE 120-4 at 2), that he "has no documents responsive to" the request for state tax records (*id.* at 16, 17), and that he "does not have possession, custody, or control of documents for all State employees" (*id.* at 18-19).

The Satanic Temple appears—for purposes of this motion, at least—to have abandoned its original assertion that Secretary Thurston somehow has access to non-party documents through the Freedom of Information Act.  (*But see* DE 206 at 5-9 (Satanic Temple's false assertion that Secretary Thurston obstructed its access to the General Assembly's documents by refusing to obtain them through FOIA)).  But the Satanic Temple's December 8, 2021 ultimatum—essentially, produce the documents, or I'll file a motion to compel—had no articulated legal basis other than the FOIA canard.  (DE 218-2; *see* Ex. 2 at 2)).  Secretary Thurston even sought to educate the Satanic Temple on how the *Ex Parte Young* doctrine operates to permit state-officer suits without making every branch, department, and agency of the State a defendant.  (*See* Ex. 2 at 1).  Yet the Satanic Temple filed its motion anyway—a motion containing arguments that, as explained above, not even *it* actually believes.  There is simply no legitimate basis for this frivolous motion, and the Satanic Temple had notice of that fact before filing it.  (*See* Ex. 2 at 1, 3). Therefore—far from awarding fees to the Satanic Temple—the Court should award fees to Secretary Thurston for the time and resources necessary to respond.

CONCLUSION

The Satanic Temple's motion makes clear that it is on an extended fishing expedition, hoping that by some chance it may turn up something, anything it can use to impugn the motives of state actors.  But the Supreme Court has recognized that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" that is "usually to be avoided."  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977).  The Secretary of State has no control over any of the documents the Satanic Temple seeks.  But even if the Secretary did, the Satanic Temple's motion offers absolutely no reason to justify such a "substantial intrusion."  *Id.*

For the reasons set forth above and in the referenced exhibits, Secretary Thurston respectfully requests that the Court deny the Satanic Temple's motion to compel.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

Vincent M. Wagner (2019071)
  Deputy Solicitor General
Michael A. Cantrell (2012287)
Dylan L. Jacobs (2016167)
  Assistant Solicitors General

OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Ph:     (501) 682-2007
Michael.Cantrell@ArkansasAG.gov

Hiram S. Sasser, III
Michael D. Berry
Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel:  (972) 941-6162
Fax:  (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Attorneys for Secretary of State John Thurston*