# Michael Cantrell

| | |
|---|---|
| **From:** | Michael Cantrell |
| **Sent:** | Wednesday, December 29, 2021 11:55 AM |
| **To:** | Matthew A. Kezhaya |
| **Cc:** | Sonia A. Kezhaya; Stuart de Haan, Esq.; Nicholas Bronni; Vincent Wagner; Dylan Jacobs; Michael Cantrell |
| **Subject:** | RE: Various Discovery Matters |

Matthew,

As I understand your position, you maintain that, by bringing a state-officer suit against Secretary Thurston in his official capacity, you have somehow made every branch, department, agency, and employee of the State of Arkansas a defendant?  That is not, and has never been, the law.  I don't blame you for failing to have an intuitive grasp of how the *Ex Parte Young* doctrine operates to permit state-officer suits.  But if you do your research, you will discover that *Ex Parte Young* does not permit a suit against even the agency with which an officer is employed—let alone against completely separate branches, departments, and agencies of the State.  Perhaps begin with *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).

There remains no legitimate basis for the Satanic Temple to file another motion to compel.

**Michael A. Cantrell**
Assistant Solicitor General
Office of Arkansas Attorney General Leslie Rutledge

323 Center Street, Suite 200
Little Rock, Arkansas 72201
Michael.Cantrell@ArkansasAG.gov | ArkansasAG.gov

**From:** Matthew A. Kezhaya <matt@kezhaya.law>
**Sent:** Wednesday, December 22, 2021 11:44 AM
**To:** Michael Cantrell <michael.cantrell@arkansasag.gov>
**Cc:** Sonia A. Kezhaya <sonia@kezhaya.law>; Stuart de Haan, Esq. <stu.dehaan@gmail.com>; Nicholas Bronni <nicholas.bronni@arkansasag.gov>; Vincent Wagner <vincent.wagner@arkansasag.gov>; Dylan Jacobs <dylan.jacobs@arkansasag.gov>
**Subject:** Re: Various Discovery Matters

**EXTERNAL EMAIL**

You and I appear to be at an impasse on what "possession, custody, or control" means. For sake of clarity, my understanding is that the terms are expansively defined and include a party's practical ability to obtain the materials sought, even from a third party. Doc. 172 at 6. I do not think the records we seek are held by a "third party" because this is an official-capacity suit which means that the Defendant is *nominally* Secretary Thurston but is *actually* the State of Arkansas. Doc. 172 at 4-5 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985); and *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). All of the State's records, particularly include the ones sought by the requests at issue, are therefore subject to disclosure under Rule 34.

Def.'s Ex, 2

By Wednesday (12/29) at noon, please provide all documents sought.

Matthew A. Kezhaya

Arkansas office:
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
p: (479) 431-6112
f: (612) 349-2760
e: matt@kezhaya.law

Minnesota office:
Kezhaya Law PLC
333 N Washington Ave, #300
Minneapolis, MN 55401
p: (479) 431-6112
f: (612) 349-2760
e: matt@kezhaya.law

This message may contain confidential or privileged information and was intended for a particular
recipient.  If it appears that I sent this to you in error, please inform me and delete this message.

On Wed, Dec 15, 2021 at 11:56 AM Michael Cantrell <michael.cantrell@arkansasag.gov> wrote:

Matthew,


I've gotten no response to my message from Monday.  Unless I hear from you by tomorrow (Thursday
December 16) at noon, I will take that to indicate no hope of resolving or narrowing the issues I've raised
concerning the Satanic Temple's assertions of attorney/client and work-product privileges for the responsive
correspondence withheld by the Satanic Temple (or any other issue previously raised).  Please let me know.


Concerning your December 8 discovery letter:  On November 22, the Secretary produced about 16,000 pages
of documents in response to the Satanic Temple's requests.  Your letter appears to demand that the
Secretary produce the General Assembly's emails (again), but it is otherwise unclear what else, if anything,
you are asking for.  An (apparent?) ultimatum with no articulated legal basis is hardly a good-faith effort to
confer.  In any case I'll address your new claim concerning the General Assembly's emails and restate the
Secretary's position for the remaining points:


• On your RFPs 1-7:  The Secretary has accounted for all responsive documents in its possession, custody,
or control.  See the Secretary's November 22 production, batestamped pages 1772 to 15951, and the
Secretary's privilege log.  As stated multiple times before, the Secretary does not have possession, custody, or
control of the General Assembly's emails.  Any responsive emails involving anyone associated with the
General Assembly that were incidentally on the Secretary's servers have been produced or noted in the

2

privilege log, and in good faith the Secretary has not pursued any assertion of legislative privilege for those documents. In addition:

> o  In a recent court filing, the Satanic Temple stated, "All emails held by General Assembly members, and presumably also their staff, are maintained by the Information Technology Division of the General Assembly."  (DE 206 at 7).  Given this, it is unclear why you still think that Secretary Thurston has possession, custody, or control of the General Assembly's emails.

> o  Your claim that Secretary Thurston has the legal right to obtain the General Assembly's emails through a FOIA request is categorically false.  You seem to have overlooked the fact that FOIA specifically exempts "correspondence of . . . members of the General Assembly."  Ark. Code Ann. 25-19-105(b)(7).  This exemption "include[s] not only the officeholder but his staff members as well."  *Bryant v. Mars*, 309 Ark. 480, 485, 830 S.W.2d 869 (1992).  Secretary Thurston has no special access to such exempt records.  In addition, as a matter of State law, legislative privilege would be an obstacle to Secretary Thurston's getting anything from the General Assembly.

•   On your RFPs 10-11 and 12-13: The Secretary has produced every responsive document in its possession, custody, or control concerning the AHHF  or the NACL.  See batestamped pages 15938 to 15951.  The Secretary simply has nothing more that it could produce.  On information and belief, the Department of Finance and Administration may have responsive "state tax records," but the Secretary lacks knowledge of the location, identity, or custodian of any such documents.

•   On your RFPs 14-15: The Secretary has produced every document in its possession, custody, or control concerning any meeting minutes pertaining to either Act.  See batestamped pages 935 to 1383.  The Secretary has nothing more that it could produce.  And the Secretary lacks knowledge of the location, identity, or custodian of any other such documents.

There is no legitimate basis for the Satanic Temple to file another motion to compel concerning these requests.

**Michael A. Cantrell**

Assistant Solicitor General

Office of Arkansas Attorney General Leslie Rutledge

Def.'s Ex, 2

323 Center Street, Suite 200

Little Rock, Arkansas 72201

Michael.Cantrell@ArkansasAG.gov | ArkansasAG.gov

---

**From:** Michael Cantrell <michael.cantrell@arkansasag.gov>
**Sent:** Monday, December 13, 2021 11:59 AM
**To:** Matthew A. Kezhaya <matt@kezhaya.law>; Sonia A. Kezhaya <sonia@kezhaya.law>; Stuart de Haan, Esq. <stu.dehaan@gmail.com>
**Cc:** Nicholas Bronni <nicholas.bronni@arkansasag.gov>; Vincent Wagner <vincent.wagner@arkansasag.gov>; Dylan Jacobs <dylan.jacobs@arkansasag.gov>; Michael Cantrell <michael.cantrell@arkansasag.gov>
**Subject:** RE: Various Discovery Matters

Matthew,

Your abusive response makes numerous accusations and insinuations that are false and senseless.  I am attempting in genuine good faith to confer with you (even within the constraints you have set) on the discovery issues in dispute.  I ask for professionalism in return.

Your claim that all of the documents you've withheld (listed in the log) are both attorney/client privileged and work product is unfounded for the reasons I've articulated.  In fact, you have provided nothing sufficient to indicate that any of the documents are privileged from disclosure.  I further note that many of the documents have been provided to nonparties, so privilege is waived.  Further, the documents were not made in anticipation of litigation at least in part because the timeframe of the documents precedes (and most of them long precede) the Satanic Temple's lawsuit.  In any case, the work-product doctrine does not protect against discovery of a party's (or a nonparty's) correspondence as such.  If you continue to maintain that the documents are privileged, then it appears that we are at an impasse.

Please note that my previous email included an incorrect statement of the set of documents in the Satanic Temple's log that were prepared by nonparties.  These include (among others) 2, 3, 5, 7, 9, 12, 13, 16, 39, 41, 43, 45, 46, 50, 52, 54, 58 (mislabeled as 57), 61, 63, and 67.  You previously declined to assert attorney-client privilege concerning these documents.  See your March 1, 2020 Responses and Objections to Defendant's Third Requests for Production, at 6.  That was appropriate, and you should return to that position.

Mike

Def.'s Ex. 2

**Michael A. Cantrell**

Assistant Solicitor General

Office of Arkansas Attorney General Leslie Rutledge

323 Center Street, Suite 200

Little Rock, Arkansas 72201

Michael.Cantrell@ArkansasAG.gov | ArkansasAG.gov

**From:** Matthew A. Kezhaya <matt@kezhaya.law>
**Sent:** Thursday, December 9, 2021 12:00 PM
**To:** Michael Cantrell <michael.cantrell@arkansasag.gov>
**Cc:** Sonia A. Kezhaya <sonia@kezhaya.law>; Stuart de Haan, Esq. <stu.dehaan@gmail.com>; Nicholas Bronni <nicholas.bronni@arkansasag.gov>; Vincent Wagner <vincent.wagner@arkansasag.gov>; Dylan Jacobs <dylan.jacobs@arkansasag.gov>
**Subject:** Re: Various Discovery Matters

**EXTERNAL EMAIL**

Please see in-line responses below. I've attempted to delineate who is saying what with "quote" formatting, which adds a line to the left and offsets the indentation slightly. For some reason, it also reduced your font size. In case that does not translate between email platforms, I have added **boldface** to your text and mine is not boldfaced.

> **By flatly refusing to confer by phone, you are making it significantly more difficult to resolve or narrow areas of disagreement concerning discovery—which is the whole point of conferring. I'm sorry you feel as you've stated you do, but this is both irrational and counterproductive. Since you've stated you won't confer by phone, this correspondence is my (unavoidably lengthy) attempt to confer on the outstanding issues.**

I stand by that decision. You poisoned the well by repeatedly engaging in *ad hominem* attacks against my client (e.g. docs. 24 and 201), by abusing the right to depose

Def.'s Ex, 2

Greaves to engage in a harassment campaign, by lying to the Court about the results of our first teleconferenced good faith effort to confer (see doc. 116 at 29), and by lying to the Court about the results of the Court's teleconference about discovery (see doc. 172 at 33).

After the lattermost lie, I have excluded the possibility that you are simply incompetent. I watched your ears turn beet-red when the Judge told you to issue new discovery requests. You clearly heard the Court's ruling. To later misstate that ruling was dishonest. I do not talk to dishonest people.

Beyond that, I've found written good-faith conferences to be much more conducive to their intended purposes. The process of writing is slower than talking, so it tends to force better thinking and there is less saber-rattling when the parties know that the document is likely to be an exhibit. It also better accommodates citations to authority, so the parties can prove up their assertions of fact or law. A lot of the writing can be recycled into the motion papers. And the Court can -- if it is so inclined -- review the parties' conference to make an informed decision on whether it really was "in good faith." All of this makes the dispute resolution process more efficient, overall.

**Deficiencies of the Satanic Temple's log**
**As I indicated in my previous email, I need to confer with you on the deficiencies of the Satanic Temple's November 22 privilege log.  As anticipated, the log shows that the withheld documents are relevant to the Secretary's defenses, and the Secretary has no other way to obtain this information.**

As the proponent of a point, it is your obligation to prove that point.  You do not identify any defenses, the elements of those defenses, how the documents are relevant to any of these elements, or why you have no other way to obtain the same information. Your request to produce the materials on this ground is denied.

**On the attorney-client privilege objection—First, the Satanic Temple's privilege log asserts facially deficient claims of attorney-client privilege.  To be a valid assertion of the privilege, the parties to a communication must have an attorney-client relationship.  The only responsive documents listed in the privilege log that evince even the possibility of being communications between an attorney and a client are nos. 4, 10, 15, 24, 38, 40, 55, 56, 64, and 66.  But it is not evident that there is an attorney-client relationship even in those instances, and in any case a communication is not privileged simply by virtue of being made by or to a person who is an attorney.  Further, the privilege log clearly shows that every one of these communications were either addressed to or shared with third persons.  So the privilege does not attach to any of the responsive documents listed in the Satanic Temple's privilege log, and even if it did, it would be waived.**

As the proponent of a point, it is your obligation to prove that point. You proffer rule-statements, but you offer no citation to authority for any of your points. This unfairly passes the burden onto me to research your claims. The crux of your argument is easily disproved, however.

Def.'s Ex, 2

You state that "the parties to a communication must have an attorney-client relationship." This is false, the attorney-client privilege extends to communications between "privileged persons." See Restatement (Third) of the Law Governing Lawyers § 68  (2000) (addressing the elements of attorney-client privilege). "Privileged persons" include but are not limited to the client and the attorney, the definition also includes "agents of either who facilitate those communications." Restatement (Third) of the Law Governing Lawyers § 70 (2000). As adequately addressed in the privilege log, all of the individuals party to the communications are "privileged persons" within the usage of the Restatement.

You state that, "it is not evident that there is an attorney-client relationship even in those instances [referring to the enumerated list above]." I assume you are referring to Stu de Haan. I can only explain your argument as engaging in willful ignorance. Stu de Haan is counsel of record in this very case. Obviously he is the predicate "attorney" for the attorney-client privilege.

You argue that the privilege is waived, but proffer no legal reasoning for the claim. Given your time constraints, I decline to address it further.

The privilege log remains unmodified.

If we were speaking by phone, I would describe the deficiencies of the Satanic Temple's privilege log further.  But I will not do that in writing because it appears that you may have asserted that your privilege log is *itself* "confidential" under the terms of the protective order.  The Secretary specifically objects to any such designation because there is no reasonable basis for it, and in any event the Court has not permitted it.

Yes, the privilege log contains "confidential" information as defined by the protective order (*i.e.*, identities of TST's membership and decisionmakers and details surrounding TST's communications with its lawyer). It addresses information that my client does not want public. And, but for this litigation, you would not have access to it. It is therefore "confidential" and it shall not be shared except as permitted by the protective order under threat of contempt.

The Court *did* permit me to share documents with the "confidential" tag. Doc. 122 (the agreed protective order).

Further, in the event we are unable to reach an understanding concerning the responsive documents the Satanic Temple has withheld, it will be necessary for the Court to review the Satanic Temple's privilege log and for each of us to make filings (e.g., a motion and response) concerning that matter—and it would certainly be unreasonable to have to file and serve those to the Court and all parties under seal.  I will remind you that the last time you designated your discovery correspondence as "confidential" you quickly realized the need to withdraw that designation (and unilaterally did so without seeking the Court's approval).  See your May 13, 2020 discovery correspondence.  So please confirm that you are *not* asserting—or please withdraw any assertion—that your privilege log is itself "confidential".

Def.'s Ex, 2

You assume your conclusion by stating "it would certainly be unreasonable to have to file and serve those to the Court and all parties under seal." I don't see how or why it is unreasonable. The protective order specifically contemplates this outcome, and the parties agreed to the protective order as written. Additionally, dealing with confidential materials is commonplace in civil litigation. Perhaps you are *unfamiliar* with this process, but that does not make it *unreasonable*.

As for the discovery correspondence, you are reading too far into something that is innocuous. We withdrew the confidentiality tag on the discovery correspondence because I waived it by putting it at issue in the discovery motion and publicly filing it. Once it was at issue and in the public sphere, it was no longer "confidential."

The privilege log retains its "confidential" designation.

**On the work-product objection—Second, the Satanic Temple has asserted the work-product doctrine for all of the responsive documents.  The work-product doctrine's purpose is to protect an attorney's ability to prepare documents in anticipation of litigation.  But *none* of the responsive documents listed in the Satanic Temple's privilege log were prepared by an attorney.  Further, in addition to not being prepared by an attorney, most of the responsive documents were also not *addressed* to an attorney (including nos. 1-3, 5-9, 12, 13, 15-20, 33-35, 39, 41-47, 27-29, 41-54, 57-60, 62, and 63).  Moreover, most of the responsive documents (including nos. 2, 3, 5, 7, 9, 11-13, 15-19, 21-23, 25-26, 28-32, 34, 36, 37, 39, 41-43, 45-47, 50, 52, 54, 57, 58 (mislabeled as 57), 61-63, 65, and 67) were prepared by *non-parties* not covered by the work-product doctrine.  So the Satanic Temple's claims that the responsive documents are protected by the work-product doctrine are facially deficient.**

As the proponent of a point, it is your obligation to prove that point. You proffer rule-statements, but you offer no citation to authority for any of your points. This unfairly passes the burden onto me to research your claims. Again, it was simply enough to disprove the crux of your argument so I do so below.

Work product protects materials which are:

1. "documents and tangible things;"
2. "prepared in anticipation of litigation or for trial;" and
3. "by or for another party or by or for that other party's representative."

Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.).

Def.'s Ex. 2

You do not dispute that the withheld materials are "documents" or that they were "prepared in anticipation of litigation or for trial."

Instead, you argue that work product does not protect materials which "were prepared by non-parties." To the contrary, the rule also protects materials created for the party or "by or for that party's representative." All of the materials on the privilege log were created by or for The Satanic Temple or one of its representatives. Your argument fails.

**Based on the deficiencies of the Satanic Temple's assertion of attorney-client privilege and the work-product doctrine for these responsive documents, please state who (among the participants in the withheld correspondence) the Satanic Temple claims had an attorney-client relationship with whom, the reason for the formation of each such relationship, and at what times each such relationship existed, withdraw your assertion of both the attorney-client privilege and the work-product doctrine, and produce all responsive documents.**

You offer no authority to suggest that any of the requested information is required to assert either of the privileges raised in the privilege log. We decline to answer your questions, decline to withdraw the assertions of privilege, and decline to produce all responsive documents.

**<u>Improper timeliness objection to the Secretary's supplemental RFPs</u>**
**I also need to confer with you on the Satanic Temple's timeliness objection to the Secretary's supplemental requests.**

**You will recall that two-and-a-half years ago, on June 29, 2019, the Secretary served his first set of discovery on the Satanic Temple, with Request for Production no. 3 requesting "a copy of the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018." (DE 93-1 at 17).**

**The Satanic Temple responded with an unsigned response that stated generic objections of relevance and proportionality. It failed to "state whether any responsive materials are being withheld on the basis of that objection" as specifically required by Rule 34(b)(2)(C). I delineated the deficiencies of the Satanic Temple's response in a July 26, 2019 letter (DE 93-3 at 4-5) as well as during a two-hour-long conference call with you on August 5, 2019.**

**Then, in another unsigned response dated September 26, 2019, the Satanic Temple simply restated its relevance objection, again without stating whether it was withholding any responsive documents. So, on October 22, 2019, I sent another letter to confer about Request for Production No. 3. (DE 93-5 at 3). You responded by email on November 7, 2019, indicating that you would not produce any responsive documents.**

**The Secretary filed a motion to compel on December 2, 2019. On March 1, 2020, "the Court order[ed] the Satanic Temple to respond to Request for Production No. 3" seeking "the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018." (DE 116 at 22, 23). On March 17, 2020, I attempted to confer with you about this by email, but I received no response. On April 10, 2020, I sent you another message. The Satanic Temple then supplemented its response only with the dissembling claim that "'The Satanic Temple' is not a discrete entity with tax returns." Once again, there was no statement whether any responsive documents were being withheld, as required by Rule 34(b)(2)(C).**

**The Secretary again raised the Satanic Temple's refusal by motion before the close of discovery. The Court's October 22, 2021 Order on that motion clarified the Court's directive "that Secretary Thurston propound new requests for production specifically seeking tax returns for the years he seeks to specify from the affiliates he seeks to specify." (DE 172 at 33).**

**The Secretary prepared and served those supplemental requests on November 2, 2021. They request tax returns for the four corporate entities that Mr. Misicko testified about, on timely and proper notice and without objection, during the Satanic Temple's 30(b)(6) deposition (i.e., the United Federation of Churches, LLC; Reason Alliance, Ltd.; the Satanic Temple, Inc.; and Cinephobia, LLC) for each of the years 2015, 2016, 2017, and 2018.**

Def.'s Ex. 2

**A few days ago, on December 2, the Satanic Temple served a response with the erroneous heading "Certificates of service for subpoenas to Rapert and the AHHF." That response again produces no documents and makes an objection only to timeliness, claiming that the requests "were sent after the discovery deadline and not supported by good cause to modify the deadline." And, yet again, the responses fail to make the required statement whether any responsive documents are being withheld.**

**I recount this long history to show that, given the Court's orders and the Secretary's multiple requests and diligent efforts to obtain responsive documents over the past two-and-a-half years, the Satanic Temple's timeliness objection is simply not sustainable. Therefore, please state whether the Satanic Temple is withholding any documents responsive to the Secretary's November 2, 2021 requests, withdraw your timeliness objection, and produce all responsive documents.**

We agree that the history is long. I'll add that it is rambling and does not have a clear point.

I surmise that you are re-raising a complaint that we have not provided satisfactory responses to Defendant's first requests for production. You addressed this dispute to the Court during a discovery teleconference. You asked the Court to order us to provide all documents for all affiliates. The Court explained to you that your requests do not seek documents for all affiliates and "directed that new requests for production seeking such information be propounded by Secretary Thurston." Doc. 172 at 33-34. You declined to follow the Court's clear directive and instead opted to file a motion for contempt on the false assertion that the Court orally modified the requests.

Your opportunity to follow the Court's directive ended with the close of discovery. Notwithstanding this, you issued your requests about a week after we informed ou that we would be sending our subpoenas to the legislators. I interpret the timing of your tardy requests to be retaliation for us seeking the documents you have owed us since March of 2020 (see my December 8, 2021 deficiency letter).

Your discovery requests were late and are not supported by good cause to amend the scheduling order. The objection stands and we are not going to produce any documents in response to the tardy requests.

**Improper confidentiality designation of the Satanic Temple's Nov. 22 production**
**You have asked for the Secretary's position on the status of the Satanic Temple's November 22 production. As I stated during the November 23 status conference, the Secretary objects to the "confidential" designation of the documents in that production. By the terms of the Court's March 1, 2020 Order, a protective order has been granted *only* as to organizational and tax documents (specifically: "current bylaws, operating agreements, or analogous documents" and "the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018.") (DE 116 at 20-24).**

The protective order is at doc. 122, not doc. 116. Doc. 116 prompted doc. 122, but it does not limit doc. 122. Obviously it does not limit doc. 122. Doc. 122 was issued after doc. 116. You are grasping at straws, here.

The documents in the Satanic Temple's November 22 production do not meet those criteria. The Satanic Temple bears the burden to make the good-cause showing that the specific documents fall within the scope of Rule 26(c) and that it will be prejudiced if they are not treated as confidential. The Satanic Temple has not made that showing for these documents, and given both their dated and extraordinarily mundane nature (which, again, I would characterize if we were speaking by phone, but I will not do that in writing because they are still deemed provisionally confidential) I doubt that it can be done.

So I ask that you either articulate a sufficient basis for designating these documents as "confidential" or withdraw your confidentiality designations and inform the Court and all parties that you have done so.

Rule 26(c) determines when a protective order is proper. Once the protective order is entered, the terms of the protective order controls.

The documents are "confidential" because they address the identities and contact information of TST's decisionmakers or membership, details of TST's planning processes, are the kind of information that your new Satan friends will publicly share for the purpose of harassing TST and its decisionmakers or membership, or members of the Shield Wall network (and like groups who are *actually* fascist sympathizers and white supremicists) for the purpose of harassing or harming TST and its decisionmakers or membership.

We could have asserted the associational privilege on all of these materials, but -- as you say -- the documents are mundane and not particularly helpful or harmful to any party. We found it better to share the information because we are erring on the side of providing information rather than withholding it. If you would kindly do the same, it would put less work on the attorneys and on the Courts.

Your issues with the Secretary's log
Finally, because of your position that your issues with the Secretary's privilege log—which could have been resolved, or at least narrowed, through the previously anticipated good-faith conference—do not "warrant[] discussion," all I will say is that pursuant to Local Rule 7.2(g), be advised that if the Secretary were ever required to produce confidential State Capitol Police records (or any other record listed in the Secretary's privilege log), a protective order would be appropriate, and the Secretary would certainly seek one.

The protective order (doc. 122) is already in place for this very purpose. All you have to do is tag the material "confidential."

In sum, please do the following:
- Confirm that you are *not* asserting—or please withdraw any assertion—that your privilege log is itself "confidential";

Def.'s Ex. 2

No.

- **State who (among the participants in the Satanic Temple's withheld correspondence) the Satanic Temple claims had an attorney-client relationship with whom, the reason for the formation of each such relationship, and at what times each such relationship existed, withdraw your assertion of both the attorney-client privilege and the work-product doctrine, and produce all responsive documents;**

The attorneys on the privilege log are Stu de Haan, Matthew A. Kezhaya, and Sonia A. Kezhaya. We decline to answer the remaining questions and decline to produce the documents.

- **State whether the Satanic Temple is withholding any documents responsive to the Secretary's November 2, 2021 requests, withdraw your timeliness objection, and produce all responsive documents; and**

In order: yes; no; no.

- **Either articulate a sufficient basis for designating the documents in the Satanic Temple's November 22 production as "confidential" or withdraw your confidentiality designations and inform the Court and all parties that you have done so.**

The documents are "confidential" because they address the identities and contact information of TST's decisionmakers or membership, details of TST's planning processes, are the kind of information that your new Satan friends will publicly share for the purpose of harassing TST and its decisionmakers or membership, or members of the Shield Wall network (and like groups who are *actually* fascist sympathizers and white supremicists) for the purpose of harassing or harming TST and its decisionmakers or membership.

We could have asserted the associational privilege on all of these materials, but -- as you say -- the documents are mundane and not particularly helpful or harmful to any party. We found it better to share the information because we are erring on the side of providing information rather than withholding it. If you would kindly do the same, it would put less work on the attorneys and on the Courts.

Def.'s Ex. 2

Matthew A. Kezhaya


Arkansas office:

Kezhaya Law PLC

1202 NE McClain Rd

Bentonville, AR 72712

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


Minnesota office:

Kezhaya Law PLC

333 N Washington Ave, #300

Minneapolis, MN 55401

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


This message may contain confidential or privileged information and was intended for a particular recipient.  If it appears that I sent this to you in error, please inform me and delete this message.


On Mon, Dec 6, 2021 at 11:58 AM Michael Cantrell <michael.cantrell@arkansasag.gov> wrote:

Matthew,


By flatly refusing to confer by phone, you are making it significantly more difficult to resolve or narrow areas of disagreement concerning discovery—which is the whole point of conferring.  I'm sorry you feel as you've stated you do, but this is both irrational and counterproductive.  Since you've stated you won't confer by phone, this correspondence is my (unavoidably lengthy) attempt to confer on the outstanding issues.

13

Def.'s Ex, 2

Deficiencies of the Satanic Temple's log

As I indicated in my previous email, I need to confer with you on the deficiencies of the Satanic Temple's November 22 privilege log.  As anticipated, the log shows that the withheld documents are relevant to the Secretary's defenses, and the Secretary has no other way to obtain this information.

**On the attorney-client privilege objection**—First, the Satanic Temple's privilege log asserts facially deficient claims of attorney-client privilege.  To be a valid assertion of the privilege, the parties to a communication must have an attorney-client relationship.  The only responsive documents listed in the privilege log that evince even the possibility of being communications between an attorney and a client are nos. 4, 10, 15, 24, 38, 40, 55, 56, 64, and 66.  But it is not evident that there is an attorney-client relationship even in those instances, and in any case a communication is not privileged simply by virtue of being made by or to a person who is an attorney.  Further, the privilege log clearly shows that every one of these communications were either addressed to or shared with third persons.  So the privilege does not attach to any of the responsive documents listed in the Satanic Temple's privilege log, and even if it did, it would be waived.

If we were speaking by phone, I would describe the deficiencies of the Satanic Temple's privilege log further.  But I will not do that in writing because it appears that you may have asserted that your privilege log is *itself* "confidential" under the terms of the protective order.  The Secretary specifically objects to any such designation because there is no reasonable basis for it, and in any event the Court has not permitted it.  Further, in the event we are unable to reach an understanding concerning the responsive documents the Satanic Temple has withheld, it will be necessary for the Court to review the Satanic Temple's privilege log and for each of us to make filings (e.g., a motion and response) concerning that matter—and it would certainly be unreasonable to have to file and serve those to the Court and all parties under seal.  I will remind you that the last time you designated your discovery correspondence as "confidential" you quickly realized the need to withdraw that designation (and unilaterally did so without seeking the Court's approval).  See your May 13, 2020 discovery correspondence.  So please confirm that you are *not* asserting—or please withdraw any assertion—that your privilege log is itself "confidential".

**On the work-product objection**—Second, the Satanic Temple has asserted the work-product doctrine for all of the responsive documents.  The work-product doctrine's purpose is to protect an attorney's ability to prepare documents in anticipation of litigation.  But *none* of the responsive documents listed in the Satanic Temple's privilege log were prepared by an attorney.  Further, in addition to not being prepared by an attorney, most of the responsive documents were also not *addressed* to an attorney (including nos. 1-3, 5-9, 12, 13, 15-20, 33-35, 39, 41-47, 27-29, 41-54, 57-60, 62, and 63).  Moreover, most of the responsive documents (including nos. 2, 3, 5, 7, 9, 11-13, 15-19, 21-23, 25-26, 28-32, 34, 36, 37, 39, 41-43, 45-47, 50, 52, 54, 57, 58 (mislabeled as 57), 61-63, 65, and 67) were prepared by *non-parties* not covered by the work-product doctrine.  So the Satanic Temple's claims that the responsive documents are protected by the work-product doctrine are facially deficient.

14

Based on the deficiencies of the Satanic Temple's assertion of attorney-client privilege and the work-product doctrine for these responsive documents, please state who (among the participants in the withheld correspondence) the Satanic Temple claims had an attorney-client relationship with whom, the reason for the formation of each such relationship, and at what times each such relationship existed, withdraw your assertion of both the attorney-client privilege and the work-product doctrine, and produce all responsive documents.

Improper timeliness objection to the Secretary's supplemental RFPs

I also need to confer with you on the Satanic Temple's timeliness objection to the Secretary's supplemental requests.

You will recall that two-and-a-half years ago, on June 29, 2019, the Secretary served his first set of discovery on the Satanic Temple, with Request for Production no. 3 requesting "a copy of the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018."  (DE 93-1 at 17).

The Satanic Temple responded with an unsigned response that stated generic objections of relevance and proportionality.  It failed to "state whether any responsive materials are being withheld on the basis of that objection" as specifically required by Rule 34(b)(2)(C).  I delineated the deficiencies of the Satanic Temple's response in a July 26, 2019 letter (DE 93-3 at 4-5) as well as during a two-hour-long conference call with you on August 5, 2019.

Then, in another unsigned response dated September 26, 2019, the Satanic Temple simply restated its relevance objection, again without stating whether it was withholding any responsive documents.  So, on October 22, 2019, I sent another letter to confer about Request for Production No. 3.  (DE 93-5 at 3).  You responded by email on November 7, 2019, indicating that you would not produce any responsive documents.

The Secretary filed a motion to compel on December 2, 2019.  On March 1, 2020, "the Court order[ed] the Satanic Temple to respond to Request for Production No. 3" seeking "the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018."  (DE 116 at 22, 23).  On March 17, 2020, I attempted to confer with you about this by email, but I received no response.  On April 10, 2020, I sent you another message.  The Satanic Temple then supplemented its response only with the dissembling claim that "'The Satanic Temple' is not a discrete entity with tax returns."  Once again, there was no statement whether any responsive documents were being withheld, as required by Rule 34(b)(2)(C).

Def.'s Ex. 2

The Secretary again raised the Satanic Temple's refusal by motion before the close of discovery.  The Court's October 22, 2021 Order on that motion clarified the Court's directive "that Secretary Thurston propound new requests for production specifically seeking tax returns for the years he seeks to specify from the affiliates he seeks to specify."  (DE 172 at 33).

The Secretary prepared and served those supplemental requests on November 2, 2021.  They request tax returns for the four corporate entities that Mr. Misicko testified about, on timely and proper notice and without objection, during the Satanic Temple's 30(b)(6) deposition (i.e., the United Federation of Churches, LLC; Reason Alliance, Ltd.; the Satanic Temple, Inc.; and Cinephobia, LLC) for each of the years 2015, 2016, 2017, and 2018.

A few days ago, on December 2, the Satanic Temple served a response with the erroneous heading "Certificates of service for subpoenas to Rapert and the AHHF."  That response again produces no documents and makes an objection only to timeliness, claiming that the requests "were sent after the discovery deadline and not supported by good cause to modify the deadline."  And, yet again, the responses fail to make the required statement whether any responsive documents are being withheld.

I recount this long history to show that, given the Court's orders and the Secretary's multiple requests and diligent efforts to obtain responsive documents over the past two-and-a-half years, the Satanic Temple's timeliness objection is simply not sustainable.  Therefore, please state whether the Satanic Temple is withholding any documents responsive to the Secretary's November 2, 2021 requests, withdraw your timeliness objection, and produce all responsive documents.

<u>Improper confidentiality designation of the Satanic Temple's Nov. 22 production</u>

You have asked for the Secretary's position on the status of the Satanic Temple's November 22 production.  As I stated during the November 23 status conference, the Secretary objects to the "confidential" designation of the documents in that production.  By the terms of the Court's March 1, 2020 Order, a protective order has been granted *only* as to organizational and tax documents (specifically: "current bylaws, operating agreements, or analogous documents" and "the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018.")  (DE 116 at 20-24).

The documents in the Satanic Temple's November 22 production do not meet those criteria.  The Satanic Temple bears the burden to make the good-cause showing that the specific documents fall within the scope of Rule 26(c) and that it will be prejudiced if they are not treated as confidential.  The Satanic Temple has

Def.'s Ex. 2

not made that showing for these documents, and given both their dated and extraordinarily mundane nature (which, again, I would characterize if we were speaking by phone, but I will not do that in writing because they are still deemed provisionally confidential) I doubt that it can be done.

So I ask that you either articulate a sufficient basis for designating these documents as "confidential" or withdraw your confidentiality designations and inform the Court and all parties that you have done so.

<u>Your issues with the Secretary's log</u>

Finally, because of your position that your issues with the Secretary's privilege log—which could have been resolved, or at least narrowed, through the previously anticipated good-faith conference—do not "warrant[] discussion," all I will say is that pursuant to Local Rule 7.2(g), be advised that if the Secretary were ever required to produce confidential State Capitol Police records (or any other record listed in the Secretary's privilege log), a protective order would be appropriate, and the Secretary would certainly seek one.

<u>In sum, please do the following:</u>

- Confirm that you are *not* asserting—or please withdraw any assertion—that your privilege log is itself "confidential";

- State who (among the participants in the Satanic Temple's withheld correspondence) the Satanic Temple claims had an attorney-client relationship with whom, the reason for the formation of each such relationship, and at what times each such relationship existed, withdraw your assertion of both the attorney-client privilege and the work-product doctrine, and produce all responsive documents;

- State whether the Satanic Temple is withholding any documents responsive to the Secretary's November 2, 2021 requests, withdraw your timeliness objection, and produce all responsive documents; and

- Either articulate a sufficient basis for designating the documents in the Satanic Temple's November 22 production as "confidential" or withdraw your confidentiality designations and inform the Court and all parties that you have done so.

Please respond promptly.  I'm sending this just before noon on Monday, December 6, 2021.  If I don't hear from you by this Thursday at noon, I'll assume that you've rejected my attempt to confer on these issues.

Regards,

Def.'s Ex, 2

**Michael A. Cantrell**

Assistant Solicitor General

Office of Arkansas Attorney General Leslie Rutledge

323 Center Street, Suite 200

Little Rock, Arkansas 72201

Michael.Cantrell@ArkansasAG.gov | ArkansasAG.gov

**From:** Matthew A. Kezhaya <matt@kezhaya.law>
**Sent:** Friday, December 3, 2021 4:33 PM
**To:** Michael Cantrell <michael.cantrell@arkansasag.gov>
**Cc:** Sonia A. Kezhaya <sonia@kezhaya.law>; Stuart de Haan, Esq. <stu.dehaan@gmail.com>; Nicholas Bronni <nicholas.bronni@arkansasag.gov>; Vincent Wagner <vincent.wagner@arkansasag.gov>; Dylan Jacobs <dylan.jacobs@arkansasag.gov>
**Subject:** Re: FW: Matthew Kezhaya shared "2021 11 22 TST supp disc - confidential" with you

**EXTERNAL EMAIL**

I'm unclear on how you can possibly be "very confused." There are two separate email threads for two separate issues. This email thread relates solely to the protective order. Hence my specificity when stating the contemplated good faith conference was "re: clarifying the protective order (doc. 122) to allow designation of confidential materials for any documents, not just TST's bylaws." Because of your most recent effort at a smear campaign, doc. 201 at 16-17, that invitation is now closed. Together with the lie-founded motion for contempt, doc. 124, you have destroyed every shred of your credibility. From here on out, any discussions between Defendant and Intervenors will be in writing. State your position as to how the protective order does not permit me to produce the correspondence with the "confidential" designation, within the meaning and effect of the order, or I will consider this email the last word on that issue.

The other email thread related to the deficiencies of Defendant's privilege log. That email thread included my written good faith effort to confer re: the deficiencies. As I wrote in the motion, you have had three opportunities to prepare a proper privilege log. I was not bluffing when I told you that I expected a proper privilege log and all document productions by November 30. So, no, I do not think the deficiencies of Defendant's privilege log warrants discussion.

Def.'s Ex, 2

Matthew A. Kezhaya


Arkansas office:

Kezhaya Law PLC

1202 NE McClain Rd

Bentonville, AR 72712

p:  (479) 431-6112

f:  (612) 349-2760

e:  matt@kezhaya.law


Minnesota office:

Kezhaya Law PLC

333 N Washington Ave, #300

Minneapolis, MN 55401

p:  (479) 431-6112

f:  (612) 349-2760

e:  matt@kezhaya.law


This message may contain confidential or privileged information and was intended for a particular recipient.  If it appears that I sent this to you in error, please inform me and delete this message.


On Fri, Dec 3, 2021 at 2:00 PM Michael Cantrell <michael.cantrell@arkansasag.gov> wrote:

Matthew,


Following up on my last message from yesterday morning—We do need to confer at least regarding the Intervenors' Nov. 22 production and privilege log as well as the objections the Intervenors served yesterday to Defendant's supplemental RFPs.  I can be prepared either Monday or Tuesday of next week, but I need to know what (if anything)

Def.'s Ex, 2

in addition to these things you will want to discuss by phone, so please let me know both that and a time that will work for you.  Thank you.

Mike

---

**From:** Michael Cantrell <michael.cantrell@arkansasag.gov>
**Sent:** Thursday, December 2, 2021 9:19 AM
**To:** 'Matthew A. Kezhaya' <matt@kezhaya.law>; Sonia A. Kezhaya <sonia@kezhaya.law>; Stuart de Haan, Esq. <stu.dehaan@gmail.com>
**Cc:** Nicholas Bronni <nicholas.bronni@arkansasag.gov>; Vincent Wagner <vincent.wagner@arkansasag.gov>; Dylan Jacobs <dylan.jacobs@arkansasag.gov>; Michael Cantrell <michael.cantrell@arkansasag.gov>
**Subject:** RE: FW: Matthew Kezhaya shared "2021 11 22 TST supp disc - confidential" with you.

Matthew,

I have read through the motion to compel that you filed late yesterday evening.  Given our previous email correspondence (below) in which I agreed with you on arranging a good-faith conference, I'm very confused as to why you filed it.  Did you think this was not something worth discussing?  Or have you decided that you do not want to have a conference?  Please let me know.

Mike

---

**From:** Michael Cantrell
**Sent:** Tuesday, November 30, 2021 4:45 PM
**To:** 'Matthew A. Kezhaya' <matt@kezhaya.law>; Sonia A. Kezhaya <sonia@kezhaya.law>; Stuart de Haan, Esq. <stu.dehaan@gmail.com>
**Cc:** Nicholas Bronni <nicholas.bronni@arkansasag.gov>; Vincent Wagner <vincent.wagner@arkansasag.gov>; Dylan Jacobs <dylan.jacobs@arkansasag.gov>; Michael Cantrell <michael.cantrell@arkansasag.gov>
**Subject:** RE: FW: Matthew Kezhaya shared "2021 11 22 TST supp disc - confidential" with you.

Matthew,

Thanks for your response and clarification.  Yes, we will need to confer.  Let me get back with you on that.

Def.'s Ex, 2

Regards,


Mike




From: Matthew A. Kezhaya <matt@kezhaya.law>
Sent: Tuesday, November 23, 2021 2:21 PM
To: Michael Cantrell <michael.cantrell@arkansasag.gov>
Cc: Sonia A. Kezhaya <sonia@kezhaya.law>; Stuart de Haan, Esq. <stu.dehaan@gmail.com>
Subject: Re: FW: Matthew Kezhaya shared "2021 11 22 TST supp disc - confidential" with you.



**EXTERNAL EMAIL**


Andy was having difficulty accessing the documents through MyCase, so I attempted service through another means. These are the same documents you already have.


On the text messages, TST 200-207, the confidential tag and the bates numbers are obscured by the black background. I need to re-number everything in a non-black and non-white font so they are visible. I will work that up within the next couple of weeks.


In the interim, we should arrange a good faith conference re: clarifying the protective order (doc. 122) to allow designation of confidential materials for any documents, not just TST's bylaws. When are you free between November 29 and December 7? Do you think we need to call a meeting of all the attorneys? I expect the *Cave* and the *Orsi* plaintiffs to not care about the protective order because they don't have any requests pending or responses outstanding. If you disagree, I won't push against it. I can arrange a video conference.


Matthew A. Kezhaya


Arkansas office:

Kezhaya Law PLC

1202 NE McClain Rd

Def.'s Ex. 2

Bentonville, AR 72712

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


Minnesota office:

Kezhaya Law PLC

333 N Washington Ave, #300

Minneapolis, MN 55401

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


This message may contain confidential or privileged information and was intended for a particular recipient.  If it appears that I sent this to you in error, please inform me and delete this message.


On Tue, Nov 23, 2021 at 2:07 PM Michael Cantrell <michael.cantrell@arkansasag.gov> wrote:

Matthew,


I received the email below and a couple of other emails from you at about 8:30 this morning.  Are there any items that you are providing today in addition to the documents or communications that you produced yesterday evening?  Just wanting to make sure I understand why I received these emails this morning.  Thanks.


Regards,


Mike

Def.'s Ex, 2

**Michael A. Cantrell**

Assistant Solicitor General

Office of Arkansas Attorney General Leslie Rutledge

323 Center Street, Suite 200

Little Rock, Arkansas 72201

Michael.Cantrell@ArkansasAG.gov | ArkansasAG.gov

---

**From:** Matthew Kezhaya <no-reply@sharepointonline.com>
**Sent:** Tuesday, November 23, 2021 8:35 AM
**To:** aschultz@rodey.com; hsasser@firstliberty.org; gerrysch@b-s-m-law.com; jburnett@laveyandburnett.com; josh@greenandgillispie.com; lepatterson@firstliberty.org; mstambaugh@rodey.com; Michael Cantrell <michael.cantrell@arkansasag.gov>; mberry@firstliberty.org; mmiller@americanhumanist.org; patrick@ffrf.org; Vincent Wagner <vincent.wagner@arkansasag.gov>; William C. Bird III <william.bird@arkansasag.gov>
**Subject:** Matthew Kezhaya shared "2021 11 22 TST supp disc - confidential" with you.

<div style="border:2px solid red; display:inline-block; padding:10px;">

**EXTERNAL EMAIL**

</div>



## Matthew Kezhaya shared a file with you

Here's the document that Matthew Kezhaya shared with you.

Def.'s Ex, 2



Def.'s Ex, 2