```
 1                    IN THE UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF ARKANSAS
 2                             CENTRAL DIVISION

 3     DONNA CAVE, JUDITH LANSKY,
       PAT PIAZZA and SUSAN RUSSELL,     No. 4:18CV00342-KGB
 4                   Plaintiffs

 5     EUGENE LEVY, Rabbi; GALE
       STEWART; ANNE ORSI; WALTER
 6     RIDDICK; JOAN DIETZ; TERESA       Wednesday, March 11, 2020
       GRIDER; ARKANSAS SOCIETY OF       Little Rock, Arkansas
 7     FREETHINKERS; VICTOR H.           2:36 p.m.
       NIXON, Rev.; FREEDOM FROM
 8     RELIGION FOUNDATION INC.; and
       AMERICAN HUMANIST
 9     ASSOCIATION,
             Consolidated Plaintiffs
10
       v.
11
       JOHN THURSTON, Arkansas
12     Secretary of State, in his
       official capacity,
13                   Defendant

14
       SATANIC TEMPLE; DOUG MISICKO,
15     also known as Lucien Greaves;
       and ERIKA ROBBINS,
16                   Intervenors.

17              TRANSCRIPT OF TELEPHONE CONFERENCE
            BEFORE THE HONORABLE KRISTINE G. BAKER,
18                UNITED STATES DISTRICT JUDGE

19     APPEARANCES:

20
       On Behalf of the Orsi Plaintiffs:
21
            MR. DARRYL E. BAKER, Attorney at Law
22            Baker, Schulze & Murphy
              2311 Biscayne Drive, Suite 300
23            Little Rock, Arkansas  72227

24

25                                       [APPEARANCES CONTINUED]
```

1   APPEARANCES CONTINUED:

2

3   On Behalf of Defendants:

4       MR. MICHAEL CANTRELL, Assistant Solicitor General
          Arkansas Attorney General's Office
5         Catlett-Prien Tower Building
          323 Center Street, Suite 200
6         Little Rock, Arkansas  72201-2610

7

8   On Behalf of Intervenor The Satanic Temple:

9       MR. MATTHEW A. KEZHAYA, Attorney at Law
          Kezhaya Law PLC
10        1202 North East McClain Road
          Bentonville, Arkansas  72712

11

12

13

14

15

16

17

18

19

20

21

22

23

24
        *Proceedings reported by machine stenography.  Transcript
25  prepared utilizing computer-aided transcription.*

P R O C E E D I N G S

THE COURT:  Counsel, we're on the record in Case No. 4:18CV342.  It's Cave versus Arkansas Secretary of State John Thurston in his official capacity.

Are all parties represented?  It's my understanding that you all are together at a deposition.  Is that right?

MR. CANTRELL:  Yes, Your Honor.  This is Michael Cantrell with the defendant.  We are here in a conference room calling in on speakerphone.  And all parties are represented by counsel.

THE COURT:  All right.  I've received -- and just so it's clear for our record, we are on a conference call out in open court.  No one is here in the courtroom with us other than our court reporter and then court staff.

I've received an email with respect to disputes in regard to discovery questions that are addressed to Mr. Misicko.  I'm not certain if I am pronouncing his name correctly.

Am I, Mr. Kezhaya?

MR. KEZHAYA:  Yes, Your Honor.  Doug is not particular about the pronunciation of his last name.

THE COURT:  All right.  With respect to this, I've received Mr. Cantrell's email first in regard to questions.

And then, Mr. Kezhaya, I've received an email from you with respect to questions that are in dispute.  We're going to start with what we received first.  I will hear from Mr. Kezhaya as to

1   why the request is objectionable.  Then I'll hear from Mr.

2   Cantrell as to why he believes the request is appropriate with

3   respect to the questions that Mr. Cantrell alerted the Court to

4   earlier today.

5       So the first question I have is yesterday I suppose there

6   was a 30(b)(6) deposition for a representative of The Satanic

7   Temple.  So the follow-up questions today, question one was how

8   was your compensation structured before four months ago?  And is

9   the first question in that series what changed four months ago,

10  Mr. Cantrell?

11          MR. CANTRELL:  Let's see.  Yes, Your Honor.  That's

12  correct.

13          THE COURT:  All right.  Go ahead.

14          MR. CANTRELL:  Your Honor, we are attempting to

15  support our defense in this case.  And we're attempting to

16  articulate very specific, very narrow questions that will assist

17  us in doing that.  And the witness in his 30(b)(6) capacity did

18  testify that four months ago the structure of his compensation

19  changed.  And this question is merely directed, as well as the

20  following two questions, as understanding what was the case at

21  that time, why did it change and how is it currently structured.

22          THE COURT:  And my understanding, Mr. Cantrell, is

23  that those questions are restricted to income that's coming from

24  The Satanic Temple, if any.

25          MR. CANTRELL:  That is correct, Your Honor.  Just a

1   bit more background, we have -- it has become -- I think it's

2   become clear in the deposition that whenever we're speaking of

3   The Satanic Temple, it includes organizations such as the United

4   Federation of Churches LLC, The Satanic Temple Inc., Reason

5   Alliance Limited.  Am I missing one?  I think -- I think those

6   are the three.  So those would all be included I believe under

7   the umbrella of The Satanic Temple, yes.

8         THE COURT:  All right.  Mr. Kezhaya, why -- is there

9   an objection with respect to -- let's take it to these three

10  questions, which, as I understand, are:  What changed four

11  months ago with respect to compensation?  How was the

12  compensation structured before four months ago?  And how is

13  compensation currently structured?

14        MR. KEZHAYA:  Your Honor, it's our interpretation of

15  the discovery order at pages 27 and 28 that the issue of all

16  legal and financial relationships -- I'm going to summarize here

17  -- that Mr. Misicko has with TST and TST affiliates is overly

18  broad.  This is a deposition.  A broad scope of discovery still

19  applies.  Also, I dispute that these are narrowly tailored

20  questions.  Mr. Cantrell does not inform the Court that he spent

21  an hour talking about his various sources of income immediately

22  preceding these questions.  The testimony yesterday is that he

23  does not take regular compensation.  His statement was:  "One

24  time four months ago I took some compensation."  However,

25  overall, Your Honor, it's a (b)(2) objection, 30(b)(2) objection

1  that we're enforcing limitation of the Court.  It's also a

2  (b)(3) issue that I think these are in bad faith in that they

3  unfairly are meant to annoy, embarrass or oppress Mr. Misicko by

4  attempting to make him feel embarrassed for making a living.

5      Last, as near as I can tell from yesterday's deposition,

6  these questions are rooted in internet attacks from a lot of

7  people, none of whom are witnesses and a lot of whom use

8  pseudonyms.  I just think that this is patently irrelevant for

9  that reason and patent hearsay for the same reason.

10          THE COURT:  What's The Satanic Temple and Mr.

11  Misicko's position with respect to these other entities that Mr.

12  Cantrell identified as being a part of The Satanic Temple?

13          MR. KEZHAYA:  The Satanic Temple acknowledges, if I

14  could paraphrase the testimony, that -- they disclaim it being

15  an umbrella organization, but I think he called them all

16  affiliates.  All of these entities on the order of 27 except for

17  Spectacle Films -- well, maybe not all of them -- United

18  Federation of Churches, Reason Alliance Limited, The Satanic

19  Temple Inc. I think are three organizations that everyone seems

20  to agree is broadly characterized as The Satanic Temple.

21          THE COURT:  All right.  Anything further, Mr. Kezhaya,

22  before I turn to Mr. Cantrell?

23          MR. KEZHAYA:  Nothing further.

24          THE COURT:  Mr. Cantrell.

25          MR. CANTRELL:  Your Honor, to the first point Mr.

1  Kezhaya made, we did not spend an hour on income prior to these

2  questions, but we did have a discussion on income.  It was

3  income from other sources, income from sources other than The

4  Satanic Temple.  Again, that certainly was not an hour.  This is

5  -- as for Interrogatory No. 9, in this Court's discovery order

6  at Docket 116, the discussion there dealt with an interrogatory

7  that was asking about many different organizations and persons,

8  including The Satanic Temple, Doug Misicko, Cevin Soling, the

9  United Federation of Churches LLC, Reason Alliance Limited, the

10  Alliance for Self-Directed Education Inc., Alliance for

11  Integrity and Justice Limited and Spectacle Films.  And the

12  Court found that that question, that interrogatory, was overly

13  broad, unduly burdensome and not proportionate to the needs of

14  the case.

15      The questions we've asked here are very specific, very

16  narrow, only directed toward Mr. Misicko's income from The

17  Satanic Temple.  So these questions are not at all like

18  Interrogatory No. 9.  This is certainly not an attempt to

19  embarrass Mr. Misicko by any means.  We are asking these

20  questions because we need them to support our defense in this

21  case.  And I'll just add that the testimony has been that there

22  is an organization of what's planned to be 50,000 people.  And

23  the witness has testified that the finances are controlled

24  exclusively by two individuals, and those individuals have no

25  oversight.  There's no oversight over those individuals in their

1    use of their financial decisions.  And during the 30(b)(6)

2    deposition, Mr. Misicko exhibited a lack of knowledge or else

3    was evasive with respect to The Satanic Temple organization and

4    financial arrangements.

5        So our attempt to ask these questions is to, again, support

6    our defense, to get the information we need in a very narrowly

7    tailored way.  So this is not at all like Interrogatory No. 9.

8              THE COURT:  Mr. Cantrell, do you disagree that the

9    testimony to this point has been that Mr. Misicko does not take

10   regular compensation and one time four months ago took

11   compensation?

12             MR. CANTRELL:  It is difficult to pin Mr. Misicko down

13   on what income he took, and that goes to the nature of the

14   question.  We've asked how the compensation was structured.  So

15   we're trying to understand, you know, how he took income, when

16   he took income and what type of income it was.  So the nature of

17   that question goes even to try to understand that question that

18   the Court is asking about.

19             THE COURT:  How far back are you trying to seek this

20   information?

21             MR. CANTRELL:  We are not wanting to go back beyond

22   2017.

23             THE COURT:  All right.  I have those questions under

24   advisement.

25       What is the scope of the next one?  The next question just

1   literally reads:  "How much do you receive in various types of
2   compensation?"
3          MR. KEZHAYA:  Your Honor, before we move past this
4   one, I would like to provide the case of *Curtis v. Partain*, 272
5   Ark. 400, the Supreme Court of Arkansas, dated 1981, that the
6   Court should consider while ruling on this issue.  According to
7   the Westlaw note --
8          MR. CANTRELL:  Your Honor, I would object.  If this is
9   from the Arkansas Supreme Court, it does not have any bearing on
10  proceedings in federal court.
11         THE COURT:  With all due respect, Mr. Cantrell, I'm
12  going to hear out Mr. Kezhaya.  Then I'll let you have the
13  floor.
14      Mr. Kezhaya, you may proceed.
15         MR. KEZHAYA:  Thank you, Your Honor.  I acknowledge
16  that this is not binding upon the Court.  However, the Arkansas
17  rules of procedure mirror the federal rules of procedure.  So I
18  suspect this is going to be a bread crumb to aid the Court in
19  its consideration.  The headnote states that a prima facie case
20  has to be made before production of private tax records and
21  personal financial data from a person would be ordered.  They
22  can't just cite to an internet article questioning whether TST's
23  finances are proper.  They need to actually produce some kind of
24  evidence that they are, in fact, not proper.
25         THE COURT:  All right.  Mr. Cantrell, I'll hear from

1    you with respect to that if you have anything else to add.

2            MR. CANTRELL:  Your Honor, I think given -- and I'm

3    not sure what Mr. Kezhaya is referring to talking about pointing

4    to an internet article.  But given the nature of The Satanic

5    Temple and given the finances are exclusively controlled by two

6    individuals with no oversight, and we have been unable to obtain

7    any information to this point about financial matters, the

8    ordered -- the court-ordered production has not been made by The

9    Satanic Temple intervenors, so we don't even have that

10   information.  We are just doing everything we can within the

11   bounds of permissible discovery, again to support our defense,

12   that The Satanic Temple is organized in a way -- that The

13   Satanic Temple is organized in a way to provide a substantial

14   income to two individuals.

15           MR. KEZHAYA:  Your Honor, I would like to modify my

16   prior argument that this case speaks of privilege, so I had to

17   walk back that it's a procedural issue.  Actually, it's an

18   Arkansas privilege issue on the issue of taxes, which I do

19   believe is binding on the Court.

20           THE COURT:  So with respect to the next question, "how

21   much do you receive in various types of compensation," Mr.

22   Cantrell, what's the scope of that question?

23           MR. CANTRELL:  The scope of that is a snapshot of, you

24   know, currently.  So I would say, you know, whatever -- you

25   know, going back, let's say, to the beginning of the year and

1    any types of compensation that Mr. Misicko might have received

2    during that time, so since January 1st, 2020.

3              THE COURT:  From any source?

4              MR. CANTRELL:  No.  From The Satanic Temple.

5              THE COURT:  And the tax return request 2017, 2018,

6    2019, is that to Mr. Misicko individually that you are seeking

7    that?

8              MR. CANTRELL:  That's correct, Your Honor.

9              THE COURT:  Why?

10             MR. CANTRELL:  Again, Your Honor, we've been unable to

11   obtain any information from The Satanic Temple itself.  And I

12   think that there is likely to be information contained on Mr.

13   Misicko's tax returns that would not be available otherwise,

14   again, that would assist us in making our defense concerning the

15   nature of The Satanic Temple and how it's organized.

16             THE COURT:  Mr. Kezhaya, do you have anything to add

17   with respect to those questions that I've asked of Mr. Cantrell

18   or his responses?

19             MR. KEZHAYA:  Your Honor, I would add only that the

20   scope of discovery requires that the evidence itself be

21   permissible or lead to admissible evidence in some way.  It

22   strikes me as patently outside the scope of discovery for the

23   same reasons that Erika's income information is not of any

24   relevance to this case, the same reason that the various Orsi

25   plaintiffs' information is not relevant to this case.  It

1    doesn't change anything that Doug happens to be one of the

2    co-founders of TST.  They are putting special scrutiny on him,

3    and I think that's improper.

4              MR. CANTRELL:  Your Honor, if I may address that

5    point.

6              THE COURT:  You may.

7              MR. CANTRELL:  Your Honor, an emerging theme of our

8    discovery is that The Satanic Temple often claims one thing and

9    does something else.  And this is an avenue that we think is

10   especially helpful for demonstrating the nature of The Satanic

11   Temple and how it is at odds with what is often claimed.

12             THE COURT:  Here's my ruling with respect to this

13   matter today.  In regard to the questions to Mr. Misicko about

14   compensation that he has received from 2017 through current from

15   The Satanic Temple or one of the other entities that the parties

16   agree are affiliate entities, you may ask the question about

17   compensation received and structured.

18        You may not have his individual tax returns or ask if he's

19   filed tax returns for the years identified, and you may not ask

20   the other questions that are there.  At this point I don't think

21   you've made a good-faith showing for that, Mr. Cantrell.  And

22   Mr. Kezhaya is right.  I would not let you have that for any of

23   the other individual plaintiffs in this case.  If for some

24   reason discovery in this case necessitates that I reconsider

25   that, you may certainly ask for me to reconsider.  But at this

```
 1    point I don't think there's been a basis for that.  And in the
 2    typical case I would not permit that type of discovery.
 3             MR. CANTRELL:  Your Honor, could I also ask if it
 4    would be permissible to ask follow-up questions to determine --
 5    you know, if the witness says he doesn't know the answer to
 6    these questions, to ask follow-up questions to determine how to
 7    obtain the information that the question speaks?
 8             THE COURT:  Mr. Kezhaya, do you wish to respond to
 9    that before I rule on it?
10             MR. KEZHAYA:  Your Honor, I think if the Court grants
11    that, there should be hard limits on it.  And I think we should
12    probably talk about it now because I envision a future dispute
13    about what exactly it means for proof of these things.  Given
14    the Court's order limiting the tax returns, I think that some
15    kind of guidance is a good idea.
16             THE COURT:  Bear with me just one moment.
17         With respect to the question, I'll permit the questions
18    that I've said that I would permit with respect to compensation
19    from The Satanic Temple or the other affiliate entities from
20    2017 to current regarding whether he received compensation and
21    then how is the compensation structured during that time period.
22    If Mr. Misicko is not able to answer those questions for the
23    entire time period, then I think it's fair game to ask how he
24    would go about determining that information.  But I think at
25    this point any follow-up discovery requests or other requests
```

1  with respect to that, I'll entertain objections, and I'll rule

2  on those as they come up.

3       MR. KEZHAYA:  Your Honor, a point of clarification.  I

4  have a note received.  Is that whether he's received or how much

5  he's received?

6       THE COURT:  The question that's presented to me is

7  that the testimony yesterday was that Mr. Misicko received an

8  income from The Satanic Temple until four months ago.  What

9  changed at that time?  How was his compensation structured

10  before four months ago, and how is his compensation currently

11  structured?  My understanding is that the defendant wishes to

12  ask the question about compensation from 2017 to the present

13  with respect to The Satanic Temple and the affiliate entities.

14       MR. KEZHAYA:  Where did we land on how much do you

15  receive in various types of compensation?  Did the Court limit

16  that?

17       THE COURT:  I think that that question can be answered

18  if he's disclosed that he receives compensation.  In part, I'm

19  looking at this with respect to the tax return information that

20  I said could be obtained with respect to The Satanic Temple.

21  With respect to that information, if returns were filed, then

22  the entity has to disclose managers and highly compensated

23  employees and also would have to disclose the compensation and

24  other payments made during the year to each individual described

25  as a manager and highly compensated employee.

1          MR. CANTRELL:  This is Mike Cantrell.

2          THE COURT:  Yes.

3          MR. CANTRELL:  Your Honor, where were you referring to

4   just then?

5          THE COURT:  It's on page 23 of the order.

6          MR. CANTRELL:  Thank you.

7          THE COURT:  That's the IRS reg.  Right?  If a return

8   is filed, those are two pieces of information that are required

9   in the return.  I understand --

10          MR. CANTRELL:  Thank you, Your Honor.

11          THE COURT:  I understand The Satanic Temple has a

12   letter that it was not required to file that type of return for

13   at least one of the years that's relevant during the timetable.

14   Does that answer the question, Mr. Kezhaya?

15          MR. KEZHAYA:  Yes, Your Honor.  Thank you.

16          MR. CANTRELL:  Your Honor, I do have one question.

17   With respect to the tax returns that this Court has ordered to

18   be produced, can the Court clarify that those returns are for

19   all of the affiliate organizations?

20          THE COURT:  I don't know that that was the request.

21   Right?  Request for Production No. 2 seeks year-end budgets for

22   The Satanic Temple for the years 2015, '16, '17, '18 and the

23   current year.  That was for -- the Request for Production No. 3

24   seeks Satanic Temple's state and federal tax returns for 2015,

25   2016, 2017 and 2018.  And it was Request for Production No. 3.

1          MR. CANTRELL:  Yes, Your Honor.  And now that it has

2    come out in discovery that The Satanic Temple includes or refers

3    to these other organizations, I would ask that it be understood

4    that this interrogatory covers those affiliate organizations.

5          THE COURT:  Mr. Kezhaya, what's the position of The

6    Satanic Temple with respect to that?

7          MR. KEZHAYA:  Your Honor, I dispute that the state had

8    no idea that these affiliate organizations were all conceived of

9    as The Satanic Temple.  If the Court turns to page 27, they have

10   produced a series of organizations, all of which, with the sole

11   exception of The Satanic Temple Inc., are in there.  So if the

12   Court does make this order, I think it would have to be just the

13   three to four entities I talked about earlier, the ones we all

14   agree are affiliate entities.

15         THE COURT:  Mr. Cantrell, correct me if I'm wrong.

16   But I'm understanding that that's what you are seeking.  Right?

17   Just the entities that the parties, as Mr. Cantrell has

18   represented, agree are affiliated entities.  Is that right?

19         MR. CANTRELL:  Yes.  Just the three entities:  United

20   Federation of Churches LLC, Reason Alliance Limited and The

21   Satanic Temple Inc.

22         THE COURT:  Mr. Kezhaya, what's your position with

23   respect to those three entities and the tax return request?

24         MR. KEZHAYA:  Solely, Your Honor -- well, actually

25   twofold, as I've been thinking about it.  First --

1          THE COURT:  Hold on just a minute, Mr. Kezhaya.  Our

2     court reporter is having trouble hearing you and getting it all

3     down.  I know you all are on speakerphone, and that makes it a

4     little bit harder for us to pick it up, if you could just talk a

5     little bit more directly into the microphone on the phone.

6          MR. KEZHAYA:  Thank you, Your Honor.  Reason Alliance

7     Limited is a 501(c)(3), which I understand can mean they don't

8     file state and federal tax returns, so those tax returns won't

9     be available.  Secondly, the state should have submitted a

10    request for production as to those specific entities if they

11    want an order compelling those.  I don't think an order will be

12    necessary.  But I do think they have to send a new request for

13    production giving me 30 days to go get them.

14         THE COURT:  And I agree with that.  So, Mr. Cantrell,

15    you are not limited in the number of requests for production you

16    can propound.  So I think a follow-up request for production

17    propounded with respect to these affiliate entities and for the

18    years and for the information that Mr. Thurston seeks is the

19    appropriate way to go.  And then Mr. Kezhaya can lodge any

20    objections that need to be lodged on behalf of these entities

21    with respect to these issues or make any clarifications that he

22    needs to make with respect to the status of these entities.  All

23    right?

24         MR. CANTRELL:  Thank you, Your Honor.

25         MR. KEZHAYA:  Thank you, Your Honor.  We do have a

1    number of other issues that I would like to raise as well.

2            THE COURT:  And you may.  I have the email that you

3    sent, Mr. Kezhaya, with the list.  I don't know if that's the

4    list you are referring to or if the list has changed.

5            MR. KEZHAYA:  The list has changed.  I need to

6    supplement it to some extent.  Your Honor, I have a concern that

7    these depositions are being conducted in bad faith.  We tallied

8    up the total amount of time we spent properly in depositions on

9    the record at nine hours and 34 minutes so far.  Everything but

10   the issues that are actually relevant in this case have been

11   discussed from internet articles, without supporting witnesses,

12   that have been produced by people that have not been identified

13   prior to the deposition, a podcast of dubious authenticity from

14   20 years ago that the witness disputes is actually a true and

15   correct statement that he made, internet conspiracy theories.

16   Just before this hearing, we were getting into legal proceedings

17   from pre-2013.  Suffice it to say, that as a general matter,

18   these depositions are being conducted in bad faith.  And I

19   believe the purpose is to unreasonably humiliate, embarrass or

20   oppress.

21       There are two instances that I think are highly

22   objectionable.  Mr. Misicko uses a pseudonym to protect not only

23   him and his safety but the safety of those around him.

24   Questions have been asked that, as near as we can tell, are

25   trying to identify his friends and family.  That's not

1    appropriate.  His high school work background is not

2    appropriate.  I would like an order of the Court limiting the

3    remainder of this deposition.

4           THE COURT:  All right.  With respect to that overall

5    objection, let's just go item by item on the list, Mr. Kezhaya.

6    And then that may flesh out a little bit more of your concern

7    with respect to some of these issues.

8        Mr. Cantrell, why is it relevant regarding identifying

9    family and friends of this party?

10          MR. CANTRELL:  Your Honor, I am unsure as to why Mr.

11   Kezhaya is raising this issue at this time.  He has, in

12   violation of the rules multiple times, directed the witness not

13   to answer questions without claiming privilege or trying to seek

14   a motion from the Court or anything of that nature.  But I have

15   no questions that I am seeking to have answered about the

16   friends and family of Mr. Misicko.  So I did attempt to do basic

17   background questioning, and Mr. Kezhaya was unreasonably

18   objectionable to that.

19          THE COURT:  Mr. Cantrell, you are not answering my

20   question.

21          MR. CANTRELL:  I'm sorry, Your Honor.

22          THE COURT:  Why would that be relevant in this case?

23          MR. CANTRELL:  Your Honor, it's relevant to understand

24   where Mr. Misicko is coming from.  I asked the question where he

25   was from.  I did not ask who his family was.  I did not ask -- I

1    don't believe I asked who his friends are.  The question that I

2    was asking was to try to understand his last name, whether it

3    was his mother or father's last name.  I wasn't even asking him

4    who his mother or father was.  And I think that's where all of

5    this began with Mr. Kezhaya's objection, so I'm not -- I haven't

6    tried to make an issue of his friends or family.

7              THE COURT:  I don't know why that's relevant or

8    discoverable in this case.  This is set for a bench trial.  It's

9    not set for a jury trial.  You are not going to be picking

10   jurors.  The same with respect to high school background, work

11   information, I'm not sure why we need to go back that far with

12   respect to any of these plaintiffs' backgrounds in regard to

13   those issues.  If there's some particular reason that's relevant

14   in this case, you can certainly make that argument to me.  But

15   I'm not certain why that would be necessary.

16             MR. CANTRELL:  Your Honor, if I may -- and, again, it

17   was not my intent to inquire into high school work background.

18   I was just trying to, again, get a picture of Mr. Misicko's

19   experience in the world just to get an understanding of who he

20   is, how he thinks and those sorts of background issues.

21             MR. KEZHAYA:  Your Honor, I strongly object to him

22   saying he's not looking into high school work background.  The

23   question was:  "Where were you working in a book store before

24   you went to college?"  This is what I'm talking about.  Also,

25   with respect to the friends and family point, it wasn't just

1   that one.  He was also asking about friends and family in

2   Arkansas, which the Court rightly points out, we're not picking

3   juries here, so it doesn't matter.

4           MR. CANTRELL:  Your Honor, I did not know when it was

5   that Mr. Misicko worked at any particular time.  And whenever I

6   found out it was before college, I did not inquire, I don't

7   think, very much at all about that.  That wasn't something that

8   was interesting.

9           MR. KEZHAYA:  Your Honor, he stopped questioning

10  because I instructed the witness not to answer those questions.

11  And the reason why I instructed the witness not to answer those

12  questions and didn't immediately file a (b)(3) is pursuant to

13  the Court's advice at our last discovery hearing, where the

14  Court indicated we needed to get as much that we can all agree

15  to get out, make as much productive use of this time as we can.

16          THE COURT:  So I understand, Mr. Cantrell, you are not

17  going to ask any more about family and friends, and I won't be

18  receiving a motion to compel any information about family and

19  friends at this point.  Is that right?

20          MR. CANTRELL:  That's correct, Your Honor.  I have no

21  questions about family and friends.  I think the only question I

22  might ask at this point that would be remotely related to that

23  would be whether Doug Misicko is his birth name, the name on his

24  birth certificate, so that we could find out whether or not his

25  name has been changed.  But that would be the only question even

1    remotely close to the friends and family issue that Mr. Kezhaya

2    is raising.

3            MR. KEZHAYA:  Your Honor, this goes right back to the

4    exact same issue.  That information can be used to find friends

5    and family, to harass Mr. Misicko.  That's the problem, not just

6    him, but his friends and family.  It's patently irrelevant to

7    the issues before this case.  There are two questions before the

8    Court.  Is the Ten Commandments monument an Establishment Clause

9    violation?  Is the usurping act a violation of equal protection?

10   Those are the two valid questions.  None of this impacts either

11   of those two questions, nor does it have any conceivable

12   relationship to anything that can lead to answering those two

13   questions.

14           THE COURT:  At this point I tend to agree with Mr.

15   Kezhaya, Mr. Cantrell.  I'm not sure why his birth name is

16   relevant.  If you want to ask if he's ever legally changed his

17   name, then you can see where that goes.  But my suspicion is

18   before I would require him to turn over any birth name or a name

19   that could be traced back to family and friends or anyone else

20   who could be harassed in the case, we may need to talk about a

21   protective order with respect to that.  So that's my ruling at

22   this point with respect to that question.  I think you can ask

23   if he's ever changed his name legally, but I don't think you get

24   to ask what his birth name is.

25           MR. CANTRELL:  That's perfectly acceptable.  Of

1    course, it's acceptable.  I understand Your Honor's reasoning.

2    And the effort would be -- the interest would be, again, just to

3    locate criminal potentially information or anything of that

4    nature that might be legitimately used for impeachment purposes,

5    Your Honor.  It would not be to locate family or friends or

6    anything of that nature.

7            THE COURT:  Which is why I suggest, if that is a road

8    you need to go down, you can talk about a protective order, and

9    you can present it to the Court in that way.

10           MR. CANTRELL:  Thank you, Your Honor.

11           MR. KEZHAYA:  Your Honor, could we get a general

12   ruling limiting background as a topic of further discussion?

13           MR. CANTRELL:  Your Honor, at this point, again, I'm

14   not sure -- I have no intention to inquire into background

15   beyond the issue of the legal name change, so I don't think any

16   order is necessary in this case.

17           MR. KEZHAYA:  Your Honor, I think an order is

18   necessary because, if he tries asking any questions, I can't

19   object and say, the Court said no.  Otherwise, we have to sit

20   here for up to another five and a half hours, and I'm not

21   interested in doing that.

22           THE COURT:  Well, without knowing the particular

23   question, I'm not going to make a ruling in advance.  I've given

24   the parameters with respect to the information about name and

25   background.  Again, you are not picking a jury.  I think there

1  are privacy interests at stake for Mr. Misicko, family and

2  friends.  So I understand I'm balancing that against the ability

3  to do background with respect to him.  But I think I've given

4  the parties enough guidance on that.  If there are objectionable

5  questions that come up, Mr. Kezhaya, from now until the end of

6  the day, you may certainly instruct your witness not to answer,

7  and you can get us back on the phone.  I'll be in chambers

8  through the rest of the business day today.  And if you all tell

9  me that this deposition is going to go late, I'll make myself

10  available late into the evening to take up any issues that we

11  need to take up.

12        MR. KEZHAYA:  Thank you, Your Honor.

13        THE COURT:  I think I've ruled on the next question,

14  the legal and financial relationships with TST and TST

15  affiliates.  First, I don't really know what legal relationships

16  means.  I think I've ruled on the financial question.  Do I need

17  to make any other rulings regarding that, Mr. Kezhaya?

18        MR. KEZHAYA:  I don't believe so, Your Honor.  I think

19  the remainder of this deposition is going to be clean-up.  I

20  don't suspect that we're going to be getting into any legal

21  relationship questions.  But it does start to bleed into

22  questions for TST, which is the last bullet point on the email.

23  So now might be a good time to take that up.

24        THE COURT:  My understanding is a 30(b)(6) was

25  conducted yesterday.  Right?

1          MR. KEZHAYA:  That's correct, Your Honor.

2          THE COURT:  Mr. Cantrell, why would we be still asking

3    questions about The Satanic Temple if you conducted a 30(b)(6)

4    yesterday?

5          MR. CANTRELL:  I'm not sure what Mr. Kezhaya has in

6    mind.  I don't intend to ask any questions about The Satanic

7    Temple that would be appropriate for a 30(b)(6) deposition.

8          MR. KEZHAYA:  To elucidate, Your Honor, we spent a

9    good hour or two talking about Process Church and broadly

10   something called Grey Faction, which I gather is a campaign of

11   TST.  The ultimate point seemed to be, well, Grey Faction is at

12   odds with the scientific theory, which is itself at odds with

13   one of their tenets, I'm guessing, thus, because you have an

14   internal inconsistency, you are not a real religion.  These are

15   TST questions.  These are not Doug questions.

16         MR. CANTRELL:  Your Honor, that is not a fair

17   characterization.  And it certainly wasn't an hour of it we

18   spent talking about this issue.  I, again, don't have any

19   further questions on this matter.  Questions were asked.  Mr.

20   Kezhaya did object and instructed his witness not to answer

21   various questions in violation of Rule 30(c)(2) and at one point

22   even walked out on the record.  But, Your Honor, ultimately all

23   the questions were answered, and I don't know why this is an

24   issue at this point.

25         MR. KEZHAYA:  Your Honor, it's an issue because the

1    30(b)(6) has items that they wanted to get into yesterday but

2    they did not get into.  The 30(b)(6) notice indicated a series

3    of items that they didn't get into today.  So I'm surmising,

4    based off of what they did not get into yesterday, because they

5    ran out of time, they are going to attempt to get into today.

6            MR. CANTRELL:  Your Honor, we did not run out of time

7    yesterday.  I'm not sure what Mr. Kezhaya is talking about,

8    again.  I think if there were any objections to be made, it

9    would have been appropriate to put those objections on the

10   record at the time.

11           MR. KEZHAYA:  When they were -- when the state was

12   talking to TST, it was appropriate to talk about TST campaigns.

13   We are no longer talking to TST.  We are now talking to Doug

14   with his personal hat on.  As a result, I think TST questions

15   are out of bounds.

16           MR. CANTRELL:  Your Honor, again, I'm just very

17   confused as to why this is an issue.  I don't intend to ask any

18   more questions about the Process or the DSM or anything of that

19   nature, so I don't know why this is an issue at this point.

20           THE COURT:  All right.  With that, I will say, Mr.

21   Cantrell, I'll take you at your word.

22       Mr. Kezhaya, if you believe he strays into that area and

23   it's not appropriate, again, you can ask your witness not to

24   answer, and you can call me this afternoon.  All right?

25           MR. KEZHAYA:  Thank you, Your Honor.  In the interest

```
 1    of the Court's time, does the Court want me to call every time
 2    we have an issue?  I was trying to collect all of the issues
 3    into one bucket so we could resolve them all at once.
 4                THE COURT:  I'm fine with you either taking it
 5    question by question or waiting for a bucket when it makes sense
 6    to call.  Again, I know your time is limited and important for
 7    all of the lawyers there at the deposition.  So if there are
 8    questions that you can work through and then call at a break
 9    point, that's fine with me, however you all wish to proceed.
10                MR. KEZHAYA:  Thank you, Your Honor.
11                MR. CANTRELL:  Your Honor, I do have one question.
12                THE COURT:  Yes.
13                MR. CANTRELL:  One question concerning the order and
14    the order of production specifically.  As I read the Court's
15    order, there's no time frame for that production.  And we've not
16    heard anything from The Satanic Temple about a production.  They
17    have not reached out to us in any way concerning that
18    production.  I would ask the Court to provide a time frame for
19    compliance with its order.
20                THE COURT:  So here's part of the problem, Mr.
21    Cantrell, with respect to doing that on any one of the number of
22    things I ordered to happen.  I'm not really sure what volume
23    we're talking about or the steps that need to be taken in order
24    to do that.  I'm not sure with respect to the entity, if they've
25    used accounting firms over time, if they have copies that are
```

1    readily accessible or if they have to go back to the IRS to get

2    an official copy.  I'm not sure about that, so I would let the

3    lawyers confer.  If you can't agree on a reasonable time for the

4    production, then you can certainly come back to the Court.  And

5    those are the types of questions that I will be asking whatever

6    party I've ordered to take action to let me know so that

7    whatever deadline I impose is realistic given the situation.

8           MR. CANTRELL:  Thank you, Your Honor.  And as I read

9    the order, The Satanic Temple was supposed to reach out to

10   defendant to have those discussions.  I assume the Court is okay

11   with the defendant reaching out to The Satanic Temple

12   intervenors to initiate that process.

13          THE COURT:  I'm fine with whoever wants to reach out

14   to reach out.  Right?  I mean, I think my direction was

15   everybody needs to confer with respect to those issues and with

16   respect to other issues that the Court has ordered and including

17   protective orders, if necessary.

18          MR. CANTRELL:  Thank you, Your Honor.

19          MR. KEZHAYA:  Your Honor, the outstanding matter is a

20   request to limit the amount of time in this deposition.  Mr.

21   Misicko has a flight out tomorrow.  I personally have not been

22   home since last Sunday.  I had to go to Minneapolis in between

23   last week's deposition and this week's deposition.  I would

24   request the Court order that it be done by a certain time this

25   evening.

1       MR. CANTRELL:  Your Honor, I think I may have ten

2   minutes of questioning on matters unrelated to the issues we've

3   been talking about today.  I anticipate that the matters we're

4   talking about today in this hearing may take another ten to 15

5   minutes, so at the most I would imagine 25 minutes of

6   questioning.  I don't know that a court order is necessary for

7   terminating -- well, a court order certainly is not necessary

8   for terminating this deposition.  This is actually the first

9   that I've heard about this request, so I would ask that the

10  Court not issue any order to that effect.

11      THE COURT:  Mr. Kezhaya, you started this discussion

12  by saying that you've been in this deposition for nine hours and

13  34 minutes of questioning.

14    Mr. Cantrell, do you dispute that?

15      MR. CANTRELL:  Your Honor, this deposition began at

16  after nine o'clock this morning.  And we've taken a lunch, and

17  we've taken several breaks.  And I don't have a count, but it is

18  nowhere near nine hours.

19      MR. KEZHAYA:  I beg the Court's pardon.  I may have

20  misspoken earlier.  It's nine hours and 34 minutes together with

21  yesterday's deposition.  It was about six hours, and I believe

22  it was 11 minutes yesterday, the balance of which is today,

23  three hours and 23 minutes.

24      THE COURT:  All right.  Rule 30 in the federal rules,

25  unless you all agree differently, Rule 30 says that a deposition

1    day can be seven hours.  It's limited to one day of seven hours

2    unless the parties stipulate or the court orders otherwise.  So

3    if we start exceeding that time limit, you can certainly get me

4    back on the phone.

5        Mr. Kezhaya, if you believe that it's unnecessarily

6    dragging out and that it borders on bad faith with respect to

7    that, you can certainly get me back on the phone.  But, again,

8    for all of the lawyers who participate in this case, I'm going

9    to take what you tell me at face value.  Mr. Cantrell has said

10   he's going to go for about another 25 or 30 minutes.  He's a

11   lawyer, so I won't hold him to that time limit.  But I'll say

12   that ballpark is reasonable.  And if it becomes unreasonable,

13   again, you can certainly get me back on the phone.  But I'm

14   hearing from both sides that no one so far has exceeded the

15   seven hours in one day today.  Right?

16              MR. KEZHAYA:  Correct, Your Honor.

17              MR. CANTRELL:  That's correct.

18              THE COURT:  All right.  Mr. Kezhaya, anything else

19   that we need to take up on your list of concerns?

20              MR. KEZHAYA:  Nothing further, Your Honor.

21              THE COURT:  Mr. Cantrell, anything further on behalf

22   of your client?

23              MR. CANTRELL:  Not at this time, Your Honor.

24              THE COURT:  All right.  Anyone else who is in the room

25   have anything that they need to raise with the Court?

1        MR. BAKER:  Your Honor, this is Darryl Baker for the

2   Orsi plaintiffs here on behalf of Gerry Schulze.  We do not

3   either.

4        THE COURT:  Well, then I will let you all proceed with

5   your deposition.  You know how to reach Mr. Lax.  Mr. Lax and I

6   will definitely be here until five o'clock.  If we need to be

7   here after that, we will be.  Alert us to that in advance.

8   Chances are I'll be here after five o'clock anyway, but it may

9   be more difficult to get a court reporter and to get this call

10  set up.  So if you can give us some advanced notice, say if I

11  don't hear from you all by 4:45, I'm going to take it that at

12  five o'clock you are not still going and you don't need the

13  Court to be on standby.  If you do need the Court to be on

14  standby, I'm more than happy to do it.  Just let me know before

15  4:45.

16       Is that understood, Mr. Cantrell?

17       MR. CANTRELL:  Yes, Your Honor.  And I don't

18  anticipate that, from the defendant anyway, that we will have a

19  need for the Court to be on standby.

20       THE COURT:  Is that understood, Mr. Kezhaya, and is

21  that plan acceptable?

22       MR. KEZHAYA:  Yes, Your Honor.  Thank you for your

23  time.

24       THE COURT:  All right.  If there's nothing further

25  today, then our call is adjourned for now.  Y'all have a good

1    afternoon.

2         (Proceedings concluded at 3:27 p.m.)

3                       REPORTER'S CERTIFICATE

4         I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

5

6    /s/Elaine Hinson, RMR, CRR, CCR      Date:  March 9, 2022.
     United States Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25