**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**DONNA CAVE, *et al.*,**                                                  **PLAINTIFFS**

**EUGENE LEVY, *et al.*,**                              **CONSOLIDATED PLAINTIFFS**

**THE SATANIC TEMPLE, *et al.*,**                                **INTERVENORS**

**v.**                          **Case No. 4:18-cv-00342-KGB**

**JOHN THURSTON, Arkansas Secretary**
**of State, in his official capacity**                              **DEFENDANT**

<u>**ORDER**</u>

Before the Court are the following pending discovery motions:

(1) A motion for relief concerning remaining discovery issues filed by Arkansas Secretary of State John Thurston, in his official capacity ("Secretary Thurston") (Dkt. No. 181). The Satanic Temple Intervenors ("TST") responded in opposition to this motion (Dkt. No. 193).

(2) TST's motion to exclude Shane Bugbee or to permit a late subpoena and amended motion to exclude Bugbee or to permit a late subpoena (Dkt. Nos. 189; 190). Cave Plaintiffs responded (Dkt. No. 200). Secretary Thurston responded (Dkt. No. 201). TST replied (Dkt. No. 206).

(3) TST's motion to amend the scheduling order to allow the subpoenas and for Order to show cause (Dkt. No. 192). The Cave Plaintiffs responded (Dkt. No. 200). Secretary Thurston responded (Dkt. No. 201). TST replied (Dkt. Nos. 206; 207).

(4) A motion to quash intervenor's subpoena or, in the alternative, for a protective order filed by non-party witness Arkansas State Senator Jason Rapert (Dkt. No. 195). TST responded (Dkt. No. 204).

(5) A motion to quash intervenor's subpoena or, in the alternative, for a protective order filed by non-party witness American History and Heritage Foundation ("AHHF") (Dkt. No. 196). TST responded (Dkt. No. 204).

(6) TST's motion for order to show cause or to compel production directed to Arkansas State Senator Bob Ballinger (Dkt. No. 199). The Cave Plaintiffs responded (Dkt. No. 22). Arkansas Senator Ballinger responded (Dkt. No. 205).

(7)   TST's motion to compel production of documents (Dkt. No. 203). Secretary Thurston responded (Dkt. Nos. 208; 209; 210).

(8)   Secretary Thurston's motion to compel responsive documents withheld by TST (Dkt. No. 212). TST responded (Dkt. No. 217).

(9)   TST's motion to compel state documents (Dkt. No. 218). Secretary Thurston responded (Dkt. No. 222). TST replied (Dkt. No. 223).

The Court conducted a status conference on November 23, 2021, with regard to matters then-pending and ripe (Dkt. No. 198). The Court also conducted a status conference on February 18, 2022, with regard to matters then-pending and ripe (Dkt. No. 229–230).

## I.    Procedural Background

In June 2017, a granite Ten Commandments Monument was erected on the grounds of the Arkansas State Capitol, but that monument was destroyed (Dkt. No. 1, ¶ 2). Another granite Ten Commandments Monument was installed April 26, 2018, "weighing three tons and standing over six feet high and three feet wide. . . on public property between the Arkansas State Capitol and Justice Building." (*Id.*). The initial complaint in this action was filed on May 23, 2018 (Dkt. No. 1). On December 17, 2018, this Court granted TST's amended motion to intervene (Dkt. No. 38), and TST filed its amended complaint in intervention on December 24, 2018 (Dkt. No. 40). TST filed a second amended complaint in intervention on November 1, 2018 (Dkt. No. 89).

This Court substituted Secretary Thurston as successor to former Arkansas Secretary of State Mark Martin (Dkt. No. 48, at 1 n.1).

The Court entered a Final Scheduling Order on October 15, 2019, setting forth pretrial deadlines and a trial date during the week of March 16, 2020 (Dkt. No. 85). By Order dated January 3, 2020, the Court granted Secretary Thurston's motion for an extension to complete discovery and granted the parties' joint motion to move the case to a non-jury docket (Dkt. No. 103). On February 10, 2020, the Court entered an Amended Final Scheduling Order setting a

bench trial sometime during the week of July 13, 2020, and extending the deadline for discovery to April 29, 2020; the Court also set additional pretrial deadlines (Dkt. No. 107).  On May 11, 2020, the Court granted a motion for continuance, extending the motion deadline and trial date only (Dkt. No. 127).

## II.   Progress Of Discovery

In this Court's experience in cases pending in the Eastern District of Arkansas on its docket, in the vast majority of cases, this Court is not required to involve itself in discovery.  This case does not fall within the vast majority; this case has involved numerous discovery disputes with the overwhelming majority of those disputes stemming from complaints by Secretary Thurston and TST.  The Court has involved itself in these disputes to resolve them but recognizes that the discovery practices engaged in by Secretary Thurston, TST, and certain non-parties has unduly delayed the resolution of this litigation.  The Court recites the history of the progress of discovery here.

The Court conducted a status conference on February 26, 2020 (Dkt. No. 115).  The Court entered a discovery Order on certain matters on March 1, 2020 (Dkt. No. 116).

The Court convened a hearing during a deposition on March 11, 2020, due to a discovery dispute (Dkt. No. 117).  The Court granted an agreed motion for protective order and entered such Order on April 16, 2020 (Dkt. No. 112).

On May 22, 2020, the Court conducted a status conference regarding then-pending and ripe discovery motions (Dkt. No. 134).  On March 31, 2021, the Court entered an Order on then-pending discovery matters (Dkt. No. 145).

The Court conducted a status conference regarding then-pending and ripe discovery motions on September 8, 2021 (Dkt. No. 162).  On September 9, 2021, the Court entered an Order

setting a status conference for October 22, 2021, and directing the parties to submit a status report reporting to the Court their progress toward completing discovery, among other matters (Dkt. No. 163). All parties submitted a joint status report on October 12, 2021 (Dkt. No. 168). In that report, with respect to the status of discovery, all parties stated:

> The discovery deadline has expired. The parties do not anticipate a need for further discovery. But the parties anticipate receiving the Court's ruling on two discovery motions [see Docs. 120, 124, 145]. That ruling, and any production ordered by the Court, may impact the proposed summary judgment briefing schedule set forth below.
>
> The Court set and extended the discovery deadline several times. In its Order of January 3, 2020 [Doc 103], the Court extended the discovery deadline from January 13, 2020 to April 13, 2020. The Court has not entered any subsequent order related to the discovery deadline since that time.

(Dkt. No. 168, at 1–2).

The Court entered Orders ruling on then-pending and ripe discovery matters on October 22, 2021 (Dkt. Nos. 145; 172; 175). The Court conducted a status conference on October 22, 2021 (Dkt. No. 174). The Court, on October 22, 2021, set a status conference for November 23, 2021 (Dkt. No. 175).

The Court conducted a status conference on then-pending and ripe discovery matters on November 23, 2021 (Dkt. No. 198). When the November 23, 2021, status conference was conducted, there was only one ripe discovery motion pending (Dkt. No. 181). The Court, on January 31, 2022, set a status conference for February 18, 2022 (Dkt. No. 224). By February 18, 2022, there were ten ripe discovery motions pending (Dkt. Nos. 181; 189; 190; 192; 195; 196; 199; 203; 212; 218). The Court conducted a status conference on then-pending and ripe discovery matters on February 18, 2022 (Dkt. No. 229). The Court addresses each pending motion in turn.

### III.     Pending Discovery Motions

### (1)     Secretary Thurston's Motion For Relief Concerning Remaining Discovery Issues

Secretary Thurston seeks the Court's ruling on certain of Secretary Thurston's Third Requests for Production and seeks rulings on other requests not specifically addressed previously (Dkt. 181).

Secretary Thurston requests that the Court order TST to respond to certain of his Third Set of Requests for Production (Dkt. No. 181). He asserts that he moved initially on these requests on April 29, 2020 (*see* Dkt. No. 124, at 10). TST responded and objected to these requests (*see* Dkt. No. 124–6).

The Court observes that Secretary Thurston's initial motion as to these requests, to the extent he made one, was a parenthetical cite to these requests, with no real argument about the requests (Dkt. No. 124, at 10). As a result, when ruling on these issues initially, the Court stated that Secretary Thurston's motion and position on these requests was unclear (Dkt. No. 172, at 33–34). The Court now examines Secretary Thurston's current motion as to these requests.

### A.     Third Set Of Requests For Production:  Requests Nos. 1 To 3

Secretary Thurston moves to compel TST to respond to Requests for Production Nos. 1 to 3 in his third set of requests for production. The requests at issue, as initially propounded, state:

> Request for Production No. 1:  Please produce a copy of all United Federation of Churches, LLC, current and former governance documents (including, but not limited to, any articles of organization, operating agreement, bylaws, goal statement, leadership policy, or organizational policy).
>
> Request for Production No. 2:  Please produce a copy of all Satanic Temple, Inc., current and former governance documents (including, but not limited to, any articles of organization, operating agreement, bylaws, goal statement, leadership policy, or organizational policy).

Request for Production No. 3:  To the extent not covered by the above Requests for Production, please produce a copy of all Satanic Temple current and former governance documents (including, but not limited to, any articles of organization, operating agreement, bylaws, goal statement, leadership policy, or organizational policy).

(Dkt. No. 124-5, at 1–2).

TST objected and responded to these requests and, for each response, stated as follows:

Answer:  Intervenors object to providing governance documents.  These documents have no passable bearing on any legal question in the case.  The request is a transparent effort to drive up costs of litigation, harass, and oppress a religious minority for "deigning" to demand equal treatment under the law.  Intervenors will comply with the Court's recent discovery order to produce the most recent set of bylaws pursuant to an attorney's-eyes-only protective order.

(Dkt. No. 124-–6, at 2–3).

From the record before the Court, it does not appear that Secretary Thurston attempted to meet and confer with TST regarding these requests prior to filing the motion to compel he claims put these requests at issue (*see* Dkt. Nos. 124-2; 124-4).

These requests as propounded by Secretary Thurston were unlimited in time and, therefore, overly broad, unduly burdensome, and not proportional to the needs of this case.  This motion for reconsideration is a belated attempt to modify the request to narrow the time period; the Court understands that Secretary Thurston made no attempt to modify the request to narrow the time period in any prior conference regarding this discovery dispute or during the pendency of his prior motion to compel.  There is no indication in the record that, prior to filing the current motion, Secretary Thurston offered to limit the time period for these requests, contrary to the position taken in his current motion (Dkt. No. 181, at 3 ("Defendant limits these requests to any document created or in effect at any time between January 1, 2013, and the filing of the Satanic Temple's Second Amended Complaint in Intervention on November 1, 2019.")).

Moreover, Secretary Thurston has not sufficiently explained why information from affiliate entities or why historic information about TST is necessary in this case, in the light of the production of the TST articles of incorporation and current bylaws and the effective dates of those documents.   Secretary Thurston states that his requests "pertain specifically to the Satanic Temple's identity and financial organization, which the Satanic Temple has put in issue by asserting its specific claims of religious discrimination and providing conflicting information about itself and its handling of finances." (Dkt. No. 181, at 2).  "The Satanic Temple" is the intervening entity in this case, and it responded through written discovery that it is given corporate structure by "The Satanic Temple, Inc."

In this case, the operative complaint in intervention identifies "The Satanic Temple" as the intervenor (Dkt. No. 89), and the operative complaint in intervention states as follows:

> 5.      The Satanic Temple is an organized religion.  See generally "FAQ" available at https://thesatanictemple.com/pages/faq (last visited May 3, 2018); see also "Tenets" available at https://thesatanictemple.com/pages/tenets (last visited May 3, 2018).

> 6.      Its organizational mission is to encourage benevolence and empathy among all people.  See "Our Mission" available at https://thesatanictemple.com/pages/about-us (last visited May 3, 2018).  The Satanic Temple's function is to actively provide outreach, to lead by example, and to participate in public affairs wheresoever the issues might benefit from rational, Satanic insights.  See "FAQ," above.  The Satanic Temple expended funds in the placement of its own religious monument for placement on capitol grounds, the State denied this application.

(Dkt. No. 89, ¶¶ 5–6).

During discovery, TST provided the following information in response to a request by Secretary Thurston exchanged in his first discovery requests:

Interrogatory No. 1:  Please state the Satanic Temple's full legal name; all names and aliases used by the Satanic Temple or by which the Satanic Temple has been known at any time; the Satanic Temple's legal entity type and all dates of any current or former incorporation or legal creation, specifying all states under whose

laws the Satanic Temple has existed at any time; the full legal name and title of each current and former employee, officer, director, manager, board member, advisory member, or person or entity holding any other position of responsibility or leaders, whether compensated or not.

Answer:  Intervenors do not object to providing the current full legal name of The Satanic Temple.  On information and belief, the full legal name of the organization is still United Federation of Churches, LLC.  To everything else, Intervenors object on the grounds that the information sought is not relevant to any party's claim or defense and is not proportional to the needs of the case.

September 26, 2019 supplement:  TST is given corporate structure by "The Satanic Temple, Inc." which is a Massachusetts non-profit corporation.  To the extent the request seeks to discover information about members and agents of TST, the request is not proportional to the needs of the case because TST is a complex and international organization with local chapters dispersed throughout the world and whose leadership structure is in constant flux.  The current membership of TST exceeds 50,000 individuals, many of whom participate in a leadership role for various charitable and religious activities.

Compounding the difficulty of adhering to the request, individual participants of TST very often have pseudonyms to protect their safety.  The volume of information sought is overwhelming and has no passable bearing on the questions of this case.

Not only is the information sought onerous to procure in the first place, Rule 26 requires ongoing supplementation.  Every time a volunteer steps down from—or steps up to—a leadership position would require a new supplement.

(Dkt. No. 93-4, at 7–8).

The Court required TST to produce, and TST represents that it produced, the articles of incorporation for TST and the current bylaws for TST as required by this Court (Dkt. No. 193, at 3).  As TST points out, the exact name of the corporation is "The Satanic Temple" (Dkt No. 193-1, at 1).[1]  According to the record before the Court, the Articles of Organization for TST were filed on November 14, 2017, which predates the filing of this lawsuit (Dkt. No. 193–1).  Secretary

---

[1]  In a later filing, TST explains that the entity corrected its name to "The Satanic Temple, Inc." (Dkt. No. 217-2 (articles of amendment, dated May 24, 2019, renaming the organization from "The Satanic Temple" to "The Satanic Temple, Inc.").

Thurston took a Federal Rule of Civil Procedure 30(b)(6) deposition of TST's representative Douglas Misicko, during which Secretary Thurston inquired about certain entities, including how certain entities related to each other financially and organizationally (Dkt. No. 124-7, at 1–26).

In this Court's view, what Secretary Thurston attempts to do through Request for Production No. 1, and potentially with several discovery requests that are the subject of his motion, is akin to attempting to pierce the corporate veil.   Whether to pierce a corporate veil is a legal determination that, in the Eighth Circuit, is governed by state law.   *See Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997); *Minnesota Power v. Armco., Inc.,* 937 F.2d 1363, 1367 (8th Cir. 1991).[2]

Having reviewed the entire record in this case, the Court denies Secretary Thurston's motion to compel further responses to the Third Set Of Requests For Production, Requests Nos. 1 to 3.

### B.      Third Set Of Requests For Production:  Requests Nos. 4 And 6

Other requests at issue in Secretary Thurston's pending motion, as initially propounded, state:

---

[2]  If the Court were to consider Arkansas law as the appropriate state law, on the record before it, the Court would conclude that Secretary Thurston fails to carry his burden to demonstrate that veil piercing is appropriate.  *See K.C. Properties of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 15–16 (Ark. 2008) (examining the requirements to pierce the corporate veil under Arkansas law and explaining that "[t]he doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent an injustice," "[p]iercing the fiction of a corporate entity should be applied with great caution," "whether the corporate entity has been fraudulently abused is a question for the trier of fact, and the one seeking to pierce the corporate veil and disregard the corporate entity has the burden of proving that the corporate form was abused to his injury" (internal citations omitted)).  If the Court were to consider Massachusetts law as the appropriate state law, the Court similarly would conclude that Secretary Thurston fails to carry his burden.  *See George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129 (D. Mass. 1998) (examining corporate veil piercing under Massachusetts law).

Request for Production No. 4:  Please produce a copy of all documents describing or depicting any legal, financial, or organizational relationship between the United Federation of Churches, LLC, and the Satanic Temple, Inc.

Request for Production No. 6:  Please produce a copy of all documents describing the legal, financial, or organizational relationship between the Satanic Temple; the United Federation of Churches, LLC; or the Satanic Temple, Inc., on the one hand, and local chapters affiliated in any way with any of those organizations, on the other (including, but not limited to, any affiliation agreement, nondisclosure agreement, or set of local-chapter guidelines).

(Dkt. No. 124-5, at 2).

TST objected and responded to these requests as follows.  As to Request for Production No. 4:

Answer:  Intervenors object to providing the requested documents.  These documents have no passable bearing on any legal question in the case.  The request is a transparent effort to drive up costs of litigation, harass, and oppress a religious minority for "deigning" to demand equal treatment under the law.  There can be no argument that these records are remotely related to the General Assembly's intent behind either the Ten Commandments Monument Display Act or the Usurping Act. Subject to and without waiving the foregoing, TST does not have any organizational charts.  Further, the Court recently declined to compel the production of this discovery in a substantially identical discovery request.

(Dkt. No. 124-6, at 3).

As to Request for Production No. 6, TST stated:

Answer:  Intervenors object to providing the requested documents.  These documents have no passable bearing on any legal question in the case.  The request is a transparent effort to drive up costs of litigation, harass, and oppress a religious minority for "deigning" to demand equal treatment under the law.  There can be no argument that these records are remotely related to the General Assembly's intent behind either the Ten Commandments Monument Display Act or the Usurping Act. Further, Defendant waived entitlement to these records in the February 26, 2020 hearing by representing to the Court that the local chapters were not of interest to Defendant's investigation.   Last, the Court recently declined to compel the production of this discovery in a substantially identical discovery request.

(Dkt. No. 124-6, at 4).

Secretary Thurston asserts that TST takes inconsistent positions by asserting that it is a tax exempt religious organization yet engaging in for-profit commerce (Dkt. No. 181, at 4).  He asserts that, "[t]o enable Defendant to test the basis for the Satanic Temple's claim to be a religious organization suffering religious discrimination under the Equal Protection Clause and the First Amendment, Defendant respectfully requests an order compelling the Satanic Temple to produce" the requested documents (Dkt. No. 181, at 4).  However, Secretary Thurston states he "does not seek agreements between any local chapter and local-chapter members except to the extent that they set forth information concerning the relationship between the Satanic Temple (or any of its affiliates) and the local chapter." (*Id.*, at 5).

From the record before the Court, it does not appear that Secretary Thurston attempted to meet and confer with TST regarding these requests prior to filing the motion to compel he claims put these requests at issue (*see* Dkt. Nos. 124-2; 124-4).

These requests as propounded by Secretary Thurston were unlimited in time and, therefore, overly broad, unduly burdensome, and not proportional to the needs of this case.  This motion for reconsideration is a belated attempt to modify the request to narrow the time period; the Court understands that Secretary Thurston made no attempt to modify the request to narrow the time period in any prior conference regarding this discovery dispute or during the pendency of his prior motion to compel.  There is no indication in the record that, prior to filing the current motion, Secretary Thurston offered to limit the time period for these requests, contrary to the position taken in his current motion (Dkt. No. 181, at 5 ("Defendant further limits these requests to any document created or in effect at any time between January 1, 2013, and the filing of Intervenor's Second Amended Complaint in Intervention on November 1, 2019.")).

TST, in response to Request for Production No. 4, stated that, subject to and without waiving its objections, TST does not have any organizational charts (Dkt. No. 124-6, at 4).  The Court is not inclined to compel production of documents TST states it does not have.  Further, the Court is unaware of a requirement that documents sought in response to a request for production must be created to satisfy the request, and Secretary Thurston cites no such requirement.

Moreover, as explained by the Court, Secretary Thurston has not sufficiently explained why discovery information from affiliate entities is necessary in this case when TST is the intervening entity.  Further, Secretary Thurston's assertion that TST takes inconsistent positions by asserting that it is a tax exempt religious organization yet engaging in for-profit commerce appears to invoke a complicated legal and factual inquiry typically conducted by the Internal Revenue Service.  *See, e.g., Parker v. Comm'r of Internal Revenue*, 365 F.2d 792, 796 (8th Cir. 1966).

Having reviewed the entire record in this case, the Court denies Secretary Thurston's motion to compel further responses to the Third Set Of Requests For Production, Requests Nos. 4 and 6.

### C.    Third Set of Requests For Production:  Request No. 5

Secretary Thurston also moves to compel documents responsive to the following request:

Request for Production No. 5:  Please produce a copy of all documents describing or depicting the powers, roles, or responsibilities of the following or of any legal, financial, or organizational relationship of the following to one another or to the Satanic Temple:  the Executive Ministry, the National Council, the International Council, and Grey Faction.

(Dkt. No. 124-5, at 2).

TST objected and responded to this request:

Answer:   Intervenors object to providing the requested documents.   These documents have no passable bearing on any legal question in the case.  The request

is a transparent effort to drive up costs of litigation, harass, and oppress a religious minority for "deigning" to demand equal treatment under the law.  There can be no argument that these records are remotely related to the General Assembly's intent behind either the Ten Commandments Monument Display Act or the Usurping Act.  Subject to and without waiving the foregoing, TST does not have any organizational charts.  Further, the Court recently declined to compel the production of this discovery in a substantially identical discovery request.

(Dkt. No. 124-6, at 3-4).

Secretary Thurston's third set of requests for production were propounded in January 2020 (Dkt. No. 124-5).  Secretary Thurston asserts that "Mr. Misicko testified in his 30(b)(6) capacity that all of the entities in the Satanic Temple constellation are exclusively controlled by himself and Mr. Cevin Soling with no other legal or financial oversight or accountability. . . .  Yet, as noted, the Satanic Temple also claims that its 'leadership structure is in constant flux.'" (Dkt. No. 181, at 5).  Mr. Misicko was not deposed until March 2020 (Dkt. No. 124-7).  Any suggestion that these discovery requests follow-up on testimony provided by Mr. Misicko is not accurate, given the timing of the requests and deposition.  Secretary Thurston maintains the requested documents are necessary "[t]o enable Defendant to test the basis for the Satanic Temple's claims concerning its nature and the extent to which power is concentrated in the hands of Mr. Misicko and Mr. Soling." (*Id.*).

From the record before the Court, it does not appear that Secretary Thurston attempted to meet and confer with TST regarding this request prior to filing the motion to compel he claims put this request at issue (*see* Dkt. Nos. 124-2; 124-4).

This request as propounded by Secretary Thurston was unlimited in time and, therefore, overly broad, unduly burdensome, and not proportional to the needs of this case.  This motion for reconsideration is a belated attempt to modify the request to narrow the time period; the Court understands that Secretary Thurston made no attempt to modify the request to narrow the time

period in any prior conference regarding this discovery dispute or during the pendency of his prior motion to compel. There is no indication in the record that, prior to filing the current motion, Secretary Thurston offered to limit the time period for this request, contrary to the position taken in his current motion (Dkt. No. 181, at 7 ("Defendant further limits these requests to any document created or in effect at any time between January 1, 2013, and the filing of Intervenor's Second Amended Complaint in Intervention on November 1, 2019.")).

TST, in response to Request for Production No. 5, stated that, subject to and without waiving its objections, TST does not have any organizational charts (Dkt. No. 124-6, at 3–4). The Court is not inclined to compel production of documents TST states it does not have for the reasons this Court explained. Moreover, as explained by the Court, Secretary Thurston has not sufficiently explained why discovery information from affiliate entities is necessary in this case when TST is the intervening entity.

Having reviewed the entire record in this case, the Court denies Secretary Thurston's motion to compel further responses to the Third Set Of Requests For Production, Request No. 5.

### D.    Right To Seek Reconsideration

Secretary Thurston, acknowledging the Court's prior Orders, withdrew "his request for reconsideration of the Court's ruling on its First Request for Production No. 2." (Dkt. No. 181, at 6). However, Secretary Thurston attempts in his pending motion to reserve the right to seek reconsideration on every other discovery matter, "depending on what information the Satanic Temple discloses in response to other requests." (*Id.*, at 7).

If discovery is closed, it is closed as to all. The Court's Final Scheduling Order states, in pertinent part, that: "[a]ll discovery requests and motions must be filed sufficiently in advance of the discovery deadline set forth in this order to allow for a timely response." (Dkt. No. 85). The

Court rejects any attempt by Secretary Thurston to keep discovery open solely for Secretary Thurston, which this request seems to suggest.

### (2)   TST's Motion To Exclude Shane Bugbee Or To Permit A Late Subpoena

TST seeks to exclude Shane Bugbee as a witness or, in the alternative, to permit a late deposition of Mr. Bugbee (Dkt. Nos. 189; 190).  TST maintains that notice of Mr. Bugbee as a potential witness by Secretary Thurston was untimely (Dkt. No. 190, at 2-6).  The first notice came on April 18, 2020, according to TST (Dkt. No. 188-1).  Further, that notice came with a signed eight-page, 24-paragraph declaration from Mr. Bugbee (Dkt. No. 188-2).  TST also maintains that, given assertions in Mr. Bugbee's declaration, the Court should refrain from permitting this lawsuit to become a proxy battle in a doctrinal war (Dkt. No. 190, at 6-9).  Based on these arguments TST seeks to exclude Mr. Bugbee as a witness in this case.  In the alternative, if Mr. Bugbee is not excluded, TST seeks leave for TST to take Mr. Bugbee's deposition even though it acknowledges the discovery window has closed (Dkt. No. 190, at 8).

The Cave Plaintiffs responded to the motion (Dkt. No. 200).  They take no position on the merits or substance of the motion (Dkt. No. 200, at 1).  However, the Cave Plaintiffs oppose any effort to reopen discovery in this matter (*Id.*, at 2).

Secretary Thurston admits that he knew of Mr. Bugbee in early 2020 (Dkt. No. 201, at 11); that he received documents from Mr. Bugbee on April 11, 2020, that demonstrated Mr. Bugbee's "value as a witness" (*Id.*, at 12); and yet waited until April 18, 2020, "the same day Mr. Bugbee signed his declaration" to identify Mr. Bugbee as a witness (*Id.*, at 12).  There is evidence in the record before the Court that Secretary Thurston, through his counsel, was in contact with Mr. Bugbee at least as early as February 2020; Mr. Bugbee indicated he was willing to aid Secretary Thurston in the litigation at that time (Dkt. No. 206-2).

Secretary Thurston also states that, at that time, he disclosed what he knew of Mr. Bugbee's contact information which admittedly did not include a physical address for Mr. Bugbee (Dkt. No. 201, at 12).  TST represents that, despite efforts to locate Mr. Bugbee, TST has been unable to locate an address at which to serve a subpoena for deposition on Mr. Bugbee (Dkt. No. 190, at 5).

Secretary Thurston takes the position that discovery closed on April 29, 2020, and that TST's discovery request to depose Mr. Bugbee is not agreed to by Secretary Thurston and comes too late to be enforced by the Court (Dkt. No. 201, at 3-5).  In the alternative, if the Court permits a deposition of Mr. Bugbee, Secretary Thurston seeks to reopen discovery for his own purposes (*Id.*, at 18-20).  In addition, Secretary Thurston speculates on motives for TST's motion (*Id.*, at 16-18).

Secretary Thurston seeks to downplay the claim by TST that Mr. Bugbee's knowledge is directed to a proxy battle in a doctrinal war regarding who the real Satanists are (*Id.*, at 14).  Yet Secretary Thurston admits that he believes Mr. Bugbee's value as a witness is directed to his ability to "speak credibly about the Satanic Temple and Mr. Misicko's beliefs and motivations." (*Id.*, at 14).  Mr. Bugbee, by his own admission, is a reverend of the Church of Satan which TST maintains is a different sect of Satanism than the Satanic Temple (Dkt. Nos. 190, at 6; 188-2, ¶ 2).  TST asserts that this line of argument is barred (Dkt. No. 190, at 6–8), citing *Jones v. Wolf*, 443 U.S. 595, 602 (1979); *Serbian E. Orthodox Diocese for the U.S. & Canada v. Milivojevich*, 426 U.S. 696, 709 (1976); *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969); and *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727 (1871).

In other words, Secretary Thurston:  (1) disclosed for the first time only 11 days before what he insists is the discovery deadline in this case a witness, Mr. Bugbee; (2) admits that Secretary Thurston knew about Mr. Bugbee months in advance of this disclosure; (3) received

prior to this disclosure from Mr. Bugbee documents regarding the litigation; (3) worked with Mr. Bugbee for some undisclosed period of time prior to disclosure to craft a multi-page, multi-paragraph declaration for Mr. Bugbee; (4) had Mr. Bugbee sign the declaration the day Mr. Bugbee was disclosed as a witness; and (5) failed in that witness disclosure of Mr. Bugbee to provide a physical address to permit a subpoena to be issued for Mr. Bugbee's deposition.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to provide to the other parties: "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Federal Rule of Civil Procedure 26(a)(1)(A)(ii) imposes a similar requirement for "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Parties also have a continuing duty to supplement or correct all Rule 26(a) disclosures, interrogatory responses, and requests for production if their responses are either incomplete or incorrect, "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

Federal Rule of Civil Procedure 37 states that a party who fails to provide information or identify witnesses as required under Rule 26(a) or fails to supplement as required under Rule 26(e)(1) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37 does not provide for mandatory sanctions, and the district court may find that a party's failure to include a witness in the initial Rule 26(a)(1) disclosures was substantially justified or harmless." *Davis v. U.S. Bancorp,* 383 F.3d 761, 765 (8th Cir. 2004) (citations

omitted).  "When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case.  The district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless."  *Wegener v. Johnson,* 527 F.3d 687, 692 (8th Cir. 2008) (internal citations omitted); *see also Tomlinson v. J.B. Hunt Transp., Inc.*, 989 F. Supp. 2d 766, 775–76 (D. Minn. 2013).  "When fashioning a remedy, the district court should consider, *inter alia,* the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony."  *Wegener,* 527 F.3d at 692 (citations omitted).

On the record before the Court, Secretary Thurston was in communication with Mr. Bugbee months before his disclosure, received documents from Mr. Bugbee regarding the litigation, and worked with Mr. Bugbee to craft a multi-page, multi-paragraph declaration related to the litigation all before disclosing to other parties in the case Mr. Bugbee as an individual with knowledge regarding the claims and defenses or the documents Mr. Bugbee provided to Secretary Thurston. Secretary Thurston opted to disclose Mr. Bugbee close in time to what Secretary Thurston insists was the discovery deadline in this case and failed to make that disclosure with sufficient specificity to permit other parties to subpoena Mr. Bugbee for deposition or documents.  Further, the Court duly considers the reasons the parties assert evidence, testimony, and argument related to Mr. Bugbee will be presented.

Having reviewed the entire record in this case, based on all circumstances presented and giving due consideration to the controlling legal principles, the Court grants, in part, and denies, in part, TST's motion to exclude Shane Bugbee as a witness or, in the alternative, to permit a late

deposition of Mr. Bugbee (Dkt. Nos. 189; 190).  The Court denies TST's request to exclude Mr. Bugbee as a witness, but the Court conditions the use of such evidence consistent with the terms of this Order.  The Court conditions the use of Mr. Bugbee as a witness for any purpose, and conditions the use for any purpose of any information, documents, electronically stored information, or tangible things provided by Mr. Bugbee, including but not limited to signed declarations or affidavits provided by Mr. Bugbee, on the party who intends to offer evidence, testimony, or argument by, about, or supplied by Mr. Bugbee first presenting Mr. Bugbee for deposition and all parties being permitted to take a prior deposition of Mr. Bugbee.  In other words, no evidence, testimony, or argument by, about, or supplied by Mr. Bugbee may be presented on a motion submitted to the Court for the Court's consideration in this case, at a hearing, or at the trial of this matter without all parties being permitted to take a prior deposition of Mr. Bugbee.  The obligation is on the party who intends to offer evidence, testimony, or argument by, about, or supplied by Mr. Bugbee to present Mr. Bugbee for prior deposition.

### (3)      TST's Motion To Amend The Scheduling Order And For Order To Show Cause

TST filed a motion to amend the Court's scheduling order and to permit TST to issue several subpoenas, including but not limited to subpoenas to Arkansas State Senator Jason Rapert, Arkansas State Senator  Kim Hammer, and Arkansas State Senator Bob Ballinger and a subpoena to the AHHF (Dkt. Nos. 192; 192-1 (subpoena to State Senator Rapert); 192-2 (subpoena to State Senator Hammer); 192-3 (subpoena to State Senator Ballinger); 192-4 (subpoena to AHHF)). Further, in that motion, TST requests that the Court enter an Order requiring State Senator Hammer to show cause as to why he should not be held in contempt for refusing to comply with the subpoena (Dkt. No. 192, at 6–9).

State Senator Rapert filed a motion directed to the subpoena issued to him (Dkt. No. 195), which the Court addresses in this Order.  The AHHF filed a motion directed to the subpoena issued to it (Dkt. No. 196), which the Court addresses in this Order.  State Senator Ballinger filed a response  to the subpoena issued to him (Dkt. No. 199-2), which the Court addresses in this Order.  State Senator Hammer filed a response to TST's motion to amend the Court's scheduling order (Dkt. No. 202).

The Cave Plaintiffs responded to TST's  motion to amend the scheduling order to allow the subpoenas and for order to show cause (Dkt. No. 200).  They take no position on the merits or substance of these motions (Dkt. No. 200, at 1).  However, the Cave Plaintiffs oppose any effort to reopen discovery in this matter (*Id*., at 2).

Secretary Thurston responded in opposition (Dkt. No. 201).  TST argues in reply that Secretary Thurston lacks standing to object to these subpoenas (Dkt. No. 206, at 3–4).  Ordinarily a party has no standing to move to quash a subpoena to a non-party.  *Smith v. Frac Tech Servs., Ltd.*, Case No. 4:09-cv-000679 JLH, 2010 WL 3522395, *1 (E.D. Ark. Sept. 1, 2010).  TST argues that, if a party lacks standing to quash a subpoena directed to a non-party, it also lacks standing to contest contempt for failure to comply with the subpoena.  TST requests that the Court overrule Secretary Thurston's objections to the subpoenas on this basis.

For the following reasons, and for reasons explained in this Order related to other pending motions, the Court denies TST's motion to amend the Court's scheduling order and to permit TST to issue several subpoenas, including but not limited to subpoenas to Arkansas State Senator Jason Rapert, Arkansas State Senator Kim Hammer, and Arkansas State Senator Bob Ballinger and a subpoena to the AHHF (Dkt. Nos. 192).  The Court also denies TST's request for a show cause Order directed to State Senator Hammer (*Id.*).

### A.    Federal Rules Of Civil Procedure 16 And 45

The Court first considers whether the issuance of Federal Rule of Civil Procedure 45 subpoenas beyond the Court's announced discovery deadline is permissible.  Based on the Court's research, the majority of courts agree that Rule 45 subpoenas constitute discovery and are therefore governed by the discovery deadlines set forth in a scheduling order.  *See Dhaliwal v. Singh*, Case No. 1:13-cv-00484-LJO-SKO, 2014 WL 3401384, at *2 (E.D. Cal. July 11, 2014) ("In a majority of jurisdictions, . . . Federal Rule of Civil Procedure 45 subpoenas constitute pretrial discovery that must be served within the specified discovery period."); *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) ("Rule 45 subpoenas are 'discovery' under Rules 16 and 26 of the Federal Rules of Civil Procedure, and are subject to the same deadlines as other forms of discovery."); 9 James Wm. Moore *et al.*, *Moore's Federal Practice* § 45.03[2] (3d ed. 2015) ("[O]nce the discovery deadline established by a scheduling order has passed, a party may not employ a [Rule 45] subpoena to obtain materials from a third party that could have been procured during the discovery period.").  However, the requirement that Rule 45 subpoenas must be issued before the discovery deadline does not appear to be absolute.  Some courts take the view that "Rule 45 subpoenas may be employed in advance of trial and outside of a discovery deadline for the limited purposes of memory refreshment, trial preparation, or to secure for the use at trial original documents previously disclosed by discovery."  *Dziadek v. Charter Oak Fire Ins. Co.*, Case No. 4:11-CV-04134-RAL, 2016 WL 1643825, at *2 (D.S.D. Apr. 22, 2016) (quoting *Circle Grp., LLC v. Se. Carpenters Reg'l Council*, 836 F. Supp. 2d 1327, 1352 (N.D. Ga. 2011)).

TST concedes the subpoenas it seeks to enforce were issued outside of the discovery period.  Having reviewed the subpoenas, the Court concludes that they were issued for purposes

of discovery, not for limited purposes of memory refreshment, trial preparation, or to secure for the use at trial original documents previously disclosed by discovery.

Therefore, the Court considers what standard controls whether the Court should modify its scheduling order in this case, which is what TST seeks through this motion.  Federal Rule of Civil Procedure 16(b) guides the district court's issuance and modification of pretrial scheduling orders and provides that "[e]xcept in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order," which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(1), (3)(A).  This schedule "may be modified *only for good cause* and with the judge's consent."  Fed. R. Civ. P. 16(b)(4) (emphasis added); *see also Sherman*, 532 F.3d at 715.  In addition, Rule 16(d) states that a pretrial order "controls the course of the action unless the court modifies it."

For the following reasons, the Court rejects TST's arguments as to why it issued these discovery subpoenas to State Senator Rapert, State Senator Hammer, State Senator Ballinger, and AHHF outside the discovery period, concludes that TST has failed to demonstrate good cause for extending the discovery period for the purpose of issuing these subpoenas, and therefore, denies TST's current motion and its requests to enforce these subpoenas directed to State Senator Rapert, State Senator Hammer, State Senator Ballinger, and AHHF (Dkt. No. 192).

### B.   Arkansas Freedom Of Information Act

The Court observes that none of these subpoenas are directed to Secretary Thurston. Instead, the subpoenas directed to State Senator Rapert, State Senator Hammer, and State Senator Ballinger seeking documents from these individuals related to the public's business that were created and sent from personal accounts, and a subpoena was directed to the AHHF.  The Court

agrees that ordinarily a party has no standing to move to quash a subpoena to a non-party. *Smith*, 2010 WL 3522395. However, the Court acknowledges that at least some courts have concluded that a party has standing to challenge a subpoena issued to a non-party on the ground that the subpoena was beyond the discovery deadline. *See Dziadek* 2016 WL 1643825, at *2; *Phipps v. Adams*, Case No. 3:11-cv-147-GPM-DGW, 2012 WL 3074047, at *3 (S.D. Ill. July 30, 2012); *Hartz Mountain Corp. v. Chanelle Pharm. Veterinary Prods. Mfg.*, 235 F.R.D. 535, 536 (D. Me. 2006). The Court will consider Secretary Thurston's response to the motion to the extent it relates to the subpoenas and a request to extend the discovery period to permit the subpoenas, especially given issues raised by TST in seeking to enforce these subpoenas. The Court declines Secretary Thurston's invitation to address the merits of the claims and defenses at this stage of the litigation (Dkt. No. 201, at 6–8).

In its effort to extend discovery to permit these subpoenas and to enforce these subpoenas, TST maintains that Secretary Thurston had the legal duty to obtain the documents on demand from State Senator Jason Rapert, State Senator Hammer, and State Senator Ballinger by utilizing the Arkansas Freedom of Information Act ("FOIA"), Arkansas Code Annotated § 25-19-101 *et seq.* (Dkt. No. 206, at 6–9). TST cites this Court to *Bradford v. Director of Employment Security Department*, 128 S.W.3d 20, 27–28 (Ark. Ct. App. 2003), which TST maintains holds that emails on private accounts are subject to compelled disclosure under the FOIA provided the email is about public business (Dkt. No. 206, at 6). TST characterizes its subpoenas as seeking public records subject to the FOIA and maintains that Secretary Thurston should have utilized the FOIA to access these records. Secretary Thurston argues that he does not have the ability to obtain and produce documents for the entire State of Arkansas in this case (Dkt. No. 201, at 8–11). More specifically, the Arkansas FOIA at all relevant times stated that "[u]npublished memoranda, working papers,

and correspondence of . . . members of the General Assembly. . .” should not be made open to the

public under the FOIA.  Ark. Code Ann. § 25-19-105(b)(7); see also *Bryant v. Mars*, 830 S.W.2d

869, 871 (Ark. 1992).  There is no basis for TST’s assertion in this regard with respect to the FOIA

and most if not all of the materials TST seeks from State Senator Rapert, State Senator Hammer,

and State Senator Ballinger.

**C.    Use Of Personal Email Accounts**

In its motion, TST also asserts:  “[o]n October 21, 2021, we learned that certain legislators

used non-State email accounts to coordinate the installation of the Arkansas Ten Commandments

Monument.” (Dkt. No. 192, at 2 (citing Dkt. No. 171)).  TST offers this as a way to explain the

late subpoenas, contending that, because of this, TST issued subpoenas on October 22, 2021, to

State Senator Rapert, State Senator Hammer, and State Senator Ballinger (Dkt. No. 192, at 2).

TST maintains that good cause supports amending the Court’s scheduling order (Dkt. No. 192, at

4–6).  TST asserts that it “attempted to procure all State correspondence of relevance to this case

by issuing discovery requests to a constitutional officer of the State,” Secretary Thurston, who

TST claims it “understood had the ability to procure all State correspondence about this case.”

(Dkt. No. 192, at 5).  TST maintains that it first learned after the discovery period that Arkansas

legislators were conducting Arkansas business on non-State email accounts days before issuing

these subpoenas, claiming this necessitated the subpoenas (*Id.*, at 1, 5).

Secretary Thurston disputes this assertion and maintains that TST has known for years

during this litigation that State Senator Rapert and State Senator Ballinger used personal emails to

discuss State of Arkansas business, including this business, as a result of prior discovery and

documents produced (Dkt. No. 201, at 9–11).  Record evidence that TST has not refuted indicates

TST was put on notice as a result of prior discovery and documents produced (Dkt. Nos. 201-4;

24

201-5; 201-6; 201-7; 201-8).  Based on the record before the Court, the Court agrees that TST was

on notice by virtue of discovery and documents produced in this litigation that State Senator Rapert

and State Senator Ballinger utilized personal email accounts to discuss and correspond about State

of Arkansas business, including this business.  The Court rejects TST's suggestion that it first

learned of this in October 2021, thereby necessitating late subpoenas.

### D.     State Senator Hammer

TST also requests that the Court issue a show cause Order directed to State Senator

Hammer for refusing to comply with the subpoena TST issued to him (Dkt. No. 192, at 6).  TST

maintains that a party served with a subpoena must comply with the subpoena, serve objections to

the subpoena pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), or move to quash or modify

the subpoena pursuant to Rule 45(d)(3) (*Id.*).  TST argues that, although State Senator Hammer

filed objections, those objections were late and should be deemed waived as a result (*Id.*, at 6–7).

Further, TST argues that the subpoena requests are relevant and proportional to the needs of

discovery in this case (*Id.*, at 7–8).  TST also maintains that privilege claims have been waived

(*Id.*, at 8).

State Senator Hammer challenges TST's failure to confer before filing its motion to hold

him "in contempt for serving objections to that untimely subpoena two days late." (Dkt. No. 202,

at 1).  He requests that the Court deny TST's motion due to TST's failure to confer before filing

its motion, failure to confer before seeking a discovery extension, and failure to abide by this

Court's scheduling order (*Id.*, at 1–3).  State Senator Hammer also contends that, because TST's

subpoena was invalid when issued, he was under no obligation to comply (*Id.*, at 3).  In the

alternative, he requests that this Court excuse that his objections were submitted two days late,

especially considering TST's conduct, and consider his objections (*Id.*, at 5–6).  Further, if the

Court is inclined to enforce the subpoena, he maintains that compelling a response is more appropriate than contempt (*Id.*, at 6–8).

TST asserts that there is no obligation to meet and confer with a non-party regarding this matter because Federal Rule of Civil Procedure 37 and its good faith effort to confer requirement does not apply to this subpoena (Dkt. No. 207, at 2–3).  TST also asserts that, although the subpoenas may be voidable as a result of being issued after April 29, 2020, they are not void (Dkt. No. 207, at 3–4).  TST argues that the parties to whom the subpoenas were directed should have filed a timely motion to quash the subpoena or issued proper objections to the subpoena, if those parties believed the subpoenas were voidable, but did neither (Dkt. No. 207, at 4–7).  In addition, TST argues that State Senator Hammer is subject to contempt because he failed to object timely to the subpoena.

Because the Court determines that TST has failed to demonstrate good cause for this Court to modify the scheduling Order and discovery deadline to permit the subpoena directed to State Senator Hammer, the Court denies TST's request to hold State Senator Hammer in contempt, rejects TST's request to enforce the subpoena directed to him, and declines to reach the remaining issues raised by the parties with respect to the subpoena directed to State Senator Hammer (Dkt. No. 192).

### E.      Delay With Regard To AHHF

Previously in this case, the Court addressed issues related to a subpoena the Orsi Plaintiffs directed to AHHF (Dkt. Nos. 150; 158; 162; 167).  The Orsi Plaintiffs and AHHF reached an agreement with respect to the subpoena.  According to TST, when AHHF complied with its agreement with the Orsi Plaintiffs, TST recognized it had no "financial records of the AHHF reflecting funds raised for the erection of a Ten Commandments monument on the state capitol

26

grounds or the expenditure of any funds for the erection of the Ten Commandments monument on the state capitol grounds." (Dkt. No. 192, at 3 (citing and quoting Dkt. No. 79-2, at 6)). TST explains: "we believed that we lacked standing to assert contempt for noncompliance with the Orsi Plaintiffs' subpoena, so we issued a subpoena to the AHHF seeking the same information we sought from the legislators." (Dkt. No. 192, at 3). TST correctly observes that AHHF first produced documents in response to the Orsi Plaintiffs' subpoena after the discovery period closed (Dkt. No. 192, at 5).

Secretary Thurston asserts that AHHF produced the documents responsive to the agreement with Orsi Plaintiffs to all parties on September 20, 2021 (Dkt. No. 201, at 8–9 (citing Dkt. No.167, at 1)). All parties jointly reported to the Court that the discovery deadline expired and that no further discovery was needed on October 12, 2021 (Dkt. No. 201, at 9 (citing Dkt. No. 168, at 1)). Further, TST waited over a month from its receipt of the documents to determine it wanted to issue an additional subpoena to AHHF, even crediting TST's explanation (Dkt. No. 201, at 9).

There was no legal or procedural bar to TST issuing its own subpoenas to third parties during the pendency of this case and through the discovery period. Based on the record before the Court, the Court determines that TST has failed to demonstrate good cause for this Court to modify the scheduling Order and discovery deadline to permit the subpoena directed to AHHF, rejects TST's request to enforce the subpoena directed to AHHF, and declines to reach the remaining issues raised by the parties with respect to the subpoena directed to AHHF (Dkt. No. 192).

### (4) Motion To Quash Subpoena Or, In The Alternative, For Protective Order Filed By Arkansas State Senator Jason Rapert

In his motion to quash subpoena or, in the alternative, for protective order, Arkansas State Senator Jason Rapert asserts that the subpoena directed to him is untimely given that it was served

after April 29, 2020 (Dkt. No. 195, at 1–2).  He also argues that it is unduly burdensome for a non-party to the litigation (*Id.*, at 2–5).  Arkansas State Senator Rapert takes the position, in part, that this subpoena directed to him is unduly burdensome because the same information is available from a party served with discovery requests or through other subpoenas issued by TST (*Id.*, at 4–5).  In addition, he maintains that the breadth of information and documents and the time period for which those documents are sought by the subpoena also makes the subpoena objectionable (*Id.*, at 4–5).

TST responded to State Senator Rapert's objections (Dkt. No. 204).  TST maintains that it was thwarted in its attempt to obtain timely this information.  It asserts that AHHF's delay in responding to the subpoena issued by the Orsi Plaintiffs and Secretary Thurston's discovery objections and responses to timely served discovery requests "obstructed the discovery process for two years" and delayed TST in obtaining this material (*Id.*, at 2–3).

TST further maintains that the subpoenas do not seek private and confidential documents that should be shielded from discovery (*Id.*, at 4–5).  Instead, TST asserts that there has been some showing in this case that State Senator Rapert utilized his personal email and "was operating under the guise of his authority as a public officer and was operating for the purpose of having the State accept a monument which he donated pursuant to a bill which he ran (*Id.*, at 4).  TST asserts that, regardless if these communications were transmitted over a private communication medium, the documents and information should be subject to public disclosure given the nature of the request and the responsive information and documents (*Id.*, at 4–5).

TST also asserts that the information and documents sought are relevant to the claims and defenses in this litigation (*Id.*, at 5–6).  TST maintains the information and documents are highly material and not available through other means, despite State Senator Rapert's arguments, because

Secretary Thurston has not produced the documents and because all individuals subject to the subpoenas are attempting to avoid having to respond to the subpoenas (*Id.*, at 7). TST also asserts that the subpoenas are not overly broad, seek relevant information, cover an appropriate time period, and are not vague (*Id.*, at 8–10).

Moreover, TST argues that there is insufficient information in the record for the individuals subject to subpoena to prevail on an undue burden or expense argument; there is no information before the Court on the anticipated burden or expense of responding (*Id.*, at 10–11). TST maintains that State Senator Rapert asserts only "stereotypical and conclusory statements" to assert undue burden (*Id.*, at 3–4).

TST explains that, in the alternative, State Senator Rapert seeks an undefined protective order to which TST is reluctant to agree given the undefined terms (*Id.*, at 11–12). AHHF seeks to limit disclosure to TST only, to which TST objects (*Id.*, at 13).

TST also requests that, if the Court denies the motions to quash, the Court also deny any assertion of privilege, given that the Court previously invited briefing on the legislative privilege issue but received none and given that no party timely asserted privilege in response to the subpoena (*Id.*, at 13–14).

Because the Court determines that TST has failed to demonstrate good cause for this Court to modify the scheduling Order and discovery deadline to permit the subpoena directed to State Senator Rapert, the Court grants, in part, and denies, in part, State Senator Rapert's motion (Dkt. No. 195). The Court grants the motion to the extent that the Court rejects TST's request to enforce the subpoena directed to State Senator Rapert (Dkt. No. 195), and the Court declines to reach and therefore denies as moot the remaining issues raised by the parties with respect to the subpoena directed to State Senator Rapert (Dkt. No. 195).

### (5) Motion To Quash Subpoena Or, In The Alternative, For A Protective Order Filed By AHHF

Non-party AHHF filed a motion to quash TST's subpoena or, in the alternative, for a protective order (Dkt. No. 196). TST responded (Dkt. No. 204).

AHHF requests that the Court quash TST's subpoena or, in the alternative, "issue a protective order under which Respondent and nonparty AHHF's responses are submitted only to Intervenors because the subpoena was issued to nonparty Respondent more than a year after the discovery deadline in this instant case expired, and the requests for production issued in the subpoena is unduly burdensome and costly for compliance by a nonparty." (Dkt. No. 196, at 1–2).

As an initial matter, AHHF takes the position that April 29, 2020, was the discovery deadline in this case (*Id.*, at 2). AHHF maintains that a third-party subpoena is a discovery device and that the April 29, 2020, deadline should apply to subpoenas, as well. Because AHHF argues the subpoena is untimely, AHHF requests that the Court quash the subpoena.

AHHF also asserts that the subpoena is unduly burdensome for a non-party (*Id.*, at 2–6). AHHF argues that the documents and information sought are "private and confidential information" that only involve "as to the relevant facts up and to the donation of the monument" and that AHHF already has produced "vast amounts of documents" to the parties in this case (*Id.*, at 4). AHHF characterizes the subpoena as "unduly burdensome and unnecessary under the circumstances." (*Id.*).

AHHF argues that nearly identical subpoenas were served on Arkansas State Senator Rapert, Arkansas State Senator Hammer, and Arkansas State Senator Ballinger, as well as similar requests being served on Secretary Thurston. AHHF asserts that the Court should require TST to obtain the documents and information from parties "and more relevant and resourceful nonparties." (*Id.*, at 4).

AHHF argues that, given the definition of "correspondence," complying with the request would "entail substantial expenses of time and money" (*Id.*, at 5).  AHHF takes the position that seeking documents for a period of roughly six years is overly broad and that compliance may require hiring an expert to represent the production is "sufficient and accurate" (*Id.*).  AHHF asserts that the costs of such compliance will be disproportionately high when compared to AHHF's nonparty status in this litigation (*Id.*, at 5–6).  In addition, AHHF maintains that the language of the requests is overly broad, increasing the burden and cost of compliance (*Id.*, at 5).

TST responded to State Senator Rapert and AHHF's motion in one filing, noting AHHF "raises the same arguments, nearly word-for-word" in its filing as those raised by State Senator Rapert (Dkt. No. 204, at 1).

Because the Court has determined that TST has failed to demonstrate good cause for this Court to modify the scheduling Order and discovery deadline to permit the subpoena directed to AHHF, the Court grants AHHF's motion to quash the subpoena issued by TST to it and declines to reach and therefore denies as moot the remaining issues raised by the parties' filings with respect to the subpoena directed to AHHF (Dkt. No. 196).

### (6) Motion For Order To Show Cause Or To Compel Production Directed To Arkansas State Senator Bob Ballinger

TST also filed a motion to compel Arkansas State Senator Ballinger to show cause why he should not be held in contempt for refusing to comply with a subpoena directed to him and seeking an order compelling him to produce the information sought by TST through its subpoena (Dkt. No. 199).  TST asserts:

> Prior to the close of discovery, Ballinger was not identified as a potential witness by any public document, or in any deposition testimony, or in any discovery responses, or in any set of disclosures.

(Dkt. No. 199, at 2).

TST maintains that, only on October 21, 2020, did TST learn that then State Representative and now State Senator Ballinger used a non-state email account to arrange for the installation of the Arkansas Ten Commandments Monument (*Id.*).  TST recounts communication with counsel for State Senator Ballinger about the subpoena and what TST maintains was service of the subpoena.  According to TST, when a nonparty is served with a subpoena, the nonparty has three options:  (1) comply, (2) serve an objection, or (3) move to quash or modify the subpoena (*Id.*, at 3–4).  TST maintains that State Senator Ballinger did none of these things when served with the subpoena (*Id.*, at 4).

TST argues the requests are relevant and not disproportionate (*Id.*, at 4–5).  Further, TST asserts that, because no timely privilege log was produced, any claim of privilege is waived (*Id.*, at 5–6).

The Cave Plaintiffs responded to the motion (Dkt. No. 200).  They take no position on the merits or substance of the motion (Dkt. No. 200, at 1).  However, the Cave Plaintiffs oppose any effort to reopen discovery in this matter (*Id.*, at 2).

State Senator Ballinger responded to TST's motion (Dkt. No. 205).  He claims that TST served its subpoena beyond the April 29, 2020, discovery date without first seeking an extension of that deadline and that TST failed to "meet and confer" prior to filing a motion to compel (*Id.*, at 2–3).  For these reasons, State Senator Ballinger takes the position that the subpoena served on him "was invalid when issued" and required no action or response by him (*Id.*, at 3–4).  As a result, State Senator Ballinger requests that the Court deny the motion to compel.  In the alternative, State Senator Ballinger requests that this Court enter an Order compelling his response to the subpoena and permitting him an opportunity to respond, as well as directing the parties to confer to resolve

any disputes with respect to compliance with the subpoena, before imposing any discovery sanctions on State Senator Ballinger (*Id.*, at 5–6).

Because the Court determines that TST has failed to demonstrate good cause for this Court to modify the scheduling Order and discovery deadline to permit the subpoena directed to State Senator Ballinger, the Court denies TST's motion for Order to show cause or to compel production of documents in response to the subpoena directed to State Senator Ballinger (Dkt. No. 199). The Court declines to reach and therefore denies as moot the remaining issues raised by the parties with respect to the subpoena directed to State Senator Ballinger.

### (7)   TST's Motion To Compel Production Of Documents Withheld By Secretary Thurston

TST moves this Court to compel the production of documents it maintains Secretary Thurston has "withheld on unfounded assertions of privilege" (Dkt. No. 203, at 1). In addition, TST requests that the Court order production of all State Capitol Police Records and communications between Secretary Thurston's counsel, Mike Cantrell, and Mr. Bugbee or Mr. Cantrell and Alison Kellogg, but TST does not seek production of attorney-to-attorney emails, describing the attorney-client privilege as "sacrosanct" (*Id.*, at 9). TST also requests an award of fees for filing its motion to compel (*Id.*, at 10).

Secretary Thurston filed a response to TST's motion to compel (Dkt. No. 208). He also filed a sealed response and sealed exhibit in further support of his opposition to the motion (Dkt. Nos. 209; 210). Secretary Thurston argues that TST filed its motions for discovery "[a]fter squandering countless opportunities" (Dkt. No. 209, at 1). He asserts that, on November 22, 2021, Secretary Thurston produced about "16,000 pages of documents" responsive to TST's discovery requests and a privilege log for "a limited set of documents that are, variously, attorney work product, attorney-client privileged, or State Capitol police records that are confidential under

Arkansas law." (*Id.*, at 2).  Further, Secretary Thurston reiterates that he does not have the ability to produce certain documents that he maintains are outside of his custody or control (Dkt. No. 9, at 10–12).  He represents that he first took this position on March 27, 2020 (*Id.*, at 10).

TST filed a reply, addressing Secretary Thurston's arguments in the light of TST's initial motion (Dkt. No. 216).

### A.      Form Of The Privilege Log

By prior Order, the Court directed Secretary Thurston to produce a privilege log for all documents he is withholding from disclosure (Dkt. No. 172, at 10–12).  TST maintains that Secretary Thurston's privilege log "fails to provide descriptions of documents withheld, the identities and positions of all persons who were given or have received copies and the date copies were received," as well as "the document's present location and the identity and position of its custodian." (Dkt. Nos. 203, at 1, 4–5; 203-1).  TST maintains that it emailed Secretary Thurston's counsel a letter that identified these deficiencies, requested a revised privilege log without the deficiencies, and requested supplemental production of documents to include those withheld on a "State Capitol Police Records" assertion (Dkt. No. 203, at 3).   The parties dispute what occurred after the letter was sent (Dkt. No. 209, at 2–4), but TST and Secretary Thurston were unable to resolve their differences leading to the filing of this discovery motion.

Secretary Thurston maintains that he and TST describe the documents on their respective privilege logs in much the same way, which should lead the Court to reject TST's arguments that Secretary Thurston's descriptions are deficient (Dkt. No. 209, at 5).  Secretary Thurston failed to provide any factual context regarding the documents he claimed are privilege sufficient to permit someone reviewing the log to determine the basis of the claim.   Further, Secretary Thurston confirms in his filing with the Court that no persons other than those identified on the privilege log

have received copies of the documents identified on the log, so Secretary Thurston maintains that there has been no waiver of privilege on this basis (*Id.*, at 5-6).  However, it remains unclear to the Court and to anyone reviewing Secretary Thurston's log the identities and positions of all persons who were given or have received copies of the documents and the dates those copies were received.

At this stage in this proceeding, the Court is satisfied with the form of the log, based on Secretary Thurston's filing of supplemental information in response to the motion to compel and because this Court has conducted an *ex parte*, *in camera* review of the documents TST challenges as withheld from Secretary Thurston's production.  For these reasons, the Court denies TST's motion on this point (Dkt. No. 203).

### B.      State Capitol Police Records

Further, TST argues that Secretary Thurston is withholding documents "on a new, and baseless, privilege," an assertion of "State Capitol Police Record" (Dkt. No. 203, at 1, 5–6). Secretary Thurston asserts that State Capitol Police records are confidential under Arkansas law, citing Arkansas Code Annotated § 12-14-109.  Secretary Thurston maintains "[t]hey are all subject to confidentiality" on this basis in this litigation (*Id.*, at 6).  However, Secretary Thurston rejects TST's request that Secretary Thurston produce the documents subject to the protective order previously entered by the Court, claiming again that the protective order the Court entered should be limited solely to tax and organization documents of TST (*Id.*, at 7–8).

As to the scope of the Protective Order proposed by all parties and entered by the Court in this case on April 16, 2020, there is no limit on the type of document that can be deemed confidential by the parties pursuant to the terms of the agreed upon Protective Order (Dkt. No. 122).  Since its entry, Secretary Thurston has attempted repeatedly by response, reply, and inference to misconstrue the plain language of the Protective Order (Dkt. Nos. 132, at 2–6; 198;

209, at 7; 214, at 2–4).  During the November 23, 2021, status conference, the Court invited

briefing by parties on any concerns with the scope and plain language of the Protective Order (Dkt.

No. 198).  The Court received none.  That Secretary Thurston continues to misconstrue the

Protective Order's terms, its purpose in this litigation, and its designation and enforcement

mechanisms is puzzling to this Court, given that all parties proposed it unanimously and given that

it is a fairly standard form protective order used many times in litigation before this Court by all

types of parties and counsel.

Even now, Secretary Thurston spends considerable time in this filing purportedly taking

TST to task for designating documents confidential that Secretary Thurston claims should not be

protected under the Protective Order, yet Secretary Thurston has not availed himself of the ability

to seek relief from the Court on these issues by following the procedure outlined in the parties'

unanimously agreed to Protective Order (*see* Dkt. No. 122, at 3, ¶ 7).  He has not presented this

Court with a motion objecting to the status of any documents TST designated confidential pursuant

to the Order, and this Court will not construe his response to a motion filed by TST as a filing

seeking such affirmative relief.

As it relates to this motion and Secretary Thurston's response, there is no basis for

Secretary Thurston to assert the parties' unanimously proposed Protective Order applies only to

tax and organizational documents of TST.  The plain terms of the Protective Order are not so

limited (Dkt. No. 122).

Likewise, the Court will not permit Secretary Thurston to hide behind a claim of privilege

based on a law that does not control discovery in this civil case.  Secretary Thurston admits he

possesses documents responsive to discovery requests propounded by TST.  However, Secretary

Thurston cites an exception to the Arkansas FOIA as a basis to withhold these documents from

production, referring to State Capitol Police records and citing Arkansas Code Annotated § 12-14-109.  The statute is inapposite.  Secretary Thurston cites only the statute, no other law, in support of his argument (Dkt. No. 209, at 6–8).  The cited law applies to Arkansas FOIA disclosure and does not account for discovery in a civil case and certainly not discovery in a civil case with a unanimously agreed to Protective Order entered by the Court, such as the one entered in this case.

Secretary Thurston is directed within 10 days from the entry of this Order to produce with an appropriate designation, confidential if Secretary Thurston deems it so, under the terms of the parties' unanimously agreed to Protective Order entered in this case all documents identified on his privilege log as withheld from production on the basis of a State Capitol Police privilege.

### C.      Correspondence With Mr. Bugbee And Ms. Kellogg

TST moves to compel the production of Mr. Cantrell's correspondence with potential third party witnesses Mr. Bugbee and Ms. Kellogg, which Secretary Thurston identifies on the privilege log and withholds based on a claim of work product (Dkt. No. 203-1, at 4).  Mr. Cantrell is identified as counsel for Secretary Thurston (*Id.*, at 6).  Mr. Bugbee is identified as "former Satanic Temple consultant," and Ms. Kellogg is identified as "believed to be former member of the Los Angeles local chapter of the Satanic Temple" (*Id.*, at 7).

Secretary Thurston maintains that TST failed to reference in its letter conferring about these matters defense counsel's emails with Mr. Bugbee and Ms. Kellogg (Dkt. No. 209, at 8–10).  Even so, Secretary Thurston maintains that he "has already produced every responsive email [he] has from these witnesses" and "in good faith produced emails from Mr. Bugbee that were not responsive to the Satanic Temple's requests but still contained substantive information." (*Id.*, at 8–9 (citing Bates stamped pages 1770 to 17799 of November 22, 2021, production)).  Secretary Thurston does not appear to dispute that certain emails between counsel and Mr. Bugbee and Ms.

Kellogg have not been produced pursuant to a claim of work product privilege (*Id.*, at 9).   He maintains that these documents are work product, were properly disclosed on a timely privilege log, and should not be turned over in discovery.

Because both TST and Secretary Thurston challenge designations of work product, the Court reviews the generally applicable law.   The work product doctrine was established in *Hickman v. Taylor,* 329 U.S. 495 (1947), and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides in relevant part that "a party may not discover documents and tangible things. . . prepared in anticipation of litigation or for trial by or for another party or its representative" and that discovery of such items may be compelled only upon a showing that the party seeking discovery has "substantial need of the materials."  Fed. R. Civ. P. 26(b)(3).  The work product doctrine was designed to prevent "unwarranted inquiries into the files and the mental impressions of an attorney," *Hickman,* 329 U.S. at 510, and recognizes that "a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel" is vital.  *Id.*  To be protected under the doctrine, materials must have been prepared "because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP,* 305 F.3d 813, 817 (8th Cir. 2002); *see also Pemberton v. Republic Servs., Inc.*, 308 F.R.D. 195, 200–01 (E.D. Mo. 2015).

The work product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 n.11 (1975).  "The work product doctrine is broader than the attorney-client privilege because its protections extend beyond communications between the attorney and client." *Monarch Fire Prot. Dist. of St. Louis Cnty. v. Freedom Consulting & Auditing Servs., Inc.,* Case No. 4:08CV01424 ERW, 2009 WL 2155158, at *1 (E.D. Mo. July 16, 2009); *see also Nobles,* 422 U.S. at 23 (stating that work product protection encompasses much that has its source outside attorney-client communications).

38

Work product immunity is not limited to materials prepared in anticipation of the litigation for which discovery is sought. *In re Murphy,* 560 F.2d 326, 333–34 (8th Cir. 1977).  Rather, the immunity attaches so long as the materials were prepared in anticipation of some litigation by a party to the present litigation. *United States v. R.M. Dolgin, Inc.,* Case No. 4:96M6320 SNL, 1997 WL 732495, at *1 n.1 (E.D. Mo. June 20, 1997).

Under controlling law, the determination of whether the documents were prepared in anticipation of litigation is a factual determination.  To establish the protected status of documents as work product the proponent must demonstrate that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting 8 C. Wright, A. Miller, & R. Marcus, Federal Practice & Procedure: Civil § 2024 at 343 ("Wright & Miller")); *see Pepsico,      Inc.*.,      305      F.3d      at 817; *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.), *cert.      denied*,      484      U.S.      917 (1987); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977).  If the disputed documents would have been prepared in essentially similar form regardless of the prospect of litigation, they are not entitled to work-product protection. *See Adlman*, 134 F.3d at 1202. "[E]ven though litigation is already in prospect, there is no work product immunity for documents prepared in   the   regular   course   of   business   rather   than   for   purposes   of   litigation." *G.D. Searle*, 816 F.2d at 401; *Diversified Indus.*, 572 F.2d at 604 (both quoting Wright & Miller § 2024 at 346 (current cite)).

Importantly, the doctrine extends to notes, memoranda, interviews, and other materials, regardless of whether they were created by an attorney or by an agent for the attorney. *Nobles,* 422 U.S. at 238–39; *In re Copper Mkt. Antitrust Litigation,* 200 F.R.D. 213, 221 (S.D.N.Y. 2001)

("Once it is established that a document was prepared in anticipation of litigation, work-product immunity protects documents prepared by or for a representative of a party, including his or her agent.").  Other courts have extended work product protection to public relations work in similar situations. *See, e.g., Pemberton*, 308 F.R.D. at 202 (explaining rationale); *ADT Sec. Servs., Inc. v. Swenson,* Civ. Case No. 07–2983 (JRT/AJB), 2010 WL 2954545, at *5 (D. Minn. July 26, 2010) (holding that public relations documents created to address media scrutiny were work product as they reflected mental impressions of counsel); *Calvin Klein Trademark Trust v. Wachner,* 198 F.R.D. 53, 55–56 (S.D.N.Y. 2000) (extending work product protection to materials produced by public relations consultant hired by attorney to help manage publicity surrounding client).

The party seeking protection under the work product doctrine bears the burden of establishing that the documents were prepared in anticipation of litigation.  *PepsiCo, Inc.,* 305 F.3d at 817.  If the doctrine is found to apply, the party seeking discovery bears the burden of showing a "substantial need for the materials" and that it cannot otherwise obtain the substantial equivalent of the materials without "undue hardship."  *Id.*

There are two kinds of work product:  ordinary work product and opinion work product.  *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).  Opinion work product, which includes "counsel's mental impressions, opinions, or legal theories," is entitled to "almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud."  *Id.*  Ordinary work product "includes raw factual information."  *Id.* (citing *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998)).

Ordinary work product is not discoverable unless it falls within the broad scope of discovery set forth in Rule 26(b)(1), and the party seeking discovery shows a substantial need for

40

the work product materials to prepare its case and that it cannot, without undue hardship, obtain their substantial equivalent by other means.  *Id.* (citing Fed. R. Civ. P. 26(b)(3)).  When a court orders a party to produce such materials in discovery, it "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  !

Notes and memoranda an attorney prepares from a witness interview are protected work product.  *Baker*, 209 F.3d at 1054 (citing *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973)); *see also Upjohn Co. v. United States*, 449 U.S. 383, 399–400 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes.").  Attorney notes tend to reveal the attorney's legal conclusions, as attorneys tend to focus on those facts they deem legally significant when taking notes.  *Id.* (citing *Petersen v. Douglas Cty. Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992)).

In contrast, the work product doctrine generally does not extend to verbatim, non-party witness statements.  *Schipp v. Gen. Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) (citing *Baker*, 209 F.3d at 1054); *see also Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 421–23 (D.N.J. 2009) (affidavit of non-party witness was not work product because it contained a recitation of facts within the ken of the witness and did not contain the mental impressions or legal theories of counsel; the fact that an attorney had a role in preparing the affidavit does not, in and of itself, suffice to convert what is otherwise purely factual testimony by an affiant into work product); *Murphy v. Kmart Corp.*, 259 F.R.D. 421, 426–32 (D.S.D. 2009) (expressing reluctance to extend the work product doctrine to protect affidavits by third-party witnesses because affidavits, by their very nature, are statements of facts within the personal

knowledge of the witness-affiant); *Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Prods., Inc.*, 140 F.R.D. 373, 378–79 (E.D. Wis. 1991) (factual statements of non-party witnesses did not fall within scope of work product doctrine even though the statements were secured by defense counsel in anticipation of litigation).

However, "[d]iscovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party." *Baker*, 209 F.3d at 1055 (citing *In re Grand Jury Proceedings*, 473 F.2d 840, 849 (8th Cir. 1973)). A party also does not demonstrate substantial need when it merely seeks corroborative evidence. *Baker*, 209 F.3d at 1055 (citing *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) (no substantial need when documents sought would merely reinforce known inconsistencies)). "Moreover, a verbatim witness statement may be a response to a question from counsel, and even if it contains purely factual matter, may be privileged. One rationale for preventing the disclosure of ordinary work product is to 'limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.'" *Isham v. Booneville Cmty. Hosp.*, Case No. 2:14-CV-02018, 2015 WL 11117159, at *5 (W.D. Ark. Apr. 23, 2015) (quoting *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2009) (citation omitted)).

There are three emails from Mr. Cantrell to Mr. Bugbee dated February 19, 2020, February 21, 2020, and February 24, 2020, listed on the privilege log and withheld by Secretary Thurston on the basis of a claim of attorney work product (Dkt. No. 203-1, at 5). In this Order, the Court addressed issues related to Mr. Bugbee. The Court conditions the use of Mr. Bugbee as a witness for any purpose, and conditions the use for any purpose of any information, documents, electronically stored information, or tangible things provided by Mr. Bugbee, including but not limited to signed declarations or affidavits provided by Mr. Bugbee, on the party who intends to

offer evidence, testimony, or argument by, about, or supplied by Mr. Bugbee first presenting Mr. Bugbee for deposition and all parties being permitted to take a prior deposition of Mr. Bugbee. As a result, by virtue of this Court's Order, Mr. Bugbee is a witness available to all parties for deposition. Even if these emails included statements from Mr. Bugbee to Mr. Cantrell, discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. *Baker*, 209 F.3d at 1055. For these reasons, the Court denies TST's motion to compel with respect to the three emails from Mr. Cantrell to Mr. Bugbee dated February 19, 2020, February 21, 2020, and February 24, 2020 (Dkt. No. 203).

There are also two emails from Mr. Cantrell to Ms. Kellogg dated January 28, 2020 (Dkt. No. 203-1, at 5). There is no argument advanced by TST that Ms. Kellogg is not a witness or potential witness available to TST. Again, even if these emails included statements from Ms. Kellogg to Mr. Cantrell, discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. *Baker*, 209 F.3d at 1055. Moreover, TST makes an insufficient showing to demonstrate substantial need with respect to the emails from Mr. Cantrell to Ms. Kellogg. *See Baker*, 209 F.3d at 1055. For these reasons, the Court denies TST's motion to compel with respect to the two emails from Mr. Cantrell to Ms. Kellogg dated January 28, 2020 (Dkt. No. 203).

### (8)      Secretary Thurston's Motion To Compel Documents Withheld By TST

Secretary Thurston filed a motion to compel responsive documents he contends have been withheld by TST (Dkt. No. 212). He filed a brief in support of his motion and filed a brief under seal in support of his motion which refers to TST's November 21, 2021, privilege log marked "confidential" by TST (Dkt. Nos. 213; 214). TST responded in opposition to the motion (Dkt. No. 217). Secretary Thurston replied under seal (Dkt. Nos. 220; 221).

Secretary Thurston requests that TST be required to produce all of the responsive correspondence listed in its November 22, 2021, privilege log and to produce by a date certain the withheld tax or financial documents for all of its corporate entities (Dkt. No. 212).

### A.    Correspondence Related To Mason Hargett

Secretary Thurston asserts that TST "has made a blanket assertion of attorney-client privilege for every document it has withheld" but maintains TST did not assert attorney-client privilege for correspondence related to Mason Hargett in its March 1, 2020, discovery responses or thereafter in communications between counsel regarding those discovery responses (Dkt. No. 214, at 9).  TST responds to this assertion (Dkt. No. 217, at 6–12).

Secretary Thurston concedes that TST asserted work-product doctrine in response to the discovery request about which Secretary Thurston claims waiver of attorney-client privilege (Dkt. No. 214, at 9 (citing discovery request and observing "asserting work-product doctrine only")). As a practical matter, the Court has reviewed TST's privilege log and does not see any entry that involves Mr. Hargett not withheld on a claim of work product, as well as attorney client privilege. Therefore, the Court proceeds to consider the claim of work product as to correspondence related to Mr. Hargett.

Secretary Thurston claims that Mr. Hargett is not a party or party's representative under Federal Rule of Civil Procedure 26(b)(3) and that "any verbatim non-party witness statements are neither privileged nor work product and must be produced." (*Id.*, at 16 (quoting *Schipp v. Gen. Motors Corp.*, 457 F.Supp.2d 917, 924 (E.D. Ark. 2006)).  Secretary Thurston seeks an Order requiring production of all correspondence and emails prepared by including documents 2, 3, 5, 7, 9, 12, 13, 16, 39, 41, 43, 45, 46, 50, 52, 54, 58 (mislabeled as 57), 61, 63, and 67 (Dkt. No. 214, at 16).

TST maintains that Mr. Hargett is an agent of TST and is treated as TST for purposes of the work product rule (Dkt. No. 217, at 15–16).  TST also urges the Court to reject Secretary Thurston's claim of substantial need for the documents, given that TST contends corroborating evidence is insufficient to establish substantial need and given that Secretary Thurston "deposed-at-length-Erika, Mason, and Lucien Greaves (both as TST and in his personal capacity)" (Dkt. No. 217, at 16–18).

Based on the record before the Court and the Court's review of the documents at issue, the Court determines that Mr. Hargett is a party's representative under Federal Rule of Civil Procedure 26(b)(3) for purposes of the work product doctrine.  In the alternative, the Court concludes that there is no argument advanced by Secretary Thurston that Mr. Hargett is not a witness or potential witness available to Secretary Thurston.  As a result, even if these emails included statements from Mr. Hargett to counsel for TST, discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party.  *Baker*, 209 F.3d at 1055.  Moreover, Secretary Thurston makes an insufficient showing to demonstrate substantial need with respect to the emails from Mr. Hargett to counsel for TST.  *See Baker*, 209 F.3d at 1055.  For all of these reasons, the Court denies Secretary Thurston's motion on this point.

### B.    Specific Reference To Attorney-Client Privilege

Secretary Thurston asserts that, although TST asserts attorney-client privilege with respect to documents 1-3, 5, 6, 7, 12–29, 27–29, 33–35, 39, 41–54, 57–60, 61–63, 65, and 67, these communications "do not involve any attorney but are emails among varying combinations of" individuals (Dkt. No. 214, at 9-10).

Secretary Thurston concedes that documents 4, 10, 24, 38, 40, 55, 56, 64, and 66 have the possibility of being attorney-client privileged communications, as they are between Lucien Greaves, also known as Mr. Misicko, and Stuart de Hann, counsel of record (Dkt. No. 214, at 10).

However, Secretary Thurston contends that no privilege attaches even to 4, 10, 24, 38, 40, 55, 56, 64, and 66 for two reasons.  First, Secretary Thurston asserts that "there is no adequate basis for believing these communications were made within the scope of any attorney-client relationship" involving these two individuals (Dkt. No. 214, at 10).  He claims that Mr. de Haan served TST in various capacities, including as counsel of record in this case, but asserts that "because there is no overlap between the timeframe of the withheld correspondence listed in the log (from January 26, 2017 to June 29, 2018) and the Satanic Temple's involvement in this lawsuit" there can be no basis for attorney-client privilege (Dkt. No. 214, at 10–11).

Next, Secretary Thurston maintains that no privilege attaches even to 4, 10, 24, 38, 40, 55, 56, 64, and 66 "is that all of those emails (and many more) were either addressed to or shared with (an in any case, disclosed to) third persons." (Dkt. No. 214, at 12).

As a practical matter, the Court has reviewed TST's privilege log and does not see any entry challenged by Secretary Thurston not withheld on a claim of work product, as well as attorney client privilege.  Therefore, the Court proceeds to consider the claim of work product with respect to Secretary Thurston's arguments.

The Court rejects Secretary Thurston's general assertions regarding in-house counsel and the attorney-client relationship; serving as in-house counsel does not preclude an attorney-client relationship.  For the attorney-client privilege to be applicable, "the parties to the communication in question must bear the relationship of attorney and client.  Moreover, the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice

services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity. A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Indus., Inc.,* 572 F.2d at 602. In this case, along with being in-house counsel, Mr. de Haan is counsel of record in this matter on behalf of TST. Having reviewed the documents at issue, the Court is satisfied that an attorney-client relationship existed.

The Court also rejects Secretary Thurston's general assertions regarding whether these documents were prepared in anticipation of litigation. Based on the record before the Court, the Court determines that in the light of the nature of the documents and the factual situation in this particular case, the documents that Secretary Thurston places in issue can fairly be said to have been prepared or obtained because of the prospect of litigation. Further, having reviewed the documents at issue, the Court is satisfied that these documents would not have been prepared in essentially similar form regardless of the prospect of litigation.

 Because the doctrine extends to notes, memoranda, interviews, and other materials, regardless of whether they were created by an attorney or by an agent for the attorney, and given that other courts have extended work product protection to public relations work in similar situations, the Court rejects Secretary Thurston's arguments with respect to these documents based on the documents having been shared with certain third parties, all of whom are identified on TST's privilege log.

For all of these reasons, the Court denies Secretary Thurston's motion on this point.

### C.    Documents Regarding Erika Robbins And Mason Hargett

Secretary Thurston argues that "[a]s a matter of commonsense, the 'local participant[s]' Erika Robbins and Mason Hargett. . . were *not* agents who facilitated communications between the Satanic Temple and an attorney" (Dkt. No. 214, at 13 (emphasis in original)). He maintains

that "[n]either Mason Hargett nor Erika Robbins served as any kind of intermediary between the Satanic Temple and an attorney, and neither's presence was needed to facilitate communications between the Satanic Temple and an attorney" (*Id.*).

TST in its response outlines the role Ms. Robbins and Mr. Hargett played with respect to this case and the nature of the documents involving them withheld (Dkt. No. 217, at 8–9).  Further, the record demonstrates that Secretary Thurston had the opportunity to depose both of these individuals.

Based on the record before the Court and the Court's review of the documents at issue, the Court determines that Ms. Robbins and Mr. Hargett are a party's representative under Federal Rule of Civil Procedure 26(b)(3) for purposes of the work product doctrine.  In the alternative, the Court concludes that there is no argument advanced by Secretary Thurston that Ms. Robbins and Mr. Hargett are not witnesses or potential witnesses available to Secretary Thurston.  As a result, even if these emails included statements from Ms. Robbins and Mr. Hargett to counsel for TST, discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party.  *Baker*, 209 F.3d at 1055.  Moreover, Secretary Thurston makes an insufficient showing to demonstrate substantial need with respect to the emails from Ms. Robbins and Mr. Hargett to counsel for TST.  *See Baker*, 209 F.3d at 1055.  For all of these reasons, the Court denies Secretary Thurston's motion on this point.

### D.     Documents Claimed Work Product

Secretary Thurston asserts that documents 1–3, 5–9, 12, 13, 15–20, 27–29, 33–35, 39, 41–47, 41–54, 57–60, 62, and 63 are not work product because "the doctrine does not protect documents that reveal merely the mental processes of an opposing party" and none of the documents at issue were prepared by an attorney and most were not sent to an attorney (Dkt. No.

214, at 15).  Secretary Thurston also claims that the documents were not created in anticipation of litigation (*Id.*, at 15-16).  Again, he relies on the date of the documents and TST's involvement in this lawsuit to claim "at that point the possibility of litigation was simply too remote." (*Id.*, at 16).

Secretary Thurston argues that, even if work product protection attaches, he has a substantial need for the materials and that the materials should be produced (Dkt. No. 214, at 17–18).  He asserts the documents "are needed because – as anticipated – they expressly relate to, among other related issues, the Secretary's defenses concerning the Intervenors' standing. . . , the efforts to apply for and place the Baphomet statue. . . , and the efforts to obtain a sponsor in the General Assembly. . . ." (*Id.*).  He claims that he "has no other way to obtain this information." (*Id*., at 18).

TST responds in opposition (Dkt. No. 217, at 12–18).  TST maintains that, because in-house counsel for TST is on the emails withheld, the Court should reject Secretary Thurston's claim that the work product protection is limited to "the mental processes of a party's attorney (not the party or its representatives" (Dkt. No. 217, at 13 (quoting Dkt. No. 213, at 14-15)).  Further, TST notes that the work product protection is not as narrow as Secretary Thurston maintains, given that "[t]he 1970 amendment also extended the work product protection to documents and things prepared for litigation or trial by or for the adverse party itself or its agent." (Dkt. No. 217, at 13–14) (citing Wright & Miller, 8 Fed. Prac. & Proc. Civ. 2024 (3d ed.) (emphasis added); Fed. R. Civ. P. 26, Committee Notes, 1970 Amendment)).  TST also asserts that this Court should reject Secretary Thurston's argument that the documents were not created in anticipation of litigation, for which Secretary Thurston provides no legal authority in support (Dkt. No. 217, at 14–15).

The Court has examined each of the documents Secretary Thurston places at issue in his motion.  The Court rejects Secretary Thurston's general assertions regarding in-house counsel and

the attorney-client relationship; the Court concludes an attorney-client relationship existed with Mr. de Haan specific to these communications. The Court also rejects Secretary Thurston's general assertions regarding whether these documents were prepared in anticipation of litigation for the reasons previously explained in this Order and based upon its *ex parte*, *in camera* review of the documents withheld on this basis. Because the doctrine extends to notes, memoranda, interviews, and other materials, regardless of whether they were created by an attorney or by an agent for the attorney and given that other courts have extended work product protection to public relations work in similar situations, the Court rejects Secretary Thurston's arguments with respect to these documents based on the documents having been shared with certain third parties, all of whom are identified on TST's privilege log. Based on the record before the Court and the Court's review of the documents at issue, the Court determines that individuals identified on the log are party representatives under Federal Rule of Civil Procedure 26(b)(3) for purposes of the work product doctrine. In the alternative, the Court concludes that there is no argument advanced by Secretary Thurston that these individuals are not witnesses or potential witnesses available to Secretary Thurston. As a result, even if these emails included statements from witnesses or potential witnesses to counsel for TST, discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. *Baker*, 209 F.3d at 1055. There is no indication here that these individuals were not available to Secretary Thurston during discovery. Moreover, Secretary Thurston makes an insufficient showing to demonstrate substantial need with respect to the emails he places at issue. *See Baker*, 209 F.3d at 1055. For all of these reasons, the Court denies Secretary Thurston's motion on this point.

### E.     Tax Documents

Secretary Thurston recounts his attempts to obtain tax documents from TST (Dkt. No. 214, at 4–7).  By prior Order entered March 1, 2020, the Court required TST to respond to Secretary Thurston's Request for Production No. 3 seeking "the Satanic Temple's state and federal tax returns for 2015, 2016, 2017, and 2018" (Dkt. No. 116, at 22–23).  The Court stated that, "depending on the information disclosed in response to Request for Production No. 3, Secretary Thurston may request that the Court reconsider its ruling with respect to Request for Production No. 2." (Dkt. No. 116, at 24).

On March 10, 2020, Secretary Thurston took the deposition of the Rule 30(b)(6) representative Mr. Misicko (Dkt. No. 214, at 5–6).  Secretary Thurston acknowledges that, when a dispute arose during this deposition, "[t]he Court directed defense counsel to make a specific request for the documents for the tax returns of the affiliates." (Dkt. No. 214, at 6).  Defense counsel claims to have sent "a written request to counsel for the Satanic Temple to produce 'state and federal tax returns for 2015, 2016, 2017, and 2018 for the Satanic Temple and its affiliates" (Dkt. No. 214, at 6).  He believed this was sufficient "based on memory alone due to the unavailability of counsel's notes taken during the March 11, 2020 deposition-dispute teleconference with the Court." (Dkt. No. 214, at 6).  On April 10, 2020, TST served a response to Request for Production No. 3 stating:  "The Satanic Temple is not a discrete entity with tax returns.  Intervenors thus have no responsive documents." (Dkt. No. 212-12, at 5).

Secretary Thurston then filed another discovery motion with the Court (Dkt. No. 124, at 7–10).  The Court ruled on October 22, 2021, restating in writing its oral ruling "that Secretary Thurston propound new requests for production specifically seeking tax returns for the years he seeks to specify from the affiliates he seeks to specify." (Dkt. No. 172, at 33).  Secretary Thurston

then propounded on November 2, 2021, supplemental discovery requests (Dkt. Nos. 212-15).  TST responded to the requests objecting on the basis of timeliness, asserting that the requests "were sent after the discovery deadline and not supported by good cause to modify the deadline." (Dkt. No. 212-17).

Secretary Thurston asserts that TST is withholding tax documents (Dkt. Nos. 214, at 18; 212-16, at 12).  According to Secretary Thurston, TST has offered "wildly divergent claims concerning its institutional identity and financial organization" yet it has asserted "its purportedly 'religious' character as the basis for its claims under the Establishment and Equal Protection Clauses" (Dkt. No. 214, at 20).

Secretary Thurston asserts that, for the discovery requests he served past the discovery deadline, no modification of the Court's scheduling order is required (*Id.*).  In the alternative, he asserts that if a modification is required, he has demonstrated diligence in attempting to meet the scheduling order deadlines (*Id.*).

TST responds and opposes Secretary Thurston's motion (Dkt. No. 217, at 18–22).

Secretary Thurston admits that he did not propound follow-up written discovery as the Court directed until November 2, 2021 (Dkt. No. 212-15).  This is past the discovery deadline set forth in the Court's operative scheduling order on discovery, which the parties acknowledged in their joint status report (Dkt. No. 168).  The Court directed Secretary Thurston to propound the discovery requests sufficiently in advance of that deadline permit compliance (Dkt. No. 230).

Therefore, the Court considers Federal Rule of Civil Procedure 16(b), which guides the district court's issuance and modification of pretrial scheduling orders and provides that "[e]xcept in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order," which "must limit the time to join other parties, amend the

pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1), (3)(A).  This schedule "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see also Sherman*, 532 F.3d at 715.  In addition, Rule 16(d) states that a pretrial order "controls the course of the action unless the court modifies it."

The Court ruled during the deposition of Mr. Misicko on this issue with respect to a request for tax returns (Dkt. No. 230, at 15–18).  The Court directed Secretary Thurston to propound "a follow-up request for production propounded with respect to these affiliate entities and for the years and for the information that Mr. Thurston seeks. . . And then Mr. Kezhaya can lodge any objections that need to be lodged on behalf of these entities with respect to these issues or make any clarifications that he needs to make with respect to the status of these entities." (*Id.*, at 17).  The conference occurred on March 11, 2022 (Dkt. No. 230, at 1).

Even if the Court credits counsel's explanation that COVID-19 took him away from his notes regarding this conference for four weeks, which is what he recites in his motion (Dkt. No. 212, at 6), during the time period May 2021 to November 2021, Secretary Thurston had the ability to consult his counsel's notes on these issues, to request a transcript of the conference, and to propound the written discovery the Court directed.  He did not.  The parties submitted a joint position statement on October 12, 2021, informing the Court that the discovery deadline had expired and that the parties did not anticipate a need for further discovery, although acknowledging certain discovery motions were pending (Dkt. No. 168).  The Court issued its written Order on October 22, 2021, stating again its oral ruling from the March 11, 2021, conference directing Secretary Thurston to propound written requests (Dkt. No. 172, at 33–34).  Secretary Thurston admits that he did not propound follow-up written discovery until November 2, 2021 (Dkt. No. 212-15).

For these reasons, and for reasons explained in this Order related to other pending motions, the Court denies Secretary Thurston's motion to amend the Court's scheduling order and will not compel responses to the written discovery propounded November 2, 2021 (Dkt. No. 212-15).

The Court also denies Secretary Thurston's request for reconsideration regarding the Court's ruling on Request for Production No. 2 (Dkt. No. 212, at 21–22).  In his request in this motion, he attempts to alter the written discovery request propounded to TST by limiting the years for which he seeks information and by expanding the entities from which he seeks information. The Court will not modify for a party a written discovery request previously propounded that is the subject of a motion to compel, and the Court will not reconsider its prior ruling.

### (9)    TST's Motion To Compel State Documents

TST filed a motion to compel state documents (Dkt. No. 218).  Secretary Thurston responded (Dkt. No. 222).  TST replied (Dkt. No. 223).  TST seeks to compel Secretary Thurston to produce the following classes of documents:

(1) Correspondence to or from the General Assembly members or their staff about this case (Request for Production Nos. 1 to 7);

(2) State tax records for AHHF and the NACL (Requests for Production Nos. 10 to 11);

(3) All other documents in the possession of the State of Arkansas or any of its employees which relate to the AHHF or NACL (Requests for Production Nos. 12 to 13); and

(4) All meeting minutes which pertain to either Act at issue in this case between General Assembly members or their staff and non-General Assembly members (Requests for Production Nos. 14 to 15).

(Dkt. No. 218, at 1–2).  TST asserts that the parties have conferred but are at an impasse about this matter (*Id.*, at 2).

TST maintains that "Secretary Thurston is the Defendant in name only.  In all other respects, including discovery, this suit is treated as against the State.  There is no dispute that the State has 'possession, custody, or control' over the documents at issue.  Yet Secretary Thurston refuses to provide them." (*Id.*, at 5).  TST observes that Secretary Thurston is coordinating his defense with nonparties, including but not limited to members of the General Assembly (*Id.*, at 5-7).  Secretary Thurston's counsel is representing the three Arkansas State legislators TST subpoenaed in an effort to obtain certain of these documents, and Secretary Thurston intervened to object to the motions for contempt on behalf of the Arkansas State legislators in response to TST's motion (*Id.*).  Further, Secretary Thurston asserted legislative privilege for the documents, which according to TST suggests that he has the ability to obtain the documents (*Id.*, at 7).

Secretary Thurston responded in opposition to the motion (Dkt. No. 222).  Secretary Thurston maintains that he has no control over any documents at issue and that the Court should "reject the expansive 'practical ability' test for 'control' as a matter of law because it undermines the Federal Rules." (*Id.*, at 1).  He advocates instead that the Court adopt the "legal control" test and not the "practical ability" test under these circumstances (*Id.*, at 4-5).  Secretary Thurston argues that, regardless of the test applied, he "unequivocally has no legal right or practical ability to obtain any documents at issue." (*Id.*, at 1, 5-9).  He submits an affidavit from Daniel L. Parker, Managing Attorney for the Legal Division of the Arkansas Secretary of State, in support of his response (Dkt. No. 222-1).  As a result, Secretary Thurston maintains that TST must then make an adequate showing to overcome Secretary Thurston's assertion regarding his claimed lack of control (*Id.*, at 6).  Secretary Thurston asserts that TST has not done so here (*Id.*).

TST filed a reply addressing Secretary Thurston's arguments, urging the Court to reject those arguments (Dkt. No. 223).

Having reviewed the entire record in this case and the legal authorities cited by TST and

Secretary Thurston, the Court denies TST's motion to compel state documents (Dkt. No. 218).

## IV. Conclusion

For the foregoing reasons, the Court rules as follows:

1. The Court denies a motion for relief concerning remaining discovery issues filed by Arkansas Secretary of State John Thurston, in his official capacity (Dkt. No. 181).

2. The Court grants, in part, and denies, in part, consistent with the terms of this Order TST's motion to exclude Shane Bugbee or to permit a late subpoena and amended motion to exclude Bugbee or to permit a late subpoena (Dkt. Nos. 189; 190).

3. The Court denies TST's motion to amend the scheduling order to allow the subpoenas and for Order to show cause (Dkt. No. 192).

4. The Court grants, in part, and denies, in part, consistent with the terms of this Order the motion to quash intervenor's subpoena or, in the alternative, for a protective order filed by non-party witness Arkansas State Senator Jason Rapert (Dkt. No. 195).

5. The Court grants, in part, and denies, in part, the motion to quash intervenor's subpoena or, in the alternative, for a protective order filed by non-party witness American History and Heritage Foundation (Dkt. No. 196).

6. The Court denies TST's motion for order to show cause or to compel production of documents in response to the subpoena directed to Arkansas State Senator Bob Ballinger (Dkt. No. 199).

7. The Court grants, in part, and denies, in part, consistent with the terms of this Order TST's motion to compel production of documents (Dkt. No. 203).

8. The Court denies Secretary Thurston's motion to compel responsive documents withheld by TST (Dkt. No. 212).

9. The Court denies TST's motion to compel state documents (Dkt. No. 218).

So ordered this the 30th day of September, 2022.

Kristine G. Baker
United States District Judge

56