## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**DONNA CAVE, et al**                                                                **PLAINTIFF**

**V.**                                   **Case No. 4:18-cv-00342-KGB**

**JOHN THURSTON, Arkansas Secretary of State**
**in his Official Capacity**                                                        **DEFENDANT**

### *ORSI* PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Orsi Plaintiffs assert that the following facts are undisputed:

1. Anne Orsi is an agnostic atheist who objects to the Ten Commandments monument at issue in this case. Exhibit H, Excerpts from Deposition of Anne Orsi, at 11, 30-31, 63-65, 75-76. At the time of her deposition, she was president of the Arkansas Society of Freethinkers. *Id*. at 17. She is also a member of other similar organizations. *Id*. at 18. She visits the Arkansas State Capitol Grounds for many purposes. *Id*. at 33-34. She attends rallies. *Id.* at 33, 38-42, She goes to the History Commission in the Big Mac building to do historical and genealogy research. *Id*. at 35-36, 44. She goes to the Solstice display on the median south of the Capitol building to celebrate the solstice. *Id*. at 36, 44-45. She goes to the Justice Building to file papers and attend meetings. *Id*. at 59, 60, 80. She has testified at legislative committee meetings. *Id*. at 50-51. She has walked past the monument and driven past the monument. *Id*. at 56-57. She attended the installation ceremony of the second monument to protest it. *Id*. at 60.

1

2. Rabbi Eugene Levy is a Rabbi who opposes the Ten Commandments monument. Exhibit I, Excerpts from the Deposition of Rabbi Eugene Levy, at 43, 45-46. He was involved with Interfaith Arkansas, an organization involving members of various faiths, which was organized in response to the Central High School crisis. *Id*. at 34-36. He was president one year, and treasurer for three or four years. *Id.* at 34-35. He visits the State Capitol from time to time. He estimates that he has been to the Arkansas State Capitol Grounds 25 or 30 times. *Id*. at 46-47. He has been to the State Capitol Grounds for political meetings, rallies, and meetings of the State Board of Education. *Id*. at 47-52, 57, 66-67.

3. Gale Stewart is an ordained elder in the Presbyterian Church, U.S.A. who opposes the Ten Commandments monument. Exhibit J, Excerpts from the Deposition of Gale Stewart, at 16-17, 23-24, 29. She has made many visits to the Arkansas State Capitol grounds, to picnic, to visit the Supreme Court library, to attend court proceedings, to go to public meetings, and to lobby for passage or failure of proposed legislation. She had been in and out of the Secretary of State's office doing research when it was on the State Capitol Grounds, she's been to the Governor's office, to Game and Fish and many state agencies, she has been to rallies and demonstrations, and she's been there to see the tulip trees. *Id*. at 31-33, 39-40. She has seen the Ten Commandments monument. *Id*. at 50.

4. Teresa Gryder is a Wiccan who opposes the Ten Commandments monument. Exhibit L, Deposition of Teresa Gryder, at 13-14, 25-27. She is a member of the Arkansas Society of Freethinkers. *Id*. at 24-25. She has been to the State Capitol Grounds a lot. *Id*. at 28. She has visited the Firefighters memorial. *Id*. at 29, 74-75. She and her family will drive through the grounds if they are in the area. *Id*. at 30. She has applied for a job at the Parks Department *Id*. at 39.

5. The Arkansas General Assembly enacted Act 1231 of 2015, providing for the placement of a Ten Commandments monument display on the State Capitol Grounds.

6. Sen. Jason Rapert was the Lead Sponsor of Act 1231 of 2015.

7. Act 1231 of 2015 provided the specific language of the "Ten Commandments" that was to appear on the monument.

8. The legislative findings in Act 1231 of 2015 include a finding that the Ten Commandments are one of many sources influencing the development of what has become modern law.

9. There is no historical basis for the statement that the Ten Commandments are one of many sources influencing the development of what has become modern law.

10. The Ten Commandments are religious in nature. They are a sacred text in the Jewish and Christian faiths.

11. Different religions state the "Ten Commandments" differently. In particular, there are different versions recognized by Jews, Roman Catholics, and most Protestant denominations.

12. The wording selected by the General Assembly is a combination of various religious versions of the Ten Commandments.

13. As a result of the attempt to accommodate various religious versions of the Ten Commandments, the Ten Commandments Monument actually contains eleven separate commands. *See ACLU Nebraska Foundation v. City of Plattsmouth, Nebraska*, 419 F.3d 772, n. 2 (2005), Exhibit D, Deposition of Kelly Boyd, at 177.

14. The headline in the Arkansas Democrat Gazette when the bill was passed was "Bill Passes to display holy rules at Capitol." Exhibit A-5, Orsi Aff., Arkansas Democrat-Gazette (Apr. 2, 2015) at 1A.

15. Objections to the placement of the Ten Commandments monuments—as well as statements in support of the monument—were voiced at public hearings. Exhibit A-6, Orsi Aff., Arkansas Democrat-Gazette (Dec. 15, 2016) at 1B; Exhibit L, Arts and Grounds Commission Public Hearing (Dec.14, 2016).

16. At the hearings, one packet of over three hundred letters in support of the monument, all identical except for the signature, were presented to the Secretary of State. Exhibit E-3, Exhibit No. 27 to Boyd Depo.; Exhibit G-4, Rapert Depo., Orsi Plaintiffs' Exhibit No. 2, Letter to Secretary of State's Office in Support of Ten Commandments Monument.

17. The form letter signed by the three hundred supporters all contained language evincing an understanding of the religious nature of the monument. *Id*.

18. There was some objection to the symbolism on the monument, such as the all-seeing eye. Exhibit F-1, Exhibit 13 to Moody Depo..

19. Objections to--as well as statements in support of--the placement of the monument were also sent to the Secretary of State. Exhibit E, Boyd Depo., at 114-15.

20. Kelly Boyd of the Secretary of State's office established a telephone hotline for comments about the monument because there were so many telephone calls about the monument that he was concerned that the secretary of state's office could lose control. Kelly Boyd listened to the comments and created a spreadsheet about the comments. *Id.* at 125; Exhibit E-2, Exhibit 18 to Boyd Depo., Spreadsheet.

21. Mr. Boyd documented roughly 823 calls. Some callers expressed multiple opinions, all of which were documented. *Id.* at 134-35, 174-76.

22. Of all the callers, one advocated for a monument to the Code of Hammurabi, but otherwise nobody stated a need for a monument to the law. *Id.*

23. There was publicity in the media both for and against the monument between 2016 and 2017. *Id.* at 119-20.

24. A monument containing the wording prescribed by the General Assembly was proposed by the American History & Heritage Foundation.

25. During the same time period, other monuments were suggested. Formal proposals for three additional monuments were made. Less thorough proposals were made for other monuments.

26. Among the three formal proposals were the Gold Star Families monument, the Satanic Temple's Baphomet monument, and the Saline Atheist and Skeptic Society's Wall of Separation acknowledging the separation of church and state.

27. The American History & Heritage Foundation was formed after the statute prescribing the monument was passed in 2015.

28. The American History & Heritage Foundation had not performed any charitable or eleemosynary function before it became involved in raising funds for the monument. Exhibit G, Rapert Depo., at 92, 93, 169.

29. Sen. Rapert has made other public statements acknowledging the religious nature of the monument, including a guest editorial for the Arkansas Democrat-Gazette in which he stated, "I am guilty as charged for supporting the Ten Commandments and write today to take full responsibility for being so bold as to believe that our state and our nation would be better

off if people simply honored, followed and adhered to the Ten Commandments given by God Himself to Moses on Mount Sinai." Exhibit A-4, Orsi Aff., Ark. Democrat Gazette, (Jan. 8, 2017) at 3H.

30. On or about June 27, 2017, a monument was placed on the State Capitol grounds. Exhibit A-10, Orsi Aff., Ark. Democrat Gazette, (June 28, 2017) at 1A.

31. That monument was destroyed within 24 hours. Exhibit A-7, Orsi Aff., Ark. Democrat Gazette, (June 29, 2017) at 1A.

32. On April 26, 2018, a second monument was placed, with barriers to prevent intentional destruction.

33. A ceremony was held on April 26, 2018 to unveil the monument. Both supporters and protestors appeared. At least one of the *Orsi* plaintiffs, one of the *Orsi* plaintiffs' counsel, and one of the intervenors were present at the protest. Exhibit A-5, Orsi Aff., Ark. Democrat Gazette, (April 27, 2018) at 1B.

34. The Defendant cannot articulate a good-faith secular purpose for the placement of the Ten Commandments monument on the state capitol grounds. Unlike many other monuments for which there may have been mixed motives for placement of the monument, this monument was not intended to honor veterans, to acknowledge an event in American history, to thank a social group for its service to the community, or to honor a particular individual.

35. Likewise, unlike many monuments that have mixed significance, this monument was placed in spite of divisive controversy as to its sectarian religious message.

36. To the extent that the General Assembly asserted that the purpose of the monument was to honor the Ten Commandments as the moral foundation of the law, that stated purpose is a sham.

37. The General Assembly's finding that "The Ten Commandments represent a philosophy of government held by many of the founders of this nation and by many Arkansans and other Americans today, that God has ordained civil government and has delegated limited authority to civil government, that God has limited the authority of civil government, and that God has endowed people with certain unalienable rights, including life, liberty, and the pursuit of happiness" is a sham. A simple reading of the Ten Commandments shows that they do not address civil government, the degree of authority granted by God to civil government, or any unalienable rights.

38. The commandment "I AM the LORD thy God. Thou shalt have no other gods before me," is not enforceable under our law and has never formed a part of American law.

39. The commandment, "Thou shalt not make to thyself any graven images," is likewise not enforceable under our law and has never formed a part of American law.

40. The commandment, 'Thou shalt not take the Name of the Lord the God in vain" is not enforceable under our law.

41. The one (or two) commandments regarding coveting are not enforceable under any law, as they proscribe a desire, not an action.

42. The commandments regarding keeping the sabbath day and committing adultery have historically been enforced for alleged secular reasons.

43. The commandments regarding stealing, killing, and bearing false witness are part of every legal system.

44. There were historic compilations of law, both before and after the Ten Commandments appeared. But for their religious significance, the Ten Commandments are not unique in the history of law.

45. There are numerous monuments that could better memorialize our legal system, including a monument to the Constitution, the Bill of Rights, or the Declaration of Independence. The fact that there is no recognition of those far more important and significant documents shows that the stated purpose of the General Assembly is a sham.

46. The only expert reports in this matter were the reports of Dr. Mark David Hall on behalf of the Secretary of State and the report of Dr. Steven K. Green on behalf of the Orsi Plaintiffs.

47. The Ten Commandments are numbered and listed in different ways by various faith traditions. Exhibit B, Hall Report, at 43; Exhibit C, Green Report, at 44.

48. Historically, Protestants and Roman Catholics have used different translations of the Bible. Exhibit B, Hall Report, at 75.

49. Ten Commandments monuments are a mid-twentieth century phenomenon. Exhibit B, Hall Report, at 44-56, Exhibit H, Orsi Depo., at 76.

50. The earliest Ten Commandments monument identified by Dr. Hall was erected in 1955. The others were erected between 1956 and 1983 inclusive. Exhibit B, Hall Report, at 46.

51. The vast majority of those monuments were promoted and created by the Fraternal Order of the Eagles, who chose the specific wording and emblems that appeared on the monuments.

52. The Fraternal Order of the Eagles is a non-governmental association well-known for its charitable and eleemosynary activities.

53. There is no historical basis for assuming that the leading political figures who drafted the Constitution relied on religious principles to any significant degree. Exhibit C, Green Report, at 4.

54. There is no evidence that the Framers relied on, or considered, the Ten Commandments to undergird either the political or legal systems. *Id*.

55. The Ten Commandments is first and foremost a religious document exclusive to Jewish and Christian traditions. *Id*. at 5

56. "During the founding period, one finds occasional references to the Ten Commandments or Mosaic law, most commonly in sermons where clergy drew parallels to Old Testament Israel. But even though Calvinist clergy saw Old Testament Israel as a model, they generally believed that Christians were not bound by the Old Testament, including by the Ten Commandments. Considering political writings rather than sermons, there is a general dearth of references to Mosaic law, the Decalogue, or the Ten Commandments. Of the central legal documents, the Declaration of Independence contains four natural law/rights allusions to God; in contrast, the Constitution and the Bill of Rights did not include even a perfunctory or formalistic reference to God. Rather than relying on divine authority, the Constitution is "ordained" by "the People of the United States." *Id*. at 19.

57. The Ten Commandments was not mentioned in the debates and publication surrounding the founding documents. *Id*. at 20.

58. There is no significant reliance on the Ten Commandments in Early American case law. *Id*. at 21, Steven K. Green, *The Second Disestablishment: Church and State in Nineteenth-Century America* (New York: Oxford University Press, 2010), 182–90; Green, "The Fount of Everything Just and Right," 553–58.

Respectfully Submitted,

Samuel T. Grover
Associate Counsel
WI Bar No. 1096047
sgrover@ffrf.org

Patrick C. Elliott
Senior Counsel
WI Bar No. 1074300
pelliott@ffrf.org

Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
(608) 230-8443


Katherine McKerall
American Humanist Association
1777 T Street N.W.
Washington, D.C. 20009
Telephone: (202) 238-9088
Facsimile: (202) 238-9003
Email:  kmckerall@americanhumanist.org


Baker Schulze and Murphy
2311 Biscayne Drive
Suite 300
Little Rock, AR 72227
Telephone: (501) 537-1000
Facsimile: (501) 537-1001
www.bsm.law

J.G. "Gerry" Schulze
Attorney at Law
Ark. Bar No. 83156
gschulze@bsm.law