## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | |
|---|---|
| **DONNA CAVE**, *et al.*, | **PLAINTIFFS**, |
| **ANNE ORSI**, *et al.*, | **CONSOLIDATED PLAINTIFFS**, |
| **THE SATANIC TEMPLE**, *et al*., | **INTERVENORS**, |
| v. No. 4:18CV00342 KGB/BD | |
| **JOHN THURSTON**, Arkansas Secretary of State, in his official capacity, | **DEFENDANT**. |

### SECRETARY THURSTON'S MOTION TO EXCLUDE DR. GREEN'S OPINIONS

Dr. Green's report impermissibly seeks to educate this Court concerning how it should conduct its legal analysis—and uses obsolete legal standards at that. His opinions are neither relevant nor reliable, and the Court must exclude them under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 508 U.S. 579 (1993).

### LEGAL STANDARD

"The district court is the 'gatekeeper' for the admissibility of expert testimony," *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 685-86 (8th Cir. 2001) (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993)), which "is only admissible if it assists the trier of fact to understand the evidence or determine a fact in issue." *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993); *Wood v. Minn. Mining & Mfg.*, 112 F.3d 306, 309 (8th Cir. 1997). The proponent bears the burden of demonstrating by a preponderance of the evidence that the expert testimony is 1) relevant, 2) qualified, and 3) reliable. *In re Bair Hugger Forced Air Warming Devices Prods. Liability Litig.*, 9 F.4d 768, 777 (8th Cir. 2020). To be relevant, expert testimony "must be useful to the finder of fact in deciding the ultimate issue of fact." *Id.* Even if relevant, the expert testimony "must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as

true, it provides the assistance the finder of fact requires." *Id.* Accordingly, "the trial judge must ensure that any and all [expert testimony] admitted is not only relevant but reliable." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (citing *Daubert*, 509 U.S. at 589; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999) (extending *Daubert*'s reasoning to all expert testimony, not merely scientific evidence)). To assess reliability, the district court considers "whether the reasoning or methodology underlying the proposed expert testimony is scientifically valid and [] whether that reasoning or methodology can be applied to the facts in issue, focusing specifically on the methodology and not the conclusion." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) (citations and internal quotation marks omitted).

While experts may provide opinion testimony, they may not provide legal conclusions. *See* Fed. R. Evid. 704(a); *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411-12 (8th Cir. 1987). "[E]xpert testimony on legal matters is not admissible because matters of law are for the trial judge . . . ." *United States v. Bull*, 8 F.4th 762, 768 (8th Cir. 2021) (internal citations omitted); *see also United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) ("As a general rule, questions of law are the subject of the court's instruction and are not the subject of expert testimony."). Historian expert witnesses may analyze historical information with the goal of "providing a basis for a reliable narrative about [the] past," *see, e.g.*, *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 195 (3d Cir. 2016), but they may not offer opinions on the legal implications of their factual conclusions, *see S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). Expert testimony that asserts what the law is or concludes how the law should be applied is "simply impermissible." *Id.*

**ARGUMENT**

The stated aim of Dr. Green's report is to rebut Dr. Mark David Hall's expert report, Green Rep. ¶ 5, but that statement conceals a fundamental difference between those reports. Dr. Hall's report provides a descriptive account of facts bearing on how the Establishment Clause was historically understood, a descriptive account of our Nation's tradition of religious displays on public property, and a descriptive account of the origins of strict separationism.[1] *See generally* Hall Report. Further, Dr. Hall's report provides contextual grounding for the historical facts he discusses and the factual conclusions he draws. That information focuses his report on factual information proper for an expert to provide, and it enables this Court to evaluate the reliability and evidentiary value of those facts.

Dr. Green's report, on the other hand, is not descriptively factual but expressly normative and legal. He purports not to report how courts have used history but to instruct on how they *should* use history. Dr. Green repeatedly seeks to educate this Court on how it should do its job. *See, e.g.*, Green Rep. ¶ 6 ("First, courts of law should . . ."); *id.* ¶ 11 ("[C]ourts should . . ."); *id.* ¶ 12 ("[C]ourts should . . .").

---

[1] Dr. Hall explains his methodology and the materials he reviewed to arrive at his conclusions, which are descriptively factual in nature. *See, e.g.*, Hall Rep. ¶ 7 ("By exploring a wide range of State practices, actions of the Continental and Confederation Congresses, debates over the language of the First Amendment, and the acts of federal officials in the new republic, I show that there is little evidence to support the proposition that the founders desired to strictly separate church and state."); *see id.* ¶ 28 ("[C]onsideration of a wide range of founders and founding era practices reveals little support for the erection of a wall of separation between church and state."); *id.* ¶¶ 29-63 (describing founding-era state practices); *id.* ¶¶ 64-90 (describing founding era constitutional debates about the religion clauses); *id.* ¶¶ 92-118 (reviewing historic practices and traditions of placing monuments that include religious imagery from various faiths); *id.* ¶¶ 95-106 (explaining the traditional use of the Ten Commandments as symbolic of law and the historical understanding of the Ten Commandments "as an important influence on development of western morality and law").

Most of Dr. Green's report presents legal arguments based on his interpretation of Supreme Court precedent. The remainder uses historical assertions lacking a historical methodology to support his legal opinions on questions of law. Thus, the report more closely resembles an amicus brief than an expert report. Accordingly, the Orsi Plaintiffs fail to carry their burden to demonstrate that the expert report is admissible, and the court should exclude Dr. Green's opinions under Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals*, 508 U.S. 579 (1993).

**I.   Dr. Green's improper opinions on the governing legal standard should be excluded.**

In the section of Dr. Green's report where he purports to set forth his "Historical Methodology," Green Rep. ¶¶ 11-15 & n.3, Dr. Green actually says nothing about any *historical* method. He does not elaborate on how he conducted his historical research or explain how he draws historical conclusions. Rather, that section provides a *legal* analysis of four Supreme Court decisions. *See, e.g.*, *id.* ¶ 11 (opining on history's "role and effectiveness in Supreme court adjudication"); *id.* ¶¶ 12-13 (explaining how Supreme Court justices "have addressed the proper methodology to be applied to historical data"); *id.* ¶¶ 13-14 (interpreting *Town of Greece v. Galloway*, 572 U.S. 565 (2014), and *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067 (2019)). Based on this legal analysis, Dr. Green then advocates for this Court to adopt a particular legal test to decide this case. Green Rep. ¶ 15. Indeed, he expressly opines on "what is relevant historically for determining the constitutionality of Ten Commandments monuments." *Id.*

But there is a crucial difference between (1) presenting historical information for the Court's benefit, and (2) improperly instructing the Court on the legal test it should apply. *See Bull*, 8 F.4th at 768 ("[E]xpert testimony on legal matters is not admissible because matters of law are for the trial judge . . . ." (citations omitted)). Expert legal analysis and opinions concerning the correct rule of decision—asserting what the law is and how it should be applied—is irrelevant and inadmissible. *See S. Pine Helicopters*, 320 F.3d at 841; *Bull*, 8 F.4th at 768.

4

Further highlighting the impermissibly legal character of Dr. Green's opinions, he finds significant that "the portions of Justice Alito's [*American Legion*] opinion that criticized *Lemon* . . . failed to garner a majority," and he worries that the Ten Commandments monument "will *endorse* one religion over others." Green Rep. ¶¶ 14 & n.4, 44 (emphasis added). But "[i]n place of *Lemon* and the endorsement test, this Court has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (quoting *Town of Greece*, 572 U.S. at 576). Indeed, if Dr. Green's method were historical in character, then a Supreme Court decision could not possibly affect its validity in the way that overturning *Lemon* has invalidated his method. Dr. Green's opinions concerning the correct legal test are wholly improper and must be excluded.

**II.     The rest of Dr. Green's report advances improper conclusions.**

Dr. Green's methodological shortcomings undermine his entire report. Primarily, all of the report's historical assertions are unreliable because Dr. Green advances no proper method to explain how he arrives at those conclusions. Bare assertions do not suffice to meet Rule 702's admissibility requirements. Rather, any expert must demonstrate to the Court that testimony he provides is the product of reliable methods he has "reliably applied . . . to the facts of the case." Fed. R. Evid. 702; *Schmidt*, 557 F.3d at 570 (citing *Daubert*, 509 U.S. at 589; *Kumho Tire Co.*, 526 U.S. at 142 (extending *Daubert*'s reasoning to all expert testimony). Dr. Green's legal analysis gives no insight into how he arrived at his historical claims.

The Court cannot fulfill its duty[2] to verify that Dr. Green's historical assertions are reliable where he provides no relevant methodology explaining how he makes them. *See generally, e.g.*, *Brown v. Illinois Cent. R.R. Co.*, 705 F.3d 531, 536-37 (5th Cir. 2013) (upholding exclusion of

---

[2] *See In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d at 1000-01.

expert witness who "failed to articulate a credible methodology to sustain his conclusions" beyond "emphasiz[ing] his own education and experience"); *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 669 F. Supp. 2d 514, 523 (M.D. Penn. Oct. 29, 2009) (excluding expert witness who "offered no verifiable methodology for his conclusion"). As explained above, Dr. Green's report makes legal arguments in the guise of historical assertions. But to the extent Dr. Green presents actual historical assertions, *see generally* Sections IV, V, ¶¶ 42-43, the lack of historical methodology renders them unreliable.[3]

Lack of reliability alone renders an expert's testimony inadmissible, *In re Wholesale Grocery Prods.*, 946 F.3d at 1001, but many of Dr. Green's historical assertions are also irrelevant because they address questions that the operative legal test does not ask. Sections V and VII bear particular mention. Dr. Green devotes Section V to explaining that the Ten Commandments have not been historically enforced as a statute. Green Rep. ¶¶ 26-36. However, this is not a relevant factual question under *American Legion* and *Town of Greece*. The operative question is whether the Ten Commandments monument fits within a a traditional practice of public religious displays. *American Legion*, 139 S. Ct. 2067, 2082-85 (2019)[4]; *see Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014) ("The Court's inquiry, then, must be to determine whether the prayer practice in the town of Greece fits within the tradition long followed in Congress and the state legislatures."). Whether citizens were ever forced to adhere to the Ten Commandments has nothing to do with the history of placing Ten Commandments monuments.

---

[3] *Cf.* Hall Am. Rep. ¶¶ 7-9 (describing the research process used to compile the report's historical assertions and conclusions).

[4] Notably, how *American Legion*'s test applies to Ten Commandments monuments is no mystery, because the *American Legion* Court explained its test by analyzing the practice of placing Ten Commandments monuments as an example. *American Legion*, 139 S. Ct. at 2082-83.

6

Given that the remainder of Dr. Green's report is premised on his legal analysis (and an improper one at that), it advances opinions that are inappropriate for consideration. For example, although Section IV presents various historical claims, *see* Green Rep. ¶¶ 16-25, the information ultimately serves the legal conclusion that certain Supreme Court opinions employ the correct legal interpretation of the First Amendment. Green Rep. ¶ 25 ("[M]embers of the Supreme Court have been on a firm footing by relying on James Madison for interpreting the Religion Clauses and in aligning that interpretation with church-state separation.") (citing *Everson v. Bd. of Educ.*, 330 U.S. 1 (1947); *Engel v. Vitale*, 370 U.S. 421 (1962); *Abington Sch. Dist. v. Schempp*, 374 U.S. 203 (1963); *Wallace v. Jaffree*, 472 U.S. 38 (1985); *McCreary Cty. v. ACLU*, 545 U.S. 844 (2005)). This section boils down to Dr. Green's opinion that certain Supreme Court opinions are preferable to others, but whether the Supreme Court's legal interpretation of the First Amendment is correct is plainly a legal question outside the scope of an expert's competence. *See Estes*, 993 F.2d at 163-64.

Dr. Green's report is riddled with his interpretations, summaries, and applications of case law. Sections VI and VII, in particular, present legal analysis, relying primarily on pre-*Van Orden* district court dicta and a dissenting opinion to argue that Ten Commandments monuments generally do not meet *American Legion*'s historical practice test. Green Rep. ¶¶ 37-38. Although couched as historical assertions, Section VI simply quotes statements from various court opinions—all of which are dissents, pre-*Van Orden* opinions, or out-of-circuit opinions. Green Rep. ¶ 37-28 (citing *Greater Houston Chapter of ACLU v. Eckels*, 589 F. Supp. 222 (S.D. Tex. 1984); *Glassroth v. Moore*, 335 F.3d 1282 (11th Cir. 2003); *American Legion*, 137 S. Ct. at 2112 (Ginsburg, J., dissenting); *Card v. City of Everett*, 520 F.3d 1009, 1012-1013 (9th Cir. 2008)). Likewise, Section VII draws many of its factual assertions from court opinions, including out-of-circuit, pre-

7

*Van Orden*, and dissenting opinions. Green Rep. ¶¶ 39-41 (citing, *inter alia*, *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766 (7th Cir. 2001); *Van Orden*, 545 U.S. at 708 (Stevens, J., dissenting)). Needless to say, an expert witness repeating court opinions' factual claims does not give them additional weight.

The conclusion of Dr. Green's report, likewise, is a legal one—that the "placement of a Ten Commandments monument on the Arkansas State Capitol grounds would risk creating the impression the State is affiliating itself with the religious beliefs of a particular faith tradition." Again, this is freighted with legal baggage—significant only against the background of the obsolete *Lemon* test's endorsement prong. *See Lynch v. Donnelly*, 465 U.S. 668, 691-92 (1984) (O'Connor, J., concurring) (explaining that in properly interpreting "the effect prong of the *Lemon* test," "[w]hat is crucial is that a government practice not have the effect of communicating a message of government endorsement or disapproval of religion"); *Cty. of Allegheny v. ACLU*, 492 U.S. 573, 592-94 (1989) (explaining the endorsement test). Even if *Lemon* were not an obsolete legal standard (which it certainly is), the question whether a person would receive the impression that Arkansas has aligned itself with a particular religion is a legal question the Court could answer without expert testimony.

Failing to exclude Dr. Green's opinions would not only "give the appearance that the court was shifting to witnesses the responsibility to decide the case," it would also be plainly superfluous given the "special legal knowledge of the judge." *Bull*, 8 F.4th at 768; *see also id.* at 766 (noting that the "district court correctly refused to 'have a witness on the stand testifying as to her interpretation of what a statute . . . says.'"). The testimony is, therefore, inadmissible.

### III. Dr. Green's Opinions are otherwise irrelevant.

Dr. Green's historical assertions are inadmissible for other reasons. The factual claims in Section VII speak to *Lemon*'s endorsement test, rather than to *American Legion* and *Town of*

8

*Greece*'s historical practice test. In Section VII, Dr. Green makes the case that Ten Commandments monuments endorse a particular religion. Green Rep. ¶¶ 39-44. As explained above, that conclusion is an inadmissible legal opinion. And the factual assertions underlying that conclusion are likewise irrelevant because they address a question the governing legal standard does not ask. For example, whether the text of the Ten Commandments is "theologically neutral," Green Rep. ¶ 44, is immaterial to the historical practice test, *see Town of Greece*, 572 U.S. at 580-81 ("*Marsh* nowhere suggested that the constitutionality of legislative prayer turns on the neutrality of its content."). And a purported difference in how Jews, Catholics, or Protestants number the commandments or divide them between two tablets, Green Rep. ¶ 43, is completely irrelevant regardless of what legal test is applied because the Ten Commandments monument at issue in this case neither enumerates the commandments nor divides them into separate tablets.

As a result, even if they were not already inadmissibly unreliable, the historical claims in Section V and VII are inadmissibly irrelevant, because they are not "useful to the finder of fact in deciding the ultimate issue of fact." *In re Bair Hugger*, 9 F.4d at 777; *see Smith v. Bubak*, 643 F.3d 1137, 1141-42 (2011) (excluding as irrelevant an expert opinion on a factual question not material to the governing legal standard).

## CONCLUSION

For the foregoing reasons, Secretary Thurston respectfully requests the court exclude Dr. Green's opinions.

| | |
|---|---|
| Submitted: March 6, 2023 | Respectfully, |

                                                TIM GRIFFIN
                                                  Attorney General of Arkansas
NICHOLAS J. BRONNI (2016097)
  Solicitor General
DYLAN L. JACOBS (2016167)
  Deputy Solicitor General
MICHAEL A. CANTRELL (2012287)
  Assistant Solicitor General
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Main: (501) 682-2007
Michael.Cantrell@ArkansasAG.gov

Hiram S. Sasser, III
Michael D. Berry
Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel: (972) 941-6162
Fax: (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Counsel for Secretary of State John Thurston*