# 4:18-CV-342

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

---

Donna Cave; Anne Orsi, The Satanic Temple, *et al.*
*Plaintiffs*,

*v.*

John Thurston, in his official capacity
*Defendant*.

---

## TST'S MOTION AND BRIEF IN SUPPORT OF MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. MARK DAVID HALL

---



**Matt Kezhaya**              matt@crown.law
Ark. # 2014161            direct: (479) 431-6112
Minn. # 0402193        general: (612) 349-2216

100 S. Fifth St., Suite 1900, Minneapolis, MN 55402

**COMES NOW** TST, by and through counsel of record, on motion to preclude the expert testimony of Defendant's expert witness, Dr. Mark David Hall. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Dr. Hall's report is nothing more than legal argument in disguise as a historian's opinion. The report invades the sole province of the Court, and lectures on what he believes the law *should* be.

Further, the report presents an ostensibly historical perspective without revealing the methodologies used to arrive at his opinions. Historian experts are no less obligated to justify their conclusions with reliable methods than any other expert. Without proof of reliable methodology, the historian's testimony cannot be proven to be anything more than biased advocacy in favor of their personal preference for the outcome of this case. The Court should exclude all evidence from Dr. Hall for failure to present any methodology to formulate the opinion.

# Argument

**1: Dr. Hall's historical lecture is legal argument.**

Dr. Hall's testimony is inadmissible legal argument. *See Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411-12 (8th Cir. 1987). Expert witnesses cannot instruct the court on the law. They are to apply their expert knowledge to the facts of a case to assist the trier of fact. Dressing up legal analysis and conclusions in historical garb does not make an expert's testimony admissible. Dr. Hall's disclaimer[1] does not change the fact that his report is nothing more than an *amicus* brief, to be presented without Court leave. The Supreme Court looks to history to understand the meaning of the Constitution. A lower court is bound by Supreme Court precedent and has no place second guessing their historical and legal conclusions. Dr. Hall offers a unique narrative on the history of the Establishment Clause that, by review of precedent and history, has

---

[1] "I review a number of court cases in this report, I am not an attorney and do not presume to offer a legal opinion on any of the matters that I discuss." Exhibit 1, at 2.

all the trappings of a Supreme Court opinion. His narrative and critique invade Supreme Court precedent and this court's province.

The first eleven pages of Dr. Hall's report is analysis of Supreme Court opinions. Exhibit 1, 1-11. Paragraph 121 of his report presents a hypothetical that asserts, "surely it would be constitutionally permissible…" *Id.*, at 67. In paragraph 128, he puts forward an extrajudicial theory of the Establishment Clause that contends the clause merely prohibits six categories of government action. Id. at 70. If Dr. Hall wished to get a law license and represent Defendants, that was his prerogative. He could even have sought leave to submit an *amicus* brief. But legal arguments and analysis as to what the law should be are inadmissible as expert testimony. The majority of his report being expose on the law, it should be found inadmissible.

**2: Dr. Hall's testimony is not supported by reliable methods.**

Dr. Hall provides no evidence that his testimony is the result of reliable methodology consistent with accepted historical methods. See Brown v. Illinois Cent. R.R. Co., 705 F.3d 531, 536-37 (5th Cir.

2013); "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the testimony is the product of reliable principles and methods and the expert has reliably applied the principles and methods to the facts of the case." FRE 702(c),(d). A reliable opinion is based on valid reasoning and accepted methodology. *Saunders v. Wilder Bros. Sawmill, Inc.*, No. 2:05CV00219-WRW, 2007 WL 9735876, at *2 (E.D. Ark. Aug. 8, 2007) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588 (1993)). The court's "gatekeeping" obligations "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). A court should not admit opinion evidence that "is connected to existing data only by the *ipse dixit*[2] of the expert." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (citing *Gen. Elec. Co. v. Joiner*,

---

[2] The term "ipse dixit" is a legal term meaning "something asserted but not proved." It is literally translated "he himself said it." Black's Law Dictionary 905 (9th ed.2009).

522 U.S. 136, 146 (1997)). "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *Id*.

Historians can be experts, but their historical accounts must adhere to reliable methodology to be admissible. Without evidence of objective principles and methodology, the expert historian becomes nothing more than an expert advocate.

Proper historical work involves surveying the full array of available sources, evaluating the reliability of the sources, and thus "providing a basis for a 'reliable narrative about that past." *Langbord*, 832 F.3d at 195, quoting *United States v. Kantengwa*, 781 F.3d 545, 562 (1st Cir. 2015); also see Alvaro Hasani, *Putting History on the Stand: A Closer Look at the Legitimacy of Criticisms Levied Against Historians Who Testify As Expert Witnesses*, 34 Whittier L. Rev. 343, 354-55 (2013). "In accounting for change over time, historians follow two interrelated cardinal rules: first, accommodating the complexity and inconsistency in the historical record and, second,

reckoning with contrary evidence." Jonathan D. Martin, *Historians at the Gate: Accommodating Expert Historical Testimony in Federal Courts*, 78 N.Y.U. L. Rev. 1518, 1534 (2003). E.H. Carr, author of a respected exposition on historical method, insisted that a historian "must seek to bring into the picture all known or knowable facts relevant, in one sense or another, to the theme on which he is engaged and to the interpretation proposed." *Id.* (quoting Edward Hallett Carr, *What is History?* 32 (1961)). "Complex historical assertions are always probabilistic in character," involving "greater and lesser likelihoods that they are correctly describing past reality." H. Jefferson Powell, *Rules for Originalists*, 73 Va. L. Rev. 659, 678-79 (1987).

Dr. Hall has not demonstrated that his narrative is based on reliable methods. Dr. Hall states this about his methodology: "I base the following opinions on my own knowledge, research, experience, and publications, and the work of other academics and writers. The materials I have used to research and write this report are the standard sources used by other experts in my field." Later in the

report he asserts, "by exploring a wide range of State practices, actions of the Continental and Confederation Congresses, debates over the language of the First Amendment, and the acts of federal officials in the new republic, I show that there is little evidence to support the proposition that the founders desired to strictly separate church and state."

It is not enough for Dr. Hall to support his opinions with *ipse dixit*; it is not enough to say he has read and written volumes on the subject of the Establishment Clause to admit his testimony. He must show his methodology. His testimony does not present or grapple with opposing historical narratives. He does not present his conclusions as probabilistic, but as certainties.[3] Without the

---

[3] "Based on more than twenty-five years of studying religious liberty and church-state relations in the United States, it is my opinion that the historical understanding of the First Amendment permits a State to erect, or allow to be erected, a monument of the Ten Commandments on public property. Such a practice is "deeply embedded in the history and tradition of this country," and *there is no good reason* to believe that it violates the Establishment Clause as understood by America's founders." Exhibit 1, at 84.

"America's founders understood that church and state were two separate institutions, and many were coming to question some of the ways States had historically supported and encouraged religion. They opposed coercion in

presentation of some sort of methodology to his historical research, opposing counsel cannot critique the process by which he arrived at his opinions, and the fact finder is left to trust that his biases were left at the door. This holds particularly true of his theories that modern day Establishment Clause interpretations are rooted in anti-Catholic animus. Exhibit 1, at 72.

Expert historians test the court's gatekeeping role. Here, there is not even an attempt to justify the reliability of his opinions and conclusions with an underlying methodology, Dr. Hall has made the Court's decision simple.

Finally, while all historian experts' methodology should be scrutinized, Dr. Hall's public record as an advocate for Christian political advocacy should cause the court special concern. Consider his statements at the 2022 Pray Vote Stand Townhall during a

---

matters of faith, and many were rejecting formal religious establishments as well. But virtually none of them desired to build a wall of separation between church and state; *certainly* not a wall that would prohibit monuments of the Ten Commandments on public property." Exhibit 1, at 71.
"Consideration of a wide range of founders and founding era practices reveals little support for the erection of a wall of separation between church and state. And it *certainly* does not require a religion-free public square." Exhibit 1, at 12.

lecture on Christian Nationalism: "We are Christians, we are followers of Christ, we have an obligation, a God given obligation, a Biblical obligation to be involved in politics…"[4] His very public positions in advocacy of Christian influence pervasiveness in government requires the court to scrutinize his methodology to an even greater extent. Having presented no evidence of the credibility of his findings, the court should find them unreliable and inadmissible.

## Conclusion

Dr. Mark David Hall is well read and has written much on this subject. However, his legal exposition is inadmissible as expert opinion and his historical conclusions lack credibility without proof of sound methodology. Therefore the Court should find his testimony inadmissible.

---

[4] Mark David Hal, The Rise of Christian Nationalism, Pray Vote Stand Townhall 2022 https://youtu.be/Kbs8DxkOlvo?t=581 (last visited on March 6, 2023).

Respectfully submitted,



| **Matt Kezhaya** | matt@crown.law |
|---|---|
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 276-2216 |

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

## Certificate of service

**NOTICE IS GIVEN** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on March 6, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*

## Exhibit list

1. Challenged Report of Dr. Hall