## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DONNA CAVE**, *et al.*                                                                                       **PLAINTIFFS**,

**ANNE ORSI**, *et al.*                                                                         **CONSOLIDATED PLAINTIFFS**,

**THE SATANIC TEMPLE**, *et al.*                                                                         **INTERVENORS**,

v.                                    No. 4:18CV00342 KGB/BD

**JOHN THURSTON**, Arkansas Secretary of State,
in his official capacity,                                                                                              **DEFENDANT**.

**SECRETARY THURSTON'S RESPONSE TO THE SATANIC TEMPLE'S MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. MARK DAVID HALL**

Dr. Mark David Hall is the Garwood Visiting Fellow at Princeton University's James Madison Program, with an appointment in the Department of Politics. He also serves as the Herbert Hoover Distinguished Professor of Politics and Faculty Fellow in the William Penn Honors Program at George Fox University, among many other prestigious appointments. DE 260-3, Hall Rpt., at 3 ¶ 1. Dr. Hall is an expert in the history of religious liberty, church-state relations, and religion and politics in the United States. He has authored numerous works in church-state relations, *id.* at 3 ¶ 2; *see id.* at 94-97, given numerous invited lectures, *id.* at 97-103, given numerous papers and conference presentations, *id.* at 103-09, written book reviews, *id.* at 109-112, received honors and awards, *id.* at 112, and provided other service to his profession, *id.* at 112-114.

TST concedes Dr. Hall is well-qualified and his research is highly relevant, recognizing that "Dr. Mark David Hall is well read and has written much on th[e] subject" of his reports. DE 267, TST Mot., at 10. TST also does not contest any of the facts set forth in Dr. Hall's reports. Unable to challenge Dr. Hall's qualification or research, TST instead tries to tar Dr. Hall by

associating him with "Christian Nationalism"—omitting that he vocally opposes it—and by claiming that Dr. Hall presents "*nothing more* than legal argument" and "fails to present *any* methodology to formulate" his opinions. DE 267, TST Mot., at 2 (emphases added).

Those are extreme claims. If true, they undermine Dr. Hall's testimony. But they're false—and that's obvious from Dr. Hall's reports. Indeed, TST's perfidious claims raise the question whether it has actually read the report it disparages. This Court should deny TST's motion to exclude Dr. Hall's testimony.

**I. Dr. Hall's express methodology is reliable.**

Dr. Hall's reports concern matters in his professional wheelhouse: "[T]he Supreme Court's use of history in Religion Clause cases, the historical understanding of the Establishment Clause, the Nation's and State's history and tradition of including religious displays on public property, and the origin of the notion that church and state should be strictly separated." DE 260-3, Hall Rpt., at 4 ¶ 5. Far from "support[ing] his opinions with *ipse dixit*," DE 267, TST Mot., at 8, Dr. Hall's extensively-researched reports are supported by well over 400 individual footnotes (frequently with multiple citations) to primary and professional sources standardly used by experts in his field. *See* DE 260-3, Hall Rpt., at 4 ¶¶ 4-5 (basing opinions "on [his] own knowledge, research, experience, and publications, and the work of other academics and writers").

Given the subject matter, those sources naturally include "a number of court cases." *Id.* at 4 ¶ 5. As Dr. Hall explains, even though "Justices regularly disagree about how to interpret the Establishment Clause," there is a "widely shared consensus that its 'generating history' informs its meaning. Conservatives and liberals alike appeal to the founders' views to help them interpret the Establishment Clause, and both recognize the relevance of historical practices since that time." *Id.* at 13 ¶ 27. Mindful of his role as an expert witness, Dr. Hall is careful not to advocate legal

2

analysis.  As he recognizes, "I am not an attorney and do not presume to offer a legal opinion on any of the matters that I discuss."  *Id.* at 4-5 ¶ 5.

Dr. Hall describes his methodology and the materials on which his opinions are based at numerous points throughout his principal report.  He says, for example, "By exploring a wide range of State practices, actions of the Continental and Confederation Congresses, debates over the language of the First Amendment, and the acts of federal officials in the new republic, I show that there is little evidence to support the proposition that the founders desired to strictly separate church and state."  *Id.* at 5 ¶ 7.  Then, "[m]oving from the founding era, I demonstrate that America's national government, as well as state and municipal governments, have a long history of erecting, or allowing to be erected, religious monuments or monuments containing religious symbols on public property."  *Id.* at 5 ¶ 8. Again, he explains that "consideration of a wide range of founders and founding era practices reveals little support for the erection of a wall of separation between church and state."  *Id.* at 14 ¶ 28.  See also *id.* at 14-30 ¶¶ 29-63 (describing founding-era state practices); *id.* at 30-40 ¶¶ 64-90 (describing founding era constitutional debates about the religion clauses); *id.* at 41-67 ¶¶ 92-118 (reviewing historic practices and traditions of placing monuments that include religious imagery from various faiths). Compare, *e.g., United States v. Paracha*, No. 03 CR. 1197 (SHS), 2006 WL 12768, at *20 (S.D.N.Y. Jan. 3, 2006) ("gathering multiple sources of information, including original and secondary sources, cross-checking and juxtaposing new information against existing information and evaluating new information to determine whether his conclusions remain consonant with the most reliable sources" is reliable methodology).

Dr. Hall's methodology is express and reliable, and the Court should deny TST's motion.

**II. The Satanic Temple's criticisms are bogus.**

Despite all this, TST asserts that Dr. Hall's testimony is unreliable. TST oddly complains about his report's first 11 pages, most of which is Dr. Hall's "Qualifications and Research Relied Upon" and an "Overview." TST asserts that the remaining 5 pages contain improper "analysis of Supreme Court opinions." DE 267, TST Mot., at 4. Based on that description, one might think it conducts a legal analysis of the Ten Commandments monument's placement on the Capitol grounds or otherwise opines on its legality. In reality, those pages are an entirely appropriate account of "Why History Matters," with a brief discussion of history's role in decisions about the Establishment Clause. If Dr. Hall's report had lacked this section showing history's relevance, TST would have used that omission to support its assertion that "the analytical gap between the data and the proffered opinion is too great." DE 267, TST Mot., at 6 (quotation omitted). Heads they win, tails Dr. Hall loses.

Dr. Hall's Report contrasts with, for example, Dr. Green's report, which directly assumes the Court's role by opining on the Ten Commandments monument's legality. *See, e.g.,* Green Rpt. ¶ 38 ("[T]he Ten Commandments Monument Display Act would appear to run counter to the Court's directive."); *id.* ¶ 45 ("[T]he placement of a Ten Commandments monument on the Arkansas State Capitol would risk creating the impression the state is affiliating itself with the religious beliefs of a particular faith tradition."). But Dr. Hall provides historical information and context that—although bearing on the legal issues, as it must to be admissible—does not attempt a legal analysis of the Ten Commandments monument's placement on the Capitol grounds.

TST's motion mostly ignores the vast majority of Dr. Hall's 85-page principal report. *See* DE 260-3, Hall Rpt. And it completely ignores his 26-page reply report. *See* DE 260-49, Hall Reply Rpt.. True, TST criticizes two isolated sentences beyond the first 11 pages. Of those, one

is Dr. Hall's purely hypothetical statement about a fictional 51st state. DE 260-3, Hall Rpt., at 69 ¶ 121; *see U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("The mere use of hypotheticals does not usurp the jury's function of applying the law to the facts of the case."). The other is a summary of an influential peer-reviewed article independently authored by Judge Michael McConnell that Dr. Hall explains, "comports well" with his historical discussion of the founders' views of church-state relations. DE 260-3, Hall Rpt., at 73 ¶ 128. Neither sentence offers an opinion on the Ten Commandments monument's legality. *Id.*

Baffling is TST's pronouncement that Dr. Hall "does not present or grapple with opposing historical narratives," DE 267, TST Mot., at 8. The most likely explanation for this claim is that TST simply has not read Section VI of Dr. Hall's principal report. That section discusses—at length—the rise of "strict separationism" and how it "differs from the founding generation's views of church-state relations that gave rise to the First Amendment." *See* DE 260-3, Hall Rpt., at 69-86 ¶¶ 122-158. Similarly bewildering is TST's claim that Dr. Hall improperly presents historical conclusions "as certainties." DE 267, TST Mot., at 8. Again, simply reading Dr. Hall's reports is enough to show that his opinions are not stated with inappropriate degrees of confidence. To give only one example, Dr. Hall repeatedly recognizes that, e.g., "there is little evidence" (as opposed to *no* evidence) for views differing from his own. *See, e.g.*, DE 260-3 at 5 ¶ 7; *id.* at 14 ¶ 28; *id.* at 15 ¶ 30; *id.* at 30 ¶ 64; *id.* at 41 ¶ 91; *id.* at 61 ¶ 107. Further, some conclusions about the past can be stated with more confidence than others, and those includes matters on which Dr. Hall presents "a great deal of evidence." *Id.* at 69 ¶ 122.

TST's motion provides no basis for excluding Dr. Hall's testimony.

**CONCLUSION**

Secretary Thurston respectfully requests the court deny TST's motion to exclude Dr. Hall's testimony.

Respectfully submitted,

TIM GRIFFIN
  Attorney General of Arkansas
NICHOLAS J. BRONNI (2016097)
  Solicitor General
DYLAN L. JACOBS (2016167)
  Deputy Solicitor General
MICHAEL A. CANTRELL (2012287)
  Assistant Solicitor General
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
Ph:     (501) 682-2007
Michael.Cantrell@ArkansasAG.gov

Hiram S. Sasser, III
Michael D. Berry
Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel: (972) 941-4444
Fax: (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*
*lepatterson@firstliberty.org*

*Attorneys for Secretary of State John Thurston*