# 4:18-cv-342

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

Donna Cave; Anne Orsi, The Satanic Temple, *et al.*
*Plaintiffs*,

*v.*

John Thurston, in his official capacity
*Thurston*.

## TST's reply to Secretary Thurston's response to motion to preclude expert testimony of Dr. Mark David Hall



**Matt Kezhaya**
Ark. # 2014161
Minn. # 0402193

matt@crown.law
direct: (479) 431-6112
general: (612) 276-2216

121 Washington Ave. N., 4th Floor, Minneapolis, MN 55402

# Introduction

TST maintains its position that the expert testimony of Dr. Mark David Hall should be excluded from the proceedings. The role of constitutional historian experts in a court of law should be subject to suspicion. The Court, as diligent in its role as gatekeeper, is to ensure the historian has demonstrated rigorous methodology and that legal precedent and the Court's own historical analysis are not supplanted by biased historical revisionism. The Court must rigorously examine the expert's methodologies to ensure their personal bias has not revised history to suit their purpose. Even if the Court is satisfied to that end, it must then examine the expert's opinions to ensure they do not invade the province of the Court.

As Secretary Thurston notes, TST is not shy about commending Dr. Hall on his literary accomplishments. ECF 277, at 1. However, being well-read and widely-published does not punch one's ticket to the expert witness stand. Dr. Hall must still show that his historical methodologies are reliable. Given his very public bias on this

matter, Dr. Hall's failure to elucidate upon how he used the tools of the historian trade to navigate clear of his own bias disqualify his testimony as unreliable. Even if the court finds Thurston's proffered report snippets sufficient methodology, Dr. Hall would find himself invading the province of the court.[1]

# Argument

### 1: Gatekeeping requires suspicion of legal historians.

Under Rule 702, a trial judge acts as a "gatekeeper," screening expert witness evidence for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). When analyzing an expert's testimony, the court must focus on the principles and methodology employed by the expert, and not on the conclusions generated by the expert. *Id.* at 594. When determining admissibility under Rule 702, the Court considers a three-part test:

> First, evidence based on scientific,

---

[1] This brief does not address Thurston's assertions that Dr. Hall's reports are left unread by TST's counsel.

> technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Dr. Hall's reliability is at issue, not his qualifications or the relevance of his report. The Court examines the following four non-exclusive factors when determining the reliability of an expert's opinion:

> (1) whether it can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) [the method's] 'general acceptance.'…In addition, the Court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. While weighing these factors, the Court must continue to function as a gatekeeper who separates expert opinion evidence based on

> good grounds from subjective speculation
> that masquerades as scientific knowledge.

*Meade v. Ethicon, Inc., No.* 4:20-CV-00694-KGB, 2020 WL 6395814, at *3 (E.D. Ark. Nov. 2, 2020) (citations omitted).

Scholars have opined on the difficulty of applying *Daubert* standards to historians. See Maxine D. Goodman, Slipping Through the Gate: Trusting Daubert and Trial Procedures to Reveal the "Pseudo-Historian" Expert Witness and to Enable the Reliable Historian Expert Witness-Troubling Lessons from Holocaust-Related Trials, 60 Baylor L. Rev. 824, 838 (2008) ("[T]he *Daubert* test…is ill-suited for helping courts differentiate the purveyor of junk history from the reliable historian."). A rigid application could result in *any* alleged historian proffering expert testimony, so long as they have published works and cite a sufficient amount of other literature in their report, no matter how removed from actual history their conclusions may be.

Courts have repeatedly grappled with the conundrum of the historical expert. "Use of historical experts in litigation requires

scholars who are trained to seek answers through objective analysis into an arena where the answers come from comparing arguments made by opposing sides." *Saginaw Chippewa Indian Tribe of Michigan v. Granholm*, 690 F. Supp. 2d 622, 637 (E.D. Mich. 2010); *see also* Matthew J. Festa, "Applying a Usable Past: The Use of History in Law," 38 Seton Hall L.Rev. 479 (2008); Jonathan D. Martin, Note, "Historians at the Gate: Accommodating Expert Historical Testimony in Federal Courts," 78 N.Y.U.L.Rev. 1518 (2003). "One measure of the value of an expert's opinion is whether an objective and disinterested methodology was employed…[Objectivity] can [] be measured by exploration of potential biases the expert may hold." *Saginaw Chippewa Indian Tribe of Michigan,* at 637. "Proper historical methodology is further characterized by thorough documentation of sources and a critical awareness of the historian's own biases." *Burton v. Am. Cyanamid*, No. 07-CV-0303, 2018 WL 3954858, at *5 (E.D. Wis. Aug. 16, 2018).

*1.1: Dr. Hall's bias is renown and has laid the foundation for his credentials.*

Dr. Hall has not accounted for his substantial and overt bias. His employment with George Fox University is predicated upon this bias. George Fox boasts a 100% Christian faculty and staff on its website.[2] George Fox's vision is "to be the Christian university of choice known for empowering students to achieve exceptional life outcomes." Id. TST raised—and Secretary Thurston took exception to—Dr. Hall's statements at the 2022 Pray Vote Stand Townhall during a lecture on Christian Nationalism: "We are Christians, we are followers of Christ, we have an obligation, a God given obligation, a Biblical obligation to be involved in politics…"[3]

To be clear, Dr. Hall's personal faith and worldview alone do not exclude his testimony. However, given the extensive comingling of his credentials with Christian organizations committed to proliferating his worldview, he should make a very serious effort to

---

[2] About George Fox University, https://www.georgefox.edu/about/index.html (last visited April 10, 2023).

[3] Mark David Hall, The Rise of Christian Nationalism, Pray Vote Stand Townhall 2022 https://youtu.be/Kbs8DxkOlvo?t=581 (last visited on April 10, 2023).

assure this Court that his personal bias has not corrupted his methodology. Confirmation bias is powerful. Dr. Hall has not tried to show the Court that his reading and research are not influenced by his hope of pervasive Christian influence in politics.

In the absence of any effort to cure his known bias, the Court cannot find Dr. Hall's methodology reliable. The Court must continue to function as a gatekeeper who separates expert opinion evidence based on good grounds, from subjective speculation that masquerades as historical truth, and should exclude his testimony.

*1.2: Secretary Thurston failed to answer TST's challenge to Dr. Hall's historical methodology.*

Challenged to find evidence that Dr. Hall's evidence is reliable and consistent with acceptable historical methodology, Secretary Thurston has proffered very little to prove Dr. Hall grappled with opposing views and avoided dealing in certainties. ECF 277, at 3, 5.

Thurston offers Dr. Hall's comments on the rise of strict separatists as an example of his grappling with counter narratives.

Id, at 5. Dr. Hall attributes the strict separatist view to anti-Catholic sentiment. Hall Report, at 72. This peculiar view is credited to a single individual, Philip Hamburger, and is not presented with any counter arguments. Id.

As for certainties, Thurston asks the Court to accept the idea that because Dr. Hall couches conclusions in how much evidence supports them—naturally, finding his conclusions supported by the weight of evidence—he is not speaking in certainties. ECF 277, at 5. TST finds that there is little evidence to support this assertion. It is not enough for us to merely say so, though. Take for example Dr. Hall's assertion that in his report, he has "provided a great deal of evidence concerning the historical understanding of the Establishment Clause,"… none of which "suggests that governments cannot erect monuments of the Ten Commandments on public property." (Hall Report, at ¶122). Dr. Hall uses Thurston's ostensibly exonerating phrase while asserting a certainty. This is not evidence that Dr. Hall avoids speaking with certainty. Thurston offers no support otherwise.

Compare Dr. Hall's report to Dr. Green's affidavit:

> I was careful not to select only those sources that supported my opinion, but I dealt with all sources on the basis of their reliability and validity. While perfect certainty is often not achievable, there are degrees of plausibility even in the absence of certainty. I sought to rely on sources that were highly plausible. In the context of American history at the relevant time, there is an abundance of plausible and reliable documentation.

Green Aff. ¶13-14. Dr. Green humbly presents his opinions as a historian, acknowledging and grappling with opposing views, stating that certainty is not always achievable. Dr. Hall does no such thing.

Dr. Hall has not provided a clear explanation of his approach, only stating that he has extensively read and written on the subject. Furthermore, he has not offered any insights into his methodology to assure the Court that his considerable bias has been set aside. As the gatekeeper, the Court should not allow his historical testimony solely on the basis that he identifies as a historian.

**2: Dr. Hall is not a lawyer or judge and cannot be treated as one.**

The constitutional historian as expert witness presents a dilemma. Even if their testimony is deemed reliable, it almost inevitably involves an interpretation of the law, or a suggestion of how the law should be shaped, based on their historical analysis. This situation effectively shifts the role of a credible constitutional historian from that of a witness to someone wielding the gavel. It is no wonder case law is sparse on how to treat expert witness historians of the law. The interpretation of the history of law falls squarely within the practice of law, and such a historian should tread lightly when presenting their conclusions. Dr. Hall encroaches upon the Court's jurisdiction, not only offering his interpretation of the law but also advocating for what he believes it should be, regardless of the context.

*2.1: Disclaimers are unavailing; Dr. Hall cannot define an Establishment Clause violation to the Court.*

Secretary Thurston assures the Court that because Dr. Hall recognizes that he "is not an attorney and does not presume to offer

a legal opinion on any of the matters [he] discuss[es]," that he does not invade the province of the Court. ECF 277, at 3.

"[E]xpert testimony regarding legal matters is inadmissible." *Meade*, at *6 (citing *S. Pine Helicopters, Inc. v. Phoenix Aviation Mangers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990)). Expert witness may speak to the ultimate issue but "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Jones v. iPawn Rodney Parham, LLC*, No. 4:16-CV-00644-KGB, 2019 WL 2897689, at *5 (E.D. Ark. Mar. 4, 2019) (quoting *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006)). "The district court must limit expert testimony so as to not allow experts to opine on 'what the law required' or 'testify as to the governing law.'" *Casper v. SMG*, 389 F.Supp.2d 618, 621 (D.N.J.2005) (quoting *U.S. v. Leo*, 941 F.2d 181, 196–97 (3d Cir.1991)).

Courts have previously caught historians smuggling legal conclusions into their historical testimony. See *Langbord v. U.S. Dep't of the Treasury*, No. CIV.A. 06CV05315, 2009 WL 1312576, at *8 (E.D. Pa. May 7, 2009), aff'd in part sub nom. *Langbord v. United States Dep't of Treasury*, 832 F.3d 170 (3d Cir. 2016) (allowing historian to describe the context surrounding presidential orders but not to offer legal conclusions derived from the documents); *Consolidated Rail Corp. v. Grand Trunk Western R. Co.*, 2011 WL 6004275 (E.D. Mich. 2011) (granting a motion to exclude the testimony of a railroad historian insofar as he sought to offer an opinion about the rights bestowed by an 1897 agreement); *U.S. v. Newmont USA Ltd.*, 2007 WL 4856859 (E.D. Wash. 2007) (forbidding expert witness historian from testifying as to whether the defendant was qualified as an operator under the law); *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257 (D. Kan. 2003) (refusing to permit historian college professor of history to testify whether comment was consider by African-Americans as racist because such testimony would be an impermissible legal conclusion).

Dr. Hall's entire historical analysis aims to support his legal conclusion that the State's erecting a Ten Commandments monument on its public grounds is not a violation of the Establishment Clause.

> [I]t is my opinion that the historical understanding of the First Amendment permits a State to erect, or allow to be erected, a monument of the Ten Commandments on public property. Such a practice is "deeply embedded in the history and tradition of this country," and there is no good reason to believe that it violates the Establishment Clause as understood by America's founders.

Dr. Hall Report, at ¶159. This is pure legal conclusion and a large departure from the conclusion Thurston identifies as being offered by Dr. Green. ECF 263, at 8. ("[The] placement of a Ten Commandments monument on the Arkansas State Capitol grounds would risk creating the impression the State is affiliating itself with the religious beliefs of a particular faith tradition."). From his conclusion Dr. Hall works backwards towards his historical narrative. His biased historical analysis is merely legal analysis

aimed at supporting his ultimate legal conclusion. This invades the province of the Court and must be rejected outright.

## Conclusion

Dr. Hall's testimony is unreliable because he does not provide evidence of sound historical methodology, particularly in light of his well-known bias. Further, his historical analysis is only offered to support his inadmissible legal conclusion. Therefore, the Court must find his testimony unreliable, improper, and inadmissible.

[*Remainder intentionally left blank. Signature and certificate to follow.*]

Respectfully submitted,



| **Matt Kezhaya** | matt@crown.law |
|---|---|
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 276-2216 |

121 Washington Ave. N., 4th Floor, Minneapolis, MN 55402

## Certificate of service

NOTICE IS GIVEN that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on April 10, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*