IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| DONNA CAVE, JUDITH LANSKY, <br> PAT PIAZZA, and SUSAN RUSSELL | PLAINTIFFS |
| | |
| ANNE ORSI, AMERICAN HUMANIST <br> ASSOCIATION, FREEDOM FROM <br> RELIGION FOUNDATION, INC., <br> ARKANSAS SOCIETY OF FREETHINKERS, <br> JOAN DIETZ, GALE STEWART, RABBI <br> EUGENE LEVY, REV. VICTOR H. NIXON, <br> TERESA GRIDER, and WALTER RIDDICK | CONSOLIDATED PLAINTIFFS |
| | |
| THE SATANIC TEMPLE, DOUG MISICKO <br> Aka "LUCIEN GREAVES," and, ERIKA <br> ROBBINS | INTERVENORS |
| | |
| v. | Case No. 4:18-cv-00342-KGB |
| | |
| JOHN THURSTON, Arkansas Secretary of State <br> in his Official Capacity | DEFENDANT |

**REPLY BRIEF IN SUPPORT OF CONSOLIDATED PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

# ARGUMENT

I. **The State does not contest the facts or law on which the Consolidated Plaintiffs' standing rests.**

In response to the Consolidated Plaintiffs' Motion for Summary Judgment, the State fails to contest the facts briefed by the Consolidated Plaintiffs that are relevant to their standing and it fails to address the relevant law cited in the Consolidated Plaintiffs' brief. Instead, the State makes two general claims regarding standing, neither of which apply to the Consolidated Plaintiffs. First, the State claims that the Consolidated Plaintiffs pre-litigation contact with the monument "was not unwelcome." *See* State's Opp. Br. (DE 285) at 2, 3. But the State fails to address any of the specific facts cited in the Consolidated Plaintiffs' brief that demonstrate that the Consolidated Plaintiffs had numerous contacts with the monument and that they oppose the monument, which, taken together, demonstrates that the vast majority of their multiple contacts have been unwelcome. Second, the State incorrectly claims that the Consolidated Plaintiffs base their standing on *Lemon v. Kurtzman*, which they do not.

First, as briefed, the Consolidated Plaintiffs all oppose the Ten Commandments monument. *See* Con. Pls.' Br. in Supp. of Summ. J. (DE 256) at 3–4 (citing Ex. H, Orsi Depo., at 11, 30–31, 63–65, 75–76; Ex. I, Levy Depo., at 43, 45–46; Ex. J, Stewart Depo., at 16–17, 23–24, 29; and Ex. L, Gryder Depo., at 13–14, 25–27). Not only did the State fail to contest the fact that any of the four Consolidated Plaintiffs oppose the monument in its response brief, the State admits that it is *undisputed* that Anne Orsi "objects to the Ten Commandments monument" and that each of the other Consolidated Plaintiffs "opposes the Ten Commandments monument." *See* State's Resp. to Con. Pls.' SUFs (DE 287) at ¶¶ 1, 2–4.

The State does dispute that each of the Consolidated Plaintiffs' visits to the Capitol and surrounding buildings are "sufficient for standing," *see id.*, but that is a question of law. The

underlying facts, which the State *does not dispute*, demonstrate that each of the Consolidated Plaintiffs has regular contact with the State Capitol Grounds such that it is reasonably certain that they will come into direct contact with the Ten Commandments monument in the future. *See id.* at ¶¶ 1–4 (indicating a dispute only as to the legal conclusion, but providing no citation to the record that contradicts the asserted facts regarding each plaintiffs' contacts with the Capitol Grounds). Binding Eighth Circuit precedent recognizes that such regular contacts with an alleged establishment of religion are sufficient to confer standing. *See* Con. Pls.' Opp. Br. (DE 282) at 1–2 (citing *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012); *ACLU Neb. Found. v. City of Plattsmouth*, 358 F.3d 1020, 1029 (8th Cir. 2004) *reviewed en banc*, 419 F.3d 772, 775 n.4 (8th Cir. 2005) (affirming standing and "adopting the reasoning of the panel opinion on this point")).

The undisputed record establishes that plaintiff Anne Orsi " visits the Arkansas State Capitol Grounds for many purposes," that "[s]he attends rallies," "goes to the History Commission in the Big Mac building," "goes to the Solstice display," "goes to the Justice Building," "has testified at legislative committee meetings," and "has walked past the monument and driven past the monument." State's Resp. to Con. Pls.' SUFs (DE 287) at ¶ 1. Orsi has walked past the monument "a couple of times if not more," Con. Pls.' Ex. H., Orsi Depo., at 57, and has driven by the monument an additional "three or four times." *Id.* The undisputed record further establishes that Rabbi Eugene Levy "visits the State Capitol from time to time," that "he has been to the Arkansas State Capitol Grounds 25 or 30 times," and has been there for reasons unrelated to viewing the Ten Commandments monument, including "for political meetings, rallies, and meetings of the State Board of Education." State's Resp. to Con. Pls.' SUFs (DE 287) at ¶ 2. It is further undisputed that Gale Stewart "has made many visits to the Arkansas State

Capitol grounds" for reasons unrelated to viewing the Ten Commandments monument, including "to picnic, to visit the Supreme Court library, to attend court proceedings, to go to public meetings, and to lobby for passage or failure of proposed legislation," as well as visiting the Governor's office, various state agencies, to attend "rallies and demonstrations," and "to see the tulip trees." *Id.* at ¶ 3. Finally, it is undisputed that Teresa Gryder "has been to the State Capitol Grounds a lot," that she "has visited the Firefighters memorial," and that "[s]he and her family will drive through the grounds if they are in the area." *Id.* at ¶ 4.[1]

The State's bald assertion that "Plaintiffs' only pre-litigation contact with the monument wasn't unwelcome," State's Opp. Br. (DE 285) at 3, is demonstrably false based on the undisputed record. In further support of their standing, the Consolidated Plaintiffs adopt the arguments asserted in their brief opposing the State's motion for summary judgment. *See* Con. Pls.' Opp. Br. (DE 282) at 1–11.

## II. On the merits, the State fails to grapple with the arguments advanced by the Consolidated Plaintiffs.

The bulk of the argument on the merits advanced in the State's brief opposing summary judgment (DE 285) is simply inapplicable to the Consolidated Plaintiffs. The State claims that the Plaintiffs "[i]gnor[e] *Kennedy*, *American Legion*, and *Town of Greece*," State's Opp. Br. at 3, even though the Consolidated Plaintiffs quote the legal standard announced in *Kennedy* in the introduction to their brief, *see* Con. Pls.' Br. in Supp. of Mot. for Summ. J. (DE 256) at 1; discuss the legal standard for evaluating historical practices as announced in *American Legion*, *see id.* at 17; distinguish *American Legion* from the State's actions at length, *see id.* at 21, 25–26; and cite

---

[1] While not essential to Gryder's standing, the State does dispute that Gryder is a member of the Arkansas Society of Freethinkers. *See id.* at ¶ 4. But Gryder's actual testimony was that she is "on the rolls" but has not "paid my due *this year*." Gryder Depo. (DE 260-61) at 24 (emphasis added). Regardless, the Society's associational standing is not reliant on Gryder's membership alone, since Anne Orsi was the president of the Arkansas Society of Freethinkers at the time this complaint was filed, *see* Orsi Depo. (DE 260-58) at 17–18, and she remains a member to this day.

*Town of Greece* extensively. *See id.* at 1, 17, 26. The Consolidated Plaintiffs evaluate the State's conduct under the history and tradition test—not under any of the strawman tests listed in the State's opposition brief. *Compare id.* Sec. I at 9–17 ("Historically, the Establishment Clause has unconditionally prohibited legislative action that elevates one religion or sectarian belief to favored status.") and *id.* Sec. II at 17–27 ("There's no established history of laws ratifying the Ten Commandments.") *with* State's Opp. Br. (DE 285) Sec. II. A. at 3–7 ("Plaintiffs' heavy reliance on abandoned legal standards fails.").

Moreover, when the State eventually does analyze its practice under the history and tradition test, it still declines to address directly the arguments advanced by the Consolidated Plaintiffs. In their brief supporting their motion for summary judgment, the Consolidated Plaintiffs took great pains to distinguish between mere depictions of the Ten Commandments and the legislative act at issue in this case, which called for a monument "*commemorating* the Ten Commandments." *See* Con. Pls.' Br. in Supp. of Mot. for Summ. J. (DE 256) at 14–17. Mere depictions of the Ten Commandments—and depictions of Moses, with or without the tablets, which the State sometimes conflates with depictions of the Ten Commandments, *see* Con. Pls.' Opp. Br. (DE 282) at 17–19— are sometimes included in monuments and displays when they are meant to "serve as a symbolic stand-in for the concept of 'law' generally." Con. Pls.' Br. in Supp. of Mot. for Summ. J. (DE 256) at 24. Commemorating a religious text itself is another matter entirely, but the State does not acknowledge this distinction. In its opposition brief, when it briefly addresses the history and tradition test, the State continually conflates the two. For instance, when the State alludes to a "125-year-plus practice of Ten Commandments displays," State's Opp. Br. (DE 285) at 9, it is referring exclusively to the type of depiction where the Ten Commandments (or just Moses) are included in a larger tribute to the idea of the "law" or similar

concept. The State fails to provide any historic examples of legislative acts that commemorate the Ten Commandments themselves, which is what the Arkansas General Assembly sought to do in this case. The State passed the *Ten Commandments* Monument Display Act, after all. Not the "History of the American Legal System" Monument Display Act.

Similarly, the State's comparison to the history of monuments donated by the Eagles in the mid-1950s is not helpful. When the Eagles donated their monuments, it was the Eagles who chose the language and symbolism. In this case the General Assembly chose the language—a State-sanctioned version of the Ten Commandments—and the American History and Heritage Foundation chose the symbols. The American Heritage and History Foundation was controlled by the same Senator Jason Rapert who was the primary sponsor of Act 1231, but in his individual capacity. And unlike the Eagles, who had a long history of charitable activities, the American History and Heritage Foundation was formed for the purpose of financing this particular project, and had no history of charitable activities. Whenever the Eagles placed a monument, it was permitted as an acknowledgement of the contributions of the Eagles to society. The American History and Heritage Foundation made no similar contributions.

Because the State does not identify a single historical example akin to the legislative action at issue in this case, it attempts to move the goalposts: instead of analyzing the "particular issue at hand," *Am. Legion*, 139 S.Ct. at 2087 (Alito, J., plurality op.), or the "specific practice," *Town of Greece*, 572 U.S. at 577, which is the test announced by the Supreme Court, the State claims that what matters are historic examples of mere "public acknowledgements of religion." State's Opp. Br. (DE 285) at 9. But acknowledgement is not the same thing as sponsorship. The State sought to *ratify* the Ten Commandments, through legislation calling for a standalone

monument with specific wording—the State's own preferred version of the Ten Commandments—on it. The State's action goes far beyond mere acknowledgement.

Finally, the State attempts to bolster the sham justification for its legislative action by overstating the holding in *Rosenstiel v. Rodriguez*, 101 F.3d 1544 (8th Cir. 1996), and by asserting that the claim that the Ten Commandments influenced the founding of U.S. law is "uncontroversial," when in fact it is hotly contested. The State points to *Rosenstiel* to suggest that the Plaintiffs improperly emphasize the statements of Senator Jason Rapert, the lead sponsor of Act 1231 of 2015, as evidence of the intended effect of the bill. In *Rosenstiel*, the Eighth Circuit cautioned that "an isolated statement by an individual legislator is not a sufficient basis from which to infer the intent of that entire legislative body." 101 F.3d at 1552. But the case does not stand for the proposition that a legislator's statements are *irrelevant* when determining legislative intent. In *Rosenstiel*, the legislator's statement was made during a committee hearing, and while he was "a chief proponent" of the bill in question, he was not the principal sponsor. *Id.* at 1551. Moreover, in that case, the litigants "made no showing, other than a bare assertion, that the [legislator's] statements were intended to apply to the provisions they challenge," *id.* at 1552, which further undermined the usefulness of the proffered statements for revealing legislative intent. Conversely, the Plaintiffs in this case offer multiple consistent statements, made by the primary sponsor of the bill, that reveal his intent when he proposed the legislation. The statements are not only far more revealing than those rejected in *Rosenstiel*, but are more revealing than the comments of an individual member of an adjudicatory body that the Supreme Court found dispositive in *Masterpiece Cakeshop*, *Lukimi*, and similar cases. *See Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1729–30 (2018); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) ("Relevant evidence

includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body.").

As for the State's argument that it is uncontroversial that the Ten Commandments inspired U.S. law, the State supports its claim by misquoting and misconstruing the argument contained in Dr. Green's article, "The Fount of Everything Just and Right? The Ten Commandments as a Source of American Law," which concludes that the Commandments do *not* serve as a unique or direct source for American law. *Compare* State's Opp. Br. (DE 285) at 10–11 *with* 14 J. Law & Religion 525 (1999-2000). The State quotes exclusively from the article's prefatory section, which contains statements that the remainder of the article proceeds to qualify. The State incorrectly claims that Dr. Green "doesn't dispute" that the Ten Commandments have had a "significant impact" on legal codes of the Western World, but that is precisely the point of his article. And the State omits, through the use of ellipses, qualifying phrases that make clear that Dr. Green concluded that any influence the Ten Commandments may have had on Western legal thought was not uniquely attributable to the Ten Commandments. *See, e.g.*, State's Opp. Br. (DE 285) at 11 (omitting the italicized portion of Dr. Green's quote: "Few people, if any, would dispute that the Ten Commandments *and its parallels from other ancient cultures* inform our notions of right and wrong and, as such, have influenced the development of Western law of which the American legal system is part."); *id.* (combining quotations from two different sentences while omitting qualifiers: "*relatively* noncontroversial" and "*indirectly* inspirational in the formation of legal norms").

## CONCLUSION

WHEREFORE, The Consolidated Plaintiffs' Motion for Summary Judgment should be granted.

Dated: May 8, 2023  Respectfully submitted,

/s/ Samuel T. Grover

Samuel T. Grover
WI Bar No. 1096047
Patrick C. Elliott
WI Bar No. 1074300
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701
(608) 230-8443
sgrover@ffrf.org
pelliott@ffrf.org

Katherine McKerall
American Humanist Association
1777 T Street N.W.
Washington, D.C. 20009
Telephone: (202) 238-9088
Facsimile: (202) 238-9003
kmckerall@americanhumanist.org


Baker Schulze and Murphy
2311 Biscayne Drive
Suite 300
Little Rock, AR 72227
Telephone: (501) 537-1000
Facsimile: (501) 537-1001
www.bsm.law

J.G. "Gerry" Schulze
Attorney at Law
Ark. Bar No. 83156
gschulze@bsm.law