# 4:18-cv-342

---

In the United States District Court
For the Eastern District of Arkansas
Central Division

---

Donna Cave; Anne Orsi, The Satanic Temple, *et al.*
*Plaintiffs*,

*v.*

John Thurston, in his official capacity
*Defendant*.

---

## Reply in support of TST's motion for summary judgment

---



---

**Matt Kezhaya**                                    **matt@crown.law**
Ark. # 2014161                          direct: (479) 431-6112
Minn. # 0402193                      general: (612) 276-2216

121 Washington Ave. N., 4th Floor, Minneapolis, MN 55402

COMES NOW TST, by and through counsel of record, with a reply to Thurston's response (ECF 285) to TST's brief in support of motion for summary judgment (ECF 271).

## 1: Thurston violated the Equal Protection Clause.

The opening brief asserts that there is no genuine issue of material fact as to whether Thurston violated the Equal Protection Clause. The proper relief is to order what Thurston denied: equal benefit to Satanism as what he provided for Christianity (i.e., to emplace the Baphomet monument on Arkansas Capital Grounds for 1839 days, as of this reply).

Rather than address the argument presented or the relief requested, Thurston attacks a "government speech" strawman. ECF 285 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)). TST, not Thurston, is the master of its complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). And, as this Court has already recognized, "an equal protection claim based on an opportunity injury was not at issue or evaluated in *Summum*." ECF

38, at 8-9, n. 4. Moreover, *Summum* recognizes that government speech must comport with the Establishment Clause. *Summum*, 555 U.S. at 468. Nothing in Thurston's response undermines TST's argument that the Equal Protection Clause entitles TST to injunctive relief for the emplacement of the Baphomet monument.

### 1.1: TST is a "suspect class."

The opening brief posits that TST is a suspect class, both as a historically oppressed religious minority and as a politically powerless group. Thurston does not address this argument, the words "suspect class" do not even appear once in his response.

### 1.11: TST is a religion.

The opening brief urges a finding that strict scrutiny applies because the challenged acts targeted TST, which is a religion and is therefore a "suspect class." *Plyler v. Doe*, 457 U.S. 202, 216-218 (1982).

Thurston's response offers nothing to contest TST's religiosity. The cumulative record before the Court shows that TST is a religion because it provides:

- a discrete and overarching set of organizational ideals which speak to the fundamental truths, through which the congregants contextualize their lives. ECF 269-1, at 233 ¶ 2; see also Defendant's Exhibit 32 at 23 (Greaves depo.), at 133:13-134:5 and Defendant's Exhibit 34 at 5-6 (Hargett depo.), 17:2-7; *compare Malnak v. Yogi*, 592 F.2d 197, at 208 (Adams, J., concurring).[1]

---

[1] Judge Adams's concurrence was later adopted by the Third Circuit in *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981). We cite to Adams's concurrence because it has more extensive discussion as to why these factors pertain to religiosity.

- a formal organizational structure, complete with congregations, ministry, and holidays. ECF 269-1, at 234 ¶¶ 3-5; *compare Malnak*, at 209.

- the presence of ritual activity, including ritual blasphemy, unbaptisms, black masses, destruction rituals, blood rituals, abortion rituals, marriages, and a plethora of others. Id., at ¶ 3; see also id., 240 ¶ 3; *compare Malnak*, at 209-210 and

- the engagement of congregational fellowship, including weekly services. Id., at 234 ¶¶ 5-6; 240 ¶ 4; Defendant's Exhibit 33, at 21 (Robbins depo.), 77:11-16; *compare Malnak*, at 209-210.

- religious iconography, importantly to include the Baphomet monument (id., at 235 ¶ 8); compare *Satanic Temple v. City of Scottsdale*, No. CV18-00621-PHX-DGC, 2020 WL 587882 at *6 (D. Ariz. Feb. 6,

2020), *aff'd sub nom. Satanic Temple, Inc. v. City of Scottsdale*, 856 F. App'x 724 (9th Cir. 2021).

- the metaphorical narrative construct of Satan as a promethean icon for Enlightenment ideals (rationalism, pluralism, democracy). See Defendant's Exhibit 32, at 24 (Greaves depo.) 46:6-23; *compare Malnak*, at 209-210.

- TST is a recognized "church" by the IRS (ECF 269-1, at 84) and its religious *bona fides* were established in *Scottsdale*, 2020 WL 587882, at *6–7.

Each of the foregoing preclude Thurston's unsupported argument that TST is nothing more than a "parody" of religion. ECF 258, at 27. Summary judgment is proper because Thurston fails to address any of the foregoing with competent evidence (as opposed to internet hearsay) or any discussion of legal authorities.

No matter how much the State of Arkansas "disagrees" with TST's viewpoint (ECF 258, at 24), TST is entitled to fully equal protection of the law. *Torcaso v. Watkins*, 367 U.S. 488 (1961); U.S. Const. amend. XIV § 1. Thurston's statement only further supports summary judgment that TST is a suspect class. *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (Government officials may *not* prescribe orthodoxy in matters of religion).

*1.12: TST is a historically persecuted religion.*

The opening brief also asserts that TST is a minority religion which has historically been "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Plyler*, 457 U.S. at 216 n. 4.

Despite Thurston's extensive inquiry into American "heritage and history," he pays no mind to the ugly parts; that the colonial experience included "zealous sectarians entrusted with

government officials" who were wont to "torture, maim, and kill" those they deemed "atheists, heretics, and agnostics." *Zorach v. Clauson*, 343 U.S. 306, 319 (1952) (Black, J., dissenting) (cleaned up). Downplaying this history of persecution plays well to voters, so the Founders placed this issue outside their reach and into the hands of judges. *Barnette*, 319 U.S. at 638. Thurston offers neither evidence nor argument to contest the point that TST (with its 25-30 regularly meeting members in the Little Rock area)[2] is among those relegated to political powerlessness such that it requires extraordinary judicial protection from a tyranny by the majority. State Sen. Rapert found it important to inject in his testimony that his repetitious "cold day in Hell" commentary is quite popular among the "older women" demographic. ECF 269-1, at 127 (Rapert depo.) 156:8-13.

Thurston's response is that TST should engage in better political lobbying efforts for equal treatment. ECF 285, at 15-16. This ignores

---

[2] ECF 69-1, at 174-75 (Depo. Hargett), at 28:24-25, 29:1-7.

that matters of religion are *not* to be the subject of political division. Freund, Comment, *Public Aid to Parochial Schools*, 82 Harv.L.Rev. 1680, 1692 (1969) ("political division along religious lines was one of the principal evils against which the First Amendment was intended to protect"); *see also McCreary Cnty., Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 884 (2005) (O'Connor, J., concurring) ("We do not count heads before enforcing the First Amendment").

Similarly, Thurston decries TST's lobbying efforts as antithetical to religiosity. ECF 258, at 28. But this ignores that "churches as much as secular bodies and private citizens have [the] right" to "take strong positions on public issues." *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 670 (1970). There is no genuine issue of material fact: TST is a minority religion which is in such "a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Plyler*, 457 U.S. at 216 n. 4. Strict scrutiny attaches.

*1.2: TST has a "fundamental right" to compete with Christianity.*

Additionally, strict scrutiny applies because TST has a fundamental right to compete with Christianity in the public sphere. *See Plyler*, 457 U.S. at 217 (classifications that impinge upon fundamental rights trigger strict scrutiny). Thurston does not respond to this point. Strict scrutiny applies because the Usurping Act insulated the Ten Commandments monument from competition, which impinged upon TST's fundamental right to compete with Christianity in the public sphere.

*1.3: TST's equal competition was intentionally preempted.*

Strict scrutiny further applies because TST's equal competition was intentionally preempted. To determine intent, courts look to the history of the decision, substantive departures from normal procedure, contemporary statements by the decisionmakers, and disproportionate impact. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977).

Thurston's response contends without discussion that the Usurping Act did not classify on the basis of religion. ECF 285, at 14. But Thurston's response points to post-hoc justifications, not the factors identified in the *Village of Arlington Heights* test.

Strict scrutiny applies because the Usurping Act only adversely affected TST,[3] vacated the requirement that Thurston present the monument proposal,[4] which in turn made it a political impossibility that TST get its Baphomet monument emplaced as evidenced by contemporary statements by decisionmakers adverse to TST's ideology.[5] Thurston justifies ignoring the contemporary statements by decisionmakers by crying "hearsay." ECF 288, at 6. But the contemporary statements are non-hearsay because they are used to show the

---

[3] ECF 261-1, at 92 (Depo. Boyd), at 81:7-15

[4] ECF 269-1, at 112 (Depo. Boyd), Exhibit 5

[5] ECF 269-1, at 61-74; id., at 127 (Rapert depo.) 156:8-13; see also id., at 187 (Depo. Hargett) at 66:15-69:19.

then-existing state of mind. FRE 803(3). It is absurd for
Thurston to suggest that the Supreme Court would explicitly
instruct that courts should consider inadmissible evidence. *See
Monahan v. Flannery*, 755 F.2d 678, 682–83 (8th Cir. 1985)
(absurd-results canon).

Thurston also evades discussion of the controlling evidence
by claiming the materials are not authenticated. ECF 288, at 6.
Subscribing testimony is authentication. FRE 901(b)(1).
Thurston is wrong because the proffered statements are
supported by an authenticating affidavit. ECF 269-1, at 244 ¶
4. The provided videos are even publicly available: the Court
can see and hear Rapert making the statements relied upon just
as well as any other member of the public. See FRE 901(b)(4),
(5). The material are authentic, non-hearsay evidence which is
presented in reliance on binding authority. Thurston's failure to
offer competing evidence supports a summary judgment in

favor of TST. *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 (8th Cir. 2016) (proof-with-proof standard).

### 1.4: The refusal to emplace Baphomet does not survive scrutiny.

Thurston's refusal to emplace the Baphomet monument does not survive any tier of scrutiny. Ostensibly, his refusal is rooted in the Usurping Act, but that Act was plainly designed to "harm a politically unpopular group" which does not even satisfy rational basis. *U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973). Thurston's response ignores this point.

Nor does the Usurping Act survive strict scrutiny. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (governmental efforts to suppress a disfavored religion must survive strict scrutiny). In response, Thurston suggests that "urgency" was created by the swath of religious monuments applied for during the religious/political controversy prompted by the Ten Commandment monument.

ECF 285, at 15. But that only further supports the need for strict scrutiny because it shows that the Usurping Act was enacted to insulate the General Assembly's preferred religious viewpoint from competition by other monuments–TST's included.

The Supreme Court just addressed the constitutional magnitude of State officials suppressing unpopular religious speech. *See Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1608 (2022). It has been a "favorite tool of petty tyrants," and was never to be permitted since the founding of our republic. *Id.*; *see also Torcaso v. Watkins*, 367 U.S. 488, 495 n. 10 (1961). Indisputably, TST's religious speech is unpopular and was suppressed by State officials. This requires application of strict scrutiny, but Thurston provides neither a "compelling" justification nor discussion as to how the Act under review is "precisely tailored" to that end. Thus, TST is entitled to summary judgment on the Equal Protection claim.

## 2: Thurston violated the Establishment Clause.

### *2.1: TST has standing.*

Thurston's response does not undermine TST's right to summary judgment on the Establishment Clause count. Thurston begins with cursory argument that TST lacks standing. ECF 285, at 2-3. But Thurston's own authority recognizes that "those who are denied government benefits because they do not practice a favored religion or any at all" would be entitled to sue out an Establishment Clause claim. ECF 285, at 2-3 (citing *Am. Legion*, 139 S. Ct. at 2103 (Gorsuch, J., concurring in the judgment)). Because TST's beliefs were denied an equal governmental endorsement by the emplacement of the Baphomet monument, TST has standing to pursue the argument that the Ten Commandments monument endorsed Christianity to the exclusion of all other religions–TST's included.

*2.2: Thurston's response offers no evidence to rebut the principal points.*

On the merits, Thurston again ignores the evidence for favor of cherrypicked statements in caselaw. An Establishment Clause claim requires "an equal protection mode of analysis." *Lukumi Babalu Aye*, 508 U.S. at 540 (citing *Walz*, 397 U.S. at 696 (Harlan, J., concurring) and *Arlington Heights*, 429 U.S. at 266). The *Arlington Heights* test includes consideration of contemporary statements by the decisionmaking body: e.g., Rapert's statement that the Ten Commandments monument signifies Arkansas's official preference for "giving credit to God and reverence to God." ECF 269-1, at 246-47. This admission of religious purpose is not addressed in Thurston's response.

Likewise, Thurston ignores the religious controversy prompted by the Ten Commandments monument. He disregards all the news articles which address the religious controversy. ECF 254-1, at 8-48. Instead, he complains that "most of the minority who spoke against the monument" are plaintiffs in this cause, or closely connected

with them. ECF 285, at 7. But this implicitly acknowledges the remainder of those "who spoke against the monument."

Nor does Thurston offer any response to the point that an objective observer would find the Ten Commandments monument to be religious. *See ACLU of Kentucky v. Grayson Cnty.*, Ky., 591 F.3d 837, 848 (6th Cir. 2010) ("Purpose is determined from the perspective of an objective observer") (cited by Thurston at ECF 285, at 7). A majority of public commenters considered the Ten Commandments monument to be religious. ECF 269-1, at 103 (Depo. Boyd) at 175:4-9. And it is undisputed that the Ten Commandments monument was funded by religious interests, not historical ones. ECF 286, at 21-24 (¶¶ 87-99).

Thurston offers no competing evidence. Instead, he misstates the fact record. He states that "no religious activity of any kind" took place at the unveiling ceremony of the Ten Commandments monument (ECF 288, at 6). But a review of the video includes religious benedictions being offered at the unveiling: "Amen,"

"praise Jesus," and "Hallelujah" (Thurston's exhibit 49, at 14:44-14:54); see also ECF 269-1, at 189 (Depo. Hargett) at 68:10-13. It further shows suppression of Lucien Greaves's questioning with further benedictions: "Amen," "praise God," and "thank you, God!" (Thurston's exhibit 49, at 16:13-16:26). Far from undermining a finding of religious purpose, the video only supports the point.

*2.3: Other monuments are irrelevant.*

Rather than address the principal points and authorities that this monument is a religious endorsement, Thurston relies on other monuments. ECF 285, at 8-13. Again, the facts of this case control, not the facts of other cases. *Lukumi Babalu Aye*, 508 U.S. at 534 ("The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders") (quoting Justice Harlan's Walz concurrence, 397 U.S. at 696). Other monuments, raised by other interests, at

different times and under different circumstances are irrelevant to the constitutionality of this monument.

The sole evidence of record overwhelmingly supports a finding that this Ten Commandments monument is an unconstitutional endorsement of Christianity. This, the Constitution forbids. *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1 (1947); *McCreary Cnty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844 (2005).

## 3: The Court should direct the emplacement of Baphomet.

Presuming that the Court finds an Equal Protection violation against TST, the Court should direct the emplacement of Baphomet. Nobody in this case has offered any points or authorities as to why the Court should not issue an appropriate remedy to "closely fit the constitutional violation," by placing "persons unconstitutionally denied an opportunity or advantage in the position that they would have occupied in the absence of discrimination." *United States v. Virginia*, 518 U.S. 515, 547 (1996) (cleaned up). The Constitution guarantees equality for all religions,

especially those that government officials, high or petty, deem to be "vile." ECF 269-1 at 141 and 143 (Depo. Rapert) at 216:24-25 and 218:21-24; *compare Barnette*, 319 U.S. at 642 and *Girouard v. United States*, 328 U.S. 61, 68 (1946) ("if there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought—not free thought for those who agree with us but freedom for the thought that we hate.")

As the undisputed evidence shows, the General Assembly showed favor to Christianity by enacting the Display Act and showed disfavor to Satanism by enacting the Usurping Act. Simply removing the Ten Commandments monument will do nothing to rectify the governmental disfavor of TST.  Simply removing the Ten Commandments monument will do nothing to displace the 1839 days (as of this reply) that a Christian monument was given the imprimatur of State government. Free Exercise can only be guaranteed for all if legislators–and voters–are required to give equal benefit to "small, new, or unpopular denominations" as they reserve for their own benefit. *Larson v. Valente*, 456 U.S. 228, 245 (1982).

Only the emplacement of Baphomet will correct this unequal treatment and will purge from a reasonable observer's mind that Christianity may–even if only temporarily–occupy the seat of government.

Christian dominionism is on the rise throughout the country, particularly in Arkansas. This effort to marginalize religious minorities must be responded to with an equal and opposite force. To do otherwise would abdicate the judicial responsibility to safeguard the First Amendment against petty tyrants' favorite tool: the suppression of disfavored religious speech. *Shurtleff*, 142 S. Ct. at 1608. By forcing Thurston and his successors in office to provide equal treatment to a religion with which the State of Arkansas "disagrees,"[6] the Court will further the Founders' intent to guarantee Free Exercise for all and to "cut off the means of religious

---

[6] The statement by Secretary Thurston, represented by Attorney General Griffin, is an admission by the State of Arkansas as both are agents of the State and made the admission within the course and scope of that relationship during its existence. FRE 801(d)(2)(D) (exclusion to hearsay for admission by party-opponent); Ark. Const. art. VI, § 21 (the Secretary of State is a constitutional officer); id., § 22 (the Attorney General is a constitutional officer).

persecution" by prohibiting the commingling of religious and political authority. 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1871, at 728 (1833).

WHEREFORE the Court should enter summary judgment in favor of TST and direct Thurston and all successors in office to emplace and maintain the Baphomet monument for a period of time equal to that enjoyed by the Ten Commandments monument: 1839 days as of this reply.



| | |
|---|---|
| **Matt Kezhaya** | matt@crown.law |
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 276-2216 |

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

## Certificate of service

NOTICE IS GIVEN that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on May 8, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*