IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


DONNA CAVE, et al.,                                          **PLAINTIFFS**

ANNE ORSI, et al.,                       **CONSOLIDATED PLAINTIFFS**

THE SATANIC TEMPLE, et al.,                          **INTERVENORS**

v.                    **Case No. 4:18-cv-00342-KGB**

JOHN THURSTON, Arkansas Secretary
of State, in his official capacity                          **DEFENDANT**


**REPLY BRIEF IN SUPPORT OF CAVE PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Secretary Thurston's response fails to defeat the Cave Plaintiffs' properly supported summary judgment motion.  The Secretary did not dispute the vast majority of the Cave Plaintiffs' statement of facts, and did not provide admissible evidence properly to rebut the facts he purported to dispute.  He thus failed to demonstrate that there is a genuine dispute as to the material facts.  The Secretary's legal arguments fare no better.  Based on improper legal standards, the Secretary claims that the Cave Plaintiffs lack standing.  And the Secretary presents a confusing hodge-podge of legal contentions that fail to overcome the Cave Plaintiffs' showing that there is no long-standing tradition of government mandated monuments displaying the text of the Ten Commandments that faithfully reflects the understanding of the Founding Fathers.  This Court should grant summary judgment in favor of the Cave Plaintiffs.

## I.   THE SECRETARY FAILED TO DEMONSTRATE THAT THERE IS A GENUINE DISPUTE AS TO THE MATERIAL FACTS

The Cave Plaintiffs properly submitted their Statement of Undisputed Material Facts [Doc. 266] as required by Local Rule 56.1.  Once the movants met their initial burden of showing the absence of a genuine dispute of material facts – as the Cave Plaintiffs did here – the burden shifted to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. 256 (1985).  "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,'

1

and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The nonmoving party must identify these "specific facts" by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). A nonmovant cannot create a genuine dispute as to any material fact with unsupported, conclusory statements. Factual assertions, "unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

Moreover, a genuine dispute as to a material fact must be supported by "more than a mere scintilla of evidence." *Anderson*, 477 U.S. at 252; *see Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015) ("A mere scintilla of evidence is insufficient to defeat summary judgment"). To the contrary, the nonmoving party must show that "there is sufficient evidence for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 258 (1968)). This evidence must be admissible

at trial.   "If there is no admissible evidence as to a material fact, there can be no dispute as to that fact, and hence no need for a trial to resolve a dispute."   11 Daniel R. Coquillette, *et al.*, *Moore's Federal Practice*, § 56.91[1] (3d ed.).

In the present case, the Secretary failed to demonstrate the existence of a genuine dispute as to any material fact for four reasons.

*First*, the Secretary concedes that there is no dispute as to 44 of the Cave Plaintiffs' statement of undisputed facts ("SUMF").[1]

*Second*, the Secretary states that 43 additional facts also are "undisputed," but attempts to qualify that statement with factual assertions that are not supported by citations to any portion of the record.[2]   Such naked factual assertions, unsubstantiated by the record, cannot create a genuine dispute as to a material fact sufficient to defeat summary judgment.  *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *see Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) (per curiam) ("unsupported, conclusory statements" cannot "demonstrate that a genuine issue of material fact exists").

---

[1] SUMF ¶¶ 2, 8, 10, 15, 16, 17, 19, 23, 24, 25, 26, 27, 31, 33, 34, 36, 37, 38, 52, 57, 58, 60, 61, 65, 69, 70, 71, 74, 75, 77, 89, 95, 104, 106, 111, 113, 114, 115, 118, 119, 123, 124, 125, 126.

[2] SUMF ¶¶ 1, 6, 7, 13, 14, 20, 21, 22, 29, 35, 43, 51, 63, 64, 67, 68, 73, 76, 78, 87, 88, 93, 96., 99, 101, 105, 116, 117, 122, 128, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 143, 147, 148.

*Third*, the Secretary attempts to dispute 20 facts without providing any record citation; those facts are disputed by nothing more than counsel's say-so.[3] An unadorned factual assertion based solely on an attorney's statement of fact, however, cannot create a disputed issue sufficient to defeat summary judgment. *See Thomas*, 483 F.3d at 527.  In addition, "[t]o defeat a summary judgment motion . . . a party may rely only on admissible evidence."  *Lewis v. CITGO Pet. Co.*, 561 F.3d 698, 704 (7th Cir. 2009).  "[A]rguments of counsel are not evidence."  *Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831, 838 (8th Cir. 2006).

"The district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial."  *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993).  But the Secretary failed to show that the substance of these factual statements would be put into admissible evidence at trial.  In particular, he did not identify who would present sworn testimony on these issues or which admissible documents would support them.  If the crux of these assertions cannot be put into admissible form, then they are not properly considered by the Court in determining whether a genuine dispute requiring trial is present.  *See Smith v. Kilgore*, 926 F.3d 479, 485

---

[3] SUMF ¶¶ 3, 4, 9, 11, 12, 28, 32, 47, 83, 90, 91, 92, 108, 109, 120, 121, 127, 144, 145.

(8th Cir. 2019) (the party identifying asserted facts at summary judgment "must demonstrate that the evidence may be offered at trial in an admissible form").

*Fourth*, there are three more facts which the Secretary contends are both undisputed in part (but qualified by factual assertions that are not supported by a record citation) and disputed in part (but also without any record citation).[4]  These responses – which are not supported by specific admissible evidence in the record – do not create a genuine dispute as to any material fact.

The Secretary was required to set forth specific facts sufficient to raise a genuine issue for trial.   Without sufficient evidence on which the fact-finder reasonably could find for the Secretary, summary judgment for the Cave Plaintiffs is proper.  *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011).

## II.   THE CAVE PLAINTIFFS HAVE STANDING TO BRING THIS ACTION

The Secretary devoted one scant page addressing the standing of three entirely different groups of plaintiffs, and failed entirely to address how the evidence the Cave Plaintiffs set forth in their motion bears on this analysis. (Sec'y Thurston's Opp'n to Pls.' Mot. for Summ. J. [Doc. 285] ("Sec'y Resp.") at 2-3.) Instead, the Secretary baldly argues – contrary to controlling precedent – that

---

[4] SUMF ¶¶ 140, 142, 146.

"offended observation is not a cognizable injury and Plaintiffs' only prelitigation contact was not unwelcome." (*Id.* at 2.) Neither argument has merit.

The Secretary's first argument is premised on his theory that the Cave Plaintiffs' standing arguments fail because they rely on the *Lemon* test, which "is no longer the law." (*Id.*) That is patently untrue. Even the jurists who support rewriting the standing requirements for Establishment Clause claims acknowledge that the current test for standing is still controlling after *Kennedy* disavowed the *Lemon* test. *See City of Ocala, Fla. v. Rojas*, 143 S. Ct. 764, 768 (2023) (J. Thomas, dissenting from denial of certiorari) ("I continue to urge the Court to review the legitimacy of this form of standing. If the Courts of Appeals are unwilling to reconsider their offended observer precedents *en banc*, we should intervene to vindicate our holding in *Valley Forge*."). That is because, as the Eighth Circuit recognizes, "[t]he standing inquiry is not . . . an assessment of the merits of a plaintiff's claim." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012) (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989)), *reh'g and reh'g en banc denied*, 764 F.3d 948 (8th Cir. 2014).   Standing is an independent threshold inquiry separate from the underlying merits analysis of Establishment Clause jurisprudence.

Regardless of how the Secretary takes issue with the Eighth Circuit's analysis of standing in Establishment Clause cases, he cannot validly dispute that

the existing standard remains binding on this Court. And as the Cave Plaintiffs established in both their motion and their response to the Secretary's motion, it remains undisputed that they meet that standard. (*See* Br. in Support of Cave Pls.' Mot. for Summ. J. [Doc. 265] at 1-7; Cave Pls.' Resp. to Sec'y Thurston's Mot. for Summ. J. [Doc. 284] ("Cave Pls.' Resp."), at 1-7.)

The Secretary's single-sentence assertion that his argument is somehow more or "particularly true where, as here, Plaintiffs' only pre-litigation contact with the monument wasn't unwelcome" (Sec'y Resp. at 3) is of no consequence.  Even if the facts underlying that argument were true – and they are not (*see* Cave Pls.' Resp. at 2-4) – the legal assertion is faulty.  A plaintiff's voluntarily exposure to religious practices she finds offensive does not strip her of standing to bring an Establishment Clause claim.  *See Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) ("[W]e have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred.").  *See also Rojas v. City of Ocala, Fla*., 40 F.4th 1347, 1351 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 764 (2023) (a plaintiff who "voluntarily attended the prayer vigil and knew she would encounter religious practices she found offensive" had standing to bring an Establishment Clause claim).

For these reasons, the Secretary's argument that the Cave Plaintiffs lack standing fails.

## II.    THE TEN COMMANDMENTS MONUMENT VIOLATES THE ESTABLISHMENT CLAUSE

In response to the Cave Plaintiffs' summary judgment motion, the Secretary used a scattershot approach to cover a myriad of tangential topics in peripheral form.  None of these themes address the essential elements of this case.  And none of these arguments are sufficient to overcome the Cave Plaintiffs' showing that they are entitled to judgment as a matter of law.

### A.    The Specific Practice at Issue Is the Government Mandated Display of the Text of Ten Commandments

As framed by the Supreme Court in *Town of Greece v. Galloway*, the question is whether "history shows that the *specific* practice is permitted," not whether a general practice is permitted. 572 U.S. 565, 577 (2014) (emphasis added).  *See Doe v. United States*, 901 F.3d 1015, 1021 (8th Cir. 2018) (deriving a two-part test from *Galloway*; at step one, asking whether history "has spoken to" a specific practice, and if not, at step two, "look[ing] to the historical understandings of the Establishment Clause as informed by other relevant practices").  *See also Rowan Cnty. v. Lund*, 138 S. Ct. 2564, 2566 (2018) (Thomas, J., dissenting from denial of certiorari) (*Galloway's* historical inquiry concerns the "specific practice" at issue)

8

Thus, this case is not about the historical record of "public acknowledgements of religion," (Sec'y Resp. at 9), nor is it about whether "religion has been closely associated with our nation's history and government." (*Id.* at 11.)   Instead, the pertinent issue in this case focuses on the "specific practice" of government mandated displays of the text of the Ten Commandments and whether that practice is justified by the historical understandings of the Establishment Clause.   The Secretary's response does not speak to this determinative question.

The fact that this case is about a government display of the text of the Ten Commandments is crucial.   In *Stone v. Graham*, a Kentucky statute required the posting of the text of the Ten Commandments in public school rooms for the stated purpose of highlighting "[t]he secular application of the Ten Commandments" as "seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States."   449 U.S. 39, 41 (1980).   The Supreme Court invalidated the statute, holding that "[t]he Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact."   *Id.*   In addition, the Court found that because the display stood by itself and was not integrated into the school curriculum, "[p]osting of religious texts on the wall serves no such educational function."   *Id.* at 42.

9

Like the display rejected in *Stone*, the Ten Commandments display at issue in *McCreary County v. American Civil Liberties Union*, 545 U.S. 844, 868 (2005), also set out the text of the Ten Commandments, not a mere symbolic representation.  In holding that the display violated the Establishment Clause, the Court again held that "[w]here the text is set out, the insistence of the religious message is hard to avoid in the absence of a context plausibly suggesting a message going beyond an excuse to promote the religious point of view." *Id.* While not denying "that the Commandments have had influence on civil or secular law," *id.* at 869, "the point is simply that the original text viewed in its entirety is an unmistakably religious statement dealing with religious obligations and with morality subject to religious sanction. When the government initiates an effort to place this statement alone in public view, a religious object is unmistakable." *Id.*

The only government display of the text of the Ten Commandments upheld by the Supreme Court was the display at issue in *Van Orden v. Perry*, 545 U.S. 677 (2005).  What distinguished that monument from the displays struck down in *Stone* and *McCreary* was the fact that it had been present at the Texas State Capitol for 40 years.  This factor was "determinative" for two reasons. *Id.* at 703 (Breyer, J., concurring).  First, "in today's world, in a Nation of so many different religious and comparable nonreligious fundamental beliefs, a more contemporary state effort to focus attention upon a religious text is certainly likely to prove divisive in a way

10

that [a] longstanding, pre-existing monument has not." *Id.* For this reason, "[a] new display of the Ten Commandments is much more likely to be perceived as an endorsement of religion by the government than one in which there is a legitimate preservationist perspective." *Glassroth v. Moore*, 335 F.3d 1282, 1300 (11th Cir. 2003) (internal quotation marks & citation omitted). And second was the fact that during that four-decade period, "the presence of this monument, legally speaking, went unchallenged (until the single legal objection raised by petitioner)." *Van Orden*, 545 U.S. at 703 (Breyer, J., concurring). In sharp contrast, the display in *McCreary* was immediately and continually challenged during its evolving iterations on the wall of the county courthouse. *See id.* (describing the "short (and stormy) history of the courthouse Commandments' displays" in *McCreary*).

Consistent with Justice Breyer's observation, these two factors – the age of the monument and the degree of controversy it engendered – have been "determinative" in lower court challenges to monuments displaying the text of the Ten Commandments. Monuments containing the text of the Ten Commandments have been upheld when they have been present for several decades without objection.[5] In sharp contrast, virtually identical monuments containing the text of

---

[5] *See, e.g.*, *Red River Freethinkers v. City of Fargo*, 764 F.3d 948 (8th Cir. 2014) (upholding 40-year old Ten Commandments monument); *ACLU Nebraska Found. v. City of Plattsmouth*, 419 F.3d 772 (8th Cir. 2005) (en banc) (upholding nearly 50-year old Ten Commandments monument); *Card v. City of Everett*, 520 F.3d 1009, 1021 (9th Cir. 2008) (fact that complaints about Ten Commandments

the Ten Commandments have been found to violate the Establishment Clause when they were challenged soon after they were installed.[6]   *See also Stone*, 449 U.S. at 40 (plaintiffs sought injunction against enforcement of Kentucky statute soon after enactment).

The Arkansas monument is a new display.  The current monument was dedicated in April 2018.  (SUMF ¶ 75.)  And like the display in *McCreary* (and in stark contrast to the one in *Van Orden*), the Arkansas Ten Commandments Monument has been controversial from the start; at every stage of its existence, it has been opposed and challenged.  (*See* SUMF ¶¶ 73, 100-112.)   The recent vintage of the Arkansas monument, coupled with its immediate challenge, is fatal to the Secretary's claim that – simply because it is "an identical duplicate" (Sec'y Resp. at 5 n.1) to the monument upheld in *Van Orden* – it falls equally within the permissible borders of the Establishment Clause.

---

monument "did not surface until the monument had been in place for over 30 years" was "determinative").

[6] *See, e.g., Felix v. City of Bloomfield*, 841 F.3d 848, 859 (10th Cir. 2016) (challenge to Ten Commandments monument on front lawn of City Hall only seven months after it was erected "weighs in Plaintiffs' favor"); *ACLU of Ohio v. DeWeese*, 633 F.3d 424 (6th Cir. 2011) (posters of Ten Commandments hung in court room by trial judge violated Establishment Clause; immediate litigation following multiple postings); *Green v. Haskell Cty. Bd. of Comm'rs*, 568 F.3d 784, 806-07 (10th Cir. 2009) ("prompt litigation response" to monument was "significant" factor in finding Establishment Clause violation).

**B.    The Secretary Failed to Present a Historical Record of Government Mandated Displays of the Text of the Ten Commandments**

In its most recent pronouncement on the Establishment Clause, *Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2507 (2022), the Supreme Court "instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'"  *Id.* at 2428 (quoting *Galloway*, 572 U.S. at 576). In particular, the Court stressed that the line "'between the permissible and the impermissible' has to 'accord with history and faithfully reflect the understanding of the Founding Fathers.'"  *Id.* (quoting *Galloway*, 572 U.S. at 577).  Although the Secretary perfunctorily acknowledged this analysis, he failed to demonstrate that the Ten Commandments Monument withstands this type of scrutiny.

The Secretary did not establish that government mandated displays of the text of the Ten Commandments have the requisite historical pedigree.   The Secretary did not provide a single example of a government mandated display of the text of the Ten Commandments erected at or near the time the First Congress passed the Bill of Rights in the late Eighteenth century.   At best, the Secretary could point only to the "Eagles-style monuments" scattered around the country since the 1950s.  (Sec'y Resp. at 9-10.)   These displays of the text of the Ten Commandments – like the one standing beside the Arkansas State Capitol – do not have an "unambiguous and unbroken history of more than 200 years" such that

they "ha[ve] become part of the fabric of our society." *Galloway*, 572 U.S. at 576. Such a display of an undeniably sacred text in the Jewish and Christian faiths thus does not "accord with history and faithfully reflect the understanding of the Founding Fathers," and clearly falls on the "impermissible" side of "the line that [the Court] must draw." *Kennedy*, 142 S. Ct. 2428.

The Secretary's reliance on *American Legion v. American Humanist Assoc.*, 139 S. Ct. 2067 (2019), in this regard is misplaced. The display at issue in that case was a 32-foot Latin cross erected as a memorial to local soldiers who died in World War I ninety years earlier. Although the plurality did not focus on whether similar displays comported with the Founding Fathers' understanding of the Establishment Clause, the Court nonetheless identified other factors to support the constitutionality of this long-standing display. First, because of the age of the monument, "identifying [its] original purpose or purposes may be especially difficult." *Id.* at 2082. Second, regardless of the original motivation behind the monument, "the passage of time may obscure that sentiment. . . ." *Id.* at 2083. Third, "[w]ith sufficient time, religiously expressive monuments . . . can become embedded features of a community's landscape and identity." *Id.* at 2084. And fourth, because of the longevity of the monument, "removing it may no longer appear neutral, especially to the local community for which it has taken on particular meaning." *Id.*

14

None of those attributes apply to the Arkansas Ten Commandments Monument, which has stood for barely five years and which faced an immediate legal challenge by multiple groups of plaintiffs shortly after it was installed.  As shown in the Cave Plaintiffs' motion, the motivation of the primary sponsor for enacting the Ten Commandments Monument Display Act is well-known and well-documented.  (*See* Cave Pls.' Mot. at 41-46.)  And given the short passage of time, there is no evidence that this motivation has faded in significance.  There also is nothing to show that the Ten Commandments Monument has taken on any unique historical or societal significance or that it now serves as the site for other patriotic or community events.  And given the vocal and immediate opposition to the Ten Commandments Monument, its removal cannot be seen as creating untoward religious divisiveness.  Justice Alito's observation "that retaining established, religiously expressive monuments . . . is quite different from erecting or adopting new ones," 139 S. Ct. at 2085, has particular resonance in this case given the total absence here of the considerations he identified.

The Secretary also failed to establish that the text of the Ten Commandments served as the foundation of American law.  The Cave Plaintiffs painstakingly demonstrated that many of the key documents from the pre-Colonial and Colonial eras – including the Magna Carta, the Mayflower Compact, the Declaration of Independence, the Constitution and the Bill of Rights – made no

15

reference to either the Ten Commandments as a whole or any particular one of the Commandments.  (*See* Cave Pls.' Mot. at 19-29.)  Thus, there is no historical foundation for the Secretary's claim that a monument displaying the text of the Ten Commandments – such as the one that presently stands before the Arkansas State Capitol – is rooted in this nation's legal and political history.

## C.    The State of Arkansas Has Alternative Avenues to Display the Ten Commandments in a Constitutionally Permissive Manner

The Secretary makes the paradoxical claim that a ruling finding that the Ten Commandments monument violates the Establishment Clause would, in itself, violate that same provision in that it would be "aggressively hostile to religion." (Sec'y Resp. at 4-5.)  But this specter of antagonism is entirely misplaced.

Contrary to the premise of the Secretary's argument, the Cave Plaintiffs are not asserting that the State of Arkansas is constitutionally foreclosed from displaying the Ten Commandments as "an important component of the moral foundation of the laws and legal system of the United States of America and the State of Arkansas."  (*See* Sec'y Mot. Ex. 2.)  To the contrary, Arkansas could accomplish that result in other permissible ways.

For example, the sacred text of the Ten Commandments could be "integrated constitutionally into a governmental display on the subject of law, or American history."  *McCreary*, 545 U.S. at 874; *see ACLU of Kentucky v. Mercer County,* 432 F.3d 624, 638 (6th Cir. 2005) (county's display of a Ten

Commandments document along with other documents relevant to American History did not impermissibly endorse religion because the county "did not attempt to erect the monument in isolation . . . before posting the . . . display"). This kind of display would contain other examples that "acknowledge the historical role of the Ten Commandments." *Van Orden*, 545 U.S. at 689-90 (citing public papers of the Presidents and Congressional resolutions). But that is not what the State of Arkansas chose to do. To the contrary, the State failed to make even a modicum of effort to explain the supposed secular purpose and significance of the Ten Commandments Monument.

Nothing in the Ten Commandments Monument Display Act requires that the State provide any explanation about the purpose of the monument or the manner in which the Ten Commandments supposedly provide the basic principles of the American system of government. (SUMF ¶ 43.) And nothing on the face of the monument says anything about the supposed secular reason for erecting the monument. (*See* SUMF Ex. 10 (photo of Ten Commandments Monument).) Conversely, there is no disclaimer on the monument that "helps remove doubt about state approval of [the Monument's] religious message." *Capital Square Review & Advisory Board v. Pinette*, 515 U.S. 753, 776-81 (1995) (O'Connor, J., concurring).

The absence of a secular message is highlighted by the complete absence of information about the Ten Commandments Monument provided by the State. The Secretary publishes a pamphlet about the Arkansas State Capitol. (SUMF ¶¶ 27-28.) That pamphlet contains both a listing of the monuments located on the State Capitol grounds and a picture and description of each of those monuments. (SUMF ¶ 28.) But even though the Ten Commandments Monument has stood on the State Capitol grounds for five years, the Secretary's official publication never has included the Ten Commandments Monument. SUMF ¶¶ 31-32. This glaring lack of any effort by the Secretary to explain whatever historical value the Ten Commandments Monument may have is strong evidence of its clear religious purpose. *See ACLU v. Garrard County.*, 517 F. Supp. 2d 925, 942 (E.D. Ky. 2007) ("A display that sets out the text of the Commandments standing alone, not part of an arguably secular display, can only send one message.").

The only evidence the Secretary can muster to demonstrate the Ten Commandments Monument's supposed secular purpose is the inscription at the base of monument that reads "Presented to the people of Arkansas by the American History and Heritage Foundation." (*See* SUMF Ex. 10 (photo of Ten Commandments Monument).) That engraving, according the Secretary, "plainly highlights the monument's significance for our Nation's 'history and heritage.'"

18

(Sec'y Resp. at 11.)  Not so.  The Supreme Court expressly rejected that reasoning in *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009).  There, the Court held that when government accepts a privately donated monument and places it on government property, "a government entity does not necessarily endorse the specific meaning that any particular donor sees in the monument."  *Id.* at 476-477; *see Red River Freethinkers v. City of Fargo*, 764 F.3d at 950 (following *Summum*).

Another option that the State of Arkansas could have pursued to express the Ten Commandments' role in the development of the law would have been to create depictions of the Ten Commandments (commonly done through images of stone tablets) or portrayals of historic lawgivers such as Moses.  These types of representations – which do not contain the text of the Ten Commandments – are similar to the types of displays found in the United States Supreme Court and other government buildings.  *See generally Van Orden*, 545 U.S. at 688-89 (describing "display[s] of the Ten Commandments on government property").  *See also American Legion*, 139 S. Ct. at 2083 (describing "depictions of the Ten Commandments" seen as "an established monument, symbol, or practice" reflecting "secular purposes").

Following this practice, the Ten Commandments would be seen in context. They would be seen as one part of the historic development of the law.  Or Moses could be viewed as a member of the pantheon of great lawgivers.  This kind of

19

display would be in keeping with the Arkansas legislature's finding that the Ten Commandments are "one of many sources" that have "influenc[ed] the development of what has become modern law." (Sec'y Mot. Ex. 2.) But once again, that is not what the State of Arkansas chose to do. It chose instead to erect an unadorned and unexplained monument containing nothing but the unquestionably religious text of the Ten Commandments.

## D. The Court Properly May Consider Senator Rapert's Public Statements About the Religious Purpose of the Ten Commandments Monument

The Secretary contends that the Cave Plaintiffs improperly relied on the numerous statements and representations by then-Senator Jason Rapert, who served as the primary sponsor of the Ten Commandments Monument Display Act. (Sec'y Resp. at 12-13.) Although the Secretary's interest in distancing himself from those comments is understandable, it cannot be avoided.

In *Wallace v. Jaffree*, 472 U.S. 38, 40 (1985), the Supreme Court considered a challenge to an Alabama statute authorizing public school teachers to hold a one-minute period of silence for "meditation or voluntary prayer." At the evidentiary hearing on the plaintiffs' motion for a preliminary injunction, State Senator Donald Holmes testified. He described himself as the "prime sponsor" of the bill that was enacted into law. *Id.* at 43. Senator Holmes further testified that the bill was an "effort to return voluntary prayer to our public schools. . . ." *Id.* "Apart from the

20

purpose to return voluntary prayer to public school, Senator Holmes unequivocally testified that he had 'no other purpose in mind.'" *Id.*  The district court upheld the constitutionality of the statute, but the Eleventh Circuit reversed.  In affirming the appellate court's ruling, the Supreme Court relied heavily on Senator Holmes' statements in holding that the statute had a "wholly religious character," *id.* at 58, "that Senator Holmes' testimony frankly described." *Id.* at 60. *See also Edwards v. Aguillard*, 482 U.S. 578, at 586-88 (1987) (looking to the detailed public comments of the statute's sponsor to determine the purpose of a state law requiring that creationism be taught alongside evolution).

The Secretary may decry the Cave Plaintiffs' "cherrypicked, decontextualized comments in social-media and other non-legal venues made by a single legislator in his personal capacity." (Sec'y Resp. at 13.)  But the Secretary failed to rebut or refute that Senator Rapert – the primary sponsor of the bill that became the Ten Commandments Monument Display Act – made repeated and numerous comments about his religious motivation for displaying the Ten Commandments at the Arkansas State Capitol.  And the Secretary offered no contrary statement from any other of the bill's sponsors to show that Senator Rapert's comments were not as he "frankly described."  Given this wealth of "openly available data support[ing] a commonsense conclusion that a religious objective permeated the government's action," *McCreary*, 545 U.S. at 863, the Ten

Commandments Monument Display Act (and the Ten Commandments Monument)
violate the Establishment Clause.

## CONCLUSION

The Secretary failed to show that there is a genuine dispute as to any
material fact and that he is entitled to judgment as a matter of law. For all of the
foregoing reasons, and the facts, legal authorities and arguments set forth in the
Cave Plaintiffs' Motion for Summary Judgment [Doc. 265], the Court should grant
summary judgment in favor of the Cave Plaintiffs, invalidating the Ten
Commandments Monument Display Act as a violation of the Establishment
Clause, and ordering that the Ten Commandments Monument located on the
Arkansas State Capitol grounds be permanently removed.

Respectfully submitted,

LAVEY AND BURNETT

By:___*John L. Burnett*_____.
        John L. Burnett (Arkansas Bar No. 77021)
        904 West 2nd Street
        Little Rock, AR 72201
        Telephone: (501) 376-2269
        Facsimile: (501) 372-1134
        E-mail:     jburnett@laveyandburnett.com
        *On behalf of the Arkansas Civil Liberties Union Foundation*

GREEN & GILLISPIE

By: *Joshua D. Gillispie*                              .
      Joshua D. Gillispie (Arkansas Bar No. 2010131)
1 Riverfront Place, Suite 605
North Little Rock, AR 72114
Telephone:  (501) 244-0700
Facsimile:   (501) 244-2020
E-mail:       josh@greenandgillispie.com
*On behalf of the Arkansas Civil Liberties Union Foundation*

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: *Andrew G. Schultz*                              .
      Andrew G. Schultz (*admitted pro hac vice*)
      NM State Bar No. 3090
      Melanie B. Stambaugh (*admitted pro hac vice*)
      NM State Bar No. 142699
P.O. Box 1888
Albuquerque, NM 87103-1888
Telephone:  (505) 765-5900
Facsimile:   (505) 768-7395
E-mail:       aschultz@rodey.com
         mstambaugh@rodey.com

*On behalf of the Arkansas Civil Liberties Union Foundation*
*Attorneys for Plaintiffs Donna Cave and Pat Piazza*

23