IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DONNA CAVE**, *et al.*,                                           **PLAINTIFFS**

**EUGENE LEVY**, *et al.*,                  **CONSOLIDATED PLAINTIFFS**

**THE SATANIC TEMPLE**, *et al.*,                           **INTERVENORS**

v.                             Case No. 4:18-cv-00342-KGB

**COLE JESTER, Arkansas Secretary
of State, in his official capacity**                                      **DEFENDANT**

**ORDER**

Before the Court is Arkansas Secretary of State Cole Jester's motion to exclude the testimony of Steven K. Green, J.D., Ph.D. (Dkt. No. 262) and intervenor plaintiffs Erika Robbins, Doug Misicko,[1] and the Satanic Temple (collectively "Intervenor plaintiffs") motion to preclude expert testimony of Mark David Hall, Ph.D. (Dkt. No. 267). The parties have responded to each other's motions (Dkt. Nos. 275; 277). For the following reasons, the Court denies both motions (Dkt. Nos. 262; 267).

    **I.**     **Legal Standard**

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

---

[1] Mr. Misicko also goes by the names of Doug Mesner and Lucien Greaves (Dkt. No. 260-50, at 6).

>  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Courts should liberally admit expert testimony and resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. *See Crabar/GBF, Inc. v. Wright*, 142 F.4th 576, 588 (8th Cir. 2025); *Masters v. City of Independence*, 998 F.3d 827, 838 (8th Cir. 2021).

Expert testimony must meet three criteria: (1) "the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant"; (2) "the expert must be qualified to assist the finder of fact"; and (3) "the testimony must be reliable or trustworthy in an evidentiary sense." *Crabar/GBF, Inc.*, 142 F.4th at 587 (quoting *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021)). Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court must conduct this initial inquiry as part of its gatekeeping function. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012). The Court must be mindful that "*Daubert* does not require proof with certainty." *Sorensen By & Through Dunbar v. Shaklee Corp.*, 31 F.3d 638, 650 (8th Cir. 1994). Rather, it requires that expert testimony be reliable and relevant. *Id.* "The inquiry as to the reliability and relevance of the testimony is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 757 (8th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)). The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence the admissibility of the expert's testimony. *Id.* at 757–58.

The Court examines the following four non-exclusive factors when determining the reliability of an expert's opinion: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) "[the method's] 'general acceptance.'" *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Daubert*, 509 U.S. at 593-94). These factors are not exhaustive or limiting, and the Court must use the factors as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case. *Id.* In addition, the Court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Id.*

This case has been set for a bench trial before the Court (Dkt. Nos. 107, 246). There is a relaxed standard under Rule 702 in a bench trial setting, "when the gatekeeper is keeping the gate only for himself." *In re Zurn Pex Plumbing Prod. Liab. Litig.* 644 F.3d 604, 613 (8th Cir. 2011) (quoting *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)).

**II.     Analysis**

    **A.     Secretary Jester's Motion To Exclude Dr. Green's Opinions**

Secretary Jester seeks to exclude Dr. Green's opinions as inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 508 U.S. 579 (1993). Secretary Jester asserts that Dr. Green does not provide factual information proper for an expert to provide but instead "impermissibly seeks to educate this Court concerning how it should conduct its legal analysis—and uses obsolete legal standards at that." (Dkt. No. 262, ¶ 1).

3

### 1. Dr. Green's Report And Opinions

Dr. Green provided a written report[2] on behalf of the Orsi plaintiffs that rebuts claims made in the report filed by Secretary Jester's expert, Dr. Hall (Dkt. No. 254-1, at 165). Dr. Green's report opines about the proper methodology that Courts should apply to historical data, the "religious milieu" of the founding period, the historical "pedigree of the Ten Commandments," the recent invention of public displays of Ten Commandments and the "lack [of] the historical pedigree" of other forms of government religious symbols, and the inevitably religious nature of any public Ten Commandments monument (Dkt. No. 254-1, at 166–67).

### 2. Challenge To Dr. Green's Report And Opinions

Secretary Jester argues that Dr. Green's opinions on the governing legal standard should be excluded (Dkt. No. 263-1, at 4). Secretary Jester contends that, in the section of Dr. Green's report where he purports to set forth his "Historical Methodology," Dr. Green says nothing about any historical method, but rather Dr. Green seeks to provide legal analysis of four Supreme Court decisions including *Town of Greece v. Galloway*, 572 U.S. 565 (2014), and *American Legion v. American Humanist Association*, 588 U.S. 29 (2019), and advocates for the Court to adopt a particular legal test to decide this case (*Id.*). Secretary Jester argues that, because Dr. Green asserts what the law is and how it should be applied, this testimony is irrelevant and inadmissible (*Id.* (citing *United States v. Bull*, 8 F.4th 762, 768 (8th Cir. 2021); *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)). Secretary Jester argues that the remainder of Dr. Green's report "advances improper conclusions." (*Id.*, at 5–8). Secretary Jester contends that Dr. Green's methodological shortcomings undermine his entire report (*Id.*, at 5).

---

[2] When the Court refers to Dr. Green's report, it is referring to the report as amended by Dr. Green's declaration filed with the Court on July 7, 2023 (Dkt. No. 305-1).

Secretary Jester maintains that Dr. Green advances no proper method to explain how he arrived at his conclusions, and therefore, according to Secretary Jester, Dr. Green does not meet Federal Rule of Evidence 702's admissibility requirements (*Id.*).

Secretary Jester also argues that many of Dr. Green's historical assertions are also irrelevant, contending that "[w]hether citizens were ever forced to adhere to the Ten Commandments has nothing to do with the history of placing Ten Commandments monuments." (*Id.*, at 6). Secretary Jester contends that, because Dr. Green's report contains a conclusion that the "placement of a Ten Commandments monument on the Arkansas State Capitol grounds would risk creating the impression the State is affiliating itself with the religious beliefs of a particular faith tradition," his report is endorsing the "obsolete *Lemon* test" (*Id.*, at 8).[3] Secretary Jester warns that failing to exclude Dr. Green's opinions "gives the appearance that the court was shifting to witnesses the responsibility to decide the case" (*Id.*, (quoting *Bull*, 8 F.4th at 768)). Finally, Secretary Jester contends that Dr. Green's opinions are otherwise irrelevant because they speak to *Lemon's* endorsement test, rather than to *American Legion* and *Town of Greece's* historical practice test (*Id.*, at 8–9).

In response to Secretary Jester's motion to exclude Dr. Green's opinions, the Orsi plaintiffs assert that Dr. Green's testimony is relevant, reliable, and not subject to exclusion (Dkt. No. 275, ¶ 1). The Orsi plaintiffs also provide, along with their response, the affidavit of Dr. Green outlining his methodology (Dkt. No. 275-1). The Orsi plaintiffs first point out that Dr. Hall, Secretary Jester's expert witness in this case, also discusses legal precedents at length and that Dr. Green responds to that discussion (Dkt. No. 276, at 1–2). However, the Orsi plaintiffs assert the primary

---

[3] The Court believes Secretary Jester to be referring to the three-part test set out by the United States Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

purpose of Dr. Green's report is to aid the Court in understanding the historical events and writings raised in Dr. Hall's report and to inform the Court (*Id.*). The Orsi plaintiffs acknowledge that there is a relaxed standard for admission of expert testimony in a bench trial but maintain that Dr. Green's report meets either the relaxed or more stringent standard for admissibility (*Id.*, at 2–3).

The Orsi plaintiffs also point out that, under the *Daubert* standard, any gaps in an expert witnesses' knowledge would go to weight, not admissibility, and generally resolves in favor of inclusion, not exclusion (*Id.*, at 3–4). The Orsi plaintiffs contend that not all *Daubert* factors apply in every case and are intended only as guidelines to be considered; the test of reliability is "flexible" (*Id.*, at 4–6). According to the Orsi plaintiffs, the significant portions of Dr. Green's report are those which identify the historical practices and understandings, and the historical facts are relevant and are the product of proper application of the methodology relied on by historians (*Id.*, at 6–8). The Orsi plaintiffs assert that Dr. Green applied appropriate historical methodology and that the Court should deny Secretary Jester's motion to exclude his testimony (*Id.*, at 8–9).

The Orsi plaintiffs filed a notice of supplemental authority to call to the Court's attention *Roake v. Brumley*, 756 F. Supp. 3d 219 (M.D. La. 2024), where the court considered a motion brought by defendants to exclude the testimony of Dr. Green in a case involving a motion for preliminary injunction brought by plaintiffs and a motion to dismiss brought by defendants in a suit filed challenging Act 676 under the Establishment Clause. Act 676 mandated that "each public school governing authority shall display the Ten Commandments in each classroom in each school under its jurisdiction." *Id.*, at 225. The *Roake* court denied the motion seeking to exclude the expert testimony of Dr. Green. *Id.*, at 238. In the Order denying the motion, the court found, after holding a hearing at which Dr. Green testified, that Dr. Green was "exceptionally well-credentialed and knowledgeable on the issues under consideration." *Id.*, at 233. Further, as to his methodology,

the Court concluded that Dr. Green "has shown a well-articulated, supported, and adequate methodology" and rejected the argument that Dr. Green was going to testify as to matters of law. *Id*., at 235.

Having considered the motion and the governing law, the Court denies Secretary Jester's motion to exclude Dr. Green's opinions (Dkt. No. 262).  Here the Court is the finder of fact, and concerns about Rule 702 and *Daubert* are minimized.  *See In re Zurn Pex Plumbing*, 644 F.3d at 613.  Any concerns about Dr. Green not providing methodology for his opinions go to the credibility of the testimony, not to the admissibility of the testimony.  In the Court's view, any concerns about the admissibility of Dr. Green's testimony have been cured by Dr. Green's affidavit, which was provided along with the Orsi plaintiffs' response to the motion (Dkt. No. 271-1).

The Court acknowledges that Dr. Green and Dr. Hall both reference legal opinions.  The Court views the purpose of Dr. Green's report not, as Secretary Jester suggests, to tell the Court how to rule but instead to provide the Court historical context (Dkt. No. 254-1).  *See Roake*, 756 F. Supp. 3d at 236–37.  For example, Dr. Green's report provides a historical context for the way in which the Ten Commandments have been numbered and used by various traditions, for Ten Commandments monuments, for consideration given to religious principles such as the Ten Commandments during the founding period, and for consideration given to the Ten Commandments by the drafters of the Constitution (*Id*.).  Moreover, an expert opinion is not objectionable or excludable just because it embraces an ultimate issue, except in certain criminal contexts not relevant here.  Fed. R. Evid. 704.  Finally, Secretary Jester's objections go to the merits or factual basis of Dr. Green's testimony rather than the admissibility of his testimony.  *In re Zurn Pex Plumbing*, 644 F.3d at 614 ("[a]s a general rule, the factual basis of an expert opinion

goes to the credibility of the testimony, not the admissibility." (citations omitted)).  In making findings of fact, the Court will give Dr. Green's opinion the weight the Court deems appropriate in the exercise of its sound and considerable discretion.

### B. The Intervenor Plaintiffs' Motion To Exclude Dr. Hall's Opinions

Intervenor plaintiffs move to preclude the expert testimony of Secretary Jester's expert, Dr. Hall, pursuant to Federal Rule of Evidence 702 and *Daubert* on grounds that it is nothing more than legal argument disguised as a historian's opinion and invades the sole province of the Court (Dkt. No. 267, at 2).  Intervenor plaintiffs further contend that Dr. Hall does not reveal the methodologies he used to arrive at his opinions (*Id.*).

#### 1. Dr. Hall's Report And Opinions

Dr. Hall makes numerous points in his report including that "there is little evidence to support the proposition that the founders desired to strictly separate church and state." (Dkt. No. 260-3, ¶ 7).  Moving from the founding era, Dr. Hall "demonstrate[s] that America's national government, as well as state and municipal governments, have a long history of erecting, or allowing to be erected, religious monuments or monuments containing religious symbols on public property." (*Id.*, ¶ 8).  Dr. Hall again argues that "consideration of a wide range of founders and founding era practices reveals little support for the erection of a wall of separation between church and state." (*Id.*, ¶¶ 28–63 (describing founding-era state practices); ¶¶ 64–90 (describing founding era constitutional debates about the religion clauses); ¶¶ 92–121 (reviewing historic practices and traditions of placing monuments that include religious imagery from various faiths)).  Finally, Dr. Hall opines that anti-Catholic animus played an important role in the modern movement to separate strictly church and state (*Id.*, ¶¶ 122–158).

### 2. Challenge To Dr. Hall's Report And Opinions

Intervenor plaintiffs move to exclude Dr. Hall's report and opinions (Dkt. No. 267, at 2). Intervenor plaintiffs acknowledge that Dr. Hall is "well read and has written much on this subject," but they argue that Dr. Hall presents a historical perspective without revealing the methodologies he used to arrive at his opinions and that, as a result, the Court should exclude all evidence from Dr. Hall (*Id*., at 2, 10). More specifically, Intervenor plaintiffs contend that Dr. Hall's historical report is legal argument (*Id*., at 3). Further, Intervenor plaintiffs argue that Dr. Hall's testimony is not supported by reliable methodology consistent with accepted historical methods because he supports his opinions with the fact that he has "read and written volumes on the subject of the Establishment Clause," but he does not "show his methodology" and "does not present or grapple with opposing historical narratives," making it impossible for opposing counsel to critique the process by which he arrived at his opinions (Dkt. No. 267, at 8). Finally, Intervenor plaintiffs criticize that Dr. Hall has a "public record as an advocate for Christian political advocacy," and they urge that this should cause the Court "special concern." (*Id*., at 9–10).

Secretary Jester responded to Intervenor plaintiffs' motion to preclude the expert testimony of Dr. Hall and asserts that Intervenor plaintiffs' claim that Dr. Hall's methodology and testimony is unreliable is "bogus." (Dkt. No. 277). Secretary Jester contends that Dr. Hall describes his methodology and materials on which his opinions are based at numerous points throughout his principal report including primary and professional sources standardly used by experts in his field (*Id*., at 2–3). According to Secretary Jester, Dr. Hall provides historical information and context, not legal analysis of the Ten Commandments Monument (*Id*., at 4). Finally, Secretary Jester notes that Dr. Hall discusses at length the rise of strict separationism, which opposes Dr. Hall's views of church-state relations that gave rise to the First Amendment (*Id.*, at 5).

Intervenor plaintiffs reply in support of their motion to preclude the expert testimony of Dr. Hall (Dkt. No. 291). Intervenor plaintiffs urge the Court to be suspicious of Dr. Hall as a historical expert because he has not accounted for his bias for Christian influence in politics nor has he grappled with opposing views, and thus the Court should not find his methodology reliable (*Id.*, at 7–10). Further, Intervenor plaintiffs argue again that Dr. Hall is not a lawyer or a judge and cannot define an Establishment Clause violation, which is the sole province of the Court (*Id.*, at 11–15).

Having considered the motion and the governing law, the Court denies Intervenor plaintiffs' motion to preclude expert testimony of Dr. Hall (Dkt. No. 267). Because the Court is considering this testimony at the summary judgment stage and because this case is set for a bench trial, the Court is the finder of fact, and concerns about Federal Rule of Evidence 702 and *Daubert* are minimized. *See In re Zurn Pex Plumbing*, 644 F.3d at 613. The Court determines that Dr. Hall has adequately set forth his methodology. The Court acknowledges that Dr. Hall references legal opinions. The Court, however, is capable of reviewing Dr. Hall's report and Dr. Hall's reply to Dr. Green's report as providing historical context in the case. To the extent Intervenor plaintiffs object to Dr. Hall's opinions because of alleged bias, an expert's bias goes to weight, not to the admissibility, of his testimony. *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000) (determining the credibility of a witness is "the jury's province, whether the witness is lay or expert," and evidence of bias may be drawn out during cross-examination); *see also Hanor v. Hanor*, 659 F. Supp. 3d 1023, 1031 (E.D. Mo. 2023) (determining that expert's alleged bias was not a basis for the exclusion of his expert report). In making findings of fact, the Court will give Dr. Hall's opinion the weight the Court deems appropriate in the exercise of its sound and considerable discretion.

### III. Conclusion

Having considered the motions and governing law, the Court denies Seretary Jester's motion to exclude the testimony of Dr. Green (Dkt. No. 262) and denies Intervenor plaintiffs' motion to preclude expert testimony of Dr. Hall (Dkt. No. 267).

It is so ordered this the 30th day of September, 2025.

_____
Kristine G. Baker
Chief United States District Judge